1  Juanita R. Brooks (SBN 75934)
   brooks@fr.com
2  Seth M. Sproul (SBN 217711)
   sproul@fr.com
3  FISH & RICHARDSON P.C.
   12390 El Camino Real
4  San Diego, CA 92130
   Telephone:   (619) 678-5070
5  Facsimile:   (619) 678-5099

6  Ruffin B. Cordell (DC Bar No. 445801; admitted pro hac vice)
   cordell@fr.com
7  Lauren A. Degnan (DC Bar No. 452421; admitted pro hac vice)
   degnan@fr.com
8  FISH & RICHARDSON P.C.
   1425 K Street, N.W., 11th Floor
9  Washington, DC 20005
   Telephone:   (202) 783-5070
10 Facsimile:   (202) 783-2331

11 William A. Isaacson (DC Bar No. 414788; admitted pro hac vice)
   wisaacson@bsfllp.com
12 Karen L. Dunn (DC Bar No. 1002520; admitted pro hac vice)
   kdunn@bsfllp.com
13 BOIES SCHILLER FLEXNER LLP
   1401 New York Avenue, N.W.
14 Washington, DC 20005
   Telephone:   (202) 237-2727
15 Facsimile:   (202) 237-6131

16 Attorneys for Plaintiff Apple Inc.

17                  UNITED STATES DISTRICT COURT

18              SOUTHERN DISTRICT OF CALIFORNIA

19 APPLE INC.,                        Case No. 17-cv-0108-GPC-MDD

20              Plaintiff,            **MEMORANDUM OF POINTS AND
                                      AUTHORITIES IN SUPPORT OF
21       vs.                          APPLE INC.'S PARTIAL MOTION
                                      TO DISMISS**
22
   QUALCOMM INCORPORATED,             Judge:      Hon. Gonzalo P. Curiel
23                                    Courtroom:  2D
                Defendant.            Date:       September 29, 2017
24                                    Time:       1:30 p.m.

25

26

27

28

1    QUALCOMM INCORPORATED,                      [FILED CONCURRENTLY WITH
                                                  NOTICE OF MOTION AND PARTIAL
2                Counterclaim-Plaintiff,          MOTION TO DISMISS; REQUEST
                                                  FOR INCORPORATION OR
3        vs.                                      JUDICIAL NOTICE; DECLARATION
                                                  OF GABRIEL R. SCHLABACH]
4
     APPLE INC.,
5
                 Counterclaim-Defendant.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................1

SUMMARY OF QUALCOMM'S ALLEGATIONS ...............................4

STANDARD OF REVIEW ...............................................................6

ARGUMENT ...............................................................................7

I.    Qualcomm Lacks Standing To Bring A UCL Claim Against Apple. ..........8

II.   Qualcomm's UCL Claim Must Be Dismissed Because None Of The Underlying Acts Qualcomm Alleges Are Actionable. ...............................12

   A.   Apple has broad discretion to make product design decisions.............12

   B.   Apple made no false or misleading statements. ...................................14

   C.   Apple may do business with whomever it chooses, absent an actual or threatened harm to competition. ..........................................................15

III.  Qualcomm Has Failed To Plead The Essential Elements Of A UCL Claim Based On "Unfairness". ..................................................................17

CONCLUSION .............................................................................19

### TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) ...................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................ 6, 11, 18, 19

*Aspex Eyewear, Inc. v. Vision Serv. Plan*,
   389 Fed. Appx. 664 (9th Cir. 2010) ........................................................16

*Bardin v. Daimlerchrysler Corp.*,
   136 Cal. App. 4th 1255 (2006) ...............................................................13

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ............................................................ 4, 17, 18

*Chavez v. Whirlpool Corp.*,
   93 Cal. App. 4th 363 (2001) ..................................................................16

*City and Cnty. of San Francisco v. Philip Morris, Inc.*,
   957 F. Supp. 1130 (N.D. Cal. 1997) .......................................................11

*Cullen v. Netflix, Inc.*,
   880 F. Supp. 2d 1017 (N.D. Cal. 2012) ..................................................19

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ..................................................................5

*Diamond Real Estate v. Am. Brokers Conduit*,
   No. 16-cv-03937-HSG, 2017 WL 412527 (N.D. Cal. Jan. 31, 2017) ................18

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ...............................................................10

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) ....................................................14

*Figy v. Amy's Kitchen, Inc.*,
   No. CV 13-03816 SI, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013)..................9

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) .............................................................. 14, 15

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008) ............................................................ 8, 13

*Haskins v. Symantec Corp.*,
   654 Fed. Appx. 338 (9th Cir. 2016)...........................................................7

*Herron v. Best Buy Co.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) ...................................................18

*In re Facebook PPC Advert. Litig.*,
  Nos. 5:09-cv-03043-JF, 5:09-cv-03519-JF, 5:09-cv-03430-JF, 2010 WL
  3341062 (N.D. Cal. Aug. 25, 2010) ................................................................. 9

*In re Firearm Cases*,
  126 Cal. App. 4th 959 (2005). ........................................................................ 8

*In re Pac. Gateway Exch., Inc. Sec. Litig.*,
  169 F. Supp. 2d 1160 (N.D. Cal. 2001) .......................................................... 5

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ..................................................................................... 9

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................. 7, 8, 9

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
  114 F. Supp. 3d 852 (N.D. Cal. 2015) ................................................... passim

*Moran v. Prime Healthcare Mgmt., Inc.*,
  3 Cal. App. 5th 1131 (2016) ............................................................................ 9

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) ......................................................... 9, 12

*Pom Wonderful LLC v. Coca Cola Co.*,
  No. CV 08-06237 SJO (FMOx), 2013 WL 543361 (C.D. Cal. Feb. 13, 2013) .. 16

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) ........................................................................... 9

