Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Phone:  619-678-5070 / Fax: 619-678-5099

Ruffin B. Cordell, DC Bar No. 445801, *admitted pro hac vice*, cordell@fr.com
Lauren A. Degnan, DC Bar No. 452421, *admitted pro hac vice*, degnan@fr.com
Fish & Richardson P.C.
The McPherson Building
901 15th Street, N.W., 7th Floor
Washington, D.C.  20005
Phone:  202-783-5070 / Fax:  202-783-2331

William A. Isaacson, DC Bar No. 414788, *admitted pro hac vice,*
wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520, *admitted pro hac vice*, kdunn@bsfllp.com
Boies, Schiller & Flexner LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Phone: 202-237-2727 / Fax: 202-237-6131

Attorneys for Plaintiff Apple Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> vs. <br><br> QUALCOMM INCORPORATED, <br><br> Defendant. | Case No. 3:17-CV-00108-GPC-MDD <br><br> **APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO CONSOLIDATE CASES FOR ALL PURPOSES** <br><br> DATE:  August 18, 2017 <br> TIME:  1:30 p.m. <br> DEPT:  2D <br> JUDGE:  Hon. Gonzalo P. Curiel |

# TABLE OF CONTENTS

**Page No.**

I.  INTRODUCTION ................................................... 1

II. ARGUMENT ........................................................ 3

  A.  Both Actions Involve Common Questions of Law and Fact............................ 4

    1.  Both Actions Arise From the Same Agreements, Relationships, and Disputes .................................................... 4

    2.  The Contract Manufacturers' Counterclaims and Defenses Generally Overlap With Apple's Claims and Defenses ........................ 7

    3.  Specific Overlapping Factual Allegations ........................ 9

  B.  Consolidation Will Promote Efficiency and Conserve Resources................. 13

  C.  Consolidation Will Avoid the Risk of Inconsistent Adjudications ................ 16

  D.  Consolidation Will Not Create a Risk of Confusion or Prejudice ................. 17

III. CONCLUSION..................................................... 19

i

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Apple Inv. v. Qualcomm Inc.*,
  No. 17-CV-0108-GPC-MDD (S.D. Cal. Jun. 20, 2017), ECF 83 ................. *passim*

*Avery v. Paramo*,
  No. 13CV2261 BTM DHB, 2015 WL 5228034 (S.D. Cal. Sept. 8, 2015).... 17, 18

*Balasanyan v. Nordstrom, Inc.*,
  No. 10-CV-2671-JM-WMC, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012) .......... 15

*Campbell v. Apex Imaging Servs., Inc.*,
  No. 1:12CV1365, 2013 WL 4039390 (M.D.N.C. Aug. 7, 2013)........................ 9

*Dusky v. Bellasaire Invs.*,
  No. SACV07-874DOC, 2007 WL 4403985 (C.D. Cal. Dec. 4, 2007) ............... 18

*Erhart v. Bofi Holding, Inc.*,
  No. 15-CV-02287-BAS(NLS), 2016 WL 5369470
  (S.D. Cal. Sept. 26, 2016) ............................................................. 16

*Fialkov v. Celladon Corporation*,
  2015 WL 11658717, at *2 (S.D. Cal. Dec. 9, 2015) ............................................. 3

*Gardner v. CafePress Inc.*,
  No. 3:13-CV-1108-GPC-JLB, 2014 WL 7183600
  (S.D. Cal. Dec. 16, 2014).................................................... 3, 13, 14, 15

*In re Innotron Diagnostics*,
  800 F.2d 1077 (Fed. Cir. 1986) ...................................................... 17

*Invs. Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*,
  877 F.2d 777 (9th Cir. 1989) ............................................................. 3

*IPDEV Co. v. Ameranth, Inc.*,
  No. 14CV1303 DMS (WVG), 2014 WL 12526716 (S.D. Cal. Oct. 14, 2014) ... 15

*Janney Montgomery Scott, Inc. v. Unibank PLC*,
  No. CIV.A. 91-6616, 1994 WL 34197 (E.D. Pa. Feb. 4, 1994)............................ 6

ii

*Luminara Worldwide, LLC v. Liown Elecs. Co.,*
    No. 14-CV-3103 (SRN/FLN), 2016 WL 7131572, at *3
    (D. Minn. Mar. 29, 2016*)* ................................................................................ 13

*Makaeff v. Trump Univ., LLC*,
    No. 313CV02519GPCWVG, 2015 WL 11199827 (S.D. Cal. Nov. 23, 2015).... 18

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
    No. C04-2000CW, 2006 WL 2329466 (N.D. Cal. Aug. 9, 2006) ......................... 9

*Online Res. Corp. v. Joao Bock Transaction Sys., LLC*,
    808 F.3d 739 (8th Cir. 2015) ........................................................................... 17

*Philadelphia Indem. Ins. Co. v. Douglas E. Barnhart, Inc.*,
    No. CIV. 06CV0717 JMA, 2007 WL 2873683 (S.D. Cal. Sept. 27, 2007) ......... 13

*Qualcomm Inc. v. Compal Elecs. Inc. et al*,
    No. 3:17-cv-01010-GPC-MDD (S.D. Cal. May 17, 2017), ECF 1 .............. *passim*

*Ralink Tech. Corp. v. Lantiq Deutschland GMBH*,
    No. 5:11-CV-1549 EJD, 2012 WL 314881 (N.D. Cal. Feb. 1, 2012) ................... 9

*In re Rearden LLC*,
    841 F.3d 1327 (Fed. Cir. 2016) ....................................................................... 17

