Evan R. Chesler (N.Y. Bar No. 1475722; *pro hac vice*)
echesler@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

David A. Nelson (Ill. Bar No. 6209623; *pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Karen P. Hewitt (SBN 245309)
kphewitt@jonesday.com
JONES DAY
12265 El Camino Real, Suite 300
San Diego, California 92130
Telephone: (858) 314-1200
Facsimile: (858) 314-1150

[*Additional counsel identified on signature page*]

*Attorneys for Defendant*
QUALCOMM INCORPORATED

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> QUALCOMM INCORPORATED, <br><br> Defendant. | No. 17-cv-0108-GPC-MDD <br><br> **REDACTED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT QUALCOMM INCORPORATED'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> Date: September 29, 2017 <br> Time: 1:30 p.m. <br> Courtroom: 2D <br> Judge: Hon. Gonzalo P. Curiel |

| | |
|---|---|
| 1 | QUALCOMM INCORPORATED, |
| 2 |     Counterclaim-Plaintiff, |
| 3 | v. |
| 4 | APPLE INC., |
| 5 | |
| 6 |     Counterclaim-Defendant. |

Defendant Qualcomm, Incorporated ("Qualcomm") hereby submits the following memorandum of points and authorities in support of its motion to dismiss Claims For Relief Numbers 32-58 of Plaintiff Apple Inc.'s First Amended Complaint ("FAC").

## INTRODUCTION

This motion requests dismissal of declaratory counts on the nine "additional" patents-in-suit, as to which there is no controversy and thus no subject matter jurisdiction. These claims are a product of Apple's worldwide strategy against Qualcomm to create vexatious and costly litigation, coupled with an affirmative interference with Qualcomm's ability to collect undisputed royalties in the interim. Apple's litigation strategy is simply to hold out until Qualcomm acquiesces and agrees to license Apple at below-FRAND royalties for Qualcomm's entire cellular-essential patent portfolio and a below-market rate for the rest of its patents. By seeking the functional equivalent of an advisory opinion, Apple invites this Court to indulge its strategy of oppression. Courts are not permitted to provide parties with such advisory opinions, because such decisions waste valuable judicial resources without substantially advancing or resolving the conflict between the parties. This Court should, therefore, decline Apple's invitation.

The issue here is straightforward. Apple's FAC seeks declaratory judgments of invalidity, non-infringement, and FRAND royalties as to nine "additional" patents-in-suit (in addition to the nine in its original Complaint), despite the fact that the parties have never discussed those patents, and Qualcomm has never accused Apple of infringing those patents. There is therefore no controversy for the court to resolve, and hence no subject matter jurisdiction. As Apple's pleading makes clear, the sole basis for Apple's claims for declaratory relief is that the "additional" patents were included on a list of thousands of patents Qualcomm has declared as *potentially* essential to cellular standards that Apple *may or may not* practice. After receiving that list, Apple stated that the list did not constitute an infringement

allegation and demanded more detail from Qualcomm.  At Apple's request, Qualcomm provided Apple with claim charts on some specific patents from the list, and agreed to provide a second batch of claim charts at the parties' next meeting.  Apple sued Qualcomm before that next meeting occurred.  None of the nine "additional" patents-in-suit were included in the claim charts that Qualcomm provided to Apple.

Under well-established law, there is no controversy on these nine patents and no subject matter jurisdiction over Apple's declaratory judgment claims related to these patents.  Indeed, if declaratory relief in federal court were to exist for every patent simply because it was identified as potentially essential to a standard, that holding would create federal jurisdiction for claims related to every patent declared as potentially essential to any such standard.  For the reasons set forth below, that is not, and cannot be, the law.

## RELEVANT ALLEGATIONS OF THE FAC

Rather than summarize Apple's entire 158-page FAC, Qualcomm sets forth below only the allegations relevant to the arguments asserted in this motion.

Apple's FAC asserts, for each of 18 specific patents-in-suit, claims for a declaration of non-infringement, invalidity, and FRAND royalties.  (*See*, *e.g.*, FAC ¶¶ 281-95).  As to each, Apple seeks a declaration that it "does not infringe and has not infringed" each patent-in-suit, that "one or more claims of [each patent-in-suit] is invalid," and that the Court "set[] a FRAND royalty" for each.  (*See* FAC ¶¶ 286, 291, 295).  The FAC divides the patents-in-suit into two groups.  Apple calls the first nine patents the "Original Patents-in-Suit."  (FAC ¶ 127).  Apple's original Complaint asserted declaratory judgment claims as to these nine patents.  (Compl. ¶¶ 123-131).  Apple's FAC added declaratory judgment claims relating to nine additional patents, that Apple calls the "Additional Patents-in-Suit."  (FAC ¶ 146).

