Juanita R. Brooks, SBN 75934
brooks@fr.com
Seth M. Sproul, SBN 217711
sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA  92130
Tel.:  619-678-5070/Fax:  619-678-5099

Ruffin B. Cordell, DC Bar No. 445801, *admitted PHV*
cordell@fr.com
Lauren A. Degnan, DC Bar No. 452421, *admitted PHV*
degan@fr.com
The McPherson Building
901 15th Street, N.W., Suite 700
Washington, DC  20005
Tel.:  202-783-5070/Fax:  202-783-2331

William A. Isaacson, DC Bar No. 414788, *admitted PHV*
wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520, *admitted PHV*
kdunn@bsfllp.com
Michael J. Gottlieb, DC Bar No. 974960, *admitted PHV*
mgottlieb@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC  20005
Tel.:  202-237-2727/Fax:  202-237-6131

[*Additional counsel identified on signature page*]

Attorneys for Plaintiff Apple Inc.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC., | Case No. 17-CV-0108-GPC-xMDD |
| Plaintiff, | **APPLE INC.'S OPPOSITION TO QUALCOM INCORPORATED'S MOTION FOR ANTI-SUIT INJUNCTION** |
| v. | |
| QUALCOMM INCORPORATED, | |
| Defendant. | |
| | Judge:        Gonzalo P. Curiel |
| | Trial Date:   TBD |
| | Date:         August 18, 2017 |
| | Time:         1:30 p.m. |
| | Courtroom:    2D |

1   QUALCOMM INCORPORATED,

2          Counterclaimant,

3      v.

4   APPLE INC.,

5          Counter-Defendant.

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................1

II. BACKGROUND ................................................................................4

    A.    Apple's Release of the iPhone and iPad, Which Rely on Baseband Chipsets to Connect to Cellular Networks. .............................................4

    B.    Qualcomm and its FRAND Commitments. ............................................4

    C.    Qualcomm's Exorbitant Royalty Rates.................................................5

    D.    Qualcomm's Retaliation Against Apple for Responding to Regulatory Agencies about Qualcomm's Practices.................................................6

    E.    Apple Files the Instant Action. .............................................................7

    F.    Apple Files Non-duplicative Actions in the United Kingdom, Japan, China, and Taiwan. ...........................................................................8

    G.    Qualcomm Files Complaints with the International Trade Commission and German Courts. ...........................................................................8

III.    QUALCOMM'S REQUEST FOR AN ANTI-SUIT INJUNCTION SHOULD BE DENIED. ................................................................................9

    A.    Qualcomm Is Not Entitled to Injunctive Protection for a Global FRAND Determination. ...........................................................................9

    B.    Anti-Suit Injunctions Should Rarely Be Granted. ...............................11

    C.    Qualcomm Has Not Satisfied the Requirements for an Anti-Suit Injunction. ...........................................................................11

        1.    The Issues in the Foreign Actions Are Not the Same.................11

            (a)    Qualcomm Mischaracterizes the Instant Action. .............14

            (b)    The Instant Action Will Not Dispose of *All* the Issues in the Foreign Actions. .......................................................14

        2.    Qualcomm Has Not Shown that any *Unterweser* Factors Apply. ...........................................................................17

            (a)    The Foreign Actions Are Not Vexatious or Oppressive. . 17

i

     (b)  Equitable Considerations Do Not Support Granting the
        Injunction. ...................................................................................18

       (i)  The Foreign Actions Are Not a Pretext for
          Withholding Royalties. ...........................................18

       (ii)  *Granting* the Injunction Would Delay the
          Resolution of the Dispute. ......................................19

       (iii) Litigating the Foreign Actions Will Not Cause
          Duplication of Effort. .............................................20

       (iv) The Mere Possibility of Inconsistent Results Is
          Insufficient to Provide Injunctive Relief. ...............20

   3.  Granting the Injunction Would Do Intolerable Harm to
     International Comity. .....................................................................21

  D.  The Traditional Preliminary Injunction Factors Are Not Satisfied. .....22

   1.  Qualcomm Is Not Likely to Succeed on the Merits. ..................22

   2.  Qualcomm Has Not Met the Other Injunction Factors ...............23

  E.  If an Injunction Is Issued, it Must Also Issue Against Qualcomm's
    Complaint Before the ITC. ...................................................................24

IV.  CONCLUSION ...............................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Albemarle Corp. v. AstraZeneca*,
   2009 WL 902348 (D.S.C. Mar. 31, 2009)....................................................20

*Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*,
   2015 WL 1802467 (N.D. Cal. Apr. 20, 2015).............................................10

*Applied Med. Distribution Corp. v. Surgical Co. BV*,
   587 F.3d 909 (9th Cir. 2009) ..............................................1, 11, 12, 22

*Broadcom Corp. v. Qualcomm Inc.*,
   501 F.3d 297 (3d Cir. 2007) ...................................................................5

*E. & J. Gallo Winery v. Andina Licores S.A.*,
   446 F.3d 984 (9th Cir. 2006) ..................................................................1

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
   542 U.S. 155 (2004)..............................................................15, 16, 22

*FTC v. Qualcomm Inc.*,
   2017 WL 2774406 (N.D. Cal. June 26, 2017)...........................................9

*FTC v. Qualcomm Inc.*,
   No. 17-CV-00220-LHK-NMC (N.D. Cal. July 7, 2017) ...........................3, 6, 13

*Glob. Commodities Trading Grp., Inc. v. Beneficio De Arroz Choloma, S.A.*,
   2016 WL 4041219 (E.D. Cal. July 28, 2016)...........................................23

*Imhaeuser v. Buerk*,
   101 U.S. 647 (1880)...............................................................................10

*Impression Products, Inc. v. Lexmark International, Inc.*,
   137 S. Ct. 1523 (2017)...........................................................................14

*In re Millenium Seacarriers, Inc.*,
   458 F.3d 92 (2d Cir. 2006) .....................................................................23

*In re Unterweser Reederei, Gmbh*,
   428 F.2d 888 (5th Cir. 1970) ...................................................................3

*Interdigital Tech. Corp. v. Pegatron Corp.*,
  2015 WL 3958257 (N.D. Cal. June 29, 2015)................................................passim

*Juniper Networks, Inc. v. Bahattab*,
  2009 WL 6781382 (D.D.C. Aug. 14, 2009).........................................................15

*Kaepa, Incorporated v. Achilles Corporation*
  76 F.3d 624 (5th Cir. 1996) ............................................................................20

*Kokkonen v. Guardian Life Insurance Co. of America*,
  511 U.S. 375 (1994)...........................................................................................1

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
  2011 WL 13152817 (N.D. Cal. July 14, 2011) ...................................................21

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)...............................................................................................3

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
  134 S. Ct. 843 (2014) .......................................................................................10

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) .....................................................................11, 15

*Nike, Inc. v. Cardarelli*,
  2015 WL 853008 (D. Or. Feb. 26, 2015) ...........................................................11

*Power Integrations, Inc. v. Chan-Woong Park*,
  2017 WL 733224 (N.D. Cal. Feb. 24, 2017)......................................................15

*Qualcomm Inc. v. Apple Inc.*,
  No. 17-CV-01375-JAH-MDD (S.D. Cal. 2017) .................................................18

*Seattle Totems Nat. Hockey Club, Inc. v. Nat. Hockey League*,
  652 F.2d 852 (9th Cir. 1981) ............................................................................20

*Software AG, Inc. v. Consist Software Solutions., Inc.*,
  323 F. App'x 11 (2d Cir. 2009)..........................................................................23

*Stein Assocs., Inc. v. Heat & Control, Inc.*,
  748 F.2d 653 (Fed. Cir. 1984) ............................................................................1

