1  Evan R. Chesler (N.Y. Bar No. 1475722) (*pro hac vice*)
echesler@cravath.com
2  CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
3  New York, NY 10019
Telephone: (212) 474-1000
4  Facsimile: (212) 474-3700

5  David A. Nelson (Ill. Bar No. 6209623) (*pro hac vice*)
davenelson@quinnemanuel.com
6  QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison St., Suite 2450
7  Chicago, Illinois 60661
Telephone: (312) 705-7400
8  Facsimile: (312) 705-7401

9  Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
10 JONES DAY
4655 Executive Drive, Suite 1500
11 San Diego, California 92121
Telephone: (858) 314-1200
12 Facsimile: (858) 345-3178

13 [*Additional counsel identified on signature page*]

14 *Attorneys for Defendant and Counterclaim-Plaintiff*
QUALCOMM INCORPORATED

15

16                **UNITED STATES DISTRICT COURT**

17                **SOUTHERN DISTRICT OF CALIFORNIA**

18 APPLE INC.,                          No. 3:17-CV-0108-GPC-MDD

19          Plaintiff,                  **COUNTERCLAIM-PLAINTIFF**
                                        **QUALCOMM INCORPORATED'S**
20          v.                          **OPPOSITION TO APPLE INC.'S**
                                        **PARTIAL MOTION TO DISMISS**
21 QUALCOMM INCORPORATED,
                                        Judge:     Hon. Gonzalo P. Curiel
22          Defendant.                  Courtroom: 2D
                                        Date:      September 29, 2017
23                                      Time:      1:30 P.M.

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

QUALCOMM INCORPORATED,

      Counterclaim-Plaintiff,

   v.

APPLE INC.,

      Counterclaim-Defendant.

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................ii

PRELIMINARY STATEMENT ..............................................................1

FACTUAL BACKGROUND...................................................................3

STANDARD OF REVIEW .....................................................................5

ARGUMENT ..........................................................................................6

I.   Qualcomm Brings an "Unfair" UCL Claim, Not a "Fraud" Claim. ..............6

II.   Qualcomm Has Standing To Bring Its "Unfair" UCL Claim. .......................9

III.   The Balancing Test Applies to Qualcomm's UCL Claim. ...........................11

   A.   Legal Standards for an "Unfair" UCL Claim. ....................................12

   B.   The Court Should Apply the Balancing Test....................................13

IV.   Qualcomm Pleads a Claim Under the "Unfair" Prong of the UCL. ............17

   A.   Apple's Conduct Is Unfair Under the Balancing Test......................17

   B.   Apple's Conduct Is Unfair Under the Tethering Test. .....................19

   C.   Apple May Not Introduce New Factual Allegations. ........................21

V.   Apple Misstates the Unfair Conduct Underlying Qualcomm's Claim. .......22

   A.   Apple's Arguments Regarding Its Product Design Decisions and the Falsity of Its Misrepresentation Are Irrelevant. ...................23

   B.   The *Colgate* Doctrine and Its Progeny Do Not Shield Apple from Liability under the UCL. ............................................................23

CONCLUSION.....................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.P. Deauville, LLC v. Arion Perfume & Beauty, Inc.*,
  2014 WL 7140041 (N.D. Cal. Dec. 12, 2014) ................................................... 10

*Aguilar v. Gen. Motors, LLC*,
  2013 WL 5670888 (E.D. Cal. Oct. 16, 2013) ................................................... 16

*Amarel v. Connell*,
  102 F.3d 1494 (9th Cir. 1996) ........................................................................... 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... 6, 25

*Aspex Eyewear, Inc. v. Vision Serv. Plan*,
  389 F. App'x 664 (9th Cir. 2010) ...................................................................... 25

*Bell Atl. Corp. v. Twombly*,
  500 U.S. 544 (2007) .............................................................................. 5, 6, 25

*Blanks v. Shaw*,
  89 Cal. Rptr. 3d 710 (Ct. App. 2009) ................................................................ 18

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999) ............................................................................ *passim*

*Chavez v. Whirlpool Corp.*,
  113 Cal. Rptr. 2d 175 (Ct. App. 2001) ......................................................... 24, 25

*Citizens Dev. Corp., v. Cty. of San Diego*,
  2017 WL 1089549 (S.D. Cal. Mar. 23, 2017) .................................................. 21

*Engalla v. Permanente Med. Grp., Inc.*,
  938 P.2d 903 (Cal. 1997) ..................................................................................... 7

*Ferrington v. McAfee, Inc.*,
  2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) .................................................... 17

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
  352 F.3d 367 (9th Cir. 2003) ............................................................................. 21

*Gomez v. Nationstar Mortg., LLC*,
  2015 WL 966224 (E.D. Cal. Mar. 4, 2015) ................................................. 19, 20

*Gregory v. Albertson's, Inc.*,
  128 Cal. Rptr. 2d 389 (Ct. App. 2002) ............................................................. 15

*Gruen v. EdFund*,
  2009 WL 2136785 (N.D. Cal. 2009) ................................................................... 8

**Page(s)**

*Herron v. Best Buy Co.*,
924 F. Supp. 2d 1161 (E.D. Cal. 2013) ........................................................... 15

*Howell v. Grindr, LLC*,
2016 WL 1668243 (S.D. Cal. Apr. 27, 2016) ................................................... 8

*In re Adobe Sys. Inc. Privacy Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..........................................13, 16, 19, 20

*In re Mattel, Inc.*,
588 F. Supp. 2d 1111 (C.D. Cal. 2008) ............................................................. 8

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......................................................................... 9

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
232 F.3d 979 (9th Cir. 2000) .................................................................2, 13, 16

*Kwikset Corp. v. Superior Court*,
246 P.3d 877 (Cal. 2011) ................................................................................ 10

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
114 F. Supp. 3d 852 (N.D. Cal. 2015) ........................................................ 9, 11

*Lozano v. AT&T Wireless Servs., Inc.*,
504 F.3d 718 (9th Cir. 2007) ...............................................................15, 16, 17

*Luxul Tech. Inc. v. Nectarlux, LLC*,
78 F. Supp. 3d 1156 (N.D. Cal. 2015) ..........................................12, 16, 20, 21

*McKell v. Wash. Mut., Inc.*,
49 Cal. Rptr. 3d 227 (Ct. App. 2006) ........................................................ 21, 22

*McVicar v. Goodman Global, Inc.*,
1 F. Supp. 3d 1044 (C.D. Cal. 2014) ....................................................14, 15, 16

*Moss v. Singleton*,
110 F. Supp. 3d 876 (N.D. Ill. 2015) .............................................................. 21

*Motors, Inc. v. Times Mirror Co.*,
162 Cal. Rptr. 543 (Ct. App. 1980) ................................................................ 22

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ............................................................................ 5

*Oracle Am., Inc. v. TERiX Computer Co.*,
2014 WL 31344 (N.D. Cal. Jan. 3, 2014) ..................................................... 7, 8

*People ex rel. Renne v. Servantes*,
103 Cal. Rptr. 2d 870 (Ct. App. 2001) ........................................................... 12

*Progressive W. Ins. Co. v. Yolo Cty. Superior Court*,
37 Cal. Rptr. 3d 434 (Ct. App. 2005) ............................................................. 22

**Page(s)**

*Rubio v. Capital One Bank,*
   613 F.3d 1195 (9th Cir. 2010) ....................................................6, 11, 16

*Safeway, Inc. v. Superior Court,*
   190 Cal. Rptr. 3d 131 (Ct. App. 2015) .......................................19, 20

*Sako v. Wells Fargo Bank, N.A.,*
   2015 WL 5022307 (S.D. Cal. Aug. 21, 2015) ................................16

*Sateriale v. R.J. Reynolds Tobacco Co.,*
   697 F.3d 777 (9th Cir. 2012) ........................................................11

*Schnall v. Hertz Corp.,*
   93 Cal. Rptr. 2d 439 (Ct. App. 2000) ...........................................22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,*
   806 F.2d 1393 (9th Cir. 1986) ......................................................19

