Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Phone:  619-678-5070 / Fax: 619-678-5099

Ruffin B. Cordell, DC Bar No. 445801, *pro hac vice*, cordell@fr.com
Lauren A. Degnan, DC Bar No. 452421, *pro hac vice*, degnan@fr.com
Fish & Richardson P.C.
The McPherson Building
901 15th Street, N.W., 7th Floor
Washington, D.C.  20005
Phone:  202-783-5070 / Fax:  202-783-2331

William A. Isaacson, DC Bar No. 414788, *pro hac vice*, wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520, *pro hac vice*, kdunn@bsfllp.com
Boies, Schiller & Flexner LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Phone: 202-237-2727 / Fax: 202-237-6131

Attorneys for Plaintiff Apple Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC.,<br><br>                    Plaintiff,<br><br>        vs.<br><br>QUALCOMM INCORPORATED,<br><br>                    Defendant. | Case No. 3:17-CV-0108-GPC-MDD<br><br>**APPLE INC.'S REDACTED MEMORANDUM IN OPPOSITION TO QUALCOMM INC.'S MOTION FOR PARTIAL DISMISSAL OF APPLE'S FIRST AMENDED COMPLAINT**<br><br>Date:          September 29, 2017<br>Time:          1:30 p.m.<br>Judge:        Hon. Gonzalo P. Curiel<br>Courtroom:   2D |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................... 1

II.    FACTUAL BACKGROUND ........................................................... 4

III.   ARGUMENT ................................................................................ 6

   A.   Legal Standard............................................................................ 6

   B.   Qualcomm Has Engaged in the Type of Extra-Judicial Patent
        Enforcement the Declaratory Judgment Action Was Designed To
        Prevent...................................................................................... 9

        1.   Qualcomm Used All Its Declared SEPs To Try To Convince
             Apple To Pay Inflated, Non-FRAND Royalties for Qualcomm's
             Cellular SEPs ..................................................................... 9

        2.   Qualcomm's Carefully-Worded Language that the Nine Patents
             "May" Be SEPs Does Not Divest the Court of Jurisdiction....... 10

   C.   Qualcomm Has Taken an Aggressive Posture Regarding Enforcement
        of Patents It Has Declared Essential ...................................... 14

   D.   The *Cepheid* Factors Further Show Jurisdiction Exists........................ 15

   E.   The Court Should Exercise Its Discretion To Hear Apple's Declaratory
        Judgement Claims for the Nine Patents ................................. 17

   F.   If the Court Finds the First Amended Complaint Deficient, the Court
        Should Grant Apple Leave To Amend Its Complaint .......................... 18

IV.    CONCLUSION ............................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Avery Dennison Corp.*,
   673 F.3d 1372 (Fed. Cir. 2012) ........................................6, 7, 10, 11, 12 13

*ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*,
   975 F. Supp. 2d 1083 (N.D. Cal. 2013)....................................................8

*Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*,
   No. 15-CV-00154-JD, 2015 WL 1802467 (N.D. Cal. Apr. 20, 2015)..................16

*Applera v. Michigan Diagnostics, LLC*,
   594 F. Supp. 2d 150 (D. Mass 2009)......................................................13

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
   495 F.3d 1340 (Fed. Cir. 2007) ...........................................................12

*Cepheid v. Roche Molecular Sys., Inc.*,
   No. C–12–4411 EMC, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013) ...........8, 15, 17

*DeSoto v. Yellow Freight Sys., Inc.*,
   957 F.2d 655 (9th Cir. 1992) ..............................................................19

*Hewlett-Packard Co. v. Acceleron LLC*,
   587 F.3d 1358 (Fed. Cir. 2009) ....................................................*passim*

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ..............................................................3

*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988) ...............................................................3

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ............................................................8, 9

*Qualcomm Inc. v. Compal Elecs. et al.*,
   Case No. 3:17-cv-1010-GPC-MDD ........................................................1

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ..............................................................8

ii

1

2

3   *Samsung Electronics Co., Ltd v. Texas Instruments, Inc.*,
        No. 3:96-cv-1, 1996 WL 343330 (N.D. Tex. Apr. 18, 1996) ...............................14

4

5   *SanDisk Corp. v. STMicroelectronics, Inc.*,
        480 F.3d 1372 (Fed. Cir. 2007) .....................................................................*passim*

6

7   *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*,
        57 F.3d 1054 (Fed. Cir. 1995), *abrogated on other grounds by*

8       *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) .............................11, 18

9   *Weaver v. Ethicon, Inc.*,
        Case No. 16-cv-257-GPC-BGS, 2016 WL 4430855 (S.D. Cal. Aug.

10      22, 2016) .........................................................................................................18, 19

11

12  *Wolfe v. Strankman*,
        392 F.3d 358 (9th Cir. 2004) ...................................................................................8

13  **Statutes**

14

15  Declaratory Judgment Act ........................................................................................15, 18

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:17-CV-00108-GPC-MDD

Plaintiff Apple Inc. ("Apple") hereby submits the following memorandum in opposition to Qualcomm's partial motion to dismiss Plaintiff Apple Inc.'s First Amended Complaint.

