1  Evan R. Chesler (N.Y. Bar No. 1475722; *pro hac vice*)
   echesler@cravath.com
2  CRAVATH, SWAINE & MOORE LLP
   825 Eighth Avenue
3  New York, NY 10019
   Telephone: (212) 474-1000
4  Facsimile: (212) 474-3700

5  David A. Nelson (Ill. Bar No. 6209623; *pro hac vice*)
   davenelson@quinnemanuel.com
6  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   500 West Madison St., Suite 2450
7  Chicago, Illinois 60661
   Telephone: (312) 705-7400
8  Facsimile: (312) 705-7401

9  Karen P. Hewitt (SBN 245309)
   kphewitt@jonesday.com
10 Randall E. Kay (SBN 149369)
   rekay@jonesday.com
11 JONES DAY
   4655 Executive Drive, Suite 1500
12 San Diego, California 92121
   Telephone: (858) 314-1200
13 Facsimile: (844) 345-3178

14 [*Additional counsel identified on signature page*]

15 *Attorneys for Defendant*
   QUALCOMM INCORPORATED

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| APPLE INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>QUALCOMM INCORPORATED,<br><br>            Defendant. | No. 17-cv-0108-GPC-MDD<br><br>**REDACTED REPLY IN SUPPORT OF DEFENDANT QUALCOMM INCORPORATED'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:      October 4, 2017<br>Time:      1:30 p.m.<br>Courtroom: 2D<br>Judge:     Hon. Gonzalo P. Curiel |

1   QUALCOMM INCORPORATED,
2            Counterclaim-Plaintiff,
3            v.
4   APPLE INC.,
5            Counterclaim-Defendant.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

Apple's Opposition does not contest any of the key facts identified in Qualcomm's motion. Apple admits that Qualcomm never accused Apple of infringing the specific nine "additional" patents added by Apple's First Amended Complaint. Apple also admits that the 1,975-page list of patents declared "potentially" essential to certain cellular standards does not and cannot constitute an allegation that Apple infringes the "additional" patents. Nor can Apple dispute that, in contemporaneous correspondence, Apple contended that Qualcomm failed to identify any of the "additional" patents as infringed.

Instead, Apple proposes a new standard for declaratory judgment jurisdiction. Apple argues that the "overall tenor" of the correspondence between the parties "effectively charged" Apple with infringement of every declared essential patent owned by Qualcomm, including the nine "additional" patents. (Opp. at 11, 13.) Apple's argument is not only contrary to Apple's written correspondence at the time, but also contrary to the record. After it received the 1,975-page list, Apple wrote that it had ████████████████████████████████████████ ████████ (MTD Ex. 2, at 2.) In the next sentence, Apple contended that ████████████████████████████ (*Id.*) That was true at the time, and it remains true today with respect to the nine "additional" patents Apple selected from the list of thousands. Qualcomm has never charged Apple with infringement of the nine "additional" patents.

Apple argues that the Court should not dismiss the nine "additional" patents from this case because Qualcomm's motion shows that it is "desperate" to "avoid putting [its patents] to the test." (Opp. at 1.) This is both false and irrelevant to the jurisdictional question presented by Qualcomm's motion to dismiss. The reality is that "Qualcomm welcomes a robust, meaningful evaluation of its patent portfolio". (Joint Discovery Plan Pursuant to Fed. R. Civ. P. 26(f) (lodged Aug. 9, 2017) at 18-19.) And, as part of that evaluation, Apple is free to "present evidence regarding

any of the covered patents or patent families" it chooses, including the nine "additional" patents at issue in this motion.  (*Id.*)  But that is not the same inquiry as determining whether Apple's individual declaratory judgment claims are justiciable.  Apple's Opposition fails to identify a "definite and concrete" dispute as to infringement of these nine "additional" patents.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

There is a more fundamental reason why Qualcomm has not, and indeed presently cannot, put its standard-essential patent portfolio to the test by asserting infringement claims against Apple—at this time, Apple's products are presently licensed to the majority of that portfolio.  According to Apple's contract manufacturers, "Qualcomm has licensed its cellular SEPs to each" of Apple's contract manufacturers.  Defendants' Answer and Defenses; Counterclaims; Demand for Jury Trial at 105, *Qualcomm Inc. v. Compal Elecs., Inc., et al.*, No. 3:17-CV-01010 (S.D. Cal. July 18, 2017).  Notwithstanding the contract manufacturers' breach of their licenses with Qualcomm and Apple's tortious interference with those licenses, those licenses presently remain in effect.

