1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br>QUALCOMM LITIGATION | CASE NO.  3:17-cv-00108-GPC-MDD<br><br>**ORDER GOVERNING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Judge: Hon. Gonzalo P. Curiel<br><br>Magistrate Judge: Hon. Mitchell D. Dembin |

Apple Inc. ("Apple"), Qualcomm Incorporated ("Qualcomm") and Compal Electronics, Inc., Hon Hai Precision Industry Co., Ltd., FIH Mobile Ltd, Pegatron Corporation and Wistron Corporation (collectively, the "CMs," with Apple and Qualcomm, "the Parties") anticipate discovery of Electronically Stored Information ("ESI").

In order to expedite the flow of such discovery material, and for good cause shown, pursuant to Fed. R. Civ. P. 26(c), it is HEREBY ORDERED THAT:

**1.    PURPOSE**

**a.**    This ESI Order supplements all other discovery rules and orders.  It streamlines ESI production to promote a "just, speedy, and inexpensive determination" of these Actions, as required by Federal Rule of Civil Procedure 1.

**b.**    Costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations.

**c.**    A party's meaningful compliance with this ESI Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

**2.    PRESERVATION**

The Parties have discussed their preservation obligations and needs and agree to take steps to preserve potentially relevant ESI that are reasonable and proportionate.  To that end, the Parties have sent or immediately will send litigation hold notices to each individual who has a reasonable likelihood of possessing or having control of documents relevant to the Actions.  The Parties have taken or immediately will take additional reasonable steps to preserve documents that have a reasonable likelihood of being relevant to the Actions, including preservation of emails, and will provide written instructions for how to properly preserve documents to all individuals who receive litigation hold notices.

**3.     COLLECTION OF MATERIALS**

The Parties agree that in responding to a Fed. R. of Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods and protocols, including the use of search terms and/or other automated search and review technology, to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**a.     Custodians**

Qualcomm provided a list of its custodians who are reasonably likely to possess non-duplicative ESI relevant to these cases, including a brief description of each person's title (if any) or responsibilities (if job title is unknown) ("ESI Custodian List") on September 29, 2017.  Apple provided an ESI Custodian List on October 6, 2017.  The CMs will provide an ESI Custodian List by no later than October 13, 2017.  Following the provision of an ESI Custodian List, the parties will promptly meet and confer in good faith regarding the custodians whose files will be searched for relevant documents.

A party will promptly supplement its ESI Custodian List if it learns of additional individuals likely to possess relevant, non-duplicative ESI.  If a party conducts a search of a particular custodian and does not produce any documents as a result of the search, the party is still required to have disclosed the parameters (*e.g.*, search terms, date restrictions) of the search that it conducted. If any Party believes additional search terms or TAR parameters are necessary or that changes to the search terms or method of searching are warranted, the Parties shall promptly meet and confer in good faith to determine what, if any, additional terms will be run or TAR parameters will be implemented.

**b.     Search Method**

At the same time a custodian on the ESI Custodian List is disclosed, the party shall also disclose the proposed method of searching, including any

technology assisted review ("TAR") and/or the words, terms, and phrases to be searched, if applicable. Following these disclosures, the Parties shall promptly meet and confer in good faith regarding the proposed method(s) of searching and any applicable search terms or TAR parameters.

Regardless of whether or not there are still outstanding disputes, (i) by no later than October 13, 2017, Apple and Qualcomm each shall commence search and review based its initial custodian and search proposal (and subject to supplements based on any agreements between the parties, resulting motion practice, or additional requests served later); and (ii) by no later than October 27, 2017, the CMs shall commence search and review based their initial custodian and search proposal(s) (and subject to supplements based on any agreements between the parties, resulting motion practice, or additional requests served later).

