Evan R. Chesler (N.Y. Bar No. 1475722; *pro hac vice*)
echesler@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

David A. Nelson (Ill. Bar No. 6209623; *pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Dr., Suite 2700
Chicago, Illinois 60606
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401

Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone:  (858) 314-1200
Facsimile:  (844) 345-3178

[*Additional counsel identified on signature page*]

*Attorneys for*
QUALCOMM INCORPORATED

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: QUALCOMM LITIGATION | No. 17-cv-0108-GPC-MDD |
| | **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE** |

## **Introduction**

Following the March 21, 2018 discovery teleconference with the Court, the parties submit this updated joint motion encompassing the remaining disputes concerning Qualcomm's First and Second Set of Requests for Production to Apple. Seeking to focus the parties' disputes and in light of the Court's guidance during the March 21 teleconference, this Motion addresses a narrowed scope for several categories of Requests and removes others entirely.  The text of the Requests and Responses that remain at issue in this Motion are attached as Exhibit A.

The remaining disputed Requests fall into four categories:

- Prevalence of Conduct Apple Alleges Is Unfair or Is Purported Evidence of Qualcomm's Market Power (Request Nos. 33, 36, 65, 72 120, 132-134, 136, 140, 221, 222, 234, 235, 238, 239, 264, 266, 278, 338, and 339);
- Alleged Breach of Master Software Agreement (Request No. 31);
- Advertising and Consumer Demand (Request Nos. 250, 283, 354, and 356-358);
- Handling of Source Code (Request Nos. 324, 325, and 359).

# I.  QUALCOMM'S PORTION

## Introduction

It has been over nine months since Qualcomm served most of the Requests at issue in this motion, and six months since Qualcomm first filed a motion to compel as to many of them.  During that time, the parties exchanged dozens of letters and spent dozens of hours conferring and briefing these issues.  The close of fact discovery is now a month away and several fundamental disputes remain.

These disputes are not for lack of reasonableness on Qualcomm's part.  Apple has rejected numerous compromises as to these Requests, forcing a *fourth* version of this Motion to be filed.  All parties' document requests are similarly large in scope and number—reflecting the reality that discovery should be commensurate with the massive scope of this case.  But while Apple has sought and received broad discovery from Qualcomm, for the below issues Qualcomm has sought but still not received such discovery from Apple.

Whatever Apple's aim, its tactics have prejudiced Qualcomm by withholding key categories of relevant documents even as the close of fact discovery looms.  Immediate relief is necessary.  The remaining disputes are as follows:

- *Prevalence of Conduct Apple Alleges Is Unfair or Is Purported Evidence of Qualcomm's Market Power (RFPs 33, 36, 65, 72, 120, 132-134, 136, 140, 221, 222, 234, 235, 238, 239, 264, 266, 278, 338, and 339).*  These Requests relate to Apple's own licensing and pricing policies, as well as Apple's allegations against third parties that mirror Apple's allegations against Qualcomm.

- *Alleged Breach of Master Software Agreement (RFP 31).*  This Request relates to Qualcomm's claim that Apple breached the MSA and its related 2013 Statement of Work related to that technology, and Apple's affirmative defenses thereto of completed performance and excused performance.

- *Advertising and Consumer Demand (RFPs 250, 283, 354, 356-358).*  These Requests seek documents relating to Apple's advertising, marketing, promotion, and/or research of Apple devices, as well as documents related to consumer demand for features enabled by Qualcomm's technologies.

- *Handling of Source Code (RFPs 324, 325, and 359).* Qualcomm seeks documents merely sufficient to show Apple's use of Qualcomm's source code, related security measures, and the value Apple places on that source code.

The Court should overrule Apple's objections and order amended responses and completed production within 7 days of the date of the Order on this Motion.

**Qualcomm's Argument**

The parties have agreed to categorizations of the disputed Requests, and Qualcomm addresses each in turn.

### A.    Prevalence of Conduct Apple Alleges Is Unfair or Is Purported Evidence of Qualcomm's Market Power

The largest category of disputed Requests relates to Apple's licensing and pricing policies, and its agreements with and allegations against third parties that mirror its allegations against Qualcomm.  Request Nos. 33, 36, 65, 72, 120, 132-134, 136, 140, 221, 222, 234, 235, 238, 239, 264, 266, 278, 338, and 339.  Apple ignores its own sweeping allegations, arguing its claims only relate to purported "rebates" and "no license no chips" allegations.  But Apple in fact alleges "Qualcomm's anticompetitive and exclusionary conduct is a multi-faceted but synergistic whole" (FAC ¶ 623), including "refusing to deal with competitors," "gagging Apple's ability to challenge Qualcomm's non-FRAND licensing scheme," "requiring exclusivity from Apple as a condition of partial relief from Qualcomm's exorbitant and non-FRAND royalties," (FAC ¶ 624), and "insist[ing] that [] agreements are maintained as confidential," (FAC ¶ 75).  At the February 7, 2018 hearing, the Court expressed the view that such issues are relevant.  *See* 2/7/2018 Hearing Tr. at 56:5-9 ("Qualcomm has the right to see whether this regime that you think is wrong is being practiced by others that you do business with without complaint.").

During the March 21 teleconference, the Court indicated that it generally agreed with Qualcomm's positions regarding the relevance of documents

concerning Apple's contracting and licensing practices.  Nonetheless, Apple still refuses to produce *any* documents in response to over half of these Requests, and as to others offers only a limited production that excludes most relevant documents.

