**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Juanita R. Brooks (SBN 75934) brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (619) 678-5070 / Fax: (619) 678-5099

Ruffin B. Cordell (DC Bar # 445801; Admitted *Pro Hac Vice*) cordell@fr.com
Lauren A. Degnan (DC Bar # 452421; Admitted *Pro Hac Vice*) degnan@fr.com
FISH & RICHARDSON P.C.
1425 K Street, N.W. 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070 / Facsimile: (202) 783-2331

William A. Isaacson (DC Bar # 414788; Admitted *Pro Hac Vice*) wisaacson@bsfllp.com
Karen L. Dunn (DC Bar No. 1002520; Admitted *Pro Hac Vice*) kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727 / Facsimile: (202) 237-6131
[*Additional counsel identified on signature page*]
*Attorneys for Plaintiff Apple Inc.*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| IN RE: QUALCOMM LITIGATION | No. 17-cv-0108-GPC-MDD |
|---|---|
| | [Consolidated with Case No. 3:17-CV-01010-GPC-MDD] |
| | **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING REQUESTS FOR PRODUCTION** |
| | **ORAL ARGUMENT REQUESTED** |

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## Introduction

Pursuant to the provisions of this Court's Civil Pretrial Procedures regarding discovery disputes, Apple Inc. ("Apple") and Qualcomm Inc. ("Qualcomm") submit this Joint Motion for Determination of Discovery Dispute concerning Qualcomm's Responses and Objections to Apple's Fourth and Fifth Sets of Requests for Production of Documents.  The texts of the Requests and Responses at issue in this Motion are attached as Exhibits A and B.

The parties will not be filing separate memoranda of points and authorities, and instead each provide their full position statements herein.  Supporting declarations regarding compliance with the Court's meet and confer requirements are being filed separately.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## I.   APPLE'S PORTION

Apple seeks the Court's assistance to obtain relevant, proportional discovery from Qualcomm concerning four related categories of documents:

- Documents concerning Broadcom's attempt to acquire Qualcomm in late 2017-early 2018, which likely contain relevant information such as assessments of the effect of Qualcomm's business practices on competition, and show Qualcomm's efforts to defend its anticompetitive business practices;

- Documents concerning Qualcomm's efforts to lobby the Committee on Foreign Investment in the United States (CFIUS) and other government regulators, which are also likely to contain relevant information and will illustrate Qualcomm's efforts to ward off any challenges to its current licensing business model—what the Federal Trade Commission has called Qualcomm's "no license-no chips" policy—which is at the core of Apple's antitrust claims;

- Documents concerning former Qualcomm Executive Chairman Dr. Paul Jacobs' bid to take Qualcomm private, which almost certainly contain analyses of Qualcomm's business model, patent licensing practices, and baseband chipset sales practices;

- Documents concerning Qualcomm's campaign to " ███████████████████████████████████████████████ " and to paint " ███████████████████████," which illustrate Qualcomm's retaliatory attacks on Apple, are relevant to rebut Qualcomm's attempts to cast doubt on the validity of Apple's allegations by arguing that Apple's conduct with respect to Qualcomm is the result of a coordinated plan, and which may also contain non-cumulative information relevant to the merits of the case.

## A.      Category 1:  Broadcom's Bid to Acquire Qualcomm

Requests 391-393, 412, and 424-429 relate to Broadcom's attempt to acquire Qualcomm, and Qualcomm's response to that acquisition attempt.  Qualcomm does not dispute that documents concerning Broadcom's attempt to acquire Qualcomm are relevant to this case.  Nor could it.  As part of its bid for Qualcomm, Broadcom publicly questioned Qualcomm's licensing model, with its Chief Executive Hock Tan stating in an interview that Qualcomm's business model in "this day and age, [is] not sustainable."  https://www.reuters.com/article/us-qualcomm-m-a-broadcom/broadcom-unveils-121-billion-best-and-final-offer-for-qualcomm-idUSKBN1FP1KX.  Qualcomm aggressively fought off Broadcom's efforts, including by secretly requesting an investigation of the prospective deal by the Committee on Foreign Investment in the United States (CFIUS).  https://www.law.com/international/sites/international/2018/04/18/how-lawyers-used-cfius-review-to-defeat-broadcoms-takeover-of-qualcomm-396-2801/.  That review led CFIUS to issue an interim order postponing Qualcomm's annual stockholders meeting (scheduled for March 6, 2018) for thirty days, prohibiting Qualcomm from accepting or taking any further action in furtherance of accepting Broadcom's proposed deal, and requiring Broadcom to provide notice to CFIUS before taking any action toward redomiciliation in the United States.  https://www.sec.gov/Archives/edgar/data/804328/000110465918014823/a18-7296_4ex99d1.htm.  President Trump subsequently issued an unprecedented executive order blocking the Broadcom deal noting that "[t]here is credible evidence that leads [him] to believe that Broadcom . . . through exercising control of Qualcomm . . . might take action that threatens to impair the national security of the United States."  https://www.whitehouse.gov/presidential-actions/presidential-order-regarding-proposed-takeover-qualcomm-incorporated-broadcom-limited/.  Apple needs discovery related to the Broadcom deal—and Qualcomm's intensive efforts to block that deal—to determine whether Qualcomm misrepresented the nature and

effects of its business practices, including its "no license, no chips" policy, to maintain those monopolistic and unfair business practices.  In light of Broadcom's statements about Qualcomm's business model—which is ultimately at the heart of this case—Qualcomm's documents, including both its internal analyses and external communications with Broadcom, investor groups, and other stakeholders, are highly likely to contain information relevant to this case, such as assessments of Qualcomm's business practices on competition.

