Juanita R. Brooks (SBN 75934) brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (619) 678-5070 / Fax: (619) 678-5099

Ruffin B. Cordell (DC Bar # 445801; Admitted *Pro Hac Vice*) cordell@fr.com
Lauren A. Degnan (DC Bar # 452421; Admitted *Pro Hac Vice*) degnan@fr.com
FISH & RICHARDSON P.C.
1000 Main Avenue, S.W., Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070 / Facsimile: (202) 783-2331

William A. Isaacson (DC Bar # 414788; Admitted *Pro Hac Vice*) wisaacson@bsfllp.com
Karen L. Dunn (DC Bar No. 1002520; Admitted *Pro Hac Vice*) kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727 / Facsimile: (202) 237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>QUALCOMM LITIGATION. | Case No. 3:17-CV-00108-GPC-MDD<br><br>[Consolidated with Case No. 3:17-CV-01010-GPC-MDD]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE INC.'S OBJECTION TO NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE PURSUANT TO FED. R. CIV. P. 72**<br><br>**Judge:** Judge Gonzalo P. Curiel<br>**Date:** September 7, 2018<br>**Time:** 1:30 p.m.<br>**Courtroom:** 2D |

1   Plaintiff Apple, Inc. ("Apple") objects, pursuant to Fed. R. Civ. P. 72(a), to

2   Magistrate Judge Dembin's June 22, 2018 Order (the "June 22 Order") denying

3   Apple's motion to compel the production of documents and further testimony from

4   Dr. Paul E. Jacobs, Defendant Qualcomm Incorporated's ("Qualcomm") former

5   CEO and Executive Chairman.  (ECF 535).

6   The June 22 Order must be set aside, as it is "clearly erroneous" and "contrary

7   to law."  Fed. R. Civ. P. 72(a).  First, the court below erred when it held that

8   portions of the discovery sought by Apple were not relevant.  (ECF 535).  The

9   discovery at issue here focuses on Qualcomm's business model, including its "no

10  license-no chips" licensing policy, which is central to the antitrust claims in this

11  case.  Moreover, Dr. Jacobs confirmed in his deposition that he has developed

12  "additional views" regarding Qualcomm's business model following his departure

13  from the company, which Apple cannot discover through any other means.

14  Second, the court below erred as a matter of law when it concluded that the

15  discovery Apple seeks is "unretained expert testimony" subject to Federal Rule of

16  Civil Procedure 45(d)(3)(B)(ii).  The disputed discovery concerns Dr. Jacobs' first-

17  hand, percipient testimony as a fact witness, including his communications with

18  potential investors in a bid to acquire Qualcomm regarding Qualcomm's disputed

19  business model.  To the extent Apple is seeking any discovery that could be

20  construed as Dr. Jacobs' *opinions*, it is seeking his opinions based on his

21  particularized experience—lay opinion testimony—rather than expert testimony

22  based on "scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701,

23  702.  Rule 45(d)(3)(B)(ii) does not limit the discovery of such testimony.

24  Apple respectfully requests that the Court reverse the June 22 Order and grant

25  Apple's motion to compel.

26

27

28

# I. Background

## A. Dr. Jacobs' Bid to Acquire Qualcomm

Dr. Jacobs served as Qualcomm's CEO from 2005 through 2014.  He became Executive Chairman in 2009, and held that post through March 2018, when he was removed after expressing an interest in acquiring Qualcomm and taking the company private.

Dr. Jacobs' bid for Qualcomm came on the heels of a four-month-long acquisition attempt by Broadcom, which Broadcom indicated would result in significant changes to Qualcomm's licensing model.  Broadcom CEO Hock Tan criticized Qualcomm's model as "not sustainable"[1] and "broken," and declared that Broadcom would "reset the business model over a period of time so that it's sustainable."[2]  Broadcom investor materials highlighted Qualcomm's "track record of turmoil" citing "[n]early $4 billion in fines and behavioral remedies imposed on [Qualcomm] in [the] past three years from regulators in the EU, China, South Korea and Taiwan over licensing practices," as well as the "FTC lawsuit over [the] same licensing practices now pending in U.S. federal court."[3]

