Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Phone:  858-678-5070 / Fax: 858-678-5099

William A. Isaacson, DC Bar No. 414788, *pro hac vice*, wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520, *pro hac vice*, kdunn@bsfllp.com
Boies, Schiller & Flexner LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Phone: 202-237-2727 / Fax: 202-237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

*(Additional counsel listed below signature line)*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| IN RE:<br>QUALCOMM LITIGATION, | Case No. 3:17-CV-00108-GPC-MDD |
|---|---|
| | [Consolidated with<br>Case No. 3:17-CV-01010-GPC-MDD] |
| | APPLE INC. AND THE CONTRACT MANUFACTURERS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR EMERGENCY MOTION TO STRIKE PORTIONS OF QUALCOMM INCORPORATED'S EXPERT REPORTS THAT OPINE ON INFRINGEMENT AND, IN THE ALTERNATIVE, TO HOLD A CASE MANAGEMENT CONFERENCE |
| | ██████████████████████ |
| | Date:        September 21, 2018<br>Time:        1:30 p.m.<br>Courtroom: 2D<br>Judge:      Hon. Gonzalo P. Curiel |

# TABLE OF CONTENTS

**Page No.**

I.      BACKGROUND ......................................................................... 2

    A.      Qualcomm Repeatedly Disavowed Any Allegations that
        Apple Infringes the Patents-in-Suit ....................................... 2

    B.      Qualcomm Used Its Non-Assertion of Infringement To
        Justify Its Refusal To Provide Discovery to Apple ........................... 4

    C.      ███████████████████████████████ ..................... 6

    D.      Qualcomm Presented Infringement Theories for the
        First Time in Its June 29, 2018, Expert Reports ............................... 6

II.     ARGUMENT ............................................................................ 10

    A.      Courts Strike Infringement Opinions When the Patentee
        Fails To Serve Timely or Sufficient Infringement
        Contentions .......................................................................... 10

    B.      The Court Should Strike Qualcomm's Experts'
        Opinions Regarding Alleged Infringement of the Nine
        Patents-in-Suit ..................................................................... 13

    C.      The Court Should Strike Qualcomm's Experts'
        Opinions R████rding Alleged Infringem████ of the
        Additional ████ Patents—93 SEPs and ████ NEPs ........................... 15

    D.      If Qualcomm's Experts Are Not Opining on
        Infringement, Then the Court Should Strike the
        Opinions as Irrelevant and Prejudicial ................................. 21

    E.      Alternatively, the Court Should Hold a Case
        Management Conference To Reset the Schedule ............................ 23

        1.      Qualcomm's Introduction of Infringement
            Assertions Triggers Additional Discovery and
            Claim Construction ................................................... 23

        2.      The Schedule Should Be Reset To Accommodate
            the Required Discovery and Claim Construction ................. 24

III.    CONCLUSION ......................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Syntron Bioresearch Inc.*,
No. 98-CV-2359 ...................................................................................... 20

*Adv. Micro Devices Inc. v. LG Elecs., Inc.*,
No. 14-cv-01012-SI, 2017 WL 2774339 (N.D. Cal. June 26, 2017) ................. 13

*Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*,
No. 15-CV-00154-JD, 2015 WL 1802467 (N.D. Cal. Apr. 20, 2015) ............... 22

*Apple, Inc. v. Samsung Elecs. Co.*,
No. 11-CV-01846-LHK, 2012 WL 3155574 (N.D. Cal. Aug. 2,
2012) ...................................................................................................... 19

*ASUS Computer Int'l v. Round Rock Research, LLC*,
2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ......................................... 12

*Avocent Redmond Corp. v. Rose Elecs.*,
2012 WL 4903270 (W.D. Wash. May 29. 2012) .............................. 19, 20

*BioGenex Labs. v. Ventana Med. Sys.*,
No. C-03-3916-JF (PVT), 2005 U.S. Dist. LEXIS 45531 (N.D. Cal.
Feb. 24, 2005) ................................................................................ 11, 14, 21

*Brandon v. Mare-Bear, Inc.*,
225 F.3d 661, No. 99-15312, 2000 WL 732926 (9th Cir. Jun. 5,
2000) (unpublished case) .................................................................................. 1

*Duncan v. Stuetzle*,
76 F.3d 1480 (9th Cir. 1996) .............................................................. 15

*Eli Lilly & Co. v. Dr. Reddy's Labs., Ltd.*,
No. 1:16-CV-0308-TWP-DKL, 2017 WL 1531834 (S.D. Ind. Apr.
28, 2017) ......................................................................................... 11, 14, 21

*Enroute Sys. Corp. v. Arrivalstar S.A.*,
No. C11-0451RSL, 2012 U.S. Dist. LEXIS 82818 (W.D. Wash.
June 14, 2012) ................................................................................ 11, 14, 21

*EON Corp IP Holding LLC v. Sprint Spectrum, L.P.*,
No. C-12-01011 JST (EDL), 2014 U.S. Dist. LEXIS 33658 (N.D.
Cal. Mar. 12, 2014) ......................................................................... 13

*Ericsson, Inc. v. D-Link Sys.*,
773 F.3d 1201 (Fed. Cir. 2014) ....................................................... 16

*Fastek, Ltd. Liab. Co. v. Steco*,
No. 10cv0972-MMA (CAB), 2011 U.S. Dist. LEXIS 111198 (S.D.
Cal. Sep. 27, 2011) ......................................................................... 10

*Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*,
No. 09-CV-140-GPC-KSC, 2014 WL 1286392 (S.D. Cal. Mar. 28,
2014) ............................................................................................... 22

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
No. 13-CV-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11,
2015) ............................................................................................... 10

*Finjan, Inc. v. Proofpoint, Inc.*,
No. 13-cv-05808-HSG, 2016 U.S. Dist. LEXIS 191631 (N.D. Cal.
Feb. 16, 2016) ........................................................................... 10, 12

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010) ....................................................... 16

*Hologic, Inc. v. Senorx, Inc.*,
No. C-08-00133 RMW, 2009 U.S. Dist. LEXIS 130693 (N.D. Cal.
Oct. 30, 2009) ................................................................................. 13

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
822 F.3d 1312 (Fed. Cir. 2016) ....................................................... 11

*Innogenetics, N.V. v. Abbott Labs.*,
512 F.3d 1363 (Fed. Cir. 2008) ....................................................... 20

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) ......................................................... 12

*Karl Storz Endoscopy-America v. Stryker Corp.*,
No. 14-cv-00876-RS (JSC), 2016 U.S. Dist. LEXIS 176876 (N.D.
Cal. Dec. 21, 2016) ............................................................. 11, 14, 18

*Kennedy v. Nat. Balance Pet Foods, Inc.*,
No. 07-CV-1082 ............................................................................... 12

*Monolithic Power Sys. v. O2 Micro Int'l Ltd.*,
    Case. No. 08-04567 CW, 2009 U.S. Dist. LEXIS 101035 (N.D. Cal.
    Oct. 16, 2009) ...................................................................................................... 13

*Oracle Am., Inc. v. Google Inc.*,
    No. 10-03561 WHA, 2011 U.S. Dist. LEXIS 109544 (N.D. Cal.
    Sept. 26, 2011) ..................................................................................................... 13

*Patent Tr. v. LG Elecs. U.S.A., Inc.*,
    No. 12-CV-2731-H (KSC), 2013 U.S. Dist. LEXIS 197628 (S.D.
    Cal. May 24, 2013) ........................................................................... 10, 12, 15

