1   Evan R. Chesler (N.Y. Bar No. 1475722; *pro hac vice*)
    echesler@cravath.com
2   CRAVATH, SWAINE & MOORE LLP
    825 Eighth Avenue
3   New York, NY 10019
    Telephone:  (212) 474-1000
4   Facsimile:  (212) 474-3700

5   David A. Nelson (Ill. Bar No. 6209623; *pro hac vice*)
    davenelson@quinnemanuel.com
6   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    191 N. Wacker Dr., Suite 2700
7   Chicago, Illinois 60606
    Telephone:  (312) 705-7400
8   Facsimile:  (312) 705-7401

9   Karen P. Hewitt (SBN 145309)
    kphewitt@jonesday.com
10  Randall E. Kay (SBN 149369)
    rekay@jonesday.com
11  JONES DAY
    4655 Executive Drive, Suite 1500
12  San Diego, California 92121
    Telephone:  (858) 314-1200
13  Facsimile:  (844) 345-3178

14  [*Additional counsel identified on signature page*]

15

16  *Attorneys for*
    QUALCOMM INCORPORATED

17                     **UNITED STATES DISTRICT COURT**

18                    **SOUTHERN DISTRICT OF CALIFORNIA**

19

20  IN RE: QUALCOMM LITIGATION            No. 17-cv-0108-GPC-MDD

21                                        **QUALCOMM INCORPORATED'S**
                                          **RESPONSE IN OPPOSITION TO**
22                                        **APPLE INC. AND THE**
                                          **CONTRACT MANUFACTURERS'**
23                                        **MOTION TO STRIKE PORTIONS**
                                          **OF QUALCOMM**
24                                        **INCORPORATED'S EXPERT**
                                          **REPORTS THAT OPINE ON**
25                                        **INFRINGEMENT AND, IN THE**
                                          **ALTERNATIVE, TO HOLD A**
26                                        **CASE MANAGEMENT**
                                          **CONFERENCE**
27

28

1
2

# TABLE OF CONTENTS

PAGE

3   I.     INTRODUCTION ..................................................................................... 1

4   II.    BACKGROUND ...................................................................................... 3

5          A.    Qualcomm Timely and Properly Disclosed All Reports At Issue ......... 3

6          B.    Apple Has Known Since 2016 That Qualcomm Experts Would
                 Analyze Exemplary Qualcomm Patents To Demonstrate Value ........... 5
7
           C.    The Court Denied Apple's Motions Attempting to Compel
8                Advance Disclosure Of These Same Technical Expert Opinions
                 During Fact Discovery ......................................................................... 7
9
           D.    Apple Has Repeatedly Attempted To Delay This Case........................ 9
10
    III.   ARGUMENT .......................................................................................... 10
11
           A.    Qualcomm Was Not Required To Serve Infringement
12               Contentions Pursuant to the Patent Local Rules and This Court's
                 Decisions ............................................................................................ 10
13
                 1.    Qualcomm Was Not Required to Provide Infringement
14                     Contentions For The Nine Patents-in-Suit ................................ 10

15               2.    Qualcomm Was Not Required to Provide Infringement
                       Contentions For The Individual Patents Relied Upon By
16                     Qualcomm's Experts with Respect to the Value of
                       Qualcomm's Patent Portfolio ................................................... 13
17
           B.    Apple and the CMs Were On Notice of Qualcomm's Essentiality
18               and Infringement Theories Relating to the Patents-in-Suit ................. 14

19         C.    Apple and the CMs Were On Notice That Qualcomm's Experts
                 Would Opine On Individual Patents in Qualcomm's Portfolio to
20               Show Value ......................................................................................... 15

21         D.    Qualcomm's Expert Reports Relating To Individual Patents In
                 Qualcomm's Portfolio Are Clearly Relevant....................................... 17
22
           E.    The Court Should Reject Apple's Third Attempt To Gain
23               Advantage By Delaying This Case—While It Withholds Billions
                 Of Dollars It Owes Qualcomm ........................................................... 19
24
    IV.    CONCLUSION ...................................................................................... 22
25

26
27
28

1

## TABLE OF AUTHORITIES

2                                                                                        **Page**

3                                                    <u>Cases</u>

4  *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*,
      No. 14-CV-01012-SI, 2017 WL 2774339 (N.D. Cal. June 26, 2017) ...........12
5
   *ASUS Computer Int'l v. Round Rock Research, LLC*,
6     2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ...............................................12

7  *BioGenex Labs. v. Ventana Med. Sys.*,
      No. C-03-3916-JF (PVT), 2005 U.S. Dist. LEXIS 45531
8     (N.D. Cal. Feb. 24, 2005)...............................................................................12

9  *Eli Lilly & Co. v. Dr. Reddy's Labs., Ltd.*,
      No. 1:16-CV-0308-TWP-DKL, 2017 WL 1531834
10    (S.D. Ind. Apr. 28, 2017)................................................................................12

11 *Enroute Sys. Corp. v. Arrivalstar S.A.*,
      No. C11-0451RSL, 2012 U.S. Dist. LEXIS 82818
12    (W.D. Wash. June 14, 2012) ...........................................................................12

13 *EON Corp IP Holding LLC v. Sprint Spectrum, L.P.*,
      No. C-12-01011 JST
14    (EDL), 2014 U.S. Dist. LEXIS 33658
      (N.D. Cal. Mar. 12, 2014) ..............................................................................12
15
   *Finjan, Inc. v. Proofpoint, Inc.*,
16    No. 13-cv-05808-HSG, 2016 U.S. Dist. LEXIS 191631
      (N.D. Cal. Feb. 16, 2016)...............................................................................12
17
   *Howmedica Osteonics Corp. v. Zimmer, Inc.*,
18    822 F.3d 1312 (Fed. Cir. 2016).......................................................................12

19 *Johnson v. Mammoth Recreations, Inc.*,
      975 F.2d 604 (9th Cir. 1992)...........................................................................20
20
   *Kennedy v. Nat. Balance Pet Foods, Inc.*,
21    No. 07-CV-1082 H RBB, 2008 WL 2053551
      (S.D. Cal. May 13, 2008) ...............................................................................12
22
   *Medtronic Inc. v. Boston Sci. Corp.*,
23    558 F. App'x 998 (Fed. Cir. 2014)..................................................................12

24 *Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
      571 U.S. 191 (2014) .......................................................................................11
25
   *Monolithic Power Sys. v. O2 Micro Int'l Ltd.*,
26    No. C 08-04567 CW, 2009 U.S. Dist. LEXIS 101035
      (N.D. Cal. Oct. 16, 2009) ...............................................................................13

