1
2
3
4
5
6
7 UNITED STATES DISTRICT COURT
8 SOUTHERN DISTRICT OF CALIFORNIA
9

10 APPLE INC.,

Case No.: 3:17-cv-00108-GPC-MDD

11 Plaintiff,

12 v.

**ORDER AFFIRMING MAGISTRATE JUDGE DEMBIN'S ORDER DENYING APPLE'S MOTION TO COMPEL [DKT. NO. 547]**

13 QUALCOMM INCORPORATED,

14 Defendant.

15

16

## I.    INTRODUCTION

17

18 Before the Court is Apple's motion to set aside Magistrate Judge Dembin's Minute Order Denying Apple's Motion to Compel further testimony and documents from non-party Dr. Jacobs pursuant to Federal Rule of Civil Procedure 72.  Dkt. No. 547.

19

20 This case is currently in discovery and involves *inter alia* antitrust, patent, and contract claims.  On June 14, 2018, Apple Inc. and non-party Dr. Jacobs filed a Joint Motion for Determination of Discovery dispute concerning Apple's March 30, 2018 subpoena duces tecum to Dr. Jacobs and the reopening of Dr. Jacobs's deposition.  Dkt. No. 518.  Both Apple and Dr. Jacobs concurrently filed a memorandum of points and authorities in support of their respective positions.  Dkt. Nos. 518-1, 518-2.

21

22

23

24

25

26

27

28

1

On June 22, 2018, Magistrate Judge Dembin issued a minute order resolving the Joint Motion by denying Apple's Motion to Compel.  Dkt. No. 535.  On July 6, 2018, Apple filed an Objection to Non-Dispositive Pretrial Order of Magistrate Judge Pursuant to Fed. R. Civ. P. 72.  Dkt. No. 547.  Dr. Jacobs filed a response on July 24, 2018.  Dkt. No. 568.  Apple filed its reply on July 31, 2018.  Dkt. No. 573.

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument.  Having considered the moving papers and the applicable law, the Court **OVERRULES** Apple's Objections and will **AFFIRM** Magistrate Judge Dembin's order **DENYING** Apple's Motion to Compel and Request to Reopen Dr. Jacobs's deposition.

## II.    FACTUAL BACKGROUND

Dr. Jacobs served as Qualcomm's CEO between 2005 through 2014.  Dkt. No. 547 at 3.  Dr. Jacobs was also Executive Chairman from 2009 until March 23, 2018.  He was forced to leave this position after he expressed an interest in acquiring Qualcomm in order to take the company private.  Dkt. No. 568 at 6. Dr. Jacobs's bid came after a four month acquisition attempt by Broadcom,[1] which had indicated that it would pursue changes to Qualcomm's licensing model.  Dkt. No. 547 at 3.  At his deposition, Dr. Jacobs stated that he had "additional views about [Qualcomm's] business model" following the Broadcom bid process.  If his bid is successful, Dr. Jacobs reportedly plans to "maintain Qualcomm's license business, unlike Broadcom, which would have shut that piece down," as he "feels the licensing business is actually the strongest part of Qualcomm if operated correctly." Forman Decl., Ex. 2.

Prior to the deposition, Apple subpoenaed Dr. Jacobs for documents concerning: (1)

---

[1] On March 12, 2018, President Trump issued an order, upon the recommendation of the Committee on Foreign Investment in the United States, to prohibit the Broadcom takeover on the basis of national security. *See* Presidential Order Regarding the Proposed Takeover of Qualcomm Incorporated by Broadcom Limited, 2018 WL 1250762, at *1.

Jacobs's bid for Qualcomm; (2) Broadcom's bid for Qualcomm; (3) efforts to value Qualcomm's business, including efforts to value Qualcomm's business model and patent portfolio; (4) and communications relating to ten specific topics including the value of the Qualcomm patent portfolio. Dkt. No. 547 at 4. Dr. Jacobs represented to Apple that Qualcomm had collected all of Dr. Jacobs's documents up until his March 2018 departure from Qualcomm. Qualcomm provided more than 118,000 documents related to Dr. Jacobs's tenure at Qualcomm. Dkt. No. 568 at 13. Subsequently, Apple narrowed its requests to seek only documents post-dating Dr. Jacobs's separation from Qualcomm in March 2018. Forman Decl. ¶ 6. Dr. Jacobs's counsel also informed Apple's counsel that the only potentially responsive Post-Qualcomm documents related to Dr. Jacobs's exploration of a bid to acquire Qualcomm. Forman Decl. ¶ 7.

