Juanita R. Brooks (SBN 75934) brooks@fr.com
Seth M. Sproul (SBN 217711) sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (619) 678-5070 / Facsimile: (619) 678-5099

Ruffin B. Cordell (DC Bar #445801; Admitted *Pro Hac Vice*) cordell@fr.com
Lauren A. Degnan (DC Bar #452421; Admitted *Pro Hac Vice*) degnan@fr.com
FISH & RICHARDSON P.C.
1000 Main Avenue, S.W., Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070 / Facsimile: (202) 783-2331

William A. Isaacson (DC Bar #414788; Admitted *Pro Hac Vice*) wisaacson@bsfllp.com
Karen L. Dunn (DC Bar #1002520; Admitted *Pro Hac Vice*) kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727 / Facsimile: (202) 237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>QUALCOMM LITIGATION, | Case No. 3:17-CV-00108-GPC-MDD<br>[Consolidated with<br>Case No. 3:17-CV-01010-GPC-MDD]<br><br>**APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON BCPA COUNTERCLAIMS (COUNTERCLAIMS VI, VII, VIII, IX)**<br><br>**Date:**    November 9, 2018<br>**Time:**    1:30 p.m.<br>**Courtroom:**    2D<br><br>**REDACTED VERSION** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 1

LEGAL STANDARD.................................................................................. 3

ARGUMENT .............................................................................................. 4

    I.      QUALCOMM CANNOT RECOVER THE BCP PAYMENTS FOR AN EXPRESS OR IMPLIED BREACH OF SECTION 7................ 4

          A.    Apple Did Not Breach Section 7 of the BCPA. ...................... 6

               1.    Apple's Responses to Agency Requests Cannot Constitute Active Inducement of the Agency Investigations.................................................................. 6

               2.    The BCPA Does Not Authorize Qualcomm to Regulate the Content of Apple's Responses to Agency Requests. 9

               3.    Apple's Submissions to the KFTC Regarding Remedies Were at the KFTC's Request and Within The Safe Harbor........................................................................... 9

               4.    There is no Evidence That Apple Induced Samsung to Induce Any Part of the KFTC Investigation. ............... 10

               5.    Qualcomm's Interpretation Would Violate Public Policy. ........................................................................... 11

          B.    The Covenant of Good Faith and Fair Dealing Does Not Create Obligations Beyond the BCPA's Express Terms. ...... 12

          C.    Unjust Enrichment Is Not a Cause of Action ........................ 13

          D.    Qualcomm Owes Apple The Outstanding BCP Payments Because Apple Did Not File Suit Until the BCPA Expired. .. 13

    II.     QUALCOMM CANNOT RECOVER THE BCP PAYMENTS FOR AN EXPRESS OR IMPLIED BREACH OF SECTION 4 OF THE BCPA. ........................................................................................... 15

          A.    The BCP Payments Have Nothing to Do with Section 4. ...... 15

          B.    The BCPA Limitation of Liability Provision Bars Qualcomm's Requested Damages. ......................................... 16

CONCLUSION.......................................................................................... 16

# **TABLE OF AUTHORITIES**

**Cases**

*Abbit v. ING Annuity & Life Ins. Co.*
   999 F. Supp. 2d 1189 (S.D. Cal. 2014) ........................................................13

*Andren v. Alere, Inc.*
   207 F. Supp. 3d 1133 (S.D. Cal. 2016) ........................................................13

*Cariveau v. Halferty*
   83 Cal. App. 4th 126 (2000) ..........................................................................11

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ..........................................................................................4

*D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*
   224 Cal. App. 4th 790 (2014) ........................................................................11

*Gabriel Techs. Corp. v. Qualcomm Inc.*
   2010 WL 3718848 (S.D. Cal. Sept. 20, 2010) ................................................4

*Hall v. Ikon Office Solutions, Inc.*
   2005 WL 1629806 (N.D. Cal. Jul. 8, 2005) ..................................................14

*Illinois v. Abbott*
   460 U.S. 557 (1983) ........................................................................................12

*In re Air Passenger Computer Reservation Sys. Antitrust Litig.*
   116 F.R.D. 390 (C.D. Cal. 1986) ..................................................................12

*In re Crow Winthrop Operating P'ship*
   241 F.3d 1121 (9th Cir. 2011) ........................................................................4

*In re Ex Parte Application of Qualcomm Inc.*
   162 F. Supp. 3d 1029 (N.D. Cal. 2016)........................................................12

*Jogani v. Superior Court*
   165 Cal. App. 4th 901 (2008) ........................................................................13

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*
   34 Cal. 4th 960 (2004)....................................................................................16

*Lightbourne v. Printroom Inc.*
   122 F. Supp. 3d 942 (C.D. Cal. 2015)............................................................9

*Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.*
  2003 WL 23198852 (S.D. Cal. July 9, 2003)......................................................4

*Murray v. State Farm Mut. Auto. Ins. Co.*
  650 F. App'x 461 (9th Cir. 2016).......................................................................11

*Pardee Constr. Co. v. Ins. Co. of the W.*
  77 Cal. App. 4th 1340 (2000)..............................................................................9

*Play N Trade Franchise, Inc. v. Torres*
  2010 WL 11601050 (C.D. Cal. Aug. 12, 2010) ................................................13

*Roden v. AmerisourceBergen Corp.*
  186 Cal. App. 4th 620 (2010)............................................................................14

*Ruiz v. Gap, Inc.*
  380 Fed. App'x 689 (9th Cir. 2010) ..................................................................15

*Sanders v. Apple Inc.*
  672 F. Supp. 2d 978 (N.D. Cal. 2009)...............................................................13

*St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*
  101 Cal. App. 4th 1038 (2002)..........................................................................15

*St. Paul Mercury Ins. Co. v. Am. Safety Indem. Co.*
  2014 WL 2120347 (N.D. Cal. May 21, 2014) .....................................................4

*US Ecology, Inc. v. State of California*
  129 Cal. App. 4th 887 (2005)............................................................................15

*Wolf v. Walt Disney Pictures & Television*
  162 Cal. App. 4th 1107 (2008)............................................................................4

**<u>Statutes</u>**

15 U.S.C. § 49 .......................................................................................................11

16 C.F.R. § 2.10 ....................................................................................................11

16 C.F.R. § 2.11 ....................................................................................................11

16 C.F.R. § 2.13 ....................................................................................................11

16 C.F.R. § 2.4 ......................................................................................................11

16 C.F.R. § 2.7 ......................................................................................................11

Cal. Civ. Code § 1638 ........................................................................................4

Cal. Civ. Code § 1639 ........................................................................................4

Cal. Civ. Code § 3300 ..................................................................................15, 16

**Other Authorities**

Korean Monopoly Regulation and Fair Trade Act ...........................................12

**Rules**

Fed. R. Civ. P. 56 ..........................................................................................3, 10

Fed. R. Evid. 802 ............................................................................................10

# INTRODUCTION

Over the past five years, Qualcomm has faced a steady stream of government antitrust investigations and enforcement actions in the United States and around the world. These antitrust investigations and actions concern the anticompetitive impact of Qualcomm's licensing and chipset sales practices. The agencies are not prosecuting contractual claims that Qualcomm has violated its promise to standard-setting organizations that it would license standard-essential patents (SEPs) on fair, reasonable and non-discriminatory (FRAND) terms, or any claims that Qualcomm's sales of chipsets exhaust Qualcomm patents. Instead, they uniformly claim, under the antitrust laws of their respective countries, that competition and consumers have been harmed by Qualcomm's coordinated exclusionary conduct.

In each case, the antitrust agencies investigating Qualcomm's conduct sought information and testimony from Apple. In each case, Apple responded, as it was required to do. In Counterclaims VI–IX, Qualcomm seeks retribution to the tune of ███████ for Apple's cooperation with the agencies, claiming that Apple violated the parties' Business Cooperation and Patent Agreement (BCPA).

For years, Qualcomm has used its dominant position in chipsets and declared position in SEPs to force Apple to pay (indirectly) billions in royalties for Qualcomm patents, and billions more for Qualcomm chipsets. In the BCPA, in return for incrementally reducing those overpayments through rebates (called BCP Payments), Qualcomm demanded that Apple not initiate or actively induce specific ████████████████████████████████████████████████

The BCPA also expressly established a safe harbor: ████████████

1 ██████████ ███████████████████████████████████

2 ███████████████████████████████████████████

3      Qualcomm claims that Apple violated the BCPA (1) by actively inducing one

4 or more government investigations in 2012, before the BCPA was signed, and

5 thereafter suggesting to the agencies that Qualcomm's licensing practices violated

6 its FRAND commitments; (2) by making untrue statements to the Korea Fair Trade

7 Commission (KFTC) , the U.S. FTC (FTC) and other agencies about Qualcomm; (3)

8 by urging the KFTC to impose extraterritorial remedies that were "tantamount" to

9 initiating Litigation elsewhere; and (4) by inducing Samsung to suggest to the KFTC

10 that it broaden its investigation into Qualcomm.

11      The undisputed evidence shows that Apple did not instigate any government

12 investigation or initiate Litigation during the term of the BCPA. It is undisputed that

13 Apple's submissions to the agencies in connection with these investigations all

14 ***responded*** to requests in the investigations that expressly and broadly asked Apple

15 to provide information relating to Qualcomm's SEP and other licensing practices.

