Evan R. Chesler (N.Y. Bar No. 1475722) (*pro hac vice*)
echesler@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

David A. Nelson (Ill. Bar No. 6209623) (*pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (858) 345-3178

[*Additional counsel identified on signature page*]

*Attorneys for Defendant and Counterclaim-Plaintiff*
QUALCOMM INCORPORATED

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| IN RE: QUALCOMM LITIGATION | No. 3:17-CV-0108-GPC-MDD |
|---|---|
| | **QUALCOMM INCORPORATED'S RESPONSE TO APPLE INC.'S AND THE CONTRACT MANUFACTURERS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT CERTAIN PATENTS ARE UNENFORCEABLE DUE TO EXHAUSTION** |
| | Judge: Hon. Gonzalo P. Curiel |
| | Courtroom: 2D |
| | Date: November 9, 2018 |
| | Time: 1:30 p.m. |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| 1.  Qualcomm ("QC") has a "no license, no chips" policy. Ex. 1, 154:25-155:25; Ex. 2 at 6; Ex. 3 at 8; Ex. 4 at 10; Ex. 5, 163:16-164:02; Ex. 6, 37:02-05. | Disputed.  Qualcomm Incorporated ("QC") has a policy of ██████ ████████████████████ ████████████████████ ████████████ **QC Ex. 14,** at 159:12-17. |
| 2.  Derek Aberle confirmed this policy.  Ex. 7 at 159:12-17. | Disputed.  *See* QSOF ¶ 1. |
| 3.  Purchasers of QC products must pay the price of chipsets, and separate patent royalties for the right to make, use, and sell products that include the chipsets.  Ex. 5, 163:16-164:02; Ex. 8, 203:16-204:05; Ex. 9 ¶ 10-12. | Undisputed that QC's division, Qualcomm Technology Licensing ("QTL"), licenses QC's patent portfolio.  **QC Ex. 8** at 12.  Qualcomm Technologies, Inc. ("QTI"), a subsidiary of QC, designs chipsets and software—including Baseband Chips.[2]  **QC Ex. 8** at 41.  QCTAP, an indirect subsidiary of QTI, sells Baseband Chips.  *See* Sproul Exs. 18-21, § 7. The price of Baseband Chips does not include any amount for the value of QC's patent portfolio, which is separately licensed.  **QC Ex. 14,** at |

---

[1] "QC Ex." refers to the exhibits to the Declaration of James W. Carlson, filed herewith.

[2] "Baseband Chip" is defined as the hardware component sold by QCTAP to the CMs that are commonly referred to as "thin modems".  *See* **QC Ex. 30** (Williams Decl. ¶¶ 17, 19-22.)