*Scripps Clinic v. Superior Court*,
  108 Cal. App. 4th 917 (2003) ........................................................................ 18

*Shwarz v. United States*,
  234 F.3d 428 (9th Cir. 2000) ........................................................................... 6

*Stearns v. v. Select Comfort Retail Corp.*,
  No. 08-2746 JF (PVT), 2009 WL 4723366 (N.D. Cal. Dec. 4, 2009) ............... 19

*Taylor v. Yee*,
  780 F.3d 928 (9th Cir. 2015) ........................................................................... 4

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ......................................................... 18

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.*,
  No. 09CV2701 JLS (BLM), 2010 WL 1329077 (S.D. Cal. Apr. 1, 2010) .. 12, 19

*U.S. Legal Support, Inc. v. Hofioni*,
  No. CIV. S-13-01770 LKK/AC, 2013 WL 6844756 (N.D. Cal. Dec. 20, 2013) . 9,
  11, 12

*United States v. Colgate & Co.*,
  250 U.S. 300 (1919) ...................................................................................... 16

iii

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................7

*Zeppeiro v. Green Tree Servicing, LLC*,
  No. CV 14-01336 MMM (JCx), 2015 WL 12660398 (C.D. Cal. Apr. 15, 2015),
  *aff'd*, No. 15-55747, 2017 WL 875803 (9th Cir. Mar. 6, 2017)...........................8

**Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................ 7, 18

Cal. Bus. & Prof. Code § 17204 ............................................... 8, 9, 11, 19

**Rules**

Fed. R. Civ. P. 9(b) ......................................................... 7, 8, 9, 19

Fed. R. Civ. P. 12(b)(6)....................................................................19

iv

## PRELIMINARY STATEMENT

Qualcomm Inc. ("Qualcomm") has taken the remarkable step of suing its own customer, Apple Inc. ("Apple"), under California's Unfair Competition Law ("UCL") to further its objectives of eliminating competition from competing chip suppliers. Qualcomm's unfounded UCL counterclaim further shows why governments around the world are condemning it for illegal, anticompetitive practices. The claim, although nominally directed at Apple, blatantly targets Qualcomm's chief competitor in the market for premium LTE baseband chipsets, Intel, who dared to try and compete with Qualcomm. Targeting Apple for dual-sourcing its baseband processor chipsets is just the latest in a string of anticompetitive and exclusionary acts designed to protect Qualcomm's primacy in the chipset market. Faced with Apple's decision to add a second supplier after years of operating under the heavy weight of Qualcomm's exclusionary contract terms, Qualcomm claims competitive harm as a result of Apple having the temerity to standardize the user experience on the iPhone 7, explain publicly the performance characteristics of its products, and prevent Qualcomm from spreading misinformation in the marketplace.

Qualcomm's complaints are not only factually meritless; they fail as a matter of law. After years of restricting competition with a series of exclusivity conditions, gag clauses, and more, Qualcomm's resort to the UCL to stifle Apple's attempt to free itself from Qualcomm's monopoly stands the UCL on its head.

In late 2016, Qualcomm's agreements with Apple, which imposed draconian anticompetitive penalties on Apple for using even a single non-Qualcomm chipset in any of its products worldwide, were nearing expiration—allowing Apple for the first time in years to purchase chipsets from a competing supplier. Apple set consistent specifications for the chipsets in the iPhone 7 to guarantee both high performance and consistency across every iPhone 7, ensuring that its customers had a uniform experience that took advantage of standardized LTE technology.

With the iPhone 7, Apple procured baseband processor chipsets not only from Qualcomm but also from its competitor Intel. But after the iPhone 7's release, a methodologically unsound "study" questioned whether Apple had succeeded in its effort to standardize performance across all iPhones. In a public response, Apple truthfully stated that it had conducted its *own* studies, which showed consistent performance under relevant parameters.

Apple disputes the factual allegations in Qualcomm's counterclaim, but even crediting Qualcomm's alleged facts as true, Qualcomm has failed to state a claim under any of the prongs—fraudulent, unlawful, or unfair—of the UCL.

**First**, Qualcomm lacks standing under the UCL. Although Qualcomm attempts to plead its UCL claim under the "unfair" prong, Qualcomm plainly alleges only that Apple has engaged in what Qualcomm (wrongly) considers misrepresentations and omissions of fact. A party alleging fraudulent behavior under the UCL must plead *actual* and *direct* reliance on the alleged misrepresentations or omissions and may not rest its claim on the reliance of third parties. Qualcomm does not—and cannot—contend that *it* was deceived by any of Apple's actions, and admits throughout its pleadings that it knew the alleged "truth."  Rather than properly pleading reliance and standing, Qualcomm instead complains about competition and how it expects that consumers should be "insisting" on what it erroneously believes are "superior Qualcomm-based iPhones." (Counterclaims ¶ 383) Moreover, because Qualcomm fails to plead facts that plausibly suggest that customer behavior changed as a result of Apple's conduct, Qualcomm fails to allege injury in fact or loss of money or property.

**Second**, Qualcomm has failed to plead any actionable conduct by Apple because Apple had the legal right to do each of the three things that Qualcomm's counterclaim alleges was wrongful. As its first theory of actionable conduct, Qualcomm alleges that Apple acted unfairly by dual-sourcing chipsets for some models of the iPhone 7, not using certain features of Qualcomm chipsets that

1    Qualcomm thinks of as worthy of inclusion, and not disclosing Apple's design

2    decisions to the public. (*Id.* ¶¶ 241–243) This claim fails as a matter of law because

3    the UCL does not permit courts to delve into the product design decisions here.

4    The UCL does not require Apple to procure chipsets exclusively from Qualcomm,

5    to implement every feature Qualcomm may offer, or to disclose its design

6    decisions regarding baseband chipsets—or any of the multitude of other

7    components incorporated in each iPhone.