*Salem Steel N. Am., LLC v. Shanghai Shangshang Stainless Steel Pipe Co.*,
    No. CIV A 08-4827 (DMC), 2009 WL 2169243 (D.N.J. July 21, 2009) ............. 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. C 12-4114 SI, 2012 WL 6520368 (N.D. Cal. Dec. 13, 2012) ........................ 8

*Torman v. Capital All. Grp.*,
    No. 14-CV-02915-BAS WVG, 2015 WL 5827404 (S.D. Cal. Oct. 5, 2015).. 3, 16

*Truckstop.net, L.L.C. v. Sprint Corp.*,
    No. CV-05-138-S-BLW, 2006 WL 851129 (D. Idaho Mar. 30, 2006) ................. 6

*Vermont v. MPHJ Tech. Invs., LLC*,
    803 F.3d 635 (Fed. Cir. 2015) ......................................................................... 17

**Statutes**

28 U.S.C. § 1295(a)(1) ......................................................................................... 17

Fed. R. Civ. P. 42(a)......................................................................................... 3

Fed. R. Civ. P. 42(b) .................................................................................. 16, 18

iv

Plaintiff Apple Inc. ("Apple") respectfully asks this Court to consolidate the present action ("the '0108 action") with the case filed by Qualcomm, Inc. ("Qualcomm") ("the '1010 action"[1]) against Apple's Contract Manufacturers, FIH Mobile Ltd., Hon Hai Precision Industry Co., Ltd., Pegatron Corporation, Wistron Corporation, and Compal Electronics, Inc. (collectively, the "Contract Manufacturers"). Counsel for Apple requested consent to this motion and Qualcomm said it would not be in a position to take a position until after it reviewed the papers.

## I.   INTRODUCTION

For over a decade, Qualcomm has used unlawful licenses and monopolistic activities to collect royalties based on the contribution of others to cellular standards and to capitalize on unrelated innovation by companies such as Apple across the cellphone marketplace. Specifically, in order to purchase Qualcomm chips or obtain access to patents declared essential to a cellular standard, Qualcomm demands that Apple and its Contract Manufacturers pay a royalty much greater than the value of Qualcomm's contribution. Qualcomm levies a tax based on the entire price of Apple's innovative products when Qualcomm contributes only a single connectivity element that has nothing to do with the hundreds of features that make Apple's products unique. Qualcomm does this by way of creating a web of agreements made with the Contract Manufacturers and separate agreements made with only Apple.

Apple, which has now been overcharged billions of dollars by Qualcomm, brought the '0108 action against Qualcomm to recover its damages, enjoin Qualcomm from further violations of the law, and request declaratory relief. Apple also seeks redress for Qualcomm's abuse of its monopoly power in the technologies used to connect to cellular networks. Indeed, standardization for cellular networks can be beneficial, but only if those holding intellectual property incorporated into the standard make that property widely available. Accordingly, patent law is reinforced

---

[1] Case No. 3:17-CV-01010-GPC-MDD

by contractual obligations to license patents declared to the standard to be licensed on fair, reasonable, and non-discriminatory ("FRAND") terms.   But Qualcomm has breached its FRAND commitments by double-dipping, namely by selling chipsets that connect mobile phones to cellular networks, and then separately demanding additional money for a license to the purportedly necessary intellectual property.

In retaliation against Apple's Original Complaint, Qualcomm filed suit against Apple's Contract Manufacturers in Case No. 3:17-cv-01010-GPC-MDD in a blatant attempt to exert pressure on Apple to acquiesce to Qualcomm's non-FRAND royalty demands.[2]   Qualcomm chose its targets deliberately, knowing that the Contract Manufacturers merely assemble Apple's phones according to Apple's (and Qualcomm's) specifications, and that Apple is shouldering the entire royalty burden.

Both Apple's '0108 action and Qualcomm's '1010 action are predicated on the same operative facts: Qualcomm has abused its monopoly power to extort exorbitant royalties through a complex web of agreements maintained with Apple's Contract Manufacturers and Apple.   In fact, even Qualcomm recognized the similarities between the two cases and filed a notice to relate the cases.   The Contract Manufacturers likewise recognize that Qualcomm's case against them is, in large measure, about Qualcomm's dispute with Apple and have impleaded Apple in the

---

[2] In Qualcomm's press release issued to explain its decision to put the Contract Manufacturers, its own licensees, in the middle of its dispute with Apple, Qualcomm's executive vice president and general counsel doubled down on Qualcomm's insistence on non-FRAND royalties.  *See, e.g.*, https://www.qualcomm.com/news/releases/2017/05/17/qualcomm-files-breach-contract-complaint-against-apples-manufacturers-non ("It is unfortunate that we must take this action against these long-time licensees to enforce our agreements, but we cannot allow these manufacturers and Apple to use our valuable intellectual property without paying the fair and reasonable royalties to which they have agreed."). Qualcomm simply fails to acknowledge that, by licensing the Contract Manufacturers and not Apple, Qualcomm was able to demand outrageous, non-FRAND royalties because the Contract Manufacturers have no power to negotiate, given the Contract Manufacturers' critical need for access to Qualcomm chipsets for their businesses.

2

'1010 matter.  The relationships between the parties and the issues at play in both actions are inextricably intertwined.  As a result of the significant overlap between the cases, consolidating the later-filed '1010 action into the first-filed '0108 action would save the Court and the parties substantial time and effort, promote efficiency by preventing duplicative efforts, and avoid the risk of conflicting results.