Apple's purported basis for the Court's jurisdiction over its claims relating to the Additional Patents-in-Suit is that they "appear on the March 18, 2016 list that

Qualcomm sent to Apple as alleged evidence that Apple should pay Qualcomm's usurious non-FRAND royalties." (FAC ¶ 146). The entire text of the March 18, 2016 letter follows:

> Attached please find charts listing the patents Qualcomm Incorporated has disclosed to ETSI as potentially containing ESSENTIAL IPR (as that term is used in the ETSI IPR Policy). The charts also list the portions of the standards to which each of the patents relate [sic].
>
> Please let us know whether any of the listed portions of the standards are not implemented in the Apple products that are UMTS- or LTE-capable. I look forward to discussing further exchanges of information with you.

(Declaration of Nathan Hamstra ("Hamstra Decl.") Ex. 1).[1] The charts attached thereto consist of 1,975 pages of patent numbers (for over three thousand U.S. and Chinese patent families), titles, abstracts, and identifications of particular specifications of the cellular communication standards for which particular patents were disclosed to the relevant standard setting organization as potentially essential to the standards. The letter conspicuously did not: 1) accuse Apple of infringing any particular patent on the list, 2) state that any particular patent was *actually* essential to the standard, as opposed to declared *potentially* essential (according to the policies of the relevant standard settings organizations[2]), or 3) identify any particular

---

[1] This letter should be considered by the Court because Apple's FAC depends on this letter, it is being submitted herewith, and there should be no dispute over its authenticity. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Even if it did not satisfy those conditions, on a motion to dismiss for lack of subject matter jurisdiction, "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction," without converting the motion into one for summary judgment. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

[2] The relevant standards developing organizations request early disclosure of potential intellectual property rights concerning specifications under development. However, the invention that is ultimately patented may in some instances deviate from the specifications that are ultimately adopted.

portion of a cellular standard that Qualcomm contended Apple implemented. Apple responded to Qualcomm's March 18, 2016 letter on April 18, 2016. (Hamstra Decl. Ex. 2).[3] In that response, Apple requested that "███████████████████████████████████████████████████████████████████████████████████████████████████████████████." *Id.* at 2.

As Apple pleads, Qualcomm ultimately did provide Apple with claim charts in December of 2016, *i.e.*, charts that identify certain claims of certain patents that read on particular portions of cellular standards—as part of the parties' on-going negotiations. (*See* FAC ¶¶ 132-136 (referring to "infringement allegations" presented during "the parties' December 2016 in-person meetings")). It was from this set of patents (charted against the cellular standards rather than Apple's products) that Apple selected a portion of the *Original* Patents-in-Suit. But none of the *Additional* Patents-in-Suit were included in the claim charts provided to Apple during those 2016 meetings.

## ARGUMENT

**I.  APPLE'S DECLARATORY JUDGMENT CLAIMS ON THE ADDITIONAL PATENTS-IN-SUIT SHOULD BE DISMISSED.**

A.  <u>Legal Standards for Declaratory Judgment Act Claims.</u>

"[T]he Declaratory Judgment Act requires the existence of an actual case or controversy between the parties before a federal court can constitutionally assume

---

[3] Apple's declaratory judgment claims depend on the licensing correspondence between the parties, and the Court should therefore consider this letter as well. *Knievel*, 393 F.3d at 1076; *see McCarthy*, 850 F.2d at 560 (affirming the district court's reliance on materials outside the pleadings in deciding a motion to dismiss for lack of subject matter jurisdiction). In particular, the Court should consider this letter because it provides necessary context to Apple's allegations in its FAC. Specifically, it is Apple's response to the March 18, 2016 letter relied on by Apple at, *e.g.*, ¶¶ 138 and 146 of its FAC.

jurisdiction." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955 (Fed. Cir. 1987) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937)).  "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," such that the dispute is "real and substantial" and "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id*.  The Federal Circuit has emphasized that "[t]here is . . . no facile, all-purpose standard to police the line between declaratory judgment actions which satisfy the case or controversy requirement and those that do not." *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1328 (Fed. Cir. 2012).  For this reason, the court must calibrate its analysis to the facts of this particular case to determine whether "all the circumstances" demonstrate a case or controversy. *See MedImmune*, 549 U.S. at 127.