*Strategic Intent, LLC v. Strangford Lough Brewing Co.*,
  No. 09-CV-309-RHW (E.D. Wa. Sept. 9, 2010)..................................................17

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktienbologet LM Ericsson*,
    No. 14-CV-00341-JVS-DFM (C.D. Cal. June 29, 2015) ...................................13

*Voda v. Cordis Corp.*,
    476 F.3d 887 (Fed. Cir. 2007) ......................................................................4, 15, 21

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)...........................................................................................22

*Zynga, Inc. v. Vostu USA, Inc.*,
    816 F.Supp.2d 824 (N.D. Cal. 2011)...................................................................16

**Statutes**

15 U.S.C. § 2..............................................................................................................8

15 U.S.C. § 6a ....................................................................................................2, 16

California Civil Code § 1671(b) ...............................................................................7

APPLE'S OPP. TO QUALCOMM'S MOT. FOR ANTI-SUIT INUNCTION
CASE NO. 3:17-CV-0108-GPC-MDD

# I.    INTRODUCTION

Defendant and Counterclaimant Qualcomm Incorporated ("Qualcomm") asks this Court to issue an extraordinary worldwide injunction to halt lawsuits that Plaintiff and Counter Defendant Apple Inc. ("Apple"), and its subsidiaries, have filed in the United Kingdom ("UK"), China, Japan, and Taiwan (the "Foreign Actions"), even though this case cannot and will not decide the parties' claims in those suits.  Ignoring that anti-suit injunctions may only be granted "sparingly," *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006), Qualcomm's proposed injunction would prohibit the courts of four foreign sovereigns from considering the merits of the Foreign Actions because Qualcomm believes it would be more convenient to adjudicate those suits here.  But convenience does not permit "courts of limited jurisdiction," *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994), to assume the role of a global patent and competition tribunal.  Apple filed its Foreign Actions in the jurisdictions in which foreign law, U.S. law, international comity, and common sense dictate they be filed.

Qualcomm has failed to meet its burden to satisfy each of the three established requirements for an antisuit injunction.

*First*, Qualcomm cannot establish that this suit is "capable of disposing of *all the issues* in the foreign action." *Applied Med. Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909, 915 (9th Cir. 2009) (emphasis added).  The Foreign Actions raise claims under foreign intellectual property and competition laws, as well as foreign damages issues, none of which could plausibly be resolved by the instant action. For example, Apple's claims challenging Qualcomm's foreign patents as exhausted, invalid, not infringed and not standard essential could not be resolved by this action even if Apple attempted to assert them here.  *Stein Assocs., Inc. v. Heat & Control, Inc.*, 748 F.2d 653, 658 (Fed. Cir. 1984).  Likewise, the U.S. antitrust laws do not regulate purely foreign commerce.  15 U.S.C. § 6a.

1    Qualcomm has not attempted to show that Apple's foreign patent and antitrust

2  claims are entirely duplicative of this action.  Instead, Qualcomm's objection to the

3  Foreign Actions relies upon its incorrect contention that the Foreign Actions are

4  duplicative of the parties' supposed request that this Court order royalties worldwide

5  for Qualcomm's declared cellular SEPs.  That contention is incorrect because Apple

6  has not requested a determination of a fair, reasonable, and non-discriminatory

7  ("FRAND") royalty rate for Qualcomm's worldwide portfolio of cellular standard

8  essential patents ("SEPs"); rather, the proposed remedy of a worldwide FRAND

9  determination is found *exclusively* in Qualcomm's counterclaims in this action.  In

10  this case and elsewhere, Apple has requested declarations of non-infringement and

11  invalidity of specific patents and has not requested, and will not request, a

12  worldwide FRAND determination of Qualcomm's asserted SEP portfolio.  Apple

13  also will not seek a royalty determination before the relevant patent issues are

14  resolved in a case.  There is accordingly no conduct by Apple that this Court may

15  enjoin.

16    There is also no authority for Qualcomm's proposed worldwide portfolio

17  FRAND determination that it seeks to shelter with a proposed injunction.  Such a

18  determination would violate due process by making royalty awards for an

19  innumerable number of patents without ever reviewing each patent to determine

20  whether it is standard-essential, not exhausted, infringed, and valid.  Qualcomm

21  itself has argued that such a determination is impermissible by a U.S. court in the

22  FTC's pending antitrust challenge to Qualcomm's licensing model: "Any requested

23  relief that would apply to the licensing of patents issued by a jurisdiction other than

24  the United States would be barred as beyond the reach of the U.S. antitrust laws,

25  including the FTC Act, and/or as an improper application of those laws due to

26  principles of international comity." Answer at 19, *FTC v. Qualcomm Inc.*, No. 17-

27  CV-00220-LHK-NMC (N.D. Cal. July 7, 2017), ECF No. 145.

28    It is important to understand Qualcomm's present motion in context: this is

the second of two preliminary injunction motions Qualcomm has filed to advance its demands for billions in disputed royalty payments while avoiding consideration of the patents for which the royalties would be paid.  In the first injunction motion against Apple's contract manufacturers, Qualcomm demands immediate payment of ongoing royalties before the Court resolves disputes over those royalties. Qualcomm says that without immediate payment of those disputed royalties, Apple and its Contract Manufacturers will receive something (Qualcomm's patents) for nothing.  This Qualcomm assertion of royalty entitlement is bizarre because Qualcomm's double dipping and exorbitant royalties on top of chip prices are the subject of challenges by the FTC, consumer class actions, Apple, Apple's Contract Manufacturers, and competition authorities around the globe.   Perhaps even stranger, Qualcomm refuses to show the Court its "something" (the actual standard essential patents) to justify its disputed royalties.  With the same goals in mind, in its second injunction motion, Qualcomm demands that this Court assert exclusive worldwide jurisdiction over, and then make a royalty determination for, Qualcomm's declared SEPs—again without actually reviewing those patents.

*Second*, because the issues in all the actions are not the same, and the domestic action will not dispose of the Foreign Actions, Qualcomm cannot satisfy the second requirement for obtaining an anti-suit injunction—showing that any of the *Unterweser*[1] factors apply.  Each of Qualcomm's arguments depends upon assumptions regarding the overlap between this action and the Foreign Actions that collapse under scrutiny.  The only pending action that would deny this Court the authority to decide the issues in this case is Qualcomm's own action before the International Trade Commission asking the ITC to ban the import of iPhones and iPads if they contain the chips of Qualcomm's only current competitor, Intel, but

---

[1] *In re Unterweser Reederei, Gmbh*, 428 F.2d 888 (5th Cir. 1970), aff'd on rehearing en banc, 446 F.2d 907 (1971), rev'd on other grounds sub nom, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).

1   Qualcomm has exempted that action from its proposed injunction.

2   *Third*, granting Qualcomm's requested injunction would violate principles of

3 international comity.  U.S. courts should not resolve foreign patent infringement

4 claims as a matter of comity, *see Voda v. Cordis Corp.*, 476 F.3d 887, 898, 900-05

5 (Fed. Cir. 2007), nor does the respect owed to foreign courts permit this Court to

6 enjoin those courts' consideration of antitrust claims under their own laws.  This is

7 especially true here where regulators in the foreign jurisdictions began investigating

8 Qualcomm's anti-competitive conduct long before this action was filed.

9   Finally, Qualcomm has failed to meet the other standards for a preliminary

10 injunction.  Accordingly, its motion should be denied.