*Scripps Clinic v. Superior Court,*
   134 Cal. Rptr. 2d 101 (Ct. App. 2003) .........................................15

*Smith v. Specialized Loan Servicing, LLC,*
   2017 WL 1711283 (S.D. Cal. May 3, 2017) .................................13

*Smith v. State Farm Mut. Auto. Ins. Co.,*
   113 Cal. Rptr. 2d 399 (Ct. App. 2001) .........................................14

*Soranno's Gasco, Inc. v. Morgan,*
   874 F.2d 1310 (9th Cir. 1989) ......................................................10

*State Farm Fire & Cas. Co. v. Superior Court,*
   53 Cal. Rptr. 2d 229 (Ct. App. 1996) ..................................13, 17, 18

*Storm Mfg. Grp., Inc. v. Weather Tec Corp.,*
   2013 WL 5352698 (C.D. Cal. Sep. 23, 2013) ..............................10

*Thompson v. Davis,*
   295 F.3d 890 (9th Cir. 2002) ..........................................................6

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.,*
   2010 WL 1329077 (S.D. Cal. Apr. 1, 2010) .............................10, 11

*TYR Sport Inc. v. Warnaco Swimwear Inc.,*
   679 F. Supp. 2d 1120 (C.D. Cal. 2009) .........................................21

*United States v. Colgate & Co.,*
   250 U.S. 300 (1919) .................................................................23, 24

*United States v. Parke, Davis & Co.,*
   362 U.S. 29 (1960) ...................................................................24, 25

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) ....................................................7, 9

**Page(s)**

*Wilner v. Sunset Life Ins. Co.*,
    93 Cal. Rptr. 2d 413 (Ct. App. 2000) ....................................................13, 17, 18

*Worldwide Travel, Inc. v. Travelmate US, Inc.*,
    2015 WL 1013704 (S.D. Cal. Mar. 9, 2015)............................................ 17

*Yanting Zhang v. Superior Court*,
    304 P.3d 163 (Cal. 2013)............................................................................ 14

**Statutes & Rules**

47 C.F.R. § 2.901 .............................................................................................. 20

47 U.S.C. § 1302.............................................................................................. 20

Cal. Bus. & Prof. Code § 17200 ..........................................................6, 12, 13, 22

Cal. Bus. & Prof. Code § 17204 ............................................................... 10

Cal. Pub. Util. Code § 709.............................................................................. 20

Federal Trade Commission Act, 15 U.S.C. § 45(a) ............................... 16

FRCP 8(a) .......................................................................................................... 5

FRCP 9(b)....................................................................................................... 6, 8

FRCP 12(b)(6) ................................................................................................... 5

# PRELIMINARY STATEMENT

The Court should deny Apple's Partial Motion to Dismiss.  Qualcomm has sufficiently alleged that Apple engaged in unfair business acts and practices in violation of California's Unfair Competition Law ("UCL"); specifically, Apple threatened to retaliate against Qualcomm—not merely by eliminating Qualcomm as a supplier, but also by striking back at Qualcomm with a damaging marketing campaign—if Qualcomm truthfully revealed the performance disparity between Qualcomm-based iPhones and Intel-based iPhones.  Apple's threat unfairly harmed Qualcomm, network operators, and consumers.  Only Apple and Intel benefited.  Apple attempts to obfuscate those straightforward facts with an alternative story, which Qualcomm ultimately will show to be untrue.  But now is not the time for that factual debate.  On a motion to dismiss, the Court must accept Qualcomm's well-pleaded factual allegations as true.  Applying that standard, Qualcomm has more than sufficiently pleaded that Apple engaged in unfair business acts and practices under the UCL.

*First*, Qualcomm brings a claim under the "unfair" prong of the UCL, not the "fraudulent" prong.  In its Motion, Apple defends its public statement that there is "no discernible difference" between Qualcomm iPhones and Intel iPhones, arguing that Qualcomm must show (but has not shown) that statement to be fraudulent.  But Apple's public statement is not the actionable conduct at issue.  Rather, Qualcomm's claim arises from the *threat* Apple made to Qualcomm that Apple would retaliate if Qualcomm made truthful product comparisons of the superior performance of Qualcomm chips over Intel chips.  Qualcomm's claim that it was threatened by Apple is not grounded in fraud.  Therefore, Qualcomm does not need to meet the heightened pleading standard of Federal Rule of Civil Procedure ("FRCP") 9(b), and does not need to plead the elements of fraud, as would be required for a fraud-based UCL claim.  (Section I.)

*Second*, Qualcomm has standing.  To have standing under the UCL, a party

1    must have suffered injury in fact and have lost money or property as a result of the

2    unfair competition.  Here, Qualcomm's allegations of lost profits, customers,

3    goodwill, product image, and business relationships as a result of Apple's unfair

4    conduct amply satisfy the UCL's standing requirement.  (Section II.)

5        *Third*, Apple confuses the legal standards applicable to UCL claims of

6    unfairness.  Courts apply one of three standards to determine whether a

7    defendant's conduct is actionably unfair under the UCL.  One test, called the *Cel-*

8    *Tech* test, applies—as Apple concedes—*only* when the plaintiff and the defendant

9    are direct competitors, which is not the case here.  Another test, the tethering test,

10   is derived from *Cel-Tech* and, as courts have explained, is ill fitted for claims

11   (such as those alleged here) that are based primarily on unfair conduct directed

12   toward a particular entity, as opposed to unfair conduct directed at broader public

13   policy interests.  The final test—the balancing test—should apply here.  The Ninth

14   Circuit has applied the balancing test to UCL claims brought by suppliers (like

15   Qualcomm), *see Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 994

16   (9th Cir. 2000), and the balancing test is the most appropriate standard by which to

17   judge the claim of unfairness that Qualcomm asserts.  (Section III.)

18       *Fourth*, Apple's application of the balancing test—in a single sentence in its

19   brief—fails to meet its burden to show that Qualcomm's pleadings are deficient.

20   Apple's conduct is unfair because the harm caused by Apple's scheme outweighs

21   its utility.  Apple's threat prevented Qualcomm from revealing the disparity

22   between Qualcomm-based and Intel-based iPhones, thereby hurting Qualcomm

23   and consumers.  That threat had no utility at all, let alone utility sufficient to

24   outweigh the substantial harm it caused.  In any event, courts have held repeatedly

25   that claims under the balancing test are necessarily fact intensive and, thus,

26   inappropriate for resolution on a motion to dismiss.  Even if the tethering test

27   applies, Qualcomm's claim passes that test.  Qualcomm has pleaded facts

28   sufficient to show that Apple's unfair conduct threatens state and federal policies

relating to cellular networks and wireless communications, which is all the tethering test requires.  (Section IV.)

*Fifth*, Apple spends most of its Motion arguing vaguely that Apple's tactics are not actionable under the UCL.  Essentially, Apple argues that the Court should determine that Apple's scheme was not unfair without applying *any* UCL-based fairness test.  But that is the very purpose of the tests—to determine whether the alleged conduct is actionably unfair.  By ignoring the tests, Apple fails to apply the appropriate legal framework, dooming its Motion to Dismiss.  (Section V.)

## **FACTUAL BACKGROUND**

From 2007, when Apple first began making iPhones, through 2010, Apple relied exclusively on chips made by Infineon, which was acquired by Intel in 2011.  (ECF No. 70, Qualcomm's 1st Am. Countercls., or "FACC" ¶ 136.)  Apple eventually required more technologically sophisticated chipsets for its products.  (*Id.* ¶ 137.)  Thus, from 2011 until the fall of 2016, Qualcomm became Apple's supplier of cellular chipsets for new model (*i.e.*, non-legacy) iPhones.  (*Id.* ¶ 239.)  Apple used only Qualcomm's chips "because, among other reasons, Qualcomm's chipsets were better than the competition, such as Intel", and could meet Apple's rigid demands.  (*Id.*)  To this day, Qualcomm's chipsets remain superior to its competitors' chipsets.  (*Id.* ¶¶ 239-240.)