## I.   INTRODUCTION

Despite its repeated demands for Apple to pay outrageous, non-FRAND royalties due to its "extensive" portfolio of patents it unilaterally declared as standard-essential,[1] Qualcomm is desperate to avoid putting the patents within that portfolio to the test.  This motion is Qualcomm's fourth attempt to advance its demands for billions in disputed royalty payments while avoiding consideration of the very patents that are the sole basis for demanding royalties in the first instance.  In addition to the present motion, Qualcomm: (1) asked this Court to stay all discovery related to all of the patent-related DJ claims in its Rule 26(f) report and in its opposition to Apple's motion to consolidate this case with the '1010 action; (2) filed a motion for an anti-suit injunction, asking this Court essentially to halt Apple's claims in the UK, Japan, China and Taiwan, challenging Qualcomm's foreign patents as exhausted, invalid, not infringed, and not standard essential; and (3) filed a motion for preliminary injunction against Apple's contract manufacturers, demanding ongoing royalty payments immediately before the disputes over those royalties, including the contract manufacturers' patent-related declaratory judgment claims, are resolved by the Court.[2]  The lengths to which Qualcomm is going to prevent any real

---

[1] *See* Ex. A (Dec. 5, 2016 Letter to Whitt) at 5; Qualcomm's Redacted First Amended Counterclaims for Damages, Declaratory Judgment, and Injunctive Relief, ECF No. 70, at ¶¶ 1, 176 (touting "the breadth, importance, strength, and value" of its portfolio).

[2] Qualcomm has now made a fifth attempt, moving to dismiss Apple's contract manufacturers' claims relating to the nine patents at issue in this motion as well. *See* ECF No. 116 from *Qualcomm Inc. v. Compal Elecs. et al.*, Case No. 3:17-cv-1010-GPC-MDD.

Case No. 3:17-CV-00108-GPC-MDD

examination of its patents is astounding.

Qualcomm claims without support that no one need review its patent portfolio because the sheer number of its patents justifies the outrageous royalties Qualcomm demands.  Qualcomm took that exact approach with Apple.  When pressed to demonstrate entitlement to royalties, Qualcomm described its "basis for [its] good-faith belief that Apple's products infringe (absent a license) many Qualcomm patents" as "Qualcomm holds a great many patents that are essential to cellular standards implemented by Apple products" and referenced a list it had prepared specifically for Apple of patents that Qualcomm had *declared* as standard essential ("the List").  *See* Apple's First Amended Complaint, ECF No. 83, at ¶ 139.  Simply put, when challenged to prove that its patents are infringed, Qualcomm responded by pointing to its List of patents declared standard essential.  Importantly, Qualcomm's mere placing patents on its self-serving List does not establish that Apple is liable for any royalties to Qualcomm.  Qualcomm's patents must be tested, and Apple's patent-related declaratory judgment counts here do exactly that.

In an effort to avoid declaratory judgment jurisdiction, Qualcomm ignores its use of the List as a club to force Apple to capitulate to Qualcomm's outrageous royalty demand.  Now, Qualcomm claims that it never *explicitly* told Apple that the nine patents added in Apple's Amended Complaint (hereinafter "Nine Patents") are *actually* essential and used in Apple's products.  *See* Mtn. to Dismiss ("MTD") (ECF. No. 100-1) at 6-9.  Qualcomm is thus using potential essentiality as both a sword and a shield—Qualcomm's list of declared SEPs is so big that Apple must pay it big dollars, but because Qualcomm has said only that the listed patents "may be" essential, it argues Apple cannot challenge individual patents on the List.  But the law does not require Qualcomm to mouth magic words to trigger declaratory judgment jurisdiction:

> The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as "litigation" or "infringement."

*See Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009).

Moreover, it would be improper to look at the List in a vacuum, as Qualcomm suggests. Qualcomm cannot ignore the role this List played in Qualcomm's comments regarding the necessity for Apple to take a license to its standard-essential patents ("SEPs"). Qualcomm cannot ignore its boasting of its in-depth analysis of Apple's products against its declared standard essential patents. *See, e.g.*, Ex. A (Dec. 5, 2016 Letter to Whitt)[3] at 7. Qualcomm cannot ignore its history of suing those who do not agree to its outrageous license demands. *See* Apple's First Amended Complaint, ECF No. 83, at ¶¶ 125–26. Collectively, Qualcomm's affirmative actions demonstrate that there is a live case or controversy between Apple and Qualcomm over the Nine Patents, which supports declaratory judgment jurisdiction.

---

[3] Although Apple disagrees that Qualcomm has raised a "factual dispute" as to Apple's First Amended Complaint that needs to be resolved, *cf. McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that the district court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"), Apple agrees with Qualcomm that the Court can and should review the licensing correspondence in deciding this motion. *See* MTD at 3 n.1, 4 n.3; *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("In evaluating the context in which the statement appeared, we must take into account 'all parts of the communication that are ordinarily heard or read with it.'" (citations omitted)). Thus, Apple has attached the following letters, the contents of which were referenced in the parties' pleadings: (1) Dec. 5, 2016 Letter to Whitt, Ex. A; (2) Dec. 2, 2016 E-mail to Whitt, Ex. B; (3) July 15, 2016 Letter to BJ Watrous, Ex. C; (4) November 11, 2016 Letter to J Whitt, Ex. D; and (5) June 12, 2016 Letter to Whitt, Ex. E; (6) February 17, 2016 Letter to BJ Watrous, Ex. F.