Apple also repeatedly points to statements between the parties regarding Qualcomm's preparation of claim charts and argues that those statements created a definite and concrete dispute with respect to the "additional" patents.  But Qualcomm did not present or even refer to claim charts in connection with the "additional" patents.  To be sure, some of the original patents for which Apple requested declaratory relief are patents for which Qualcomm presented claim charts identifying how those patents are actually essential to cellular standards.  Qualcomm was preparing to disclose scores more claim charts to Apple after presenting Apple with charts for the first 23 of such patents pursuant to a schedule agreed upon by the parties.  Before any more charts could be provided, however, Apple filed the present action.  The timeline is revealing.  On January 12, 2017 Qualcomm offered to "present the next batch of claim charts" to Apple.  (Declaration of Nathan Hamstra

("Hamstra Decl.") Ex. 1.)[1]  On January 18, Apple accepted this offer, and the parties agreed to meet on February 2 to discuss those additional claim charts.  (*Id.*)  Apple chose to file its complaint against Qualcomm without any warning on January 20, 2017 rather than continue the series of agreed upon meetings.  (Dkt. 1.)  Of the 23 patents that Qualcomm presented before Apple filed suit, Apple selected only six to adjudicate in this litigation.[2]  Apple referred to the initial set of patents in its complaint as the "original patents-in-suit" and this Reply refers to them as the "original" patents.

But the *second set* of patents from which Apple claims to have selected the nine "additional" patents is massive, comprising thousands of Qualcomm's potentially essential patents.  These patents were never specifically discussed with Apple, let alone charted or presented.  Apple could have selected nine patents to add to this case from the remaining seventeen patents that Qualcomm presented (and charted), but it chose not to, likely because Apple put those patents "to the test" and did not like the result.  (Opp. at 1.)

Despite the clear delineation between the 23 patents that were charted and presented to Apple on the one hand, and the thousands of Qualcomm patents on the 1,975 page list that were never discussed on the other, Apple argues that the process of charting 23 patents and discussions about charting more patents created a

---

[1] The Court may consider this email because "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction," on a motion to dismiss for lack of subject matter jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (affirming the district court's reliance on materials outside the pleadings in deciding a motion to dismiss for lack of subject matter jurisdiction).  Moreover, "Apple agrees with Qualcomm that the Court can and should review the licensing correspondence in deciding this motion." (Opp. at 3 n. 3.)

[2] The other three original patents are U.S. counter-parts to patents asserted by Qualcomm against Meizu.

"definite and concrete" dispute regarding every declared essential patent owned by Qualcomm (numbering well in the thousands), including the nine "additional" patents. By this argument, Apple could bring individual declaratory judgment claims against each and every patent declared potentially essential to a standard.

## ARGUMENT

### I. QUALCOMM'S LIST OF POTENTIALLY ESSENTIAL PATENTS WAS NOT PRESENTED AS AN ALLEGATION OF INFRINGEMENT.

Apple bases its Opposition on the erroneous understanding that Qualcomm's 1,975-page list of potentially essential patents is evidence of "Qualcomm's good faith belief that Apple's products infringe". Apple says so six times in its Opposition (Opp. at 2, 4 (twice), 9, 12, 13), and alleged the same in its Complaint (Apple FAC ¶¶ 146-47). But the parties' correspondence demonstrates this to be false.[3] (*See* Opp. at 4, Ex. E.)

As a threshold matter, Apple's view of the significance of Qualcomm's 1,975-page list of potentially essential patents makes little sense. A list of patents that are identified as ***potentially*** essential to a standard is not an allegation that any particular patents are actually infringed or necessary to comply with the adopted version of the standard. Potentially essential patents may not be actually essential to the cellular standard, or they may be actually essential to a portion of the standard that is not mandatory and/or not yet implemented by an implementer. A review of the correspondence Apple relies on for its understanding of "Qualcomm's good faith belief" of infringement reveals that Qualcomm did not argue that a list of potentially essential patents prove that Apple's products infringe:

---

[3] "Once challenged, allegations alone are insufficient to meet the complainant's burden to establish jurisdiction." *3M Co.*, 673 F.3d at 1378 (citations and quotations omitted). "The district court must satisfy itself that there is a factual basis for it to exercise jurisdiction, and in doing so it may review evidence extrinsic to the pleadings, including affidavits and deposition testimony." *Id.* (same).