If a party proposes the use of TAR, it shall also disclose sufficient information to allow the other Parties to evaluate the TAR process, including the manner in which the technology has been or will be used to identify responsive documents and/or documents to be manually reviewed for responsiveness; the software used and a detailed description of the methods and process used to train the TAR model; and the size of the initial and complete training set, and the methods for selecting those sets. If a party proposes to use search terms, it shall disclose its proposed search terms and date ranges. In addition, the party proposing use of TAR shall disclose, by no later than seven days following the date of substantial completion of document production, validation metrics including: precision; recall; richness of the initial de-duplicated population of documents; remaining richness of the set of documents withheld as presumptively non-responsive; and the methodologies used to determine the above metrics, including, where appropriate, statistical confidence intervals.

The parties agree to continue to meet and confer in good faith regarding whether any additional information or documents shall be provided relating to the use of TAR and/or the use of search terms.

If, after review of the produced electronic documents commences, a party believes that additional search terms are necessary or that changes to the search terms or method of searching are warranted, such party must identify such additional search terms or different method of searching promptly, and the Parties must then promptly meet and confer in good faith to determine what, if any, additional or altered searches should be run, or what changes to the method of searching should be made.

**4.     PRODUCTION TERMS**

The Parties agree as follows:

**a.     Production Media**

Unless otherwise agreed, the Parties shall provide document productions  in the following manner:  The producing party shall provide the production data on external hard drives or via SFTP as appropriate.  If the producing party so desires, it may encrypt the production data using an industry acceptable encryption method.  In such a case, the producing party shall provide the password to decrypt the production data separately from the external drive or SFTP on which the production data are saved.

**b.     Production Format**

The form or forms in which ESI should be produced are as follows:

**i.     *Format for production of documents – documents existing in electronic format*.**  Except as otherwise provided for in this ESI Order, where technically feasible, all documents existing in electronic format shall be produced in single-page, Group IV tagged image file format ("TIFF"), or in multiple page, searchable PDF format, that preserves the original

formatting, the metadata, and, where applicable, the revision history, at a resolution of at least 300 dpi in accordance with the following:

1. When producing documents in TIFF format, the Image files shall be produced along with Concordance/Opticon image load files linking the images to the corresponding document that indicate the beginning and ending of each document.  Each image file shall be named according to the unique corresponding Bates number associated with the first page of the document.  Each image file shall be branded according to the Bates number and the agreed-upon confidentiality designation (if any), corresponding to the confidentiality designations defined in Sections 2.4 and 2.9 of the Protective Order Governing Confidential Material ("Protective Order").  Image files shall show all text and images that would be visible in the original electronic format (native format), including redlines and speaker notes. When it is impracticable for an electronic document to be produced in this manner, including because any information contained in the document would be omitted, distorted, reorganized, or otherwise made more difficult to read or understand than the document's native format, a party may produce the document in its native format and/or the manner that is technically feasible.

2. When producing documents in PDF format, the PDF files shall be produced along with Concordance/Opticon image load files that indicate the beginning and ending

of each document. PDF files shall show all text and images that would be visible in the original electronic format (native format), including redlines and speaker notes.

3.      For documents which already exist in PDF format prior to production (i.e., which the producing party receives from a client or third party in PDF format), the producing party may provide them in that same PDF format, whether searchable or non-searchable.  For documents converted to PDF format prior to production, the producing party shall make reasonable efforts to convert to searchable PDF.

4.      Notwithstanding the foregoing, all documents that the producing party received from Third Parties or reproduces in whole or in part from the production files of a historical litigation should be produced in the same manner and form, including native files and all metadata, as the producing party received from the producing Third Party or originally produced in the relevant historical litigation.

5.      Extracted text, to the extent it exists, should be provided in document-level text files.

6.      ***Parent and child emails.***  The Parties shall produce email attachments sequentially after the parent email. With respect to an email chain, the Parties are permitted to produce the longest unique chain and the Parties do not need to separately produce the lesser-included

emails unless those lesser-included emails include
unique attachments not included in the longest chain.  If
a lesser-included email includes a unique attachment,
then the lesser-included email must be produced
separately with the attachment.  The Parties agree that if
any part of an email or its attachments is responsive, the
entire email and attachments will be produced, except
any attachments that must be withheld or redacted on the
basis of privilege, immunity or privacy laws, or as
otherwise permitted by this ESI Order or the written
agreement of the Parties.