The parties have been conferring regarding the scope Apple's response to Qualcomm's Interrogatory No. 28 (concerning component suppliers, an issue the parties are continuing to confer about).  During meet and confers regarding the parties' dispute concerning Apple's responses to the RFPs falling with the category of Prevalence of Conduct Apple Alleges Is Unfair or Is Purported Evidence of Qualcomm's Market Power, the parties agreed that whatever scope the parties agreed to with respect to Interrogatory No. 28 would also be applied to these RFPs to the extent such a limitation is applicable, *i.e.*, the parties agreed to narrow the scope of these RFPs to the same component suppliers concerning which Apple agrees to respond for Interrogatory No. 28.  In other words, if a document otherwise responsive to RFP 120, for example, does not concern one of the component suppliers that the parties agree fall within the scope of Interrogatory No. 28, then the parties agree that Apple need not produce such documents.  This agreement significantly limits a number of RFPs in this category.  However, despite this agreement by Qualcomm to narrow this category of RFPs, Apple refuses to actually produce responsive documents within that scope, instead insisting that it produce only its *agreements* with component suppliers, and defer all other additional responsive production to some unknown future time.  With the close of fact discovery less than a month away, Qualcomm cannot agree to delay to some unknown future date the production of responsive documents within the parties' agreed-upon limited scope of these requests, particularly since many of these requests do not relate in any way to the agreements Apple is willing to produce.

The parties have agreed to a narrowed scope for these requests, and Apple should produce documents that fall within that scope.  Requiring production of documents concerning agreements should not impose any additional burden on

Apple; Qualcomm simply seeks relevant communications from Apple's custodians related to the agreements.  The Court should overrule Apple's objections and require it to produce documents responsive to these requests, within the narrowed scope agreed to by Qualcomm.  The Requests fall into the following sub-categories.

Apple's Own Use of Allegedly Unfair Contract Terms (RFPs 36, 120, 132, 133, 134, 136, 234, 235, 238, and 239).  Apple asserts that its contracts with Qualcomm are unfair, one-sided, contain "unprecedented" terms, and that Qualcomm has refused to offer "industry standard" terms related to supply commitments, pricing, tying, exclusivity, indemnity, warranty, and others.  FAC ¶ 71.  Requests Nos. 36, 120, 132, 133, 134, 136, 234, 235, 238, and 239 relate to Apple's own agreements where such terms have been offered or accepted.

While Apple has agreed to produce the agreements themselves, it refuses to produce any other documents or communications concerning those agreements.  But Apple's communications concerning its agreements with others in the cellular industry as to *the very terms* Apple claims are "unprecedented" and not "industry standard" directly relate to Apple's allegations that Qualcomm's agreements are unprecedented and inconsistent with industry practice.  These Requests are also relevant to how Apple and third parties have previously interpreted and applied FRAND obligations in the cellular industry.

RFP 136 is limited to the narrow scope of relevant suppliers with respect to whom Apple has agreed to produce documents, namely, suppliers falling within the scope of Interrogatory No. 28.  Qualcomm has similarly agreed to narrow RFP 36 to that same scope.  Specifically, Qualcomm seeks documents concerning allegations against Apple only by the suppliers falling within the scope of the parties' agreement with respect to interrogatory No. 28.

RFPs 235 and 238 are similarly limited.  Apple claims that Qualcomm has not argued that RFPs 234, 235, 238, and 239 are relevant, but as Qualcomm has repeatedly argued, those topics are indeed relevant to, for example, Apple's

allegations that certain terms of Qualcomm's agreements are purportedly "unprecedented" and contrary to "industry standards," *see* FAC ¶ 71, (RFP 234 (Apple's conditioning the sale of its products on the purchase of other Apple products tends to show that Apple's antitrust allegations are a post hoc attempt to gain leverage over Qualcomm); RFP 235 (Apple's conditioning of manufacture of iPad components on purchase of Apple security chips); RFP 238); to FRAND analysis (RFP 234 (previous interpretation by Apple and third parties of FRAND obligations bears on what is fair and reasonable); RFP 235; RFP 238); and Qualcomm's unclean hands defense (RFPs 235, 238).  RFP 239 seeks documents that are relevant to the value Apple places on features of its cellular devices, which is relevant to whether Qualcomm offered to license its SEPs on fair and reasonable terms, and to FRAND analysis.  Qualcomm has been making these arguments for months, (*see* ECF No. 197 at 218-19, 222-23, 225-26, 228-30), and Apple's argument to the contrary is simply inaccurate.

The Court should overrule Apple's objections and limitations and order Apple to fully respond.

Apple's Non-Asserts With Other Parties (RFPs 33 and 140).  Apple argues these terms—which it agreed to with Qualcomm in the BCPA and TA—are anticompetitive and that Apple was coerced into agreeing to them.  Apple's agreements not to assert its patents are likewise directly relevant to Apple's allegations that certain terms of Qualcomm's agreements are purportedly "unprecedented" and contrary to "industry standards."  *See* FAC ¶ 71. Further, how Apple and third parties have previously interpreted and applied FRAND obligations is plainly relevant to what is fair and reasonable.  Finally, the Requests relating to Apple's practices are relevant to Qualcomm's unclean hands defense.[1]  For RFP 33,

---

[1]  Apple claims that "Qualcomm has no answer" to Apple's previous arguments that the unclean hands defense is unavailable with respect to antitrust claims, *see infra* at 15, but as Qualcomm has previously argued and reiterates now, Qualcomm's unclean hands defense is not limited to Apple's antitrust claims.  (*See,*

1  Apple improperly excludes settlement agreements, and, for RFP 140, it limits

2  production to certain categories of the agreements themselves, rather than other

3  documents concerning those agreements.