Although Qualcomm has agreed to produce *some* documents in response to certain of these Requests—namely, selected documents received by Qualcomm's Board of Directors and Qualcomm's Hart-Scott-Rodino submission to the FTC—it has withheld other relevant documents.  It has not even committed to produce *all* documents concerning the deal received by Qualcomm's Board, much less internal analyses of the Broadcom acquisition or communications regarding the same.  And it has refused to produce documents concerning its outside public relations and government relations consultants involved in its efforts to repel Broadcom.[1]

Judge Cousins' decision in the Northern District is not dispositive here. Apple is a non-party in the N.D. Cal. actions and did not have an opportunity to pursue this discovery there.  (And even the FTC did not brief this issue—instead, it raised the issue in status reports and then at a discovery conference).  The disputed discovery concerns Qualcomm's business model, which is at the center of Apple's antitrust allegations.  Documents that reveal Qualcomm's active defense of its licensing model to Broadcom and shareholders in the face of a takeover attempt are directly relevant to Apple's claims, as they illustrate Qualcomm's efforts to defend its disputed business practices.  Further, as Qualcomm evaluated potential changes

---

[1] Apple has issued separate subpoenas to those consultants; at this point, they have refused to produce documents or witnesses for deposition.  Apple and Qualcomm have agreed to defer their dispute regarding that discovery pending the Court's ruling on the relevance issues presented in this motion.

to its organization and corporate strategy, it no doubt scrutinized the effects of its long-held—and anticompetitive—licensing and chipset sales practices.

The handful of documents Qualcomm produced in the Northern District, namely its Hart-Scott-Rodino filing and selected Board presentations, do not get at the documents most relevant to this matter. In particular, communications *between* Qualcomm executives in the face of Broadcom's bid are the most likely to contain unique analyses of Qualcomm's licensing model, including the candid views of Qualcomm's most senior employees on issues core to this case.

Discovery in this action has been far broader than that in the Northern District. Given that Apple and Qualcomm have produced millions of documents, this additional, highly relevant set of Broadcom-related documents will not impose a substantial burden on Qualcomm. Qualcomm has not articulated any substantial burden associated with searching the few necessary custodians it must search, within a limited timeframe, to produce these key documents.[2]

Moreover, the documents Apple seeks are not cumulative because they pertain to a different date range then the remainder of Qualcomm's productions. Qualcomm's existing productions included documents through October 2017 at latest, but Broadcom only announced its bid in November 2017. Compared the overall scope of discovery in this case, these Requests are modest and proportional to the needs of the case. Qualcomm should be compelled to conduct a reasonable search for all documents responsive to these Requests and to produce all non-privileged responsive documents.

**B.      Category 2:  CFIUS and Other Government Agencies/Regulators**

Requests 394-400, 412, and 424-429 relate to Qualcomm's efforts to lobby the Trump administration, CFIUS and its member agencies, the Federal

---

[2] In order to further limit any purported burden on Qualcomm, Apple would be willing to limit the scope of these RFPs to a modest number of key custodians and non-custodial sources.

1   Communication s Commission, and the U.S. Congress regarding Broadcom's bid

2   for Qualcomm, the emerging 5G cellular standard, Qualcomm's purported

3   leadership in technological development and standard-setting, and Qualcomm's

4   business model, patent licensing, and chipset sales practices.3

5          These documents are relevant to Qualcomm's unprecedented efforts to fend

6   off Broadcom's attempts to acquire Qualcomm—an acquisition that, as noted above,

7   likely would have meant the end of Qualcomm's disputed business model.  Apple

8   needs discovery into Qualcomm's lobbying efforts to assess what was ultimately a

9   major effort by Qualcomm to defend and preserve its current business model, which

10  is at the heart of this case.  For example, the requested documents may show that

11  Qualcomm's representations to key government decision-makers were inaccurate or

12  incomplete, which would be relevant to show the efforts Qualcomm was willing to

13  go to in order to maintain its anticompetitive practices.  Second, Qualcomm's claims

14  to the government regarding 5G and Qualcomm's supposed technological leadership

15  are particularly relevant, as they likely highlight Qualcomm's intent to extend its

16  monopolistic practices into the next generation of cellular SEPs and baseband

17  chipsets.  Third, to the extent Qualcomm cites any statements or actions by CFIUS

18  or the President at trial—such as statements by CFIUS describing Qualcomm as "the

19  current leading company in 5G technology development and standard setting"

20  (https://www.sec.gov/Archives/edgar/data/804328/000110465918015036/a18-

21  7296_7ex99d1.htm#Exhibit99_1_081114)—Apple should be permitted to show that

22  those statements were the result of lobbying by Qualcomm.  Finally, the documents

23  sought by these RFPs may also contain relevant information about Qualcomm's

24  _____

25  3

26  ████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████

28  ████████████████████████████████████

1   business model—including more recent documents regarding Qualcomm's "no

2   license, no chips" policy and its plans to extend that policy into the future—that

3   would otherwise not be produced in discovery.

4        Qualcomm has not offered any concrete details to substantiate its claim that

5   these Requests are overbroad and burdensome.  Moreover, these Requests by their

6   nature only seek documents within the relatively narrow timeframe between

7   November 2016 and the present, and likely only involve a small number of

8   custodians.[4]  Compared to the overall scope of discovery in this case, these Requests

9   are modest and proportional to the needs of the case.  Qualcomm should be

10  compelled to conduct a reasonable search for all documents responsive to these

11  Requests and to produce all non-privileged responsive documents.

12       **C.     Category 3:  Dr. Paul Jacobs's Bid to Take Qualcomm Private**

13       Request 401 relates to former Qualcomm Executive Chairman Paul Jacobs'

14  bid to take Qualcomm private, with the aid of other investors including former

15  Qualcomm President Derek Aberle.  *See*

16  http://www.sandiegouniontribune.com/business/technology/sd-fi-jacobs-xcom-

17  20180606-story.html.