Dr. Jacobs testified at his deposition that he was "████████████ ████████████████████████████████████████████████ ████████████████████████" (Takashima Decl., Ex. A, Jacobs Dep. Tr. at 264:16-265:20).  He explained that in the course of developing his bid, his views about Qualcomm's business model had evolved:  "I definitely have additional views about the business model" (*id.* at 260:18-261:1); He explained:

████████████████████████████████████████████ ████████████████████████████████████████████

---

[1] https://www.reuters.com/article/us-qualcomm-m-a-broadcom/broadcom-unveils-121-billion-best-and-final-offer-for-qualcomm-idUSKBN1FP1KX.
[2] https://www.thestreet.com/story/14484729/1/broadcom-builds-war-chest-as-qualcomm-takeover-battle-continues.html.
[3] https://www.avgo-qcom.com/wp-content/uploads/2018/02/The-Regulatory-Choice-for-Qualcomm-Stockholders.pdf.

████████████████████████████████████████
████████████████████████████████████████

(*id.* at 261:20-263:5).  If his bid for Qualcomm is successful, Dr. Jacobs reportedly "plans to maintain Qualcomm's license business, unlike Broadcom, which would have shut that piece down," as he "feels the licensing business is actually the strongest part of Qualcomm if operated correctly."[4]  According to news reports, Dr. Jacobs is "continu[ing] to investigate the viability of acquiring Qualcomm," together with former Qualcomm President Derek Aberle.[5]

### B.    Apple's Subpoena for Documents

Prior to Dr. Jacobs' deposition, Apple subpoenaed Dr. Jacobs for documents concerning:  (1) his bid for Qualcomm, (2) Broadcom's bid for Qualcomm; (3) efforts to value Qualcomm's business, including efforts to value Qualcomm's business model and patent portfolio; and (4) communications relating to ten specific topics, including Dr. Jacobs' and Broadcom's bids, the value of Qualcomm's patent portfolio, Qualcomm's patent licensing practices, and Qualcomm's baseband chipset sales practices.  (Takashima Decl., Ex. B, Jacobs Responses and Objections to Apple Subpoena at 4-6).  Based on representations by Dr. Jacobs' counsel that Qualcomm has collected all of Dr. Jacobs' documents up until his departure from Qualcomm, Apple narrowed its requests and sought only documents that post-dated Dr. Jacobs' separation from Qualcomm in March 2018.  Dr. Jacobs has nonetheless refused to produce any documents.

### C.    Dr. Jacobs' Refusal to Answer Questions at His Deposition

At his deposition, which was coordinated between this case and the N.D. Cal. actions, Dr. Jacobs' counsel instructed him not to answer several questions, based

---

[4] https://www.cnbc.com/2018/04/12/paul-jacobs-assembling-a-group-of-buyers-to-take-qualcomm-private.html.
[5] http://www.sandiegouniontribune.com/business/technology/sd-fi-jacobs-xcom-20180606-story.html.

on an objection that they were "getting into an area where you might be asking for unretained expert testimony or his views of others with respect to that transaction. There might be privilege issues." (Takashima Decl., Ex. A, Jacobs Dep. Tr. at 258:4-258:15).

Dr. Jacobs refused, for example, to answer questions about whether he had "talked to investment firms about [a] potential bid," whether he is "discussing Qualcomm's business model with investment firms," and whether he is "discussing with investment firms Qualcomm's future business model," (*id.* at 257:23-259:25). Although Dr. Jacobs noted that he had developed "additional views" about Qualcomm's business model, he refused to explain what those additional views are. (*Id.* at 260:18-261:9; *see id.* at 263:6-264:15).

### D.   The June 22 Order

After meeting and conferring with Dr. Jacobs' counsel, Apple moved to compel him to produce documents responsive to Apple's Subpoena (limited to documents post-dating his departure from Qualcomm). Apple also moved to reopen Dr. Jacobs' deposition for questioning on the subject matter of any documents he was ordered to produce and the questions Dr. Jacobs was improperly instructed not to answer. (ECF 518-1). Dr. Jacobs cross-moved for a protective order. (ECF 518 at 12 n.2). The parties jointly requested oral argument.