*Qualcomm Inc. v. Apple Inc.*,
    Case No. 3:17-cv-1375-DMS-MDD (S.D. Cal.) .................................... 23

*Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics,
Inc.*,
    637 F.3d 1269 (Fed. Cir. 2011) ...................................................................... 20

*Textile Prods., Inc. v. Mead Corp.*,
    134 F.3d 1481 (Fed. Cir. 1998) ...................................................................... 15

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
    No. 05-CV-4811, 2014 WL 4477932 (N.D. Ill. Sept. 10, 2014) ........................ 13

*United States v. Marshall*,
    8 F.3d 32 (9th Cir. 1993) ............................................................................... 22

*WiAV Networks, LLC v. 3Com Corp.*,
    No. C 10-03448 WHA, 2010 WL 3895047 (N.D. Cal. Oct. 1, 2010) ................ 16

*Zenith Elecs., LLC v. Sceptre, Inc.*,
    No. CV14-05150-JAK, 2015 U.S. Dist. LEXIS 33560 (C.D. Cal.
    Feb. 5, 2015) ..................................................................................................... 22

**Other Authorities**

Fed. R. Evid. 402, 403 ..............................................................................22, 23

Patent Local Rule 1.3 ......................................................................................... 23

Patent Local Rule 1.4 ......................................................................................... 24

Patent Local Rule 3-1 ..................................................................................3, 24

Patent Local Rule 3.2 ...........................................................................................3

Patent Local Rule 3.3 ...........................................................................................23

Patent Local Rule 3.5(a) ........................................................................................3

Patent Local Rule 3.6(a) ........................................................................................4

Patent Local Rule 4.1-4.4 .....................................................................................24

Patent Local Rule 4.5 ...........................................................................................24

"[O]ne of the principal goals of the discovery rules [is] preventing trial by ambush and surprise." *Brandon v. Mare-Bear, Inc.*, 225 F.3d 661, No. 99-15312, 2000 WL 732926, at *4 (9th Cir. Jun. 5, 2000) (unpublished case). Qualcomm Inc. has flouted this principle by serving technical expert reports that disclose—for the first time—infringement allegations for hundreds of patents. Apple Inc. and its contract manufacturers—Compal Electronics, Inc., FIH Mobile Ltd. and Hon Hai Precision Industry Co., Ltd., Pegatron Corporation, and Wistron Corporation (collectively, "CMs")—respectfully move the Court to strike these reports.

Prior to Qualcomm serving 27 expert reports on June 29, 2018, there were nine "patents-in-suit" identified in Apple and the CMs' declaratory judgment claims, which have been subject to discovery pursuant to the Court's Patent Local Rules. Qualcomm did not file infringement counterclaims or contentions for any of the nine patents. Despite repeatedly telling the Court (and Apple and the CMs) that it was not alleging infringement, and failing to serve infringement contentions, Qualcomm's experts now opine that Apple and the CMs infringe eight of the nine patents-in-suit. And that is but the tip of iceberg. Qualcomm's expert reports seek to add detailed infringement and essentiality issues for ▮ *more patents* to this case, including (a) 83 patents that Qualcomm contends are essential to cellular communication standards that Apple products practice, (b) 13 patents that Qualcomm contends are essential to 5G standards,[1] (c) and ▮ other non-essential patents that Qualcomm contends are relevant to this litigation.

These expert opinions directly contradict Qualcomm's position to date—during fact discovery, in correspondence, in motion practice, and in statements to this Court—that Qualcomm is not asserting, and will not assert, patent infringement. Qualcomm's tactic of hiding these infringement assertions until now and introducing them for the first time in its expert reports circumvents its pleading

---

[1] Of the 93 patents Qualcomm alleges are standard essential, Qualcomm alleges that three, U.S. Patent Nos. 8,098,635, 8,625,601, and 8,639,190, are essential to both 5G, and the LTE or UMTS standards it alleges Apple products practice.

requirements under the Federal Rules, disregards this Court's Case Management Order and procedures for handling patent cases, and severely prejudices Apple and the CMs. Because the deadlines to amend pleadings and to serve infringement contentions have both passed and fact discovery has now closed, the Court should strike from Qualcomm's June 29th expert reports any opinions relating to infringement of the nine patents-in-suit; the infringement, essentiality, and other technical opinions relating to the ▮ additional patents; and any reference to these opinions by other Qualcomm experts.

Apple and the CMs respectfully seek emergency relief because time is of the essence. Rebuttal expert reports are due on July 20, 2018—a mere three weeks after Qualcomm attempted to inject ▮ new Qualcomm patents into this case.

## I.    BACKGROUND

### A.    Qualcomm Repeatedly Disavowed Any Allegations that Apple Infringes the Patents-in-Suit

Throughout this case, Qualcomm has repeatedly proclaimed that it is not asserting infringement of the nine patents-in-suit. Its pleadings noticeably omit any allegations that Apple or the CMs infringe any Qualcomm patents. *See* D61, 108 Case (Qualcomm's Answer and Counterclaims); D97, 108 Case (Qualcomm's Answer to Apple's First Amended Complaint); D1, 1010 case (Qualcomm's Complaint). Indeed, when Apple and the CMs asserted declaratory judgment claims for nine additional patents, Qualcomm successfully moved to dismiss these other patents because "Qualcomm has never accused Apple of infringing those patents." D100-1, 108 Case (Qualcomm Mtn. To Dismiss) at 1; *see* D116-1, 1010 Case ("Qualcomm has never accused any Defendant of infringing any of the Additional Patents-in-Suit"); *see also id.* at 5-7; D127, 108 case (Qualcomm Reply) at 1. At the hearing, Qualcomm unequivocally disavowed any intent to allege infringement: "Qualcomm, to defend itself, does not and has not asserted infringement of ***all***

*of the patents* that Apple and the contract manufacturers practice." Ex. 1[2] (10/13/17 Hearing Tr. on Mtn. To Dismiss) at 80:16-19 (emphasis added). Apple, the CMs, and this Court accepted and relied on Qualcomm's representations. *See* D167 (Order re Partial Dismissal) at 29-30, 34.

In the parties' Rule 26(f) Joint Discovery Plan, Qualcomm likewise maintained that it was not alleging infringement, and therefore was not required to submit infringement contentions: "Qualcomm is not obliged to produce infringement contentions because Qualcomm has not asserted any patent infringement count." Ex. 2 (Parties' Rule 26(f) Joint Disc. Plan) at 32; *id.* at 20 (stating Qualcomm's position that "[t]he rules for disclosure of infringement contentions in Patent L.R. 3.1 and 3.2 do not apply to this case because Qualcomm has not asserted a claim for patent infringement").

Due to Qualcomm's assertions, the Case Management Order explicitly acknowledges that "Defendant [Qualcomm] is not, at this time, claiming infringement" D117 (Case Management Order), at 1, but nonetheless set August 30, 2017, as the last day for Qualcomm to serve its Disclosure of Asserted Claims pursuant to Patent L.R. 3.1 and produce documents as required by Patent L.R. 3.2, *id.* at 2. Despite this court-prescribed deadline to serve infringement contentions, Qualcomm opted not to do so. Qualcomm then confirmed that the reason it did not serve infringement contentions was that it was not asserting infringement. Ex. 3 (11/22/17 e-mail fr Kaplan to Chen) ("[A]s the Court found in the August 18, 2017 Order, 'Defendant is not, at this time, claiming infringement' and Patent Local Rule 3.5(a) states that 'Patent Local Rules 3.1 and 3.2 will not apply unless and until a claim for patent infringement is made by a party.'").