27

28

*Oracle Am., Inc. v. Google Inc.*,
      No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 109544
      (N.D. Cal. Sep. 26, 2011) .................................................................. 12

*Patent Tr. v. LG Elecs. U.S.A., Inc.*,
      No. 12-CV-2731-H
      (KSC), 2013 U.S. Dist. LEXIS 197628
      (S.D. Cal. May 24, 2013) .................................................................. 12

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
      No. 05-CV-4811, 2014 WL 4477932 (N.D. Ill. Sept. 10, 2014) ................... 12

## <u>Statutes</u>

Fed. R. Civ. P. 16(b)(4) ................................................................................ 20

1 I.    **<u>INTRODUCTION</u>**

2          Apple seeks to strike Qualcomm's expert reports that directly rebut Apple's

3 central claim that Qualcomm has charged unfair and unreasonable royalties.[1]

4 Qualcomm has told Apple since August 2017 that it would support its royalties by

5 presenting evidence on the value of patents in its portfolio.  Qualcomm said this in

6 status reports, at hearings, in written discovery, and in motion practice.  Indeed,

7 ***three times*** Apple filed motions asking this Court to require Qualcomm to disclose

8 in interrogatory responses the very expert opinions at issue here.  This Court denied

9 those motions three times, expressly ruling these opinions were appropriate for

10 expert testimony and any earlier disclosure was not required.

11         Qualcomm's reports do exactly what Qualcomm said they would do and what

12 this Court said they could do—demonstrate through technical analysis the value and

13 relevance of both standard essential and non-standard essential patents in

14 Qualcomm's portfolio.  There was nothing surprising about these reports, and

15 nothing to justify Apple's feigned claim of emergency (which it asserted almost two

16 weeks after receiving the reports).  Indeed, Apple served on Qualcomm technical

17 expert analyses on 4,197 patent claims across 119 previously undisclosed patents.

18         This motion is just the latest in Apple's seriatim attempts to delay this case,

19 even though Apple is the plaintiff.  Apple has moved multiple times to extend

20 discovery deadlines and postpone the trial, and now seeks to vacate all deadlines and

21 proceed through endless claim construction on over 200 patents.  Through delays

22 and complex patent-by-patent proceedings, Apple seeks to avoid the very issue on

23 which it pretends to base its complaint—a technical evaluation of Qualcomm's

24 portfolio.  Every extension of time to indulge these tactics harms Qualcomm,

25 because Apple is withholding billions of dollars in royalty payments.

26 ────────────────

27        [1]  The Contract Manufacturers joined Apple's motion and advance the same
positions.  This Opposition only refers to Apple unless context indicates that the
28 parties should be treated differently.

Apple's motion fails at every turn.  First, Apple argues that certain Qualcomm expert reports should be stricken because Qualcomm did not serve infringement contentions under the local rules for the nine patents-in-suit.  But the Court already rejected this argument.  (Dkt. 117 at 1.)  The local rules are perfectly clear that a declaratory judgment defendant like Qualcomm which has not brought a claim for patent infringement need not serve infringement contentions.  Apple makes the same argument for Qualcomm's reports discussing exemplary portfolio patents, and it fares no better there—those reports do not allege infringement of any patents nor has Qualcomm brought any claim for infringement of those patents, and therefore infringement contentions are not required.  The exemplary portfolio patent reports show that Qualcomm's patents have significant technical value and are relevant to Apple's business, not that they are infringed.

Second, Apple clams it was "ambushed" and taken by "surprise" by Qualcomm's reports.  To the contrary, Qualcomm disclosed in its joint status report almost one year ago that it would be submitting exactly these types of expert reports (Apple Ex. 2, Joint Discovery Plan (lodged August 9, 2017)) and did so repeatedly in September 2017 (Dkt. 127 at 1), in open court in October 2017 (Ex. A, 10/13/17 Hearing Tr. at 74:17-20; 76:5-7), in expert disclosures in January of this year, and in three separate sets of discovery briefing over the past few months (Dkt. 369, 397, 470).

Third, Apple's argument is premised on the incorrect statement that Qualcomm added "infringement allegations for hundreds of patents."  (Mot. at 1.)  For example, Apple states "Drs. Andrews, Gitlin, and Jayant introduce *infringement allegations* for 93 patents that Qualcomm has declared as SEPs."  (Mot. at 4) (emphasis added.)  In reality, each report states: "I have determined that each of the patents discussed below *is essential* to at least one of the UMTS, LTE, or 5G NR standards."  (*E.g.*, Andrews Rep. at ¶ 19) (emphasis added.)  Apple understands this distinction; Apple's own Complaint distinguishes

1    between essentiality and infringement, asserting that the declaratory judgment

2    patents are "not essential" and not "infringed" in separate paragraphs.  (*See, e.g.*,

3    D.I. 83 at ¶¶ 283, 284.)  Apple's arguments as to the NSEP reports are similarly

4    incorrect regarding the contents of those reports.

5         Fourth, Apple complains about the length of Qualcomm's expert reports,

6    arguing that it would be "prejudicial" and "unfair" for Apple to respond during the

7    current deadlines.  But Apple has been on notice of Qualcomm's proposed opinions

8    for almost one year and therefore should have been prepared to respond.  Further,

9    Apple's claim strains credulity given the reports it served—Apple served an expert

10   report surveying 1,788 Qualcomm patents, analyzing 4,197 separate patent claims

11   across 1,200 pages of analysis and charting, ***none*** of which Apple disclosed to

12   Qualcomm during fact discovery.  Qualcomm has been working diligently to

13   respond to Apple's patent analysis and would have met the Court's deadlines but for

14   the delay caused by this motion practice.

15        Qualcomm respectfully submits that the Court should reject Apple's latest

16   attempt to delay this case and should reinstate the current scheduling order

17   (accounting for the time to decide this motion).  At most, the Court should permit a

18   modest extension to the rebuttal expert report and expert discovery deadlines, to

19   account for the delay Apple caused with its "emergency" motion.