Dr. Jacobs sat for two full days of depositions in this case and in the coordinated cases in the Northern District of California. Dkt. No. 568 at 7. Dr. Jacobs answered all questions related to the time he was actually at Qualcomm. Dr. Jacobs did not answer six questions related to Dr. Jacobs' activities after his departure from Qualcomm and opinions that he had formed after his departure from Qualcomm. These questions included whether he was "discussing Qualcomm's business model with investment firms" and the "additional views" he formed about the Qualcomm business model after he left Qualcomm. Forman Decl. Ex. 4, at 257:19-25; 259:1-25; 261:2-18. Dr. Jacobs's counsel instructed him not to answer these questions, stating that they could be "getting into an area where you might be asking for unretained expert testimony or his views of others with respect to that transaction." Takashima Decl., Ex. A, Jacobs Dep. Tr. at 258:4-258:15. Apple moved to compel production of documents responsive to Apple's subpoena and moved to reopen Dr. Jacobs's deposition for questioning on the subject matter of any documents he might be ordered to produce. Dkt. No. 518.

On June 22, 2018, Magistrate Judge Dembin issued a minute order resolving the Joint Motion by denying Apple's Motion to Compel. Dkt. No. 535. The full text of the Order states:

> ORDER denying [518] Joint MOTION for Discovery Joint Motion for Determination of Discovery Dispute re Apple Inc.'s Subpoena to Dr. Paul E Jacobs. This Joint Motion presents Apple's motion to compel further deposition testimony and records from Dr. Jacobs which post-date his departure from Qualcomm. Apple seeks records and testimony regarding Dr. Jacob's efforts to acquire Qualcomm asserting that his evaluation of Qualcomm's business model and valuation of its patent portfolio is relevant. The Court disagrees. This appears little more than Apple seeking expert testimony from Dr. Jacobs outside the requirements of the Federal Rules of Civil Procedure. The motion to compel, as presented, in the Joint Motion, is DENIED. Signed by Magistrate Judge Mitchell D. Dembin on 6/22/18.

Dkt. No. 535.

## III.    STANDARD OF REVIEW

### A.    Review of the Magistrate Judge's Order

Magistrate judges have the authority under 28 U.S.C. § 636(b)(1)(A) to "hear and determine any pretrial matter pending before the court," including a party's motion to compel discovery. 28 U.S.C. § 636(b)(1)(A). In reviewing a magistrate judge's order, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002). District court review of magistrate judge orders on non-dispositive motions is limited and discovery motions are considered non-dispositive. *SLPR, LLC v. San Diego Unified Port Dist.*, 2010 WL 3420748, at *1 (S.D. Cal. 2010). The "clearly erroneous" standard applies to the magistrate judge's factual determinations and discretionary decisions. *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999). The "contrary to law" standard applies to a magistrate judge's purely legal determinations. *Id.*

4

The "clearly erroneous" and "contrary to law" standards essentially require the courts to apply an abuse of discretion standard of review to discovery rulings by magistrate judges. *Id.* at *1. Although the Magistrates Act itself does not explicitly require an abuse of discretion standard, "courts across the nation have applied an abuse of discretion standard to magistrate judges' decisions on discovery disputes." *St. Paul Mercury Ins. Co. v. Hahn*, No. SACV 13-0424 AG (RNBx), 2014 WL 12588631, at *1 (C.D. Cal. July 25, 2014). *See also Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 1996 U.S. Dist. LEXIS 13870, at *7-8 (C.D. Cal. Aug. 15, 1996) (stating that a magistrate's rulings on relevance in the discovery context are reviewed under the "clearly implicit standard of abuse of discretion"). Under the abuse of discretion standard, the reviewing court may not simply substitute its judgment for that of the deciding court, but "must be left with the definite and firm conviction that the [deciding] court committed a clear error of judgment in reaching its conclusion after weighing the relevant factors." *United States v. BNS, Inc.*, 858 F.2d 456, 464 (9th Cir. 1988); *Grimes v. City and County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991); *Christian v. Bissen*, No. 04-00743 DAE-LEK, 2007 WL 2712923, at *2 (D. Haw. Sept. 12, 2007).