16 Mentioning FRAND, which is an indispensable aspect of SEP licensing practices, in

17 these responses could not violate the BCPA. Any contract interpretation that would

18 prohibit Apple from responding fully to agency requests would contravene

19 established public policy in favor of full disclosure to governmental investigators.

20      Moreover, Apple's cooperation did not initiate ████████ because no case

21 brought by any agency prosecuted FRAND or patent exhaustion claims; rather, each

22 one involves ***antitrust*** claims, and none seeks relief for Qualcomm's violation of

23 contractual FRAND obligations (though in some cases they refer to such obligations

24 as backdrop) or claims exhaustion at all.  Apple's responses to agency requests and

25 inquiries indisputably did not contravene the BCPA. ████████████████

26 ███████████████████████████████████████████

27 ████ the BCPA did not impose any restriction on Apple's discussion of antitrust

28 claims with agencies or anyone else.

Qualcomm's allegation that Apple made untrue statements to the KFTC and other agencies also fails. The BCPA did not condition payments on Apple's agreement with or adherence to Qualcomm's views about its own conduct. Apple was absolutely permitted to say what it believed in response to an agency request. The same is true of Qualcomm's allegation regarding KFTC remedies: the KFTC requested Apple's views on this very topic, and Apple provided them. Permitting Qualcomm to claim breach simply because Qualcomm disagreed with Apple's positions would go far beyond the express terms of the BCPA and violate public policy, both in the U.S. and Korea.

Finally, Qualcomm's allegations regarding Apple's interaction with Samsung fail for the absence of any evidence that Apple did what Qualcomm alleges or that, even if it did, it possibly could have induced an expansion of an investigation that indisputably *already* involved inquiries relating to SEPs and FRAND.

Qualcomm alternatively attempts to force Apple to disgorge billions of dollars of BCP Payments as damages for Apple's alleged breach of § 4 of the BCPA. But the BCP Payments have *nothing to do* with § 4.  Qualcomm made these payments in exchange for Apple's promises in § 7, not in § 4, and California law restricts Qualcomm to general damages.

Apple respectfully requests that the Court grant summary judgment on Qualcomm's BCPA counterclaims: Counterclaims VI, VII, VIII, and IX.[1]

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). 56(a). Where a party bears the burden of proof on a claim at trial—as Qualcomm does here on its counterclaims—it bears the burden in response to a properly supported summary judgment motion to identify

---

[1] Apple also has a claim alleging Qualcomm's breach of the BCPA in withholding payments in 2016.  Apple does not seek summary judgment on that claim.

1  "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v.*
2  *Catrett*, 477 U.S. 317, 324 (1986).

3       "The interpretation of a contract is a judicial function." *Wolf v. Walt Disney*
4  *Pictures & Television*, 162 Cal. App. 4th 1107, 1125 (2008). Courts first look "to
5  the plain meaning of the language used." *Gabriel Techs. Corp. v. Qualcomm Inc.*,
6  2010 WL 3718848, at * 7 (S.D. Cal. Sept. 20, 2010); Cal. Civ. Code §§ 1638, 1639.
7  "Under California law, if a contract's terms are unambiguous, a court may interpret
8  the contract without recourse to extrinsic evidence." *In re Crow Winthrop Operating*
9  *P'ship*, 241 F.3d 1121, 1124 (9th Cir. 2011). "Parol evidence is admissible to prove
10 a meaning to which the language of the instrument is reasonably susceptible." *St.*
11 *Paul Mercury Ins. Co. v. Am. Safety Indem. Co.*, 2014 WL 2120347, at *12 (N.D.
12 Cal. May 21, 2014). "However, extrinsic evidence cannot be used to directly
13 contradict an express term of a written contract." *Id.* (citations omitted). "Courts will
14 not adopt a strained or absurd interpretation in order to create an ambiguity where
15 none exists." *Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.*, 2003 WL
16 23198852, at *4 (S.D. Cal. July 9, 2003).

## ARGUMENT

### I.   QUALCOMM CANNOT RECOVER THE BCP PAYMENTS FOR AN EXPRESS OR IMPLIED BREACH OF SECTION 7

20      The accompanying Statement of Undisputed Material Facts (SUMF),
21 declarations of Kyle Andeer and Steve Holtzman, and Appendix of Exhibits
22 ("BCPA App'x") set forth the material, undisputed facts.