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| | 159:18-160:8; **QC Ex. 11,** at 316:24-317:9. |
| 4. ███████████████ ███████████████ █████████ Ex. 9 ¶ 10-12. | Undisputed that each CM SULA ███████████████ ███████████ ███████████ **QC Exs. 2-5, § 5.2**. |
| 5. ████████████ ███████████████ ██████ | Undisputed that each CM SULA provides ██████████ ███████████ ██████ Sproul Exs. 18-21, §§ 12, 13. |
| 6.  Qualcomm Inc. "owns the vast majority of [the QC] patent portfolio." Ex. 11 at 47. | Undisputed. |
| 7.  Qualcomm Inc. owns U.S. Patent Nos. 7,095,725; 9,137,822; and 7,096,021. Ex. 12-17. | Undisputed. |
| 8.  QC licenses its patent portfolio through QTL.  *See* Ex. 11 at 46. | Undisputed. |
| 9.  QC sells BBCs ███████████ ███████████████ ████████ *See* Dkt. 102 ¶ 16; Ex. 11 at 46. | Undisputed that QCTAP sells Baseband Chips.  Sproul Exs. 18-21, § 7.  QC objects that "BBCs" is undefined and vague.  QC will use the term "Baseband Chip", as defined above in QC's response to ¶ 3. |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| 10. ▮▮▮▮▮ by QTI, a subsidiary of Qualcomm Inc. See Dkt. 102 ¶ 16; Ex. 11 at 47. | Undisputed that QCTAP is an indirect subsidiary of QTI, which is a subsidiary of QC. **QC Ex. 8** at 41. |
| 11.  QC sells BBCs to the CMs ▮▮▮▮▮. See Ex. 18-21. | Disputed.  QCTAP sells Baseband Chips to the CMs.  Sproul Exs. 18-21. |
| 12. ▮▮▮ sells QC BBCs to the CMs in Asia. Ex. 18 at 117 ▮▮▮ ▮▮▮. | Disputed.  The cited provision in each CSA ▮▮▮▮▮▮▮ ▮▮▮  Sproul Exs. 18-21, § 4. |
| 13.  The CMs purchase BBC ▮▮▮ ▮▮▮ to build iPads and iPhones. E.g., Ex. 22 ¶ 4-14; see Ex. 18 at 119. | Undisputed that the CMs purchase Baseband Chips ▮▮▮ to build iPads and iPhones. |
| 14.  QC authorizes QCTAP's sales of BBCs to the CMs and intends for the BBCs to be incorporated into Apple products. E.g., Ex. 23 at 156. | QC objects because this paragraph calls for a legal conclusion.  Disputed. QCTAP is a distinct legal entity.  **QC Ex. 1**; **QC Ex. 15**, at 38:16-39:24. |
| 15.  The price the CMs sell the iPads and iPhones they build to Apple accounts for the cost of buying the QC chipsets. Apple will pay these prices. E.g., Ex. 22 ¶ 13-14. | Disputed.  The cited source does not provide any information about the price that the CMs charge Apple or whether Apple pays those prices. |
| 16.  The only reasonable and intended use of QC's chipsets is to be combined with QC's software to form a complete product. *E.g.*, Ex. 18 at 118; Ex. 24 ¶ 9. | Disputed.  Baseband Chips need not use QC software, and  customers could develop their own software.  **QC Ex. 28**, at 75:18-76:6. |
| 17.  Qualcomm ▮▮▮ the CMs have entered into software ("SW") licenses, | Undisputed. |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| called Master Software Agreements ("MSA"), which govern the CMs' use of SW for the chips. See, e.g., Ex. 25. | |
| 18.  The QC chipsets are sold under ██████████████████████ ███████████████████████ ████████████. See Ex. 18-21. | Undisputed that ████████████ █████████████████████████ and refers to those agreements. |
| 19. ██████████ QC provides the CMs with █████████████ to build iPhones and iPads. See Ex. 18 at 116 | Disputed. ████████████████ █████████████████████████ ████████████████████████ ████████ *See* Sproul Exs. 18-21, § 1. |
| 20. ████████████████████████ ███████████. See Ex. 18 at 116. | Undisputed. |
| 21. ██████████████████████ as ████████████████████ ████████████████████████████ ██████████████████████ ██████████████ Ex. 18 at 116. | Undisputed. |
| 22. ██████████████████████ ████████████████████████ █████. See Ex. 18 at 117. | Undisputed that each CSA ██████ █████████████████████████ Sproul Exs. 18-21, § 4. |
| 23. ██████████████████████ ████████████████████. Ex. 18 at 118. | Undisputed that each CM's CSA ████ ████████████ Sproul Exs. 18-21, §§ 10, 11. |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| 24. ▓▓▓▓ imposes an additional license requirement on the CM's ▓▓ ▓▓▓▓ through its "▓▓▓▓ ▓▓▓▓" provision. Ex. 18 at 118. | Disputed. ▓▓▓▓▓▓ ▓▓▓▓▓▓ ▓▓. Sproul Exs. 18-21, §§ 10, 11. |
| 25. ▓▓▓▓ forces on CMs a Subscriber Unit License Agreement ("SULA"). See Ex. 29. | Disputed.  QC did not "force" a SULA on any of the CMs.  QC has entered into a SULA with each of the CMs and refers to those agreements. |
| 26. ▓▓▓▓▓▓ ▓▓▓▓ Ex. 29-32. | Undisputed that QC has entered into a SULA with each of the CMs and refers to those agreements. |
| 27. The SULA provides: ▓▓▓▓ ▓▓▓▓ ▓▓▓▓ ▓▓▓▓ Ex. 29 at 255 (▓▓▓▓). | Undisputed. |
| 28.  Unless the CMs have a SULA, QC forbids the CMs from ▓▓▓▓ iPhones and iPads using QC chipsets. Ex. 18 at 118. | Undisputed that each CSA provides ▓▓▓▓ ▓▓▓▓ ▓▓▓▓ ▓▓▓▓ Sproul Exs. 18-21, §§ 10, 11. |
| 29.  The CMs pay QC for a separate license for the IP embodied in the QC chipsets. *E.g.*, Ex. 9 ¶ 16-20. | Disputed. ▓▓▓▓▓▓ ▓▓▓▓ ▓▓▓▓ **QC Ex. 14,** at 159:18-160:8; **QC Ex. 11,** at 316:24-317:9. |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| 30. ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ *E.g.*, Ex. 9 ¶ 20. | Disputed.  Sproul Ex. 9 at ¶ 20 ▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ **QC Ex. 12,** at 581:19-582:21. |
| 31.  The CMs have entered into ▮▮▮ software licenses for software used with the chipsets ▮▮▮▮ ▮▮▮▮▮ See Ex. 25; Ex. 26; Ex. 27; Ex. 28. | Undisputed that QC has entered into MSAs with each of the CMs and refers to those agreements. |
| 32. ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Ex. 25 at 214. | Undisputed. |
| 33.  "▮▮▮▮▮▮▮" refers to ▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ Ex. 25 at 224. | Undisputed. |
| 34. ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮. Ex. 25 at 214. | Undisputed. |
| 35.  Qualcomm defines "▮▮▮ ▮▮▮▮▮" as "▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮." Ex. 25 at 214. | Undisputed that is part of the definition, QC refers to the MSA. |
| 36.  "▮▮▮▮▮▮▮" must be "▮▮▮▮▮▮ | Undisputed that is part of the definition, QC refers to the MSA. |