8        Qualcomm's next theory is that Apple wrongfully stated that Apple's

9    internal and carrier partner testing revealed "no discernible difference" in cellular

10   performance between iPhones using Qualcomm and Intel chipsets. (*Id.* ¶ 248)

11   Apple's iPhones are compliant with the LTE standard regardless of which

12   baseband chipset they contain, and Apple is legally entitled to disclose the results

13   of its internal cellular testing to the public. That other studies using different

14   methodologies may reach different conclusions does not contradict the accuracy of

15   Apple's description of its *own* test results.

16       Qualcomm's third theory of wrongful conduct is that Apple made

17   "threaten[ing]" statements that it would retaliate if Qualcomm made public

18   statements about the cellular performance of the iPhone 7. (*Id.* ¶ 243) Apple has

19   the right to make its own business decisions even if they adversely affect

20   Qualcomm, including the decision to limit or cease doing business with Qualcomm

21   entirely, and to make plain to Qualcomm that its actions could impact Apple's

22   decisions. Qualcomm has failed to allege—and cannot plausibly suggest—that

23   Apple's conduct harmed *competition* in the premium baseband processor chipset

24   market as required by the UCL.

25       **Third**, Qualcomm has failed to plead the necessary elements of an "unfair"

26   UCL claim, a claim available either to competitors or consumers, under any of the

27   accepted bases for such a claim. If Qualcomm claims the title of competitor,

28   Qualcomm fails to make the required allegation that any conduct "threatens an

3

incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Qualcomm's claim is likewise deficient under any of the three tests applicable to consumer actions.

Each of these pleading defects independently requires the complete dismissal of Qualcomm's UCL claim (Count X).

## SUMMARY OF QUALCOMM'S ALLEGATIONS

As is required, the following facts are taken from the face of Qualcomm's Counterclaims, and are accepted as true only for purposes of this motion. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).

Apple is the leading innovator in the consumer device industry, having introduced some of "the most successful consumer products in history," including the iPhone. (Counterclaims ¶ 2) Each iPhone contains a baseband processor chipset, which allows the iPhone to connect to cellular networks. (*Id.* ¶¶ 134, 136–137) Qualcomm is the dominant supplier of premium baseband processor chipsets. (*Id.* ¶ 134 (alleging that Qualcomm is a "major supplier of chips")) Between 2011 and September 2016, Apple exclusively used Qualcomm's baseband processor chipset in each new iPhone model. (*Id.* ¶¶ 137, 238) With the launch of the iPhone 7 in 2016, Apple began dual-sourcing chipsets from both Qualcomm and Intel. (*Id.* ¶ 238)

Qualcomm claims that Apple committed fraud in an effort to convince customers that iPhones with Qualcomm and Intel chipsets perform comparably. Qualcomm rests its fraud claim on three alleged actions.

First, Qualcomm claims that Apple "chose not to utilize certain high-performance features of the Qualcomm chipsets for the iPhone 7." (Counterclaims ¶¶ 4, 40–41, 237–238) Qualcomm pleads that this was an Apple design decision: "Apple effectively chose to limit the performance of the Qualcomm-based

iPhones." (*Id.* ¶ 40) The performance is enabled by "enhanced," or optional, features of Qualcomm's chipset, which Qualcomm claims enabled its chips to download data at a theoretical 600 megabits per second (Mbps), versus Intel's 450. (*Id.* ¶¶ 240–242) Qualcomm claims that Apple's actions were made in an "effort to match the slower speeds of Intel's chipsets" in other iPhone 7 models. (*Id.* ¶¶ 40, 237). Qualcomm does <u>not</u> allege that consumers expected the 600 Mbps download speed, or that Apple made public statements that the iPhone could download at 600 Mbps. Instead, Qualcomm claims that Apple's decision to ensure equal performance across all iPhone 7 models "harmed everyone who depends on the cellular industry" and led to "a potential ripple effect" across an unnamed network. (*Id.* ¶¶ 242, 386)

Next, Qualcomm claims that Apple stated that, if Qualcomm publicly "disclosed" the alleged speed disparity to the public, Qualcomm's "prospects of supplying any chipsets to Apple in the future" and its "standing as a supplier to Apple" might be "jeopardize[d]." (*Id.* ¶ 243) This would supposedly be accomplished through Apple's "marketing organization". (*Id.*)

Finally, Qualcomm claims that after the iPhone 7 was released, some "independent studies" identified performance differences between the Intel and Qualcomm chipsets. (*Id.* ¶ 245) Citing a Bloomberg article that contained various reports of these studies (Declaration of Gabriel R. Schlabach ["Schlabach Decl."] Ex. 1 (Bloomberg article)),[1] Qualcomm alleges that third parties found that Qualcomm chipsets outperformed Intel's under unverified conditions and

---

[1] The Court may consider Exhibit 1 because Qualcomm cites to and quotes from the document in its pleadings (Counterclaims ¶¶ 248–249, 383), and Qualcomm's misrepresentation claim necessarily relies on a quotation attributed to an Apple spokesperson in the document. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160–61 (9th Cir. 2012); *see also In re Pac. Gateway Exch., Inc. Sec. Litig.*, 169 F. Supp. 2d 1160, 1164 (N.D. Cal. 2001). Out of an abundance of caution, Apple is also filing a concurrent Motion for Incorporation by Reference or Judicial Notice.