## II.   <u>ARGUMENT</u>

Rule 42 empowers the Court to consolidate matters "involving a common question of law or fact" to conserve judicial resources, eliminate unnecessary repetition, and avoid the risk of inconsistent adjudications.  *See* Fed. R. Civ. P. 42(a); *Invs. Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989); *Torman v. Capital All. Grp.*, No. 14-CV-02915-BAS WVG, 2015 WL 5827404, at *1 (S.D. Cal. Oct. 5, 2015) (citing *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)).  As this Court acknowledged in *Fialkov v. Celladon Corporation*, consolidation is one way in which courts may engage in "efficient resolution" of parties' claims.  No. 15CV1458 AJB (DHB), 2015 WL 11658717, at *2 (S.D. Cal. Dec. 9, 2015).  In deciding whether to exercise its broad discretion to consolidate the actions, courts should "weigh any time and effort saved by consolidation against any 'inconvenience, delay, or expense that it would cause.'" *Gardner v. CafePress Inc.*, No. 3:13-CV-1108-GPC-JLB, 2014 WL 7183600, at *1 (S.D. Cal. Dec. 16, 2014) (citing *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984)).

3

**A.    Both Actions Involve Common Questions of Law and Fact**

**1.    Both Actions Arise From the Same Agreements, Relationships, and Disputes**

Both the '0108 and the '1010 actions arise from Qualcomm's use of its secret licensing practices with Apple's Contract Manufacturers to extort exorbitant and non-FRAND royalties from Apple.  In the '0108 action, Apple illustrates the complex web of contracts that underlie Qualcomm's licensing scheme that locks Apple into outrageous royalties:



(Apple, Inc.'s First Am. Compl. at ¶¶ 75-77, *Apple Inv. v. Qualcomm Inc.*, No. 17-CV-0108-GPC-MDD (S.D. Cal. Jun. 20, 2017), ECF 83 (hereinafter "Apple Am. Compl.").)

In the '1010 action, Qualcomm acknowledges the very same web of contracts with Apple's Contract Manufacturers and alleges that they have been breached based on Apple's refusal to condone Qualcomm's illegal scheme. (Qualcomm, Inc.'s Compl. at ¶¶ 2-11, *Qualcomm Inc. v. Compal Elecs. Inc. et al*, No. 3:17-cv-01010-GPC-MDD (S.D. Cal. May 17, 2017), ECF 1 (hereinafter "Qualcomm Compl.").) Qualcomm knows that Apple funds the royalty payments made by the Contract Manufacturers for Apple-related products, and yet sued the Contract Manufacturers alone in a maneuver apparently designed to thwart Apple from protecting its interest in that suit. (*Id.* at ¶¶ 66, 79.) Indeed, a substantial amount of the licensing fees that Qualcomm is seeking to recover from the Contract Manufacturers are royalty rebates that Qualcomm has illegally withheld from Apple. (Apple Am. Compl. at ¶ 195.)

In the '0108 action, Qualcomm alleges that Apple tortiously interfered with Qualcomm's license agreements with Apple's Contract Manufacturers by allegedly "inducing these Contract Manufacturers not to pay royalties due to Qualcomm under the license agreements," and that the Contract Manufacturers did, in fact, withhold certain royalty payments. (*See* Qualcomm Inc.'s Am. Countercl. at Count I; ¶¶ 272, 277, 285, *Apple Inv. v. Qualcomm Inc.*, No. 17-CV-0108-GPC-MDD (S.D. Cal. Jun. 20, 2017), ECF 70 (hereinafter "Qualcomm Am. Countercl.").) Similarly, in the '1010 action, Qualcomm alleges that the Contract Manufacturers breached these same license agreements by "failing to pay the royalties they owe on Apple products." (Qualcomm, Inc.'s Compl. at Counts I, III, V, VII; ¶¶ 104, 107, 109-13.) Notably, Qualcomm specifically refers to Apple's supposed "interference" as the alleged reason for the Contract Manufacturers' breach and refusal to pay royalties for Apple products. (*Id.* at ¶¶ 108, 114.)

In the '0108 action, Qualcomm also alleges that Apple tortiously interfered with these same license agreements by allegedly "obstructing Qualcomm's right to audit the Contract Manufacturers" and that such actions have caused the Contact

Manufacturers "to breach their license agreements." (*See* Qualcomm Am. Countercl. at Count I; ¶¶ 291-93.)   Furthermore, Qualcomm alleges that Apple "directed the Contract Manufacturers to misstate or manipulate the sales information of the devices they sell to Apple," which caused the Contract Manufacturers to underpay royalties to Qualcomm.   (*See id*. at Count I; ¶ 294.)   Likewise, in the '1010 action, Qualcomm alleges that the Contract Manufacturers breached these same license agreements by "failing to cooperate with Qualcomm's royalty audits" and "manipulating and misstating the sales information" for Apple products on which royalty calculations are based.   (Qualcomm Compl. at Counts I, III, V, VII; ¶¶ 104, 115-16, 119-23.)

In addition to the overlap relating to the alleged breaches of the license agreements between Qualcomm and Apple's Contract Manufacturers, the '1010 and '0108 actions share allegations and counts relating to alleged breaches of Qualcomm Master Software Agreements.   Specifically, in the '0108 action, Qualcomm claims that Apple has breached the Master Software Agreement between Qualcomm and Apple by alleging that Qualcomm's patents have been exhausted by the sale of chipset to Apple's Contract Manufacturers. (Qualcomm Am. Countercl. at Count XI; ¶¶ 232-36.)   The '1010 action implicates other Master Software Agreements, where Qualcomm asserts that the Contract Manufacturers have breached them.   (Qualcomm Compl. at Counts II, IV, VI, VIII; ¶¶ 124-26.)   Without question, this Court will have to examine the interplay between the various agreements in both actions.