Declaratory judgment "jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement." *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1355 (Fed. Cir. 2013).  "*MedImmune* did not hold that a patent can always be challenged whenever it appears to pose a risk of infringement[;] . . . declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, ***without some affirmative act by the patentee***." *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010) (citations omitted, emphasis added); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008)

("***absent action by the patentee***, 'a potential competitor . . . is legally free to market its product in the face of an adversely-held patent.'") (emphasis added) (citing *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1345 (Fed. Cir. 2007)). "[A] fear of future harm that is only subjective is not an injury or threat of injury caused by the defendant that can be the basis of an Article III case or controversy." *Prasco*, 537 F.3d at 1338 (citing *City of L.A. v. Lyons*, 461 U.S. 95 (1983)); *see also Indium Corp. of Am. v. Semi–Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) ("A purely subjective apprehension of an infringement suit is insufficient to satisfy the actual controversy requirement."). "[I]t is the *reality* of the threat of . . . injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *Lyons*, 461 U.S. at 107 n. 8.

Even if the Court were to find that subject matter jurisdiction exists over these claims, the Court has discretion to dismiss them. "[T]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "If a district court's decision is consistent with the purposes of the Declaratory Judgment Act and considerations of wise judicial administration, it may exercise its discretion to dismiss (or stay) the case." *Innovative Therapies*, 599 F.3d at 1384–85; *see also AstraZeneca LP v. Breath Ltd.*, 542 F. App'x 971, 981 (Fed. Cir. 2013), *as amended on reh'g in part* (Dec. 12, 2013) ("The decision whether to accept jurisdiction of a Declaratory Judgment counterclaim is quintessentially left to the discretion of the district court.").

### B. Apple's Declaratory Judgment Claims Regarding the Additional Patents-in-Suit Fail To Establish Subject Matter Jurisdiction.

Apple's FAC fails to allege facts sufficient to show a definite, concrete dispute over the Additional Patents-in-Suit of sufficient immediacy and reality to warrant issuing declaratory judgment. Qualcomm has never accused Apple of infringing any of the Additional Patents-in-Suit, or any foreign counterpart to them.

Qualcomm has also never asserted the Additional Patents-in-Suit (or any foreign counterpart) in an infringement action against any party. Moreover, Qualcomm has not stated that these particular patents are *actually* essential to any part of a standard practiced *by Apple*. Cellular standards relate not only to cell phones, but also to base stations and other network components, such that patents may be essential to practicing a standard, even though they are not practiced by a cell phone. Other patents may be essential to standards that have yet to be implemented, and therefore also would not be practiced by a cell phone. The 1,975 page list provided to Apple was simply an identification by Qualcomm of the universe of patents that it had previously declared as potentially essential to some aspect of a cellular standard. Qualcomm did not take an affirmative act to indicate to Apple that any of the Additional Patents-in-Suit in the list it provided was infringed by Apple.

  Apple's sole basis for contending that there is a substantial case and controversy regarding the Additional Patents-in-Suit is that they appeared in the March 18, 2016 list that Qualcomm sent to Apple of patents that Qualcomm declared to ETSI as potentially essential to a standard. (FAC ¶¶ 146-47). But it is obvious that a list of potentially essential patents is not the same as a list of actually essential patents; nor did Qualcomm identify to Apple in the March 18 letter any patents Qualcomm believed Apple infringed. In fact, Apple agreed that Qualcomm, in its March 18 letter, did not allege any infringement against Apple, stating that "[REDACTED]." (Hamstra Decl. Ex. 2). Instead, Qualcomm acceded to Apple's request to provide claim charts for specific patents (none of which are the Additional Patents-in-Suit) that Qualcomm believed to apply to portions of ETSI cellular specifications in December of 2016 as a part of an agreed-upon process between the companies to continue the licensing negotiations—a process that Apple cut short by filing this action.

  Apple's claims should be dismissed because the mere identification of declared *potentially*-essential patents within a large patent portfolio does not create

subject matter jurisdiction as to every patent in that portfolio.  The mere knowledge or identification of a patent does not create a reasonable apprehension of suit. *SanDisk Corp.*, 480 F.3d at 1380–81.  If that were true, there would presently be a justiciable dispute as to literally every patent declared as potentially essential to every standard in the world.

*Applera v. Michigan Diagnostics, LLC*, 594 F. Supp. 2d 150 (D. Mass 2009) is squarely on point, although the plaintiff's position in that case was far less extreme than Apple's position here.  In that case, the patentee provided to another party a list of sixty-two patents, requesting that the other party "review our U.S. patents listed on the enclosure to this letter" and proposing "a meeting to discuss your relevant products in light of our patents with a view toward entering into licensing discussions." *Id*. at 159.  The parties exchanged several more pieces of correspondence, closing with the accused infringer stating that it "had previously asked [patentee] to identify which claims of which of your patents you believe the products of [accused infringer] infringe.  Once we know this, we can certainly be in a better position to evaluate your position." *Id*. at 159-60.  The patentee then filed suit alleging infringement of seven of the sixty-two patents. *Id*. at 155.  The accused infringer counterclaimed for declaratory judgment of non-infringement of all sixty-two patents, and the patentee moved to dismiss as to the fifty-five unasserted patents. *Id*.