11 **II.    BACKGROUND**

12 **A.    Apple's Release of the iPhone and iPad, Which Rely on Baseband
13 Chipsets to Connect to Cellular Networks.**

14   In 2007, Apple released the iPhone, a revolutionary new product that

15 combined a mobile phone, widescreen iPod music player, and a breakthrough

16 computer/internet communications device into a small and lightweight handheld

17 device.  Several years later, in 2010, Apple created and defined an entirely new

18 category of devices when it released the iPad, an elegantly designed computer tablet

19 with a color multi-touch screen.

20   Both the iPhone and certain models of the iPad have the ability to send and

21 receive, over cellular networks, telephone calls and/or other voice and video

22 communications, text messages, and internet data.  In order to operate on the cellular

23 networks, the iPhone and iPad require a baseband processor chipset, a component

24 that, among other functions, acts as a small wireless radio and "plugs in" to a

25 standardized telecommunications network.

26 **B.    Qualcomm and its FRAND Commitments.**

27   Qualcomm is a manufacturer of baseband chipsets and is also the owner of

28 patents related to various cellular technologies and wireless standards, including

patents related to the Code Division Multiple Access ("CDMA") standard, third generation ("3G") cellular technology, and fourth generation ("4G")/LTE cellular technology. Qualcomm has declared over 30,000 of its patents to be "ESSENTIAL IPR" under ETSI's IPR Policy. Pursuant to its commitments under ETSI's IPR Policy, Qualcomm was required to license its SEPs on either royalty-free or on FRAND terms. ETSI Rules of Procedure, Annex 6.[2]

SSOs, like ETSI, impose FRAND requirements recognizing that where a patent owner's invention is incorporated into an industry wide standard, the patent owner gains immense and potentially anti-competitive power within the industry. As recognized by the Third Circuit in *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007): "A standard, by definition, eliminates alternative technologies" and thereby creates the potential for a patent owner to demand supracompetitive royalties. *Id.* "FRAND commitments [thus] become important safeguards against monopoly power." *Id.*

### C. Qualcomm's Exorbitant Royalty Rates.

Since even before Apple released the first iPhone in 2007, Qualcomm has entered into confidential licenses with Apple's Contract Manufacturers ("CMs") and charged Apple exorbitant royalty rates through these manufacturers, rather than directly licensing its SEPs to Apple at FRAND rates. To offset some of these royalties, Qualcomm entered into rebate agreements with Apple where Qualcomm remitted payments back to Apple. One of these agreements, the Business Cooperation and Patent Agreement ("BCPA"), provided for a series of quarterly rebates to Apple in exchange for granting Qualcomm certain rights to Apple patents and other benefits, including a promise from Apple not to institute legal action challenging Qualcomm's failure to license its SEPS at FRAND rates.

---

[2] available at http://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf.

### D.    Qualcomm's Retaliation Against Apple for Responding to Regulatory Agencies about Qualcomm's Practices.

Qualcomm's licensing practices and exorbitant royalty rates have triggered investigations by competition authorities in numerous countries including China, South Korea, Taiwan, Japan, Europe, and the United States.  Some of these investigations have already led to substantial fines including aggregate fines of more than $1 billion imposed by the Korean Fair Trade Commission ("KFTC")[3], and a $975 million fine imposed by China's National Development and Reform Commission.  Declaration of Alexandra Pu Yang ("Yang Decl.") ¶ 13.  In January 2017, the FTC filed a complaint against Qualcomm in the United States District Court for the Northern District of California, charging Qualcomm with monopolizing the market for baseband processor chipsets.  *FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK-NMC (N.D. Cal. 2017).

Apple has periodically responded to various agencies' requests for information and, on August 17, 2016, at the KFTC's request, Apple testified in an open session about Qualcomm's business model and licensing practices.  A few weeks later, in September 2016, Qualcomm failed to make its rebate BCPA Payment for the second quarter of 2016.  When Apple inquired about the reason for the missed payment, Qualcomm informed Apple that it was withholding all future payments due to Apple's interactions with the KFTC and other competition agencies.  Apple explained it was providing information only at the agencies' request, which the BCPA expressly permitted.  Qualcomm nevertheless persisted in refusing to pay Apple until December 2, 2016, when Qualcomm stated it believed that "the parties' dispute could be resolved," if Apple retracted and corrected its statements to government agencies. First Amended Complaint ("FAC") ¶ 231.

---

[3] *KFTC Hits Qualcomm With Record $208M Fine*, Law360 *available at* https://www.law360.com/articles/112835; *South Korea fines Qualcomm $854 million for violating competition laws*, Reuters, *available at* http://www.reuters.com/article/us-qualcomm-antitrust-idUSKBN14H062

1   Apple refused this request.  Qualcomm has not made BCPA payments for the last

2   three quarters of 2016 and currently owes Apple nearly $1 billion.

3         **E.     Apple Files the Instant Action.**

4         On January 20, 2017, Apple filed the instant action.  Contrary to Qualcomm's

5   assertions in its Motion, the gravamen of this action is not "the parties' most recent

6   attempt to negotiate a *global* license."  Mot. at 14.  Rather, Apple alleges claims for

7   breach of contract, breach of the implied covenant of good faith and fair dealing,

8   violation of California Civil Code § 1671(b), and a declaratory judgment regarding

9   the BCPA.  FAC ¶¶ 245-280.  Apple also seeks declarations that eighteen specific,

10  United States patents that Qualcomm declared as essential to the 3G/UMTS and

11  4G/LTE standards: (1) are not essential and have not been infringed, and (2) are not

12  valid.  *Id.* ¶¶ 281-91, 410-23, 525-28.  All of these patents appear on a list of patents

13  that Qualcomm provided to Apple, as evidence of its "good faith belief that Apple's

14  products infringe" Qualcomm patents that are essential to cellular standards

15  implemented by Apple products, and as evidence that Apple should pay

16  Qualcomm's usurious non-FRAND royalties.  *Id.* ¶¶ 127, 140, 142-44.[4]  Apple

17  requests that if any of the eighteen patents at issue are valid and unexhausted and

18  were infringed, the Court determine the FRAND rate *for those specific patents*.  *Id.*

19  ¶¶ 292-95, 424-27, 539-42.  Apple does not request a determination of the FRAND

20  rate for Qualcomm's United States or global SEP portfolio.

21        Apple also alleges a claim for monopolization in violation of Section 2 of the

22  Sherman Act, 15 U.S.C. § 2.  This claim references Qualcomm's FRAND

23  obligations and the above FRAND rates, but it does not require a FRAND

24  determination for Qualcomm's global SEP portfolio.  The claim is based on

25

26  _____

    [4] Many of them are either a U.S. counterpart of a Chinese patent asserted by
27  Qualcomm in litigation against Apple competitors or a U.S. patent for which
    Qualcomm provided infringement allegations during the parties' licensing
28  negotiations.  FAC ¶¶ 127, 140.

Qualcomm's "(i) refus[al] to deal with competitors, in contravention of its FRAND commitments; (ii) gagging Apple's ability to challenge Qualcomm's non-FRAND licensing scheme, through paragraph 2 of Section 7 of the BCPA; (iii) tying the purchase of its chipsets to the licensing of its SEPs; and (iv) requiring exclusivity from Apple as a condition of partial relief from Qualcomm's exorbitant and non-FRAND royalties." FAC ¶ 624. Finally, Apple alleges claims for exhaustion, declaratory relief regarding the parties' contracts and Qualcomm's agreements with Apple's CMs, and violations of the UCL.