Despite the superiority of Qualcomm's chipsets, on September 16, 2016, Apple released certain iPhone 7 models equipped with Qualcomm chipsets and other iPhone 7 models equipped with Intel chipsets.  (*Id.* ¶ 238.)  Although the Qualcomm chipset is capable of downloading data at significantly faster speeds than the Intel chipset, Apple chose to "limit the performance of the Qualcomm-based iPhones" in an attempt to achieve artificial parity with the Intel-based iPhones.  (*Id.* ¶¶ 40, 240-241.)  Apple did so by choosing not to use certain capabilities of the Qualcomm chipsets, including software that would have increased download rates by 25%, or 150 megabits per second.  (*Id.* ¶¶ 240-241.)

1    Despite Apple's efforts to throttle the performance of Qualcomm chips, the
2    Qualcomm-based iPhone 7s still performed better than the Intel-based iPhone 7s.
3    (*Id.* ¶ 244.)  Apple understood that it would face a backlash from its customers if
4    they learned of the performance disparity, so Apple sought to prevent Qualcomm
5    from making this disparity known.  (*Id.* ¶¶ 243, 251.)  Specifically, Apple
6    threatened "Qualcomm's standing as a supplier to Apple" and told Qualcomm that
7    "Apple would use its marketing organization to retaliate against Qualcomm if
8    Qualcomm publicly compared the performance of Qualcomm-based iPhones to
9    Intel-based iPhones".  (*Id.* ¶ 243.)  Apple made clear that any disclosure by
10   Qualcomm would "jeopardize Qualcomm's business".  (*Id.*)

11   Apple's threat was directed at more than just Qualcomm's standing as a
12   supplier to Apple.  (*See id.*)  Apple understands the influence that consumer
13   preference may have on demand for chipsets—as demonstrated by the "Intel
14   Inside" commercials and Qualcomm's own consumer ad campaign for its
15   Snapdragon chips.  Apple also knows that it has powerful sway over consumers.
16   For its part, upon receipt of the threat, Qualcomm appreciated the immensity of
17   the detriment that Apple's retributive application of its vast marketing resources
18   could visit upon Qualcomm.  (*See id.*)  Apple was thus delivering to one of its
19   suppliers a message as unmistakable in its meaning as it was stunning in its
20   directness:  Fail to accede to our demands at your substantial commercial peril.

21   In the face of Apple's threats, Qualcomm had no choice but to relent and
22   stay silent.  As a result, consumers were deprived of comparative chip
23   performance information relevant to their handset purchasing decisions.
24   (*Id.* ¶ 250.)  Qualcomm was deprived of business from consumers who value chip
25   performance.  (*Id.*)  Network operators lost spectrum capacity that would have
26   been enabled had more consumers demanded the faster Qualcomm chips.  (*Id.*)
27   And so on.  Apple's threat to Qualcomm—and the harm it caused—is the
28   actionable conduct alleged here.

But Apple's unfair conduct did not stop there.  When independent analysts reported that even the Apple-hobbled Qualcomm chips still outperformed the Intel chips—for instance, studies revealed that "Qualcomm modems outperformed Intel modems by 30% overall and by 75% when the cellular signal is weakest" and that the Intel-based iPhone 7s operated with slower modem performance than the Qualcomm-based iPhone 6S (*id.* ¶¶ 245, 247)—Apple publicly denied the findings.  An Apple spokesperson told Bloomberg that "there is no discernible difference in the wireless performance of any of the [iPhone 7] models".  (*Id.* ¶¶ 248-249.)  Consumers were left wondering whom to believe.  And Qualcomm could not weigh in on the public debate because it was silenced by Apple's threat.

Absent Apple's threat, Qualcomm could have revealed the results of its own studies, "Qualcomm's chipsets would [have been] in higher demand, and Qualcomm would [have been] able to sell more chips to Apple to meet that demand."  (*Id.* ¶ 350.)  "Apple's conduct also reduces incentives for Qualcomm to innovate superior products, knowing that Apple may try to prevent consumers from learning about their capabilities."  (*Id.* ¶ 384.)  Apple's unfair scheme caused Qualcomm to lose both money and property, including profits, customers and potential customers, goodwill and product image, and business relationships.  (*Id.* ¶ 385.)  Apple's threats also "deprived consumers of meaningful choice".  (*Id.* ¶ 250.)  And, "by choosing not to utilize the higher data rates that Qualcomm's chipsets can reach for the Qualcomm-based iPhones" and then denying consumers the ability to make an informed choice to buy better phones, "Apple reduces the data download resources available to other smartphones operating on the network."  (*Id.*)

## STANDARD OF REVIEW

Motions to dismiss under FRCP 12(b)(6) test the legal sufficiency of a claim.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  FRCP 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled

1   to relief", which "give[s] the defendant fair notice of what the . . . claim is and the

2   grounds upon which it rests". *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 555

3   (2007). A complaint does not require "detailed factual allegations", *id.*, and will

4   survive a motion to dismiss unless it lacks "sufficient factual matter, accepted as

5   true, to 'state a claim to relief that is plausible on its face'", *Ashcroft v. Iqbal*, 556

6   U.S. 662, 678 (2009) (quoting *Twombly*, 500 U.S. at 570). Facial plausibility is

7   met where a complaint "pleads factual content that allows the court to draw the

8   reasonable inference that the defendant is liable for the misconduct alleged".

9   *Iqbal*, 556 U.S. at 678. The court must accept as true all facts alleged in the

10  complaint and draw all reasonable inferences in favor of the nonmoving party.

11  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## ARGUMENT

### I.      Qualcomm Brings an "Unfair" UCL Claim, Not a "Fraud" Claim.

14          Apple spends the majority of its Motion attacking a purported fraud claim

15  that Qualcomm did not plead. Apple argues that: (i) Qualcomm challenges

16  Apple's public statements about the comparability of Qualcomm and Intel

17  iPhones; (ii) but Qualcomm does not adequately plead that Apple's public

18  statements satisfy the elements of fraud; so (iii) Qualcomm's UCL claim must be

19  dismissed. That is a strawman argument. Qualcomm's UCL claim is not based on

20  Apple's public statements; rather, it arises from Apple's threats to, and silencing

21  of, Qualcomm. Qualcomm's claim is brought under the "unfair" prong of the

22  UCL, which does not require Qualcomm to plead fraud or meet the heightened

23  pleading standards of FRCP 9(b). Apple's attempted sleight of hand should be

24  rejected.

25          The UCL prohibits "any unlawful, unfair or fraudulent business act or

26  practice". Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives

27  captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*,

28  613 F.3d 1195, 1203 (9th Cir. 2010) (internal quotation marks omitted). "Fraud is

not an essential element" of a UCL claim.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  As a result, courts do not apply fraud-based pleading requirements to UCL claims, except in the narrow circumstance where a plaintiff alleges UCL claims that "sound in fraud".  *Id.* at 1103-06.

A claim sounds in fraud only if it "allege[s] a unified course of fraudulent conduct and rel[ies] *entirely* on that course of conduct as the basis of [the] claim". *Id.* at 1103 (emphasis added).  At a minimum, to sound in fraud, the claim must attempt to allege the "indispensable elements" of fraud:  "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Vess*, 317 F.3d at 1105; *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 917 (Cal. 1997); *see also Oracle Am., Inc. v. TERiX Computer Co.*, 2014 WL 31344, at *4 & n.30 (N.D. Cal. Jan. 3, 2014).

Qualcomm's UCL claim does not sound in fraud.  And Qualcomm does not allege the "indispensable elements" of fraud or a course of fraudulent conduct. *Vess*, 317 F.3d at 1105; *Engalla*, 938 P.2d at 917.  In fact, Qualcomm's UCL claim is nothing like a fraud claim.  The actionable conduct here is Apple's threat to Qualcomm.  The purpose of that threat was not to defraud Qualcomm; it was to silence Qualcomm and prevent it from making truthful product comparisons. Qualcomm does not allege that Apple's threat was a misrepresentation, that Apple intended to deceive Qualcomm, or that Qualcomm was deceived by Apple's statements or relied on them in any way.