## II.   FACTUAL BACKGROUND

Apple and Qualcomm began discussing a direct license in at least November 2014.  Apple's First Amended Complaint, ECF No. 83, at ¶ 119.  During the course of those negotiations, Apple requested additional information to evaluate properly a fair value for Qualcomm's SEPs, including the basis for Qualcomm's belief that Apple infringed its patents.  Apple's First Amended Complaint, ECF No. 83, at ¶ 137.  In response, Qualcomm stated that "Apple products have been certified as compliant with CDMA/WCDMA (3G) and LTE (4G) networks around the world" and "that Apple products that have been certified as compliant with a standard ***necessarily practice every patent claim that is essential*** to any mandatory portions of that standard."  *Id* (emphasis added).  Qualcomm further stated that it would provide to Apple "a (substantially) complete list" of the patents that Qualcomm had declared essential.  *Id.*; *see also* Ex. F (Feb. 17, 2016 Letter to Watrous).  That list, which includes the Nine Patents, was provided on March 18, 2016.  *Id.* at ¶ 138.

Qualcomm thereafter informed Apple that it had "already provided [its] basis for Qualcomm's good-faith belief that Apple's products infringe (absent a license) many Qualcomm patents, namely that Qualcomm holds a great many patents that are essential to cellular standards implemented by Apple products," and referenced the March 18, 2016 List.  *Id.* at ¶ 139; *see also* Ex. E (Jun. 12, 2016 Letter to Whitt).  Qualcomm told Apple that it had prepared over one hundred "claim charts █████████████████████████████  *See* Ex. D (Nov. 11, 2016 Letter to Whitt) at 1-2; Ex. B (Dec. 2, 2016 E-mail to Whitt) at 1; Ex. A (Dec. 5, 2016 Letter to Whitt) at 7; *see also* Apple's First Amended Complaint, ECF No. 83, at ¶ 124.  Qualcomm then expanded these representations and said it was prepared to provide "***hundreds*** of additional

4

claim charts." Qualcomm's First Amended Counterclaims, ECF No. 70, at ¶ 178 (emphasis added).

Qualcomm has become increasingly aggressive with respect to its assertions regarding its cellular SEP portfolio. Qualcomm recently asserted patents that it had declared as essential to 3G or 4G in a blitzkrieg of patent infringement litigation against Apple competitor, Meizu, a large Chinese smartphone maker that did not acquiesce to Qualcomm's royalty demands. Apple's First Amended Complaint, ECF No. 83, at ¶ 125.

Qualcomm filed suit against Apple's contract manufacturers, Case No. 3:17-cv-01010-GPC-MDD, asserting that Apple devices "would infringe numerous Qualcomm patents" if these devices were not licensed. Apple's First Amended Complaint, ECF No. 83, at ¶ 142. Qualcomm has taken the position in its preliminary-injunction papers in the '1010 Action that it is "receiving no compensation for [Apple and its contract manufacturers] use of [Qualcomm's] intellectual property." ECF No. 35-1 in Case No. 3:17-cv-01010-GPC-MDD, at 10.

In its amended counterclaims here, Qualcomm similarly asserts that "Apple needs some form of access to Qualcomm's patent portfolio because Apple's cellular devices could not function without the use of Qualcomm's intellectual property. Without such access, Apple would infringe Qualcomm's patents." Qualcomm's First Amended Counterclaims, ECF No. 70, at ¶ 120. Qualcomm also asked this Court to "declare the FRAND royalty for the cellular SEP portfolio license that Qualcomm has offered to Apple."[4] Apple's First Amended Complaint, ECF No. 83, at ¶ 143. In asking this Court to determine the royalties due for every standard-essential patent in Qualcomm's portfolio,

_____

[4] As discussed *infra*, Qualcomm's request for this Court to determine a portfolio-wide FRAND royalty is improper.

Qualcomm necessarily asserted that Apple infringes each and every one of those declared patents. *Id.*; *see also id.* at ¶ 144.

## III.   ARGUMENT

### A.   Legal Standard

In *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court clarified that, to determine whether the case-or-controversy requirement has been met in a patent-law declaratory judgment action, the court must determine "whether the facts alleged under all the circumstances show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. 118, 126 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Supreme Court rejected the Federal Circuit's previous declaratory judgment test, which required reasonable apprehension of the filing of a lawsuit. *See id.* at 132 n.11; *see also SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test.").

"The test for declaratory judgment jurisdiction in patent cases, however stated, is objective." *Hewlett-Packard*, 587 F.3d at 1363 (brackets and citation omitted). Specifically, "[it is] the objective words and actions of the patentee that are controlling." *Id.* Thus, "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *Id.* at 1364 (citation omitted). At the other end of the spectrum, "if 'a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support [declaratory judgment] jurisdiction.'" *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378–79 (Fed. Cir. 2012) (quoting *Cardinal Chem. Co. v.*

*Morton Int'l*, 508 U.S. 83, 96 (1993)) (emphasis omitted).