(Opp. Ex. E. at 2) (emphasis added). In other words, Apple's devices practice certain cellular standards, and Qualcomm's cellular SEP portfolio is so broad that Apple necessarily practices many of Qualcomm's cellular SEPs. But Qualcomm never contended that Apple practices every patent Qualcomm has declared as potentially essential, and Apple has acknowledged as much. (MTD Ex. 2, at 2 ▓▓▓▓).)

Thus, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The correspondence does not show that Qualcomm relied on the list of *potentially* essential patents to prove infringement.

## II.   THE CASES CITED BY APPLE SUPPORT DISMISSAL.

The cases cited by Apple fail to support its position that declaratory judgment jurisdiction exists. In *3M Co.*, the patent owner told the declaratory judgment plaintiff that it had performed an infringement analysis of a ***specific product*** with respect to ***specific patents*** and said that it would provide claim charts proving infringement by that product. *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1375 (Fed. Cir. 2012). There are more differences than similarities between *3M Co.* and this case. First, Qualcomm never told Apple that it had performed an infringement analysis of the nine "additional" patents. Second, Qualcomm never told Apple that it performed an infringement analysis concerning the nine

"additional" patents (or the thousands of patents in the list of potentially essential patents) with respect to specific products.  Third, Qualcomm never told Apple that it would provide claim charts for the "additional" nine patents.  Indeed, the *3M Co.* court held that to establish declaratory judgment jurisdiction, more is required than just "a communication from a patent owner to another party, merely identifying its patent and the other party's product line." *Id.* at 1378-79.  But that is all Qualcomm has done here with respect to nine "additional" patents.  Qualcomm merely provided Apple a list of ***potentially*** essential patents.

The *3M* court also noted that "a history of litigation concerning different products covered by unrelated patents is not the type of pattern of prior conduct that makes reasonable an assumption that the patentee will file suit regarding a new or different product." *Id.* at 1380 (citations and quotations omitted).  Therefore, even under Apple's cited authority, jurisdiction for these nine "additional" patents cannot be established based upon the Meizu action.  That case involved none of the "additional" nine patents in suit, and Meizu products obviously are not Apple products.  The litigations are unrelated,[4] and even under *3M*, the Meizu litigation is irrelevant to establishing declaratory judgment jurisdiction.

*Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358 (Fed. Cir. 2009) also has little relevance to this action.  In that case, Acceleron, a small patent-holding company headquartered in the Eastern District of Texas, sent a letter to Hewlett-Packard (HP) identifying a patent that it had recently acquired. *Id.* at 1360.  Acceleron noted that the patent was "relevant" to HP's Blade Server products, asked HP not to file a declaratory judgment suit on that patent, and provided a two-week window for HP to respond. *Id*. at 1360-61.  The court found "disingenuous"

---

[4] Several of the "original" nine patents are foreign counter-parts to patents asserted in the Meizu litigations.  Qualcomm has not moved to dismiss the "original" patents from this case.

Acceleron's claim that its letter was merely intended to suggest that HP incorporate the patented technology into its Blade Servers. *Id.* at 1363. The court noted that "the receipt of such correspondence from a non-competitor patent-holding company . . . may invoke a different reaction than would a meet-and-discuss inquiry by a competitor, presumably with intellectual property of its own to place on the bargaining table." *Id.*

*Acceleron* is inapposite to this case. The 1,975-page list of potentially essential patents that Qualcomm sent to Apple was solicited by Apple in the midst of negotiations between two sophisticated companies, and provided by Qualcomm in order to identify the potentially essential patents. It was not an unsolicited letter from a patent-holding company in the Eastern District of Texas. Further, the court held that "a communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, cannot establish adverse legal interests between the parties, let alone the existence of a definite and concrete dispute." *Id.* at 1362 (citations and quotations omitted). That is all that exists here.

Apple attempts but fails to distinguish *Applera v. Michigan Diagnostics, LLC*, 594 F. Supp. 2d 150 (D. Mass. 2009). Apple insists that *Applera* "is inapposite because the patentee there did not declare that its patents were essential." (Opp. at 13.) But neither *3M Co.* nor *Acceleron* involved standard essential patents, so Apple's criticism is inconsistent with its reliance on those cases. Apple also complains that the patentee in *Applera* "did not state that it believed the DJ plaintiff infringed any of [the] patents." (*Id.*) But neither has Qualcomm accused Apple of infringing any of the nine "additional" patents. Nor did Qualcomm identify the specific patents on the list it believed were actually essential to practice the adopted version of the standard. Rather, the parties embarked upon that process when Qualcomm began providing claim charts to Apple mapping specific patents to the adopted standard.