   **ii.** ***Format for production of documents – hardcopy or paper documents.***  All documents that are hardcopy or paper files shall be scanned and produced in the same manner as documents existing in electronic format in accordance with the following:

    1. In scanning hardcopy documents, distinct documents
should not be merged into a single record, and single
documents should not be split into multiple records (*i.e.*,
hardcopy documents should be logically unitized).  The
Parties will use reasonable efforts to unitize documents
correctly.

   **iii.** ***Format for production of documents - native files.***  The Parties agree to produce Microsoft Excel or other spreadsheet files, and Microsoft PowerPoint or other presentation files, in native format endorsed with a unique Bates number and confidentiality designation reflected in the file name.  The Parties further agree to respond to reasonable and specific requests for the production of files or file types in native format where

appropriate.  Notwithstanding the foregoing, a party may produce a document in a non-native format where production in native format would result in the production of privileged or otherwise non-discoverable information.  A party shall not make unduly burdensome and unreasonable requests for the production of documents in native format, and a party shall not unreasonably refuse a request for the production of documents in native format.  If a dispute arises with regard to requests for the production of files or file types in native format, the Parties will meet and confer in good faith to try to resolve it.  If the Parties are unable to reach agreement with regard to requests for additional documents in native-file format, the Parties reserve the right to seek relief from the Court.

      **iv.**    *Format for production of documents – redacted documents*. For documents that are properly subject to redaction, a party shall produce a redacted version of any such document and provide the information listed in the Table of Metadata Fields below.

      **v.**    *Source Code.*  This ESI Order does not govern the format for the production of source code, which shall be produced pursuant to Sections 8.1 through 8.3 of the Protective Order.

      **vi.**    *Requests for High Resolution or Color Documents*. The Parties agree that color documents should be produced as color images (JPEGs) or in native format.  The Parties agree to respond to reasonable and specific requests for the production of higher resolution images. Nothing in this ESI Order shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute

arises with regard to requests for higher resolution images, the Parties will meet and confer in good faith to try to resolve it.

   **vii.     *Images with Poor Legibility.*** If a document is originally produced in an illegible or difficult-to-read form, the receiving party shall have the option to request a native-file version of the document or a replacement image of legible quality.  A party shall not make unduly burdensome and unreasonable requests for the production of documents in native format, and a party shall not unreasonably refuse a request for the production of documents in native format. If a dispute arises with regard to requests for legible images, the Parties will meet and confer in good faith to try to resolve it.

   **viii.    *Databases.*** To the extent response to discovery requires production of electronic information contained in a database, the producing party may produce reports from the database in lieu of producing the database as a whole, so long as it clearly communicates, in a cover page to the report or in correspondence identifying reports by Bates number, that these reports were created from an unproduced database.  The receiving party may request additional reports and/or information regarding such database.  If the receiving party requests additional reports, the Parties should then meet and confer in good faith to determine which reports need to be produced.

   **ix.     *Foreign language documents.*** All documents shall be produced in their original language.  Where a requested document exists in a foreign language and the producing party also has a certified English language version of that document that it prepared prior to filing of the lawsuit, the producing party shall produce both the original document and all such certified English-language versions that it is aware of or locates

after a reasonable search.  Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

       **x.**    ***Materials Requiring Different Production Format.***  If particular documents or materials warrant a different format from that described in subparts 5(b)(i)-(xi) above, then the Parties will cooperate to arrange for the mutually acceptable production of such documents.  The Parties agree not to degrade the searchability of documents as part of the document production process.

**c.**    **Custodians**

Regardless of the format of the documents, the Parties shall identify each individual from whose files documents are produced.  To the extent documents are produced from a non-individual, or central, source, that source must be identified.

**d.**    **Metadata**

The Parties agree that document image load files should include, where applicable, the information listed in the Table of Metadata Fields, to the extent reasonably feasible.  The Parties are not obligated to produce metadata for any document that does not contain such metadata in the native version of the document at the time the document is collected.  The Parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original.