4      Relevant Corporate Ventures (RFPs 338-339).  Apple refuses to produce any

5  documents relating to mergers, acquisitions, or joint ventures it has considered that

6  would impact its business relationship with Qualcomm.  These Requests seek

7  documents that directly relate to Apple's own allegations that Qualcomm possessed

8  market power and that Apple was purportedly "forced" to deal with Qualcomm,

9  (FAC ¶ 8), as well as to Apple's allegations that Qualcomm refused to enter

10  licensing agreements on reasonable terms and Qualcomm's defenses thereto.  FAC

11  ¶ 71.  For example, Apple's consideration of a merger or joint venture with one of

12  Qualcomm's baseband competitors would clearly be relevant to Apple's antitrust

13  allegations.  Apple inexplicably ignores this explanation as to how these RFPs relate

14  to the claims and defenses in this case.

15      Apple argues that these RFPs are overbroad even in light of Qualcomm's

16  offer to accept documents "sufficient to show" the information sought in these

17  Requests, but ignores that Apple recently propounded identical discovery on

18  Qualcomm.[2]  Apple still refuses to produce any documents.  The Court should order

19  Apple to respond.

20      RFPs 65, 72, 221-222, 264, 266, 278.  Apple claims that Qualcomm somehow

21  waived its right to recovery as to these requests, but is simply ignoring Qualcomm's

22  arguments with respect to each of them.  (*See, e.g.*, ECF. No. 197 at 44-45, 48-50,

23  _____

24  *e.g.*, ECF. No. 197 at 258.)  Apple's suggestion that Qualcomm has not previously responded to Apple's argument entirely ignores Qualcomm's previous responses to that argument.

25  [2]  *See* Apple's Fifth Set of Requests for Production of Documents to Qualcomm, Request No. 412 ("All Documents Relating to Your interactions, direct or indirect,

26  with any individual outside of Qualcomm regarding Broadcom's proposed acquisition of Qualcomm, including any interactions regarding CFIUS's

27  investigation or examination of that acquisition, and including any interactions regarding President Trump's Executive Order regarding that acquisition.").

28

188-90, 193-95, 243-44, 247-48, 252-55.)  These RFPs were attached to and included in the parties' March 9, 2018 Joint Motion for Determination of Discovery Dispute, and were also included in the draft Joint Motion Qualcomm served on Apple on April 9, 2018.  (ECF No. 365 at 7-8; *see id.* at Exhibit A.)  In both the March 9 Joint Motion and the April 9 Draft Joint Motion, Qualcomm explained that these and the other RFPs in this category bear on Apple's sweeping allegations, including that Qualcomm refused to deal with competitors and "gagg[ed] Apple's ability to challenge Qualcomm's non-FRAND licensing scheme."  (ECF No. 365 at 7-8 (quoting FAC ¶ 624); *see id.* at Exhibit A.)

These RFPs are relevant to, for example, Apple's allegations that certain terms of Qualcomm's agreements are purportedly "unprecedented" and contrary to "industry standards," *see* FAC ¶ 71, (RFPs 65, 221-22); the FRAND analyses required by both parties' claims (RFPs 65, 221-22); the value being conveyed under the licenses Apple is challenging (RFPs 65, 72, 278); that Apple requested a license to Qualcomm's patents on a portfolio-basis on FRAND terms, and that Qualcomm refused, and that all counter-proposals made by Qualcomm were not FRAND and breached Qualcomm's obligations to SSOs, *see, e.g.*, FAC ¶¶ 37, 120-26, (RFP 72); Qualcomm's allegations in support of its Counterclaims, *see, e.g.*, Dkt. 70 at ¶ 24 (Apple's tactics are "familiar to those in the industry" as "Apple has previously accused its suppliers and rivals alike (such as Nokia and Samsung) of unlawful monopolization when they have sought compensation for the use of their patents . . . ."), (RFPs 264, 266); and to Qualcomm's unclean hands defense, which applies to several of Apple's claims (RFPs 65, 264, 266).  These are not new arguments; Qualcomm has been asserting these arguments since November 2017. (*See, e.g.*, ECF No. 197 at 44-45, 48-50, 188-90, 193-95, 243-44, 247-48, 252-55.) Apple has not articulated any burden that would justify its refusal to respond to these requests.

### B.    Alleged Breach of Master Software Agreement

The Master Software Agreement (RFP 31) forms the basis for Qualcomm's breach claim, FACC ¶¶ 42, 163.  Apple continues to refuse to produce *any* documents related to the *performance* of the contract other than documents related to the *specific paragraph* of the agreement that Qualcomm alleges was breached. This unjustified limitation would exclude documents relating to both parties' prior performance under the agreement.  The parties' performance under the MSA is obviously relevant to Qualcomm's claim that Apple breached the MSA.  In any suit for breach of contract, a request for all of the breaching party's documents concerning the contract is par for the course.  Indeed, performance of all material terms of a contract by the party asserting a claim for breach is an element of the claim.  *See* Judicial Council of California Civil Jury Instructions No. 303 (2018). As such, Qualcomm must be allowed to obtain discovery as to that element of its breach claim.

Apple has offered to withdraw its Affirmative Defense No. 26 and to limit its Affirmative Defense No. 22 to assert only that Apple did not breach the specific section of the MSA that Qualcomm alleges was breached.  But Apple refuses to agree that it will stipulate that Qualcomm has performed all material terms of the MSA.  Because Apple is reserving the right to argue that Qualcomm has not performed all of its obligations under the MSA, discovery must be permitted on this point.  Apple should be ordered to respond in full.