18       Because Qualcomm's business model, including the "no license, no chips"

19  policy at the heart of the antitrust claims asserted by Apple and the CMs, is the

20  focus of several lawsuits and enforcement actions, and was an issue in Broadcom's

21  proposed acquisition of Qualcomm, it is all but certain that discussions regarding

22  Dr. Jacobs' proposed bid for the company would include analyses of Qualcomm's

23  business model, patent licensing practices, and baseband chipset sales practices.  It

24  is also likely that those discussions would address the value of Qualcomm's patents,

25  another disputed issue in this case.  Those documents—particularly the documents

26

27       [4] Apple is willing to narrow Qualcomm's obligation to search for these relevant

28  documents to a small number of custodians and non-custodial sources.

1  authored by Dr. Jacobs—are highly relevant to the core issues in this case.[5]

2          This Request is not cumulative of other discovery that has already taken

3  place.  Although Qualcomm has produced other documents from Dr. Jacobs'

4  custodial files, it has not produced documents from the time period when Dr. Jacobs

5  was developing or discussing his bid for the company.  Moreover, the context for

6  these documents is key:  Qualcomm's chairman—who has reportedly been working

7  together with Qualcomm's former president—was developing and discussing an

8  independent bid for control of the company.  In that setting, Dr. Jacobs would, for

9  example, have been in a new position to critique Qualcomm's business model

10  without being constrained by his position at the head of Qualcomm's senior

11  management.  Even if Dr. Jacobs defended Qualcomm's existing business model,

12  his evaluation of that business model may well have shifted based on his new

13  perspective as an outside bidder for control of the company.  Other documents

14  related to Dr. Jacobs' bid, concerning issues such as the value of Qualcomm's

15  patents, are likely to similarly contain relevant information that differs from what

16  has already been produced in discovery.

17          Qualcomm has not offered any concrete details to substantiate its claim that

18  this Request is overbroad and burdensome.  Moreover, this Request by its nature is

19  limited to the timeframe between when Dr. Jacobs began developing and discussing

20  a bid for control of Qualcomm (which became public in March 2018) and the

21  present, and likely involves only a small number of custodians.[6]  Compared to the

22  overall scope of discovery in this case, this Request is modest and proportional to

23

24          [5] Apple has separately subpoenaed Dr. Jacobs for documents and testimony.
     Based on Dr. Jacobs' counsel's representation that Qualcomm has collected all
25  documents other than those Dr. Jacobs created after leaving the company, Apple is
     seeking from Qualcomm (a) Dr. Jacobs' documents that predate Dr. Jacobs'
26  departure and (b) later documents from other custodians concerning Dr. Jacobs' bid
     for the company.

27          [6] Apple is willing to narrow Qualcomm's obligation to search for these relevant
28  documents to a small number of custodians and non-custodial sources.

the needs of the case.  Qualcomm should be compelled to conduct a reasonable search for all documents responsive to this Request and to produce all non-privileged responsive documents.

**D.     Category 4:  Qualcomm's Government Affairs and Public Affairs Campaign**

Requests 424-429 are relevant, in addition to the issues in sections A and B above, to Qualcomm's coordinated campaign to " ██████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████." (Takashima Decl., Ex. B, QAPPCMSD02956342 at -60 (emphasis added)).  As Qualcomm's Vice President of Public Affairs Christine Trimble[7] described the campaign, ████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ █████████████████████████████████ (*Id.*). Moreover, Ms. Trimble developed, together with Qualcomm's public affairs consultants, " ███████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ █████████████████████ " (Takashima Decl., Ex. C, QNDCAL04116506 at -07).  Requests 424-429 seek documents concerning the work of three major public relations and government relations firms retained by Qualcomm:  Teneo, Burson-Marsteller, and

---

[7] Apple requested Ms. Trimble's deposition during the fact discovery period; Qualcomm refused to produce her for a deposition.  That dispute is being briefed separately as ECF 521.

Rock Creek Advisors.  Qualcomm has refused to produce any documents regarding those firms or their engagement by Qualcomm.[8]

These Requests seek relevant, non-cumulative discovery.[9]  First, Qualcomm's anti-Apple campaign illustrates Qualcomm's retaliatory attacks against one of the few companies willing to challenge its anticompetitive business practices. Qualcomm contends that what is at issue is merely a "media plan to respond to Apple's inflammatory accusations," but Ms. Trimble's description makes it clear that Qualcomm's campaign has gone far beyond that, attempting to "███████████ ████████████████████████████████████████████████████████████," and "█████████████████████████████████████." (Ex. B at -60 (emphasis added)).

Second, to the extent Qualcomm has engaged in an effort to paint *Apple* as a monopolist in the eyes of the "███████████████████████████████████ ███████  Apple is entitled to explore whether Qualcomm is a monopolist even by its own criteria.  (*Id.*)

Third, in numerous filings before this Court and in the Northern District, Qualcomm has accused Apple of enacting a "business plan, years in the making, to destroy Qualcomm's business and devalue its patents."  Jt. Mot. on Clawbacks, ECF 455 (lodged for *in camera* review) at 2; *FTC v. Qualcomm, Inc.*, No. 17-220, ECF 745-3 at 2 (There is "a broad effort by Apple and others to coordinate their attacks on Qualcomm to further their respective business interests.").  Qualcomm clearly intends to present this theory to the jury at trial.  Apple is entitled to show the finder

---

[8] Apple and Qualcomm have agreed that their disputes regarding subpoenas Apple served on those firms, and other Qualcomm public relations, government relations, and marketing firms, will be guided by the Court's resolution of this motion.

[9] Qualcomm claims that is has "already produced documents relating to these requests," but in its discovery responses has indicated that it is withholding all responsive documents.  In any case, Qualcomm has not claimed that it has produced *all* responsive documents located after a reasonable search, or even specified what subset of responsive documents it has produced.