Without holding a hearing, Magistrate Judge Dembin denied Apple's motion in a docket entry order:

> ORDER denying 518 Joint MOTION for Discovery Joint Motion for Determination of Discovery Dispute re Apple Inc.'s Subpoena to Dr. Paul E. Jacobs. This Joint Motion presents Apple's motion to compel further deposition testimony and records from Dr. Jacobs which post-date his departure from Qualcomm. Apple seeks records and testimony regarding Dr. Jacob's efforts to acquire Qualcomm asserting that his evaluation of Qualcomm's business model and valuation of its patent portfolio is relevant. The Court disagrees. This appears little more than Apple seeking expert testimony from Dr. Jacobs outside the requirements of the Federal Rules of Civil Procedure. The motion to compel, as presented in this Joint Motion, is

DENIED. Signed by Magistrate Judge Mitchell D. Dembin on 6/22/18.

(ECF 535).

## II.    Argument

### A.    The Discovery Apple Seeks Is Relevant.

Qualcomm's business model, including its structure—whereby one entity (QCT) sells and charges a purchase price for baseband chipsets and another entity (QTL) enters into patent licenses and charges a royalty for those chips—is at the very heart of the antitrust claims asserted by Apple and the Contract Manufacturers in this Court and by the Federal Trade Commission and MDL Plaintiffs in the Northern District, as are Qualcomm's patent licensing practices, including the royalties it charges.  For example, with respect to Qualcomm's business model, Apple alleges that:

> For the entire patent licensing world outside of Qualcomm, a customer that purchases a patented product automatically receives a license by operation of law to the seller's patents pursuant to the 'first sale,' or patent exhaustion, doctrine. Qualcomm, however, insists that its customers, such as Apple's CMs, pay not only for the chipsets themselves but for a separate patent license: what the Federal Trade Commission ("FTC"), in its January 17, 2017 complaint against Qualcomm, called Qualcomm's 'no license-no chips' policy. In other words, Qualcomm wants to get paid for patents that have already been exhausted, and is thus insisting that licensees pay for rights that they do not need, thereby impermissibly extending its patent monopoly.

(Am. Compl. ¶ 84).  In addition, with respect to Qualcomm's patent licenses and the royalties it charges, Apple alleges that "Qualcomm is entitled to a fair royalty based on the value of its particular contribution. Qualcomm is not entitled to collect royalties based on the contribution of others to the standard, or unrelated innovation by companies that utilize the standard—but this is precisely the business model that Qualcomm has established and that it protects through monopoly power and

unlawful licenses." (*Id.* ¶ 2). Qualcomm's business model was a major issue in Broadcom's recent attempt to acquire Qualcomm, and Dr. Jacobs reportedly intends to maintain that business model, "operated correctly."[6]

Notwithstanding the clear relevance of documents concerning Qualcomm's business model and the value of Qualcomm's technology and patent licenses, Dr. Jacobs has refused to produce any documents bearing on his evaluation or analysis of Qualcomm's business model or its patents, or communications concerning those issues with others as part of a potential bid for Qualcomm. Dr. Jacobs has not denied that he possesses documents responses to Apple's Subpoena. In fact, Dr. Jacobs testified at his deposition that he has come to hold "additional views about the business model" after departing from Qualcomm (Takashima Decl., Ex. A, Jacobs Dep. Tr. at 260:18-261:1, 261:20-263:5), and has apparently formed a plan to operate that model "correctly." Apple has no other avenue to obtain discovery regarding those new views and plans, which may otherwise first come to light in Dr. Jacobs' anticipated trial testimony regarding Qualcomm's "corporate strategy." (Takashima Decl., Ex. C, Qualcomm Amended Initial Disclosures at 4).

**B.     The Discovery Apple Seeks Is Not Unretained Expert Testimony.**

The court below erred as a matter of law when it deemed the discovery Apple is seeking from Dr. Jacobs—Qualcomm's Executive Chairman until March 2018, and current leader of an effort to take Qualcomm private—is "unretained expert" testimony for the purposes of Federal Rule of Civil Procedure 45(d)(3)(B)(ii). Apple's Subpoena and deposition questions seek "percipient witness testimony . . . based on the first-hand experience of the witness, *i.e.*, the observations and conduct of the witness." *DR Sys., Inc. v. Eastman Kodak Co*., No. 09CV1625-H (BLM), 2009 WL 2982821, at *3 (S.D. Cal. Sept. 14, 2009). Rule 45(c)(3)(B)(ii), which was "designed to protect experts from being required to provide expert advice or

---

[6] https://www.cnbc.com/2018/04/12/paul-jacobs-assembling-a-group-of-buyers-to-take-qualcomm-private.html

1   assistance without proper compensation," *MedImmune, LLC v. PDL Biopharma,*

2   *Inc.*, No. C08-05590 JF (HRL), 2010 WL 2794390, at *1 (N.D. Cal. July 15, 2010),

3   does not exempt such percipient witness evidence from discovery.