Thereafter, Qualcomm filed a motion to strike Apple and the CMs' amended invalidity contentions, citing as a reason that Qualcomm had not asserted

---

[2] Exhibits herein refer to the exhibits to the Declaration of Kothari accompanying this motion.

infringement:

> Qualcomm has never counterclaimed that Apple infringed the nine patents. . . .  This procedural posture is explicitly addressed by the Court's local patent rules.  Patent Local Rule 3.5, titled "Disclosure Requirements in Patent Cases for Declaratory Relief," states that a declaratory-judgment defendant that has not made a claim for infringement need not comply with Patent Local Rules 3.1 and 3.2, which relate to infringement contentions.

D331-1 (2/14/18 Mtn. To Strike) at 1.  Similarly, in its reply brief, Qualcomm asserted that "the 'claim of infringement' on which Apple . . . rel[ies] does not exist . . . ."  D362 (Qualcomm Reply) at 1.  The Order denying Qualcomm's motion observes that the Scheduling Order "recognized that Qualcomm was not claiming infringement" and "removed the deadline for filing as of right Amended Infringement Contentions under Local Rule 3.6(a)."  D501 (Order) at 59-60.

### B.  Qualcomm Used Its Non-Assertion of Infringement To Justify Its Refusal To Provide Discovery to Apple

Qualcomm successfully used its representations that it would not allege infringement as a tactic to avoid providing contention and fact discovery to Apple on the same issues it now surprises Apple with in these voluminous expert reports.

For example, Qualcomm refused to provide a meaningful response to Apple's and the CMs' Interrogatory Nos. 8 and 24,[3] which ask for Qualcomm's measure of damages against Apple and the CMs and the value Qualcomm attributes to each of the nine patents-in-suit, respectively.  Qualcomm's response to Interrogatory No. 8 states that "Qualcomm has not alleged that Apple infringes the Identified Patents and has not made a claim for damages on the Identified Patents."  *See* Ex. 4 (11/14/17 Qualcomm Suppl. Resp. to Apple's Interrog. No. 8) at 2;[4] *see also* Ex. 6

---

[3] ██████████████████████ y Apple and by the CMs are identical.

[4] ████████████████████████████████████ Apple's and the CMs' Interrogatory No. 33, ████████████tions as to what the FRAND royalty is for Apple for each" of the ███████████████████████████████████████████████

██████████████████████████████████████████████████████████

(10/17/17 Ltr fr Stark to Sproul) at 6 ("[D]amages for [any of the patents-in-suit] do not appear to be at issue in this case.  Qualcomm has not brought any claims for infringement and therefore assessing damages with respect to infringement . . . is not relevant.").  In response to Interrogatory No. 24 regarding the value of the patents-in-suit, Qualcomm incorporated its response to Interrogatory No. 8.  *See* D369 (Joint Mtn.) at 3.  Qualcomm relied on this same argument in its opposition to Apple's motion to compel a complete response to Interrogatory No. 24:  "Qualcomm has not sued Apple for infringement or made a claim for damages with respect to the Identified Patents."  *See* D369 (Joint Mtn.) at 9 n.5.  The Court ultimately denied Apple's motion.  *See* D381 (3/20/18 Order).

Qualcomm also proclaimed that it was not asserting that Apple products practice its patents in the context of cellular standards to avoid responding to other Apple and CM interrogatories targeting Qualcomm's patent analyses.  For example, Apple and the CMs each served an interrogatory (No. 44) asking Qualcomm to provide claim charts for any Qualcomm standard-essential patents ("SEPs") that Qualcomm contends are practiced by Apple's cellular-enabled devices when connected to a cellular network.  D397 (Joint Mtn.) at 4 & n.2.  In moving to compel an adequate answer, Apple made specifically clear that it wanted Qualcomm only to "identify and provide claim charts for the patents that it intends to rely on as part of expert discovery or at trial."  *Id.* at 4-5.  Apple sought such information, which is analogous to infringement contentions, to allow Apple to prepare its defenses during the discovery period and not be "ambush[ed] . . . with voluminous substantive patent analysis that Apple will see for the first time during the expert report phase."  *Id.* at 5-6.  Qualcomm refused even to identify the patents upon which its experts would later analyze in their expert reports, asserting that these patents "are *not* under a claim of infringement or invalidity in this case."  *Id.* at 10 (original emphasis).  The

Court denied Apple's motion to compel, D407, not knowing that Qualcomm's experts would later make allegations of infringement of 93 SEPs (while carefully avoiding use of the word "infringement" for these SEPs).

**C.**   ███████████████████████████████████
███████████████

Per the Scheduling Order in this case, D116, Qualcomm served its expert disclosures by January 12, 2018. ████████████████████████
████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
███████████████
███████████████████████████████████████
████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████
████████████████████████ In light of Qualcomm's repeated disavowal of any allegations of infringement in this case, this sort of reservation of rights did not put Apple or the CMs on notice that Qualcomm's experts planned to provide infringement opinions.

**D.    Qualcomm Presented Infringement Theories for the First Time in Its June 29, 2018, Expert Reports**

On June 29, 2018, Qualcomm served 27 separate expert reports.  Five of these reports relate to the nine patents-in-suit and address, for the first time, alleged infringement by Apple and the CMs of eight of those patents.  In particular, the

6                     Case No. 3:17-CV-00108-GPC-MDD

reports of Drs. Laneman, Villasenor, Mitra, and Min allege that the '242, '822, '021, '630, '725, '549, and '469 patents are infringed by Apple's █████████ ███████ devices made by the CMs.  Ex. 9 (Patents-in-Suit Chart); Ex. 10 (Villasenor) at § XIII; Ex. 11 (Laneman) at § VI; Ex. 12 (Min) at § VIF; Ex. 13 (Mitra) at § VG.  The expert reports include theories of literal infringement, and infringement under the doctrine of equivalents, as well as direct and induced infringement by Apple and the CMs, all advanced for the first time.[5]

Although the report of Nigel Jones avoids drawing a conclusion on infringement, Mr. Jones analyzes source code in Apple's █████████ █████, which analysis Qualcomm's other experts use to draw conclusions that Apple's devices infringe the '242, '822, '021, '630, '725, '549, and '469 patents by implementing infringing procedures regardless of whether these patents are standard-essential.  Ex. 9 (Patents-in-Suit Chart); *see also, e.g.*, Ex. 10 (Villasenor) ¶¶ 250, 262, 292, 296, 300, 347; Ex. 11 (Laneman) at 88; Ex. 12 (Min) ¶¶ 104, 189; Ex. 13 (Mitra) ¶¶ 38, 87.