20   **II.    BACKGROUND**

21        A.    Qualcomm Timely and Properly Disclosed All Reports At Issue

22        As an initial matter, Qualcomm timely disclosed each and every expert report

23   at issue in this Motion.  They fall into two categories—(1) Drs. Andrews, Gitlin,

24   Jayant, Madisetti, Michalson, Parulski, Pedram, and Wigdor, whose opinions relate

25   to the value of individual Qualcomm patents for the purpose of establishing the

26   value of Qualcomm's portfolio; and (2) Drs. Laneman, Min, Mitra, and Villasenor,

27   whose opinions relate to the essentiality of the patents-in-suit and Apple's

28

1   infringement of the patents-in-suit[2]—on January 12, 2018, pursuant to the Court's

2   Scheduling Order.  The first group relates to Qualcomm's portfolio of patents that is

3   at the core of the licensing dispute between the parties.  The second group relates to

4   the nine patents-in-suit.  The second grouping consists of infringement reports, and

5   the first does not.  Apple conflates these distinct sets of expert reports throughout its

6   Motion, by characterizing the reports in both sets as infringement reports.

7           Qualcomm's disclosures explicitly stated that each of these technical experts

8   was expected to provide testimony relating to Qualcomm's patents, including as to

9   their "significance, validity, *essentiality*, and scope," as well as their "adoption and

10  *use*."  (Apple Ex. 7, Qualcomm's Expert Disclosures) (emphasis added.)  Apple was

11  thus on notice for many months of the specific experts and the nature of their

12  reports.

13          Although Qualcomm was not obligated to disclose its expert opinions until

14  opening reports were due, for the nine patents-in-suit which are explicitly subject to

15  Apple's claim of non-infringement, Qualcomm disclosed its infringement theories in

16  voluminous responses to Apple's interrogatories.  For example, in response to

17  Apple's Interrogatory Number 3, Qualcomm provided Apple with approximately

18  250 pages of essentiality charts for the patents-in-suit, identifying exemplary

19  portions of the standards that each patent is essential to, on an element-by-element

20  basis, for one or more claims of each patent.  (Ex. B, Qualcomm Response to

21  Interrogatory 3.)  In response to Apple's Interrogatory Number 4, Qualcomm

22  provided Apple with over 750 pages of charts for the patents-in-suit which show, on

23  an element-by-element basis, how Apple's devices practice the standards.  (Apple

24  Ex. 14, Qualcomm Response to Interrogatory 4.)  In response to Apple's

25  _____

26          [2]  The Essentiality and Infringement Report of Villasenor, for example, opines
    "on whether claims 1, 2, 4, and 5 of the '630 Patent, claims 1, 2, 3, 4, 6, 7, and 8 of
27  the '242 Patent, and claim 12 of the '822 Patent are met by certain Apple Inc.
    ("Apple") iPhone products that contain Intel baseband processors[.]"  (Apple Ex.
28  10.)

1    Interrogatory Number 38, Qualcomm provided a 120-page narrative response

2    explaining how elements of the patents-in-suit relate to the standards.  (Ex.  C,

3    Qualcomm Response to Interrogatory 38.)  In sum, where Apple made non-

4    infringement allegations regarding the patents-in-suit, Qualcomm provided its

5    responses during fact discovery with voluminous substantive disclosures.

6              B.    Apple Has Known Since 2016 That Qualcomm Experts Would Analyze

7                    Exemplary Qualcomm Patents To Demonstrate Value

8              Apple's Complaint placed the value of Qualcomm's portfolio—and the

9    patents therein—squarely at issue.  Apple alleges that Qualcomm sends "usurious

10   patent royalty bills to Apple," and that it "has been overcharged billions of dollars."

11   (Dkt. 83 at 1; ¶ 4.)  Apple claims that Qualcomm's royalties are too high, alleging

12   that "[b]y charging Apple █████████ per device for a license to an unspecified

13   portion of its portfolio of patents . . . Qualcomm's licensing practices violate its

14   FRAND promise . . ."  (Dkt. 83 at ¶ 159.)  In response, Qualcomm stated at the

15   outset of this litigation that Qualcomm "welcomes a robust, meaningful evaluation

16   of its patent portfolio."  (Apple Ex. 2, Rule 26(f) Joint Discovery Plan, at 18; Dkt.

17   127 (Qualcomm's Reply in Support of Its Motion for Partial Dismissal of Apple's

18   Complaint) at 1-2.)

19         Qualcomm's evaluation of the value of its patent portfolio has always taken

20   the form of exemplar technologies and patents.  During licensing negotiations in

21   2016, before Apple filed suit, Qualcomm ██████████████████████████████

22   ████████████████████████████████████████████████████████████████

23   █████████████████████████████████████████████████████████

24   ██████████████████████████████████  (Ex. D, QNDCAL04499067.)

25   That type of analysis had even been requested by Apple, who was ████████████

26   ████████████████████  (Ex. E, Q2014FTC02874945 (notes of a May 1, 2015

27   meeting between Qualcomm and Apple).)  That Qualcomm would seek to defend its

28

1  portfolio in this case in the exact same way cannot have come as any surprise to

2  Apple.

3      Indeed, Qualcomm has repeatedly disclosed that it would prove the value of

4  its patent portfolio by presenting expert evidence relating to specific patents.  In the

5  parties' Joint Discovery Plan (dated August 9, 2017), Qualcomm stated that "it is

6  manifestly false for Apple to assert that Qualcomm asks 'that [a] royalty be

7  determined prior to any consideration of the individual patents that make up

8  [Qualcomm's] portfolio.'  Qualcomm fully expects to prove the value of its

9  portfolio by reference to, among other things, *individual patents and patent*

10 *families*."  (Apple Ex. 2, Joint Discovery Plan, at 18-19 (emphasis added).)

11     Two months later, during an October 13, 2017 hearing on Qualcomm's

12 motion to dismiss nine of the eighteen patents-in-suit, counsel for Qualcomm made

13 clear that "[b]oth Qualcomm and Apple will introduce as evidence in this case and

14 will seek discovery in the first instance of a lot of different patents that are in the

15 portfolio . . ."  (Ex. A, 10/13/17 Hearing Tr. at 74:17-20; *see also* 76:5-7 ("Both

16 parties are going to offer all kinds of evidence about the value of patents that

17 are . . . within the portfolio.").)  Qualcomm's counsel expressly addressed the fact

18 that although Qualcomm has not brought an affirmative claim of patent

19 infringement, Qualcomm would rely on the value of patents in its portfolio to defend

20 its license agreements:

21          [I]t's important to clarify that Qualcomm's defense of the claims
           brought by Apple . . . relate to its portfolio and its collection of
22          royalties.  But Qualcomm, to defend itself, does not and has not
           asserted infringement of all of the patents that Apple and the contract
23          manufacturers practice . . . I don't want this Court to think that, when
           we say we only charted 20 [patents] at the point Apple filed a lawsuit
24          that we only believe that there are 20 patents that have value with
           respect to the contract manufacturers or Apple.  Our entire portfolio has
25          value with respect to the contract manufacturers and Apple, and we do
           intend to defend the lawfulness of the agreements we have entered into.
26          *That's different than bringing a patent infringement case.*

27 (Ex. A, 10/13/17 Hearing Tr. at 80:13-81:7 (emphasis added).)  At that same

28 hearing, some nine months ago, Apple's counsel recognized that Qualcomm

intended to "talk about the patents all the time, just not using the patent local rules and not within the formal structure of patent counts." (Ex. A, 10/13/17 Hearing Tr. at 79:10-13). Apple claims that "Apple, the CMs, and this Court accepted and relied on Qualcomm's representation" that Qualcomm was not asserting a claim for infringement in dismissing nine of the eighteen patents-in-suit. (Mot. at 3.) Qualcomm's representation was accurate—Qualcomm has not asserted an infringement claim in this case. Moreover, at the very same hearing, Qualcomm's counsel explained that it would defend the value of its license agreements by reference to individual patents.