**B.     District Court Authority Over Control of Discovery**

Under the Federal Rules of Civil Procedure, a party is entitled to discover any matter that is relevant to a claim or defense and that is "proportional to the needs of [the] case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Cabell v. Zorro Productions, Inc.*, Case No.15-cv-00771-EJD (VKD), 2018 WL 3023343, at *2 (N.D. Cal. June 18, 2018) (quoting Fed. R. Civ. P. 26(b)(1)). Rule 45 governs the discovery of non-parties by subpoena. The scope of discovery through under Rule 45 is the same as that permitted

under Rule 26(b). Fed. R. Civ. P. 34(a); *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, Case Nos. 16-mc-80062-JSC, 16-mc-80076 JSC, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016) (citing Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970)).

Any party seeking to quash a subpoena bears the "burden of persuasion." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). A district court has "wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

## IV.  DISCUSSION

Dr. Jacobs objects to Apple's motion to compel testimony from him related to his efforts to acquire Qualcomm following his departure from the company, as well as testimony regarding post-departure opinions he formed about Qualcomm's business model and valuation. He argues that the testimony sought is irrelevant to Apple's claims and constitutes unretained expert testimony. Apple contends that the testimony is relevant to its antitrust claim and is percipient witness testimony rather than unretained expert testimony.

### A.  Relevance

Dr. Jacobs argues that Apple's subpoena must be quashed because the testimony it seeks to elicit is irrelevant to Apple's claims and thus subjects him to undue burden. Apple contends that Dr. Jacobs' testimony is relevant to Apple's antitrust claim, as it is centered on Qualcomm's licensing model, which Dr. Jacobs assessed and evaluated in the process of creating his acquisition bid.

Under the Federal Rules of Civil Procedure, a court "*must* quash or modify a subpoena that. . . . subjects a person to undue burden." Fed. R. Civ. P. 45(3)(A)(iv) (emphasis added).  Courts have decided whether a subpoena imposes an undue burden based on the relevance of the material sought.  *See Optistreams, Inc. v. Gahan*, No. CVF-05-0117REC SMS, 2006 WL 829113, at *12 (E.D. Cal. Mar. 28, 2006).  *See also*

6

*Jimenez v. City of Chicago*, 733 F. Supp. 2d. 1268, 1273 (W.D. Wash. 2010) ("The compulsion of production of irrelevant information is an inherently undue burden.").

"The Ninth Circuit has repeatedly recognized the duty of the courts to provide extra protection for nonparties who are subject to discovery requests." *Lemberg Law LLC v. Hussin*, No. 3:16-mc80066-JCS, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016). *See also United States v. C.B.S., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party."). Consequently, although the moving party on a motion to quash a subpoena may bear the burden of persuasion, district courts require that the party issuing the subpoena must demonstrate that the discovery sought is relevant. *Chevron Corp. v. Donziger*, No. 3:12-mc-80237-CRB, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013). *See also Optimize Tech. Solutions, LLC v. Staples, Inc.*, No. 5:14-mc-80095-LHK, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) ("The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings").

The "relevance" and "undue burden" standards of Rule 45 parallel the relevance and proportionality standards of Rule 26. *See Beaver Cty.*, 2016 WL 3162218, at *2 (citing Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970); Fed. R. Civ. P. 34(a)). Rule 26(b)(1) limits discovery to information "relevant to any party's claim or defense and proportional to the needs of the case." Rule 26(b)(1). 2015 amendments to Rule 26 "eliminated the 'reasonably calculated [to lead to admissible evidence]' phrase as a definition for the scope of permissible discovery." *Leadership Studies, Inc. v. Blanchard Training and Development, Inc.*, No. 15-cv-1831-WQH(KSC), 2017 WL 2819847, at *5 (S.D. Cal. 2017) (citing *In re Bard IVC Filters Products Liability Litigation*, 317 F.R.D. 562, 564 (D. Ariz. 2016)). "The test going forward is whether evidence is 'relevant to

1    any party's claim or defense,' not whether it is 'reasonably calculated to lead to

2    admissible evidence.'" *Id.*

3         Under Rule 26, "[a] party claiming that a request is important to resolve the issues

4    should be able to explain the ways in which the underlying information bears on the

5    issues as that party understands them." *Medicinova Inc. v. Genzyme Corp.*, Case No.