23      The BCPA, effective January 1, 2013 to December 31, 2016, required
24 Qualcomm to pay rebates (BCP Payments) to Apple that reduced Apple's effective
25 royalty to ███████████████████ (SUMF 1–2, 6) In exchange for this
26 partial royalty relief, Qualcomm demanded a provision that would assist Qualcomm
27 in evading scrutiny from government investigations. Under § 7, Qualcomm's rebate
28 obligations applied only if Apple, during the BCPA's term, did not

(SUMF 7) ███████████████████████████████ (SUMF 10)

Although Apple initially objected to the scope of this provision (SUMF 12), it ultimately agreed to it after a safe harbor provision was inserted, which protected Apple's ability to respond to requests and inquiries from government authorities. The third paragraph of § 7 states that, ████████████████████████

(SUMF 8) The meaning of this provision is clear: only active inducement *after the signing of the BCPA* is prohibited. As Qualcomm's own Eric Reifschneider wrote during negotiations (after Apple strenuously objected to the "gag clause"), there was a ██████████████" that Apple could respond freely to agency requests and inquiries ████████████████████████████████ (SUMF 13, BCPA App'x Ex. S) And Qualcomm's former vice president and general counsel Don Rosenberg testified ████████████ (SUMF 59; BCPA App'x Ex. CC) Moreover, because the BCPA only prohibits Apple from pursuing Litigation on FRAND and exhaustion grounds, Apple was not prohibited from litigating or inducing Litigation (including investigations) on any *other* topic, including whether Qualcomm has violated antitrust laws. (SUMF 7) Finally, § 7 contains no provision policing the *content* of

Apple's responses to government agencies. (SUMF 7)

Apple complied with these provisions. (SUMF 16–18) Yet Qualcomm, citing allegations that have no basis in or relevance to the BCPA, claims that it is entitled to a refund of all BCP Payments as damages for Apple's cooperation with law enforcement agencies. Qualcomm's First Amended Counterclaims (Dkt. 72) (SACC) ¶¶ 359, 361. Qualcomm further contends that Apple breached the implied covenant of good faith and fair dealing and was unjustly enriched; and that Qualcomm is released from its obligation to pay BCP Payments that it wrongfully withheld during the term of the BCPA. SACC ¶¶ 362–380.

## A.     Apple Did Not Breach Section 7 of the BCPA.

Qualcomm alleges that Apple breached § 7 of the BCPA by "waging a worldwide campaign against Qualcomm with the goal of causing regulatory agencies to pursue investigations," SACC ¶ 359(d), including that "Apple suggested that the FTC investigate Qualcomm in 2012 and thereafter suggested that Qualcomm's licensing business violated its FRAND commitments." (SUMF 15) Qualcomm also alleges that "(i) Apple induced Samsung to suggest to the KFTC that it should broaden its investigation into Qualcomm; (ii) Apple made untrue statements to the KFTC and other government agencies about Qualcomm; and (iii) Apple urged the KFTC to impose extraterritorial, worldwide remedies against Qualcomm." SACC ¶ 359(d).  Each theory fails as a matter of law.

### 1.     Apple's Responses to Agency Requests Cannot Constitute Active Inducement of the Agency Investigations.

All of the agency investigations of Qualcomm addressed antitrust violations. (SUMF 19, 21, 27–28, 33, 39, 48) Apple's cooperation with these investigations could not have breached § 7, which addressed only "claims" of FRAND violations or exhaustive chipset sales.[2] But even if the investigations were relevant, the

---

[2] Qualcomm knew full well ███████████████████████████████████████████████

undisputed evidence shows that Apple did not "actively induce" any of them during the BCPA period.  Under the plain language of § 7, Apple could only have induced the agency investigations of Qualcomm—and thereby breached the BCPA—if it were responsible for beginning them via submissions that were not responses to agency inquiries or requests. But Apple's first interactions with each agency during the BCPA period[3] occurred ***after*** each agency opened its investigation and began issuing requests for information (RFIs) to Apple that expressly related to FRAND:

- **Chinese National Development and Reform Commission (NDRC):** Apple's initial meeting with and submission to the NDRC occurred in late January 2014, ***after*** the NDRC opened its investigation of Qualcomm and issued its first RFI to ████████████████████████████████████████████████████████████████████████████████████████████████

- **European Commission (EC)[4]:** Apple sent its initial submission to the EC on August 15, 2014, ***after*** the EC opened its investigation of Qualcomm and issued its first RFI to Apple. (SUMF 19, 26–31)

- **United States Federal Trade Commission (FTC):** Apple's initial meeting with the FTC regarding the Qualcomm investigation occurred on November 18, 2014, ***after*** the FTC opened its investigation and sent Apple an RFI. The FTC's earliest communications with Apple made clear th████████████████ ████ngs, antitrust issues relating to████████████████████████████████████████████████████████████████████████████████████████████████

- **Korea Fair Trade Commission (KFTC):** Apple sent its initial submission to the KFTC on May 5, 2015, ***after*** the KFTC opened its investigation and issued its first R████████████████████████████████████████████████████████████████████████████████████████████████████

- **Taiwan Fair Trade Commission (TFTC):** Apple sent its initial submission to the TFTC on February 26, 2016, ***after*** the TFTC opened its investigation of

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ had antitrust investigations relating to various companies' practices regarding SEPs underway prior to the signing of the BCPA.