CASE NO. 3:17-CV-00108-GPC-MDD

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| ██████████████████ ███████████████ ████████." Ex. 25 at 215. | |
| 37.  QC's chipsets and software are a matched pair, each intended to be used with only the other. E.g., Ex. 18 at 118. | Disputed.  Baseband Chips need not use QC software, and some customers have developed their own software. **QC Ex. 28,** at 75:18-76:6. |
| 38.  Qualcomm ███ and Apple's MSA links ██████████████ ███████████████ ██████ Ex. 33 at 281-83. | Undisputed that QC and Apple entered into an MSA █████████ █████████████████████. Sproul Ex. 33, § 3.1. |
| 39.  "█████████" refers to the "██████████████████ █████████████ ███████████ See Ex. 33 at 282. | Undisputed. |
| 40.  "████████████ ██████. See Ex. 33 at 281 ██████████. | Undisputed. |
| 41.  "█████████ [is] ██████ ████████" Ex. 33 at 281. | Undisputed that is part of the definition, QC refers to the MSA. |
| 42.  Per Apple's MSA, ████████ ██████████████ ████████████ ████████████ █████████████ See Ex. 33 at 283, 294; Ex. 9 ¶ 28-29. | Undisputed that QC ██████████ █████████████████████ ███████. |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| 43. Apple and Qualcomm Inc. have other contracts E.g., Dkt. 102 ¶ 4 (████ id. ¶ 113 ████ ████ | Undisputed that QC and Apple have entered into other agreements. |
| 44. Under the ASTA, ████ ████ ████ ████ Ex. 34 at 297. | QC objects because this paragraph calls for a legal conclusion. Undisputed that in the ASTA QC ████ ████ ████. |
| 45. Under the ASTA, ████ ████ ████ Ex. 34 at 303.1. | Undisputed. |
| 46. In one SOW Qualcomm Inc. ████ ████ ████ | Disputed. ████ ████ ████ Sproul Ex. 35, § 4.5.1. |
| 47. QC authorizes ████ sales of chipsets to CMs to integrate into Apple products. Ex. 34 at 297; Ex. 35 at 311. | QC objects because this paragraph calls for a legal conclusion. Undisputed that in the ASTA ████ ████ ████. Undisputed that in the 2016 SoW ████ ████ ████ |
| 48. QC points to a BBC in Apple's products as causing infringement of | Disputed. The cited portions of Exs. 36 and 37 are inadmissible. Dkt. 603 |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| the '725, '822, and '021 patents. *See* Ex. 36 ¶ 103-18, 188-97; Ex. 37 ¶ 342, 346-59; Ex. 38 ¶ 578-671, 758-79, 320-64. | (striking infringement opinions). ▪ <br> ▬▬▬▬▬▬▬▬ <br> ▬▬▬▬▬▬▬▬ <br> ▬▬▬▬▬▬ <br> ▬▬▬▬▬▬▬ <br> ▬▬▬▬▬▬▬▬▬ <br> ▬▬▬▬▬▬▬▬ <br> ▬▬▬▬ |
| 49. QC alleges that Apple devices made by CMs with an Intel BBC infringe the '725, '822, and '021 patents. *See* Ex. 36 ¶ 103-18, 188-97; Ex. 37 ¶ 342, 346-59. | Disputed. *See* QSOF ¶ 48. |
| 50. QC cites source code that runs on the BBC for infringement. *See* Ex. 38 ¶ 578-671, 758-79, 320-64. | Disputed. Ex. 38 does not reflect an infringement analysis or opinion ▬▬▬ ▬▬▬▬▬▬▬▬ **QC Ex. 23 ¶¶** 12, 15, 25, 256, 308-09. |
| 51. QC's infringement allegations apply to QC's chipset, ▬▬▬▬ ▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬ *See generally* Ex. 39; Ex. 40 at 179:14-22. | Disputed. QC's infringement opinions, which were stricken, ▬▬▬▬ <br> ▬▬▬▬▬▬▬▬ <br> ▬▬▬▬▬▬ <br> ▬▬▬▬▬ **QC Ex. 30 ¶¶** 3(b), 32-64. <br> ▬▬▬▬▬▬▬▬ <br> ▬▬▬▬▬▬▬ <br> ▬▬▬▬▬▬▬▬ <br> **QC Ex. 30 ¶** 45. |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| 52.  The '725 patent relates to controlling wireless data rates. Ex. 12 at 1:7-10; Ex. 42 ¶ 7; Dkt. 501 at 45. | Disputed.  The '725 Patent relates to "decreasing delays" to improve the performance of wireless data transmissions.  Sproul Ex. 12. |
| 53.  It deals with zero data rates. Ex. 12 at 2:31-32; Ex. 42 ¶ 8; Dkt. 501 at 45. | Disputed.  The '725 Patent deals with situations where the data-justified rate drops to zero.  Dkt. 501 at 45. |
| 54.  It uses a "dummy rate." Ex. 12 at 11:23-48; Ex. 42 ¶ 9; Dkt. 501 at 45. | Undisputed. |
| 55.  Claims 1, 6, 9, and 18 changed. Ex. 41 at 413-17; Ex. 42 ¶ 11-16. | Disputed.  Claims 1, 6, 9 and 18 were amended in prosecution.  **QC Ex. 9**. |
| 56.  Claims 19, 26, and 32 were not amended. Ex. 41 at 417-19; Ex. 42 13. | Disputed.  Claims 19, 26 and 32 were amended in prosecution.  **QC Ex. 9**. |
| 57.  Each claim limitation would be performed by a BBC. Ex. 42 ¶ 17 | Disputed.  ████████████ ████████████ ████████████ **QC Ex. 30 ¶¶** 32-64. |