1   methodologies; claimed that the Qualcomm-chipset-bearing iPhone was "not as
2   fast as it could be"; and compared the iPhone with Samsung phones.
3   (Counterclaims ¶¶ 245–247) Qualcomm does not allege that these studies or
4   reports are methodologically sound or correct. Yet Qualcomm claims that Apple
5   "falsely" stated in response to these studies that "In all of our rigorous lab tests
6   based on wireless industry standards, in thousands of hours of real-world field
7   testing, and in extensive carrier partner testing, the data shows there is no
8   discernible difference in the wireless performance of any of the models." (*Id.*
9   ¶¶ 248–249, 383) Qualcomm does not claim as false that (a) Apple did conduct
10  such internal tests, field studies, and carrier testing; or (b) those internal tests, field
11  studies, and carrier testing showed "no discernible difference" between the iPhone
12  models. Qualcomm also does not allege that customers were aware of Apple's
13  statement to Bloomberg or made purchasing decisions based on that statement.
14  (*Id.* ¶¶ 383–385 (claiming only harm to Qualcomm)).

15        At bottom, Qualcomm's counterclaim is an abuse of the UCL designed to
16  limit competition from Intel and discourage Apple and other handset
17  manufacturers from doing business with Qualcomm's competitors.

## **STANDARD OF REVIEW**

19        The Court must dismiss any claim that does not contain "sufficient factual
20  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
21  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). To meet this
22  threshold, a plaintiff must plead "factual content that allows the court to draw the
23  reasonable inference that the defendant is liable for the misconduct alleged." *Id.*
24  "Threadbare recitals of the elements of a cause of action, supported by mere
25  conclusory statements, do not suffice." *Id.* A court need not accept as true
26  allegations contradicted by judicially noticeable facts. *Shwarz v. United States*, 234
27  F.3d 428, 435 (9th Cir. 2000).

28

California's Unfair Competition Act prohibits business practices that are "unlawful," "unfair" or "fraudulent". CAL. BUS. & PROF. CODE § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

When a claim is raised in federal court under the "fraudulent" prong of the UCL, or where a party alleges "a unified course of fraudulent conduct" under any UCL prong and relies "entirely on that course of conduct as the basis of a claim," "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Federal Rule of Civil Procedure 9(b) requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake." Rule 9(b) mandates that "when averments of fraud are made, the circumstances constituting the alleged fraud" must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Vess*, 317 F.3d at 1106 (citation omitted). Each element of fraud, including reliance, must be pled with particularity. *Kearns*, 567 F.3d at 1126–27; *see also Haskins v. Symantec Corp.*, 654 Fed. Appx. 338, 339 (9th Cir. 2016) (affirming dismissal of UCL claim where plaintiff failed to allege reliance with particularity).

## ARGUMENT

Although Qualcomm artfully avoids using the word "fraud" and attempts to plead its UCL claim under the "unfair" prong (Counterclaims ¶ 382), Qualcomm's allegations are grounded in fraud.[2] Qualcomm alleges that Apple attempted to

---

[2] Qualcomm does not identify any law violated by any of Apple's actions, so it has failed to allege actionable acts under the "unlawful" prong of the UCL. *Zeppeiro v. Green Tree Servicing, LLC*, No. CV 14-01336 MMM (JCx), 2015 WL 12660398, at *7 (C.D. Cal. Apr. 15, 2015), *aff'd*, No. 15-55747, 2017 WL 875803 (9th Cir.

"cover up the performance differences between Qualcomm and Intel-based iPhone 7s" (omissions), stated that "there was 'no discernible difference' between those phone models" (misrepresentation), and threatened "Qualcomm to prevent it from disclosing" such omissions and misrepresentation. (*Id.* ¶¶ 237–251, 383) Accordingly, Qualcomm's pleadings are governed by Rule 9(b)'s particularity requirement and the standing requirements for a fraud-based UCL claim. *Kearns*, 567 F.3d at 1127 (rejecting argument that claim under "unfair" prong of UCL could avoid heightened pleading because the complaint alleged a "unified course of fraudulent conduct" and was "grounded in fraud" and thus the "entire complaint must therefore be pleaded with particularity"); *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 867 (N.D. Cal. 2015) (applying standing requirement from "fraudulent" UCL prong to "unfair" prong claim premised on misrepresentation). Qualcomm's claim also fails even if considered under the "unfair" prong, no matter which test the Court applies to that prong.

# I.   Qualcomm Lacks Standing To Bring A UCL Claim Against Apple.

To establish standing under any prong of the Unfair Competition Law, a private plaintiff must plead facts demonstrating injury in fact and the loss of money or property as a result of the defendant's unfair competition. CAL. BUS. & PROF. CODE § 17204 (private actions for relief under the UCL may be brought only by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition"); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 859 (2008); *In re Firearm Cases*, 126 Cal. App. 4th 959, 981 (2005).

California's voters imposed this standing requirement by proposition in 2004, in an effort to reduce misuse of the UCL by private plaintiffs who had not

---

Mar. 6, 2017) ("A plaintiff must identify the underlying law on which his UCL claim is based to plead a claim based on the unlawful prong sufficiently").

1    suffered any injury from defendants' actions. Prop. 64, § 1(e) (2004).

2         When a UCL claim involves an alleged misrepresentation or omission, the

3    "California Supreme Court has held that the phrase 'as a result of' in section 17204

4    'imposes an actual reliance requirement on plaintiffs prosecuting a private

5    enforcement action.'" *Figy v. Amy's Kitchen, Inc.*, No. CV 13-03816 SI, 2013 WL

6    6169503, at *3 (N.D. Cal. Nov. 25, 2013) (quoting *In re Tobacco II Cases*, 46 Cal.

7    4th 298, 326 (2009)); *see also Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d

8    777, 793 (9th Cir. 2012) (citation omitted) ("Because the plaintiffs' UCL claim

9    sounds in fraud, they are required to prove 'actual reliance on the allegedly

10   deceptive or misleading statements'").