The substantial overlap between Qualcomm's claims of breach of contract and tortious interference of those very same contracts supports consolidating the '0108 and '1010 actions. *See Truckstop.net, L.L.C. v. Sprint Corp.*, No. CV-05-138-S-BLW, 2006 WL 851129, at *2 (D. Idaho Mar. 30, 2006) (consolidating cases involving a tortious interference claim which hinged on the underlying breach of contract claim); *Janney Montgomery Scott, Inc. v. Unibank PLC*, No. CIV.A. 91-6616, 1994 WL 34197, at *1 (E.D. Pa. Feb. 4, 1994) ("The evidence that will be presented in the

Shepard Niles breach of contract action is also germane to the Unibank litigation, because breach of the contract by Shepard Niles is one of the elements that must be established in order to find liability on the part of Unibank for tortious interference with contract." (citing *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1388 (3d Cir. 1990))); *Salem Steel N. Am., LLC v. Shanghai Shangshang Stainless Steel Pipe Co.*, No. CIV A 08-4827 (DMC), 2009 WL 2169243, at *2-3 (D.N.J. July 21, 2009) (granting consolidation where both complaints allege similar causes of action including breach of contract and tortious interference with contract).

### 2. The Contract Manufacturers' Counterclaims and Defenses Generally Overlap With Apple's Claims and Defenses

In the '1010 action, the Contract Manufacturers assert counterclaims and defenses that overlap with the claims and defenses that Apple brings in the '0108 action. For example, both the Contract Manufacturers and Apple allege that Qualcomm has breached its FRAND commitments and engaged in SEP licensing practices that amount to antitrust violations. (Apple Am. Compl. at Count LXII; ¶¶ 196; Contract Manufacturers Countercls. at Counts I, V; ¶¶ 174, 178, 243, *Qualcomm Inc. v. Compal Elecs. Inc. et al*, No. 3:17-cv-01010-GPC-MDD (S.D. Cal. May 17, 2017), ECF 84 (hereinafter "Contract Manufacturers Countercls.").) In the '1010 action, Qualcomm seeks to recover royalties that Apple has challenged as unlawful in the '0108 action because Qualcomm has breached its FRAND obligations and violated antitrust laws. (Apple Am. Compl. at ¶ 196.) In the '0108 action, Qualcomm seeks a declaration that its license agreements with the Contract Manufacturers (who are not parties to the '0108 action) meet FRAND requirements. (Qualcomm Am. Countercls. at ¶ 313.) Furthermore, both Apple and the Contract Manufacturers have asked the Court to declare that Qualcomm's license agreements violate California's unfair competition law. (Apple Am. Compl. at Count LXIII; Contract Manufacturer Countercls. at Count XII.) However, Qualcomm asks the Court to declare the

7

contrary—that its license agreements with the Contract Manufacturers **do not** violate California unfair competition law—in the '0108 action (where the Contract Manufacturers are not parties).  (Qualcomm Am. Countercls. at ¶ 328.)  Thus, both the '0108 and '1010 actions involve common questions about Qualcomm's anticompetitive, non-FRAND licensing practices and the impact such practices have on Qualcomm's agreements with Apple's Contract Manufacturers.  Consolidation ensures against inconsistent answers to these critical questions.

Additionally, both Apple and the Contract Manufacturers assert patent-related claims or counterclaims, alleging that the same patents are not infringed by the same Apple products, are not essential to the same cellular standards, are invalid over the prior art, and are exhausted due to Qualcomm's sales of its chipsets to the Contract Manufacturers for use in Apple products.  (Apple Am. Compl. at Counts V-LIX; Contract Manufacturers Countercls. at Count XIII-LXVII.)  Moreover, both Apple and the Contract Manufacturers have asked this Court, in the alternative, to set the FRAND royalty for each patent (if any) actually infringed, essential, valid, and not exhausted.  (*Id.*)  Apple and the Contract Manufacturers further allege, again in both actions, that patent exhaustion bars Qualcomm's efforts to force Apple and the Contract Manufacturers to pay patent royalties for patents substantially embodied in the chipsets and other components that Qualcomm sells to the Contract Manufacturers intending for them to incorporate the chipsets into Apple products.  (Apple Am. Compl. at Count LIX; Contract Manufacturers Countercls. at Count LXVII.)

The substantial overlap between Apple's antitrust, unfair competition, and patent-related claims and defenses and the Contract Manufacturers' counterclaims supports consolidating the '0108 and '1010 actions.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 12-4114 SI, 2012 WL 6520368, at *2-5 (N.D. Cal. Dec. 13, 2012) (consolidating antitrust actions involving similar complaints, near identical legal and factual claims, and overlapping issues in expert reports and discovery);

*Ralink Tech. Corp. v. Lantiq Deutschland GMBH*, No. 5:11-CV-1549 EJD, 2012 WL 314881, at *1-2 (N.D. Cal. Feb. 1, 2012) (consolidating cases where issues of infringement, validity, and enforceability of the patent-in-suit were identical in the two cases, the cases implicated the sale and manufacture of the same products, and both cases were assigned to the same district judge and magistrate judge); *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, No. C04-2000CW, 2006 WL 2329466, at *1 (N.D. Cal. Aug. 9, 2006) (finding judicial efficiency is served by consolidating cases with overlapping questions of law and fact); *see also Campbell v. Apex Imaging Servs., Inc.*, No. 1:12CV1365, 2013 WL 4039390, at *2 (M.D.N.C. Aug. 7, 2013) (consolidating two actions where plaintiff's counterclaims in second action mirrored its complaint in the first action).