The *Applera* court dismissed the declaratory judgment action as to the fifty-five unasserted patents, noting that the patentee merely "suggested a review of its entire patent portfolio, but it did not make any specific allegations of infringement except within its pleading in this lawsuit." *Id*. at 160.  The court held that "[t]he communications between the parties have not created a case or controversy as to whether the fifty-five additional [] patents not sued upon are infringed by [the accused infringer]." *Id*.  The court found that "[t]he correspondence between the parties itself bespeaks the lack of any specific dispute," relying on the

correspondence that stated "we can certainly be in a better position to evaluate your position" once the accused infringer understands which patents the patentee contended were infringed. *Id.*

The parallels between *Applera* and this case are compelling. In both cases, the patentee identified numerous patents within a broad portfolio as part of licensing discussions. In both cases, the patentee did not identify any specific patents from within the portfolio as infringed by the declaratory judgment plaintiff. And in both cases, the patentee later identified specific patents it believed read on a particular product or standard. Thus, as in *Applera*, Apple's claims as to patents not subject to any specific infringement charge should be dismissed. *See also Samsung Elecs. Co. v. Texas Instruments Inc.*, 1996 WL 343330, at *4-6 (N.D. Tex. Apr. 18, 1996) (dismissing declaratory judgment claims as to thousands of patents merely discussed during licensing negotiations).

As discussed, the Declaratory Judgment Act requires some affirmative act by the patentee to establish jurisdiction. *Prasco*, 537 F.3d at 1338. The lack of such an affirmative act "creates a high barrier to proving that [the plaintiff] faces an imminent risk of injury." *Id.* at 1340. Here there is no "affirmative act" that could demonstrate "an intent to enforce" an Additional Patent-in-Suit, and as a result Apple cannot surmount the "high barrier" to jurisdiction. As requested by the standards developing organizations, Qualcomm merely declared certain patents as *potentially* essential to a standard covering a huge swath of technology, from protocols that must be obeyed by a cell phone in an LTE network to protocols that must be obeyed deep in the core routing networks that form the internet, and far from any cell phones. (*See* FAC ¶ 330.) Although some of those technologies may be relevant to Apple's products and others may not be, the list was merely an identification of the universe of patents that Qualcomm has declared as potentially essential to cellular standards. Apple's position that every patent declared as potentially essential to any standard at any time can be sued upon, merely by virtue

of that declaration, is incorrect as a matter of law because there is no definite and concrete dispute with respect to any of those patents, much less each and every one. *MedImmune*, 549 U.S. at 127.

## CONCLUSION

For the foregoing reasons, Qualcomm respectfully requests that the Court grant its motion in its entirety.

DATED: July 21, 2017            Respectfully submitted,

By  /s/ David A. Nelson
**CRAVATH, SWAINE & MOORE LLP**
Evan R. Chesler (*pro hac vice*)
(N.Y. Bar No. 1475722)
echesler@cravath.com
Keith R. Hummel (*pro hac vice*)
(N.Y. Bar No. 2430668)
khummel@cravath.com
Richard J. Stark (*pro hac vice*)
(N.Y. Bar No. 2472603)
rstark@cravath.com
Antony L. Ryan (*pro hac vice*)
(N.Y. Bar No. 2784817)
aryan@cravath.com
Gary A. Bornstein (*pro hac vice*)
(N.Y. Bar No. 2916815)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
(N.Y. Bar No. 4331609)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
(N.Y. Bar No. 4339651)
yeven@cravath.com
Vanessa A. Lavely (*pro hac vice*)
(N.Y. Bar No. 4867412)
vlavely@cravath.com
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
David A. Nelson (*pro hac vice*)
(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
Stephen Swedlow (*pro hac vice*)
(Ill. Bar No. 6234550)
stephenswedlow@quinnemanuel.com
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401

Alexander Rudis (*pro hac vice*)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

**JONES DAY**
Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone:  (858) 314-1200
Facsimile:  (858) 345-3178

*Attorneys for Defendant and Counterclaim-Plaintiff*
**QUALCOMM INCORPORATED**

|   |   |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on July 21, 2017, the foregoing document was filed |
| 3 | electronically on the CM/ECF system, which caused all CM/ECF participants to be |
| 4 | served by electronic means. |

*/s/ David A. Nelson*

-12- Case No. 17-cv-0108 GPC MDD
MEMO ISO QUALCOMM'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FAC