### F.    Apple Files Non-duplicative Actions in the United Kingdom, Japan, China, and Taiwan.

In addition to filing the instant action, between January 23, 2017 and April 11, 2017, Apple filed actions against Qualcomm and its subsidiaries in the UK, Japan, China and Taiwan (collectively, the "Foreign Actions"). Each of those actions is focused on patents issued in those countries, competitive conditions in those countries, and products sold in those countries.[5]

### G.    Qualcomm Files Complaints with the International Trade Commission and German Courts.

Although Qualcomm complains that Apple's filing of multiple actions threatens to deplete its resources, Mot. at 22, 23, on July 7, 2017, Qualcomm filed a complaint against Apple with the International Trade Commission ("ITC") seeking to enjoin Apple from importing a select group of iPhones or iPads, those that utilize chipsets *from Intel*, Qualcomm's lone remaining rival in the premium LTE Chipset market. Declaration of Amy J. Mauser ("Mauser Decl."), Ex. 1.

The relief requested by Qualcomm in the ITC is irreconcilable with the relief sought by the FTC and consumer class actions in the Northern District of California

---

[5] Yang Decl. ¶ 5; Declaration of Chie Yakura ("Yakura Decl.") ¶ 2; Declaration of Jeanne Wang ("Wang Decl.") ¶ 5; Declaration of Natasha Harrison ("Harrison Decl.") ¶ 7.

1    and that Apple and its Contract Manufacturers ("CMs") seek in this Court—an end

2    to Qualcomm's monopolistic practices and greater competition among chip

3    manufacturers.  Subjecting Intel-based Apple products to an import ban would force

4    Apple back into an exclusive relationship with Qualcomm—a relationship that has

5    been challenged in this Court and multiple pending antitrust lawsuits and

6    investigations.  Judge Koh in the Northern District of California recently denied

7    Qualcomm's motion to dismiss the FTC's lawsuit based on the FTC's allegations

8    that "Qualcomm's exclusive dealing arrangements with Apple did, in fact,

9    'significantly impede[] the development of other [modem chip] suppliers into

10   effective competitors to Qualcomm,' and that Qualcomm's agreements with Apple

11   'foreclosed a substantial share of the market for premium LTE modem chips.'"

12   *FTC v. Qualcomm Inc.*, 2017 WL 2774406, at *24 (N.D. Cal. June 26, 2017).

13        If the ITC excludes all Apple "mobile electronic devices that do not

14   incorporate a Qualcomm brand baseband processor modem," the effect will be an

15   ITC imposed Qualcomm monopoly and exclusive relationship with Apple, even if

16   Qualcomm's practices are found illegal by this Court or the Northern District in the

17   cases filed by the FTC and consumer class actions against Qualcomm.

18        After initiating proceedings before the ITC, Qualcomm filed two parallel

19   actions in Mannheim, Germany alleging patent infringement, each one against

20   different Apple entities and two parallel actions in Munich, Germany alleging patent

21   infringement, again each one against different Apple entities.  Mauser Decl. ¶¶ 3-4.

22   **III.   QUALCOMM'S REQUEST FOR AN ANTI-SUIT INJUNCTION**

23   **       SHOULD BE DENIED.**

24        **A.    Qualcomm Is Not Entitled to Injunctive Protection for a Global**
**              FRAND Determination.**

25        At the outset, Qualcomm's arguments against "duplicative" litigation are

26   intended to shelter Qualcomm's – not Apple's – request that this Court "declare the

27   FRAND royalty terms for Qualcomm's [entire] global portfolio."  Mot. at 15.

28   Qualcomm offers no authority that it may even bring such a claim in this Court, or

1    any binding  authority or support for the contention that Apple must now enter a

2    license with Qualcomm or pay a royalty to Qualcomm for an entire global portfolio.

3    The sole authority Qualcomm cites for its FRAND determination claim is the

4    decision of a British Court, now on appeal, where the parties consented to such a

5    determination by the Court.  Mot. at 16 (citing *Unwired Planet*, [2017] EWHC

6    (Pat), ¶¶ 543-44 (British court opining that a worldwide license for an SEP portfolio

7    would be "reasonabl[e]" and "efficient")).  But, even in *Unwired Planet*, the court

8    did not address a global FRAND determination until after "technical trials relating

9    to the validity and infringement/essentiality" of at least some of the patents.

10   *Unwired Planet*, [2017] EWHC (Pat), ¶¶ 2, 9.  Qualcomm's demand that its entire

11   SEP portfolio be assessed in one global package, prior to any determination of the

12   individual patents that make up the portfolio, violates the fundamental principle that

13   a "patentee 'should not be . . . allowed to exact royalties for the use of an idea . . .

14   that is beyond the scope of the patent monopoly granted.'"  *Medtronic, Inc. v.*

15   *Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 851-52 (2014) (citation omitted).

16         Constitutional due process principles would also preclude this Court from

17   issuing a global FRAND determination for Qualcomm's asserted SEP portfolio.  In

18   an action alleging patent infringement, including an action for a declaration of non-

19   infringement, "the burden of proving infringement generally rests upon the

20   patentee." *Id*. at 849 ("'the burden to prove infringement never shifts [to the alleged

21   infringer] if the charge is denied in the plea or answer'" (quoting *Imhaeuser v.*

22   *Buerk*, 101 U.S. 647, 662 (1880)) (citation omitted) (alteration in original).

23   Qualcomm hopes to sidestep its burden by framing a series of distinct and complex

24   questions about individual patents into one monolithic dispute regarding the total

25   value of Qualcomm's patents.  However interesting that economic inquiry may be, it

26   is legally improper.  Apple has the right to defend itself against infringement

27   charges by putting Qualcomm to its burden of proof, and Apple therefore cannot be

28   compelled to litigate its claims on a portfolio-wide basis.  *Apple Inc. v.*

*Telefonaktiebolaget LM Ericsson, Inc.*, 2015 WL 1802467, at *1-2 (N.D. Cal. Apr. 20, 2015) (even though it might be "imprudent or uneconomical" to license individual patents, Apple could not be "compelled to take a license . . . on a portfolio-wide basis" and could proceed with patent-specific claims).

### B.    Anti-Suit Injunctions Should Rarely Be Granted.

An anti-suit injunction is a form of extraordinary equitable relief that should not be "contemplated lightly." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 889 (9th Cir. 2012).  An anti-suit injunction enjoins a party "from proceeding with an action in the courts of a foreign country" and risks impinging on international comity by interfering with foreign sovereign judicial systems.  *Gallo*, 446 F.3d at 989 ("an anti-suit injunction presents particularly complex legal issues, especially because of international comity concerns") (citation omitted).  As a result, the power to impose such an injunction must "be used sparingly."  *Id.*

Qualcomm has the burden of establishing each of the following three requirements.  *Interdigital Tech. Corp. v. Pegatron Corp.*, 2015 WL 3958257, at *10 (N.D. Cal. June 29, 2015).  *First*, that the parties and the issues in the foreign action are the same as in the instant action, and that "the first action is dispositive of the action to be enjoined."  *Microsoft*, 696 F.3d at 881 (citation omitted).  *Second*, that at least one of the *Unterweser* factors applies.  *Id.*  Finally, that the injunction's "impact on comity is tolerable."  *Id.*  Qualcomm fails at each step.

### C.    Qualcomm Has Not Satisfied the Requirements for an Anti-Suit Injunction.

#### 1.    The Issues in the Foreign Actions Are Not the Same.

Qualcomm's requested injunction may not issue because this action will not, and cannot, dispose of all of the issues in the pending foreign suits.  For an anti-suit injunction to issue, the domestic action must be "capable of disposing of *all* the issues in the foreign action."  *Nike, Inc. v. Cardarelli*, 2015 WL 853008, at *4 (D. Or. Feb. 26, 2015) (quoting *Applied Med.*, 587 F.3d at 915).  The issues in domestic

and foreign litigation need not be "identical" to be considered "the same" for anti-suit injunction purposes.  Mot. at 13 (citing *Applied Med.*, 587 F.3d at 915; *Interdigital*, 2015 WL 3958257, at *5).  Even so, an anti-suit injunction may not issue simply because a domestic action and a foreign action share some common issues.  *Nike*, 2015 WL 853008, at *4; *see also Applied Med.*, 587 F.3d at 915.  Because the action cannot dispose of all the issues in the pending foreign suits, Qualcomm's motion must be denied on this ground alone.  *Nike*, 2015 WL 853008, at *4 (denying anti-suit injunction where domestic action would not dispose of all issues in foreign action).