In essence, Apple argues that Qualcomm's UCL claim should be converted into a fraud claim because Qualcomm alleges that *after* Apple threatened Qualcomm, Apple also publicly misrepresented the performance of Qualcomm-based iPhones and Intel-based iPhones.  (MTD 7-8.)  Apple misses the point. Qualcomm's UCL claim does not rise or fall on Qualcomm's ability to establish that Apple intentionally lied to consumers.  Rather, the relevance of Apple's

public statement to consumers is that it exacerbated the unfairness of Apple's use of threats to keep Qualcomm quiet about the capabilities of its own products. In other words, Apple's threat is even more egregious because, after silencing Qualcomm, Apple spoke to consumers concerning the very subject on which it demanded Qualcomm remain silent. Apple put its thumb on the scale by silencing Qualcomm and then, once it knew that Qualcomm could not offer a rebuttal, coming forward with its own misleading statement. That conduct violates the UCL because it is an unfair business practice, not because it amounts to fraud against Qualcomm. *See, e.g.*, *Howell v. Grindr, LLC*, 2016 WL 1668243, at \*3 (S.D. Cal. Apr. 27, 2016) (Curiel, J.) (explaining that language such as "'false, deceptive and misleading' . . . [is] used to assert causes of action under the UCL and do[es] not establish the claims are grounded in fraud").

Because Qualcomm does not allege fraud, the fraud pleading standards do not apply, as numerous cases have made clear. *See, e.g.*, *Howell*, 2016 WL 1668243, at \*5 ("[T]he Court disagrees with Defendant's argument that the UCL claim is based on fraud. . . . [T]herefore, Plaintiff does not need to plead reliance."); *Oracle*, 2014 WL 31344, at \*5 (refusing to apply fraud pleading standard "[b]ecause the disputed conduct involves third-party reliance and not the first-party reliance required to recover for an economic injury from fraud under California law"); *Gruen v. EdFund*, 2009 WL 2136785, at \*5 (N.D. Cal. July 19, 2009) (holding that because "Plaintiff neither specifically alleges fraud nor alleges facts that necessarily constitute fraud", FRCP 9(b) does not apply); *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008) (holding plaintiffs' claims did not "sound in fraud" because "Plaintiffs merely allege[d] that the representations were likely to deceive and that Plaintiffs were damaged by the deception; they make no effort to allege common law fraud elements such as intent to deceive or any overarching fraudulent scheme to defraud the individual Plaintiffs or the public").

Apple's reliance on *Vess* and *Kearns v. Ford Motor Company* is misplaced. In those cases, the claims "sounded in fraud" because they were based on overarching fraudulent schemes, including false representations, failures to disclose, cover-ups, and conspiracies, and plaintiffs in those cases alleged the elements of common law fraud under California law. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1123, 1125-1127 (9th Cir. 2009); *Vess*, 317 F.3d 1097, 1101, 1106, 1108. Similarly, in *L.A. Taxi Cooperative, Inc. v. Uber Technologies, Inc.*, 114 F. Supp. 3d 852, 858 (N.D. Cal. 2015), the plaintiffs alleged that defendants embarked on a campaign of false advertising—*i.e.*, the UCL and false advertising claims turned on a series of misrepresentations and thus sounded in fraud. Unlike in those cases, Qualcomm does not allege an overarching fraudulent scheme, but rather unfair conduct, and as discussed above, Qualcomm does not allege the elements of common law fraud. *Cf. Vess*, 317 F.3d at 1105-06 (holding that plaintiff's allegations against one defendant did "not rely entirely on a unified fraudulent course of conduct" and therefore were "not 'grounded in fraud'" because plaintiff did not mention the word fraud or "allege[] facts that would necessarily constitute fraud").[1]

## II. Qualcomm Has Standing To Bring Its "Unfair" UCL Claim.

Apple incorrectly asserts that Qualcomm lacks standing to bring its UCL claim because Qualcomm has not sufficiently alleged loss of money or property as a result of Apple's unfair conduct. (MTD 8, 11-12.) In order to have standing

---

[1] With its Motion, Apple filed a Request for Incorporation by Reference or Judicial Notice, asking the Court to consider the Bloomberg article cited as Exhibit 1 in Apple's Motion. (ECF No. 77-2; MTD 5 n.1.) Apple's request should be denied as moot because it is premised on Apple's incorrect argument that Qualcomm brings a "fraud" UCL claim. As Apple puts it, "Qualcomm's *misrepresentation* claim necessarily relies on a quotation attributed to an Apple spokesperson in the document". (MTD 5 n.1 (emphasis added).) Because Qualcomm's UCL claim is based on Apple's threat, Apple's reliance on the Bloomberg article is misplaced.

1  under the UCL, Cal. Bus. & Prof. Code § 17204, a private plaintiff must

2  "(1) establish a loss or deprivation of money or property sufficient to qualify as an

3  injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the

4  result of, i.e., *caused by*, the unfair business practice". *Kwikset Corp. v. Superior*

5  *Court*, 246 P.3d 877, 885 (Cal. 2011).

6      "There are innumerable ways" a plaintiff may demonstrate "some form of

7  economic injury": "If a party has alleged or proven a personal, individualized loss

8  of money or property in any nontrivial amount, he or she has also alleged or

9  proven injury in fact." *Kwikset*, 246 P.3d at 885, 887. "At the pleading stage,

10  general factual allegations of injury resulting from the defendant's conduct may

11  suffice, for on a motion to dismiss we presum[e] that general allegations embrace

12  those specific facts that are necessary to support the claim." *Id.* at 888 (internal

13  quotation marks omitted); *see also A.P. Deauville, LLC v. Arion Perfume &*

14  *Beauty, Inc.*, 2014 WL 7140041, at *5 (N.D. Cal. Dec. 12, 2014) (same).

15      Qualcomm alleges that it lost profits and customers as a result of Apple's

16  unfair business practices, absent which "Qualcomm's chipsets would be in higher

17  demand, and Qualcomm would be able to sell more chips to Apple to meet that

18  demand." (FACC ¶¶ 383, 385). Qualcomm also alleges that it has suffered "loss

19  of goodwill and product image, and loss of business relationships" as a result of

20  Apple's unfair business practices. (*Id.* ¶ 385.) Courts have found similar

21  allegations sufficient to support standing under the UCL. *See, e.g., Storm Mfg.*

22  *Grp., Inc. v. Weather Tec Corp.*, 2013 WL 5352698, at *7-8 (C.D. Cal. Sep. 23,

23  2013) (finding economic injury where plaintiff alleged loss of customers and

24  damage to goodwill); *see also Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310,

25  1316 (9th Cir. 1989) (holding that "[t]he goodwill of one's business is a property

26  interest entitled to protection" and is recognized as such by California law).[2]

27

28  ────────────────

    [2] The case cited by Apple does not hold otherwise. (MTD 12.) *See Two Jinn,*
    *Inc. v. Gov't Payment Serv., Inc.*, 2010 WL 1329077, at *3 (S.D. Cal. Apr. 1,

1    Moreover, the Ninth Circuit has held that a plaintiff has standing where it

2    faced the dilemma of choosing between two economic injuries as a result of the

3    defendant's unfair conduct.  *See Rubio*, 613 F.3d at 1204 ("[Plaintiff] does not

4    allege which choice she accepted, though either would cause a loss of money or

5    property. . . .  This 'actual economic injury' is enough to create standing under the

6    UCL.").  Apple forced Qualcomm into a similar position:  Qualcomm either had

7    to capitulate to Apple's threat and suffer a loss of profits, customers and goodwill,

8    or had to defy Apple and face retaliation, which also would have caused

9    Qualcomm to lose money and property.  (*See* FACC ¶ 243.)  As in *Rubio*,

10   Qualcomm's pleadings sufficiently allege a loss of money or property caused by

11   Apple's unfair conduct, so Qualcomm has standing under the UCL.

12   Apple's standing argument is based on a distortion of Qualcomm's UCL

13   claim.  As shown above (Section I), Qualcomm brings its claim under the "unfair"

14   prong, based on Apple's threat to Qualcomm, not on Apple's misrepresentations

15   to consumers.  Accordingly, the requirement for a private plaintiff bringing a UCL

16   claim that sounds in fraud to show that the plaintiff itself relied on the deceptive

17   statements (*see, e.g.*, *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793

18   (9th Cir. 2012); *L.A. Taxi*, 114 F. Supp. 3d at 866-67), is inapplicable to

19   Qualcomm's "unfair" UCL claim.  Qualcomm has sufficiently pleaded injury in

20   fact and causation under the UCL.