Importantly, an "effective[] charge" of infringement is "sufficient to constitute a case or controversy." *3M*, 673 F.3d at 1379.  Furthermore, "where a patentee asserts rights under a patent based on certain identified and ongoing activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise . . . ." *SanDisk*, 480 F.3d at 1380–81.

In determining declaratory judgment jurisdiction exists, courts have considered numerous, non-exclusive factors, including:

(1)   the strength of any threatening language in communications between the parties;

(2)   the depth and extent of infringement analysis conducted by the patent holder;

(3)   whether the patent holder imposed a deadline to respond;

(4)   any prior litigation between the parties;

(5)   the patent holder's history of enforcing the patent at issue;

(6)   whether the patent holder's threats have induced the alleged infringer to change its behavior;

(7)   the number of times the patent holder has contacted the alleged infringer;

(8)   whether the patent holder is simply a holding company with no source of income other than enforcing patent rights;

(9)   whether the patent holder refused to give assurance it will not enforce its patent;

(10)  whether the patent holder has identified a specific patent and specific infringing products;

(11)  the extent of the patent holder's familiarity with the product prior to

1    suit;

2    (12)   the length of time that transpired after the patent holder asserted

3    infringement; and

4    (13)   whether communications initiated by the declaratory judgment

5    plaintiff have the appearance of an attempt to create a controversy

6    in anticipation of filing suit.

7    *See Cepheid v. Roche Molecular Sys., Inc.*, No. C–12–4411 EMC, 2013 WL

8    184125, at *6–7 (N.D. Cal. Jan. 17, 2013) (emphasis added) ("*Cepheid*

9    factors"); *see also ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F.

10   Supp. 2d 1083, 1087–1090 (N.D. Cal. 2013).

11         Here, Qualcomm makes a facial attack on this Court's jurisdiction under

12   Rule 12(b)(1) because it challenges the sufficiency of Apple's complaint.[5]  *See*

13   *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a

14   facial attack, the challenger asserts that the allegations contained in a complaint

15   are insufficient on their face to invoke federal jurisdiction.").[6]  As such, one

16   must take Apple's factual allegations as true and draw all reasonable inferences

17   in Apple's favor.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

18         Likewise, for Qualcomm's Rule 12(b)(6) challenge, "all material

19   allegations of the complaint are accepted as true, as well as all reasonable

20   inferences to be drawn from them."  *See Navarro v. Block*, 250 F.3d 729, 732

21   (9th Cir. 2001).  "A claim may be dismissed only if it appears beyond doubt that

22   the plaintiff can prove no set of facts in support of his claim which would entitle

23

24         [5] *See* MTD at 6 ("Apple's FAC fails to allege facts sufficient to show a

25   definite, concrete dispute over the Additional Patents-in-Suit of sufficient
     immediacy and reality to warrant issuing declaratory judgment.").

26         [6] "By contrast, in a factual attack, the challenger disputes the truth of the

27   allegations that, by themselves, would otherwise invoke federal jurisdiction."
     *Id.*

28

8

him to relief." *Id.* (citations and quotations omitted).

## B. Qualcomm Has Engaged in the Type of Extra-Judicial Patent Enforcement the Declaratory Judgment Action Was Designed To Prevent

All of the Nine Patents in Apple's First Amended Complaint appear on the March 18, 2016 List of patents that Qualcomm prepared specifically for Apple. That List was provided as Qualcomm's "good faith belief that Apple's products infringe" Qualcomm patents and that the patents are essential to cellular standards implemented by Apple products. Apple's First Amended Complaint, ECF No. 83, at ¶¶ 137–40, 142–43. Qualcomm further cited the List to demand that Apple should pay Qualcomm's usurious non-FRAND royalties. *Id.* at ¶ 146. The March 18, 2016 List is only part of Apple's showing of a controversy; Qualcomm's affirmative actions taken as a whole—including demanding that Apple take a portfolio license using this List as leverage, informing Apple that it had already prepared over one hundred claim charts comparing its patents to Apple products, and litigating against another smartphone maker who stood up to Qualcomm's non-FRAND licensing demands—highlight the existence of a substantial controversy between Apple and Qualcomm having adverse legal interests relating to the Nine Patents of sufficient immediacy and reality to warrant resolution by the Court.

### 1. Qualcomm Used All Its Declared SEPs To Try To Convince Apple To Pay Inflated, Non-FRAND Royalties for Qualcomm's Cellular SEPs

Qualcomm demanded Apple take a license to its portfolio of standard essential patents using the March 18, 2016 List as leverage. During licensing discussions, Qualcomm treated ***all*** of its SEPs as actually essential to inflate the value of its portfolio artificially. For example, Qualcomm's proposed licenses purport to cover essential patents without mechanisms requiring Qualcomm to distinguish actually-essential patents from declared-essential patents, and thus

9

fail to demonstrate exactly what Apple would be paying for. *See* Ex. C (Jul. 15, 2016 Letter to BJ Watrous) at Exhibit A. In fact, Qualcomm **refused** to provide information on which patents it believed were actually essential, instead pointing to the fact that its patents have been declared essential to 3G and 4G standards and that Apple products are certified for such standards. *See* Ex. D (Nov. 11, 2016 Letter to Whitt) at 1; Apple's First Amended Complaint, ECF No. 83, at ¶¶ 137-39.