The fundamental point of *Applera*, which Apple ignores, is that disclosure by the patentee of numerous patents within a broad portfolio as part of licensing discussions does not create declaratory judgment jurisdiction with respect to each and every patent within that portfolio. *Applera*, 594 F. Supp. 2d at 155-60. In both *Applera* and here, the parties discussed a broad portfolio, followed by a specific charge related to some of the patents in the portfolio (in the case of *Applera*, by bringing suit on a small subset, and in this case, by presenting charts on some of the "original" patents). Just as in *Applera*, this Court should find that Apple cannot file individual declaratory judgment claims against patents that were merely mentioned as being part of a broad portfolio, and should dismiss the nine "additional" patents that were never specifically identified.

Apple also attempts to distinguish *Samsung Electronics Co. v. Texas Instruments Inc.*, 1996 WL 343330 (N.D. Tex. Apr. 18, 1996) on the ground that, "unlike the declaratory judgment plaintiff in *Samsung*, Apple is challenging specific patents". But the *Samsung* court did not rely on the plaintiff failing to identify specific patents to dismiss the claims. Rather, the court dismissed the claims because the patent owner's "general representations during licensing negotiations concerning its total portfolio of nearly 4,000 patents" were made for "posturing" and "persuasion and strategy during the extended cross-licensing negotiations." *Id.* at *6. Similarly here, Qualcomm and Apple are sophisticated parties (like Samsung and Texas Instruments) and have been engaged in an extended period of negotiations. The *Samsung* court did note that the plaintiff's request to amend its claims to cite to specific patents at any time did betray a lack of immediacy, *id.*, but the same is true here, where Apple has cherry-picked nine patents from Qualcomm's massive portfolio and added them to its pleading months after filing its original complaint.

## III. ANY ATTEMPT TO CURE THE LACK OF JURISDICTION WOULD BE FUTILE.

Apple suggests that if the Court grants Qualcomm's motion, Apple should be allowed to attempt to cure its deficient jurisdiction by pleading additional facts from the correspondence it attached to its Opposition. But the Court may already consider all of the evidence attached to the pleadings when deciding this motion. *3M Co.*, 673 F.3d at 1378. Therefore, should the Court grant Qualcomm's motion to dismiss, amendment would be futile because all of the potentially jurisdiction-saving evidence would have already been placed before the Court.

## CONCLUSION

For the foregoing reasons, Qualcomm respectfully requests that the Court grant its motion in its entirety.

Dated: September 1, 2017

Respectfully submitted,

By: *s/ Randall E. Kay*

**CRAVATH, SWAINE & MOORE LLP**
Evan R. Chesler (*pro hac vice*)
(N.Y. Bar No. 1475722)
echesler@cravath.com
Keith R. Hummel (*pro hac vice*)
(N.Y. Bar No. 2430668)
khummel@cravath.com
Richard J. Stark (*pro hac vice*)
(N.Y. Bar No. 2472603)
rstark@cravath.com
Antony L. Ryan (*pro hac vice*)
(N.Y. Bar No. 2784817)
aryan@cravath.com
Gary A. Bornstein (*pro hac vice*)
(N.Y. Bar No. 2916815)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
(N.Y. Bar No. 4331609)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
(N.Y. Bar No. 4339651)
yeven@cravath.com
Vanessa A. Lavely (*pro hac vice*)
(N.Y. Bar No. 4867412)
vlavely@cravath.com
Worldwide Plaza, 825 Eighth Avenue

New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
David A. Nelson (*pro hac vice*)
(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
Stephen Swedlow (*pro hac vice*)
(Ill. Bar No. 6234550)
stephenswedlow@quinnemanuel.com
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Alexander Rudis (*pro hac vice*)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

**JONES DAY**
Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Randall E. Kay (SBN 149369)
rekay@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (844) 345-3178

*Attorneys for Defendant and Counterclaim-Plaintiff*
**QUALCOMM INCORPORATED**

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2017, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

          *s/ Randall E. Kay*      .
Randall E. Kay
rekay@jonesday.com