## Table of Metadata Fields

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| Bates Begin | Bates number | Text | The Bates number associated with the first page of an email | The Bates number associated with the first page of a document |
| Bates End | Bates number | Text | The Bates number associated with the last page of an email | The Bates number associated with the last page of a document |
| Confidentiality Designation | | Text | The confidentiality designation endorsed on the document. If no designation is present, a default value of "None" will be coded. | The confidentiality designation endorsed on the document. If no designation is present, a default value of "None" will be coded. |
| Redaction | | Text | An indication as to whether the email contains any text redacted by the party | An indication as to whether the document contains any text redacted by the party |
| Email Date | | Date (MM/DD/YYYY format) | The date of the email | For email attachments, the date of the parent email |
| Email Time | | Time (HH:MM:SS AM/PM) | The time of the email | For email attachments, the time of the parent |
| Email From | Sender | Text | The display name of the sender of an email | N/A |
| Email To | Recipient | Text | The display name of the recipient(s) of an email | N/A |

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| Email CC | CC | Text | The display name of the copyee(s) of an email | N/A |
| Email BCC | BCC | Text | The display name of the blind copyee(s) of an email. | N/A |
| Email Subject | Subject (email) | Paragraph | The subject line of an email | N/A |
| Custodian | Custodian | Paragraph | The custodian of an email | The custodian of a document. |
| Alternate Custodian | Alternate Custodian | Paragraph | Custodians that possess the same email in their files. | Custodians that possess the same document in their files. |
| Date Created | | Date (MM/DD/YYYY format) | N/A | Date the file was created |
| Date Modified | | Date (MM/DD/YYYY format) | N/A | Date the file was last modified |
| Time Created | | Time (HH:MM:SS AM/PM) | N/A | Time the file was created |
| Time Modified | | Time (HH:MM:SS AM/PM) | N/A | Time the file was last modified |
| File Name | | Paragraph | N/A | Original file name |
| File Extension | | | N/A | The file extension |

| Field Name | Specifications Field Name | Field Type | Description (Email) | Description (E-Files/Attachments) |
|---|---|---|---|---|
| File Type | | | Field should indicate email file type (e.g., "Microsoft Outlook Message Mail") | A description of the type of file (e.g., "Microsoft Excel 2000") |
| HASH | Unique ID | | A calculated value unique to each identical file - the file "fingerprint" | A calculated value unique to each identical file-the file "fingerprint" |
| BegAttach | Unique ID (Bates number) Parent-Child | Text | The Bates number associated with the first page of a parent email. | The Bates number associated with the first page of a parent document. |
| EndAttach | Unique ID (Bates number) Parent-Child Relationship | Text | The Bates number associated with the last page of the last attachment to a parent email. | The Bates number associated with the last page of the last attachment to a parent document. |
| Text Link | | | Full path to the supplied text (to be left blank when no text file is supplied). | Full path to the supplied text (to be left blank when no text file is supplied) |
| Native Link | | | Full path to the supplied native (to be left blank when no Native Format file is | Full path to the supplied native (to be left blank when no Native Format file is |

e.      **Deduplication**

A party is only required to produce a single copy of a responsive document. Each party may remove exact duplicate documents, including but not limited to email, to reduce the unnecessary cost of reviewing and producing exact duplicate documents.  Data may be de-duplicated on a global level.  Names of custodians of copies of files eliminated due to global deduplication shall be provided in the Alternative Custodian field accompanying the original file.

**f.     Culling and Filtering**

Each party will use reasonable efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process.  Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to:  WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers. The Parties agree to meet and confer regarding which file types may be appropriate to cull or filter in an effort to preserve files relevant to this litigation.

## 5.     DOCUMENTS PROTECTED FROM DISCOVERY

**a.**     The inadvertent production of privileged or otherwise protected ESI shall be governed by Section 13 of the Protective Order.