### C.    Advertising and Consumer Demand

These Requests seek documents relating to Apple's advertising, marketing, promotion and/or research of Apple devices, as well as documents related to consumer demand.  Request Nos. 250, 283, 354, 356-358.  Apple largely concedes the relevance of these Requests and offers to produce more than in its February 21 Responses, but Apple continues to exclude documents and communications concerning which features to highlight in Apple's advertisements, which is

responsive to Request 354.  Apple's marketing and advertisements demonstrate features that either Apple values or believes its customers value, and is thus relevant to the value of the features enabled by Qualcomm's licensed patents.

Finally, Apple refuses to produce documents relating to the amounts paid by Apple for research for the iPhone and iPod.  The amount of money spent on research not only impacts the actual values consumers ascribe to any given aspect of the whole Apple product, but is also itself a direct input into the cost of each complete Apple product.

Qualcomm continues to contend that it is entitled to all documents responsive to these Requests.  However, in light of the Court's recent guidance and in the interest of compromise, Qualcomm has offered to resolve the disputes concerning this category of Requests so long as Apple agrees to produce (1) documents sufficient to show the total amount of research as requested, and (2) all documents concerning whether to feature cellular communication-enabled functionalities in any iPhone advertising, marketing, and promotion.  The Court should order Apple to produce such documents.

**D.    Handling of Source Code**

Request Nos. 324, 325, and 359 relate to Apple's security measures with respect to Qualcomm's source code that Qualcomm provided to Apple (Request 324); Apple's access to Qualcomm's source code (Request 325); and the use of Qualcomm's technology, information, or source code for Intel-related projects or Intel-produced Baseband Processors (Request 359).  In meet and confers following the March 21 hearing, Qualcomm offered to accept documents merely "sufficient to show" in response to these requests, but Apple still refuses.  Apple has made no attempt to substantiate any claim of burden, and contrary to Apple's claim that these documents are not relevant to this action, the documents are relevant to Apple's valuation of Qualcomm's technology and the functionalities provided and enabled by Qualcomm's technology.  Indeed, Apple has propounded virtually *identical*

requests on Qualcomm.[3]  Apple has provided no explanation for why its claims justify such discovery as to Qualcomm's source code, but not its own.

As to security measures (RFP 324), documents sufficient to show Apple's efforts to secure source code containing Qualcomm technology are probative of the value Apple ascribes to Qualcomm's technology and to damages in this litigation. Whether and to what extent those security measures are equal to or in excess of other security measures Apple uses to protect its own source code is a relevant issue for the same reasons.  Documents sufficient to show Apple's use of Qualcomm source code or other technology for other, non-Qualcomm projects (RFP 359) directly bear on the value of Qualcomm's technology and are relevant to Apple's antitrust claims regarding the baseband processor market specifically.  FAC ¶ 63 ("Qualcomm has had a share of over 80 percent of the CDMA chipset market for many years, despite the attempts of competitors such as Intel, VIA Telecom, Texas Instruments, and Eonex to enter and gain a foothold."); *id.* at ¶ 97 ("It was only with the iPhone 7—released in September 2016—that Apple was able to use a competitor's chipsets (Intel's) as well as Qualcomm chipsets in its cellular-enabled devices.").  These documents are also relevant to Apple's performance under the MSA, which is an element of Qualcomm's claim that Apple breached that agreement.

To the extent Apple refuses to produce documents in this case due to a pending California state court case, Apple's objections are without merit.  The requested documents are relevant to the claims and defenses in *this* case, and Qualcomm is entitled to these documents.

---

[3]  *See* Apple's First Set of Requests for Production of Documents to Qualcomm, Request Nos. 194 ("All security measures implemented by Qualcomm, including electronic, procedural, or any other measures, Relating to Qualcomm's treatment of its source code provided to Apple and referred to as 'Restricted Software' under the MSA"); 195 ("All Documents regarding Apple's treatment of Qualcomm source code . . ."); 196 ("All Documents Relating to Qualcomm's efforts to limit, restrict, condition, or monitor Apple's access to Documents and source code since the filing of this Action.").

## II.    <u>APPLE'S PORTION</u>

### <u>Introduction</u>

Apple has diligently endeavored to reach compromises with Qualcomm on its requests for production, and has been successful for the vast majority of those requests. Qualcomm served 363 Requests on Apple in its First and Second Sets of Requests for Production. After extensive negotiations between the parties, and with the benefit of the Court's guidance, Apple and Qualcomm have been able to narrow their disputes to a small number of discrete issues concerning only 23 Requests.

In response to the numerous undisputed Requests and the dozens of compromises Apple has agreed to, Apple has produced more than 7 million documents (more than 35 million pages) from 67 custodians and numerous non-custodial collections. Moreover, Apple has agreed to produce documents in response to many of the Requests Qualcomm continues to dispute here, including Requests 33, 120, 140, 250, 283, 356, 357, and 358.

The remaining disputes concern requests in which Qualcomm seeks documents that are beyond the scope of reasonable discovery in this action. For example, in the first sub-category of Section A—where Qualcomm lumps together a wide swath of requests, several of which have minimal or no relevance to the case—Qualcomm seeks documents concerning Apple's requirements for retailers of Apple devices in *India*. Request No. 234. In another sub-category of Section A, Qualcomm seeks documents concerning mergers and other ventures with *any* impact "on the Apple Cellular Device business." Request No. 338. Similarly, in Requests 357 and 358 discussed in Section C, Qualcomm demands documents relating to the amounts Apple paid for research for the iPhone and iPod Touch, without defining or clarifying the scope of such "research." And Qualcomm continues to demand documents concerning Apple's treatment of Qualcomm source code, based on a tenuous argument that such documents are "probative of the value Apple ascribes to

1  Qualcomm's technology and to damages in this litigation." (Mot. at 9.) Even if
2  Qualcomm could adequately articulate the relevance of these documents—which to
3  date it has not—the burden associated with their production far outweighs their
4  value to this case.