1   of fact that Qualcomm has engaged in similar coordinated conduct—engaging the

2   services of public and government relations firms to disparage Apple's reputation

3   among consumers and others, and to harm Apple's business interests.  Put

4   differently, to the extent Qualcomm attempts to cast doubt on the validity of Apple's

5   allegations by showing that Apple's conduct with respect to Qualcomm is the result

6   of a coordinated plan, Apple should be permitted to show that Qualcomm has

7   prepared and carried out a plan to █████████████████████████████████████████

8   ████████████████████████████ (Ex. B at -60).

9        Qualcomm cannot dispute the relevance of these documents.  It included a

10  handful of documents involving Teneo on its privilege log, describing these

11  communications as being relevant to "QC business plans," "litigation issues,"

12  "licensing plan[s]," "government investigation[s]," and "investor relations."  After

13  Apple challenged several of Qualcomm's privilege claims associated with the

14  upcoming deposition of Qualcomm General Counsel Don Rosenberg, Qualcomm

15  downgraded and produced some documents concerning Teneo.  These documents

16  are related to the core issues in this case and highlight the importance of a complete

17  production related to Qualcomm's public and government relations firms.[10]  For

18  example, one such document, which maps out Qualcomm's effort to cultivate

19  favorable press coverage, indicates that then-Qualcomm President Derek Aberle will

20  ████████████████████████████████████████████████████

21  █████████████████████████████████████████████████████████

22  █████████████████████████████████████████████████████████

23  ██████████████████████████ (Takashima Decl., Ex. D, Log Entry No. 107639.1

24  (Revised), at pg. 11 (Emphasis added)).  The document also indicates that part of

25  "████████████████████████████████████████████

26  

27  _____

[10] Apple is willing to narrow Qualcomm's obligation to search for these relevant

28  documents to a small number of custodians and non-custodial sources.

1  █████████" (*Id.* at pg. 5). Qualcomm should be compelled to conduct a
2  reasonable search for all documents responsive to these Requests and to produce all
3  non-privileged responsive documents.

## II.   **QUALCOMM'S POSITION**

Apple's Motion seeking to compel Qualcomm to produce four broad categories of documents should be denied.  In total, Qualcomm has produced more than 36 million pages of documents, and fact discovery closed on May 31.  But Apple is still demanding more.

Apple contends that the additional discovery it seeks is "modest".  That is plainly not true.  For example, Apple seeks "All Documents Relating to the Proposed Broadcom Acquisition of Qualcomm."  (Ex. A at 36, RFP No. 391.)  This overly broad request is nothing more than a fishing expedition relating to a failed hostile takeover.  Apple's Request No. 399—which purportedly relates to Qualcomm's response to the attempted acquisition by Broadcom—is also illustrative of Apple's shotgun approach to the document requests at issue:

> "All Documents Relating to any Communications between Qualcomm (either directly, or indirectly through any of its agents or consultants) and (i) CFIUS, (ii) the Department of the Treasury, (iii) the Department of Justice, (iv) the Department of Homeland Security, (v) the Department of Commerce, (vi) the Department of Defense, (vii) the Department of State, (viii) the Department of Energy, (ix) the Office of the U.S. Trade Representative, (x) the Office of Science and Technology Policy, (xi) the Office of Management and Budget, (xii) the Council of Economic Advisors, (xiii) the National Security Council, (xiv) the National Economic Council, (xv) the Homeland Security Council, (xvi) the Director of National Intelligence, (xvii) the Department of Labor, (xviii) the President of the United States, (xix) the Executive Office of the President, or (xx) the United States Congress, any of its committees, or any of its members Regarding (a) Proposed Broadcom Acquisition of Qualcomm; (b) 5G; (c) Qualcomm's leadership in technology and standard setting; (d) Qualcomm's research and development efforts related to 5G; (e) Qualcomm's business model; (f) Qualcomm's patent licensing practices; (g) Qualcomm's baseband chipset sales practices; (h) this Action or the allegations against Qualcomm in this Action; (i) the N.D. Cal. Actions or the allegations against Qualcomm in those Actions."  (Ex. A at 41, RFP No. 399.)

Further, Apple's requested discovery is not proportional to the needs of the case, particularly in light of the millions of documents that Qualcomm already has produced.  As to the vast majority of the disputed requests, Apple offers the same justification—that it needs discovery regarding Qualcomm's business model, including what Apple refers to as the "no license, no chip" policy.  But Qualcomm

has produced extensive discovery regarding its business model and practices from numerous sources, including in response to Apple's RFP Nos. 5, 9, 72, 92, 93, 115, 164 and 232, and the CMs' RFP Nos. 5, 9, 72, 92, 93, 115, 164, 224, 310, 312, 313, 314 and 327.  Third parties have provided extensive discovery relating to Qualcomm's licensing and chipset practices.  Indeed, it is hard to imagine a topic that has been the subject of *more* discovery in this Action. Questions about Qualcomm's business model and practices have been raised in most, if not all, depositions of current and former Qualcomm employees.  Notably, in denying the FTC's request for additional discovery from Qualcomm regarding the attempted Broadcom acquisition (which was even narrower than the requests Apple is pursuing here), the court in *FTC v. Qualcomm*, No. 17-cv-220-LHK (the "N.D. Cal. Action") found that this is "***a speculative fishing expedition***, one that is not worth the collective burden with the speculative benefit that could come from it when we already have lots of discovery from the parties, as well as third parties, that goes to the very core of the allegations in these cases."  (Ex. 3, No. 17-cv-220-LHK, May 4, 2018 Hr'g Tr. at 16:9-14 (Cousins, M.J.) (emphasis added).)  That reasoning applies with equal force to each of Apple's requests at issue here.  Apple's attempt to distinguish the N.D. Cal. ruling falls flat.

Fact discovery must come to an end.  Apple has not identified any holes in Qualcomm's productions that justify its overbroad requests, nor are Apple's demands proportional to the needs of this case.  Qualcomm respectfully requests that the Court deny Apple's Motion.