4           Under Rule 45(d)(3)(B)(ii), a court may, but is not required to, quash a

5   subpoena that requires "disclosing an unretained expert's opinion or information

6   that does not describe specific occurrences in dispute and results from the expert's

7   study that was not requested by a party."  This rule has been applied to protect third-

8   party experts with no first-hand knowledge or involvement in the events underlying

9   a case from being dragooned into service as experts without compensation.  The

10  applicable advisory committee note explains:

11          Clause (c)(3)(B)(ii)[7] provides appropriate protection for the
12          intellectual property of the non-party witness . . . .  A growing
            problem has been the use of subpoenas to compel the giving of
13          evidence and information by unretained experts.  Experts are not
            exempt from the duty to give evidence, even if they cannot be
14          compelled to prepare themselves to give effective testimony, . . . but
15          compulsion to give evidence may threaten the intellectual property of
            experts denied the opportunity to bargain for the value of their
16          services.  Arguably the compulsion to testify can be regarded as a
            "taking" of intellectual property.  The rule establishes the right of
17          such persons to withhold their expertise, at least unless the party
18          seeking it makes the kind of showing required for a conditional
            denial of a motion to quash provided in the final sentence of
19          subparagraph (c)(3)(B).
20

21
22  Fed. R. Civ. P. 45, Advisory Comm. Notes, 1991 Amend., Subdiv. (c).

23          Courts applying this rule must distinguish between expert and fact witness

24  testimony.  The former is typically "prepare[d] using an analysis based on

25  specialized knowledge, by individuals who lack first-hand involvement in a case";

26  the latter is "based on the first hand experience of the witness, *i.e.*, the observations

27  and conduct of the witness."  *DR Sys.*, 2009 WL 2982821 at *3; *see* Fed. R. Evid.

28
    ─────────────
    [7] Fed. R. Civ. P. 45(d)(3)(B)(ii) was previously numbered Fed R. Civ. P. 45(c)(3)(B)(ii).

701, 702.  Accordingly, a court in this district quashed a subpoena to a professor who had no personal knowledge of a patent-in-suit, where the deponent "would have [had] to conduct research and analysis before he could provide the requested testimony." *DR Sys.,* 2009 WL 2982821 at *3.  Another court in this circuit quashed a subpoena where it sought testimony regarding the non-party's "unique understanding of the market," and whether the non-party's products, "which are not accused of infringing the Patents–in–Suit, [were] acceptable substitutes based on [the non-party]'s experience in the marketplace." *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 2600367, at *3 (N.D. Cal. June 10, 2014).

On the other hand, courts have overruled Rule 45(d)(3)(B)(ii) objections when the discovery sought was based on the testimony of percipient fact witnesses. *See Guiden v. Leatt Corp.*, No. 13-cv-2311-H (BLM), 2013 WL 12092059, at *5 (S.D. Cal. Nov. 26, 2013) (allowing subpoena to non-party who observed and discussed testing of neck braces); *Radware, Ltd. v. A10 Networks, Inc.*, No. C-13-02021, 2014 WL 631537, at *3 (N.D. Cal. Feb. 18, 2014) (rejecting objection based on Rule 45(d)(3)(B)(ii) because "defendants seek factual testimony from Felstaine relating to his statements to the PTO"); *Nat. Res. Def. Council v. Zinke,* No. 105CV01207LJOEPG, 2018 WL 1899609, at *10 (E.D. Cal. Apr. 20, 2018) (allowing subpoena where "the testimony NRDC seeks concerns only opinions that Ms. Rea and Dr. Danner previously formed, in their official capacities, regarding . . . [topics] directly at issue in Plaintiffs' Sixth Claim. . . . The opinions at issue are already formed opinions—they are not being asked to create new opinions for Plaintiffs unrelated to their work."); *In re Public Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 77 (D. Mass. 2006) (allowing subpoena to author whose public statements "suggest[ed] that he ha[d] factual knowledge that defendants in the antitrust litigation fixed their underwriting fees").