For each of these patents, and the '494 patent, Qualcomm made a separate allegation of infringement, while not using that label, because it says that these devices implement or comply with various cellular communications standards to which the patents are essential.  Ex. 9 (Patents-in-Suit Chart).  For example, Qualcomm alleged that the '494 patent is essential to the UMTS cellular standard and Apple products practice that standard.  *See, e.g.*, Ex. 11 (Laneman) at 115-16 (opining that the '494 patent is essential to 3GPP Releases 11-14); Ex. 10 (Villasenor) ¶ 254 (stating that the investigated Apple products "are compliant with and implement at least the 3GPP Release 11 standards, including UMTS and LTE

---

[5] Qualcomm alleges direct infringement literally and under the doctrine of equivalents theories for the '242, '822, '021, '630, '725, '549, and '469 patents, and further alleges induced infringement for each of these same patents except for the '822 patent.  *See id.*; *see also, e.g.*, Ex. 13 (Mitra) ¶¶ 103-110; Ex. 11 (Laneman) at 74-75; Ex. 12 (Min) ¶¶ 12-17, 20-25; Ex. 10 (Villasenor) ¶¶ 9-12, 15-19, 23-24.

cellular functionality").[6]

Qualcomm made similar allegations for another 93 patents that it says are SEPs in the reports of Drs. Andrews, Gitlin, and Jayant.  Drs. Andrews, Gitlin, and Jayant conclude that these 93 patents are essential to UMTS, LTE, and/or 5G standards.  Other Qualcomm experts then opine that Apple's ████████████ ████████████ models each support communications using both UMTS and LTE standards.  Ex. 15 (SEPs Chart); *see also* Ex. 16 (Jones) ¶ 14; Ex. 11 (Laneman) at 17; Ex. 10 (Villasenor) ¶ 256; Ex. 12 (Min) ¶¶ 12, 20; ████████████  In other words, through a combination of its expert reports, Qualcomm alleges that Apple practices 83 of these patents (i.e., those that relate to UMTS and LTE).

The reports of Drs. Madisetti, Michalson, Parulski, Pedram, and Wigdor address another ███ Qualcomm non-essential patents ("NEPs"), involving several areas of technology allegedly covered by these patents, such as secure mobile service portability, unified cross-platform applications, biometric authorization and security for mobile users, GPS-based mapping technologies, ████████████ ████████████ charging and optimizing battery power, and touchscreen technologies.  *See, e.g.*, Ex. 17 (Madisetti) ¶ 21; Ex. 18 (Michalson) ¶¶ 14, 61, 74-75, 93; ████████████; Ex. 20 (Pedram) ¶ 25; Ex. 21 (Wigdor) ¶ 19.

These experts ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████s

<hr />

[6] served an identical interrogatory and received the same answer.  For the '819 patent, Qualcomm alleged only essentiality and not infringement.  *See* Ex. 12 (Min) at 9-10.

8



Another Qualcomm expert, Dr. Prince ███████████████ "Qualcomm [NEPs] impact demand and allow Apple to command higher price premiums and, in turn, warrant meaningful royalty payments." *See, e.g.*, Ex. 23 (Prince) ¶¶ 250-51; *see also id.* ¶¶ 10, 33, 37, 38, 40, 41, 44, 47, 48, 53, 55-58, 149; Ex. 24 (Reliance Chart).

Indeed, because Qualcomm cannot show that ███████████████ without a finding that the Apple products at issue infringe these patents, and they are valid, enforceable, and not exhausted by Qualcomm's sale of the baseband chipset, Qualcomm cannot legitimately argue that these opinions are not infringement ones.

Thus, despite its repeated assertions, in pleadings and during the fact discovery period, that it was not asserting and would not assert infringement in this case, Qualcomm's expert reports not only explicitly assert infringement of seven of

the patents-in-suit, but also make carefully-worded allegations that are, in substance, allegations that Apple and the CMs infringe another patent-in-suit plus ██ additional patents.

## II.  ARGUMENT

### A.  Courts Strike Infringement Opinions When the Patentee Fails To Serve Timely or Sufficient Infringement Contentions

The Court should strike any portion of an expert report that advances new theories that a party has failed to disclose in its mandatory Patent Local Rule disclosures. *See Patent Tr. v. LG Elecs. U.S.A., Inc.*, No. 12-CV-2731-H (KSC), 2013 U.S. Dist. LEXIS 197628, at *5-6 (S.D. Cal. May 24, 2013) (precluding patentee from asserting infringement as to a certain technology and under a doctrine of equivalents theory); *Fastek, Ltd. Liab. Co. v. Steco*, No. 10cv0972-MMA (CAB), 2011 U.S. Dist. LEXIS 111198, at *3-5 (S.D. Cal. Sep. 27, 2011) (striking portions of expert's invalidity report that covered prior art that was not disclosed in patentee's invalidity contentions). "The threshold question in deciding whether to strike an expert report is whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2016 U.S. Dist. LEXIS 191631, at *5 (N.D. Cal. Feb. 16, 2016). "If the theory is ***new***, prejudice is 'inherent in the assertion of a new theory after discovery has closed.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 3640694, at *2 (N.D. Cal. June 11, 2015) (internal citation omitted) (original emphasis).  Here the answer is simple— because Qualcomm failed to disclose any infringement contentions in this case, all of its experts' infringement theories are impermissible and incurably prejudicial and, therefore, should be stricken.

Such a result accords with courts' recognition that Patent Local Rules, like the ones in this District, were created to avoid exactly the type of ambushing that Qualcomm attempts here:

Case No. 3:17-CV-00108-GPC-MDD

> The Patent Local Rules exist to further the goal of full and timely discovery and to provide all parties with adequate notice and information with which to litigate their cases. The Rules "require both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." Likewise, the Rules "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed." "Although federal courts are generally lenient in allowing parties to amend pleadings, such is not the case with amending preliminary infringement contentions."

*Karl Storz Endoscopy-America v. Stryker Corp.*, No. 14-cv-00876-RS (JSC), 2016 U.S. Dist. LEXIS 176876, at *6 (N.D. Cal. Dec. 21, 2016) (denying motion to amend infringement contentions with new infringement theories because it would prejudice the accused infringer) (internal citations omitted).

The prejudice caused by untimely infringement contentions is difficult to cure because the party defending against infringement allegations must, at a late stage of the case, "find and retain additional experts and conduct other appropriate discovery." *See Eli Lilly & Co. v. Dr. Reddy's Labs., Ltd.*, No. 1:16-CV-0308-TWP-DKL, 2017 WL 1531834, at *7 (S.D. Ind. Apr. 28, 2017) (finding that the only alternative to precluding untimely infringement theories is enlargement of the discovery deadline and other case management deadlines, including the trial date).

For this reason, if a patentee fails to serve timely infringement contentions, it may not subsequently assert infringement. *See Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1325 (Fed. Cir. 2016) (affirming district court ruling that patentee could not assert infringement under the doctrine of equivalents because this theory was not disclosed in infringement contentions); *Enroute Sys. Corp. v. Arrivalstar S.A.*, No. C11-0451RSL, 2012 U.S. Dist. LEXIS 82818, at *2 (W.D. Wash. June 14, 2012) (dismissing a declaratory judgment defendant's counterclaims of infringement based on failure to serve infringement contentions); *BioGenex Labs. v. Ventana Med. Sys.*, No. C-03-3916-JF (PVT), 2005 U.S. Dist. LEXIS 45531, at

Case No. 3:17-CV-00108-GPC-MDD

1  *2-8 (N.D. Cal. Feb. 24, 2005) (granting summary judgment of noninfringement as

2  to patent for which plaintiff did not timely serve infringement contentions).

3        For similar reasons, courts place limits on the ability to amend pleadings to

4  assert new patents late in a case.  "[C]ourts deny leave to amend when the moving

5  party has engaged in undue delay, bad faith or dilatory tactics, where amendment

6  would result in undue prejudice to the opposing party, or where amendment would

7  be futile."  *Kennedy v. Nat. Balance Pet Foods, Inc.*, No. 07-CV-1082 H(RBB),

8  2008 WL 2053551, at *2 (S.D. Cal. May 13, 2008); *see also Jackson v. Bank of*

9  *Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) ("Prejudice to the opposing party is the

10  most important factor.").  Here, Qualcomm is attempting to assert infringement of

11  an unprecedented number of patents—*over* ███—without formally amending its

12  counterclaims.  Given the late stage of this case, and its steadfast disavowal of any

13  intent to assert infringement, Qualcomm could never meet the test to amend its

14  pleadings to add these patents to this case.