C.     The Court Denied Apple's Motions Attempting to Compel Advance Disclosure Of These Same Technical Expert Opinions During Fact Discovery

The selection of patents and analysis of those patents to demonstrate the value of Qualcomm's portfolio is the proper subject of expert testimony. Apple contested that basic proposition at least three times, seeking early disclosure of the technical opinions Qualcomm's experts have now offered. Each time Apple's motions were properly denied by this Court.

*First*, Apple moved to compel further responses to Apple Interrogatories 43 and 44 on March 26, 2018, seeking:

> [T]he identification of patents for which Qualcomm intends to present evidence at trial, either as to the patents being licensed to the CMs (43) or necessary for use in a cellular network (44). Qualcomm has conceded during meet and confers that it may rely upon such analysis at trial . . . if Qualcomm intends to present evidence on additional patents beyond those already in suit, those patents and the related analysis are *per se* relevant.

(Dkt. 397 at 3-4). In addition to the "identification of patents for which Qualcomm intends to present evidence at trial," Apple requested claim charts relating to the same. (Dkt. 397 at 2.). Apple's motion to compel concedes that Qualcomm had disclosed to Apple "during meet and confers" that Qualcomm would rely on patents

1  beyond the patents-in-suit at trial.  Apple went on to argue that unless Qualcomm
2  identified and charted the individual SEPs it would rely upon at trial, "Qualcomm
3  will essentially be ambushing Apple with voluminous substantive patent analysis
4  that Apple will see for the first time during the expert discovery phase (and after the
5  close of fact discovery)."  (Dkt. 397 at 6.)

6       In response, Qualcomm stated that "[w]hat Apple seeks now are any claim
7  charts that Qualcomm's experts may currently be creating to support opinions they
8  may offer regarding the value of Qualcomm's patent portfolio . . . Apple improperly
9  seeks a preview of Qualcomm's expert reports in advance of the Court-ordered
10 deadlines for expert discovery."  (Dkt. 397 at 8.)  The Court denied Apple's motion
11 and held that ***Qualcomm "need not provide the evidence to be relied upon by its
12 experts" until the deadline for service of expert reports***.  (Dkt. 407 at 3.)

13      *Second*, Apple moved to compel further responses to Apple Interrogatories
14 35, 52, and 53 on May 2, 2018, demanding a claim-by-claim analysis of thousands
15 of patents for essentiality.  (Dkt. 470.)  In response to Apple's motion, Qualcomm
16 stated that the "rights conveyed by the SULAs are valuable because they include
17 valuable patents.  Qualcomm's experts will demonstrate as much . . . To the extent
18 Qualcomm's experts conduct additional essentiality analysis to support their
19 valuation opinions that analysis will be provided as part of expert discovery."
20 (Dkt. 470 at 25.)  Relying on its prior decision, this Court again denied Apple's
21 motion, citing its prior order and ruling that "Qualcomm need not create claim
22 charts" for purposes of fact discovery.  (Dkt. 506 at 2-3 (emphasis added).)

23      *Third*, Apple moved to compel Qualcomm to provide further responses to
24 Apple Interrogatories 23 and 24 on March 9, 2018, relating to Qualcomm's
25 valuation of certain of its patents, including SEPs.  (Dkt. 369.)  In response,
26 Qualcomm stated that "[q]uestions of 'value' are the proper subject of expert
27 discovery."  (Dkt. 369 at 9.)  The Court agreed, holding that "***Qualcomm may wait***

28

1  *until its expert opines regarding these values* and supplement their responses at that

2  time, absent other agreement by the parties." (Dkt. 381 at 3 (emphasis added).)

3        Apple was on full notice that Qualcomm would submit the expert opinions

4  that it did—moving to compel those opinions three times—and therefore any claim

5  of "surprise" is untenable.

6        D.    <u>Apple Has Repeatedly Attempted To Delay This Case</u>

7        Apple has repeatedly sought modifications to the Court's scheduling orders.

8  On January 19, 2018, Apple and the CMs requested that the final pretrial conference

9  be pushed back four months, from September 28, 2018 to January 29, 2019. (Dkt.

10  285 at 2.) Qualcomm's proposed schedule requested that the pretrial conference

11  remain on September 28th, as scheduled. (Dkt. 285 at 3.)

12        At a hearing on February 7, 2018, counsel for Qualcomm explained that even

13  a 90 day delay translates to an additional $1 billion being withheld from Qualcomm

14  by Apple and the CMs, (Ex. F, Feb. 7, 2018, Hearing Tr. at 99:19-23.), and

15  previewed that Apple was likely to "attempt to create a good reason" for further

16  delay. (*Id.* at 88:19-20.) After the hearing, the Court declined to adopt Apple's

17  proposed modification to the pretrial conference. (Dkt. 322 at 3.)

18        Apple and the CMs next contended they needed additional time for fact

19  discovery, asking the Court to push all deadlines back by 75 days. (Dkt. 490 at 2,

20  7.)[3] Qualcomm argued in response that no significant modification to the schedule

21  was necessary, and that Apple had not been diligent in discovery and its reasons for

22  seeking the delay were merely pretextual. (Dkt. 490 at 8-11.) The Court entered an

23  Amended Scheduling Order requiring fact discovery to be completed by May 31 and

24  pushing the pretrial scheduling conference back 63 days. (Dkt. 508 at 1, 3.)

25        Now, Apple and the CMs have filed this Motion requesting, as alternative

26  relief that the Court hold a Case Management Conference to again modify the

27  _____

28     [3] An amended version of the motion was also filed a day later. (Dkt. 492.)

scheduling order by resetting all dates on an open-ended basis to "allow the parties to comply with the Patent Local Rules for the new patents and the Court to conduct claim construction for all of them."  (Mot. at 25.)