6    14cv2513-L(KSC), 2017 WL 2829691, at *5 (S.D. Cal. June 29, 2017) (citing Fed. R.

7    Civ. P. 26(b) advisory committee's note (2015 amendments)). "Conclusory, unsupported

8    arguments" as to why the issuing party believes they are entitled to an order compelling

9    discovery are insufficient to establish relevancy. *Leadership Studies, Inc. v. Blanchard*

10   *Training and Development, Inc.*, Case No. 15cv1831-WQH(KSC), 2017 WL 2819847, at

11   *6 (S.D. Cal. June 28, 2017) ("Based on the foregoing, plaintiff's conclusory arguments

12   about relevance and proportionality are not enough to convince the Court that it is

13   entitled to an order compelling defendant to produce all of the [documents].").

14        Here, Apple has not sufficiently explained the ways in which the discovery sought

15   is relevant to its antitrust claim.  Apple's antitrust claim involves an objection to

16   Qualcomm's "no license-no chips" policy, whereby the company not only charges a

17   purchase price for the chips it sells, but also concurrently enters into patent licenses with

18   purchasers and charges a royalty for the same chips.

19        In the process of preparing his bid for Qualcomm, Dr. Jacobs evaluated and

20   analyzed Qualcomm's business model and patent portfolio. In a CNBC article from April

21   12, 2018 highlighting Dr. Jacobs' plan to acquire Qualcomm, Dr. Jacobs reportedly

22   expressed his opinion that the licensing business was the "strongest part of Qualcomm if

23   operated correctly."  Forman Decl., Ex. 2.  The Court does not view this article and this

24   statement as demonstrating any particular relevance to the claims at issue in this case.

25   This article relies on anonymous sources that speculate about Dr. Jacobs's purported

26   business plans.  For example, the source of the article states only that "the people said"

27

28

that Jacobs plans to maintain Qualcomm's license business, unlike Broadcom. One of the potential investors cited in the article, mobile chip designer ARM, states that there have been "no discussions between [ARM] and Paul Jacobs on any potential acquisition of Qualcomm." The "people familiar with the plan" also indicated in the April 2018 article that Dr. Jacobs's planned to take Qualcomm private "in the next two months" and yet no deal has been announced. As of today, Qualcomm remains a public company. Other public articles have described Dr. Jacobs' bid as a "long-shot" and that there is "no assurance that Dr. Jacobs can or will make a proposal."[2]

As of this date, Dr. Jacobs' has not made a bid for the company. Accordingly, the Court concludes that documents and testimony related to any such bid are not relevant—at this time—to the claims advanced by Apple. While Dr. Jacobs's post-departure analysis and evaluation may contain information about the licensing model, any such information lacks relevance as Dr. Jacobs is not currently in control of Qualcomm and his post-Qualcomm views do not bear on Qualcomm's current business operations. Consequently, the request to compel documents and answers to deposition questions on these documents is not sufficiently related to the claims at issue in this case—Apple's antitrust claim is against the public company Qualcomm as it exists today, not a hypothetical *future* Qualcomm privately controlled by Dr. Jacobs. Furthermore, Apple has not sufficiently articulated *how* any document Dr. Jacobs' could provide regarding the proposed bid is relevant to the "no-license no-chips" policy other than conclusory assertions that such testimony and documents would be relevant to the antitrust claim. *See Leadership Studies*, 2017 WL 2819847, at \*6 (conclusory unsupported arguments do not show relevance).

---

[2] https://www.wsj.com/articles/ex-qualcomm-chairman-ceo-paul-jacobs-may-step-down-from-board-1521213846. *See also* http://www.sandiegouniontribune.com/business/technology/sd-fi-jacobs-xcom-20180606-story.html (describing how Dr. Jacobs is launching a startup venture while "continu[ing] to investigate the visibility [sic] of acquiring Qualcomm, which Wall Street analysts say is a longshot.").