[4] The EC investigation did not concern Qualcomm's licensing practices or result in any claims that even touched on FRAND or exhaustion. (SUMF 28)

Qualcomm and issue

███████████████████████████████

Subsequent agency RFIs and inquiries built on the initial requests and requested further information from Apple relating to FRAND and SEP licensing.  (SUMF 19–51)  Apple did not discuss these agencies' investigations of Qualcomm with the agencies before those initial meetings. (SUMF 22, 29, 35, 40, 49)

Section 7's safe harbor provision is absolute: Apple's █████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ (SUMF 8)[5] In each instance, Apple responded to agency requests related to *already open* investigations. This could not breach the BCPA. (SUMF 7–8, 13, 59)

It is immaterial that some of Apple's response submissions discussed Qualcomm's licensing practices and FRAND. In each case, Apple's comments responded to agency inquiries. (SUMF 19–51) As discussed above, those inquiries repeatedly included questions about Qualcomm's compliance with its FRAND commitments.  The BCPA imposed no obligation on Apple to truncate its responses to the agencies' repeated and broad inquiries to avoid the mention of FRAND or not advocate a position. (SUMF 7–8) Were it to do so, the BCPA would raise serious public policy issues, as respondents must be able to comply fully with antitrust enforcement agencies' investigations—a limitation that Apple specifically negotiated for. (SUMF 12; BCPA Appx. Ex. R, S) The BCPA provides no basis for

_____

[5] Nor does the BCPA require that agency requests or inquiries have been formal or com████████████████████████████████████████wn

1 | Qualcomm to now seek billions of dollars in damages by seeking to recast Apple's
2 | responses as "initiation" or "active inducement" of (non-existent) claims.

3 | ## 2. The BCPA Does Not Authorize Qualcomm to Regulate the Content of Apple's Responses to Agency Requests.
4 |

5 | Qualcomm contends that Apple breached § 7 by making allegedly untrue and
6 | misleading statements about Qualcomm to regulators. SACC ¶¶ 359(d).
7 | Qualcomm's allegation is incorrect (SUMF 52), but for purposes of this motion, it is
8 | *irrelevant*: nothing in the BCPA grants Qualcomm the power to censor the contents
9 | or tone of Apple's statements to regulators; or to punish Apple for saying things it
10 | did not like, even if it believed them to be wrong. Allowing Qualcomm to exert any
11 | power over the content of Apple's responses would be contrary to the safe harbor's
12 | absolute permission to respond to government agency requests.

13 | Even if Qualcomm hoped to reserve for itself the right to withhold payments
14 | based on its view of the substance of Apple's responses, Qualcomm may not now
15 | hide behind its subjective intent to contradict the plain language of the contract. *See*
16 | *Lightbourne v. Printroom Inc.*, 122 F. Supp. 3d 942, 948 (C.D. Cal. 2015) (in the
17 | face of "clear and unambiguous contractual language," one party's subjective
18 | "internal understanding" of intent "is irrelevant"); *Pardee Constr. Co. v. Ins. Co. of*
19 | *the W.*, 77 Cal. App. 4th 1340, 1360 (2000) ("a party's subjective intent cannot be
20 | used to create an ambiguity in otherwise clear and explicit language"). Because
21 | Apple's statements to regulators were made in response to agency requests in
22 | ongoing investigations, they are within the express terms of § 7's safe harbor.

23 | ## 3. Apple's Submissions to the KFTC Regarding Remedies Were at the KFTC's Request and Within The Safe Harbor.
24 |

25 | Qualcomm claims that Apple breached § 7 by urging the KFTC to impose
26 | "worldwide remedies against Qualcomm." SACC ¶ 359(d). But Apple's
27 | submissions to the KFTC regarding remedies were indisputably made in response to
28 | the agency's request. (SUMF 38–46) The BCPA restricts Apple from "induc[ing]"

1   agency investigations, not from advocating for or against particular remedies in an

2   already-opened investigation. (SUMF 7) Qualcomm's own witness, Don Rosenberg,

3   admitted that ████████████████████████████████████████

4   ████████████████████████████████████████████████████

5   ███████████████████████████████████████. (SUMF 60; BCPA App'x Ex.