| 58.  BBC would substantially embody '725 patent cls. if practiced. Ex. 42 7 | Disputed.  ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████ |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| 59.  BBC would determine data transmission rates.  Ex. 36 ¶ 188-89; Ex. 42 ¶ 18. | Disputed.  *See* QSOF ¶ 58. |
| 60.  BBC would transmit data on the reverse link at those data transmission rates. Ex. 36 ¶ 190; Ex. 42 ¶ 19. | Disputed.  *See* QSOF ¶ 58. |
| 61.  Transmitting uses standard components external to the BBC. Ex. 42 ¶ 19. | Disputed.  *See* QSOF ¶ 58. |
| 62.  QC says the BBC sets data rates and transmits data on the reverse link in claims 9-10. Ex. 36 ¶ 189-90. | Disputed.  The cited portions of Ex. 36 are inadmissible.  Dkt. 603. ███████ ███████████████████████ ████████████████████████ ████████████████████████ ██████ **QC Ex. 23 ¶¶** 12, 256, 308-09. |
| 63.  QC says the BBC is configured to perform the recited determining steps. Ex. 36 ¶ 193-94; *see* Ex. 38 ¶ 578-671 | Disputed.  *See* QSOF ¶ 62. |
| 64.  QC says the BBC performs the cl. 9's determining steps. Ex. 36 ¶ 193-94. | Disputed.  *See* QSOF ¶ 62. |
| 65.  QC says Apple products use Intel BBC to transmit data using HSUPA. Ex. 36 ¶ 192; Ex. 38 ¶ 578-671. | Disputed.  *See* QSOF ¶ 62. |
| 66.  QC says the BBC is configured as in claim 10. Ex. 36 ¶ 196-97. | Disputed.  *See* QSOF ¶ 62. |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| 67. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ | Disputed.  *See* QSOF ¶ 51. |
| 68.  QC says BBC controls the data rate on the reverse link. *See* Ex. 36 ¶ 188-97; Ex. 38 ¶ 578-671. | Disputed.  *See* QSOF ¶ 62. |
| 69.  The only reasonable and intended use of the BBC that does the above functionality would be to practice the '725 inventive features. See Ex. 42 ¶ 20. | Disputed.  *See* QSOF ¶ 57. |
| 70.  Claims 1, 6, and 19 recite steps similar to claim 9. Ex. 12 at Cl. 1, 6, 19. | Disputed.  Claim 9 is directed to an apparatus, and varies in scope from claims 1, 6 and 19.  Sproul Ex. 12. |
| 71.  Per QC, the "determining" and "transmitting" steps of cls. 1, 6, and 19 would be done by the BBC similar to cl. 9. Ex. 36 ¶ 190-95; Ex. 42 ¶ 24, 28, 37. | Disputed.  The cited portion of Ex. 36 is inadmissible. Dkt. 603.  Sproul Ex. 42 is a statement by Apple's expert, not QC, and is disputed.  **QC Ex. 30 ¶¶ 32-64.**  *See* QSOF ¶ 57 |
| 72.  For a mobile station ("MS") that practices claims 1, 6, and 19, they would be substantially embodied in the BBC. Ex. 42 ¶ 25-26, 38-39. | Disputed.  *See* QSOF ¶ 57. |
| 73.  Claim 26 recites same mode as cl. 9 to determine a new data trans- | Disputed.  Claim 26 recites a processor "configured" with different limitations |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| mission rate. Ex. 12 at Cl. 26; Ex. 42 ¶ 41. | than the processor of claim 9.  Sproul Ex. 12 at cls. 9, 26. |
| 74.  If claim 26 is practiced by a MS, it would be substantially embodied in the BBC. Ex. 42 ¶ 41. | Disputed.  *See* QSOF ¶ 57. |
| 75.  Claims 18 and 32 cover similar steps to claims 1, 6, 9, and 19. See Ex. 12 at Cls. 18, 32; Ex. 42 ¶ 36, 44. | Disputed.  Claims 18 and 32 are directed to a "software product", and vary in scope from claims 1, 6, 9, and 19.  Sproul Ex. 12. |
| 76.  Software running on a BBC would include the instructions in claims 18 and 32. Ex. 42 ¶ 36, 44. | Disputed.  *See* QSOF ¶ 57. |
| 77.  BBC substantially embodies claims 18 and 32 if practiced by a MS. Ex. 42 ¶ 36, 44. | Disputed.  *See* QSOF ¶ 57. |
| 78.  The dependent claims determine a second data transmission rate. *See* Ex. 12 at Cls. 2-5, 7-8, 10-17, 20-25, 27-31 | Disputed.  The dependent claims further limit the methods, apparatuses, and software products recited in claims 1, 6, 9, 18, 19 and 26.  Sproul Ex. 12. |
| 79.  These additional steps would be practiced at the BBC. Ex. 12 at Cls. 2-5, 7-8, 10-17, 20-25, 27-31; Ex. 36 ¶ 196-97; Ex. 42 ¶ 27, 29, 35, 40, 43. | Disputed.  The cited portions of Ex. 36 are inadmissible.  Dkt. 603.  *See* QSOF ¶ 57 |
| 80.  BBC substantially embodies these claims if practiced by a MS. Ex. 42 27, 29, 35, 40, 43. | Disputed.  *See* QSOF ¶ 57. |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| 81. The '822 patent relates to mobile communications. Ex. 37 ¶ 89; Dkt. 501 at 35. | Disputed. The '822 Patent relates "to data transmission in a . . . wireless communication system." Sproul Ex. 37 ¶ 89. |