11        Where, as here, the claim is based on allegations of fraud, the failure to

12   allege reliance with specificity is fatal, under either the "fraudulent" or "unfair"

13   prong of the UCL. *In re Facebook PPC Advert. Litig.*, Nos. 5:09-cv-03043-JF,

14   5:09-cv-03519-JF, 5:09-cv-03430-JF, 2010 WL 3341062, at *9–11 (N.D. Cal.

15   Aug. 25, 2010) (dismissing UCL "unfair" and "fraudulent" prong claims involving

16   alleged misrepresentations because plaintiffs failed to plead reliance); *see also*

17   *Kearns*, 567 F.3d at 1127 (applying Rule 9(b) particularity requirement to a

18   misrepresentation claim pled under the UCL's "unfair" prong).

19        To satisfy the reliance requirement, the alleged reliance must be by the

20   plaintiff *itself*—not a third-party. *L.A. Taxi*, 114 F. Supp. 3d at 866–67 (joining

21   "majority of courts" in concluding that plaintiffs who "do not plead their own

22   reliance" on alleged misstatements "lack standing to seek relief under the UCL's

23   fraud prong"); *O'Connor v. Uber Techs., Inc.,* 58 F. Supp. 3d 989, 1002 (N.D. Cal.

24   2014) ("UCL fraud plaintiffs must allege their *own* reliance—not the reliance of

25   third parties—to have standing under the UCL" (emphasis in original)); *U.S. Legal*

26   *Support, Inc. v. Hofioni*, No. CIV. S-13-01770 LKK/AC, 2013 WL 6844756, at

27   *15 (N.D. Cal. Dec. 20, 2013) (same); *Moran v. Prime Healthcare Mgmt., Inc.*, 3

28   Cal. App. 5th 1131, 1144 (2016) ("a plaintiff 'must show actual reliance on the

9

alleged misrepresentation, rather than a mere factual nexus between the business's conduct and the consumer's injury'" (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1355 (2010)). The requirement that a party must *itself* rely on an alleged misstatement applies regardless of whether the claim is nominally pled under the fraudulent, unfair, or unlawful prong of the UCL. *L.A. Taxi*, 114 F. Supp. 3d at 867 ("Because Plaintiffs' claims under the UCL's unfair and unlawful prongs are predicated on the same misrepresentation theory, they similarly lack standing to seek relief under those prongs").

Far from alleging any reliance on any Apple statement or omission concerning the comparative performance of Qualcomm and Intel chipsets, Qualcomm alleges precisely the opposite: that it knew the supposed truth all along. Qualcomm alleges that its chipsets have been superior to the competition for years, that they remain superior, and that a Qualcomm executive discussed the public disclosure of their superiority with an Apple executive in August 2016—before Apple even launched the iPhone 7 or made any public representations about its performance. (Counterclaims ¶¶ 239–240, 243, 248) Therefore, Qualcomm cannot plausibly claim that it relied on Apple's alleged omissions or misrepresentation.

Qualcomm may not seek to limit competition through this UCL claim by urging that consumers would have purchased more iPhones with Qualcomm chipsets as compared to iPhones with Intel chipsets. In the absence of any claim that *it* relied on any alleged Apple omission or misrepresentation, Qualcomm may not retreat to claims that *Apple's customers* relied on Apple's alleged omissions and misrepresentation, indirectly harming Qualcomm through loss of sales. The counterclaim improperly alleges this indirect injury without alleging consumer reliance. (*Id.* ¶¶ 251, 383, 385) But even if consumer reliance were alleged with the required particularity, this is precisely the type of indirect reliance that is foreclosed under the UCL. *L.A. Taxi*, 114 F. Supp. 3d at 866–67.

MEMO OF PS & AS ISO APPLE INC.'S
PARTIAL MTN TO DISMISS

CASE NO. 17-cv-0108-GPC-MDD

In *L.A. Taxi Cooperative v. Uber Technologies, Inc.*, plaintiff taxi companies alleged that Uber misled potential customers through a public advertising campaign touting the safety of its services. *Id.* at 857–59. The plaintiffs claimed that Uber's public statements that it provided the "safest rides on the road," used the "strictest safety standards possible," and had "best in class safety and accountability" standards were false and misleading because the plaintiff taxi companies employed stricter safety standards. *Id.* But (as here) the plaintiffs did not allege that they were themselves misled by Uber's advertising campaign; instead, they claimed that they were indirectly harmed because "customers chose to use Uber rather than taking a taxi, causing Plaintiffs to lose significant revenue and suffer reputational injury." *Id.* at 859. The court held that the taxi companies had pleaded themselves out of court. Because the plaintiffs had failed to "allege their own reliance on the alleged misrepresentations, rather than the reliance of third parties," the court dismissed the claim under all three prongs of the UCL, noting the general rule that "'a fraud action cannot be maintained based on a third party's reliance.'" *Id.* at 866–67 (quoting *City and Cnty. of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130, 1142 (N.D. Cal. 1997)); *see also U.S. Legal Support*, 2013 WL 6844756, at *14–15 (dismissing *with prejudice* a misrepresentation-based claim under the UCL where plaintiff was "not a consumer of Defendants' services" and therefore "cannot demonstrate reliance on Defendants' fraudulent statements in order to establish standing").