### 3.   Specific Overlapping Factual Allegations

In addition to the litany of overlapping claims, the parties have alleged many of the same facts in each case, such as the following:

- Qualcomm faces little to no competition in the market for chipsets that support CDMA functionality and the market for premium LTE chipsets, and possesses monopoly power in these markets.  (Apple Am. Compl. at ¶¶ 63, 64, 70, 96, 619, 620; Contract Manufacturers Countercls. at ¶¶ 46-49, 57-58, 161.)

- Qualcomm's monopoly power in these markets is shown by its high and durable market shares, substantial barriers to entry, and Qualcomm's demonstrated ability to repeatedly force Apple to accept one-sided, non-standard, and unreasonable supply terms.  (Apple Am. Compl. at ¶¶ 622-24; Contract Manufacturers Countercls. at ¶¶ 49, 278, 297.)

- Apple does not purchase chipsets directly from Qualcomm.  The Contract Manufacturers purchase the chipsets and manufacture the

iPhones and other cellular devices, which they then sell to Apple for global distribution. (Qualcomm Am. Countercls. at ¶ 138; Qualcomm Compl. at ¶¶ 65-66.)

- Qualcomm owns and licenses a portfolio of patents that Qualcomm has declared as standard essential. (Qualcomm Compl. at ¶¶ 5-6; Apple Am. Compl. at ¶ 82.)

- Qualcomm refuses to license its cellular standard-essential patents to its competitors, foreclosing them from effectively competing for sales to Qualcomm customers like Apple. (Apple Am. Compl. at ¶¶ 52, 182; Contract Manufacturers Countercls. at ¶¶ 10, 209.)

- Qualcomm requires purchasers of its chips to take separate licenses covering the use of its intellectual property. (Qualcomm Compl. at ¶¶ 38-40; Apple Am. Compl. at ¶¶ 579, 601, 638.)

- Qualcomm demands a royalty calculated based on the net selling price of the entire device (rather than a royalty specifically apportioned to represent Qualcomm's contributions). (Qualcomm Compl. at ¶ 9; Apple Am. Compl. at ¶¶ 2, 159; Qualcomm Am. Countercls. at ¶ 183.)

- Since 2011, Qualcomm has conditioned billions of dollars in lump sum payments, discounts, rebates, and royalty rebates and caps on the express agreement by Apple to purchase modem chips for Apple smartphones and tablet computers exclusively from Qualcomm. (Apple Am. Compl. at ¶¶ 96, 645; Contract Manufacturers Countercls. at ¶ 308.)

- Qualcomm has withheld the payments due to Apple under the Business and Patent Cooperation Agreement ("BPCA"). (Qualcomm Compl. at ¶ 14; Apple Am. Compl. at ¶¶ 4, 195, 275; Qualcomm Am. Countercls. at ¶ 37.)

10

- Qualcomm offered to repay Apple nearly $1 billion in withheld payments under the BPCA if Apple recanted its true and, in many cases, sworn testimony before government agencies and instead gave false testimony favorable to Qualcomm. (Apple Am. Compl. at ¶ 233; Contract Manufacturers Countercls. at ¶ 259.)

- Qualcomm is responsible for all licensing and all chip sales by Qualcomm and its subsidiaries. With respect to sales of Qualcomm modem chips to the Contract Manufacturers, Qualcomm intends for certain of the modem chips to be incorporated into Apple products and uses its contracts with Apple and Apple's Contract Manufacturers to further that end. (Apple Am. Compl. at ¶ 588; Contract Manufacturers Countercls. at ¶ 716.)

- Qualcomm's parent and subsidiary entities share such a unity of interest that the separate personalities of the corporations no longer exist. Qualcomm, QTI, QCT, and QCTAP work together and collude in refusing to sell modem chips to manufacturers unless they enter into separate patent license agreements, demonstrating a unity of interest of extracting excess royalties for Qualcomm for patents that are in fact exhausted through sale. (Apple Am. Compl. at ¶ 589; Contract Manufacturers Countercls. at ¶¶ 129, 717.)

- U.S. Patent Nos. 7,246,242; 6,556,549; 9,137,822; 7,289,630; 8,867,494; 7,095,725; 6,694,469; 9,059,819; 7,096,021; 7,061,890; 8,000,717; 8,614,975; 8,761,068; 8,861,424; 8,873,471; 8,989,140; 9,007,974; and 9,144,071 ("overlapping Patents-in-Suit") are not essential to certain cellular standards, not infringed by Apple products, and are anticipated and/or rendered obvious in view of the prior art. (Apple Am. Compl. at Counts V, VI, VIII, IX, XI, XII, XIV,

11

XV, XVII, XVIII, XX, XXI, XXIII, XXIV, XXVI, XXVII, XXIX, XXX, XXXII, XXXIII, XXV, XXVI, XXVIII, XXIX, XLI, XLII, XLIV, XLV, XLVII, XLVIII, L, LI, LIII, LIV, LVI, LVII; ¶ 146; Contract Manufacturers Countercls. at Counts XIII, XIV, XVI, XVII, XIX, XX, XXII, XXIII, XXV, XXVI, XXVIII, XXIX, XXXI, XXXII, XXXIV, XXXV, XXXVII, XXXVIII, XL, XLI, XLIII, XLIV, XLVI, XLVII, XLIX, L, LII, LIII, LV, LVI, LVIII, LIX, LXI, LXII, LXIV, LXV.)