In *Microsoft*, on which Qualcomm relies, the court held that a domestic action, in which Microsoft asserted that Motorola had broken its promise to license its SEPs on FRAND terms, was dispositive of an action filed by Motorola in Germany, which asserted infringement of German patents and obtained injunctive relief.  696 F.3d at 884.  The court determined that the domestic breach of contract action was dispositive of the German injunctive relief claim because "[i]mplicit . . . [Motorola's] sweeping promise" to license its SEPs on FRAND terms was "a guarantee that . . . [Motorola would] not take steps to keep would-be users from using the patented material, such as seeking an injunction."  *Id.*  In other words, resolution of the breach of contract action in Microsoft's favor would have precluded Motorola from proceeding in the German action altogether.

The same cannot be said here.  Apple has not made a "sweeping [contractual] promise" not to pursue the Foreign Actions.  *Id.*  Moreover, separate from any issues relating to a FRAND determination, Apple's Foreign Actions challenge whether particular foreign patents are valid, and if so, whether Apple has infringed them as a matter of foreign law.  Those actions also raise claims under the competition and patent exhaustion laws of those jurisdictions.  Although Qualcomm would have this Court enjoin prosecution of the entirety of these cases asserting claims under foreign law, this Court has no authority to make those determinations for the courts of the

U.K., China, Japan, or Taiwan. *Id.* at 883 ("if the district court had based its injunction in an expectation that U.S. *patent* claims could dispose of German patent claims, then it would have erred" because patent claims are necessarily territorial (citing *Stein*, 748 F.2d at 658 (holding that "resolution of the domestic action [would] not dispose of the British action" because "[o]nly a British court, applying British law, can determine validity and infringement of British patents" and declining to issue anti-suit injunction)). Qualcomm has recognized this in its Answer to the FTC's complaint, stating that "Any requested relief that would apply to the licensing of patents issued by a jurisdiction other than the United States would be barred as beyond the reach of the U.S. antitrust laws, including the FTC Act, and/or as an improper application of those laws due to principles of international comity." Answer at 19, *FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK-NMC (N.D. Cal. 2017), ECF No. 145.

In *Applied Medical*, on which Qualcomm also relies, the Court held that the domestic action between the parties was dispositive of the foreign action where the agreement at issue contained a forum selection clause. 587 F.3d at 916. Thus, the parties' claims, including their claims under foreign law, could not be litigated in the foreign venue as a matter of contract law, and had to "be disposed of in the California forum if at all." *Id.* The court's decision to grant an anti-suit injunction in *Interdigital* was also based on the fact that the parties' agreement included "dispute resolution, governing law, and forum selection provisions" that vested the domestic court with "exclusive jurisdiction" over the parties' dispute. 2015 WL 3958257, at *5. Here, in contrast to *Applied Medical* and *Interdigital*, there is no forum selection clause compelling Apple to raise its foreign claims in a U.S. court.[6]

---

[6] In *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktiebologet LM Ericsson*, No. 14-CV-00341-JVS-DFM, ECF No. 279-1 (C.D. Cal. June 29, 2015), cited by Qualcomm (Mot. at 16), the parties stipulated "that the FRAND litigation [would] be dispositive of the Foreign Actions." *TCL* at *10.

### (a)   Qualcomm Mischaracterizes the Instant Action.

Qualcomm asserts that the issues are the same in this case and the Foreign Actions because both Apple and Qualcomm "seek a single, global portfolio license," Mot. at 14, and that the Court is effectively being asked to determine the correct royalty rate for a portfolio-wide license. *Id.* at 15, 18.  The "core" of the instant action, per Qualcomm, is a "single licensing dispute" regarding Qualcomm's obligations under the IPR Policy with respect to licensing its global SEPs. *Id.* at 1. Qualcomm grossly mischaracterizes the allegations and claims in both the instant action and the Foreign Actions.

The claims are much broader and more extensive than Qualcomm states.  One impetus behind this action was Qualcomm's breach of the BCPA and Apple's first four claims are based on this agreement.  FAC ¶¶ 245-80.  Apple also asserts infringement and validity claims relating to eighteen specific patents, but its request that the Court determine the FRAND royalty rate is specific to each individual patent. *Id.* ¶¶ 292-95, 424-27, 539-42.  The Complaint further alleges the patents are exhausted and unenforceable under U.S. patent law following the Supreme Court's decision in *Impression Products, Inc. v. Lexmark International, Inc.*, 137 S. Ct. 1523 (2017) which rejected as a violation of U.S. patent law the same type of double-dipping royalty system that is the foundation of Qualcomm's business model.  Apple's monopolization claim is based on a range of exclusionary monopolistic conduct also alleged by the FTC and consumer class actions against Qualcomm that cannot credibly be called mere licensing disputes.  FAC ¶ 624.

### (b)   The Instant Action Will Not Dispose of *All* the Issues in the Foreign Actions.

The Foreign Actions raise numerous issues that cannot be resolved by the instant action.  The UK action, three of the Chinese actions, and three of the Japanese actions include infringement, essentiality, validity, and exhaustion claims relating to specific foreign patents. Declaration of Susan Prevezer in Support of

1   Qualcomm's Motion ("Pervezer Decl."), Ex. 2 at 1; Yang Decl., Exs. 3, 4, 5; Yakura

2   Decl., Exs. 1, 2, 3.  None request a determination of a global FRAND rate for

3   Qualcomm's SEP portfolio.  *Supra*, Section II.F. n.4.

4         U.S. courts, including in *Microsoft*, have overwhelmingly concluded that they

5   lack authority to engage in such inquiries.  *Microsoft*, 696 F.3d at 883 (citing *Stein*,

6   748 F.2d at 658); *Voda*, 476 F.3d at 900-05 (exercising jurisdiction over foreign

7   patents claims would offend international comity); *Power Integrations, Inc. v.*

8   *Chan-Woong Park*, 2017 WL 733224, at *8 (N.D. Cal. Feb. 24, 2017) ("Courts have

9   frowned upon exercising jurisdiction over infringement and validity issues of

10  foreign patents, either in the context of supplemental jurisdiction or others");

11  *Juniper Networks, Inc. v. Bahattab*, 2009 WL 6781382, at *6 (D.D.C. Aug. 14,

12  2009) ("The traditional understanding in United States patent law is that our patent

13  law 'operates only domestically.'" (quoting *Microsoft Corp. v. AT & T Corp.*, 550

14  U.S. 437, 455 (2007))). As the Federal Circuit explained, exercising jurisdiction

15  over "infringement claims based on foreign patents . . . would require us to define

16  the legal boundaries of a property right granted by another sovereign and then

17  determine whether there has been a trespass to that right." *Voda*, 476 F.3d at 900.

18        The Foreign Actions also raise a number of antitrust issues, which are

19  asserted under foreign anti-trust laws and focus on the anticompetitive effects of

20  Qualcomm's conduct on foreign markets.  Harrison Decl. ¶¶ 8, 18; Pervezer Decl.,

21  Ex. 2 at 5; Yang Decl., ¶¶ 6-7, Ex. 1 at 10, 16, 17; Yakura Decl. ¶¶ 15-16, Ex. 7 at 9,

22  21, 23; Wang Decl. ¶ 2, Ex. 1 at 5-6.[7]  A U.S. court applying U.S. antitrust law may

23  not regulate purely foreign commerce.  15 U.S.C. § 6a (Sherman Act "shall not

24  apply to conduct involving trade or commerce . . . with foreign nations"); *see*

25  *generally F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 158 (2004).