21   **III.    The Balancing Test Applies to Qualcomm's UCL Claim.**

22   Apple's Motion only cursorily addresses the legal tests used to judge

23   whether a plaintiff has pleaded an "unfair" claim under the UCL.  Despite Apple's

24   attempt to sidestep these standards and their application to Apple's conduct,

25   relevant Ninth Circuit precedent dictates that this Court should apply the

26

27   2010) (finding that plaintiff lacked Article III standing where it admitted there was
28   "no direct connection between Defendant's activities and Plaintiff's business").

balancing test to Qualcomm's claim.

### A.   Legal Standards for an "Unfair" UCL Claim.

The term "unfair" as used in the UCL is broad:  "a practice may be deemed unfair even if not specifically proscribed by some other law."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999).  So long as there is no statute explicitly barring the action or permitting the conduct, a plaintiff may challenge the conduct as "unfair" under the UCL.  *Id.* at 541. "The statute is intentionally broad to give the court maximum discretion to control whatever new schemes may be contrived, even though they are not yet forbidden by law."  *People ex rel. Renne v. Servantes*, 103 Cal. Rptr. 2d 870, 881 (Ct. App. 2001); *see Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015) ("The UCL's coverage is sweeping, and its standard for wrongful business conduct intentionally broad." (internal quotation marks omitted); *Cel-Tech*, 973 P.2d at 540 ("When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one.").

In determining whether a business act or practice is unfair under the UCL, California courts use one of three tests depending on the type of claim alleged.

***Cel-Tech Test***:  If the plaintiff is a direct competitor of the defendant, then courts apply the test articulated by the California Supreme Court in *Cel-Tech*:

> "When a plaintiff who claims to have suffered injury from a *direct competitor's* 'unfair' act or practice invokes section 17200, the word 'unfair' . . . means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."

*Id.* at 544 (emphasis added).

***Tethering Test***:  The "tethering test" was derived from the following language in *Cel-Tech:* "[W]e must require that any finding of unfairness *to*

*competitors* under section 17200 be *tethered* to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* (emphasis added). It applies "[w]here a claim of an unfair act or practice is predicated on public policy", *Smith v. Specialized Loan Servicing, LLC*, 2017 WL 1711283, at *9 (S.D. Cal. May 3, 2017) (Curiel, J.), and deems a practice unfair if it offends a "public policy . . . tethered to specific constitutional, statutory, or regulatory provisions", *In re Adobe Sys. Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014).

      ***Balancing Test***: The balancing test applies if the plaintiff is not a competitor of the defendant and alleges harm directed primarily at the plaintiff (as opposed to public policy more broadly). Under the "balancing test", a practice is unfair if the utility of the practice is outweighed by "the gravity of the harm to the alleged victim", or when the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers". *Wilner v. Sunset Life Ins. Co.*, 93 Cal. Rptr. 2d 413, 422 (Ct. App. 2000) (quoting *State Farm Fire & Cas. Co. v. Superior Court*, 53 Cal. Rptr. 2d 229, 234-35 (Ct. App. 1996)).

## B. The Court Should Apply the Balancing Test.

      Because Qualcomm and Apple are not direct competitors, the *Cel-Tech* test does not apply. In addition, the tethering test does not apply because Qualcomm's claims do not arise primarily from public policy concerns; Apple's attack was directed specifically at Qualcomm. Accordingly, the Court should apply the balancing test, as the Ninth Circuit did in another UCL case brought by a supplier. *See Knevelbaard*, 232 F.3d at 994.

      In *Cel-Tech*, the California Supreme Court expressly limited the test it announced to actions brought by *direct competitors*: "This case involves an action by a competitor alleging anticompetitive practices. Our discussion and this test are limited to that context." 973 P.2d at 544 n.12. Other courts have confirmed

the limited reach of *Cel-Tech*.  *See, e.g.*, *Smith v. State Farm Mut. Auto. Ins. Co.*, 113 Cal. Rptr. 2d 399, 416 n.23 (Ct. App. 2001) ("It would thus appear that the *Cel-Tech* court's comments did not signal a retreat (at least in noncompetitor cases), from its earlier statements [regarding the sweeping nature and broad scope of the UCL].").  Apple itself concedes that the *Cel-Tech* test is limited to claims against a direct competitor.  (*See* MTD 17 ("The California Supreme Court has articulated two types of tests for unfairness—those that apply in 'competitor' cases and those that apply in 'consumer' cases."); *see also* MTD 17 (explaining that "a *direct competitor* bringing a claim under the 'unfair' prong of the UCL must allege [conduct that satisfies the *Cel-Tech* test]" (emphasis added)).)

Qualcomm and Apple are not direct competitors.  Qualcomm does not make and sell consumer cellular devices.  Rather, Qualcomm is one of Apple's chip suppliers.  (FACC ¶¶ 41, 45.)  Although Apple attempts to obfuscate that relationship by asserting that Qualcomm is a competitor in the chipset market with Intel, Qualcomm's UCL claim is against Apple, not Intel, and the wrongful conduct is a threat made by Apple, not Intel.  Because Qualcomm and Apple are not direct competitors, the *Cel-Tech* test does not apply.

That leaves the tethering test and the balancing test.  The California Supreme Court has recognized that California state courts have inconsistently applied those tests after *Cel-Tech* but has declined to resolve the question of which test applies to "unfair" UCL claims in non-competitor cases.  *See Yanting Zhang v. Superior Court*, 304 P.3d 163, 174 n.9 (Cal. 2013).  Accordingly, this Court needs to determine which test is appropriate given the facts and circumstances of the claims alleged.

In this case, the tethering test is inappropriate for at least three reasons.

*First*, in cases involving non-competitors, the tethering test improperly "collapse[s] the 'unfair' prong into the 'unlawful' prong" and thus "provides only the illusion of guidance".  *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044,

1054 (C.D. Cal. 2014).  By limiting the "unfair" prong in this way, the tethering test frustrates the central purpose of the UCL's unfairness prong—to empower courts to enjoin the consummation of a "scheme . . . which on its face violates the fundamental rules of honesty and fair dealing", but which is "not specifically proscribed by some other law".  *Cel-Tech*, 973 P.2d at 540.  Because Qualcomm's UCL claim is not predicated on a violation of law, if the Court were to apply the tethering test, it would risk turning Qualcomm's "unfair" claim into an "unlawful" claim.

*Second*, the tethering test is inappropriate for "unfair" claims that are not primarily predicated on violations of public policy.  The seminal case on the tethering test, *Gregory v. Albertson's, Inc.*, held that the tethering test applies "where a claim of an unfair act or practice is predicated on public policy".  128 Cal. Rptr. 2d 389, 395 (Ct. App. 2002); *see also Scripps Clinic v. Superior Court*, 134 Cal. Rptr. 2d 101, 116 (Ct. App. 2003) (applying the tethering test to a UCL claim alleging that defendant's acts impeded plaintiff's right to sue in contravention of public policies favoring access to the courts).  Here, Qualcomm's UCL claim is based primarily on Apple's threat to harm Qualcomm's business, not broader public policy concerns.