Thus, Qualcomm is using potential essentiality as both a sword and a shield: as a threat to force companies to license its entire portfolio for far more than the portfolio's true value; and a cover to avoid a proper challenge in court. This is no different than the "'extra-judicial patent enforcement with scare-the-customer-and-run tactics' that the Declaratory Judgment Action was intended to obviate." *SanDisk*, 480 F.3d at 1383 (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988)).

### 2. Qualcomm's Carefully-Worded Language that the Nine Patents "May" Be SEPs Does Not Divest the Court of Jurisdiction

Qualcomm's careful avoidance of identifying specific patents as actually essential does not divest this Court of jurisdiction. *See 3M*, 673 F.3d at 1378–79 (reversing the district court's finding of no jurisdiction even though the patentee used "may infringe" rather than "does infringe" and holding that the patentee had "effectively charged" the declaratory judgment plaintiff with infringement); *Hewlett-Packard*, 587 F.3d at 1362 ("[I]t is implausible (especially after *MedImmune* and several post *MedImmune* decisions from this court) to expect that a competent lawyer drafting such correspondence for a patent owner would identify specific claims, present claim charts, and explicitly allege infringement.").

In *3M Company v. Avery Dennison Corporation*, the Federal Circuit reversed a district court's finding of no jurisdiction in similar circumstances. 673 F.3d at 1378–81. The *3M* patentee reached out to the declaratory judgment plaintiff and "expressly stated that a specific product, the Diamond Grade DG 3, 'may infringe'" the [patents in the case] and that 'licenses are available.'" *Id.* at 1379. The DJ plaintiff rejected the license offer. *Id.* In response, the patentee responded that it had "analyzed the [identified product] with regard to the [patents in the case]" and would provide claim charts. *Id.* The district court dismissed the case after finding that these discussions were not enough to create declaratory judgment jurisdiction. *Id.* at 1376. The Federal Circuit reversed, however, holding that through its conduct, the patentee had "effectively charged" the DJ plaintiff with infringement. *Id.* at 1379.

Qualcomm similarly effectively charged Apple with infringing the Nine Patents. Qualcomm prepared a list of declared SEPs specifically for Apple and told Apple that its products needed a license to all of Qualcomm's SEPs. *See* Apple's First Amended Complaint, ECF No. 83, at ¶¶ 137–39. By declaring a particular patent as essential to ETSI standards, Qualcomm affirmatively stated that it believes that the disclosed patent "may be or may become ESSENTIAL" in relation to an identified standard. Ex. G (IPR Information Statement and Licensing Declaration). This representation applies to each patent identified in the March 18, 2016 List, and Qualcomm has given no indication that this belief that a particular patent "may be or may become ESSENTIAL" has changed.[7]

---

[7] Tellingly, Qualcomm never admits or argues that the Nine Patents are not actually essential. Moreover, Qualcomm has not given Apple a covenant-not-to-sue that would permanently moot any claim for infringement, pursuant to *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058–59 (Fed. Cir. 1995) (finding that patentee's promise not to assert its patents against alleged infringer resolved declaratory judgment counterclaims seeking

11

Significantly, Qualcomm relied on this March 18, 2016 List of patents as evidence of its "good faith belief that Apple's products infringe" Qualcomm patents that are essential to cellular standards implemented by Apple products, and as evidence that Apple should pay Qualcomm's usurious non-FRAND royalties.  Apple's First Amended Complaint, ECF No. 83, at ¶¶ 137–40, 142–44, 146.  In this way, Qualcomm indicated to Apple that it believes that the patents identified in the List are actually essential to cellular standards and are infringed by Apple's products.

But Qualcomm did not stop there.  In the wake of providing Apple the specially-prepared List, and similar to the Plaintiff in *3M*, Qualcomm informed Apple that it had also prepared over one hundred claim charts to show why Apple products infringe Qualcomm's SEPs.  *See* Ex. A (Dec. 5, 2016 Letter to Whitt) at 7; Ex. B (Dec. 2, 2016 E-mail to Whitt) at 1; *see also* Qualcomm's First Amended Counterclaims, ECF No. 70, at ¶ 178 (stating that Qualcomm told Apple that it was prepared to provide "***hundreds*** of additional claim charts" (emphasis added)).  In other words, Qualcomm demanded Apple take a license to its cellular SEP portfolio using the March 18, 2016 List and "hundreds" of claim charts as leverage.  These affirmative actions demonstrate that Qualcomm had "engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights."  *SanDisk*, 480 F.3d at 1382.

declaration of non-infringement and invalidity), *abrogated on other grounds by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007); *see also Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1345–48 (Fed. Cir. 2007).  Therefore, Qualcomm apparently still believes that the Nine Patents are necessary to implement cellular standards and thus are infringed by Apple's products implementing those standards.  Apple disagrees, thus creating a "substantial controversy" as to "whether the Additional Patents-in-Suit are actually essential to the 3G/UMTS and/or 4G/LTE standards and infringed by Apple's products that support those standards."  Apple's First Amended Complaint, ECF No. 83, at ¶ 147.