**b.**     The receiving party must not use ESI that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection.

**c.**     Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privilege or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

**d.**     The mere production of ESI in a litigation as a part of a mass production will not itself constitute a waiver for any purpose.

**e.**     A document family (email and attachments) may be logged as a single entry so long as the description of that entry includes a sufficient description of the privileged attachments.

**f.**     The Parties agree to further meet and confer regarding the format, content, and timing of production of privilege logs.

**6.     PROPOSED MODIFICATIONS OR LIMITATIONS TO THE DISCOVERY RULES**

**a.     Previously Produced Documents**

The Parties have agreed to work in good faith to negotiate the coordination of discovery between these Actions and the Related Matters.

**b.     Document Subpoenas to Non-Parties**

The Parties agree as follows with respect to non-Parties producing materials in response to Fed. R. Civ. P. 45 document subpoenas in the Actions.  The issuing party shall request that non-Parties simultaneously produce materials to all Parties. If, notwithstanding such request, the non-party does not produce the materials to all sides, the issuing party shall provide a copy of all materials to the other sides within three (3) calendar days after receipt of the materials from the non-party.

**c.     Authenticity Presumptions**

Documents produced by non-Parties from the non-Parties' files shall be presumed to be authentic within the meaning of Fed. R. Evid. 901.  Documents produced by the Parties in response to document requests in the Actions shall be presumed to be authentic within the meaning of Fed. R. Evid. 901.  If a party serves a specific good-faith written objection to the authenticity of a document that it did not produce from its files, the presumption of authenticity will no longer apply to that document.  Any objection to a document's authenticity must be provided with (or prior to) the exchange of objections to trial exhibits.  The Parties

will promptly meet and confer to attempt to resolve any objection.  The Court will resolve any objections that are not resolved through this means or through the discovery process.

        **d.     Expert Discovery**

**7.**     The Parties agree that the provisions of Fed. R. Civ. P. 26(b)(4)(C), as modified or limited herein, will apply to expert discovery in the Actions. Discovery of expert materials shall be limited to final expert reports and materials relied upon in connection with those reports.  Communications with counsel, communications with and among consulting experts, draft reports, and draft declarations or affidavits shall not be discoverable.  Thus, the term "considered" as used in Fed. R. Civ. P. 26(a)(2)(B)(ii) and 26(b)(4)(C)(ii) shall be interpreted as "relied upon" for purposes of this section.  For the avoidance of doubt, materials that are considered but not relied upon by an expert shall not be discoverable notwithstanding any language to the contrary in Fed. R. Civ. P. 26(a)(2)(B)(ii).

**8.**     For the avoidance of doubt, no expert or party is required to produce or describe on a privilege log and no party may seek discovery, by any method (including by deposition), of the following, except to the extent that it constitutes factual information that the expert relied upon in forming his or her opinion: (i) any form of communication or work product between an expert (including his or her assistants, employees, or agents) and a party or parties offering the testimony of such expert and/or a party that holds a common interest privilege or joint defense privilege with the party or parties offering the testimony of such expert (including such party or parties' employees, agents, consultants, and counsel, and their employees or agents); (ii) any form of communication or work product between an expert and his or her employees, assistants, or agents, (iii) any form of communication or work product between or among an expert (including his or her employees, assistants, or agents) and a consulting expert (including his

or her assistants, employees, or agents) retained by or on behalf of the same party or parties; (iv) drafts of any report, exhibit, study, work paper, computation, calculation, compilation, or any other material prepared by, for, or at the direction of an expert, regardless of the form in which the draft is recorded; or (v) any notes or other writings made by, for, or at the direction of an expert.  Nothing in this paragraph relieves an expert or party from the duty to identify the facts, data, and assumptions that the expert relied upon in forming his or her opinions.

**9.     MODIFICATION**

This ESI Order may be modified by written agreement of the Parties for good cause shown, subject to the Court's approval, or by order of the Court.

**IT IS SO ORDERED.**

Dated:   October 25, 2017

Hon. Mitchell D. Dembin
United States Magistrate Judge