5      The Court should deny Qualcomm's motion as to the Requests below.

6                          **Apple's Argument**

7  A.    **Miscellaneous Requests (Categorized by Qualcomm as "Prevalence
8         of Conduct Apple Alleges Is Unfair or Is Purported Evidence of
9         Qualcomm's Market Power")**

10     These twenty-one Requests span numerous irrelevant or only marginally
11 relevant topics, and seek document production that is disproportionate to the needs
12 of this case. *See* Request Nos. 33, 36, 65, 72, 120, 132-134, 136, 140, 221-222,
13 234-235, 238-239, 264, 266, 278, 338-339. Qualcomm claims that it seeks only
14 documents related to Apple's policies and agreements that "mirror its allegations
15 against Qualcomm." (Mot. at 2.) But these requests far exceed that scope.

16     Apple proposed a compromise to limit the scope of these Requests to
17 agreements consistent with what Apple is producing in response to Qualcomm's
18 Interrogatory No. 28 (concerning non-baseband chipset component suppliers), and
19 to defer requests for additional documents *concerning* those agreements until
20 Qualcomm has reviewed the agreements themselves. Qualcomm claims it cannot
21 delay the production of "documents concerning" agreements until a later date.
22 However, Qualcomm cannot articulate its need for burdensome discovery into
23 "documents concerning" these agreements until it reviews the agreements
24 themselves. Moreover, contrary to Qualcomm's assertion that production of these
25 documents "should not impose any additional burden," if Apple now had to
26 immediately produce "documents concerning" those agreements, it would be
27 necessary to conduct additional searches and increase the number of documents to
28 review.

       Apple's Own Use of Allegedly Unfair Contract Terms (RFPs 36, 120, 132-134, 136, 234-235, 238-239). Only five of the disputed Requests in this sub-category actually pertain to Apple's agreements or their terms. *See* Request Nos. 120, 132, 133, 134, 136. As discussed above, the parties agree that these Requests are limited by the scope of the parties' agreement concerning Interrogatory No. 28. (Mot. at 3, 12). However, in addition to contracts, Qualcomm seeks "all documents concerning" those contracts or their terms. Qualcomm claims that communications concerning agreements are pertinent because they "directly relate to Apple's allegations that Qualcomm's agreements are unprecedented and inconsistent with industry practice." But that will be shown by the contracts *themselves*; additional documents will add little, if anything.

       In particular, Requests 132, 133, and 136 seek all documents concerning Apple's "refusal to guarantee any obligation" (Request 132), "limitations on its own liability" (Request 134), and "refusal to agree to any proposed indemnity or warranty terms" (Request 136). Even when limited to the subset of suppliers agreed upon for Interrogatory No. 28, Qualcomm's demand for all documents concerning such agreements and contract terms is not proportional. Request 36 is broader still, seeking all documents concerning "***any allegation***" by those suppliers "that Apple has imposed, attempted to impose, or threatened to impose illegal, anticompetitive, coercive, one-sided, or unreasonable terms in" agreements for cellular devices, their components, cellular patents, or patents used in cellular devices. This Request would require a search for documents across numerous litigations, patent disputes, and contract discussions. It cannot reasonably be argued that all such documents are relevant to this matter or proportionate to the needs of this case.

       The remaining four requests—Nos. 234, 235, 238, 239—concern requirements or policies of Apple's that have no relevance to this case. These requests seek documents concerning requirements for Apple cellular device retailers

in India (Request 234)[4]; requirements for iPad component or accessory
manufacturers related to a "security chip" (Request 235); tying requirements for use
or access to products, product infrastructure or platforms (Request 238); and
Apple's "App Store" pricing policies (Request 239)[5].  Qualcomm argues that these
requests are relevant to Apple's allegations that certain terms of Qualcomm's
agreements are unprecedented and contrary to industry standards.  But, none of
these Requests concern agreements or contracts like those in dispute between the
parties; rather, Qualcomm is fishing for evidence related to tying, a claim
Qualcomm has not alleged against Apple.  Qualcomm cannot use its discovery
requests to try to dig up evidence to support a hypothetical claim.  *See In re New
Century*, No. CV070931DDPFMOX, 2009 WL 10691336, at *2 (C.D. Cal. Dec. 7,
2009) ("[C]ourts should not grant discovery requests based on pure speculation that
amount to nothing more than a 'fishing expedition' into actions or past wrongdoing
not related to the alleged claims or defenses." (quoting *Collens v. City of New York*,
222 F.R.D. 249, 253 (S.D.N.Y. 2004)).  Nor would any such claim be viable, as
Apple's practices in these disparate circumstances cannot be compared to
Qualcomm's licensing and chipset sales practices, which are governing by FRAND
obligations and specific patent rules.  *See Impression Prod., Inc. v. Lexmark Int'l,
Inc.*, 137 S. Ct. 1523, 1532 (2017).

Apple's Non-Asserts With Other Parties (RFPs 33 and 140).  Apple has
already agreed to produce agreements concerning Apple's cellular and non-cellular
SEPs and cellular connectivity NEPs, as well as documents concerning Apple's

---

[4] Qualcomm claims that Requests 234, 235 and 238 are relevant because they
concern "previous interpretation by Apple and third parties of FRAND obligations."
None of these Requests mention or pertain to FRAND analysis; in fact, these
requests are not even related to patents. In any case, Apple has already agreed to
produce documents concerning FRAND.  *See* Request Nos. 41, 42, 51, 70.