### A.    Category 1:  Broadcom's Bid To Acquire Qualcomm

Apple's requested discovery concerning Broadcom's attempt to acquire Qualcomm (RFP Nos. 391-393, 412 and 424-429) should be denied.  Qualcomm already has produced numerous documents relating to Broadcom's bid.  The FTC sought additional Broadcom-related discovery from Qualcomm in the N.D. Cal.

Action—for the *exact same reasons* that Apple is seeking additional discovery here—and the court denied the request.

In an effort to accommodate the FTC's and Apple's requests relating to the Broadcom bid, Qualcomm voluntarily produced certain categories of topics:

- Qualcomm's submission to the FTC pursuant to the Hart-Scott-Rodino Antitrust Improvements Act ("HSR") concerning Broadcom's proposed acquisition of Qualcomm;

- Documents received by Qualcomm's Board that reflect assessments of the possible financial impacts of changes to Qualcomm's business that may have resulted from Broadcom's acquisition of Qualcomm; and

- A management presentation relating to the Broadcom acquisition that did not go to the Board.

Apple concedes that it already has documents demonstrating Qualcomm's own analysis and consideration of Broadcom's takeover. But it demands *all* documents relating to this topic—from Qualcomm and various third-party consultants with which Qualcomm has worked.[11] Apple suggests that additional Broadcom-related documents will "necessarily contain unique analysis of Qualcomm's licensing model" and that Qualcomm may have misrepresented the nature and effects of its business practices in responding to Broadcom's bid. Such rank speculation cannot be the basis for a document request. Apple further argues that it needs more Broadcom discovery on the theory that, in response to the takeover attempt, Qualcomm must have "evaluated potential changes to its organization and corporate strategy" and "scrutinized the effects of its long-held—and anticompetitive—licensing and chipset sales practices". Apple's theory is belied by its own allegations in this Action. Indeed, in its Complaint, Apple

---

[11] *See, e.g.*, RFP No. 424 ("All Documents Concerning Qualcomm's engagement (either directly or indirectly) of Teneo."); RFP No. 425 ("All Documents Concerning Teneo's work on behalf of or related to Qualcomm.").

1   repeatedly refers to regulatory investigations of Qualcomm's business practices

2   (which Apple itself incited and encouraged).  Qualcomm has produced extensive

3   discovery regarding those investigations, including millions of documents that

4   pertain to Qualcomm's "licensing and chipset practices".  (*See* Ex. 1, Sept. 25, 2017

5   QC Ltr. to Apple at 10-11 (detailing Qualcomm's document productions related to

6   investigations by competition agencies, including investigations by the KFTC, EC,

7   NDRC, TFTC, JFTC and FTC).)  Apple is thus well aware that there is nothing

8   "unique" about the additional documents it now seeks.  Finally, Apple argues that its

9   requests are reasonable because, relative to other discovery requests in this Action,

10  the time period is "narrow" (November 2017 through March 2018).  Yet given what

11  was at stake—the ownership of Qualcomm—there necessarily was extensive

12  communication regarding the proposed acquisition.  The burden of collecting,

13  reviewing and producing such documents, even for a few custodians, far outweighs

14  the marginal relevance, if any, to this case, particularly given the extent of discovery

15  Qualcomm already has provided regarding its business model and practices.

16      The court's rejection of the FTC's request for Broadcom-related discovery in

17  the N.D. Cal. Action provides useful guidance here.  During a hearing before Judge

18  Cousins, the FTC presented the exact same arguments that Apple raises in this

19  Motion relating to Broadcom, including that (i) this discovery may concern

20  Qualcomm's assessment of its business model and practices (including the so-called

21  "no license, no chip" policy), and (ii) the request is temporally limited.  In fact, the

22  FTC's request was far narrower than Apple's requests at issue here.[12]  But Judge

23  Cousins nevertheless denied the FTC's request, finding that:

24  _____

25  [12] The FTC sought "All documents relating to [Broadcom's bid] (a) that were
    created, sent, or received by or for (1) Qualcomm's Board of Directors or any
26  committee or member thereof, or (2) any Qualcomm Senior Executive; (b) reflecting
    Qualcomm's valuation of its own business, individual business units, or intellectual
27  property, including Patents; or (c) reflecting analysis of the financial impact of any
    changes in business strategy (including in Licensing practices) that might be
28  implemented post-acquisition."  (Plaintiff Federal Trade Commission's Second Set

1    • "Qualcomm made reasonable compromises in producing" the above-
2        listed categories of Broadcom-related documents.
3    • "[T]o the extent there's relevant information from the proposed
4        transaction, those materials [that Qualcomm already has produced]
5        should capture it."
6    • "The marginal utility of additional discovery of management chitchat,
7        emails, communications surrounding the transaction, I find not to be
8        proportional to the need of the case."
9    • "[W]hile it's theoretically possible that if we looked at all the
10       communications, we'd find something that would relate to this case, I
11       find that to be a -- a speculative fishing expedition, one that is not
12       worth the collective burden with the speculative benefit that could
13       come from it when we already have lots of discovery from the parties,
14       as well as third parties, that goes to the very core of the allegations in
15       these cases."[13]

16       The same reasoning should apply here.  Apple's attempts to distinguish the

17   N.D. Cal. ruling are unpersuasive.  *First*, during the parties' meet and confer,

18   Apple's only explanation for why the N.D. Cal. ruling should not be followed is that

19   the FTC supposedly did not "tee this up well".  (Carlson Decl. ¶ 8.)  But the FTC

20   raised all of the arguments that Apple has raised here.  *Second*, Apple suggests that

21   Judge Cousins's decision should be ignored because the FTC supposedly did not

22   have an opportunity to brief the issues to the court.  To the contrary, the FTC argued

23   for the production of Broadcom-related documents in two court filings and

24   explained its positions further during oral argument before Judge Cousins.