1    Dr. Jacobs' role as Qualcomm's former Executive Chairman and CEO gives

2  him direct experience with and involvement in the issues that are at the heart of this

3  litigation, including Qualcomm's unique business model and "no license-no chips"

4  policy.  The discovery Apple seeks is based on Dr. Jacobs' first-hand, factual

5  knowledge regarding those matters.  First and foremost, Apple seeks documents

6  concerning Dr. Jacobs' attempt to take Qualcomm private, which Dr. Jacobs

7  created, sent, and received in connection with his bid for the company.  There is no

8  dispute that Dr. Jacobs possesses these relevant documents, and they cannot

9  reasonably be obtained from another source.  Second, Apple seeks any post-

10  Qualcomm documents Dr. Jacobs possesses concerning Broadcom's competing

11  acquisition attempt.[8]  Third, Apple seeks documents concerning the value of

12  Qualcomm's business, business model, and patent portfolio—which likely overlap

13  with Dr. Jacobs' bid for Qualcomm, and in any case are grounded in Dr. Jacobs'

14  long tenure at the top of Qualcomm's management team.  Finally, Apple seeks

15  documents concerning communications between Dr. Jacobs and others concerning

16  issues relevant to this litigation, including Dr. Jacobs' and Broadcom's bids, the

17  value of Qualcomm's patent portfolio, Qualcomm's patent licensing practices, and

18  Qualcomm's baseband chipset sales practices.  While there is no question that Dr.

19  Jacobs accrued relevant expertise and specialized knowledge in the course of his

20  employment—like many witnesses in this case, on all sides—Dr. Jacobs' suggestion

21  that his departure from Qualcomm transformed him from a fact witness into an

22  unretained expert has no basis in Rule 45.  Rule 45(d)(3)(B)(ii) protects unretained

23  experts from being conscripted into service without compensation.  It does not

24  shield witnesses with relevant factual knowledge.  *See Rosa v. City of Seaside*, No.

---

[8] Although Dr. Jacobs has suggested that he has no documents related to this particular, Broadcom-specific request (ECF 518 at 51-52), it is unclear whether he possesses responsive documents created, sent, or received after his departure from Qualcomm, such as documents comparing Dr. Jacobs' and Broadcom's respective plans for Qualcomm.

05–03577 JF (HRL), 2009 WL 2382760, at *1 (N.D. Cal. July 29, 2009) (Rule 45(d)(3)(B)(ii) is concerned primarily with "ensur[ing] that the subpoena power does not improperly compel an unretained expert to unwillingly disclose his work product and deny him the right to effectively bargain for his professional service").

In the briefing below, Dr. Jacobs relied heavily on *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc.,* a Seventh Circuit case that turned on whether a former CEO's declaration concerning the value of certain collateral was lay testimony or untimely expert testimony.  533 F.3d 555, 560 (7th Cir. 2008).  Leaving aside the fact that *Compania* does not address or even mention Rule 45(d)(3)(B)(ii), the distinction drawn in *Compania* between lay and expert testimony supports *Apple's* position, not Dr. Jacobs'.  The Court observed, citing the advisory committee note to Federal Rule of Evidence 701, that a business officer's testimony about the value of the business is lay testimony "because that testimony is tied to his or her personal knowledge." *Id.* at 560 ("Such opinion testimony is admitted not because of experience, training, or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." (quoting Fed. R. Evid. 701, advisory committee note)).  The Court reasoned, however, that the former CEO's declaration was expert testimony because it was based on his "generalized knowledge of the worldwide tire market," rather than his particularized experience with his former company:

> Taylor purported to value the collateral by applying his generalized knowledge of the worldwide tire market, gained through his experience in the worldwide tire business, to a proffered list of specific items owned by a third party.  Taylor's only connection to the items in question is the fact that he is an officer of a company that, at one time, held a controlling interest in a company that, at one time, owned the collateral.  Titan, however, had no ownership interest in FUNSA at the time that Taylor made his purported valuation.  Furthermore, Titan identifies no evidence that Taylor participated in FUNSA's initial purchase of the particular items in question, and his

affidavit belies any contention that he based his valuation opinion on personal knowledge of the collateral. Indeed, in his deposition, Taylor specifically disclaimed any personal knowledge of the particular items that were included in the sale.