15        Therefore, this Court should strike Qualcomm's experts' infringement

16  opinions—regardless of whether they are labeled as such—because Qualcomm

17  failed to disclose these contentions before the deadline in the Case Management

18  Order, Qualcomm lacks good cause for its untimely disclosure, and Apple and the

19  CMs would be severely prejudiced if Qualcomm were allowed to circumvent the

20  Patent Local Rules and the Case Management Order in this way.  *See Patent Tr.*,

21  2013 U.S. Dist. LEXIS 197628, at *5-6 (precluding new infringement assertions in

22  portions of expert report and infringement contentions); *see also Finjan*, 2016 U.S.

23  Dist. LEXIS 191631, at *3 (striking portions of expert report that introduced new

24  infringement theories); *ASUS Computer Int'l v. Round Rock Research, LLC*, 2014

25  WL 1463609, at *4 (N.D. Cal. Apr. 11, 2014) (striking from expert reports certain

26  infringement theories because a patentee must "specifically include the theory" in its

27  infringement contentions and may not "clarify its theory at this late stage of the

28  litigation through an expert report"); *cf. Kennedy*, 2008 WL 2053551, at *2-3

(denying leave to amend complaint to "significantly expand the number of products" covered by claims because it would unduly prejudice the defendant by requiring additional discovery in limited time or significantly delaying discovery and other pretrial proceedings).[7]

**B.    The Court Should Strike Qualcomm's Experts' Opinions Regarding Alleged Infringement of the Nine Patents-in-Suit**

Qualcomm did not merely fail to serve timely infringement contentions for the nine patents-in-suit.  It intentionally and repeatedly disavowed any intent to allege infringement.  *See supra*, Section I.A; D501 (Order Denying Qualcomm Mtn. To Strike) at 59-60 (observing that the Case Management Order "recognized that Qualcomm was not claiming infringement").  Qualcomm deliberately did not raise infringement in its pleadings and successfully moved to dismiss the patents Apple added in its Amended Complaint and the CMs asserted in their Counterclaims on this ground.  *See generally* D167 (Order re Partial Dismissal).  Qualcomm also used its non-assertion of infringement as a basis to refuse engaging in related discovery. *See supra*, Section I.B.  Because Qualcomm did not assert infringement, neither Apple nor the CMs were on notice as to Qualcomm's infringement positions before receiving Qualcomm's expert reports.  Qualcomm, therefore, did not provide Apple

---

[7] *See also Adv. Micro Devices Inc. v. LG Elecs., Inc.*, No. 14-cv-01012-SI, 2017 WL 2774339, at *4-5 (N.D. Cal. June 26, 2017) (denying leave to amend and noting the defendant would "be prejudiced by the sheer size the case threatens to take"); *Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05-CV-4811, 2014 WL 4477932, at *3-4 (N.D. Ill. Sept. 10, 2014) (precluding expert opinions on the doctrine of equivalents and willfulness because these theories were not disclosed in infringement contentions); *EON Corp IP Holding LLC v. Sprint Spectrum, L.P.*, No. C-12-01011 JST (EDL), 2014 U.S. Dist. LEXIS 33658, at *14-15 (N.D. Cal. Mar. 12, 2014) (striking from expert reports accused products that were not disclosed in infringement contentions);  *Oracle Am., Inc. v. Google Inc.*, No. 10-03561 WHA, 2011 U.S. Dist. LEXIS 109544, at *9-10 (N.D. Cal. Sept. 26, 2011) (striking from expert report accused products identified for the first time in report); *Hologic, Inc. v. Senorx, Inc.*, No. C-08-00133 RMW, 2009 U.S. Dist. LEXIS 130693, at *42-53 (N.D. Cal. Oct. 30, 2009) (precluding patentee from advancing theory of infringement that was not disclosed in infringement contentions and granting accused infringer's motion for summary judgement of noninfringement); *Monolithic Power Sys. v. O2 Micro Int'l Ltd.*, Case. No. 08-04567 CW, 2009 U.S. Dist. LEXIS 101035, at *9-10 (N.D. Cal. Oct. 16, 2009) (striking portions of expert reports addressing accused products not disclosed in infringement contentions).

or the CMs with "adequate notice and information with which to litigate [these issues]," as required by the Patent Local Rules. *See Karl Storz*, 2016 U.S. Dist. LEXIS 176876, at *6. As a result, Qualcomm's late infringement assertions incurably prejudice Apple and the CMs. *See Eli Lilly*, 2017 WL 1531834, at *7.

For example, Dr. Villasenor opines that "[e]ach limitation of claims 1, 2, 4, and 5 of the '630 Patent is met, literally or equivalently, by the Investigated Products [i.e., certain Apple iPhones], due to both their compliance with the ETSI TS 133 102 standard and their functionality." Ex. 10 (Villasenor) ¶ 11. Other experts make similar allegations with respect to the '242, '822, '021, '725, '549, and '469 patents. Ex. 9 (Patents-in-Suit Chart). Although neither Dr. Laneman nor Dr. Villasenor used the word infringement in their analyses, collectively they alleged that the '494 patent is essential to the UMTS cellular standard and Apple products made by the CMs practice that standard, thereby asserting, in substance, that such Apple products infringe. *See, e.g.*, Ex. 11 (Laneman) at 115-16 (opining that claims 1-3, 9-11, 17, 19, 21, and 23 of the '494 patent is essential to 3GPP Releases 11-14); Ex. 10 (Villasenor) ¶ 254 (stating that the investigated Apple products "are compliant with and implement at least the 3GPP Release 11 standards, including UMTS and LTE cellular functionality").

Qualcomm's express disavowal of any infringement allegations amounts to waiver. *See Enroute*, 2012 U.S. Dist. LEXIS 82818, at *2 (dismissing counterclaims of infringement based on failure to serve infringement contentions); *see also BioGenex*, 2005 U.S. Dist. LEXIS 45531, at *2-8 (granting summary judgment of noninfringement as to patent for which plaintiff did not timely serve infringement contentions). Having intentionally decided not to assert infringement, Qualcomm should not be allowed to circumvent the Patent Local Rules and the Case Management Order by offering infringement opinions or analysis in its expert reports. *See* Ex. 9 (Patents-in-Suit Chart).

To avoid the extreme prejudice to Apple and the CMs from Qualcomm's

untimely infringement theories, the Court should strike from Qualcomm's June 29th expert reports any opinions relating to infringement of the nine patents-in-suit.  *See, e.g., Patent Tr.*, 2013 U.S. Dist. LEXIS 197628, at *5-6.  In particular, the Court should strike any statements in the reports of Drs. Laneman, Villasenor, Mitra, and Min relating to the alleged practice of the '242, '822, '021, '630, '725, '549, '469, and '494 patents by Apple's ███████████ devices, including with respect to allegations of direct and induced infringement, as well as the analysis of Apple products by Mr. Jones.