## III.   <u>ARGUMENT</u>

Apple argues that Qualcomm cannot provide expert opinions on the value of Qualcomm patents because Qualcomm itself has not brought claims of infringement against Apple.  But *Apple* has not only brought claims of *noninfringement* of the nine patents-in-suit, it has challenged the value of Qualcomm's patent portfolio and asks the Court to disgorge royalties Qualcomm charged for licenses to that portfolio. Thus, Apple claims it can attack the value of Qualcomm's patent portfolio without seeking a declaration of noninfringement, but Qualcomm cannot defend the value of the portfolio without alleging infringement of each of the patents in it.  There is no support for Apple's position and Apple does not cite a single case striking technical expert reports in these circumstances.

A.   <u>Qualcomm Was Not Required To Serve Infringement Contentions Pursuant to the Patent Local Rules and This Court's Decisions</u>

Apple argues that "because Qualcomm failed to disclose any infringement contentions in this case, all of its experts' infringement theories are impermissible and incurably prejudicial and, therefore, should be stricken."  (Mot. at 10.)  Apple's premise is simply wrong: Qualcomm was not required to serve infringement contentions for either the nine patents-in-suit or the patents relied upon by Qualcomm's experts to show the value of Qualcomm's patent portfolio.

1.   *Qualcomm Was Not Required to Provide Infringement Contentions For The Nine Patents-in-Suit*

This Court has already made clear that Qualcomm was not required to provide infringement contentions for the nine patents-in-suit because Qualcomm has not asserted a claim for patent infringement.  Patent Local Rule 3.5(a) provides that where a party files a claim for declaratory judgment for noninfringement, "Patent

1   Local Rules 3.1 and 3.2 [the rules governing infringement contentions] will not

2   apply unless and until a claim for patent infringement is made."  The Court

3   recognized this fact in the Case Management Order, which noted that "Defendant is

4   not, at this time, claiming infringement." (Dkt. 117 at 1.)  In interpreting the Case

5   Management Order, Judge Curiel observed that "[n]otably, the Magistrate Judge's

6   Order recognized that Qualcomm was not claiming infringement . . ." (Dkt. 501 at

7   59.)  Judge Curiel also observed, based on "a review of the Patent Local Rules

8   template," that "the Magistrate Judge removed the deadline for filing as of right

9   Amended Infringement Contentions under Local Rule 3.6(a), but retained the

10  deadline for filing as of right Amended Invalidity contentions." (Dkt. 501 at 59.)

11       Apple previously—and unsuccessfully—argued that "Patent L.R. 3.5 should

12  not apply because Qualcomm at least implicitly has alleged infringement by denying

13  Apple's allegations that the patents-in-suit are not essential to certain standards and

14  that Apple's products do not infringe."  (Apple Ex. 2, Joint Discovery Plan, at 4.)

15  As noted above, the Court rejected this position, and for good reason.  Rule 3.5(a)

16  provides that declaratory judgment non-infringement defendants like Qualcomm

17  need not serve infringement contentions, but further provides that the party seeking

18  declaratory relief must serve invalidity contentions under Patent Local Rules 3.3 and

19  3.4.

20       Relevant cases are clear that while Qualcomm was not required to

21  counterclaim for infringement or to serve infringement contentions to defend against

22  Apple's declaratory judgment claims, it must still be allowed to defend itself.  In

23  *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, the Supreme Court held that the

24  patentee bears the burden of persuasion as to infringement even when it is the

25  defendant to a declaratory judgment proceeding and is not asserting its own patent

26  infringement claims.  571 U.S. 191, 201 (2014).  On remand, the Federal Circuit

27  upheld the district court's conclusion that the defendant's expert report had not

28  carried the burden because it had failed to "opine on the presence of structure

meeting every claim limitation[.]"  *Medtronic Inc. v. Boston Sci. Corp.*, 558 F. App'x 998, 1000 (Fed. Cir. 2014).  Thus, as the party bearing the burden on this issue, Qualcomm was obligated under the Court's scheduling order to serve its opening expert reports on the nine patents-in-suit as it did.  Apple cannot prevent Qualcomm from defending itself through a baseless procedural challenge.

The cases Apple cites are all inapposite because they involved parties who, unlike Qualcomm, asserted claims for patent infringement in their pleadings.[4]  None

---

[4]  *Eli Lilly & Co. v. Dr. Reddy's Labs., Ltd.*, No. 1:16-CV-0308-TWP-DKL, 2017 WL 1531834, at *1 (S.D. Ind. Apr. 28, 2017) ("Eli Lilly and Company ('Lilly') commenced this patent-infringement action . . ."); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1315 (Fed. Cir. 2016) ("The district court held that Defendants–Appellees . . . did not infringe the asserted claims[.]"); *Enroute Sys. Corp. v. Arrivalstar S.A.*, No. C11-0451RSL, 2012 U.S. Dist. LEXIS 82818, at *2 (W.D. Wash. June 14, 2012) (regarding counterclaims for infringement); *BioGenex Labs. v. Ventana Med. Sys.*, No. C-03-3916-JF (PVT), 2005 U.S. Dist. LEXIS 45531, at *1 (N.D. Cal. Feb. 24, 2005) ("Plaintiff . . . filed the complaint in this action on August 25, 2003, asserting ongoing infringement . . ."); *Patent Tr. v. LG Elecs. U.S.A., Inc.*, No. 12-CV-2731-H (KSC), 2013 U.S. Dist. LEXIS 197628, at *3 (S.D. Cal. May 24, 2013) ("Plaintiff MPT filed a complaint for patent infringement against LG"); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2016 U.S. Dist. LEXIS 191631 (N.D. Cal. Feb. 16, 2016) (striking patent infringement plaintiff's expert report); *ASUS Computer Int'l v. Round Rock Research, LLC*, 2014 WL 1463609, at *4 (N.D. Cal. Apr. 11, 2014) (involving defendant who asserted patent infringement counterclaims against declaratory judgment claims); *Kennedy v. Nat. Balance Pet Foods, Inc.*, No. 07-CV-1082 H RBB, 2008 WL 2053551, at *1 (S.D. Cal. May 13, 2008) (not involving patents); *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-CV-01012-SI, 2017 WL 2774339, at *1 (N.D. Cal. June 26, 2017) ("In the complaint, [plaintiff] accused defendants . . . of infringing nine AMD patents."); *Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05-CV-4811, 2014 WL 4477932, at *1 (N.D. Ill. Sept. 10, 2014) ("[plaintiff] contends that three of [defendant]'s electronic trading products include a component, the DOMTrader Window, that is covered by certain claims of [the patents-in-suit.]"); *EON Corp IP Holding LLC v. Sprint Spectrum, L.P.*, No. C-12-01011 JST (EDL), 2014 U.S. Dist. LEXIS 33658, at *9 (N.D. Cal. Mar. 12, 2014) ("Plaintiff sued HTC and other Defendants in the Eastern District of Texas, alleging that Defendants . . . directly infringed the '491 patent and that HTC and others indirectly infringed . . ."); *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 109544 (N.D. Cal. Sep. 26, 2011) (striking in part plaintiff's infringement expert report); "Plaintiffs . . ., who make the MammoSite Radiation Therapy System . . ., move for summary judgment that the Contura infringes certain

of the cases involved defendants to declaratory judgment claims who had not also asserted their own patent infringement claims.  Apple's cases are therefore irrelevant to the issue Apple raises (for the second time) regarding the local rules.