Accordingly, Apple has not sufficiently explained how the post-departure documents and testimony "bears on" its antitrust claim such that this Court is left with a definite and firm conviction that Magistrate Judge Dembin clearly erred in finding Dr. Jacobs's post-Qualcomm documents and testimony to be irrelevant. *See BNS, Inc.*, 858 F.2d at 464; *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010) ("The court should not disturb the magistrate's relevance determination except where it is based on 'an erroneous conclusion of law or where the record contains no evidence on which [the magistrate] rationally could have based that decision."). Furthermore, in making this ruling the Court recognizes that nonparties subject to discovery requests deserve extra protection from the courts. *See Lemberg*, 2016 WL 3231300, at \*5; *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 09-cv-01967 CW (NC) et. al., 2012 WL 4846522, at \*2 (N.D. Cal. 2012) (emphasizing that nonparty witnesses are "powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party.").

Accordingly, the Court **AFFIRMS** the Magistrate Judge's Order finding Apple's requests to be irrelevant.

## B.    Unretained Expert Witness Opinion

Dr. Jacobs further requests that the court quash the subpoena because it requires the disclosure of unretained expert testimony outside the scope of the Federal Rules of Civil Procedure. Apple argues that the testimony sought is not unretained expert testimony, but rather percipient witness testimony.

Even if the information sought falls within the broad definition of relevance, a subpoena may still be quashed if it requires disclosure of "confidential research, development, or commercial information" or "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study made not at the request of any party." *Putnam v. Lima Auto Mall, Inc.*,

Civil No. 08-MC-86-MJR-CJP, 2009 WL 35275, at *2 (S.D. Ill. Jan. 6, 2009) ("Although the information sought . . . falls within the broad definition of relevance, [the Federal Rules of Civil Procedure] dictate[ ] that a subpoena be quashed if it: requires disclosure of an unretained expert's opinion. . . ."); Fed. R. Civ. P. 45(d)(3)(B)(i) and (ii). A court's decision to modify or quash a subpoena "should be informed by the degree to which the expert is being called because of his knowledge of facts relevant to the case. . . ." *DR Sys., Inc. v. Eastman Kodak Co.*, No. 09cv1625-H (BLM), 2009 WL 2982821, at *3 (S.D. Cal. 2009) (quoting Fed. R. Civ. P. 45(c)(3)(B)(ii) advisory committee's note (citations and quotation marks omitted)).

"Expert testimony" has generally been defined as "testimony that a witness prepares using an analysis based on specialized knowledge." *Id. See also Hynix Semiconductor Inc. v. Rambus, Inc.*, No. C-00-20905 RMW, 2009 WL 230039, at *10-11 (N.D. Cal. Jan. 27, 2009). Percipient witness testimony, on the other hand, is "based on the first hand [sic] experience of the witness, i.e., the observations and conduct of the witness." *DR Sys.*, 2009 WL 2982821, at *3. In *Britz Fertilizers, Inc. v. Byer Corp.*, the court found that a subpoenaed witness' testimony about his actions and decisions as the Plaintiff's counsel in a prior case, including his discussion of his rationale behind the actions, constituted percipient testimony and was therefore admissible. *Britz Fertilizers, Inc. v. Byer Corp.*, No. 1:06cv287 OWW DLB, 2009 WL 1748775, at *3 (E.D. Cal. June 17, 2009). The court later, however, distinguished such testimony from the witness' *independent critiques* of another doctor's reports containing the witness' opinions as to the methodology the doctor employed. *Id.* at *4. The court found that these critiques were *not* percipient in nature and were ultimately inadmissible, noting that "once the subject of [the witness'] testimony moves beyond his personal experience . . . it becomes expert in nature." *Id.* at *4.

Furthermore, testimony provided by board chairmen and corporate officers is generally admissible where the testimony is tied to his or her personal knowledge, but is *not* admissible where the testimony is tied to their extensive experience or specialized knowledge of the market in question. *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan International, Inc.*, 533 F.3d 555, 561 (7th Cir. 2008). In *Compania*, the court found that the valuation of the company by a witness who served as its corporate officer and board chairman constituted improper expert opinion because the testimony was based on the witness' special training and experience in the tire industry, not on his personal knowledge. *Id.*