6   CC) It is irrelevant whether Qualcomm believes that Apple's actions were

7   "tantamount to inducing litigation outside Korea." The BCPA's plain language in §

8   7 does not prohibit actions "tantamount" to litigation. Apple's submissions were

9   expressly protected under § 7's safe harbor provision. In any event, the KFTC did

10  not issue an unbounded "worldwide" remedy; the KFTC's order applies only to

11  manufacturers that are headquartered in or sell chipsets or handsets in in Korea or

12  sell chipsets/handsets in Korea (or sell to manufacturers that do).[6] (SUMF 61)

### 4.   There is no Evidence That Apple Induced Samsung to Induce Any Part of the KFTC Investigation.

15      Qualcomm claims that Apple breached § 7 by inducing Samsung "to suggest

16  to the KFTC that it should broaden its investigation into Qualcomm." SACC ¶¶

17  359(d); 216. Qualcomm can point to no evidence creating a triable issue regarding

18  this allegation.[7] Qualcomm alleges a meeting between ████████████████

19  ██████████████████████████████, in Idaho in July 2015. (SUMF 53) But

20  no evidence suggests that Messrs. Cook and Lee discussed the KFTC investigation.

21  Qualcomm did not depose Mr. Lee or list him as a potential witness in its initial

22  disclosures. (SUMF 54, 56) No other Samsung witness testified about the meeting.

23  (SUMF 55) ██████████████████████████████████████████████h

24

---

25  [6] The order also permitted Qualcomm to "ask the KFTC to revisit these orders" "the
    final decisions or mandates made by the foreign courts or competition authorities are

26  in conflict with these orders so that the Respondents are unable to comply with both
    decisions". (SUMF 61, BCPA App'x Ex. FF at 1313–1314) Thus, the KFTC order

27  is not a worldwide remedy.
    [7] Qualcomm testimony regarding what they say they heard about the meeting from

28  others is inadmissible hearsay. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802.

1   ████████████████████████████████ (SUMF 57) Because no admissible

2   evidence supports the allegation, summary judgment is warranted. *See, e.g.*, *Murray*

3   *v. State Farm Mut. Auto. Ins. Co.*, 650 F. App'x 461, 462 (9th Cir. 2016).

4        But even assuming there ***were*** any evidence of the alleged meeting, it is

5   undisputable that the KFTC opened its investigation no later than March 15, 2015,

6   and that the KFTC's initial RFI to Apple, which Apple received on March 27, 2015,

7   contained questions about Apple's licensing negotiations with Qualcomm and the

8   reasonableness of Qualcomm's royalties, which is quintessentially about FRAND.

9   (SUMF 19, 38–46) Thus, it is impossible that the alleged ████████ meeting in July

10  2015 induced the KFTC to initiate its investigation or expand it to cover FRAND.

## 5.    Qualcomm's Interpretation Would Violate Public Policy.

12       Any interpretation of the BCPA that would prevent Apple from responding to

13  the agencies' requests (whether based on subject matter or the alleged truthfulness

14  thereof) or would allow Qualcomm—the target of agency investigations—to receive

15  repayment of ***billions of dollars*** based on Qualcomm's own (incorrect) view of their

16  contents would contravene established public policy. The public policy of California

17  favors full disclosure of concerns about unlawful conduct to governmental

18  investigators. *D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*, 224 Cal. App.

19  4th 790, 803–06 (2014) (settlement agreement void if interpreted to prevent labor

20  union from cooperating with an investigation by the California Agricultural Labor

21  Relations Board); *Cariveau v. Halferty*, 83 Cal. App. 4th 126, 137–38 (2000)

22  (contract void as against public policy when nondisclosure provision prevented

23  customer from disclosing brokers' misconduct to regulatory authorities).

24       Apple had a legal duty to comply with all subpoenas and CIDs from the FTC.

25  *E.g.*, 15 U.S.C. §§ 49, 57b-1; 16 C.F.R. §§ 2.7, 2.10, 2.11, 2.13. Moreover, FTC

26  rules of practice state that the FTC "expects all parties to engage in meaningful

27  discussions with staff." 16 C.F.R. § 2.4.  Inherent in this expectation is freedom

28  from retaliation if the investigation's target dislikes a response. For this reason,

responses to CIDs are generally confidential "to safeguard the rights of individuals under investigation and to protect witnesses from retaliation." *In re Air Passenger Computer Reservation Sys. Antitrust Litig.*, 116 F.R.D. 390, 392 (C.D. Cal. 1986) (quoting *Illinois v. Abbott*, 460 U.S. 557, 571 (1983)).