| 82. It optimizes acknowledgment by using channel quality sent by the MS at access attempt. Ex. 13 at 2:4-14, 1:19-20, 2:17-23; Dkt. 501 at 35. | Disputed. The '822 Patent "addresses how information regarding forward link channel quality can be efficiently signaled . . . during access preamble transmission." Sproul Ex. 13 at 2:20-23. |
| 83. Examiner amended claims to recite access sequences being selected "are distributed in proportion to a number of access terminals . . . ." Ex. 43 at 469. | Undisputed that the Examiner amended the independent claims. |
| 84. BBC would select access sequence during an access procedure. Ex. 37 ¶ 342-43; Ex. 45 ¶ 13. | Disputed. The cited portions of Sproul Ex. 37 are inadmissible. Dkt. 603. *See* QSOF ¶ 57 |
| 85. QC's infringement analysis focuses on source code found in and executed by the BBC in Apple devices. Ex. 37 ¶ 346-59; Ex. 38 ¶ 758-79. | Disputed. The cited portions of Sproul Ex. 37 are inadmissible. Dkt. 603. Ex. 38 does not reflect an infringement analysis or opinion and ▮▮▮▮ **QC Ex. 23** ▮▮▮▮ ¶¶ 12, 15, 25, 256, 308-09. |
| 86. Dr. Villasenor opined BBC "meets all of the elements of claim 12." *See* Ex. 37 ¶ 349. For the | Disputed. The cited portions of Sproul Ex. 37 are inadmissible. Dkt. 603. ▮▮▮▮ |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| "access sequence" limitation, he identified chipset source code. Ex. 37 ¶ 355-59. | ████████████████████████ ████████████████ ██ |
| 87.  QC identified no other component other than a BBC that would perform the function of claim 12. See Ex. 37 ¶ 342, 346-59; Ex. 38 ¶ 758-79. | Disputed.  *See* QSOF ¶ 85. |
| 88.  The only reasonable, intended use of this function of BBC is to practice '822 inventive features. Ex. 45 ¶ 14 | Disputed.  *See* QSOF ¶ 57. |
| 89.  Claim 12 also recites memory. Ex. 13 at Cl. 12. | Undisputed. |
| 90.  Dr. Villasenor says "any difference between the computing and selection of access sequences and 'a memory element configured to store a plurality of groups of access sequences' is insubstantial." *See* Ex. 37 ¶ 353-55. | Disputed.  The cited portions of Sproul Ex. 37 are inadmissible.  Dkt. 603. |
| 91. ████████████████████ ████████████████████████ ██████████████████████ ████ | Disputed.  The cited portion of Ex. 39 ████████████████████████ ████████████████████ ████████████████ ████████████████████████ ████████████████ |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| 92.  Memory outside the BBC is a standard component for a standard operation, storing a computer program. Ex. 37 ¶ 353-54; Ex. 45 ¶ 23 | Disputed.  The cited portions of Ex. 37 are inadmissible.  Dkt. 603.  *See* QSOF ¶ 57. |
| 93.  BBC substantially embodies claim 12 if practiced by a MS. Ex. 45 ¶ 23. | Disputed.  *See* QSOF ¶ 57. |
| 94.  QC amended claims 1, 20, 28, 30, 31, and 33 to recite selecting an access sequence from a group of access sequences, like claim 12. Ex. 43 at 469. | Undisputed that claims 1, 12, 20, 28, 30, 31 and 33 were amended by an examiner's amendment. |
| 95.  QC says the selection of access sequences in claim 12, 20, 28, 30-31, and 33 would be performed at the MS by the BBC. *See* Ex. 37 ¶ 342, 346-59; Ex. 45 ¶ 11, 19, 22-23. | Disputed.  The cited portions of Ex. 37 are inadmissible.  Dkt. 603.  Ex. 45 is a statement by Apple's expert, not QC, and is disputed and flawed.  **QC Ex. 30** ¶¶ 32-64.  *See* QSOF ¶ 57. |
| 96.  Cls. 1, 28, and 31 have no elements not run by BBC. Ex. 13 at Cls. 1, 28, 31; Ex. 37 ¶ 342, 346-59; Ex. 45 ¶ 19. | Disputed.  The cited portions of Ex. 37 are inadmissible.  Dkt. 603.  *See* QSOF ¶ 57. |
| 97.  BBC substantially embodies claims 1, 28 and 31 if practiced by a MS. Ex. 45 ¶ 19. | Disputed.  *See* QSOF ¶ 57. |
| 98.  Claim 20 recites common "memory." Ex. 13, Cl. 20; Ex. 45 ¶ 23. | Disputed.  Claim 20 recites "memory containing program code" for |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| | performing the claimed limitations. Sproul Ex. 13.  *See* QSOF ¶ 57. |
| 99.  BBC substantially embodies claim 20 if practiced by a MS. Ex. 45 ¶ 23. | Disputed.  *See* QSOF ¶ 57. |
| 100.  Claims 30 and 33 say "transmitting the selected access sequence and the CQI value." Ex. 13 at Cls. 30, 33 | Undisputed. |
| 101.  The transmission step of claims 30 and 33 is performed with the help of standard components outside of the BBC. See Ex. 45 ¶ 22. | Disputed.  *See* QSOF ¶ 57. |
| 102.  "Transmitting" is a standard operation using standard components. *See* Ex. 45 ¶ 22. | Disputed.  *See* QSOF ¶ 57. |