Under any prong of the UCL, Qualcomm's claim also fails to plausibly and concretely plead injury in fact and the loss of money or property as a result of the alleged unfair competition. Cal. Bus. & Prof. Code § 17204; *Iqbal*, 556 U.S. at 678. Qualcomm conclusorily pleads that "Absent Apple's conduct, Qualcomm's chipsets would be in higher demand." (Counterclaims ¶ 383) However, Qualcomm's counterclaim is bereft of any allegations to support that claim. Qualcomm does not plead facts that would show that consumers would or could

11

choose an iPhone with a Qualcomm chip over an Intel chip in the absence of information of what chip is actually contained in the iPhone. Indeed, Qualcomm admits that Intel and Qualcomm chips are used for different networks, so that the consumer choice is actually between iPhones that are equipped for *different carriers*, such as AT&T on the one hand and Verizon on the other. (Counterclaims ¶¶ 238, 246) Qualcomm's counterclaim does not identify a single customer whose purchasing decision would have been different, or allege facts sufficient to explain how consumer behavior would favor iPhones with a Qualcomm chipset when that choice is also informed by a consumer's choice of carrier. *See Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, No. 09CV2701 JLS (BLM), 2010 WL 1329077, at *3 (S.D. Cal. Apr. 1, 2010) (dismissing plaintiff's conclusory claim that customers "certainly" would have chosen its service absent defendant's alleged misconduct as "attenuated" and "conjectural" where plaintiff did not "point to any potential customers" who would have changed their behavior).

Because Qualcomm has admitted that it knew the "truth" about Apple's alleged omissions and misrepresentation (Counterclaims ¶¶ 239–240, 243, 248), Qualcomm is precluded from alleging its reliance on Apple's actions. Accordingly, Qualcomm's UCL claim should be dismissed with prejudice. *O'Connor,* 58 F. Supp. 3d at 1002–03, 1008 (dismissing with prejudice UCL fraud claim predicated on third-party customers' reliance); *U.S. Legal Support*, 2013 WL 6844756, at *14–15 (same); *L.A. Taxi*, 114 F. Supp. 3d at 866–67 (direct reliance required for standing for misrepresentation-based theory under any UCL prong).

## II.   Qualcomm's UCL Claim Must Be Dismissed Because None Of The Underlying Acts Qualcomm Alleges Are Actionable.

### A.   *Apple has broad discretion to make product design decisions.*

Qualcomm alleges that Apple, after deciding to source competitive chips from Intel for the iPhone 7, made design decisions about which chipset features to activate in the iPhone 7 in order to ensure consistency in the user experience,

12

1  without regard to whether a particular phone incorporated an Intel or Qualcomm

2  chip. (Counterclaims ¶¶ 40, 237–241, 383 (Apple "chose" not to use certain

3  features in the Qualcomm chipset)) Regardless of the alleged reason for Apple's

4  choices, Apple's actions were not actionable under the "fraudulent" and "unfair"

5  prongs of the UCL. It does not violate either prong for Apple to make design

6  tradeoffs in deciding what product to bring to market. That is all the more so here

7  when Apple sourced baseband chipsets that are compliant with an industry LTE

8  standard.

9      Under well-established California precedent, a UCL claim cannot be

10  premised on a company's decision to bring a particular product to market, provided

11  that the decision does not result in a breach of warranty or a safety issue (and there

12  is no such claim here). *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255,

13  1270–73 (2006). In *Bardin*, the California Court of Appeal court rejected a claim

14  under the "unfair" and "fraudulent" prongs of the UCL that was premised on

15  Daimlerchrysler's decision to use "tubular steel in the exhaust manifolds of certain

16  of its vehicles instead of more durable and more expensive cast iron." *Id.* at 1260.

17  The court held that Daimlerchrysler's decision was not actionable under the

18  "unfair" prong because plaintiffs failed to allege that the use of tubular steel

19  affected consumer safety, breached a warranty, or was otherwise "immoral" or

20  "unethical." *Id.* at 1260, 1270–73.

21      Nor has Qualcomm stated a claim for fraud, or fraudulent omission, based

22  on Apple's design choices following Apple's decision to use both Intel and

23  Qualcomm chipsets that are compliant with the LTE standard. In *Bardin*, plaintiffs

24  failed to state a claim under the "fraudulent" prong where there was no allegation

25  that consumers expected or assumed that the more durable steel was used. *Id.* at

26  1274–75; *see Hall v. Sea World Entertainment, Inc.*, No. 3:15-CV-660-CAB-RBB,

27  2015 WL 9659911, at *1, 6–7 (S.D. Cal. Dec. 23, 2015) (dismissing a UCL fraud

28  claim premised on the allegation that Sea World's advertising failed to disclose

13

1   that its killer whales were unhappy and unhealthy, noting that "California courts

2   have generally rejected a broad obligation to disclose"). Here, Qualcomm does not

3   (and cannot) allege that Apple told the public that the iPhone 7 could support a

4   theoretical maximum speed of 600 megabits per second, such that consumers

5   expected something different than they received. *See also Elias v. Hewlett-Packard*

6   *Co.*, 903 F. Supp. 2d 843, 856 (N.D. Cal. 2012) (in a fraudulent nondisclosure

7   case, "'a manufacturer's duty to consumers is limited to its warranty obligations

8   absent either an affirmative misrepresentation or a safety issue'").

9         B.    *Apple made no false or misleading statements.*

10        Qualcomm next seeks to limit competition by Intel by alleging that Apple's

11   statement about the uniform performance of the iPhone 7 was false, but Qualcomm

12   fails to plead this allegation with the required particularity.