- Qualcomm has breached its FRAND obligations by failing to offer licenses to its SEPs under reasonable rates, with reasonable terms, and on a non-discriminatory basis. (Apple Am. Compl. at ¶¶ 7-8, 177-83; Contract Manufacturers Countercls. at ¶ 359.)

- To the extent that any of the overlapping Patents-in-Suit is actually essential to a standard, valid, infringed by Apple products, and not exhausted, then Qualcomm must (a) select as a royalty base, at most, the smallest salable unit substantially embodying the applicable patent, and (b) apply to that royalty base a reasonable royalty rate that reflects the actual technical contribution to the standard that is attributable to the patent. (Apple Am. Compl. at Counts VII, X, XIII, XVI, XIX, XXII, XXV, XXVIII, XXXI, XXXIV, XXXVII, XL, XLIII, XLVI, XLIX, LII, LV, LVIII; ¶¶ 172-74; Contract Manufacturers Countercls. at Counts XV, XVIII, XXI, XXIV, XXVII, XXX, XXXIII, XXXVI, XXXIX, XLII, XLV, XLVIII, LI, LIV, LVII, LX, LXIII, LXVI.)

- Apple has agreements to indemnify the Contract Manufacturers. (Qualcomm Am. Countercls. at ¶ 199; Qualcomm Compl. at ¶¶ 2, 91,

Case No. 3:17-cv-00108-GPC-MDD

107.)

As these examples demonstrate, both actions will involve overlapping witnesses and documentary evidence related, *inter alia*, to the negotiation of and performance under the various agreements at issue, Qualcomm's conduct with respect to relevant standards organizations, the licensing practice of Qualcomm and other owners of standard essential patents, the merits of Apple's and the Contract Manufacturers' overlapping antitrust, unfair competition, and patent-related claims and counterclaims, and the propriety of Qualcomm's outrageous royalty demands.

Although Qualcomm ostensibly seeks redress from the Contract Manufacturers in the '1010 action, the fundamental dispute in both cases is between Apple and Qualcomm, as described in the '0108 action. Indeed, resolving the dispute between Apple and Qualcomm will resolve most, if not all, of the liability issues in the '1010 action.

**B.     Consolidation Will Promote Efficiency and Conserve Resources**

Consolidating the actions will conserve judicial time, effort, and resources, and promote efficiency for the parties. *See Gardner*, 2014 WL 7183600, at *2 (consolidating two matters where consolidation would "save considerable time and effort because these two cases relate to similar alleged actions of [defendant's users] and similar alleged responses to those actions by [defendants]"); *see also Philadelphia Indem. Ins. Co. v. Douglas E. Barnhart, Inc.*, No. CIV. 06CV0717 JMA, 2007 WL 2873683, at *2 (S.D. Cal. Sept. 27, 2007) (consolidating cases where "[a]ny discovery pertaining to [common questions of fact and law] can be carried out with the purpose of obtaining information for both cases with few, if any, substantive changes"); *Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. 14-CV-3103 (SRN/FLN), 2016 WL 7131572, at *3 (D. Minn. Mar. 29, 2016) (consolidating two actions when they "clearly have overlapping questions of fact and law, and indeed the parties have agreed that all discovery would be produced in both actions"). In fact, if the Court does not

13

consolidate the actions, the substantial overlap between the '0108 and '1010 actions would lead to great inefficiencies in conducting discovery separately in both cases and a wasteful duplicative expenditure of judicial resources.

As mentioned above, Apple's Contract Manufacturers pay royalties to Qualcomm for Apple products under license agreements, and Apple funds the Contract Manufacturers for these payments. (Apple Am. Compl. ¶¶ 73-75.) At the heart of both cases are the contractual relationships between the Apple, Qualcomm, and the Contract Manufacturers that result in Qualcomm's ability to charge outrageous royalties for its standard essential patents. (*See* Apple Am. Compl. at ¶ 74; Qualcomm Compl. at ¶¶ 5-7.) The intertwined nature of the contractual agreements will result in duplicative discovery requests (such as requesting documents capturing the contractual negotiations of the parties, the contracts at issue, the parties' conduct relating to those agreements), fact witnesses (such as license negotiators, engineers knowledgeable about the accused technology, the mobile chips, and the cellular standards), and expert witnesses (such as technical, economic, damages, and FRAND experts). *See Gardner*, 2014 WL 7183600, at *2 (granting a motion to consolidate where "consolidation would reduce the amount of duplicative discovery that may have been required were *Gardner II* to proceed by itself").