26  _____

27  [7] Qualcomm's assertion that its FRAND obligations should be governed by French law is a question for each foreign court to resolve under applicable choice of law

28  principles. *See Apple*, 2012 WL 1672493, at *10.

1    Qualcomm has also failed to introduce any evidence that these claims would be

2    disposed of by a determination that it complied with its contractual FRAND

3    obligations as to its global portfolio or that it did not violate U.S. antitrust law.  *See*

4    *Interdigital*, 2015 WL 3958257, at *10 (recognizing that the "burden" is on

5    Qualcomm "to establish the three *Gallo* factors").  Qualcomm cannot show either.

6    Harrison Decl. ¶ 18; Yang Decl. ¶¶ 8-11; Yakura Decl. ¶¶ 18-20; Wang Decl. ¶¶6-7.

7    Even if this Court determined that U.S. law permitted Qualcomm's conduct, its

8    actions could still be found in violation of foreign law.  *E.g.*, Yakura Decl. ¶¶ 18-20

9    (highlighting differences between Japanese and US antitrust laws); *F. Hoffmann-La*

10   *Roche*, 542 U.S. at 167 (recognizing that UK and EU antitrust laws are not

11   sufficiently analogous to US antitrust law that a violation of one may be assumed to

12   constitute a violation of the other); *Zynga, Inc. v. Vostu USA, Inc.*, 816 F.Supp.2d

13   824, 829-30 (N.D. Cal. 2011) (denying anti-suit injunction because domestic action

14   would not dispose of Brazilian unfair competition claim).

15        The Foreign Actions also raise unique damages issues.  Each of the Foreign

16   Actions seeks damages to compensate Apple and its subsidiaries for the excessive

17   royalties paid for products sold within the specific jurisdictions based on patents

18   issued in those jurisdictions.  Harrison Decl. ¶¶ 21-22; Prevezer Decl. Ex. 2 at 1;

19   Yang Decl. ¶¶ 5-7; Yakura Decl. ¶ 21, Ex. 7 at 23-24; Wang Decl. ¶ 7.  In this case,

20   Apple has not asked for antitrust damages.  FAC, Prayer for Relief.  Moreover, the

21   amount of damages in the Foreign Actions will depend on the nuances of the foreign

22   laws at issue.  Yakura Decl. ¶ 20 ("The court will need to determine the harm to

23   competition and the competitive order in Japan to the detriment of Japanese

24   consumers based on the court's interpretation of the Japanese AMA and the Japan

25   Civil Code"); *F. Hoffmann-La Roch.*, 542 U.S. at 167 (observing in the antitrust

26   context that "even where nations agree about primary conduct, say, price fixing,

27   they disagree dramatically about appropriate remedies").

28

### 2.      Qualcomm Has Not Shown that any *Unterweser* Factors Apply.

Qualcomm's motion should also be denied because it has failed to show that any *Unterweser* factors apply.  These factors include whether the foreign litigation "would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable considerations." *Microsoft*, 696 F.3d at 882 (quoting *Gallo*, 446 F.3d at 990).  Qualcomm argues that the Foreign Actions are vexatious and oppressive (factor 2), and that equitable considerations support issuing an injunction (factor 4), Mot. at 21, but neither argument is availing.

### (a)      The Foreign Actions Are Not Vexatious or Oppressive.

In order for Foreign Actions to be vexatious, the party seeking injunctive relief has the burden to show that they are "without reasonable or probable cause or excuse; harassing; [or] annoying." *Microsoft*, 696 F.3d at 886 (quoting Black's Law Dictionary 1701 (9th ed. 2009)).

Qualcomm's argument rests on the unsupported assertions that the Foreign Actions were filed to "gain leverage in licensing negotiations," even though Apple has never been licensed by Qualcomm.  Mot. at 21.  The reality is that each of the Foreign Actions asserts claims specific to the jurisdiction in which they were filed, requiring examination of foreign patents that can only be performed by courts where the Foreign Actions were filed.

Qualcomm's attempts to analogize this case to *Microsoft* fail.  *See* Mot. at 21-22.  There, the court held that Motorola's conduct in initiating the German injunctive relief action was vexatious because the action was filed six months after Microsoft's action was filed and the issue in the German action—"propriety of injunctive relief for infringement"—was already being litigated in the domestic action. *Microsoft*, 696 F.3d at 886.  Here, the Foreign Actions were all filed as part of the same initiation of litigation within a few months of each other, and do not

seek determinations of the same issues as the domestic action.[8]

### (b) Equitable Considerations Do Not Support Granting the Injunction.

Qualcomm asserts four different meritless equitable considerations in favor of granting the injunction.  Mot. at 22-24.

### (i) The Foreign Actions Are Not a Pretext for Withholding Royalties.

Qualcomm first asserts that Apple initiated the Foreign Actions as a pretext for withholding royalty payments from its Contract Manufacturers.  Mot. at 22. Qualcomm has no evidence for this assertion, which should by itself be fatal.  In any event, Apple would be withholding Qualcomm's disputed royalty payments even if litigation had only been brought in this Court.  Qualcomm also ignores that it was the first party to withhold monies at issue in this case when it withheld nearly $1 billion because Apple has cooperated with law enforcement authorities.

Qualcomm next complains that, if the Foreign Actions are allowed to proceed, Apple will continue filing lawsuits "indefinitely."  *Id*.  Apple filed the Foreign Actions all between January and April 2017.  It is Qualcomm that most recently added to the docket of legal proceedings between the parties when, on July 7, 2017, it filed a complaint before the ITC, which seeks through an import order the exclusivity of Qualcomm chips in all Apple iPhones and iPads, effectively stripping this Court and the Northern District of California of authority to order full relief on the antitrust claims against Qualcomm, and thereafter filed four patent infringement cases in two different courts in Germany.  Mauser Decl. ¶¶ 2-4, Exs. 1-3[9]

---

[8] Qualcomm's citation to *Strategic Intent, LLC v. Strangford Lough Brewing Co.*, No. 09-CV-309-RHW, ECF No. 101 (E.D. Wa. Sept. 9, 2010) is inapposite; that case involved an Irish action asserting identical claims to the U.S. action and was filed almost a year after the U.S. action was filed and the defendant received an unfavorable discovery ruling.

[9] Qualcomm has previously taken the position that Apple is licensed for its patents through the Contract Manufacturers, Qualcomm Counterclaim, ECF No. 70 ¶¶ 14-15, and that Qualcomm therefore "do[es] not have a right to seek damages or royalties" against Apple "with regard to their manufacturing, assigning, leasing,

---

18

Finally, Apple did not, as Qualcomm contends, initiate the Foreign Actions in order to exert "pressure on [Qualcomm] to enter into a 'holdup' settlement before [this] litigation is complete." Mot. at 22-23 (quoting *Microsoft*, 696 F.3d at 886). Qualcomm's suggestion that it is a small entity that will ultimately have to cow to Apple's demands rather than fully litigate its claims should be greeted with extreme skepticism given Qualcomm's $77 billion market capitalization. *See Qualcomm Incorporated*, Yahoo Finance.[10]  And there is no holdup by Apple: Apple has never been licensed by Qualcomm. Apple filed the Foreign Actions in order to raise and resolve jurisdiction specific legal issues including the infringement of foreign patents, and in order to obtain damages (which Apple does not seek here even as to the US SEPs, *see* FAC, Prayer for Relief), stemming from Qualcomm's exorbitant royalty requirements and anti-competitive practices with respect to its foreign SEPs.