*Third*, all of the cases that Apple cites that apply the tethering test do so in the context of claims by consumers alleging harm exclusively to consumers. (*See* MTD 17-18 (citing *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161 (E.D. Cal. 2013); *Scripps*, 134 Cal. Rptr. 2d at 116).)[3]  Here, of course, Qualcomm is not a consumer, but rather is one of Apple's suppliers.

---

[3] The court in *Herron* refused to decide which test is proper.  *See* 924 F. Supp. 2d at 1178.  And the same California Court of Appeal (the Fourth District) that decided *Scripps* later refused to decide which test was proper when it revisited the question in another case.  *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) (describing the approaches of the California appellate courts).

1    Thus, the Court should apply the balancing test.  The Ninth Circuit has

2  applied the balancing test to a UCL claim brought by a supplier (like Qualcomm)

3  that is not a direct competitor of the defendant.  *See Knevelbaard*, 232 F.3d at 994.

4  The Ninth Circuit also has endorsed a district court's application of the balancing

5  test to a non-competitor.  *See Lozano*, 504 F.3d at 736 ("endors[ing] the district

6  court's approach to the [UCL] as if it still contained a balancing test").  Apple's

7  assertion that the balancing test is "not viable" after *Cel-Tech* is wrong; courts

8  continue to apply the balancing test.  *See, e.g.*, *Sako v. Wells Fargo Bank, N.A.*,

9  2015 WL 5022307, at *21 (S.D. Cal. Aug. 21, 2015) (Curiel, J.) (defining "unfair"

10  under the UCL by reference to the balancing test—"any practice whose harm to

11  the victim outweighs its benefits"); *Aguilar v. Gen. Motors, LLC*, 2013 WL

12  5670888, at *6 (E.D. Cal. Oct. 16, 2013) (applying the "traditional balancing test"

13  because "it has been used more widely and analyzed more thoroughly by

14  California courts"); *see also Luxul Tech.*, 78 F. Supp. 3d at 1174 ("A business

15  practice violates the unfair prong of the UCL if it is contrary to established public

16  policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury

17  to consumers which outweighs its benefits." (internal quotation marks omitted));

18  *McVicar*, 1 F. Supp. 3d at 1054 (examining "whether the gravity of the harm to

19  the victim outweighs the utility of the defendant's conduct").  Consistent with this

20  precedent, this Court should apply the balancing test to Qualcomm's UCL claim.[4]

21    Importantly, a plaintiff need only satisfy *one* of the "unfair" tests to defeat a

22

23    [4] Although some courts have applied an "FTC test" based on the three-pronged
24  test contained in the Federal Trade Commission Act, 15 U.S.C. § 45(a), the Ninth
25  Circuit has "decline[d] to apply the FTC standard [to non-competitors] in the
   absence of a clear holding from the California Supreme Court".  *Lozano*, 504 F.3d
26  at 736; *see also Rubio*, 613 F.3d at 1205 (recognizing only the balancing and
   tethering tests); *Adobe*, 66 F. Supp. 3d at 1226 (same).  Apple likewise asserts that
27  the FTC test is "not viable".  (*See* MTD 18 n.3.)  Accordingly, the FTC test is
28  inapplicable.

motion to dismiss, not all of them.  In *Ferrington v. McAfee, Inc.*, the court denied the defendant's motion to dismiss, despite plaintiffs' failure to state a claim under the tethering test, because "the balancing test remains appropriate" and plaintiffs had satisfied that test.  *See* 2010 WL 3910169, at *12-13 (N.D. Cal. Oct. 5, 2010).  Other courts have reached the same conclusion.  *See, e.g.*, *Worldwide Travel, Inc. v. Travelmate US, Inc.*, 2015 WL 1013704, at *12 (S.D. Cal. Mar. 9, 2015) (finding that plaintiffs sufficiently stated a UCL claim under the balancing test, despite finding that "Plaintiffs have not alleged that Defendants violated any legislatively declared policy, violated antitrust principles, or significantly threatened or harmed the competition").

## IV.    Qualcomm Pleads a Claim Under the "Unfair" Prong of the UCL.

Qualcomm has sufficiently pleaded that Apple's conduct is unfair under the balancing test.  Specifically, taking Qualcomm's allegations as true, the harm to Qualcomm and consumers from Apple's unfair business practices far outweighs any utility.  Apple tries to ascribe utility to its conduct by introducing its own factual allegations, but the introduction of such facts is inappropriate for a motion to dismiss.  Apple's attempt to contest Qualcomm's claim on the facts highlights the fact-intensive nature of UCL claims generally, which are ill suited for resolution on a motion to dismiss.  Alternatively, as discussed below, even if the tethering test applies, Qualcomm's allegations also satisfy that test.

### A.    Apple's Conduct Is Unfair Under the Balancing Test.

Under the balancing test, an "unfair" practice occurs when the utility of the practice is outweighed by "the gravity of the harm to the alleged victim", or when the practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers".  *Wilner*, 93 Cal. Rptr. 2d at 422 (quoting *State Farm*, 53 Cal. Rptr. 2d. at 234-35); *see also Lozano*, 504 F.3d at 736.  The Court must consider the alleged wrongdoer's conduct and its "impact on its alleged victim, balanced against [its]

1   reasons, justifications and motives".  *Wilner*, 93 Cal. Rptr. 2d at 422 (quoting

2   *State Farm*, 53 Cal. Rptr. 2d. at 234).

3           Here, the harm caused by Apple's unfair conduct far outweighs its utility.

4   Apple's scheme was simple:  After not utilizing certain features of the Qualcomm

5   chipsets, effectively limiting their performance to match Intel's inferior chipsets,

6   Apple threatened Qualcomm to prevent it from revealing the disparity, and then

7   made its own statements denying the significant performance differences.  (FACC

8   ¶¶ 40, 240-241, 243, 248-249.)  Apple's conduct harmed Qualcomm, causing

9   Qualcomm to lose money and property.  Absent Apple's conduct, Qualcomm's

10  chipsets would be in higher demand, and Qualcomm would be able to sell more

11  chipsets to meet that demand.  (FACC ¶¶ 250, 383.)  Moreover, Apple's conduct

12  hurt Qualcomm's goodwill and product image and caused it to lose business

13  relationships.  (*Id.* ¶ 385.)  And by preventing consumers from learning about the

14  superior capabilities of Qualcomm's products, Apple's conduct reduced incentives

15  to develop next-generation technologies.  (*Id.* ¶ 384.)  This harm to Qualcomm is

16  more than enough to state a claim under the unfair prong of the UCL.  *See Blanks*

17  *v. Shaw*, 89 Cal. Rptr. 3d 710, 731 (Ct. App. 2009) (holding that an act may

18  violate the UCL even if it "affects only one victim").

19          Qualcomm's UCL claim also alleges that Apple's unfair scheme harmed

20  consumers.  Apple's "threats and other efforts to hide the truth" denied consumers

21  knowledge of the performance disparities, which, in turn, "deprived consumers of

22  meaningful choice".  (FACC ¶ 250.)  Apple's unfair acts also negatively affect the

23  efficiency of the entire cellular network, "reduc[ing] the data download resources

24  available to other smartphones operating on the network".  (*Id.*)  In sum, "Apple's

25  business practices have harmed everyone who depends on the cellular industry".

26  (*Id.* ¶ 386.)  This harm to consumers underscores the "immoral, unethical,

27  oppressive, unscrupulous" nature of Apple's conduct.  *Cf. Gomez v. Nationstar*

28  *Mortg., LLC*, 2015 WL 966224, at *12 (E.D. Cal. Mar. 4, 2015) (holding that

where plaintiffs' claim did not "focus solely on harms committed by [Defendant] to Plaintiffs", but also alleged harm to California consumers, "[a]t the motion to dismiss stage, these are sufficient allegations of a practice by [Defendant] that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'").