*Applera v. Michigan Diagnostics, LLC*, 594 F. Supp. 2d 150 (D. Mass 2009), besides not being binding, is inapposite because the patentee there did not declare that its patents were essential.  *See, e.g.*, Applera and Michigan Diagnostics Correspondence, ECF No. 32 from *Applera Corp. v. Michigan Diagnostics, LLC*, Case No. 1:7-cv-10547, Exs. A–E.  In *Applera*, the patentee disclosed sixty-two patents to the declaratory judgment plaintiff but made no suggestion that these patents were in any way essential.  *See id.*; *see also* 594 F. Supp. 2d at 158–59.  The patentee also did not state that it believed the DJ plaintiff infringed any of these patents.  *Id.* at 158–60.

Here, unlike the patentee in *Applera*, Qualcomm has "effectively charged" Apple with infringement of its standards-essential patents.  *See 3M*, 673 F.3d at 1379.  For example, Qualcomm identified the "universe" of patents that it believes are standards-essential.  MTD at 9; *see also* Apple's First Amended Complaint, ECF No. 83, at ¶¶ 137–39.  Furthermore, Qualcomm has stated that these SEPs form the "basis for [its] good-faith belief that Apple's products infringe . . . many Qualcomm patents."  Apple's First Amended Complaint, ECF No. 83, at ¶ 139.  Although Qualcomm's carefully-worded communications with Apple did not state that particular patents are actually necessary to a cellular standard, the entire purpose of the List was to showcase the alleged essentiality of Qualcomm's portfolio and communicate that fact to Apple.  Qualcomm now dissects the language it used but the overall tenor of the communications was clear:  Apple must take a license to the SEP portfolio on the non-FRAND terms Qualcomm proposed.  It is the overall context of Qualcomm's actions and statements that decide this issue.  *See Hewlett-Packard*, 587 F.3d at 1362 ("The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the

13

magic words such as 'litigation' or 'infringement.'").[8]

### C. Qualcomm Has Taken an Aggressive Posture Regarding Enforcement of Patents It Has Declared Essential

Qualcomm willingness to enforce its patent rights further supports finding jurisdiction here.  This willingness is apparent from Qualcomm's actions against Meizu, *see* Apple's First Amended Complaint, ECF No. 83, at ¶ 125, and Apple's contract manufacturers.  Qualcomm has made assertions both in the '1010 case it filed against Apple's contract manufactures and in the present suit that Apple devices "would infringe numerous Qualcomm patents" if these devices were not licensed, *id.* at ¶ 142, and that "Apple needs some form of access to Qualcomm's patent portfolio because Apple's cellular devices could not function without the use of Qualcomm's intellectual property.  Without such access, Apple would infringe Qualcomm's patents."  Qualcomm's First Amended Counterclaims, ECF No. 70, at ¶ 120.  Qualcomm also "leaked to Bloomberg that it intends to file a complaint with the United States International Trade Commission, alleging that Apple's iPhones infringes certain Qualcomm patents."  Apple's First Amended Complaint, ECF No. 83, at ¶ 142.[9]

Through these assertions and not-so-thinly-veiled threats, Qualcomm put Apple in the position "of either pursuing arguably illegal behavior or

---

[8] *Samsung Electronics Co., Ltd v. Texas Instruments, Inc.*, No. 3:96-cv-1, 1996 WL 343330 (N.D. Tex. Apr. 18, 1996), which applied the now rejected reasonable-apprehension-of-suit test, has no persuasive value.  Unlike the declaratory judgment plaintiff in *Samsung*, Apple is challenging specific patents from Qualcomm's March 18, 2016 List, which contains patents that Qualcomm has claimed are infringed by cellular standards.  *See id.* at *4–6 (dismissing claims against the "Group 2" patents because TI's "posturing" did not give rise to a reasonable apprehension of suit as to those patents and criticizing Samsung's failure to identify specific patents).

[9] That Qualcomm eventually sued Apple in the ITC and Germany on patents other than the Nine Patents does not detract from the overall hostile atmosphere Qualcomm has created with respect its cellular SEP portfolio.

14

abandoning that which he claims a right to do . . . ."  *See SanDisk*, 480 F.3d at 1380–81; *see also MedImmune*, 549 U.S. at 129 ("The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" (citations omitted)).  As a result, Apple had the right to seek a declaration that the Nine Patents appearing on the March 18, 2016 List were not essential, not infringed by Apple, invalid, and exhausted, and seek a FRAND determination for any patent for which Qualcomm can prove otherwise.

Thus there is plainly a live case or controversy between Apple and Qualcomm regarding the Nine Patents and this Court has jurisdiction to resolve the dispute between the parties.