[5] Qualcomm claims that Request 239 is relevant to the "value Apple places on
features of its cellular devices."  Despite multiple rounds of briefing on this issue,
Qualcomm has not offered a coherent explanation as to how the prices Apple
charges either consumers or application developers has any bearing on the value of
Qualcomm's SEPs.

cellular SEPs and cellular connectivity NEPs.

Qualcomm fails to explain its basis for requesting *all* documents concerning Apple's offers or agreements not to assert Apple patents against any counterparty, regardless of the technology at issue. These requests are plainly beyond the scope of reasonable discovery relevant to this action and would impose an undue burden on Apple. Confusingly, Qualcomm justifies its requests on the basis that it seeks to understand "[h]ow Apple and third parties have previously interpreted and applied FRAND obligations," but Apple has *already agreed* to produce all documents concerning FRAND, including Apple's interpretation of FRAND. *See* Request Nos. 41, 42, 51, 70. Qualcomm also claims that its requests are relevant to its unclean hands defense, but has no answer to Apple's previous citations to Ninth Circuit and within-circuit precedent explaining the unavailability of any unclean hands defense. *E.g.* ECF No. 197 at 21-22 (citing *Memorex Corp. v. Int'l Bus. Machines Corp.*, 555 F.2d 1379, 1381 (9th Cir. 1977) ("Unclean hands has not been recognized as a defense to an antitrust action for many years" (internal quotation and citation omitted)); *Broadcom Corp. v. Emulex Corp.*, No. CV1003963JVSANX, 2011 WL 13135066, at *2 (C.D. Cal. Aug. 1, 2011) (requiring a "direct nexus" between misconduct and claim).

As to Request 33, Apple had already separately agreed to produce settlement agreements involving Apple Cellular SEPs and cellular connectivity NEPs in response to Request 178. (ECF No. 197 at 124-25). As to Request 140, Apple has agreed to produce all responsive non-privileged agreements; Qualcomm's broader request for documents concerning those agreements should be denied. Apple is producing what is relevant and Qualcomm's remaining demands are overbroad and unduly burdensome. These Requests should be denied.

Relevant Corporate Ventures (RFPs 338-339). These requests, even with Qualcomm's proposed "sufficient to show" compromise, remain unjustified and overbroad. Request 338 is plainly overbroad on its face as it asks for documents

concerning mergers, similar transactions, and joint ventures having *any* impact "on
the Apple Cellular Device business."  Qualcomm cannot reasonably argue that *every*
transaction with *any* impact on Apple's cellular business is proportional and within
the scope of discovery in this case.  Request 339, which seeks documents
concerning *any* proposed or actual agreements with any other cellular device
manufacturer is similarly overbroad.

Further, Qualcomm fails to articulate any actual connection between these
Requests and the claims or defenses in this case.  As Apple has twice stated
previously—and Qualcomm for the third time fails to address:

> First, Apple's relationships with other companies might conceivably
> "impact its relationship with Qualcomm," in some sense, but that cannot
> justify sweeping discovery of "all documents" concerning any "mergers,
> acquisitions, joint ventures, and other strategic alliances." Second, there is
> no relationship between Apple's dealings with other companies in the
> Cellular Device business and Apple's allegations that Qualcomm
> possessed market power in the markets for CDMA and premium LTE
> baseband chipsets. Third, there is also no relationship between Apple's
> dealings with other companies and Qualcomm's refusal to enter into
> licensing agreements on fair, reasonable, and non-discriminatory terms.

(ECF 247 at 22; ECF 365 at 24.)  Qualcomm's justifications have not changed or
improved despite its awareness of Apple's objections since the December 22, 2017
motion.  For the same reasons, Qualcomm's requests should be denied.

Requests 65, 72, 221-222, 264, 266, 278.  In the initial version of this joint
motion served on Apple on April 9, Qualcomm offered no argument as to these
seven requests.  It therefore waived its demand for further discovery.  *See Volis v.*
*Kingsbury Condominiums Owners Assoc.*, No. CV 13-8792 CBM (SS), 2014 WL
12560792, at *1 n.1 (C.D. Cal. July 30, 2014) (insufficient response to discovery
request "was not raised in the moving papers and therefore is not properly before the
Court").  After Apple raised the waiver issue in its portion of the draft joint motion,
Qualcomm addressed these requests for the first time on the day of filing.  They are
substantially overbroad and not proportional to the needs of this case.  For example,
Requests 221, 222, 264, and 266 concern any allegations that Apple *or anyone else*

1   has made related to, among other things, unreasonable, illegal, or anticompetitive

2   contract terms, patent royalties, or licenses, or Apple charging or being charged a

3   "monopolistic premium."  Qualcomm cannot articulate any relevance for the

4   documents within the scope of these requests.