25
   _____
26   of Requests for Production to Qualcomm Incorporated, Request for Production
     No. 1.)
27       [13] Ex. 3, No. 17-cv-220-LHK, May 4, 2018 Hr'g Tr. at 15:19-25, 16:6-14
     (Cousins, M.J.).
28

1   (*See* Ex. 3, No. 17-cv-220-LHK, May 4, 2018 Hr'g Tr. (Cousins, M.J.).)  As

2   summarized above, the court was well aware of the FTC's positions; it simply

3   rejected them.  *Third*, Apple argues that "Qualcomm's business model" is "at the

4   center of Apple's antitrust allegations".  But of course Qualcomm's business model

5   is also "at the center" of the N.D. Cal. Action.  For purposes of Apple's Broadcom-

6   related requests, there are no relevant differences between the allegations in the

7   N.D. Cal. Action and this Action.  Apple does not seriously state otherwise.  *Fourth*,

8   Apple claims that it is entitled to know the "candid views of Qualcomm's most

9   senior employees" regarding the attempted Broadcom acquisition.  That exact

10  argument was raised and rejected in the N.D. Cal. Action.  The Board materials that

11  Qualcomm produced reflect the conclusions reached by Qualcomm's management

12  regarding the Broadcom transaction.  Emails showing "management chitchat" (as

13  Judge Cousins described it) leading up to the Board decisions are of "marginal

14  utility" and are not proportional to the needs of this case.  (*See* Ex. 3, No. 17-cv-

15  220-LHK, May 4, 2018 Hr'g Tr. at 15:23-25 (Cousins, M.J.).)  Further, Qualcomm

16  conducted a custodial collection in connection with its HSR production for the

17  Broadcom transaction, which Qualcomm produced here.  (Carlson Decl. ¶ 9.)

18      Apple cannot distinguish the N.D. Cal. court's decision, much less justify

19  seeking *broader* Broadcom-related discovery from Qualcomm.  Apple's requests

20  should be denied.[14]

21      **B.    Category 2:  CFIUS and Other Government Agencies/Regulators**

22      The Category 1 and Category 2 requests are closely related—they both

23  concern Qualcomm's "efforts to fend off Broadcom's attempts to acquire

24

25

26  [14] Apple has subpoenaed various third parties seeking documents concerning
    Broadcom's bid.  Apple agreed to defer its disputes with those third parties pending

27  the Court's ruling on the issue presented here.  If the Court denies Apple's requests
    as to Qualcomm, that decision likely will govern, or at least provide guidance to

28  Apple, Qualcomm, and the third parties, regarding the open discovery disputes.

1   Qualcomm".[15]   Accordingly, the Category 2 requests (RFP Nos. 394-400, 412 and
2   424-429) should be denied for all of the reasons addressed above in Section II.A,
3   including the reasons set forth by Judge Cousins in rejecting the FTC's related
4   request.

5       But the Category 2 requests go even further.  Apple seeks documents
6   concerning not only Qualcomm's interactions with CFIUS relating to Broadcom's
7   attempted takeover, but also Qualcomm's and third parties' interactions with
8   numerous other agencies.  Apple's requests are breathtakingly overbroad and seek
9   discovery that is not relevant or proportional to the needs of this case.  For example,
10  in the last month of discovery, Apple issued requests seeking "All Documents
11  Relating to *any Communications* between Qualcomm (either directly, or indirectly
12  through any of its agents or consultants)" and *20 different government agencies*
13  regarding *nine broad topics* that cover Qualcomm's entire business for more than a
14  *30-year period*.  (Ex. A at 41-43, RFP Nos. 399, 400.)

15      Apple tries to justify this sweeping demand by arguing that "the requested
16  documents may show that Qualcomm's representations to key government decision-
17  makers were inaccurate or incomplete" and that "Qualcomm's claims to the
18  government regarding 5G . . . likely highlight Qualcomm's intent to extend its
19  monopolistic practices into the next generation of cellular SEPs and baseband
20  chipsets".  Again, such unfounded accusations cannot be the basis for discovery.
21  This is an even more extreme example of the type of "speculative fishing
22  expedition" that Judge Cousins rejected.  Further, Apple fails to mention that
23  Qualcomm already has provided substantial discovery related to its 5G efforts,
24  including custodial and non-custodial productions, interrogatory responses, and
25  deposition testimony.

26  _____

27      [15] Apple's characterization of Qualcomm's responses to the Broadcom bid are
    incorrect and misleading.  Because those characterizations generally are not relevant
28  to this Motion, Qualcomm does not address them here but reserves all rights.

1    Apple also argues that Qualcomm's communications with government

2    entities may contain relevant information about Qualcomm's business model.  As

3    explained above, Qualcomm already has produced millions of documents about its

4    business model.  In addition, Qualcomm has produced extensive discovery

5    regarding its interactions with regulators around the world, including documents

6    concerning the various regulatory investigations of Qualcomm's business model.

7    Courts should "limit the frequency or extent of discovery" where—as here—it is

8    "unreasonably cumulative or duplicative".  Fed. R. Civ. P. 26(b)(2)(C).

9    Policy considerations also weigh heavily in favor of denying Apple's

10   Category 2 requests.  CFIUS is an inter-agency committee authorized to review

11   transactions that could result in control of a U.S. business by a foreign person to

12   determine the effect of such transactions on national security.  Exercising that

13   authority, CFIUS conducted an independent investigation of Broadcom's attempted

14   hostile takeover.  On March 4, 2018, CFIUS issued an Interim Order, signed by U.S.

15   Treasury Secretary Steven Mnuchin, which prohibited Qualcomm from accepting

16   any offer from Broadcom while the Order was in effect.  (Ex. 4, March 4, 2018

17   Interim Order Regarding the Proposed Acquisition of Qualcomm, Inc. by Broadcom

18   Limited.)  On March 5, 2018, CFIUS wrote to counsel for Qualcomm and

19   Broadcom to explain the Interim Order.  (Ex. 2, Mar. 5, 2018 CFIUS Ltr.)  CFIUS

20   found that Broadcom's acquisition of Qualcomm "could pose a risk to the national

21   security of the United States".  (*Id.* at 1.)  CFIUS stated that "[r]eduction in

22   Qualcomm's long-term technological competitiveness and influence in standard

23   setting would significantly impact U.S. national security".  (*Id.* at 2.)  CFIUS further

24   stated that "[a]rticulation of the potential national security concerns, in significant

25   part, *is classified*".  (*Id.*)  Apple has not demonstrated any need for this information.