. . . His attempt at valuation was not based on any knowledge obtained through his special relationship with the items in question; instead, he simply looked at a list of items provided by Compania, and he estimated their value based on his extensive experience purchasing and selling the type of goods at issue. This is the kind of testimony traditionally provided by an expert: "[I]t could have been offered by any individual with specialized knowledge of the [tire] market."

*Id.* (alteration in original) (quoting *United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002)).

Under the logic of *Compania*, the discovery Apple seeks from Dr. Jacobs is indisputably lay *fact* testimony, rather than expert testimony. Dr. Jacobs' attempts to obfuscate the issue by suggesting that he, like a third party "investment bank," is applying his "special experience in the mobile device industry" to create valuable work product. (ECF 518 at 14, 16). But Apple is not seeking documents or testimony from Dr. Jacobs where he applies his Qualcomm expertise to ruminate on other companies or unrelated challenges in the cellular industry. Rather, to the extent Apple is seeking any discovery that could be construed as Dr. Jacobs' opinions, Apple is seeking Dr. Jacobs' assessments of *Qualcomm's* particular business—the business he led as CEO and then Executive Chairman for over a decade—its business model, and its patents. Rule 45(d)(3)(B)(ii) does not apply.

## III. Conclusion

Apple respectfully submits that the court's finding that portions of the discovery sought by Apple is not relevant is clearly erroneous, and that its decision to treat Dr. Jacobs as an unretained expert witness is contrary to law. Apple asks that the Court reverse the June 22 Order and grant Apple's motion to compel.

Dated: July 6, 2018                         Respectfully submitted,

                                            By:  */s/ Edward H. Takashima*
                                                 Juanita R. Brooks, SBN 75934, brooks@fr.com
                                                 Seth M. Sproul, SBN 217711, sproul@fr.com
                                                 FISH & RICHARDSON P.C.
                                                 12390 El Camino Real San Diego, CA 92130
                                                 Phone: 619-678-5070; Fax: 619-678-5099

                                                 Ruffin B. Cordell (D.C. Bar No. 445801;
                                                 pro hac vice), cordell@fr.com
                                                 Lauren A. Degnan (D.C. Bar No. 452421;
                                                 pro hac vice), degnan@fr.com
                                                 FISH & RICHARDSON P.C.
                                                 901 15th Street, N.W., 7th Floor
                                                 Washington, D.C. 20005
                                                 Phone: 202-783-5070; Fax: 202-783-2331

                                                 Benjamin C. Elacqua (TX SBN 24055443;
                                                 pro hac vice), elacqua@fr.com
                                                 FISH & RICHARDSON P.C.
                                                 One Houston Center, 28th Floor
                                                 1221 McKinney
                                                 Houston, TX 77010
                                                 Phone: 713-654-5300; Fax: 713-652-0109

                                                 William A. Isaacson (D.C. Bar No. 414788;
                                                 pro hac vice) wisaacson@bsfllp.com
                                                 Karen L. Dunn (D.C. Bar No. 1002520;
                                                 pro hac vice) kdunn@bsfllp.com
                                                 Amy J. Mauser (D.C. Bar No. 424065;
                                                 pro hac vice) amauser@bsfllp.com
                                                 Christopher G. Renner (D.C. Bar No. 1025699;
                                                 pro hac vice) crenner@bsfllp.com
                                                 BOIES SCHILLER FLEXNER LLP
                                                 1401 New York Avenue
                                                 Washington, D.C .20005
                                                 Phone: 202-237-2727; Fax: 202-237-6131

                                                 Steven C. Holtzman (SBN 144177)
                                                 sholtzman@bsfllp.com
                                                 Gabriel R. Schlabach (SBN 304859)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

gschlabach@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Phone: 510-874-1000; Fax: 510-874-1460

Edward H. Takashima (SBN 270945)
etakashima@bsfllp.com
BOIES SCHILLER FLEXNER LLP
401 Wilshire Boulevard
Santa Monica, CA 90401
Phone: 310-752-2400; Fax: 310-752-2490

*Attorneys for Plaintiff and Counterclaim-Defendant
Apple Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 6, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5.4(d).  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Executed on July 6, 2018, at Santa Monica, California.

/s/ *Edward H. Takashima*
Edward H. Takashima