### C.   The Court Should Strike Qualcomm's Experts' Opinions Regarding Alleged Infringement of the Additional ██ Patents— 93 SEPs and ██ NEPs

The Court also should strike Qualcomm's experts' opinions relating to the ███ additional patents Qualcomm has tried to inject into the case.[8]  Qualcomm has been careful not to include the word "infringement" in connection with these ███ patents, and instead used synonyms for the concept—e.g., the SEPs are "essential" to one or more cellular standards that Apple "implements" and ███████████████ ████████████████████████████████████████████ ███████████████         This Court should not reward Qualcomm's wordsmithing— the substance of Qualcomm's allegations, not the name Qualcomm assigns to them, controls.  *Cf. Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998) (holding that in determining whether a patent license is exclusive "[t]he use of the word 'exclusive' is not controlling; what matters is the substance of the arrangement"); *Duncan v. Stuetzle*, 76 F.3d 1480, 1487 n.10, 1487-88 (9th Cir. 1996) (finding complaint alleged misappropriation of trade secrets where the complaint did not used the word "trade secret" but "arguably alleged facts satisfying the definition of 'misappropriation'").

---

[8] ████████████████████████████████████████████████████████████████████████████████████████████████

In substance, it is clear that Qualcomm is asserting that Apple products infringe these additional ▮ patents. *See Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1219-22 (Fed. Cir. 2014) (finding substantial evidence supported, in the circumstances of that case, a jury's infringement finding where the patentee's expert testified that the accused products practiced the standard and the standard required the asserted claim to be practiced).[9]  Indeed, Qualcomm has done precisely the kind of activity this Court noted would be necessary to create a case or controversy over alleged infringement of Qualcomm patents.  *See* D167 (Order re Partial Dismissal) at 29-30 (dismissing nine patents on which Apple and the CMs had sought declaratory judgment, in part, because "Qualcomm has not stated that the Additional Patents-in-Suit are 'actually essential' to a standard practiced by Apple").

The introduction of these patents is particularly improper because Qualcomm refused to identify them and provide claim charts disclosing its contentions.  For

---

[9] Although Apple and the CMs ask the Court to strike these late contentions so that Apple and the CMs are not burdened by having to respond to them by July 20th, Apple and the CMs disagree that the statements in Qualcomm's expert reports are sufficient to state a claim for infringement under substantive patent law at least because no claim construction has been conducted.  *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010) ("We hold that a district court may rely on an industry standard in analyzing infringement.  If a district court ***construes the claims*** and finds that the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement. . . . We acknowledge, however, that in many instances, an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement.  Or, as with the [patent-in-suit], the relevant section of the standard is optional, and standards compliance alone would not establish that the accused infringer chooses to implement the optional section.  In these instances, it is not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes.  In these cases, the patent owner must compare the claims to the accused products or, if appropriate, prove that the accused products implement any relevant optional sections of the standard." (emphasis added)); *WiAV Networks, LLC v. 3Com Corp.*, No. C 10-03448 WHA, 2010 WL 3895047, at *2 (N.D. Cal. Oct. 1, 2010) ("[M]ere compliance with an industry protocol does not necessarily establish that all compliant devices implement the protocol in the same way.  Different accused devices may achieve compliance with an industry standard or protocol through varying designs, with different tolerances, and with competing features.  Additionally, the *Fujitsu* decision observed that an asserted patent claim—***properly construed***—might not cover all implementations of an industry standard.  In such situations, the Federal Circuit emphasized that infringement would *have* to be proven on a product-by-product basis." (emphasis added)).

example, when Apple moved to compel Qualcomm to answer Interrogatory No. 44, Apple explained that it wanted Qualcomm to "identify and provide claim charts for the patents that it intends to rely on as part of expert discovery or at trial." D397 (Joint Mtn.) at 4. Qualcomm refused even to identify the patents upon which its experts would later analyze in their expert reports, asserting that these patents "are **not** under a claim of infringement or invalidity in this case." *Id.* at 10 (original emphasis).

Belying that representation, Qualcomm now presents expert opinions that collectively assert, in substance, that Apple products infringe ██ patents. For example, Drs. Andrews, Gitlin, and Jayant opine that 83 patents are SEPs with respect to UMTS and LTE standards and then other experts then opine that Apple's ████████████████ models each support communications in both UMTS and LTE standards. Ex. 15 (SEPs Chart); *see also* Ex. 16 (Jones) ¶ 14; Ex. 11 (Laneman) at 17; Ex. 10 (Villasenor) ¶ 256; Ex. 12 (Min) ¶¶ 12, 20; ███████ ███████. As a result, Apple is now subject to the prejudice it had tried to avoid by moving to compel Qualcomm to respond to Interrogatory No. 44: "In the absence of a substantive response to these interrogatories, Qualcomm will essentially be ambushing Apple with voluminous substantive patent analysis that Apple will see for the first time during the expert report phase (and after the close of fact discovery)." D397 (Joint Mtn.) at 6.

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

Specifically, Dr. Prince ███████████████████████ ███ "Qualcomm [NEPs] impact demand and allow Apple to command higher price premiums and, in turn, warrant meaningful royalty payments." *See, e.g.*, Ex. 23 (Prince) ¶¶ 250-51; *see also id.* at ¶¶ 10, 33, 37, 38, 40, 41, 44, 47, 48, 53, 55-58,



149; Ex. 24 (Reliance Chart). █

█ *See*

D466 (Qualcomm Answer and Amended Countercl.) at Counts II, III, IV.

█ if Apple's products infringe these patents, and they are valid, enforceable, and not exhausted by Qualcomm's sale of the baseband chipset used in Apple's products made and sold by the CMs.  *See* D83 (Apple Amended Complaint) ¶¶ 11, 127.  The same is true regarding the SEPs, including patents Qualcomm contends are essential to the 5G standard, which is not currently even implemented in the U.S.  If Qualcomm had wanted to assert that Apple products infringe these █ patents, it should have done so long before now—indeed, well in advance of the claim construction hearing.  Qualcomm's failure to disclose its theories relating to these patents prevented Apple from taking discovery on and preparing defenses with respect to them, a direct violation of the Patent Local Rules.  *See Karl Storz*, 2016 U.S. Dist. LEXIS 176876, at *6.



*See Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012) (affirming the striking of theories from expert reports that relied on evidence buried in disclosed documents and not highlighted in interrogatory response); *Avocent Redmond Corp. v. Rose Elecs.*, 2012 WL 4903270, *2 (W.D. Wash. May 29. 2012) (noting that "by providing too much information and too many potential legal theories, the parties are disclosing nothing at all").

Qualcomm also failed to identify some of the ███ patents as falling within the scope of the CMs' licenses and hid the rest among thousands of others.  Specifically, Qualcomm refused to provide a straight-forward response about which of its patents are actually licensed to the CMs, disclosing instead lists of thousands of patents that "may be" licensed and thousands that "may not" be licensed.  *See* D472 (Joint Mtn.) at 17-18 & n.3; *see also id.* at 22.

---

[10] Although Qualcomm's Corrected Supplemental Answer to Interrogatory 35 does not state that the patents in Tab 1 of the various exhibits are, in fact, licensed, Qualcomm made that representation in its briefing.  *See* D472 at 10-11, 20, 22.