> 2. *Qualcomm Was Not Required to Provide Infringement Contentions For The Individual Patents Relied Upon By Qualcomm's Experts with Respect to the Value of Qualcomm's Patent Portfolio*

Nor was Qualcomm required to provide infringement contentions for the individual patents relied upon to show the value of Qualcomm's portfolio.  As set forth above, this Court held ***three separate times*** that Qualcomm need not provide claim charts for the patents relied upon by its experts, or otherwise disclose the contents of its expert reports, prior to service of those reports.  (Dkt. 381 at 3 ("Qualcomm may wait until its expert opines regarding the[] values" of certain of Qualcomm's individual patents); Dkt. 407; Dkt. 506.)

Apple ignores two of the Court's rulings on this issue (Dkt. 381 and Dkt. 506), and summarily dismisses the Court's holding relating to Interrogatories 43 and 44 in one sentence, arguing that the Court reached its decision "not knowing that Qualcomm's experts would later make allegations of infringement of 93 SEPs." (Mot. at 6.)  First, these experts do not make any allegations of infringement. Moreover, Apple's contention that the Court did not appreciate the nature of the dispute at the time is not persuasive, particularly given that Apple's briefing then advanced precisely the same argument that Apple makes now.  Apple claimed that Qualcomm would be "ambushing Apple with voluminous substantive patent analysis that Apple will see for the first time during the expert discovery phase," and

claims of the [patents-in-suit.]"); *Monolithic Power Sys. v. O2 Micro Int'l Ltd.*, No. C 08-04567 CW, 2009 U.S. Dist. LEXIS 101035, at *4 (N.D. Cal. Oct. 16, 2009) ("O2 Micro filed a counterclaim against MPS for infringement of U.S. Patent No. 7,417,382[.]").

1   that the timing of such disclosure was inconsistent with "the spirit" of the Court's

2   schedule and the patent local rules. (Dkt. 397 at 6.) The Court nevertheless held

3   that Qualcomm need not create claim charts or disclose the evidence to be relied

4   upon by its experts in advance of the deadline for service of the reports. (Dkt. 407

5   at 3). Apple took full advantage of those holdings, serving on Qualcomm, as one

6   example, an expert report analyzing 4,197 separate patent claims over 1,200 pages

7   of analysis, none of which were disclosed during fact discovery.

8        Apple was fully aware that these reports were coming—there was never any

9   ambush, nor any basis for an "emergency" motion.

10       B.   Apple and the CMs Were On Notice of Qualcomm's Essentiality and

11            Infringement Theories Relating to the Patents-in-Suit

12       Apple and the CMs claim that they were not "on notice as to Qualcomm's

13   infringement positions before receiving Qualcomm's expert reports" with respect to

14   the patents-in-suit, and have thus been "incurably prejudice[d]." (Mot. at 13.) Not

15   so. During fact discovery, Qualcomm provided over 1,000 pages of charts and

16   narrative interrogatory responses relating to the essentiality of the patents-in-suit, as

17   well as how Apple's devices practice the standards. (Exs. B and C, Apple Ex. 14,

18   Qualcomm Response to Interrogatories 3, 4, and 38.) These responses fully disclose

19   the essential facts on which Qualcomm's expert analyses and opinions are based.

20       Apple has not challenged Qualcomm's discovery responses to Interrogatories

21   3, 4, and 38, and has elsewhere acknowledged that "vast numbers of claim charts

22   and related analysis" concerning the patents-in-suit have been produced by the

23   parties. (Dkt. 397 at 5.) Qualcomm's disclosure of its essentiality and infringement

24   theories to Apple through these voluminous and unchallenged discovery responses

25   disproves any claim of prejudice to Apple.

26

27

28

C.      Apple and the CMs Were On Notice That Qualcomm's Experts Would Opine On Individual Patents in Qualcomm's Portfolio to Show Value

As with the patents-in-suit, Apple and the CMs again claim that they "will suffer incurable prejudice by th[e] late disclosure" of Qualcomm's technical expert reports concerning individual patents in Qualcomm's portfolio. (Mot. at 21.) Apple's assertion that Qualcomm's disclosures were "late" rests on a faulty premise. Apple argues—incorrectly—that this set of reports alleges infringement. (Mot. at 15.) To be clear, the expert reports[5] of Andrews (Ex. G), Gitlin (Ex. H), Jayant (Ex. I), Madisetti (Apple Ex. 17), Michalson (Apple Ex. 18), Parulski (Apple Ex. 19), Pedram (Apple Ex. 20), and Wigdor (Apple Ex. 21) are not infringement reports. They reflect the experts' opinions regarding the importance and value of certain patents in Qualcomm's patent portfolio, as such patents relate to technologies utilized in smartphones. The purpose of these reports is to establish the value of Qualcomm's patent portfolio to support Qualcomm's royalties and defend against Apple's allegations in its complaint. As Apple concedes, these reports never mention "infringement." (Mot. at 15.) This is because these experts do not offer infringement opinions, and indeed they could not because Qualcomm has made no claims for infringement of those patents.

In any case, Qualcomm's disclosure of the patents relied upon by its experts to establish the value of Qualcomm's portfolio is not "late"—Qualcomm made its disclosures pursuant to the timeline set by the Court. For example, Apple argues that the introduction of patents in Qualcomm's technical expert reports "is particularly improper because Qualcomm refused to identify them and to provide claim charts disclosing its contentions," in response to Interrogatory 44. (Mot. at 16-17.) Apple glosses over the fact that this Court held that it would be "overly

_____

[5] For pertinent excerpts of each expert's summary of opinion/conclusion, *see* Appendix A.

1    burdensome and not proportional for Qualcomm to create claim charts" in response

2    to Apple's interrogatory, and ordered that "Qualcomm need not provide the

3    evidence to be relied upon by its experts until the expert reports are served."  (Dkt.

4    407 at 3 (emphasis added).)[6]

5         Apple's and the CMs' claims that they have been prejudiced by Qualcomm's

6    expert reports relating to the value of patents in Qualcomm's portfolio are not

7    convincing.  For one, as Qualcomm established in Section II.C above, Apple has

8    been on notice that Qualcomm would rely on individual patents to establish the

9    value of its portfolio for nearly a year.