Apple argues that particularized opinion testimony that a witness possesses by virtue of his or her position in the business constitutes percipient testimony and should be admitted. Nonetheless, a close examination of precedent demonstrates that courts have not drawn such a clear distinction between percipient and expert testimony. Courts faced with subpoenas requiring third parties to assess and analyze facts based *on personal experience and professional knowledge* have still usually found that such subpoenas seek unretained expert opinions. In *Putnam*, for example, subpoenas were issued to witnesses employed by a company involved in the installation of an allegedly defective fuel pump. *Putnam*, 2009 WL 35275, at *2. The court found that the subpoena, which sought analyses and observations of fuel pumps comparable to the model at issue improperly sought unretained expert opinion, even though the witnesses were being asked to testify based on the knowledge they gained by virtue of their employment. *Id.* at *2 n.1 ("Realistically, [the witnesses'] research and observations can hardly be separated from their expertise."). Similarly, in *Verinata Health, Inc. v. Sequenom, Inc.*, in a dispute involving a prenatal test, the court found that a subpoenaed third-party competitor's analysis of the market, its own plans, and policies of competitors necessarily would have

12

been informed by its own first-hand observations and experiences in the market with its own test. *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12–00865 SI, 2014 WL 2600367, at \*3 (N.D. Cal. June 10, 2014). As a result, the subpoena improperly sought unretained expert opinions because it would have required the third-party to act as an unpaid expert witness for its competitor. *Id.*

Here, any testimony and documents to be provided by Dr. Jacobs' regarding his evaluation and analysis of Qualcomm's business model created in the process of developing his bid for the company, would be "expert testimony" as such information "moves beyond his personal experience" and is more akin to the witness' "independent critiques" in *Britz*. *See Britz*, 2009 WL 1748775, at \*4 ("Once the subject of [the witness's] testimony moves beyond his personal experience . . . it becomes expert in nature."). The fact that the testimony Apple seeks to compel from Dr. Jacobs is based partly on knowledge he possesses by virtue of his status as Qualcomm's former Executive Chairman and CEO does not, by itself, indicate that Dr. Jacobs's testimony is percipient. Rather, Jacobs's post-Qualcomm opinions and analyses related to Qualcomm's business model and patent portfolio valuation are necessarily informed by his experiences at Qualcomm and cannot be separated from such expertise. These post-Qualcomm views are the result of Dr. Jacobs's familiarity with the telecommunications and semiconductor industries and are not firsthand percipient witness testimony. Furthermore, the type of testimony and documents sought—including *inter alia* Jacobs' additional views on Qualcomm's business model in connection with a bid and valuations of Qualcomm's business model and patent portfolio—are the type of analysis an expert in the industry typically provides by relying on specialized knowledge and expertise derived from past experience in the field. Accordingly, the Court concludes that the subpoena impermissibly seeks to compel unretained expert witness testimony. *See Putnam*, 2009 WL 35275, at \*2; *Verinata*, 2014 WL 2600367, at \*3.

Apple's attempt to obtain documents and testimony regarding Dr. Jacobs's bid for Qualcomm consequently constitutes an improper use of a non-party deposition subpoena. *See Convolve Inc. v. Dell, Inc.*, 2011 U.S. Dist. LEXIS 53641, at \*6 ("The instant subpoena effectively requires [a non-party] to act as an unpaid expert witness in support of defendants' defense against [a party]. . . . This is an abuse of the subpoena power."). Rule 45(c)(3)(B)(ii) is "designed to protect experts from being required to provide expert advice or assistance without proper compensation." *MedImmune, LLC v. PDL Biopharma, Inc.*, No. C08-05590 JF (HRL), 2010 WL 2794390, at \*1 (N.D. Cal. 2010). Apple may retain its own experts that can testify as to the viability of Qualcomm's licensing model and provide a valuation for Qualcomm's patent portfolio. There is no reason to force Dr. Jacobs to opine on these topics at no cost to Apple.

For the reasons provided above, this Court does not have a definite and firm conviction that Magistrate Judge Dembin clearly erred by finding that Dr. Jacobs's post-departure testimony and documents constituted unretained expert testimony. Accordingly, the Court **AFFIRMS** the Magistrate's Order. Consequently, the Court also affirms Magistrate Judge Dembin's denial of Apple's motion to compel and will deny the request to reopen the deposition of Dr. Jacobs.

## CONCLUSION

For the reasons set forth above, the Court **OVERRULES** Apple's Objections and **AFFIRMS** Magistrate Judge Dembin's Order denying Apple's motion to compel and request to reopen the deposition of Dr. Jacobs. The Court **VACATES** the hearing currently set for September 7, 2018.

**IT IS SO ORDERED.**

Dated: August 14, 2018

Hon. Gonzalo P. Curiel
United States District Judge

14