The same is true in Korea. The KFTC has stated that it "relies heavily on third parties to gain information" relevant to ongoing investigations and to detect anticompetitive activity in Korea. *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1042 (N.D. Cal. 2016). And Korean antitrust law expressly states that an investigative target cannot retaliate against, or give "any disadvantage" to, another entrepreneur for "cooperating with investigations" of unfair trade practices. Korean Monopoly Regulation and Fair Trade Act, Art. 23-2, 23-3.

Qualcomm may not retaliate against Apple for saying unflattering things to competition agencies in response to their requests, nor may it hide behind its own self-serving (and false) assertion about the accuracy of Apple's statements as a pretextual claim for breach. Any contrary interpretation would violate public policy and void the second paragraph of § 7.

## B. The Covenant of Good Faith and Fair Dealing Does Not Create Obligations Beyond the BCPA's Express Terms.

Qualcomm alleges that Apple's interactions with agencies breached the implied covenant of good faith and fair dealing. SACC ¶¶ 367, 370. Qualcomm claims that the parties' "purpose" in entering into the BCPA was the open-ended goal of "work[ing] together to explore mutually beneficial business opportunities that could deepen their business relationship," and that Apple's interactions with agencies frustrated that purpose.[8] SACC ¶ 365, 369. This position is without merit.

---

[8] Qualcomm's expansive characterization of the BCPA's purpose directly contradicts the exp████████████████████████████████████████████n of the agreement: █████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████mphasis added). (SUMF 3) § 3 of the agreement, █████████████████████defines the

The implied covenant of good faith and fair dealing does "not apply where no express terms exist on which to hinge an implied duty, and where there has been compliance with the contract's express terms." *Abbit v. ING Annuity & Life Ins. Co.*, 999 F. Supp. 2d 1189, 1198 (S.D. Cal. 2014) (quotations omitted). Here, the express terms of BCPA § 7 are clear: absent ████████████ Apple was permitted to respond to any agency request. As noted above, Apple complied with these express terms throughout the term of the BCPA.

### C.    Unjust Enrichment Is Not a Cause of Action

Qualcomm takes the novel position that if the Court concludes Apple complied fully with § 7, the Court should nonetheless invalidate the BCPA under an unjust enrichment cause of action and force Apple to return all monies paid under the agreement—even though Qualcomm received the benefit of its bargain for four years. SACC ¶¶ 373–374. As the Court has previously recognized, unjust enrichment is "not a cause of action" under California law and "cannot stand alone as an independent claim for relief." *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1143 (S.D. Cal. 2016) (citing *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008)); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009). Even if it were, Qualcomm's sole theory is that there was no "meeting of the minds" regarding whether Qualcomm could censor the content of Apple's responses to regulators' requests. SACC ¶ 373(c). But in the face of the contract's "clear, unambiguous language," an argument that there was no meeting of the minds "lacks merit." *Play N Trade Franchise, Inc. v. Torres*, 2010 WL 11601050, at *4 (C.D. Cal. Aug. 12, 2010). The Court should grant summary judgment in favor of Apple on Count VIII.

### D.    Qualcomm Owes Apple The Outstanding BCP Payments Because Apple Did Not File Suit Until the BCPA Expired.

---

specific acts of business cooperation Apple was required to undertake, none of which includes a freewheeling obligation to "cooperate" with Qualcomm's attempts to evade antitrust scrutiny. (SUMF 4)

Qualcomm seeks a declaration that Qualcomm's outstanding BCP Payment obligations were extinguished by Apple's (a) interactions with the agencies or (b) litigation against Qualcomm. SACC ¶¶ 377–380. Qualcomm's first contention is directly tied to Qualcomm's § 7 breach claim. If the Court grants summary judgment to Apple on Count VI, the Court should also grant summary judgment to Apple on this aspect of Count IX. Qualcomm's second contention relies on a misreading of the BCPA that would lead to an impermissibly absurd result. Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); *Roden v. AmerisourceBergen Corp.*, 186 Cal. App. 4th 620, 650 (2010) (court "must interpret a contract in a matter that is reasonable and does not lead to an absurd result"); *Hall v. Ikon Office Solutions, Inc.*, No. C 05-01036 WHA, 2005 WL 1629806, at *3 (N.D. Cal. Jul. 8, 2005) ("fundamental" principle "of contract law is that a contract should not be construed so as to reach an absurd result.") Section 10.4 lists the specific provisions that survived the BCPA's expiration on December 31, 2016:



(SUMF 9) Section 7, which contains Apple's obligation to refrain from initiating litigation, is not among the surviving sections. By contrast, § 10.4 specifies that "███████████████████████████████████████████████████████████████ ███████████████████████████████████████." (*Id.*) Although that sentence references the second paragraph of § 7, that clause can only logically apply to Apple's obligations ***during*** the term of the BCPA. Any other reading would lead to an absurd result: Qualcomm could breach the agreement on the eve of its expiration by withholding the final three BCP Payments, hold nearly $1 billion hostage, and then claim that Apple must refrain from initiating a FRAND or exhaustion challenge

for years after the term of the agreement or cede the withheld funds. The Court should grant summary judgment in favor of Apple on Count IX.