| 103.  BBC substantially embodies claims 30 and 33 if practiced by a MS. Ex. 45 ¶ 22. | Disputed.  *See* QSOF ¶ 57. |
| 104.  BBC or a standard transmitter would practice selecting and transmitting in the dependent claims. Ex. 13 at Cls. 2-11, 13-19, 21-27, 29, 32; Ex. 45 ¶ 24-25. | Disputed.  *See* QSOF ¶ 57. |
| 105.  The transmitter is a standard component for performing the | Disputed.  *See* QSOF ¶ 57. |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| standard operation of transmitting. Ex. 45 ¶ 25. | |
| 106.  The '021 patent relates to a MS intersystem handover in a first to a second cellular system. Ex. 14 at 1:15-28, 2:40-45; Ex. 24 ¶ 11; Dkt. 501 at 8. | Undisputed. |
| 107.  It relates to power measurements of the second system when that of the first remains below a certain threshold. Ex. 14 at 2:52-60; Ex. 24 ¶ 12; Dkt. 501 at 8; Ex. 36 ¶ 73-74. | Disputed.  The cited portions of Sproul Exs. 14 and 36 ¶¶ 73-74 do not support this statement.  Sproul Ex. 14 at 5:25-34, 6:56-7:4, 9:41-43 (claim 1); ███████. |
| 108.  QC said before PTO, in a MS the claims start measurements to enable a handover *only after* the "power of the signal remains below a threshold." Ex. 44 at 472; Ex. 24 ¶ 14, 16, 18-19. | Disputed.  The '021 prosecution history states that at least one free time period for initiating measurements is granted only after the "power of the signal remains below a threshold".  Sproul Ex. 44 at 472, 474, 475. |
| 109.  QC amended the claims to recite the "only after" feature expressly. *See* Ex. 44 at 478; Ex. 24 ¶ 17. | Disputed.  The "only after" feature refers to the granting of at least one free time period for initiating measurements.  Sproul Ex. 44 at 472, 474, 475, 477 (claim 1). |
| 110. Q C says a BBC would determine whether a power level has remained below a threshold and measure only | Disputed.  The cited portions of Ex. 36 are inadmissible.  Dkt. 603 .  Sproul Ex. 24 is a statement by Apple's |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| after the level remained below it. Ex. 36 ¶ 100, 103-18; see Ex. 24 ¶ 20. | expert, not QC, and is disputed.  **QC Ex. 30 ¶¶** 32-64.  *See* QSOF ¶ 57 |
| 111.  Per QC, the BBC receives the signal and processes it to deduce the power level of the received signal. Ex. 36 ¶ 100, 103-18; see Ex. 24 ¶ 21. | Disputed.  The cited portions of Ex. 36 are inadmissible.  Dkt. 603.  Sproul Ex. 24 is a statement by Apple's expert, not QC, and is disputed.  **QC Ex. 30 ¶¶** 32-64.  *See* QSOF ¶ 57. |
| 112.  Per QC, the BBC also would create messages that maintain connection with the first cellular system while measuring the second one. Ex. 36 ¶ 100, 103-18; *see* Ex. 24 ¶ 22. | Disputed.  *See* QSOF ¶ 110. |
| 113. BBC substantially embodies claim 1 if practiced by a MS. Ex. 24 ¶ 28. | Disputed.  *See* QSOF ¶ 57. |
| 114.  QC says ███████████ ███████████ ███████████ Ex. 36 ¶ 107; Ex. 38 ¶ 320-64. | Disputed.  The cited portions of Sproul Ex. 36 are inadmissible.  Dkt. 603 . ███████████ ███████████ ███████████ ███████████ |
| 115. ███████████ ███████████ ███████. Ex. 24 ¶ 25. | Disputed.  *See* QSOF ¶ 57. |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| 116.  QC says a BBC does determination in claim 1. See Ex. 36 ¶ 103-18; Ex. 38 ¶ 320-64. | Disputed.  The cited portions of Sproul Ex. 36 are inadmissible.  Dkt. 603 . ██████████████ ██████████████ ██████████████ ██████████████ ██ |
| 117.  The only reasonable and intended use of this task in BBC is to practice the '021 patent features. Ex. 24 ¶ 28. | Disputed.  *See* QSOF ¶ 57. |
| 118.  Claims 2-11 relate to defining thresholds, processing BS power levels, and sending power level information. Ex. 14 at Cls. 2-11; Ex. 24 ¶ 29. | Disputed.  Claims 2-11 relate to the granting of a free time period during which a terminal then measures power levels while maintaining a cellular radio system connection.  Sproul Ex. 14 at Cls. 2-11. |
| 119.  The BBC would practice the features of claims 2, 4, 9-11. Ex. 36 ¶ 100, 103-18; Ex. 24 ¶ 29-36. | Disputed.  The cited portions of Ex. 36 are inadmissible.  Dkt. 603. ██████████████ ██████████████ ██████████████ ██████████████ |
| 120.  The network would perform operations of claims 3 and 7. Ex. 14 at Cls. 3, 7; Ex. 24 ¶ 31, 35. | Disputed.  *See* QSOF ¶ 57. |
| 121.  The network operations of claim 3 and 7 are common, non-inventive procedures. *See* Ex. 24 ¶ 31, 35. | Disputed.  *See* QSOF ¶ 57. |