13        An allegedly false or misleading statement must be evaluated in context, and

14   statements are not actionable where a "reasonable consumer" would not be

15   deceived. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). Qualcomm

16   cites only a single Apple statement (Counterclaims ¶¶ 248, 383). As reported by

17   Bloomberg, an Apple spokesperson stated:

18   
19        Every iPhone 7 and iPhone 7 Plus meets or exceeds all of Apple's
     wireless performance standards, quality metrics, and reliability
20        testing. In all of our rigorous lab tests based on wireless industry
     standards, in thousands of hours of real-world field testing, and in
21        extensive carrier partner testing, the data shows there is no discernible
     difference in the wireless performance of any of the models.
22   

23   (Schlabach Decl. Ex. 1)

24        Qualcomm relies on two so-called third-party studies for its claim that

25   Apple's statement was false, but provides no factual allegations concerning the

26   conditions under which these tests were performed or otherwise demonstrating

27   their reliability or trustworthiness. (Counterclaims ¶¶ 245–246) As an initial

28   matter, it is apparent from the face of the Bloomberg article Qualcomm cites that

MEMO OF PS & AS ISO APPLE INC.'S
PARTIAL MTN TO DISMISS
     CASE NO. 17-cv-0108-GPC-MDD

1   the methodology of these "studies" is questionable. The article states that
2   "measuring phone data speeds is difficult because performance can be influenced
3   by weather and other factors beyond the control of wireless providers and phone
4   makers." (Schlabach Decl. Ex. 1)

5   Even accepting such studies' findings at face value, however, they do not
6   contradict Apple's statement. Apple explained the basis for its statement that there
7   was "no discernible difference" between iPhones: "rigorous lab tests based on
8   wireless industry standards," "thousands of hours of real-world field testing," and
9   "extensive carrier partner testing." (*Id.*) The allegation that *other*, non-Apple tests
10  reached different results than the tests Apple conducted does not contradict the
11  accuracy of Apple's description of its own and its partners' tests. Qualcomm does
12  not (and cannot) allege any facts demonstrating that Apple's description of its own
13  test results was inaccurate. *Freeman*, 68 F.3d at 290 (dismissing misrepresentation
14  claim on the pleadings where promotion was not false "when read reasonably and
15  in context"). Nor did Apple describe any tests comparing the performance of
16  iPhones bearing Qualcomm chipsets to Samsung phones; such a study thus has no
17  bearing on the truth of Apple's statement.

18      C.   *Apple may do business with whomever it chooses, absent an actual or*
19          *threatened harm to competition.*

20  Qualcomm's allegation that Apple violated the UCL by coercing
21  Qualcomm's silence must also be dismissed. Qualcomm is again arguing that it has
22  a legal right not to lose business to Intel. Qualcomm points to two supposed
23  "threats" on a single phone call, and neither is actionable under the "unfair" or
24  "fraudulent" prong of the UCL.

25      ***First***, Qualcomm's claim that Apple violated the UCL by warning
26  Qualcomm that its actions "would severely impact Qualcomm's standing as a
27  supplier" (Counterclaims ¶ 243) is directly precluded by the *Colgate* doctrine,
28  which affords a manufacturer the "right to select with whom to do business and on

15

1   what terms." *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 370, 375 (2001)

2   (citing *United States v. Colgate & Co.*, 250 U.S. 300 (1919)); *see also Colgate*,

3   250 U.S. at 307 (extending doctrine to both upstream and downstream business

4   decisions). In California, "conduct that the courts have determined to be

5   permissible under the *Colgate* doctrine cannot be deemed 'unfair' under the unfair

6   competition law." *Chavez*, 93 Cal. App. 4th at 375. Because Apple is absolutely

7   protected by the *Colgate* doctrine in deciding with whom it will deal, Qualcomm

8   cannot make out a claim under any prong of the UCL. *E.g.*, *Alvarez v. Chevron

9   Corp.,* 656 F.3d 925, 933 (9th Cir. 2011) (rejecting claim that consumers

10  unwittingly received a residual amount of lower-grade fuel when they purchased

11  premium-grade fuel under safe-harbor doctrine); *Pom Wonderful LLC v. Coca

12  Cola Co.*, No. CV 08-06237 SJO (FMOx), 2013 WL 543361, at *1, 5 (C.D. Cal.

13  Feb. 13, 2013) (dismissing claim regarding false and misleading name and labeling

14  under safe-harbor doctrine).

15      Notably, the conduct Qualcomm alleges is less severe than the conduct

16  *Chavez* held to be lawful under the *Colgate* doctrine. In *Chavez*, Whirlpool

17  announced a minimum resale price policy for its KitchenAid products and

18  threatened retailers that "there would be 'no second chances' and that any single

19  violation of the price policy would result in the termination of sales to the

20  individual retail store and to all of the retailer's other stores." *Chavez,* 93 Cal. App.

21  4th at 367.

22      **Second**, although it is unclear what Qualcomm means when it alleges that

23  Apple threatened to "use its marketing organization to retaliate against Qualcomm"

24  (Counterclaims ¶ 243), any such "threat" is also nonactionable. Under California

25  law, businesses have wide latitude under the UCL to take or threaten business

26  actions that would cause another company to suffer economic losses, absent "proof

27  of some actual or threatened impact *on competition*." *Aspex Eyewear, Inc. v. Vision

28  Serv. Plan*, 389 Fed. Appx. 664, 665–66 (9th Cir. 2010) (emphasis added)

16

1   (defendant's threats that plaintiff must drop patent infringement suits or lose in-

2   network vendor status was nonactionable under UCL). Qualcomm does not allege

3   that Apple's "threats," if acted upon, would result in "diminish[ed] competition in

4   the [cellular device or chipset] market"—nor could it. *Id.* at 666.

## III. Qualcomm Has Failed To Plead The Essential Elements Of A UCL Claim Based On "Unfairness".

7       Even if the standards for "unfairness" alone apply, Qualcomm fails to plead

8   a claim under the "unfair" prong of the UCL. The California Supreme Court has

9   articulated two types of tests for unfairness—those that apply in "competitor" cases

10  and those that apply in "consumer" cases. *Cel-Tech*, 20 Cal. 4th at 186–87 &

11  fn.11–12. Qualcomm's pleadings are inadequate under both.