As a result of the substantial overlap between the two cases, it would be highly inefficient to litigate the cases separately. In the absence of consolidation, fact discovery would be highly duplicative—the bulk of the documents in each case will have to be produced twice, cross-discovery agreements will have to be negotiated, and many of the same witnesses will have to be subpoenaed and/or deposed twice. Many of the witnesses related to the Contract Manufacturers are based outside of the United States and would require burdensome procedures to be followed to obtain testimony in the '0108 action absent consolidation, adding to the inefficiency of conducting duplicate depositions for such witnesses. Furthermore, discovery orders, protective

14

orders, and motions to resolve any disputes will have to be filed separately in each action.  If the discovery schedules for the two actions are not aligned, and parties are still gathering discovery in one action when discovery is closed in the other action, divergent records could result.  The inefficiency of allowing the cases to proceed in parallel is a factor weighing heavily in favor of consolidation.  *See Balasanyan v. Nordstrom, Inc.*, No. 10-CV-2671-JM-WMC, 2012 WL 760566, at *4 (S.D. Cal. Mar. 8, 2012) ("[D]iscovery will likely overlap to a large degree, and requiring the cases to maintain their separate character would cause unnecessary repetition and inefficiency."); *IPDEV Co. v. Ameranth, Inc.*, No. 14CV1303 DMS (WVG), 2014 WL 12526716, at *2 (S.D. Cal. Oct. 14, 2014) (granting consolidation because it "would be more efficient and economical" to litigate on a consolidated basis rather than in two separate proceedings); *Gardner*, 2014 WL 7183600, at *2 ("Because [the cases at issue] share common questions of law and fact, and consolidation would reduce the duplicative efforts to try both cases separately while creating minimal increased delay or expenses, consolidation of the two cases is appropriate.").

Eliminating wasteful duplicate fact discovery would not be the only benefit of consolidation.   Expert discovery would also be streamlined and simplified. Consolidating the cases would allow the parties to submit one set of expert reports on common issues such as antitrust injury, invalidity, noninfringement, FRAND analysis, and damages, rather than duplicate reports in each action.  Court hearings would also be more efficient, as the Court would avoid duplicative case management and pretrial conferences, case tutorials, and hearings on claim construction, Daubert motions, and summary judgment motions, which otherwise would have to be filed and addressed in both the '0108 and '1010 actions.

Once discovery is complete in the consolidated cases and the Court rules on summary judgment motions, the issue of the most efficient way to organize the trial should be addressed.  Under Rule 42, the Court may "order separate trial of one or

more separate issues, claims, crossclaims, counterclaims or third-party claims." Fed. R. Civ. P. 42(b). Here, because Qualcomm's claims against the Contract Manufacturers overlap so substantially with the claims and counterclaims in the '0108 action—and, at bottom, are just transparent proxy for its dispute with Apple— resolving the dispute between Apple and Qualcomm will resolve most, if not all, of the liability issues in the '1010 action.

### C.   Consolidation Will Avoid the Risk of Inconsistent Adjudications

Consolidation is also appropriate to avoid the risk of inconsistent adjudications. *Erhart v. Bofi Holding, Inc.*, No. 15-CV-02287-BAS(NLS), 2016 WL 5369470, at *14 (S.D. Cal. Sept. 26, 2016) ("The purpose of consolidation is to enhance court efficiency and to avoid substantial danger of inconsistent adjudications." (citing *E.E.O.C.*, 135 F.3d at 551)); *Torman*, 2015 WL 5827404, at *1 (same).

Although the risk of inconsistent judicial rulings is mitigated because both actions are assigned to this Court, should discovery proceed on different tracks, different records could be potentially developed in each action. Furthermore, in a consolidated case, the Court could organize the trial in such a way as to avoid trying the same issue to different juries and, therefore, the possibility of inconsistent findings with respect to, for example, Qualcomm's anticompetitive conduct, the Contract Manufacturer's alleged breach of contract, Qualcomm's failure to comply with its FRAND obligations, whether any Qualcomm patent is actually essential, infringed by an Apple product, valid, and not exhausted, and any royalties are owed by Apple via the Contract Manufacturers.

Importantly, even if there were no inconsistencies at the trial level, without consolidation, different appellate courts would hear the appeals—the '0108 action would go to the Federal Circuit, whereas the '1010 action would go to the Ninth

16

Circuit.[3]   Should the cases be consolidated, however, both cases would be under the jurisdiction of the Federal Circuit.   *See Online Res. Corp. v. Joao Bock Transaction Sys., LLC*, 808 F.3d 739, 742 (8th Cir. 2015) ("[T]he Federal Circuit and other circuits have decided in analogous cases that appellate jurisdiction of a consolidated case lies exclusively in the Federal Circuit when at least some of the consolidated claims arise under U.S. patent law." (citing *Dorf & Stanton Commc'ns, Inc. v. Molson Breweries*, 56 F.3d 13, 14–15 (2d Cir. 1995) (concluding the Federal Circuit had exclusive appellate jurisdiction of a consolidated case under a prior version of 28 U.S.C. § 1295(a)(1)))); *In re Innotron Diagnostics*, 800 F.2d 1077, 1080 (Fed. Cir. 1986) (same).   Consolidation, therefore, would ensure that both actions are heard by a single appellate court, thus reducing the risk of inconsistent rulings.

## D.   Consolidation Will Not Create a Risk of Confusion or Prejudice

Consolidation will not create a risk of confusion or prejudice.   In determining whether or not to consolidate cases, courts consider whether consolidation will result in a more coherent and continuous story and whether or not a trier of fact will become confused.   *Avery v. Paramo*, No. 13CV2261 BTM DHB, 2015 WL 5228034, at *2 (S.D. Cal. Sept. 8, 2015) (granting consolidation where "[t]he story Plaintiff attempts to tell in both [actions] will be [more] coherent and continuous if the cases are combined, and that a trier of fact will not be confused if Plaintiff's cases are consolidated" (internal citations omitted)).   When presented together in a consolidated case, the relationships between the Contract Manufacturers, Apple, and Qualcomm should not be confusing.   If anything, consolidation is likely to clarify these

---

[3] This assumes that the Contract Manufacturers' patent-related counterclaims are not compulsory.   *See In re Rearden LLC*, 841 F.3d 1327, 1331–33 (Fed. Cir. 2016) ("But while Congress extended our jurisdiction to ensure uniformity in patent law, that extension did not reach permissive counterclaims."); *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 643–44 (Fed. Cir. 2015) (noting that the Federal Circuit has jurisdiction over cases arising under patent law, including complaints arising under patent law and compulsory counterclaims invoking patent law).