### (ii) *Granting* the Injunction Would Delay the Resolution of the Dispute.

Qualcomm next asserts, in conclusory fashion, that by pursuing the Foreign Actions, "Apple will necessarily prolong the dispute." Mot. at 23. Qualcomm has not articulated how prosecution of the Foreign Actions would delay resolution of the instant action nor has it adduced any evidence on this point. Given that the Foreign Actions can and are being litigated in parallel with this case, they will not delay resolution of this matter. Rather, if the Court *grants* the injunction, it will delay resolution of the parties' dispute as it will prevent the parties from litigating the foreign infringement and validity issues, which can only be resolved by the foreign courts, as well as Apple's foreign antitrust claims, which are based on nation-

---

importing, or offering for assignment or lease" of Apple's products. Yakura Decl. ¶ 13 (quoting Yakura Decl. Ex. 4 at 2). Despite this, Qualcomm has now brought its own separate actions against Apple for patent infringement in two separate courts in Germany, Mauser Decl. ¶¶ 3-4, and in this Court. *Qualcomm Inc. v. Apple Inc.*, No. 17-CV-01375-JAH-MDD (S.D. Cal. 2017).

[10] *available at* https://finance.yahoo.com/quote/qcom?ltr=1

APPLE'S OPP. TO QUALCOMM'S MOT. FOR ANTI-SUIT INUNCTION
CASE NO. 3:17-CV-0108-GPC-MDD

specific antitrust laws and rely on Qualcomm's misconduct in connection with its foreign SEPs, until after the instant action concludes.

### (iii)   Litigating the Foreign Actions Will Not Cause Duplication of Effort.

Qualcomm argues that allowing the Foreign Actions to proceed will also result in unnecessary expense and duplication of effort because the parties are based in California, the licensing negotiations occurred in California between Qualcomm and Apple, and the witnesses are in California.  Mot. at 23.  As set forth above, Qualcomm's characterization of this action mischaracterizes Apple's claims both in the instant action and the Foreign Actions.  Moreover, Apple's allegations in both the domestic and Foreign Actions will necessarily involve witnesses from around the world, particularly because Apple's claims involve Qualcomm's conduct in connection with Apple's CMs, who are located abroad.

Qualcomm's reliance on *Albemarle* and *Seattle Totems* is misplaced.  In both cases, the issues in the domestic and foreign actions were identical, resting on the parties' obligations under a single contract.  *Albemarle Corp. v. AstraZeneca*, 2009 WL 902348, at *7 (D.S.C. Mar. 31, 2009); *Seattle Totems Nat. Hockey Club, Inc. v. Nat. Hockey League*, 652 F.2d 852, 856 (9th Cir. 1981).  Here, resolution of the domestic action will not resolve the Foreign Actions.[11]

### (iv)   The Mere Possibility of Inconsistent Results Is Insufficient to Provide Injunctive Relief.

Qualcomm finally argues that this Court should enjoin the Foreign Actions because, if it does not, Qualcomm may be placed "in an impossible position of attempting to alter its behavior in an attempt to satisfy conflicting rulings."  Mot. at

---

[11] *Kaepa, Incorporated v. Achilles Corporation* is also inapposite.  76 F.3d 624, 627-28 (5th Cir. 1996) (finding that defendant's actions "smack[ed] of cynicism" and granting injunction where defendant stipulated to be bound by Texas law and participated in a Texas action before "belated[ely] . . . filing as putative plaintiff in Japan the very same claims against" the plaintiff that the plaintiff filed against it).

APPLE'S OPP. TO QUALCOMM'S MOT. FOR ANTI-SUIT INUNCTION
CASE NO. 3:17-CV-0108-GPC-MDD

24 (citation omitted).  But the Foreign Actions raise a variety of issues which will not be disposed of by the instant action, and ordering foreign courts to shut down those actions based upon the mere possibility that there may be inconsistent rulings on yet-unidentified issues is inequitable and offensive to comity principles.

### 3.    Granting the Injunction Would Do Intolerable Harm to International Comity.

Qualcomm's anti-suit injunction would do intolerable harm to international comity.  Qualcomm contends any impact on comity would be tolerable because the issue between the parties is a simple "private contractual dispute[.]"  Mot. at 25.  No reading of Apple's Complaint permits that conclusion.   This dispute plainly implicates comity concerns.  Qualcomm has asked a U.S. court to forbid a foreign court from adjudicating legal issues under its own law.

For example, in the UK, China, and Japan actions, Apple raises foreign infringement and validity claims that this Court cannot resolve.  *Stein*, 748 F.2d at 658.  In *Voda*, the Federal Circuit recognized that attempting to resolve such claims would detrimentally affect comity.  476 F.3d 887, at 898, 900-05 (exercising jurisdiction over foreign patents claims would offend principles of comity, judicial economy, convenience, and fairness).  Other courts have reached the same conclusion.  *E.g. Lotes Co. v. Hon Hai Precision Indus. Co.*, 2011 WL 13152817, at *4 (N.D. Cal. July 14, 2011) (declining jurisdiction over infringement claims relating to foreign patents because doing so "would prejudice the rights of China and Taiwan and undermine the 'spirit of cooperation' that forms the basis of the comity doctrine").  Apple is aware of no court that has granted an anti-suit injunction to prevent litigation of multiple foreign patent infringement claims in foreign courts.

Enjoining the remaining claims, which primarily are grounded in foreign antitrust law, would similarly intolerably impact comity.  Foreign nations have an interest in antitrust enforcement issues affecting their markets and citizens.   In this

case, regulatory agencies in each of the countries have already investigated Qualcomm for its anti-competitive conduct and in some cases have levied fines. Wang Decl. ¶ 9; Harrison Decl. ¶ 23; Yakura Decl. ¶ 23; Yang Decl. ¶ 13.  Were this Court to enjoin Apple from proceeding with the Foreign Actions until after resolution of the instant action, it would substantially delay resolution of the important anti-competition issues raised in the actions—issues which each of the jurisdictions has already expressed an interest in—and thereby seriously and detrimentally effect international comity.  *See F. Hoffmann-La Roche*, 542 U.S. at 168-69 (allowing domestic courts to resolve antitrust claims asserted by foreign claimants relating to foreign injuries would lead to "procedural costs and delays [that] could . . . threaten interference with a foreign nation's ability to maintain the integrity of its own antitrust enforcement system" and thereby detrimentally affect comity).[12]

### D.    The Traditional Preliminary Injunction Factors Are Not Satisfied.

Qualcomm not only fails to show the *Gallo* factors are satisfied, it has not met the traditional requirements for the issuance of a preliminary injunction.  Ordinarily, a party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### 1.    Qualcomm Is Not Likely to Succeed on the Merits.

In *Gallo* and its progeny, the Ninth Circuit held that the *Gallo* factors replaced the likelihood of success factor.  *See, e.g.*, *Microsoft*, 696 F.3d at 883-84. But those cases involved "private contractual dispute[s]," which posed little risk to international comity.  *Id.* at 887; *Gallo*, 446 F.3d at 994; *Applied Med.*, 587 F.3d at

---

[12] Qualcomm cites *Applied Medical* and *Gallo*, but in both cases, the court's conclusion that granting the injunction would not intolerably affect comity was founded on the fact that the parties' agreement contained a forum selection clause.