On the other side of the scale, Apple's conduct has no utility.  (*See* FACC ¶ 386.)  Apple's coercive threat served only to conceal the performance disparity between the Qualcomm-based and Intel-based iPhones, at the expense of Qualcomm and consumers alike.  There was no benefit to anyone but Apple and Intel.  Therefore, applying the proper test, Qualcomm has sufficiently pleaded a violation of the "unfair" prong of the UCL.[5]

### B.   Apple's Conduct Is Unfair Under the Tethering Test.

Apple asserts that Qualcomm has failed to plead a claim under the tethering test because Qualcomm has not alleged facts showing that Apple's conduct violates a public policy tethered to law.  (MTD 18.)  But that is a reason the tethering test should not apply at all, not a reason to dismiss Qualcomm's claim.

But, should the Court require Qualcomm to meet the tethering test, its allegations easily do so.  To adequately plead the existence of an unfair act or practice under the tethering test, the plaintiff must show that the defendant's unfair conduct offends a "public policy . . . tethered to specific constitutional, statutory, or regulatory provisions".  *Adobe*, 66 F. Supp. 3d at 1226.  Under this test, a plaintiff need not plead specific violations of law in its complaint because "[n]othing in *Cel-Tech* suggests that unfairness requires a statutory violation; on the contrary, *Cel-Tech* expressly states that the UCL is independent of other statutes, and prohibits unfair practices not otherwise unlawful".  *Safeway, Inc. v.*

---

[5] If the Court determines that Qualcomm has not pleaded sufficient facts, leave to amend should be granted.  *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

1    *Superior Court*, 190 Cal. Rptr. 3d 131, 146 (Ct. App. 2015); *see also Adobe*, 66 F.

2    Supp. 3d at 1227 ("Plaintiffs do not need to plead any direct violations of a statute

3    to bring a claim under the UCL's unfair prong.").  "Instead, Plaintiffs need merely

4    to show that the effects of [Defendant's] conduct [are] 'comparable to or the same

5    as a violation' of established law, not that Plaintiffs meet all of the procedural

6    requirements of that law."  *Gomez*, 2015 WL 966224, at *10 (quoting *Cel-Tech*,

7    973 P.2d at 544); *see also Luxul Tech.*, 78 F. Supp. 3d at 1174 ("Under the

8    sweeping coverage of the UCL, a practice does not need to be unlawful to be

9    unfair." (internal quotation marks omitted)).

10          Here, Apple's conduct violates the public policies underlying statutory and

11   regulatory provisions relating to cellular networks and wireless communications.

12   Among the many unfair effects of Apple's conduct is the "inefficient allocation of

13   bandwidth to iPhones", chilling of cellular innovation, and the resulting harm to

14   "everyone who depends on the cellular industry".  (FACC ¶¶ 242, 384, 386.)  The

15   Federal Communications Commission ("FCC") has long had the authority to

16   "promote efficient use of the radio spectrum".  47 C.F.R. § 2.901.  Further, in

17   connection with public infrastructure, Congress has pronounced that the FCC and

18   the states "shall encourage the deployment on a reasonable and timely basis of

19   advanced telecommunications capability to all Americans".  47 U.S.C. § 1302.

20   And California's telecommunications policies expressly seek to encourage "the

21   development and deployment of new technologies", the promotion of "lower

22   prices, broader consumer choice, . . . avoidance of anticompetitive conduct", and

23   "fair product and price competition in a way that encourages greater efficiency,

24   lower prices, and more consumer choice".  Cal. Pub. Util. Code § 709.

25          The policies underlying these statutes and regulations are efficiency,

26   innovation, fairness, and consumer choice in wireless communications.  By

27   inhibiting the efficient use of the radio spectrum on cellular networks, reducing

28   Qualcomm's incentives to innovate, coercing Qualcomm's silence regarding the

performance disparity in Apple's iPhone models, and misrepresenting those disparities to the public, Apple has offended these public policies.

Apple's unfair conduct also "deprived consumers of meaningful choice". (FACC ¶ 250.)  That is contrary to public policy and law designed to protect and promote consumer choice.  *See, e.g., Glen Holly Entm't, Inc. v. Tektronix, Inc.,* 352 F.3d 367, 374 (9th Cir. 2003) ("One form of antitrust injury is '[c]oercive activity that prevents its victims from making free choices between market alternatives.'" (quoting *Amarel v. Connell*, 102 F.3d 1494, 1509 (9th Cir. 1996))); *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1132 (C.D. Cal. 2009) (same).  By pleading that Apple threatened Qualcomm to prevent it from making accurate comparisons between the iPhone models, Qualcomm has sufficiently shown, under the motion to dismiss standard, that Apple's conduct is unfair under the tethering test.

### C.    Apple May Not Introduce New Factual Allegations.

Apple's attempts to justify its unfair scheme are legally irrelevant and underscore why the Court should deny Apple's Motion.  Apple cannot use its Motion to introduce factual allegations to support its theory of the case and contradict Qualcomm's well-pleaded allegations.  As this Court has stated, "It is simply not proper to use a Rule 12 motion to challenge factual matter in the complaint or to proffer competing factual allegations." *Citizens Dev. Corp. v. Cty. of San Diego*, 2017 WL 1089549, at *6 (S.D. Cal. Mar. 23, 2017) (Curiel, J.); *see Luxul Tech.*, 78 F. Supp. 3d at 1171.  Similarly, "[i]t is well established that the court cannot choose among competing factual allegations at the motion to dismiss stage". *Moss v. Singleton*, 110 F. Supp. 3d 876, 884 (N.D. Ill. 2015).

In particular, courts repeatedly have held that the fact-intensive analysis required under the UCL's tests cannot be resolved on a motion to dismiss.  *See, e.g., McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (Ct. App. 2006) ("[T]he determination whether [a practice] is unfair is one of fact which requires a

1  review of the evidence from both parties", and is therefore a determination that

2  cannot typically be made on demurrer).[6]  Apple attempts to defeat Qualcomm's

3  UCL claim by introducing new facts, thereby implicitly conceding that

4  Qualcomm's claim turns on a factual dispute.  For instance, Apple improperly

5  attempts to justify its threat against Qualcomm by asserting that "Apple has

6  the right to make its own business decisions".  (MTD 3.)  Apple also justifies

7  its misconduct by pointing to its desire to "standardize the user experience on

8  the iPhone 7".  (MTD 1.)  Although neither of these allegations justifies

9  Apple's misconduct, that is beside the point; the factual dispute cannot be

10  resolved at this stage of the case.  Apple also repeatedly tries to discredit the

11  findings of the third-party studies cited by Qualcomm, criticizing them as follows:

12  "a methodologically unsound 'study'"; "the methodology of these 'studies' is

13  questionable"; and the third-party findings were under "unverified conditions and

14  methodologies".  (MTD 2, 5-6, 15.)  Because resolution of such factual disputes is

15  improper on a motion to dismiss, the Court should deny Apple's Motion.

16  **V.     Apple Misstates the Unfair Conduct Underlying Qualcomm's Claim.**

17       Apple spends most of its Motion trying to avoid application of the well-

18  settled tests for unfairness.  (MTD 12-17.)  It simply asserts that Apple's actions

19  were not unfair.  But that is what the tests are meant to decide.  Apple cannot

20

21       [6] *See also Progressive W. Ins. Co. v. Yolo Cty. Superior Court*, 37 Cal. Rptr. 3d
22  434, 453 (Ct. App. 2005) ("The balancing test required by the unfair business
    practice prong of section 17200 is fact intensive and is not conducive to resolution
23  at the demurrer stage."); *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d 439, 456 (Ct.
    App. 2000) ("Unlike 'unlawfulness,' 'unfairness' is an equitable concept that
24  cannot be mechanistically determined under the relatively rigid legal rules
    applicable to the sustaining or overruling of a demurrer."); *Motors, Inc. v. Times*
25  *Mirror Co.*, 162 Cal. Rptr. 543, 546 (Ct. App. 1980) ("[S]ince the complaint is
26  unlikely to reveal defendant's justification, if that pleading states a prima facie
    case of harm, having its genesis in an apparently unfair business practice, the
27  defendant should be made to present its side of the story.").