### D.   The *Cepheid* Factors Further Show Jurisdiction Exists

Analyzing this case, and in particular, Qualcomm's licensing rhetoric and litigation conduct, under the *Cepheid* factors reinforces that Apple has shown an actual case or controversy.

During licensing, Qualcomm made comments regarding the necessity of a license (factor 1), provided in-depth analysis of Apple's products (factor 2), and identified a list of patents it believes are essential to the standard (factor 10). Qualcomm has aggressively pushed its licenses and royalties on many companies in the cell phone industry.  *See* Qualcomm's First Amended Counterclaims, ECF No. 70, at ¶ 4.  In pushing its licenses and royalties, Qualcomm continuously touts the "breadth, importance, strength, and value" of its patent portfolio.  *See id.* at ¶ 176.  For example, during its discussions with Apple, Qualcomm has asserted "that Apple products that have been certified as compliant with a standard ***necessarily practice every patent claim that is essential to any mandatory portions of that standard***."  *See* Apple's First

Amended Complaint, ECF No. 83, at ¶¶ 139, 137 (emphasis added).

During discussions, Qualcomm disclosed that it had prepared over one hundred claim charts for ███████████ patents from its list of SEPs.  *See* Ex. E (Jun. 12, 2016 Letter to Whitt) at 3; Ex. A (Dec. 5, 2016 Letter to Whitt) at 7. Qualcomm ultimately began providing charts to Apple late last year, *see* Apple's First Amended Complaint, ECF No. 83, at ¶ 124, and indicated that it would provide "***hundreds*** of additional claim charts," *see* Qualcomm's First Amended Counterclaims, ECF No. 70, at ¶ 178 (emphasis added).  By boasting of these "hundreds of additional claim charts," and failing to identify any patents for which it contends Apple does not need a license, Qualcomm advanced its assertions that Apple should pay the usurious, non-FRAND royalties for ***all*** of the patents on the List.

As discussed above, Qualcomm has identified patents and applications that it believes are essential to the cellular standards used by Apple's products, including the Nine Patents.  Qualcomm also asked this Court to "declare the FRAND royalty for the cellular SEP portfolio license that Qualcomm has offered to Apple."  *See* Apple's First Amended Complaint, ECF No. 83, at ¶ 143.[10]  In asking this Court to determine the royalties due for every standard-

---

[10] As Apple has explained in connection with Qualcomm's Anti-suit Injunction motion, this Court lacks authority to order a portfolio-wide royalty without actually considering whether each individual patent is standard-essential, not exhausted, infringed, and valid, or even reviewing the patent.  Apple's Opp. to Qualcomm's Motion for Anti-suit Injunction, Dkt. 108, at 2, 9–11; *see also Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.* ("*Ericsson*"), No. 15-CV-00154-JD, 2015 WL 1802467, at *1-2 (N.D. Cal. Apr. 20, 2015) (noting that, even though it might be "imprudent or uneconomical" to license individual patents, Apple could not be "compelled to take a license . . . on a portfolio-wide basis" or to litigate infringement claims relating to SEPs on a portfolio-wide basis).  Apple has the right to defend itself against infringement charges by

essential patent in Qualcomm's portfolio, Qualcomm necessarily asserted that Apple infringes each and every one of those patents.  *See id.*; *see also id.* at ¶ 144 ("[Qualcomm's] request for this Court to determine the FRAND royalty for Qualcomm's cellular SEP portfolio necessarily puts every one of Qualcomm's patents at issue in this present case.").  Thus, Qualcomm's licensing conduct has created an actual case and controversy, and this Court has jurisdiction to hear claims by Apple with respect to the U.S. patents on Qualcomm's List of declared SEPs, including the Nine Patents.[11]

Qualcomm's litigation conduct, including its willingness to sue those who do not agree to a license (factor 5) and its unwillingness to provide a covenant not to sue (factor 9), also shows a controversy under the *Cepheid* factors.  While Apple was still in negotiations with Qualcomm, Meizu and Qualcomm's licensing discussions broke down.  *See* Apple's First Amended Complaint, ECF No. 83, at ¶ 125.  Qualcomm's response to this break-down was to file 17 patent infringement cases in China against Meizu.  *Id.*  Qualcomm's willingness to aggressively litigate on its declared SEPs when a party refuses to acquiesce to Qualcomm's outrageous, non-FRAND royalty demands shows that Apple is at real risk of harm.  In addition, Qualcomm has refused to give an assurance that it will not enforce its declared SEPs, including the Nine Patents.  *See id.* at ¶ 141 (pertaining to the Original Patents-in-Suit).

Therefore, the *Cepheid* factors support a finding of jurisdiction.

### E.  The Court Should Exercise Its Discretion To Hear Apple's Declaratory Judgement Claims for the Nine Patents

"Although the district court is given the discretion, in declaratory

---

putting Qualcomm to its burden of proof on the individual patents that make up the portfolio.

[11] To the extent the patents identified by Qualcomm include foreign patents, the courts in the jurisdiction where those patents were issued likewise have jurisdiction.