5         **B.**      **Breach of the Master Software Agreement (RFP 31)**

6         This dispute should be moot.  Apple has agreed to produce documents

7   concerning the negotiation and drafting of the MSA, and documents concerning

8   Section 5, Paragraph 5 of the MSA—the only provision Qualcomm claims Apple

9   breached.  (Request No. 31; FACC ¶¶ 42, 163).  During the parties' meet and

10  confers, Qualcomm argued that broader discovery was necessary due to Apple's

11  22nd affirmative defense (no breach) and Apple's 26th affirmative defense (excused

12  performance).  In an attempt to reach a compromise, Apple offered, with respect to

13  Qualcomm's Count XI for breach of the MSA, to (1) narrow its 22nd affirmative

14  defense to assert only that Apple did not breach Section 5, Paragraph 5 of the MSA,

15  or that any such breach was not material, and (2) withdraw its 26th affirmative

16  defense of excused performance.  That should have resolved this issue.  *See Sneller*

17  *v. City of Bainbridge Island*, 606 F.3d 636, 644 (9th Cir. 2010) (where claims are

18  withdrawn, there is "no need to conduct [] discovery" as to them).  But Qualcomm

19  countered with a new demand, that Apple stipulate that Qualcomm has performed

20  all material terms of the MSA.  And now Qualcomm is attempting to seek additional

21  discovery concerning *Apple*—discovery that in reality is a fishing expedition to aid

22  Qualcomm's case against Apple in San Diego Superior Court—on the grounds that

23  it needs discovery concerning *Qualcomm*'s potential breach of the MSA.  That

24  makes no sense.  Even taking Qualcomm's argument at face value, Qualcomm has

25  not shown why any additional discovery as to *Apple's* conduct concerning any part

26  of the MSA other than Section 5, Paragraph 5 is relevant or proportional to the

27  needs of the case.  Qualcomm's demand for additional discovery should be denied.

28

## C.    Advertising and Consumer Demand (RFPs 250, 283, 354, 356-358)

Apple has already agreed to produce documents that "drive demand for smartphones, or influence consumer choice of smartphones" from 2010 through the present.  Request No. 254.  Apple also will produce documents concerning analyses of customer demand for particular applications and documents concerning launch events, which necessarily includes documents and communications concerning which features to highlight in Apple's advertisements.  Request Nos. 250, 283.  In addition, Apple will produce documents concerning the value of any specific features or attributes in cellular devices to consumers.  Request No. 252.  These agreements should have resolved Requests 250 and 283, yet Qualcomm, without articulating why it needs *further* discovery, continues to push for more.

As to Requests 354, 356, and 357, Apple agreed to produce final marketing materials and advertisements for Apple cellular devices and non-cellular devices with cellular counterparts.  In addition, final advertisements are and have always been publicly available.  Qualcomm can easily identify the "features that either Apple values or believes its customers value" from these advertisements.  (Mot. at 8).  During the March 21 teleconference, the Court expressed its opinion that Apple's current agreements to produce sufficiently addressed Qualcomm's requests.  Yet Qualcomm still seeks "all documents concerning" whether to feature cellular-enabled functions in iPhone advertising and marketing.  Qualcomm has not articulated any basis for the relevance of Apple's communications regarding its marketing and advertising, or explained what additional informational value that broad sweep of documents would bring to the case.  As Qualcomm admits, "Apple's marketing and advertisements" themselves demonstrate the value Apple and consumers place on iPhone features.  (*Id.*).  No more is required.

Apple has also agreed to produce documents sufficient to show all amounts paid for the advertising and promotion of the iPhone since 2007.  Qualcomm wants more:  specifically, it seeks the amounts paid by Apple for *research* for the iPhone

and iPod since 2007.  Qualcomm has not defined or clarified the scope of the "research" identified in this request, which, without clarification, could include all monies spend on R&D.  Presumably, Qualcomm is focused on consumer research in Requests 357 and 358.  Even with that limitation, it is not logical to assume, as Qualcomm does, that the amount of money Apple spends on research has any relationship to the "values consumers ascribe to any given aspect of the whole Apple product."  (Mot. at 8).  Qualcomm argues that money spent on research is a direct input into the costs of each product, but Apple has already agreed to produce financials which detail the costs of such devices.

### D.   Handling of Source Code (RFPs 324, 325, and 359)

Apple has already agreed to produce to Qualcomm *all* source code for the baseband processors at issue in this case, including for both the Intel and Qualcomm processors.  Qualcomm is entitled to nothing else.  The Requests that Qualcomm presses go beyond that source code, and ask for information relating to ***how*** Apple handled the source code, information that is unrelated to any dispute before the Court, and is instead a fishing expedition for its state court action.[6]

Qualcomm argues that Apple's source code security measures and access/use of Qualcomm source code (in general (Request 325) and for Intel-related projects (Request 359)) are relevant to Apple's valuation of Qualcomm's technology.  Such information is not relevant to the value of Qualcomm's technology,[7] and Qualcomm offers no support from any Court that has ever looked to such information to value technology.  The aim of these requests is to determine who at Apple is accessing

---

[6] Qualcomm has brought a separate action pending in San Diego County Superior Court (Case No. 37-2017-00041389-CU-BC-NC) in which Qualcomm has alleged a breach of contract by Apple of certain confidentiality provisions of the agreement governing Apple's handling of Qualcomm's source code.

[7] For example, Qualcomm's Request 325 seeks "All Documents Concerning Apple's access to Qualcomm's source code since the filing of this Action."  The "use" Qualcomm refers to, the (e.g. the actual mechanics of accessing the code), has nothing to do with the value of Qualcomm's intellectual property at issue in this case, and Qualcomm provides only a conclusory statement in support.

1    Intel source code and material, something entirely irrelevant to the value of

2    Qualcomm source code.  This discovery is a backdoor attempt by Qualcomm to seek

3    discovery for a trade secret action without satisfying the specific requirements of

4    pleading such a case.