26   Further, if Apple's request were granted, it could stifle full disclosure to CFIUS for

27

28

1  future transactions, thus interfering with CFIUS's ability to perform its important

2  role in protecting national security interests.[16]

3      **C.     Category 3:  Dr. Paul Jacobs's Bid To Take Qualcomm Private**

4          Apple's requests for documents concerning Dr. Paul Jacobs's proposed

5  acquisition of Qualcomm (RFP No. 401) should be denied because (i) Qualcomm

6  already has produced thousands of custodial documents for Dr. Jacobs,

7  (ii) documents prepared by Dr. Jacobs regarding his proposed bid to take the

8  company private are not in Qualcomm's possession, and (iii) documents from *other*

9  custodians regarding Dr. Jacobs's bid are not relevant and are not proportional to the

10  needs of the case.

11          Qualcomm has produced more than 189,000 documents from Dr. Jacobs's

12  custodial files.  (Carlson Decl. ¶ 11.)  Given Dr. Jacobs's nearly 30-year tenure at

13  Qualcomm and the range of positions he held—from development engineer to CEO

14  to Chairman of the Board, his documents address all of the core issues in this case.

15  Without question, Qualcomm has produced countless documents from Dr. Jacobs's

16  files that concern Qualcomm's business model, patent licensing practices, baseband

17  chipset sales practices, and the value of Qualcomm's patents—the issues on which

18  Apple claims it needs further discovery from Dr. Jacobs.

19          Apple argues that this request is not cumulative because it is entitled to know

20  Dr. Jacobs's views regarding Qualcomm's business model and practices when

21  Dr. Jacobs was supposedly no longer "constrained by his position at the head of

22  Qualcomm's senior management".  Views expressed by Dr. Jacobs after he left

23  Qualcomm necessarily are not in Qualcomm's possession, so Apple's request

24

25  [16] Apple contends that it is entitled to know if Qualcomm had interactions with
    CFIUS.  But that is not in dispute.  Indeed, the March 5, 2018 letter from CFIUS
26  states that it considered information submitted by Qualcomm in the January 29,
    2018 initial notice, as well as information provided by Qualcomm *and Broadcom* in
27  response to questions from CFIUS and in meetings, calls, and emails.  CFIUS
    reached a conclusion based on its independent assessment of the information
28  provided.

1  should be denied on that basis.  Apple is separately moving to compel these

2  documents directly from Dr. Jacobs.  While the relevant dispute is thus between

3  Apple and Dr. Jacobs, Qualcomm submits that additional discovery from

4  Dr. Jacobs, whether obtained directly or indirectly, is inappropriate given the limited

5  relevance, if any, of the documents sought and Dr. Jacobs's role as a non-party.

6       Apple has no reasonable explanation why it needs documents from *other*

7  custodians specifically relating to Dr. Jacobs's reported plans to try to take the

8  company private.  Apple speculates that because Qualcomm's business model "was

9  an issue in Broadcom's proposed acquisition of Qualcomm, it is all but certain that

10  discussions regarding Dr. Jacobs' proposed bid for the company would include

11  analyses of Qualcomm's business model, patent licensing practices, and baseband

12  chipset sales practices . . . [and] likely that those discussions would address the

13  value of Qualcomm's patents."  Even assuming Apple's assumption were true, so

14  what?  The vast majority of discovery in this Action has concerned these issues.

15  Apple has not demonstrated why it needs more.  Apple's connection between

16  Broadcom's bid and Dr. Jacobs's bid only highlights this point.  Qualcomm already

17  produced materials that demonstrate the company's considerations with respect to

18  the Broadcom bid.  There's no reason to believe that Qualcomm's position on its

19  own practices changed dramatically in a matter of weeks.  The mere fact that an

20  event generates public attention (such as Dr. Jacobs's bid) does not render it relevant

21  to this Action.  And even if it were marginally relevant, that is far outweighed by the

22  burden of producing more documents on these topics.

23       **D.    Category 4:  Qualcomm's Public Affairs Activities**

24       Apple's request for documents concerning Qualcomm's engagement of and

25  communications with certain government relations and public affairs firms (RFP

26  Nos. 424-429) should be denied for several reasons.  Qualcomm already has

27  produced documents and offered deposition testimony relating to these topics;

28  Apple's purported reasons for seeking these additional documents are unpersuasive;

1  and Apple cannot identify any claim or defense in this Action to which these

2  requests purportedly relate.

3      As an initial matter, Qualcomm already has produced documents relating to

4  these requests, as evidenced by Apple's use of such documents in this Motion.  In

5  fact, Qualcomm has produced nearly 50,000 documents relating to government

6  relations and public affairs.  (Carlson Decl. ¶ 10.)  A number of Qualcomm's

7  89 custodians are involved in Qualcomm's "messaging" strategies, and Apple issued

8  many broad requests (to which Qualcomm agreed) that concern Qualcomm's

9  marketing and other government and public affairs activities.[17]  Not surprisingly,

10  Qualcomm produced numerous emails to/from its government affairs and public

11  relations groups.  Contrary to Apple's assertion that it has only a "sliver of

12  information" about Qualcomm's communications with consulting firms such as

13  Teneo, Qualcomm has produced thousands of documents sent to/from Teneo or

14  discussing Teneo's work for Qualcomm.[18]

15      Apple cannot justify further discovery on these topics based on Qualcomm's

16  engagement of public relations consultants to fend off Apple's unfounded public

17  attacks on its business model.  Apple's explanation turns the facts on their head.