[11]

1 ███████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████ Qualcomm's expert reports

4 reveal that Qualcomm actually does contend that these ██ patents are licensed

5 under the CM agreements, but failed to put Apple and the CMs on proper notice of

6 this contention in its interrogatory responses.[12]

7      Because Qualcomm failed to disclose during the fact discovery period that it

8 would rely on these ██ new patents to support its contentions, Qualcomm should

9 not be allowed to rely on them now. *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d

10 1363, 1376 n.4 (Fed. Cir. 2008) ("Conclusory expert reports, eleventh hour

11 disclosures, and attempts to proffer expert testimony without compliance with *Rule*

12 *26* violate both the rules and principles of discovery, and the obligations lawyers

13 have to the court. Exclusion and forfeiture are appropriate consequences to avoid

14 repeated occurrences of such manipulation of the litigation process."); *Abbott Labs.*

15 *v. Syntron Bioresearch Inc.*, No. 98-CV-2359 H(POR), 2001 WL 34082555, at *2

16 (S.D. Cal. Aug. 24, 2001) ("A party that without substantial justification fails to

17 disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior

18 response to discovery as required by Rule 26(e)(2), is not, unless such failure is

19 harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any

20 witness or information not so disclosed…" (quoting Fed. R. Civ. P. 37(c)(1))); *see*

21 *also Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637

22 F.3d 1269, 1287 (Fed. Cir. 2011) ("[T]he district court did not abuse its discretion

23 by ruling that Dr. McClellan could not testify on matters not disclosed in his expert

24 report or deposition, and that he could not rely on testing that was not disclosed to

25

26 [12] Apple and the CMs unsuccessfully moved to compel Qualcomm to provide this information so that Apple and the CMs could prepare their defenses regarding the

27 licensed patents on which Qualcomm would later rely for trial. *See* D472 (Joint Mtn.) at 20 (Apple and the CMs "simply want Qualcomm to confirm that a patent is

28 actually covered by a license if Qualcomm is going to argue that a patent contributes to the value of that license."); D506 (5/18/18 Order).

1  Siemens during discovery.").

2        Qualcomm's failure to give Apple and the CMs timely notice of its intention

3  to rely on and introduce technical analysis about these ███ patents is especially

4  egregious, considering Qualcomm's repeated objections of burden for providing

5  Apple and the CMs with any patent analysis.  According to Qualcomm, "█████

6  ████████████████████████████████████████████████████

7  ████████████████████████████████████████████" D397 (Joint

8  Mtn.) at 9; *see also* D470 (Joint Mtn.) at 24-25 ("[D]etermining whether a patent

9  claim is essential to particular releases of a standard requires a significant

10  investment of time or resources.  Doing so requires not only studying a patent, but

11  also a deep understanding of the requirements of the release of a standard under

12  immediate consideration.  Such analysis takes days to complete for a single patent."

13  (internal quotations omitted)).  Yet, Qualcomm now expects Apple and the CMs to

14  conduct this burdensome analysis within the ***three-week period*** for rebuttal expert

15  reports for ███ newly-asserted patents.  By Qualcomm's own calculations, such an

16  undertaking for ███ patents would take over a year to perform.

17        Accordingly, Apple and the CMs ask the Court to strike and not allow

18  Qualcomm to introduce any of its new infringement, essentiality, or other technical

19  analyses and other expert opinions based thereon.  *See Enroute*, 2012 U.S. Dist.

20  LEXIS 82818, at *2 (dismissing counterclaims based on failure to serve

21  infringement contentions); *see also BioGenex*, 2005 U.S. Dist. LEXIS 45531, at *2-

22  8 (granting summary judgment as to patent for which plaintiff did not timely serve

23  infringement contentions).  Otherwise, Apple and the CMs will suffer incurable

24  prejudice by this late disclosure and the truncated timeline to respond with rebuttal

25  expert reports.  *See Eli Lilly*, 2017 WL 1531834, at *7.

26        **D.  If Qualcomm's Experts Are Not Opining on Infringement, Then
          the Court Should Strike the Opinions as Irrelevant and Prejudicial**

27

28  Because Qualcomm carefully avoiding having its experts use the word

"infringement" in their reports, it may repeat its refrain that it had no obligation to comply with the Patent Local Rules, provide infringement contentions, and disclose that it intended to rely on technical analyses of these ■ additional patents.  Indeed, Qualcomm has asserted, incorrectly, that it can show the value of its patent portfolio without proving that Apple infringes any patents.  That is not so because Apple and the CMs can owe no royalty on any SEP without a finding that Apple products actually infringe that particular patent and that patent is also valid, enforceable, and not exhausted by Qualcomm's sale of its baseband chipset.  *See, e.g.*, *Zenith Elecs., LLC v. Sceptre, Inc.*, No. CV14-05150-JAK (AJWx), 2015 U.S. Dist. LEXIS 33560, at *2-5 (C.D. Cal. Feb. 5, 2015) (rejecting a request for a "stay of all aspects . . . other than the determination of the [FRAND] license rate" because such a determination "could be entirely academic" since the defendant had "not admitted that it practices the patents-in-suit or that they are in fact essential"); *see also Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.* ("*Ericsson*"), No. 15-CV-00154-JD, 2015 WL 1802467, at *1-2 (N.D. Cal. Apr. 20, 2015) (noting that, even though it might be "imprudent or uneconomical" to license individual patents, Apple could not be "compelled to take a license . . . on a portfolio-wide basis"); D83 (Apple Am. Compl.) ¶¶ 11, 127.

Therefore, to the extent Qualcomm asserts that its experts are not providing infringement opinions, then those opinions are wholly irrelevant, highly prejudicial, and misleading.  Such opinions would be offered to support the legally flawed argument that Qualcomm can collect FRAND royalties without proving infringement.  Therefore, the Court should strike these opinions on those grounds as well.  *See* Fed. R. Evid. 402, 403; *see also United States v. Marshall*, 8 F.3d 32 (9th Cir. 1993) ("Expert evidence may be excluded if it poses an undue risk of harassment, prejudice, or confusion of the issues." (internal quotations omitted) (emphasis omitted)); *Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 09-CV-140-GPC-KSC, 2014 WL 1286392, at *8 (S.D. Cal. Mar. 28, 2014)

("[T]he Court strikes the expert testimony under the standard prejudice test of Rule 403. . . . This action involves complicated facts and there is no need to confuse the jury with unrelated facts." (internal citations omitted)).  The Court should strike these opinions now, rather than waiting until the motion in limine stage, so that Apple and the CMs are not forced to respond to Qualcomm's voluminous reports in merely three weeks.

### E.   Alternatively, the Court Should Hold a Case Management Conference To Reset the Schedule

#### 1.   Qualcomm's Introduction of Infringement Assertions Triggers Additional Discovery and Claim Construction

If the Court were to deny Apple and the CMs' motion to strike, then the current schedule is unworkable.  Under the Amended Scheduling Order, D508, rebuttal expert disclosures are due on July 20, 2018, and expert depositions must conclude by August 10, 2018.  Under this schedule, Apple and the CMs would have only three weeks to address the ▮ patents Qualcomm has injected into the case at this late stage.

Under the Patent Local Rules, Qualcomm's new infringement allegations trigger a series of orderly disclosures by the parties relating to invalidity and claim construction contentions, followed by claim construction briefing.  These Rules also establish a timeline for the Court to hold claim construction hearing(s) and issue claim construction order(s).  Specifically, the party accused of infringement—i.e., Apple and the CMs—has 60 days after service of infringement contentions to serve invalidity contentions.  P.L.R. 3.3.  In a case involving ▮ new patents, the Court has discretion to extend that time.  *See* P.L.R. 1.3.  Indeed, in a co-pending case involving only eight Apple patents asserted against Qualcomm,[13] Qualcomm argued that 60 days was not enough time for invalidity contentions, proposing almost four months instead.  1375 Action, D115 (Joint Case Management Statement).

---

[13] *Qualcomm Inc. v. Apple Inc.*, Case No. 3:17-cv-1375-DMS-MDD (S.D. Cal.) ("1375 Action").