10        Second, Apple itself served a 1,200-plus page expert report by Dr. Matthew

11   Valenti, evaluating Qualcomm's patent portfolio.  (Ex. J, Valenti Report.)  Dr.

12   Valenti sampled 1,788 patents (including 58,889 claims) from Qualcomm's

13   portfolio, and Dr. Valenti's report discusses a subset of 119 patents (including 4,197

14   claims).  (Ex. J, Valenti Report.)  Apple should not be heard on its burden argument

15   with respect to Qualcomm's technical reports (Mot. at 21), when Apple has likewise

16   served an expert report referencing hundreds upon hundreds of Qualcomm patents.

17   And unlike Qualcomm, Apple did not disclose its intent to rely on hundreds of

18   Qualcomm patents prior to serving its reports.

19

20

21        [6] Apple also points to Interrogatory Nos. 41 and 42.  But Apple ignores that

22   Qualcomm objected to both Interrogatories as seeking premature expert opinions (as
     it did the other interrogatories seeking patent analysis), and ignores Qualcomm's

23   actual responses.  Interrogatory No. 41 incorporated the detailed information
     regarding Qualcomm's technology and contributions to standards in Qualcomm's

24   Counterclaims (*e.g.*, ¶¶ 52-133) and several other interrogatory responses.

25   Interrogatory No. 42 asked for contentions regarding how Qualcomm satisfied its
     FRAND commitments "during its negotiations" with Apple; it should come as little

26   surprise that Qualcomm discussed the "composition and strength" of its patent
     portfolio or that it cited the claim charts provided during those negotiations.  None

27   of that limits the expert analysis Qualcomm has properly presented on the ordered
     timeline for expert disclosures.

28

1

    **D.**    <u>Qualcomm's Expert Reports Relating To Individual Patents In</u>

2

                    <u>Qualcomm's Portfolio Are Clearly Relevant</u>

3

    Qualcomm's expert reports on patents from its portfolio that are both

4

standards essential and not standards essential are crucial aspects of its defense to

5

Apple's claims regarding the value of Qualcomm's portfolio.  Apple's experts argue

6

that Qualcomm's patents do not have value commensurate with Qualcomm's

7

royalties.  To defend the value of its portfolio, Qualcomm is entitled to present

8

expert opinions showing that the patent assets in Qualcomm's portfolio have

9

significant technical value.

10

    Apple argues that Qualcomm's expert reports should be stricken as not

11

relevant to any claim in this case to the extent that they alone do not establish

12

infringement.  (Mot. at 21-23.)  This position is meritless.  As explained in

13

Qualcomm's expert reports, it is precisely by discussing exemplary patents that

14

companies are able to present the value of their large portfolios during negotiations

15

without having to conduct a patent-by-patent analysis for each asset in the portfolio:



16

17

18

19

20

21

22

23

24

25

26

(Ex. K, Stasik Report at 4, 56.)  Qualcomm presented exemplar technologies and

27

patents to Apple in the course of licensing negotiations between the parties in 2016,

28

at Apple's Request.  (Exs. D, E.)  More specifically, Qualcomm's presentation

1 highlighted Qualcomm technology relating to, for example, biometric sensors,

2 position location, camera and image processing, power management and user

3 interfaces—the same types of technologies addressed by Qualcomm's experts in this

4 litigation.  (Ex. D.)

5      In its own negotiations with licensors, Apple relies on the same type of

6 information that is provided by Qualcomm's expert reports to determine royalties.

7 For example, Apple has ███████████████████████████

8 ████████████████████████████████████

9 ████████████████████████████████

10 ██████

11 ██████████████████████████████████████

12

13

14

15

16 ████████████████ Qualcomm's expert reports address these

17 issues—showing, for example, the relevance of Qualcomm's portfolio to Apple's

18 products.  In Apple's negotiations with ███████ Apple wrote that it would

19 ██████████████████████████████████

20 ███████████████████████████████████

21 ███████████████████████████████████

22 ████████████████████████████████████

23 ████████████ Qualcomm's expert reports provide this same information:

24 details regarding exemplary Qualcomm patents to show the value of Qualcomm's

25 portfolio.

26      Exchanging the type of analysis performed by Qualcomm's experts is also

27 common in industry portfolio licensing negotiations generally.  For example,

28 ████████████████████████████████████



1 
2
3
4
5
6
7
8
9
10
11
12
13

14      Apple cannot avoid the fact that Qualcomm's expert reports are consistent

15 with the way that patent portfolio values are established in real world licensing

16 negotiations; indeed, Apple knows this to be true because Apple itself has

17 participated in exactly these types of negotiations, exchanging exactly these types of

18 information.

19      E.      The Court Should Reject Apple's Third Attempt To Gain Advantage By

20              Delaying This Case—While It Withholds Billions Of Dollars It Owes

21              Qualcomm

22      Apple's request to hold a Case Management Conference is really a proposal

23 to alter the basic landscape of this case—from an antitrust and contract case to a

24 case entirely about the patents Qualcomm's experts intend to refer to in support of

25 their valuation opinions.  The intended effect of Apple's proposal is readily apparent

26 from its own briefing when it proposes to delay the case *283* days, and then goes on

27 to say that "even more time could be warranted given that *27 times more patents*

28 must be addressed (i.e., 243 vs the nine original patents)."  (Mot. at 24 (emphasis in

1   original).)  Expert opinions about the importance of inventions does not change the

2   basic contours of this case.

3        Apple's motion represents Apple's third effort to significantly alter the

4   Court's Scheduling Order to continue to delay the final resolution of a case it filed

5   in the first instance.  As long as Apple can prevent a final ruling on the claims and

6   defenses at issue, it profits by withholding billions of dollars owed to Qualcomm.

7        A party seeking to amend a court-ordered schedule must show "good cause".

8   (*See* Fed. R. Civ. P. 16(b)(4).)  That requires demonstrating that the schedule

9   "cannot reasonably be met despite the diligence of the party seeking the extension"

10   and that the opposing party will not be prejudiced.  *Johnson v. Mammoth*

11   *Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  Apple's request to completely

12   restructure the schedule of this case is not supported by good cause and is highly

13   prejudicial to Qualcomm.  Had Apple exercised reasonable diligence, it would have

14   been able to meet the current schedule given the months of notice it has already

15   been given as to Qualcomm's infringement theories.  Reasonable diligence would

16   also allow it to rebut Qualcomm's technical expert reports under Qualcomm's

17   proposed modified schedule.  Indeed, the experts that it has now disclosed for its

18   technical rebuttals are experts that it has retained in its other patent cases involving

19   Qualcomm.[7]  (*See* Ex. L, 2018-07-13 Email fr Ahmad to Medling.)  For its part,

20   Qualcomm is prepared to rebut Dr. Valenti's 1,200 page technical expert report

21   relating to 119 patents on the schedule proposed below (and would have been by the

22   original deadline of July 20th, absent the delay manufactured by Apple).