## II.   QUALCOMM CANNOT RECOVER THE BCP PAYMENTS FOR AN EXPRESS OR IMPLIED BREACH OF SECTION 4 OF THE BCPA.

Qualcomm asserts that it is entitled to a refund of past BCP Payments as damages for an alleged breach of § 4 of the BCPA. (SUMF 58; SACC ¶ 360) But there is no causal link between the alleged breach of § 4 and the requested damages. Moreover, the plain language of the BCPA itself bars this damages claim.

### A.   The BCP Payments Have Nothing to Do with Section 4.

Section 4 of the BCPA provides:



(SUMF 5) Qualcomm's claim that Apple's alleged breach of § 4 entitles Qualcomm to recover its BCP Payments is untenable.

California Civil Code § 3300 provides that "the measure of damages" for breach of an obligation arising from contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." That is, a plaintiff is entitled to recover only those damages that "are 'proximately caused' by the specific breach." *St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038, 1061 (2002). "The test for causation in a breach of contract … action is whether the breach was a substantial factor in causing the damages." *US Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887, 909 (2005) (citation omitted); *see also Ruiz v. Gap, Inc.*, 380 Fed. App'x 689, 692 (9th Cir. 2010) (affirming summary judgment on breach of contract claim where plaintiff "failed to adduce any evidence of … appreciable and actual damage").

The plain language of the BCPA makes clear that the BCP Payments are

relevant only to § 7 of the agreement and have nothing to do with § 4. Section 7 expressly provided that the BCP Payments would continue ████████████ ████████████████████████████████████ (SUMF 7; *see also* SACC ¶ 359(c) (explaining that Qualcomm remains obligated to make BCPA payments so long as Apple satisfied these "necessary conditions")) In other words, the BCP Payments constituted "consideration" for Apple's promise not to initiate Litigation—not for Apple's promises under § 4.

### B.   The BCPA Limitation of Liability Provision Bars Qualcomm's Requested Damages.

Damages Qualcomm can recover under § 4 are even more limited than those that are permitted by § 3300 because the BCPA includes a Limitation on Liability Provision.  Under California law, "[c]ontractual damages are of two types—general damages (sometimes called direct damages) and special damages (sometimes called consequential damages)." *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968 (2004) (citation omitted). The BCPA's limitation of liability provides that only general damages are recoverable: "Except with respect to breach of confidentiality, under no circumstances will either party be liable to the other for indirect, incidental, consequential, special or exemplary damages arising out of or related to this agreement". (SUMF 11)

"General damages are often characterized as those that flow directly and necessarily from a breach of contract, or that are a natural result of a breach." *Lewis Jorge*, 34 Cal. 4th at 968. For the reasons discussed above, the BCP Payments are not in any way related to the breach of § 4, let alone "flow directly and necessarily" from Apple's purported breach of § 4 of the BCPA. Accordingly, the BCP Payments are not "general damages" recoverable for a breach of § 4.

### CONCLUSION

Apple respectfully requests that the Court dismiss Counterclaims VI–IX.

1 | Dated: August 31, 2018

Respectfully submitted,

2

By:  */s/ William A. Isaacson*

3

Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com

4

Fish & Richardson P.C.

5

12390 El Camino Real
San Diego, CA 92130

6

Phone: 858-678-5070 / Fax: 858-678-5099

7

8

Ruffin B. Cordell, DC Bar No. 445801,
*pro hac vice*, cordell@fr.com

9

Lauren A. Degnan, DC Bar No. 452421,
*pro hac vice*, degnan@fr.com

10

Fish & Richardson P.C.

11

1000 Main Avenue, S.W., Suite 1000
Washington, D.C. 20024

12

Phone: 202-783-5070 / Fax: 202-783-2331

13

14

William A. Isaacson, DC Bar No. 414788,
*pro hac vice*, wisaacson@bsfllp.com

15

Karen L. Dunn, DC Bar No. 1002520,
*pro hac vice*, kdunn@bsfllp.com

16

Boies, Schiller & Flexner LLP

17

1401 New York Avenue, N.W.
Washington, DC 20005

18

Phone: 202-237-2727 / Fax: 202-237-6131

19

Attorneys for *Plaintiff and Counterclaim-Defendant*

20

*Apple Inc.*

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 31, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5.4(d).  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Executed on August 31, 2018.

*/s/ William A. Isaacson*
William A. Isaacson