| APPLE'S SUMF AND EVIDENCE | QUALCOMM'S RESPONSE[1] |
|---|---|
| 122. BBC substantially embodies claims 2-11 if practiced by a MS. Ex. 24 ¶ 37. | Disputed. *See* QSOF ¶ 57. |
| 123. Claims 12-14 are indefinite. Dkt. 501 at 9-15; Ex. 24 ¶ 38. | Undisputed that the Court found these claims indefinite, but QC reserves the right to appeal the Court's ruling. |
| 124. Claims 12-13 are similar to claims 6-7. Ex. 14 at Cl. 12-13; Ex. 24 ¶ 39. | Disputed. Claims 12-13 are apparatus claims having numerous means-plus-function limitations, which are different than method claims 6-7 and their limitations. Dkt. No. 501 at 8-22. |
| 125. BBC substantially embodies claims 12-13 if practiced by a MS. Ex. 24 ¶ 3 | Disputed. *See* QSOF ¶ 57. |
| 126. Claim 14 says terminal is a MS. Ex. 14 at Cl. 14; Ex. 24 ¶ 40. | Undisputed. |
| 127. BBC substantially embodies claim 14 if practiced by a MS. Ex. 24 ¶ 40. | Disputed. *See* QSOF ¶ 57. |

### Qualcomm's Statement of Facts

| Qualcomm's Facts And Evidence[3] | Apple's Response |
|---|---|
| 128.  QC and Compal entered into a SULA on Feb. 10, 2000.  **QC Ex. 2**. | |
| 129.  QC and Foxconn entered into a SULA on Oct. 18, 2005.  **QC Ex. 3**. | |
| 130.  QC and Pegatron entered into a SULA on Apr. 29, 2010.  **QC Ex. 5**. | |
| 131.  QC and Wistron entered into a SULA on May 23, 2007.  **QC Ex. 4**. | |
| 132.  Each SULA contains royalty provisions, ████████████ ████████ ████████████████ ████████████████████ ████████████████ ████████████ ████████████████ *See* **QC Exs. 2-5,** §§1, 5.2. | |
| 133.  The first agreement that each CM signed for the purchase of QC components, the CSA, was dated *after* the effective date of the SULA. *See* Sproul Exs. 19-21. ████████ ████████████████ | |