12      Qualcomm alleges that it lost sales as a result of Apple's single statement

13  concerning the relative performance of the iPhone 7 with Qualcomm and Intel

14  chipsets; those Intel chipsets compete with Qualcomm chipsets. (Counterclaims

15  ¶¶ 239, 383, 385) Under *Cel-Tech Communications, Inc. v. L.A. Cellular*

16  *Telephone Co.*, a direct competitor bringing a claim under the "unfair" prong of the

17  UCL must allege "conduct that threatens an incipient violation of an antitrust law,

18  or violates the policy or spirit of one of those laws because its effects are

19  comparable to or the same as a violation of the law, or otherwise significantly

20  threatens or harms competition." 20 Cal. 4th at 187. Qualcomm fails to allege any

21  incipient violation of the antitrust laws, a violation of their policy or spirit, or any

22  other threat to competition. (Counterclaims ¶¶ 237–251, 381–387)

23      Even if the UCL standards applicable to consumers were to apply to

24  Qualcomm, Qualcomm's pleading of its UCL claim remains deficient. California

25  courts have articulated three competing standards that may apply when consumers

26  bring UCL claims: (1) the modified *Cel-Tech* test (or "tethering test"), which

27  requires a consumer to identify a violation of public policy "'tethered' to "specific

28  constitutional, statutory, or regulatory provisions," *Scripps Clinic v. Superior*

17

*Court*, 108 Cal. App. 4th 917, 940 (2003); (2) an older "balancing test," which requires that the harm of the alleged conduct outweigh the "utility of the defendant's conduct," *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013); and (3) the "FTC test," which requires that the "consumer injury is substantial, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided."[3] *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010).

Because Qualcomm has failed to allege any violation of public policy tethered to specific constitutional, statutory, or regulatory provisions, its UCL claim cannot proceed under the tethering test. And while Qualcomm has alleged that there is "no utility to any of Apple's unfair acts" in an effort to satisfy the balancing and/or FTC tests (Counterclaims ¶ 386), this allegation is nothing but a legal conclusion. Qualcomm was required to plead *specific facts* supporting all sides of the balancing or FTC test. *Iqbal*, 556 U.S. at 678; *Tietsworth*, 720 F. Supp. 2d at 1137 (dismissing unfair competition claim after concluding that plaintiff's

---

[3] As noted by the court in *Herron*, the California Supreme Court in *Cel-Tech* rejected the balancing test in anticompetitive practices cases involving competitors. Following that decision, a split of authority has developed as to the continued viability of the balancing and FTC tests. *Herron,* 924 F. Supp. 2d at 1177–78; *Diamond Real Estate v. Am. Brokers Conduit*, No. 16-cv-03937-HSG, 2017 WL 412527, at *8 (N.D. Cal. Jan. 31, 2017) ("Under the 'unfair' prong, there is a split of authority regarding which of three different tests should be applied in consumer cases"). The better view is that the balancing and FTC tests are outdated and not viable because (1) the California Supreme Court construed the term "unfair" in the UCL in *Cel-Tech* and there is only one term "unfair" in the statue; and (2) the balancing test was vague and amorphous and thus did not establish an identifiable and concrete injury. Stern, Rutter Group Practice Guide: Business & Professions Code Section 17200 Practice § 3:119 (The Rutter Group 2017) ("it would be difficult for two reasons to continue to argue that the older tests still apply").

MEMO OF PS & AS ISO APPLE INC.'S
PARTIAL MTN TO DISMISS                                    CASE NO. 17-cv-0108-GPC-MDD

allegation that there "there cannot be a benefit to consumers when a manufacturer is permitted knowingly to market and sell a defective product" was "circular and conclusory"); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1028–29 (N.D. Cal. 2012) ("Cullen has not alleged facts about any potential utility of charging a higher subscription fee for the more accessible DVD-by-mail plan than for the streaming-only plan price. Thus, Cullen has not stated a plausible claim that the gravity of the harm outweighs the utility of the conduct"); *Stearns v. v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2009 WL 4723366, at *13 (N.D. Cal. Dec. 4, 2009) ("Plaintiffs must set forth more than conclusory allegations that mirror the elements" of an "unfair" conduct claim).[4]

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court dismiss Qualcomm's Unfair Competition Law claim (Count X) in the First Amended Counterclaims with prejudice, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim, and California Business & Professions Code section 17204, for lack of standing.

June 19, 2017                              Respectfully submitted,

By: */s/ William A. Isaacson*

Juanita R. Brooks (SBN 75934)
brooks@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com

---

[4] Qualcomm's allegation about a potential network "ripple effect" across a "whole network" is both conclusory and too speculative to make out an actionable claim. Qualcomm does not identify any such network or even allege that such harm occurred here, instead claiming that such an effect is "potential." (Counterclaims ¶¶ 242, 386) This does not sufficiently allege any harm to the public. *Iqbal*, 556 U.S. at 678 ("conclusory" allegations will not do); *Two Jinn*, 2010 WL 1329077, at *3 ("conjectural" allegations will not do).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (619) 678-5070
Facsimile: (619) 678-5099

Ruffin B. Cordell (DC Bar No. 445801;
admitted pro hac vice)
cordell@fr.com
Lauren A. Degnan (DC Bar No. 452421;
admitted pro hac vice)
degnan@fr.com
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, DC 20005
Telephone:   (202) 783-5070
Facsimile:    (202) 783-2331

William A. Isaacson (DC Bar No. 414788;
admitted pro hac vice)
wisaacson@bsfllp.com
Karen L. Dunn (DC Bar No. 1002520;
admitted pro hac vice)
kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone:   (202) 237-2727
Facsimile:    (202) 237-6131

Attorneys for Plaintiff Apple Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 19, 2017, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.


/s/ *William A. Isaacson*
WILLIAM A. ISAACSON

<u>Attorney for Plaintiff Apple Inc.</u>

CERTIFICATE OF SERVICE                                CASE NO. 17-cv-0108-GPC-MDD