17

relationships and the contractual arrangements between the parties by giving the Court the full picture in a coherent story on the same, fully-developed record.  *See Dusky v. Bellasaire Invs.*, No. SACV07-874DOC, 2007 WL 4403985, at *5 (C.D. Cal. Dec. 4, 2007) (granting consolidation in a case with diverse relationships between parties, but where "the issues that differentiate each case appear peripheral" and "it is more likely that a consolidated trial will mitigate (rather than enhance) confusion and expense").  Furthermore, once the parties complete discovery in the consolidated case and the court rules on dispositive motions, the nature and scope of the issues remaining for trial will be clearer.  At that time, the Court and the parties should assess the risk of prejudice and the Court may organize the trial(s) so as to avoid it.  *See* Fed. R. Civ. P. 42(b).

Importantly, consolidating the actions would not delay the proceedings because both cases are in similar procedural postures.  *See Avery*, 2015 WL 5228034, at *2 ("Moreover, Plaintiff identifies no prejudice which might result if his cases are consolidated, and no delay will result since a scheduling order regulating discovery and further proceedings has yet to issue in either case." (citing *Huene*, 743 F.2d at 704)); *cf. Makaeff v. Trump Univ., LLC*, No. 313CV02519GPCWVG, 2015 WL 11199827, at *2 (S.D. Cal. Nov. 23, 2015) (denying consolidation due to the significant risk of further delays given the disparity of the two cases' postures).  Here, there is no risk of delay.  Both actions are in their early stages.  Neither case has a scheduling order in place, and the parties are still filing initial pleadings in each action.  No depositions have been scheduled, written discovery has yet to begin, and neither infringement nor invalidity contentions have been served in either case.  Qualcomm likewise would face no cognizable prejudice by consolidating the two actions, and certainly no prejudice that would outweigh the benefits of consolidation.  If anything, consolidating the two actions will streamline Qualcomm's workload in terms of discovery, motion practice, claim construction, and summary judgment.

18

1   Given the increased burden on the Court and parties if the cases were not

2   consolidated, as well as the possibility of inconsistent rulings, the Court should

3   consolidate the '0108 action and '1010 action.

4   **III.** **CONCLUSION**

5   For the foregoing reasons, the Court should exercise its discretion to consolidate

6   the '1010 action against the Contract Manufacturers into the originally filed '0108

7   action for all purposes.

8

9   Dated: July 18, 2017          Respectfully submitted,

10

11                               By:   *s/ Seth M. Sproul*
                                       Juanita R. Brooks (SBN 75934) brooks@fr.com
12                                     Seth M. Sproul (SBN 217711) sproul@fr.com
                                       FISH & RICHARDSON P.C.
13                                     12390 El Camino Real San Diego, CA 92130
                                       Phone: 619-678-5070; Fax: 619-678-5099
14

15                                     Ruffin B. Cordell (DC Bar No. 445801;
16                                     *admitted pro hac vice*), cordell@fr.com
                                       Lauren A. Degnan (DC Bar No. 452421;
17                                     *admitted pro hac vice*), degnan@fr.com
                                       FISH & RICHARDSON P.C.
18                                     The McPherson Building
19                                     901 15th Street, N.W., 7th Floor
                                       Washington, DC 20005
20                                     Phone: 202-783-5070; Fax: 202-783-2331

21
                                       Benjamin C. Elacqua (TX SBN 24055443;
22                                     *admitted pro hac vice*), elacqua@fr.com
                                       FISH & RICHARDSON P.C.
23                                     One Houston Center, 28th Floor 1221 McKinney
24                                     Houston, TX 77010
                                       Phone: 713-654-5300; Fax: 713-652-0109
25

26

27

28

19

Betty H. Chen (SBN 290588)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Phone: 650-839-5070; Fax: 650-839-5071

William A. Isaacson (DC Bar No. 414788;
*admitted pro hac vice*) wisaacson@bsfllp.com
Karen L. Dunn (DC Bar No. 1002520;
*admitted pro hac vice*) kdunn@bsfllp.com
Amy J. Mauser (DC Bar No. 424065;
*admitted pro hac vice*) amauser@bsfllp.com
Christopher G. Renner (DC Bar No. 1025699;
*admitted pro hac vice*) crenner@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue
Washington, DC 20005
Phone: 202-237-2727; Fax: 202-237-6131

Steven C. Holtzman (SBN 144177)
sholtzman@bsfllp.com
Gabriel R. Schlabach (SBN 304859)
gschlabach@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Phone: 510-874-1000; Fax: 510-874-1460

Meredith R. Dearborn (SBN 268312)
mdearborn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
425 Tasso Street, Suite 205
Palo Alto, CA 94307
Phone: 650-445-6400; Fax: 650-329-8507

Attorneys for *Plaintiff Apple Inc.*

Case No. 3:17-cv-00108-GPC-MDD

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 18, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Executed on July 18, 2017, at San Diego, California.


*/s/ Seth M. Sproul*
Seth M. Sproul