921.  This case, in contrast, involves far more than a simple contractual dispute and seeks to protect an untenable claim by Qualcomm for a worldwide FRAND determination of its SEPs.  Enjoining numerous pending patent and antitrust against Qualcomm around the world on this, or any other basis, would have a significant and detrimental effect on comity.  Granting a worldwide injunction without at least considering whether Qualcomm is likely to prevail would therefore be inappropriate.  Accordingly, here, the Court should consider the merits—an approach that has been endorsed by the Second Circuit.  *Software AG, Inc. v. Consist Software Sols., Inc.*, 323 F. App'x 11, 12 (2d Cir. 2009); *In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 97-98 (2d Cir. 2006).  And as discussed elsewhere in this opposition, Qualcomm has failed to demonstrate that it is likely to succeed on the merits of its claims.

### 2.      Qualcomm Has Not Met the Other Injunction Factors.

Although the Ninth Circuit did not consider likelihood of success in *Gallo*, cases within the circuit have considered the remaining factors—irreparable harm, balance of hardships, and the public interest.  *See, e.g.*, *Glob. Commodities Trading Grp., Inc. v. Beneficio De Arroz Choloma, S.A.*, 2016 WL 4041219, at *2-4 (E.D. Cal. July 28, 2016); *Interdigital*, 2015 WL 3958257, at *8.  These factors similarly weigh against granting the injunction.

The only harm Qualcomm is likely to suffer is that it will have to participate in the Foreign Actions.  This will not inflict irreparable harm on Qualcomm, which has a $78 billion market capitalization, especially given that Qualcomm will have to litigate these cases eventually.  *See Glob. Commodities Trading Grp.*, 2016 WL 4041219, at *4 (requiring plaintiffs to respond in Honduran action would not inflict any irreparable harm and denying anti-suit injunction).

Moreover, granting the injunction would substantially delay Apple's ability to obtain a final resolution of the foreign infringement and other issues raised in the Foreign Actions.  Denying the injunction will only require Qualcomm to litigate the

1    cases sooner.  Thus, the balance of the hardships weighs in Apple's favor.

2          Finally, granting the injunction would allow Qualcomm to continue its illegal

3    and anti-competitive practices, which have drawn the attention of regulatory

4    agencies in numerous countries, until this action is complete and the Foreign

5    Actions are allowed to proceed and would thus do great harm to the public interest.

6

7          **E.     If an Injunction Is Issued, it Must Also Issue Against Qualcomm's Complaint Before the ITC.**

8          The disingenuousness of Qualcomm's requested relief is apparent when

9    considering the expansive anti-suit injunction it seeks here alongside its

10   simultaneous pursuit of an exclusion order from the ITC.  Qualcomm's ITC

11   complaint asks the Commission to enjoin Apple from importing any iPhones or

12   iPads that utilize chipsets from Intel, but it notably does not seek exclusion of any

13   allegedly infringing Apple products that use Qualcomm's chipsets.  *See* Mauser

14   Decl., Ex. 1 ¶¶ 9-11, 67.  Yet because Intel is Qualcomm's only competitor in the

15   sale of premium LTE chipsets, the net effect of Qualcomm's action is to complete

16   and extend its monopoly.

17         Qualcomm claims in this motion that *all* of the Foreign Actions are, in

18   essence, about a "single contract and a single course of negotiation," as well as

19   being centered upon a global licensing dispute involving "Qualcomm's worldwide

20   patent portfolio."  Mot. at 14, 16.  Yet Qualcomm's ITC action arises out of the

21   same contract negotiations, and relates to the same "worldwide patent portfolio."

22   *Id*.  Qualcomm's proposed exclusion order would cripple the Court's ability to

23   award the full antitrust relief that Apple has sought in this case, and the relief sought

24   by the FTC and consumer class actions, and that competition agencies have sought

25   in proceedings around the world.  Because the selective exclusion order Qualcomm

26   requests from the ITC would grant it a monopoly by fiat, and reinstate an exclusivity

27   agreement between Apple and Qualcomm that ended in 2016, it would effectively

28   strip agencies and other courts of authority to remedy Qualcomm's abuses.

1    Qualcomm cannot have it both ways.  If this Court is to be the only Court to

2    pass on the "core" global licensing dispute involving "Qualcomm's worldwide

3    patent portfolio," *id.* at 14, the ITC action and Qualcomm's recently filed actions in

4    Germany must be enjoined as well.

5    **IV.    CONCLUSION**

6        For all the foregoing reasons, Apple respectfully requests that the Court deny

7    Qualcomm's request for an anti-suit injunction barring Apple from proceeding with

8    the Foreign Actions.

9    Dated:  August 8, 2017                         Respectfully submitted,

10

11                                     By:  */s/ William A. Isaacson*

12                                         Juanita R. Brooks (SBN 75934)
                                          brooks@fr.com
13                                         Seth M. Sproul (SBN 217711)
                                          sproul@fr.com
14                                         FISH & RICHARDSON P.C.
                                          12390 El Camino Real
15                                         San Diego, CA 92130
                                          Telephone: (619) 678-5070
16                                         Facsimile: (619) 678-5099

17                                         Ruffin B. Cordell (DC Bar No. 445801;
                                          *pro hac* to be filed)
18                                         cordell@fr.com
                                          Lauren A. Degnan (DC Bar No. 452421;
19                                         *pro hac* to be filed)
                                          degnan@fr.com
20                                         Leah A. Edelman (DC Bar No. 1026830;
                                          *pro hac* to be filed)
21                                         edelman@fr.com
                                          FISH & RICHARDSON P.C.
22                                         The McPherson Building
                                          901 15th Street, N.W., Suite 700
23                                         Washington, DC 20005
                                          Telephone:   (202) 783-5070
24                                         Facsimile:    (202) 783-2331

25                                         Benjamin C. Elacqua (TX SBN 24055443;
                                          *pro hac* to be filed)
26                                         elacqua@fr.com
                                          FISH & RICHARDSON P.C.
27                                         One Houston Center, 28th Floor
                                          1221 McKinney
28                                         Houston, TX 77010
                                          Telephone:  (713) 654-5300

Facsimile:   (713) 652-0109

Betty H. Chen (SBN 290588)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone:   (650) 839-5070
Facsimile:   (650) 839-5071

Aamir Kazi (GA SBN 104235;
*pro hac* to be filed)
kazi@fr.com
1180 Peachtree St. NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

William A. Isaacson (DC Bar No. 414788;
*pro hac* to be filed)
wisaacson@bsfllp.com
Karen L. Dunn (DC Bar No. 1002520; *pro
hac* to be filed)
kdunn@bsfllp.com
Michael J. Gottlieb (DC Bar No. 974960;
admitted *Pro hac vice*)
Amy J. Mauser (DC Bar No. 424065; *pro
hac* to be filed)
amauser@bsfllp.com
Christopher G. Renner (DC Bar No.
1025699; *pro hac* to be filed)
crenner@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone:   (202) 237-2727
Facsimile:   (202) 237-6131

Steven C. Holtzman (SBN 144177)
sholtzman@bsfllp.com
Gabriel R. Schlabach (SBN 304859)
gschlabach@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone:   (510) 874-1000
Facsimile:   (510) 874-1460

Meredith R. Dearborn (SBN 268312)
mdearborn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
425 Tasso Street, Suite 205
Palo Alto, CA 94307
Telephone:   (650) 445-6400
Facsimile:   (650) 329-8507

Attorneys for Apple Inc.

1

## **CERTIFICATE OF SERVICE**

2        The undersigned hereby certifies that a true and correct copy of the above and

3 foregoing document has been served on August 8, 2017 to all counsel of record who

4 are deemed to have consented to electronic service via the Court's CM/ECF system

5 per Civil Local Rule 5.4.

6 Dated: August 8, 2017

7                                  */s/ William A. Isaacson*
                                   William A. Isaacson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28