28

obtain dismissal by ignoring the tests.  In any event, the conduct Apple highlights is not the focus of Qualcomm's UCL claim.  And the actual conduct at issue is not protected by the *Colgate* doctrine.

### A.  Apple's Arguments Regarding Its Product Design Decisions and the Falsity of Its Misrepresentation Are Irrelevant.

Apple casts Qualcomm's claim as an attack on Apple's design choices, stating that Apple has "broad discretion to make product design decisions". (MTD 12-14.)  Apple's arguments are unavailing.  Qualcomm does not allege that Apple violated the UCL by refusing certain features of Qualcomm's chipsets; Qualcomm alleges that Apple's threat to retaliate against Qualcomm for any truthful comparison of the Qualcomm and Intel iPhone 7s was unfair.  (FACC ¶ 243.)  Accordingly, the cases that Apple cites are inapposite.  (*See* MTD 12-14.)

In addition, as explained above (Section I), Qualcomm's UCL claim does not depend on whether Apple's statement that "there is no discernible difference in the wireless performance of any of the [iPhone 7] models" was deceptive to consumers.  (*See* MTD 14-15.)  Regardless of the truth or falsity of Apple's statement (and Qualcomm expects to establish in discovery that it was untrue), it was unfair for Apple to threaten Qualcomm into refraining from making public comparisons of the Qualcomm-based and Intel-based iPhones and then affirmatively release a public statement favorably comparing the performance of the Qualcomm-based and Intel-based iPhones.  Apple's conduct limited the information in the marketplace and deprived consumers of relevant information from Qualcomm, one of the parties whose products were being compared.

### B.  The *Colgate* Doctrine and Its Progeny Do Not Shield Apple from Liability under the UCL.

Apple asserts that Qualcomm's UCL claim fails because under the *Colgate* doctrine, "a manufacturer [has] the right to select with whom to do business and on what terms".  (MTD 15-16 (internal quotation marks omitted) (citing *United States v. Colgate & Co.*, 250 U.S. 300 (1919)).)  Apple's reliance on *Colgate* is

misplaced.  The holding of *Colgate* is that, "[i]n the absence of any purpose to create or maintain a monopoly, . . . [a business] may announce in advance the circumstances under which [it] will refuse to sell".  *Colgate*, 250 U.S. at 307; *see also United States v. Parke, Davis & Co.*, 362 U.S. 29, 43 (1960) ("[The Court has] fashioned [the *Colgate* doctrine's] dimensions as meaning no more than that a simple refusal to sell to customers who will not resell at prices suggested by the seller is permissible under the Sherman Act").  Here, Apple did not suggest narrow terms of trade for its relationship with Qualcomm, such as the price at which it would buy its chips.  Rather, Apple threatened to punish Qualcomm for speaking truthfully about the relative quality of its chips.  And Apple did much more than merely threaten to end its relationship with Qualcomm as a supplier; Apple threatened to retaliate against Qualcomm through a marketing campaign and made clear that if Qualcomm disclosed the chipset speed disparity to the public, "it would jeopardize Qualcomm's business".  (FACC ¶ 243.)  Apple's threats and intimidation tactics went far beyond simply choosing with whom to deal, and on what terms, and therefore do not fall within the protection of the *Colgate* doctrine.

Apple's reliance on *Chavez v. Whirlpool Corp.*, 113 Cal. Rptr. 2d 175 (Ct. App. 2001), is similarly misplaced.  In *Chavez*, the California Court of Appeal applied the *Colgate* doctrine in the context of a UCL claim, alongside an antitrust claim of price fixing.  Consistent with the holding of *Cel-Tech*,[7] *Chavez* makes clear that conduct that is explicitly permitted by the antitrust laws cannot form the basis of a UCL claim.  *Id.* at 183-84.  The *Chavez* court held that a unilateral

___

[7] *See Cel-Tech*, 973 P.2d at 541-42 ("To forestall an action under the [UCL], another provision must actually 'bar' the action or clearly permit the conduct. . . . Acts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law, but acts may, if otherwise unfair, be challenged under the [UCL] even if the Legislature failed to proscribe them in some other provision.").

1   refusal to deal with a retailer that would not follow a minimum resale pricing

2   policy was conduct "condoned under the antitrust laws" and therefore not unfair

3   under the UCL.  *Id.* at 184.  *Chavez* is inapplicable here because Apple is not

4   accused of resale price maintenance, and Apple's threats to Qualcomm are not

5   permitted by *Colgate* or any other law.  *See Parke, Davis & Co.*, 362 U.S. at 44.

6   Therefore, any safe harbor afforded by *Chavez* is beyond Apple's reach.

7        Finally, Apple's reliance on *Aspex Eyewear, Inc. v. Vision Services Plan*—

8   an unpublished, nonprecedential opinion—is also misplaced.  Aspex and Vision

9   Service Plan were direct competitors and, in addition to alleging violations of the

10  UCL, Aspex's complaint alleged violations of Section 2 of the Sherman Act.

11  *See* Compl. 12, *Aspex*, No. 2:10-cv-00632 (E.D. Cal. Mar. 17, 2010).  Therefore,

12  Aspex's UCL claim was governed by the *Cel-Tech* test.  *See Aspex*, 389 F. App'x

13  664, 666 (9th Cir. 2010) (requiring Aspex to offer "proof of some actual or

14  threatened impact on competition" (quoting *Cel-Tech*, 973 P.2d at 544)).  As

15  discussed above, however, *Cel-Tech*'s holding was limited to actions brought by

16  direct competitors alleging anticompetitive conduct.  *Cel-Tech*, 973 P.2d at 544 &

17  n.12.  Because Qualcomm is not Apple's direct competitor, the standard applied in

18  *Aspex* is inapplicable to Qualcomm's claim.[8]

19                    **<u>CONCLUSION</u>**

20       For the foregoing reasons, Qualcomm respectfully requests that the Court

21  deny Apple's Motion to Dismiss.

22

23

_____

24       [8] *Aspex* also is procedurally inapposite.  In *Aspex*, the Ninth Circuit reviewed

25  the district court's denial of a motion for a preliminary injunction and determined
    whether Aspex was likely to succeed on the merits.  389 F. App'x at 665.  But on

26  a motion to dismiss, the Court has to determine only whether Qualcomm's
    counterclaims allege "sufficient factual matter, accepted as true, to 'state a claim

27  to relief that is plausible on its face'"—not whether Qualcomm is likely to succeed

28  on its claim.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 500 U.S. at 570).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  August 9, 2017

Respectfully submitted,

By:  /s/ Evan R. Chesler

Evan R. Chesler

**CRAVATH, SWAINE & MOORE LLP**
Evan R. Chesler (*pro hac vice*)
(N.Y. Bar No. 1475722)
echesler@cravath.com
Keith R. Hummel (*pro hac vice*)
(N.Y. Bar No. 2430668)
khummel@cravath.com
Richard J. Stark (*pro hac vice*)
(N.Y. Bar No. 2472603)
rstark@cravath.com
Antony L. Ryan (*pro hac vice*)
(N.Y. Bar No. 2784817)
aryan@cravath.com
Gary A. Bornstein (*pro hac vice*)
(N.Y. Bar No. 2916815)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
(N.Y. Bar No. 4331609)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
(N.Y. Bar No. 4339651)
yeven@cravath.com
Vanessa A. Lavely (*pro hac vice*)
(N.Y. Bar No. 4867412)
vlavely@cravath.com
Worldwide Plaza, 825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
David A. Nelson (*pro hac vice*)
(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
Stephen Swedlow (*pro hac vice*)
(Ill. Bar No. 6234550)
stephenswedlow@quinnemanuel.com
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401


Alexander Rudis (*pro hac vice*)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100


Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700


**JONES DAY**
Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Randall E. Kay (SBN 149369)
rekay@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone:  (858) 314-1200
Facsimile:  (858) 345-3178

***Attorneys for Defendant and
Counterclaim-Plaintiff***
**QUALCOMM INCORPORATED**