17

judgment actions, to dismiss the case, there are boundaries to that discretion." *See Sandisk*, 480 F.3d at 1383 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995)).  "When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal."  *See id.* (citations and quotations omitted).

Here, for the last several years, Qualcomm has repeated its belief that untold numbers of its patents are infringed and it has asked Apple to take a direct license.  *See* Apple's First Amended Complaint, ECF No. 83, at ¶¶ 119–22.  Apple has repeatedly asked Qualcomm to show that Apple's products actually use Qualcomm's patented technology such that a proper valuation of any effected patents can be determined.  *See id.* at ¶ 121.  Accordingly, the Nine Patents are at issue and resolution of those issues will assist the parties as they work towards a broader resolution.  The Court should exercise its discretion to adjudicate the disputes set forth in the Amended Complaint.

Moreover, Qualcomm always has the power to remove the Nine Patents by granting Apple a covenant-not-to-sue pursuant to *Super Sack*, 57 F.3d at 1058–59.  But Qualcomm has failed to do so, indicating that it prefers to hold these patents over Apple for potential assertion at any time.  Therefore, this case is exactly the type of situation the Declaratory Judgment Act was intended to resolve, and the Court should exercise its discretion to hear Apple's claims.  *See MedImmune*, 549 U.S. at 129.

### F.  If the Court Finds the First Amended Complaint Deficient, the Court Should Grant Apple Leave To Amend Its Complaint

"Where a motion to dismiss is granted, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Weaver v. Ethicon, Inc.*, Case No. 16-cv-257-GPC-BGS, 2016 WL 4430855, at *3 (S.D. Cal. Aug.

18

22, 2016) (citing *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quotations omitted)).

Although Apple believes that its complaint properly shows a case and controversy, if the Court finds that Apple's allegations with regard to the Nine Patents are deficient, Apple requests leave to amend its First Amended Complaint.  In particular, Apple requests leave to add additional factual allegations to clarify any deficiency that the Court believes exists in the First Amended Complaint.  For example, Apple requests leave to amend the complaint to include any facts stated in this opposition that are not already in the First Amended Complaint, including statements from the attached correspondence between the parties.  Because such an amendment, which provides full context for the parties' discussions, would not be futile, leave should be granted.  *See Weaver v. Ethicon, Inc.*, 2016 WL 4430855, at *3; *see also DeSoto*, 957 F.2d at 658.

## IV.   CONCLUSION

Qualcomm is attempting to use the threat of essentiality to artificially inflate the value of its patent portfolio without ever having to put this portfolio to the test.  However, by aggressively promoting the necessity of a license to avoid infringement, Qualcomm has created an actual case and controversy as to whether its patents are actually essential and infringed by Apple.  Accordingly, Apple respectfully requests that Qualcomm's partial motion to dismiss be denied.

In the alternative, if the Court finds that Apple's First Amended Complaint is deficient, Apple requests leave to amend it to address any such deficiencies.

Dated: August 18, 2017                Respectfully submitted,

By:   */s/ Seth M. Sproul*
Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real San Diego, CA 92130
Phone: 619-678-5070; Fax: 619-678-5099

Ruffin B. Cordell (DC Bar No. 445801;
*pro hac vice*), cordell@fr.com
Lauren A. Degnan (DC Bar No. 452421;
*pro hac vice*), degnan@fr.com
FISH & RICHARDSON P.C.
901 15th Street, N.W., 7th Floor
Washington, DC 20005
Phone: 202-783-5070; Fax: 202-783-2331

Benjamin C. Elacqua (TX SBN 24055443;
*pro hac vice*), elacqua@fr.com
FISH & RICHARDSON P.C.
One Houston Center, 28th Floor 1221
McKinney
Houston, TX 77010
Phone: 713-654-5300; Fax:  713-652-0109

Betty H. Chen (SBN 290588)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Phone: 650-839-5070; Fax: 650-839-5071

William A. Isaacson (DC Bar No. 414788;
*pro hac vice*) wisaacson@bsfllp.com
Karen L. Dunn (DC Bar No. 1002520;
*pro hac vice*) kdunn@bsfllp.com
Amy J. Mauser (DC Bar No. 424065;
*pro hac vice*) amauser@bsfllp.com
Christopher G. Renner (DC Bar No. 1025699;
*pro hac vice*) crenner@bsfllp.com
BOIES SCHILLER FLEXNER LLP

Case No. 3:17-CV-00108-GPC-MDD

1401 New York Avenue
Washington, DC 20005
Phone: 202-237-2727; Fax: 202-237-6131

Steven C. Holtzman (SBN 144177)
sholtzman@bsfllp.com
Gabriel R. Schlabach (SBN 304859)
gschlabach@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Phone: 510-874-1000; Fax: 510-874-1460

Meredith R. Dearborn (SBN 268312)
mdearborn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
425 Tasso Street, Suite 205
Palo Alto, CA 94307
Phone: 650-445-6400; Fax: 650-329-8507

*Attorneys for Plaintiff Apple Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 18, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.


*/s/ Seth M. Sproul*
Seth M. Sproul

Case No. 3:17-CV-00108-GPC-MDD