5          Qualcomm's attempt to justify these requests fails in light of the large number

6    of documents Apple has produced that are ***actually related*** to the valuation of

7    Qualcomm's technology, including, for example, in response to Qualcomm's

8    Request 271, which directly asked for Apple's valuation of Qualcomm's ***software***.

9    ("All Documents Concerning any calculation or analysis of the value of Qualcomm

10   software, . . . Qualcomm Baseband Processors . . ., or . . . non-operational

11   Qualcomm Baseband Processors[.]").[8]  Apple is producing non-privileged

12   documents concerning the valuation of Qualcomm's SEPs, Qualcomm's cellular

13   connectivity NEPs, and cellular functionality in mobile devices.

14         Qualcomm cannot credibly argue that it needs *additional* valuation

15   information based on source code security measures and/or source code use/access.

16   The relevance of such information to Apple's valuation of Qualcomm's technology,

17   especially relative to the voluminous and directly responsive valuation information

18   Apple has or is already producing, is miniscule at best.  Qualcomm's offer to accept

19   documents "sufficient to show" in response to these requests does not change the

20   fact that these requests are irrelevant and wholly inappropriate.  The appropriate

21   forum to address demands for such information is in that state court action, and the

---

22   [8] *See, e.g.,* Request Nos. 58 ("All Documents Concerning any valuation of any
23   Qualcomm Patents or subset of Patents in Qualcomm's Patent portfolio. . . ."), 74
     ("All Documents Concerning any analysis by Apple of Qualcomm intellectual
24   property, including . . . the Patents in Qualcomm's portfolio."), 211 ("All
     Documents Concerning any valuation of any patented technology operating in
25   Apple Cellular Devices."), 248 ("All Documents Concerning the value of mobile
     devices that can send and receive telephone calls, voice and video communications,
26   text messages, and Internet data when not connected to a Wi-Fi network. . . ."), 252
     ("All Documents Concerning any analysis of value or the portion of the revenues or
27   profits from Apple Cellular Devices that may be attributable to any specific
     technology, feature or functionality . . . ."), 319 ("All Documents Concerning any . .
28   . any asserted claim of any . . . Qualcomm Patents-in- Suit.").

1  Court should reject Qualcomm's attempts to seek it here.

DATED:  April 13, 2018          Respectfully submitted,


                                By     *s/ Joseph C. Sarles*


                                **CRAVATH, SWAINE & MOORE LLP**
                                Evan R. Chesler (*pro hac vice*)
                                (N.Y. Bar No. 1475722)
                                echesler@cravath.com
                                Keith R. Hummel (*pro hac vice*)
                                (N.Y. Bar No. 2430668)
                                khummel@cravath.com
                                Richard J. Stark (*pro hac vice*)
                                (N.Y. Bar No. 2472603)
                                rstark@cravath.com
                                Antony L. Ryan (*pro hac vice*)
                                (N.Y. Bar No. 2784817)
                                aryan@cravath.com
                                Gary A. Bornstein (*pro hac vice*)
                                (N.Y. Bar No. 2916815)
                                gbornstein@cravath.com
                                J. Wesley Earnhardt (*pro hac vice*)
                                (N.Y. Bar No. 4331609)
                                wearnhardt@cravath.com
                                Yonatan Even (*pro hac vice*)
                                (N.Y. Bar No. 4339651)
                                yeven@cravath.com
                                Vanessa A. Lavely (*pro hac vice*)
                                (N.Y. Bar No. 4867412)
                                vlavely@cravath.com
                                Worldwide Plaza, 825 Eighth Avenue
                                New York, New York 10019
                                Telephone:  (212) 474-1000
                                Facsimile:  (212) 474-3700

                                **QUINN EMANUEL URQUHART &
                                SULLIVAN, LLP**
                                David A. Nelson (*pro hac vice*)
                                (Ill. Bar No. 6209623)
                                davenelson@quinnemanuel.com
                                Stephen Swedlow (*pro hac vice*)
                                (Ill. Bar No. 6234550)

stephenswedlow@quinnemanuel.com
191 N. Wacker Dr., Suite 2700
Chicago, Illinois 60606
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401

Alexander Rudis (*pro hac vice*)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

**JONES DAY**
Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone:  (858) 314-1200
Facsimile:  (858) 345-3178

***Attorneys for Defendant and Counterclaim-Plaintiff***
**QUALCOMM INCORPORATED**

By:   *s/ Edward H. Takashima*

Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Phone:  858-678-5070 / Fax: 858-678-5099

Ruffin B. Cordell, DC Bar No. 445801,
*pro hac vice*, cordell@fr.com
Lauren A. Degnan, DC Bar No. 452421,
*pro hac vice*, degnan@fr.com
Fish & Richardson P.C.
The McPherson Building
901 15th Street, N.W., 7th Floor
Washington, D.C.  20005
Phone:  202-783-5070 / Fax:  202-783-2331

William A. Isaacson, DC Bar No. 414788,
*pro hac vice*, wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520,
*pro hac vice*, kdunn@bsfllp.com
Boies, Schiller & Flexner LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Phone: 202-237-2727 / Fax: 202-237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant
Apple Inc*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>FILER'S ATTESTATION</u>**

      Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court of the Southern District of California, I certify that authorization for the filing of this document has been obtained from the other signatory shown above and that said signatory has authorized placement of his electronic signature on this document.

Dated:  April 13, 2018

                    *<u>s/ Joseph C. Sarles</u>*             

                    Joseph C. Sarles

                    josephsarles@quinnemanuel.com

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that a true and correct copy of the above and foregoing

3 document has been served on April 13, 2018 to all counsel of record who are

4 deemed to have consented to electronic service via the Court's CM/ECF system.

5       Executed on April 13, 2018, at Los Angeles, California.

6

7                           *s/ Joseph C. Sarles* _____

                          Joseph C. Sarles

8                           josephsarles@quinnemanuel.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28