18  Apple has made a series of baseless accusations about Qualcomm's business model

19  and practices in its complaint.  For example, Apple alleged that Qualcomm collects

20  "tribute[s]" on Apple's innovations; that Qualcomm tried to "extort" Apple into

21  providing "false information" to a regulatory body; and that Qualcomm charges

22  "exorbitant royalties".  (Am. Compl. ¶¶ 1-11.)  As Apple presumably intended, its

23  allegations generated significant press coverage.  Naturally, Qualcomm responded.

24  Indeed, the documents Apple cites in its Motion are dated *after* Apple filed its

25
26      [17] *See, e.g.*, Qualcomm's Responses to Apple's RFP Nos. 45, 56, 252, 316-318,
    378-384; Qualcomm's Responses to CMs' RFP Nos. 45, 56, 315, 404-406.

27      [18] Apple's breathless citation to a document recently produced off Qualcomm's
    privilege log just proves the point—Apple has already received substantial
28  discovery related to Qualcomm's media affairs.

1    complaint on January 20, 2017.  In fact, one of the documents cited by Apple states

2    that "███████████████████████████████████████████

3    ████████████████████████".  (Ex. B, QAPPCMSD02956342 (Revised) at -6360.)

4    Another document cited by Apple describes a media interview as a chance to

5    "███████████████████████████████████████████████

6    ██████████████████████████████████".  (Ex. D, Entry No.

7    107639.1 (Revised) at 3.)  Qualcomm generated a media plan to respond to Apple's

8    inflammatory accusations, but those responses have no bearing on Qualcomm's

9    licensing practices or the contracts at issue here.  There is no claim or defense

10   concerning Qualcomm's media strategy.

11        Nor is Qualcomm's discovery of Apple relevant to this dispute.  Apple

12   asserts, for example, that Qualcomm has obtained discovery "to cast doubt on the

13   validity of Apple's allegations by showing that Apple's conduct with respect to

14   Qualcomm is the result of a coordinated plan", so Apple should be able to seek

15   similar discovery of Qualcomm.  But Qualcomm's discovery is tied to its claim that

16   Apple breached the parties' Business Cooperation and Patent Agreement through a

17   coordinated effort to make false and misleading statements to regulators regarding

18   Qualcomm's business.  (Qualcomm's Am. Countercls. ¶¶ 355-361.)  In contrast,

19   Apple's Category 4 discovery requests are not tethered to any claims or defenses.

20   Apple fails to identify a single allegation or defense to which Qualcomm's

21   marketing activities and government outreach efforts are relevant.

22                      *            *            *

23        For the foregoing reasons, Apple's Motion should be denied in its entirety.

24

25

26

27

28

DATED:  June 13, 2018

Respectfully submitted,

By:   /s/ Edward H. Takashima

Juanita R. Brooks (SBN 75934)
brooks@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (619) 678-5070
Facsimile: (619) 678-5099

Ruffin B. Cordell (DC Bar No. 445801;
admitted pro hac vice), cordell@fr.com
Lauren A. Degnan (DC Bar No. 452421;
admitted pro hac vice), degnan@fr.com
FISH & RICHARDSON P.C.
1425 K Street, N.W. 11th Floor
Washington, D.C. 20005
Telephone:   (202) 783-5070
Facsimile:    (202) 783-2331

William A. Isaacson (DC Bar No. 414788;
admitted pro hac vice)
wisaacson@bsfllp.com
Karen L. Dunn (DC Bar No. 1002520; admitted
pro hac vice)
kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131

Edward H. Takashima, SBN 270945
etakashima@bsfllp.com
BOIES SCHILLER FLEXNER LLP
401 Wilshire Blvd, Suite 850
Santa Monica, CA 90401
Telephone:  (310) 752-2400
Fax:  (310) 752-2490

Attorneys for *Plaintiff and Counterclaim-Defendant Apple Inc.*

DATED:  June 13, 2018               Respectfully submitted,


                                    By: */s/ Vanessa A. Lavely*
                                    _____
                                        CRAVATH, SWAINE & MOORE LLP
                                        Evan R. Chesler (pro hac vice)
                                        (N.Y. Bar No. 1475722)
                                        echesler@cravath.com
                                        Keith R. Hummel (pro hac vice)
                                        (N.Y. Bar No. 2430668)
                                        khummel@cravath.com
                                        Richard J. Stark (pro hac vice)
                                        (N.Y. Bar No. 2472603)
                                        rstark@cravath.com
                                        Antony L. Ryan (pro hac vice)
                                        (N.Y. Bar No. 2784817)
                                        aryan@cravath.com
                                        Gary A. Bornstein (pro hac vice)
                                        (N.Y. Bar No. 2916815)
                                        gbornstein@cravath.com
                                        J. Wesley Earnhardt (pro hac vice)
                                        (N.Y. Bar No. 4331609)
                                        wearnhardt@cravath.com
                                        Yonatan Even (pro hac vice)
                                        (N.Y. Bar No. 4339651)
                                        yeven@cravath.com
                                        Vanessa A. Lavely (pro hac vice)
                                        (N.Y. Bar No. 4867412)
                                        vlavely@cravath.com
                                        Worldwide Plaza, 825 Eighth Avenue
                                        New York, New York 10019
                                        Telephone: (212) 474-1000
                                        Facsimile: (212) 474-3700

                                        QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
                                        David A. Nelson (pro hac vice)
                                        (Ill. Bar No. 6209623)
                                        davenelson@quinnemanuel.com
                                        Stephen Swedlow (pro hac vice)
                                        (Ill. Bar No. 6234550)
                                        stephenswedlow@quinnemanuel.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

191 N. Wacker Dr., Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
Alexander Rudis (pro hac vice)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

JONES DAY
Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (858) 345-3178

Attorneys for *Defendant and Counterclaim-Plaintiff Qualcomm Incorporated*