Following invalidity contentions, the parties' claim construction-related discovery, including disclosing contentions, and briefing and related material will require a period of about three months.  *See* P.L.R. 4.1-4.4 (98 days).  The Rules then provide for a claim construction hearing 28 days later, subject to the convenience of the Court's calendar.  P.L.R. 4.5.  Multiple sets of briefs and hearings will be required to address the large number of patents Qualcomm now asserts, which may necessitate extending the deadlines provided by the Rules.  Only *after* the Court completes its claim constructions for these additional patents will the case be ready for rebuttal expert reports.[14]  This is true with respect to all of the expert reports because Qualcomm's non-technical experts—e.g., Dr. Prince—█████ ███████████████████████████████████████████████████████ , and Qualcomm supports its position on FRAND-related issues, which permeate through all the claims and counterclaims, based on the opinions of its technical experts.

### 2. The Schedule Should Be Reset To Accommodate the Required Discovery and Claim Construction

If the Court does not strike the offending reports, then pursuant to P.L.R. 1.4, Apple and the CMs request a Case Management Conference so the Court may set a new schedule to govern discovery related to Qualcomm's infringement allegations in accordance with the Patent Local Rules.[15]

As part of that new schedule, Apple and the CMs also asks the Court to include a new deadline for Apple and the CMs to disclose rebuttal expert witnesses. The original Scheduling Order required the parties to designate their respective

---

[14] Here, the Court issued an Amended Scheduling Order on May 21, 2018, shortly after it issued its claim construction order on May 16, 2018.  D508; D501.

[15] Even if the Court were to treat Qualcomm's expert disclosures as infringement contentions under P.L.R. 3-1, the earliest that rebuttal reports would be due is April 20, 2019.  This deadline accounts for 158 days for invalidity contentions, claim construction disclosures, and briefing, plus 90 days for the claim construction hearing and rulings, 14 days for any supplementation of Qualcomm's opening expert reports in light of the claim construction rulings, and 21 days for reb██████████████████████████████████████████████████████████that █████ .

experts by January 12, 2018, and rebuttal experts by February 12, 2018.  D116.  The Amended Scheduling Orders did not change those deadlines.  D322; D395; D508.

 As a result, Apple and the CMs were not put on notice that they needed to retain experts in these kinds of technologies.  Ex. 15 (SEPs Chart); *see also, e.g.,* Ex. 17 (Madisetti) ¶ 21; Ex. 18 (Michalson) ¶¶ 14, 61, 74-75, 93; Ex. 20 (Pedram) ¶ 25; Ex. 21 (Wigdor) ¶ 19.

Apple and the CMs should have the opportunity to retain additional experts to address the new technical subject matter Qualcomm is attempting to introduce into the case.  Therefore, Apple and the CMs ask that the new scheduling order include a deadline for Apple and the CMs to identify additional rebuttal experts.

## III.   CONCLUSION

Accordingly, the Court should strike from Qualcomm's June 29th expert reports any opinions relating to infringement of the nine patents-in-suit; the infringement, essentiality, and other technical opinions relating to the ▮ additional patents; and any reference to these opinions by other Qualcomm experts.

Should this Court deny the motion to strike, Apple and the CMs moves this Court, in the alternative, to hold a Case Management Conference to discuss resetting deadlines in this case to allow the parties to comply with the Patent Local Rules for the new patents and the Court to conduct claim construction for all of them.

Dated:  July 10, 2018

Respectfully submitted,

By:  */s/ Seth M. Sproul*

Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Phone:  858-678-5070 / Fax: 858-678-5099

Ruffin B. Cordell, DC Bar No. 445801,
*pro hac vice*, cordell@fr.com
Lauren A. Degnan, DC Bar No. 452421,
*pro hac vice*, degnan@fr.com
Fish & Richardson P.C.
1000 Maine Avenue, Ste. 1000
Washington, D.C.  20024
Phone:  202-783-5070 / Fax:  202-783-2331

William A. Isaacson, DC Bar No. 414788,
*pro hac vice*, wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520,
*pro hac vice*, kdunn@bsfllp.com
Boies, Schiller & Flexner LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Phone: 202-237-2727 / Fax: 202-237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

By:  */s/ Jennifer J. Rho*

THEODORE J. BOUTROUS JR. (SBN 132099)
tboutrous@gibsondunn.com
DANIEL G. SWANSON (SBN 116556)
dswanson@gibsondunn.com
JASON C. LO (SBN 219030)
jlo@gibsondunn.com
JENNIFER J. RHO (SBN 254312)
jrho@gibsondunn.com
MELISSA PHAN (SBN 266880)
mphan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel:  (213) 229-7000
Fax:  (213) 229-7520

CYNTHIA E. RICHMAN (DC Bar No. 492089;
Pro Hac Vice) crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.

Washington, DC 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs Compal Electronics, Inc., FIH Mobile Ltd., Hon Hai Precision Industry Co., Ltd., Pegatron Corporation, and Wistron Corporation*

HUGH F. BANGASSER (Pro Hac Vice)
hugh.bangasser@klgates.com
CHRISTOPHER M. WYANT (Pro Hac Vice)
chris.wyant@klgates.com
J. TIMOTHY HOBBS (Pro Hac Vice)
tim.hobbs@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Telephone: +1 206 623 7580
Facsimile: +1 206 370 6371

CAITLIN C. BLANCHE (SBN 254109)
caitlin.blanche@klgates.com
K&L GATES LLP
1 Park Plaza Twelfth Floor
Irvine, CA  92614
Telephone: +1 949 253 0900
Facsimile: +1 949 253 0902

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Wistron Corporation*

Case No. 3:17-CV-00108-GPC-MDD

# **FILER'S ATTESTATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court of the Southern District of California, I certify that authorization for the filing of this document has been obtained from each of the other signatories shown above and that all signatories have authorized placement of their electronic signature on this document.

Dated:  July 10, 2018

                                        */s/ Seth M. Sproul*
                                        Seth M. Sproul

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 10, 2018 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Executed on July 10, 2018, at San Diego, California.


*/s/ Seth M. Sproul*

Seth M. Sproul

Case No. 3:17-CV-00108-GPC-MDD

# TABLE OF EXHIBITS

| Exhibit No. | Pages |
|---|---|
| 1 | 1-3 |
| 2 | 4-6 |
| 3 | 7-9 |
| 4 | 10-16 |
| 5 (Filed Under Seal) | 17-19 |
| 6 | 20-21 |
| 7 (Filed Under Seal) | 22-42 |
| 8 (Filed Under Seal) | 43-60 |
| 9 (Filed Under Seal) | 61-65 |
| 10 (Filed Under Seal) | 66-205 |
| 11 (Filed Under Seal) | 206-414 |
| 12 (Filed Under Seal) | 415-723 |
| 13 (Filed Under Seal) | 724-845 |
| 14 (Filed Under Seal) | 846-1612 |
| 15 | 1613-1633 |
| 16 (Filed Under Seal) | 1634-1906 |
| 17 (Filed Under Seal) | 1907-2025 |
| 18 (Filed Under Seal) | 2026-2177 |
| 19 (Filed Under Seal) | 2178-2422 |
| 20 (Filed Under Seal) | 2423-2810 |
| 21 (Filed Under Seal) | 2811-3145 |
| 22 (Filed Under Seal) | 3146-3184 |
| 23 (Filed Under Seal) | 3185-3323 |
| 24 (Filed Under Seal) | 3324-3331 |
| 25 (Filed Under Seal) | 3332-3338 |

Case No. 3:17-CV-00108-GPC-MDD

| 26 (Filed Under Seal) | 3339-6640 |
|---|---|
| 27 (Filed Under Seal) | 6641-7917 |

Case No. 3:17-CV-00108-GPC-MDD