23

24   _____

25        [7]  After filing its motion, Apple disclosed that it is not only planning to introduce
fifteen new and previously undisclosed expert opinions from thirteen previously
26   undisclosed experts, but that those experts will be rebutting many of Qualcomm's
non-patent reports, including those relating to FRAND, portfolio valuation, industry
27   licensing, French law, and others.  (*Id.*)  Qualcomm's patent reports merely provided
a convenient excuse for Apple to extend discovery for all of its experts.
28

1    No reason exists to modify the schedule as Apple requests.  Apple's stated

2    purpose for requesting a Case Management Conference is to discuss modifying

3    dates to "allow the parties to comply with the Patent Local Rules for the new patents

4    and the Court to conduct claim construction for all of them."  (Mot. at 25.)  The

5    implication is clear—that the Court should suspend all remaining dates, including

6    pretrial, until Qualcomm has charted each and every patent discussed in its expert

7    reports, and the Court is subjected to claim construction briefing on each one.  But,

8    for the reasons discussed above, the Court has already rejected the notion that

9    Qualcomm is required to chart hundreds of patents, and the Local Rules do not

10   require it.

11   The proposed modifications would also be severely prejudicial to Qualcomm.

12   The practical effect of Apple's proposal would be to force Qualcomm to either

13   acquiesce to scheduling limbo as it is forced to chart and brief hundreds of patents

14   without any trial date in sight, or to decline to substantively defend itself against

15   Apple's allegations concerning the value of its patent portfolio so that it can obtain a

16   trial date sometime in the coming months.

17   Each day that the resolution of the claims in the case is delayed means

18   millions more dollars in revenue Qualcomm is not receiving.  Such delay is not only

19   detrimental to Qualcomm, whose market position and business is clouded by

20   ongoing litigation against Apple, but also imposes unjustified burdens on the Court

21   in requiring it to rule on scores of claim construction issues: according to Apple,

22   "[o]nly after the Court completes its claim constructions for these additional patents

23   will the case be ready for rebuttal expert reports."  (Mot. at 24 (emphasis in

24   original).)

25   By filing an ex parte motion on an issue the Court has previously addressed,

26   Apple has already impeded the ability of the parties to meet the current

27   schedule.  Because an adjustment to the current schedule now appears unavoidable,

28   Qualcomm proposes that the rebuttal expert report and expert deposition schedule

1  be extended only to the extent necessary to resolve this motion, and in any event no

2  longer than 21 additional days for the parties' rebuttal expert report and expert

3  discovery deadlines.  Because there is ample time in the existing schedule for this

4  extension, it need not result in any change to the pretrial conference date.

5  **IV.   <u>CONCLUSION</u>**

6         Accordingly, for the foregoing reasons, the Court should deny Apple's

7  request to strike Qualcomm's expert reports.  Qualcomm respectfully requests that

8  the Court reinstate the current scheduling order, accounting for the time to decide

9  this motion.   Qualcomm requests, in the alternative, that the Court order a modest

10 extension to the rebuttal expert report and expert discovery deadlines no more than

11 21 days each, to account for the disruption Apple caused with its motion, and

12 maintain all other current case deadlines, including the pretrial conference date.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3   DATED:  July 18, 2018             Respectfully submitted,

4

5

6   By */s/ Stephen A. Swedlow*
                                    STEPHEN A. SWEDLOW

7
                                    **JONES DAY**
8                                   Karen P. Hewitt (SBN 145309)
                                    kphewitt@jonesday.com
9                                   Randall E. Kay (SBN 149369)
                                    rekay@jonesday.com
10                                  4655 Executive Drive, Suite 1500
                                    San Diego, California 92121
11                                  Telephone:  (858) 314-1200
                                    Facsimile:   (844) 345-3178
12
                                    **CRAVATH, SWAINE & MOORE LLP**
13                                  Evan R. Chesler (*pro hac vice*)
                                    (N.Y. Bar No. 1475722)
14                                  echesler@cravath.com
                                    Keith R. Hummel (*pro hac vice*)
15                                  (N.Y. Bar No. 2430668)
                                    khummel@cravath.com
16                                  Richard J. Stark (*pro hac vice*)
                                    (N.Y. Bar No. 2472603)
17                                  rstark@cravath.com
                                    Antony L. Ryan (*pro hac vice*)
18                                  (N.Y. Bar No. 2784817)
                                    aryan@cravath.com
19                                  Gary A. Bornstein (*pro hac vice*)
                                    (N.Y. Bar No. 2916815)
20                                  gbornstein@cravath.com
                                    J. Wesley Earnhardt (*pro hac vice*)
21                                  (N.Y. Bar No. 4331609)
                                    wearnhardt@cravath.com
22                                  Yonatan Even (*pro hac vice*)
                                    (N.Y. Bar No. 4339651)
23                                  yeven@cravath.com
                                    Vanessa A. Lavely (*pro hac vice*)
24                                  (N.Y. Bar No. 4867412)
                                    vlavely@cravath.com
25                                  Worldwide Plaza, 825 Eighth Avenue
                                    New York, New York 10019
26                                  Telephone:  (212) 474-1000
                                    Facsimile:  (212) 474-3700
27
                                    **QUINN EMANUEL URQUHART &**
                                    **SULLIVAN, LLP**
28                                  David A. Nelson (*pro hac vice*)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
Stephen Swedlow (*pro hac vice*)
(Ill. Bar No. 6234550)
stephenswedlow@quinnemanuel.com
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401

Alexander Rudis (*pro hac vice*)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

***Attorneys for Defendant and
Counterclaim-Plaintiff***
**QUALCOMM INCORPORATED**

QUALCOMM'S OPPOSITION RE APPLE'S MOTION TO STRIKE PORTIONS OF EXPERT REPORTS

1

## <u>CERTIFICATE OF SERVICE</u>

2      The undersigned hereby certifies that a true and correct copy of the above and

3  foregoing document has been served on July 18, 2018 to all counsel of record who

4  are deemed to have consented to electronic service via the Court's CM/ECF system

5  per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic

6  mail, facsimile and/or overnight delivery.

7      Executed on July 18, 2018 at Los Angeles, California.

8                                    */s/ Joseph Sarles*
                                     Joseph Sarles
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28