---

[3] "QC Ex." refers to the exhibits to the Declaration of James W. Carlson, filed herewith.

| Qualcomm's Facts And Evidence[3] | Apple's Response |
|---|---|
| 134.   Each CM also signed an agreement to license software from QC, an MSA.  *See* Sproul Exs. 25-28. | |
| 135.   ███████ **QC Ex. 7** ¶ 100 | |
| 136.   Each CSA states: ██████ *See* Sproul Exs. 19-21, § 10, 11. | |
| 137.   ███████. **QC Ex. 14,** at 159:20-160:8. | |
| 138.   ███████ | |

| Qualcomm's Facts And Evidence[3] | Apple's Response |
|---|---|
| ▬▬▬ **QC Ex. 11,** at 316:24-317:9. | |
| 139. ▬▬▬ **QC Exs. 2-5**, § 5.2. | |
| 140. ▬▬▬ **QC Ex. 10**; **QC Ex. 6,** at 488:22-489:11. | |
| 141.   Since Apple released the iPhone in 2007, it has relied on the CMs' SULAs in lieu of a direct license to QC's patents. ▬▬▬ | |
| 142. ▬▬▬ **QC Ex. 30** ¶ 47. | |

| Qualcomm's Facts And Evidence[3] | Apple's Response |
|---|---|
| 143.   The patents in suit are not practiced solely by physical chips. The claims recite complex functionality encoded in software interacting with hardware installed in a complete device.  **QC Ex**. **30** ¶ 51. | |
| 144.   On September 20, 2010, QC and Apple entered into the Master Software Agreement ("MSA").  The MSA ███████████ ████████████ ████████ ███████████ ████  Sproul Ex. 33, § 3.1. | |
| 145.  ████████ ███████████ ██████ ███████ ████████ ███████████ ████████ ███████████ ██████ | |
| 146.  ████ ████████ ████████ ███████ ███████████ ████████ | |

| Qualcomm's Facts And Evidence[3] | Apple's Response |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |
| 147.   Benchmark documents are not a reliable source of information for determining the functionality of QC's baseband chips to the level required to perform any substantial embodiment analysis.  **QC Ex. 30** ¶ 45. | |
| 148.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **QC Ex. 27,** at 16 n.9. | |
| 149.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |



| Qualcomm's Facts And Evidence[3] | Apple's Response |
|---|---|

| Qualcomm's Facts And Evidence[3] | Apple's Response |
|---|---|
| 155. ██████████ ████████████████████ ██████████████████ █████ **QC Ex. 19,** at 120:6-14. | |
| 156.   All three patents-in-suit at issue recite functionality that implicates interaction between complex, specialized software and the hardware.  **QC Ex. 30** ¶¶ 58, 60, 63. | |
| 157. ████████████ ████████████████ █████████████ ██████████████ ██████████ ████████████ █████████ █████████ ████████ **QC Ex. 30** ¶ 3(b).  *See also id.* at ¶¶ 47, 55. | |

Dated:  September 28, 2018          Respectfully submitted,


By     /s/ Evan R. Chesler
            Evan R. Chesler

**CRAVATH, SWAINE & MOORE LLP**
Evan R. Chesler (*pro hac vice*)
(N.Y. Bar No. 1475722)
echesler@cravath.com
Keith R. Hummel (*pro hac vice*)
(N.Y. Bar No. 2430668)
khummel@cravath.com
Richard J. Stark (*pro hac vice*)
(N.Y. Bar No. 2472603)
rstark@cravath.com
Antony L. Ryan (*pro hac vice*)
(N.Y. Bar No. 2784817)
aryan@cravath.com
Gary A. Bornstein (*pro hac vice*)
(N.Y. Bar No. 2916815)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
(N.Y. Bar No. 4331609)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
(N.Y. Bar No. 4339651)
yeven@cravath.com
Vanessa A. Lavely (*pro hac vice*)
(N.Y. Bar No. 4867412)
vlavely@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

1

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
David A. Nelson (*pro hac vice*)
(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
Stephen Swedlow (*pro hac vice*)
(Ill. Bar No. 6234550)
stephenswedlow@quinnemanuel.com
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401

2

3

4

5

6

7

Alexander Rudis (*pro hac vice*)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

8

9

10

11

12

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

13

14

15

16

**JONES DAY**
Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Randall E. Kay (SBN 149369)
rekay@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone:  (858) 314-1200
Facsimile:  (858) 345-3178

17

18

19

20

21

***Attorneys for Defendant and Counterclaim-Plaintiff***
**QUALCOMM INCORPORATED**

22

23

24

25

26

27

28