Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Phone: 858-678-5070 / Fax: 858-678-5099

Ruffin B. Cordell, DC Bar No. 445801, *pro hac vice*, cordell@fr.com
Lauren A. Degnan, DC Bar No. 452421, *pro hac vice*, degnan@fr.com
Fish & Richardson P.C.
1000 Maine Ave. SW
Washington, D.C. 20024
Phone: 202-783-5070 / Fax: 202-783-2331

William A. Isaacson, DC Bar No. 414788, pro hac vice, wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520, pro hac vice, kdunn@bsfllp.com
Boies, Schiller & Flexner LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Phone: 202-237-2727 / Fax: 202-237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

*(Additional counsel listed below signature line)*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>QUALCOMM LITIGATION, | Case No. 3:17-CV-00108-GPC-MDD<br><br>[Consolidated with<br>Case No. 3:17-CV-01010-GPC-MDD]<br><br>APPLE INC. AND THE CONTRACT MANUFACTURERS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION TO STRIKE CERTAIN EXPERT REPORTS OF APPLE AND THE CONTRACT MANUFACTURERS<br><br>Judge:  Hon. Gonzalo P. Curiel<br>Dept.:  2D<br>Date:   December 7, 2018<br>Time:   1:30 p.m. |

# TABLE OF CONTENTS

I.    BACKGROUND ...................................................................................... 2

      A.    Qualcomm Served Twenty-Seven Opening Expert
            Reports Bearing Minimal Relation to the Subject Matter
            of Their Disclosure ...................................................................... 2

      B.    Apple and the CMs Moved To Strike Qualcomm's
            Expert Opinions, Which the Court Granted in Part ......................... 4

      C.    Apple and the CMs Disclosed Their Rebuttal Experts to
            Qualcomm ..................................................................................... 5

      D.    Apple and the CMs Serve Rebuttal Reports Addressing
            the Previously-Undisclosed Patents Qualcomm Injected
            into the Case ................................................................................. 7

II.   ARGUMENT ......................................................................................... 9

      A.    Apple and the CMs' Technical Rebuttal Reports Are
            Substantially Justified and the Failure To Identify These
            Rebuttal Experts on February 12, 2018 Is Harmless .................... 9

            1.    Apple and the CMs Identified Their Technical
                  Rebuttal Experts in Good Faith, Immediately
                  After Qualcomm Showed that Its Initial Expert
                  Disclosure Was Incomplete ................................................ 10

            2.    Apple and the CMs' Technical Rebuttal Reports
                  Caused No Prejudice or Surprise to Qualcomm .................. 13

            3.    Any Prejudice Has Been Cured ........................................... 15

            4.    Apple's Rebuttal Reports Have No Impact on the
                  Parties' Readiness for Trial ................................................ 16

      B.    The Court Should Not Strike Mr. Rodermund's Rebuttal
            Report ........................................................................................... 16

            1.    Mr. Rodermund's Rebuttal Report Was Served in
                  Good Faith and Caused Qualcomm No Prejudice
                  or Surprise .......................................................................... 16

            2.    The Delay in Identifying Mr. Rodermund as an
                  Expert Is Harmless ............................................................. 18

III.  CONCLUSION ................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*FastVDO LLC v. AT&T Mobility LLC*,
No. 3:16-CV-00385-H-WVG, 2016 WL 9049523 (S.D. Cal. Dec. 28, 2016) ...........................................................................................12, 15, 16

*Frontline Med. Assocs., Inc. v. Coventry Health Care*,
263 F.R.D. 567 (C.D. Cal. 2009) ...........................................................................15

*Lanard Toys Ltd. v. Novelty, Inc.*,
375 Fed. App'x 705 (9th Cir. 2010) .........................................................................9

*Montgomery v. Wal-Mart Stores, Inc.*,
No. 12CV3057-AJB (DHB), 2015 WL 11233382 (S.D. Cal. Sept. 24, 2015) ..........................................................................................................15

*Multimedia Patent Tr. v. Apple Inc.*,
No. 10-CV-2618-H (KSC), 2012 WL 12868263 (S.D. Cal. Nov. 7, 2012) ............................................................................................................12, 15

*Witman v. Knight Trans., Inc.*,
No. 3:15-CV-01102-H-NLS, 2016 WL 8715668 (S.D. Cal. Nov. 21, 2016) ..............................................................................................................15

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) .................................................................................9

**Other Authorities**

Fed. R. Civ. P. 37(c)(1)................................................................................................9

Fed. R. Civ. P. 26(a) ....................................................................................................9

Case No. 3:17-CV-00108-GPC-MDD

After forcing Apple and the CMs to scramble to retain additional technical experts to address the 243 new patents Qualcomm injected into the case for the first time in its opening expert reports, Qualcomm has the audacity to move to strike these experts' rebuttal reports.  Qualcomm does not assert that the reports themselves were untimely—they were served on October 2, 2018 per the Court's Order (D604)—or that their subject matter exceeds the proper scope of rebuttal.  Rather, Qualcomm seeks to strike the reports because Apple and the CMs ***did not name six individuals*** on its February 12, 2018 rebuttal expert disclosure.

The Court should deny Qualcomm's motion because Apple and the CMs were substantially justified in identifying the five additional technical rebuttal expert witnesses after the February 12, 2018 deadline.  Qualcomm's initial expert disclosure failed to put Apple and the CMs on notice of the scope of Qualcomm's experts' opinions.  Qualcomm hid both the volume and identity of the patents and technologies on which its experts would opine and failed to provide the reasonable summary of its experts' expected testimony that the Scheduling Order requires.  Qualcomm also refused to identify the patents on which it planned to rely at trial in response to Apple's and the CMs' discovery requests.  But once Qualcomm fully disclosed that scope (in its expert reports), Apple and the CMs acted diligently to retain and disclose the rebuttal experts—within three weeks of receiving Qualcomm's expert reports.  Given the unprecedented number of patents Qualcomm injected into the case and the short period of time to respond to the opinions on these previously-undisclosed patents, Apple and the CMs needed five additional technical experts—Drs. Stevenson, Choi, Sears, Zickler, and Akl.

Qualcomm applies a double standard to the sixth rebuttal expert, Mr. Rodermund, whose opinions it seeks to strike.  Qualcomm itself served a rebuttal expert disclosure for an individual, Mr. Casaccia, who it failed to include on its February 2018 rebuttal expert disclosure.  Qualcomm cannot distinguish Mr. Casaccia's circumstances from Mr. Rodermund's.  Both Mr. Casaccia and Mr.

Rodermund were listed as relevant witnesses on initial disclosures.  Apple disclosed Mr. Rodermund as knowledgeable about, *inter alia*, ETSI documents and procedures and his opinions fall squarely within the subject matter listed in those disclosures.  Although Mr. Rodermund was not identified as an expert in Apple and the CMs' February 12, 2018 disclosures, Apple and the CMs served his report rebutting Dr. Huber's report to avoid any later allegations by Qualcomm of prejudice or surprise at trial.  Moreover, a rebuttal to Dr. Huber's report came as no surprise to Qualcomm because Apple informed Qualcomm that one would be provided shortly after receiving Dr. Huber's report.

The Court should also deny Qualcomm's motion because Apple and the CMs' failure to list these six individuals in their February 2018 rebuttal expert disclosure is harmless.  Their rebuttal expert reports were served on time and Qualcomm has deposed (or is scheduled to depose) all six rebuttal experts without any delay to the pretrial schedule.  Qualcomm simply has suffered no prejudice by the delay in identifying these six experts.  Rather, Qualcomm elevates form over substance in a transparent effort to prevent Apple and the CMs from explaining why Qualcomm's patent portfolio does not have the value Qualcomm attributes to it.

# I.   BACKGROUND

## A.   Qualcomm Served Twenty-Seven Opening Expert Reports Bearing Minimal Relation to the Subject Matter of Their Disclosure

On January 12, 2018, Qualcomm served its Designation of Experts Expected to Provide Testimony at Trial, disclosing a total of 38 experts.  The Scheduling Order requires these written designations to include, *inter alia*, "a reasonable summary of the testimony the expert is expected to provide."  D116.  Qualcomm's disclosure included 20 experts with identical summaries regarding expected testimony:  "[I]ssues related to various Qualcomm innovations and related Patent rights, including the significance, validity, essentiality, and scope of those innovations and rights both technically and in the marketplace and their adoption

and use." D555-4 (1/12/18 Qualcomm Expert Designation) at 2. This summary applied to Drs. Jeffrey Andrews, Richard Gitlin, Nikil Jayant, Vijay Madisetti, William Michalson, Kenneth Parulski, Massoud Pedram, and Daniel Wigdor.

Soon after Qualcomm's January expert disclosure, Qualcomm refused to respond to discovery asking Qualcomm to identify the patents on which it was going to rely as part of expert discovery or at trial so that Apple and the CMs could assess and respond. *See* D555-1 at 4-5; *see also* D397 (Joint Mtn.) at 4-6. Qualcomm refused to identify the patents upon which its experts would later analyze in their expert reports. D397 at 10. The Court denied Apple's motion to compel, D407, not knowing that Qualcomm's experts would later introduce 243 new patents into the case.

On June 29, 2018, Qualcomm served 27 opening expert reports, including the opening expert reports of Drs. Andrews, Gitlin, Jayant, Madisetti, Michalson, Parulski, Pedram, and Wigdor. Qualcomm's summary of the expected testimony bears little resemblance to the specific subject matter of these opening reports. For example, Dr. Laneman's opening report covered two patents-in-suit (U.S. Patent Nos. 6,694,469 and 8,867,494) regarding issues related to infringement and/or essentiality. D555-8 (Laneman). Dr. Andrews's opening report addressed the alleged essentiality of 34 previously undisclosed SEPs covering four distinct cellular technologies: waveform, carrier aggregation, heterogeneous cellular networks (HetNets), and unlicensed spectrum. *See* D562-6 (Andrews). Dr. Andrews's report also includes a nearly 400-page long appendix, which is referenced and incorporated by Dr. Andrews in his discussion of each of the 34 patents. *See* D644-8 (Ex. G Excerpt of App. A to Andrews). Dr. Andrews is not the only expert to incorporate additional expert opinions via an appendix; Drs. Gitlin and Jayant included appendices, which chart the patents discussed in their respective reports to 3G, 4G, and/or 5G technical specifications. *See, e.g.,* D644-9 (Ex. H, Excerpt of App. A to Gitlin); D644-10 (Ex. I, Excerpt of App. A to Jayant). In total, Drs. Andrews,

Gitlin, Jayant, Madisetti, Michalson, Parulski, Pedram, and Wigdor provided 2,425 pages of opening expert opinions.

In total, Qualcomm's opening expert reports injected 243 new patents into this case: (a) 83 patents that Qualcomm contends are essential to cellular communication standards that Apple products practice, (b) 13 patents that Qualcomm contends are essential to 5G standards, (c) and 150 other non-essential patents that Qualcomm contends are relevant to this litigation. D555-1 at 1.

### B.  Apple and the CMs Moved To Strike Qualcomm's Expert Opinions, Which the Court Granted in Part

On July 10, 2018, Apple and the CMs moved to strike the infringement opinions of Qualcomm's June 29, 2018 expert reports, including the expert reports of Drs. Andrews, Gitlin, Jayant, Madisetti, Michalson, Parulski, Pedram, and Wigdor. D555-1. On September 4, 2018, this Court granted the motion in part, striking certain infringement opinions and acknowledging that "Qualcomm's decision not to assert infringement of [the nine patents-in-suit] is at the heart of this dispute." D603 at 2. This Court's order struck the infringement opinions of Qualcomm's experts for the nine patents-in-suit because "Qualcomm made the tactical decision not to assert infringement and thus avoid certain discovery obligations as mentioned above." *Id.* at 4. The Court did not strike the opinions of Qualcomm's additional experts (Drs. Andrews, Gitlin, Jayant, Madisetti, Michalson, Parulski, Pedram, and Wigdor), finding that they "relate to issues of essentiality and valuation, rather than suggesting infringement." *Id.* at 4-5. However, contrary to Qualcomm's assertion, D676 at 2, the Court's Order did not "expressly rule" that Qualcomm timely and properly disclosed the expected testimony of Drs. Andrews, Gitlin, Jayant, Madisetti, Michalson, Parulski, Pedram, and Wigdor. *See* D603.

### C.  Apple and the CMs Disclosed Their Rebuttal Experts to Qualcomm

Apple and the CMs disclosed its rebuttal experts in a manner consistent with the Scheduling Order.  As an initial matter, Apple and the CMs timely served rebuttal disclosures, on February 12, 2018, identifying technical experts in response to the generic summaries provided by Qualcomm.  *See* D555-5.  For example, Apple and the CMs identified several experts who would potentially provide rebuttal testimony to Dr. Andrews:

> The following experts may provide rebuttal testimony to Jeffrey Andrews regarding the subject matter disclosed in Qualcomm's January 12, 2018 Designation of Experts Expected to Provide Testimony at Trial:
>
> > a. Harry V. Bims;
> > b. Leonard Joseph Cimini, Jr.;
> > c. Michael A.M. Davies;
> > d. Jeffrey A. Eisenach;
> > e. Mark R. Lanning;
> > f. Robert B. Liesegang, Sr.;
> > g. Paul K. Meyer;
> > h. Timothy S. Simcoe;
> > i. Itamar Simonson;
> > j. Wayne E. Stark;
> > k. Jonathan Wells; and
> > l. Stephen B. Wicker.

D676-5 (2/12/18 Apple Expert Designation) at 3.  Apple and the CMs made the same disclosure with respect to Drs. Gitlin, Jayant, Madisetti, Michalson, Parulski, Pedram, and Wigdor.

Apple disclosed Friedhelm Rodermund in its April 30, 2018 supplemental initial disclosures.  Ex. A (4/20/18 Apple Supplemental Initial Disclosures) at 29 (identifying subjects of testimony to include "3GPP's practices on document management and dissemination" and "[p]ublic availability and authenticity of 3GPP documents").  Apple amended Mr. Rodermund's areas of potential testimony to include explicit reference to ETSI on June 11, 2018, before Dr. Huber served his

opening report.  Ex. B (6/11/18 Apple Am. 2d Supplemental Initial Disclosures) at 27 (identifying subjects of testimony to include "[d]ocumentation and procedures of 3GPP and its SDO partner ETSI").

On the same day Apple and the CMs moved to strike Qualcomm's opening reports, Apple and the CMs also began disclosing technical experts under the Protective Order in this case.  *See* D163 at §7.9(a)(iii) & (iv) (describing disclosure requirements for experts, including experts retained to testify about patent issues).  On July 10th, Apple disclosed Robert Stevenson, who was already disclosed to Qualcomm as a technical expert in the related case *Qualcomm Inc. v. Apple Inc.*, No. 3:17-cv-01375-MDS-MDD (S.D. Cal.).  D676-6 (Ex. 5) at 4-5 ("[Apple] would like to disclose the following experts pursuant to Section 7.9 of the Protective Order.").  On July 13th, in response to a July 11th inquiry from Qualcomm's counsel requesting "the disclosures required under the Court's August 18, 2017 Scheduling Order," Apple and the CMs identified Dr. Stevenson as providing rebuttal testimony consistent with their February disclosure.  *Id.* at 2-3 (disclosing four categories of rebuttal experts "providing rebuttal opinions to testimony of William Michaelson [sic], Paul Min, Kenneth Parulski, Massoud Pedram, John Villasenor, Daniel Wigdor, and Tim Williams").  In the same email, Apple also disclosed David Choi as "providing rebuttal opinions to testimony of" the same Qualcomm experts.  *Id.* Apple further disclosed that it would be providing rebuttal opinions to Dr. Huber. *Id.* (identifying Michael Walker as providing "rebuttal opinions to testimony of Huber . . . to the extent that testimony relates to the meaning of ETSI's IPR Policy").[1]

On July 16th, Apple and the CMs disclosed Andrew Sears in a "follow up on Apple's July 13 disclosure."[2]  D676-7 (Ex. 6) at 2.  By referencing the July 13th

---

[1] During the expert discovery period, Mr. Walker's health took an unfortunate turn and he recently passed away.

[2] Dr. Sears was not a new expert to Qualcomm.  On July 2, 2018, Dr. Sears submitted a declaration before the U.S. Patent Office in an *inter partes* review before the Patent Trial and Appeal Board of U.S. Patent No. 8,683,362.

disclosure, which stated that the named experts would provide rebuttal opinions to testimony of the Qualcomm experts, this July 16th disclosure advised Qualcomm that Dr. Sears would provide the same sort of rebuttal opinions.  Three days later, on July 19th, Apple and the CMs disclosed Todd Zickler and Robert Akl.[3]  *Id.* at 2-3.  Although this communication did not explicitly say that these experts would provide rebuttal opinions to the testimony of Qualcomm's experts, in context, the role these experts would play was clear.  Apple disclosed a series of rebuttal experts, in communications made within days of each other, and in the wake of filing its motion to strike that raised its need to retain additional experts.  D555-1 at 25.  Further demonstrating that Apple's disclosure was unambiguous, Qualcomm itself referred to Drs. Stevenson, Choi, Sears, Zickler, and Akl as "rebuttal experts."  D676-8 (Ex. 7) at 2 (waiving seven-day wait period under the Protective Order for Drs. Sears, Choi, Zickler and Akl and "reserv[ing] all rights to object to these ***rebuttal experts*** as not having been timely disclosed" (emphasis added)); *see also* D676-6 (Ex. 5) at 2 (waiving seven-day period under the Protective Order for Dr. Stevenson and "reserve[ing] all rights to object to these ***rebuttal experts*** as not having been timely disclosed" (emphasis added)).  Qualcomm also did not object to these experts' reviewing confidential information under the Protective Orders.  *Id.*

### D.   Apple and the CMs Serve Rebuttal Reports Addressing the Previously-Undisclosed Patents Qualcomm Injected into the Case

On October 2, 2018, Apple and the CMs served a total of 19 rebuttal expert reports between 18 experts (Dr. Akl served two separate reports) and the CMs served 2 additional reports.  Eleven of the rebuttal experts were technical experts.  Several of the experts Apple identified in its February 12, 2018 rebuttal expert disclosure opined on 105 of the 243 patents:  Dr. Harry Bims offered rebuttal

---

[3] Drs. Akl was not a new expert to Qualcomm.  Dr. Akl is a technical expert in the FTC litigation who submitted two reports, including one rebutting the opinions of Dr. Andrews.  *See* D797, *FTC v. Qualcomm Inc.*, No. 17-cv-0220 (N.D. Cal. Oct. 18, 2018).

opinions on 21 new SEPs covering MIMO, link adaptation, and HetNets technologies; Mark Lanning offered rebuttal opinions on 19 SEPs covering channel coding, channelization, network architecture; Dr. Wayne Stark offered rebuttal opinions on 10 new SEPs covering carrier aggregation technology; Dr. Jonathan Wells offered rebuttal opinions on 18 new SEPs covering waveform technology; and Dr. Stephen Wicker offered rebuttal opinions on 11 new SEPs covering mobility, network architecture, and unlicensed spectrum technologies as well as 26 new NEPs covering six different cellular technologies.

Given the extraordinary number of patents Qualcomm injected into the case and the short period of time to respond to these previously-undisclosed patents, Apple and the CMs needed five additional experts to address the remaining 138 patents:

- Dr. Akl offered rebuttal opinions on 16 NEPs covering navigation technology and a response to Dr. Andrews's opinions regarding fundamental aspects of cellular standards and contributions of others to cellular standards.  D677 (Ex. 10); D677 (Ex. 11).
- Dr. Choi offered rebuttal opinions to Dr. Pedram on 68 NEPs.  D677 (Ex. 12).
- Dr. Sears offered rebuttal opinions to Dr. Wigdor on 22 NEPs.  D677 (Ex. 14).
- Dr. Stevenson offered rebuttal opinions to 13 SEPs covering codec technology from Jayant report.  D677 (Ex. 15).
- Dr. Zickler offered rebuttal opinions to Dr. Parulski on 19 NEPs related to digital cameras.  D677 (Ex. 16).

Qualcomm has already deposed Drs. Stevenson, Choi, Akl, and Zickler and will depose Dr. Sears on November 16, 2018.

## II.   ARGUMENT

Under Federal Rule of Civil Procedure 37(c), a party may avoid an exclusion sanction if it can show that untimely disclosure of experts was either "substantially justified" or "harmless."  Fed. R. Civ. P. 37(c)(1); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (explaining that "information may be introduced [despite a failure to comply with Rule 26(a) or (e) ] if the parties' failure to disclose the required information is . . . harmless").  A district court has "particularly wide latitude" in determining whether to issue sanctions under Rule 37(c)(1).  *See Yeti*, 259 F.3d at 1106.  Courts consider several factors in determining whether a violation of a discovery deadline is justified or harmless:

> (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence.

*Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

### A.   Apple and the CMs' Technical Rebuttal Reports Are Substantially Justified and the Failure To Identify These Rebuttal Experts on February 12, 2018 Is Harmless

Apple and the CMs are substantially justified in identifying the five additional technical rebuttal expert witnesses—Drs. Stevenson, Choi, Sears, Zickler, and Akl—because Qualcomm's initial expert disclosure failed to put Apple and the CMs on notice of the scope of Qualcomm's experts' opinions and Apple and the CMs disclosed the rebuttal experts within three weeks of receiving Qualcomm's expert reports.  Apple and the CMs acted diligently once Qualcomm fully disclosed the subject matter of its initial experts and Qualcomm learned of these experts months before the amended deadlines for rebuttal expert reports and expert depositions.

Accordingly, Apple and the CMs did not act in bad faith when they identified these rebuttal experts.

In any event, the delay in identifying the additional rebuttal experts is harmless. Apple and the CMs timely disclosed the rebuttal expert reports and Qualcomm has already deposed most of these experts and will complete the depositions of the remaining experts this week. As a result, Qualcomm has suffered no prejudice. The timing of when Apple and the CMs identified these rebuttal experts will not disrupt the trial. Their depositions will be completed in the same timeframe as the other experts and the parties are proceeding with the pretrial disclosures.

### 1. Apple and the CMs Identified Their Technical Rebuttal Experts in Good Faith, Immediately After Qualcomm Showed that Its Initial Expert Disclosure Was Incomplete

Although Qualcomm identified Drs. Andrews, Gitlin, Jayant, Madisetti, Michalson, Parulski, Pedram, and Wigdor in its January 2018 expert disclosure, it did not "reasonably summar[ize] the testimony the expert is expected to provide," as the Scheduling Order requires. *See* D116 ¶ 2. When Qualcomm identified its experts, Qualcomm failed to disclose that these experts would be addressing the specific technology or the patents they ultimately addressed in their expert reports. None of the expert disclosures mentions, for example, voice encoding/decoding, GPS-based mapping technologies, camera and image processing technologies, charging and optimizing battery power, or touchscreen technologies. *See* D555-4 (1/12/18 Qualcomm Expert Designation). Yet, Qualcomm's Drs. Madisetti, Michalson, Parulski, Pedram, and/or Wigdor address patents within one or more of these technical subject matters. D555-21 (NEPs Chart); D553-2 (SEPs Chart); *see also, e.g.*, D555-15 (Madisetti) ¶ 21; D555-16 (Michalson) ¶¶ 14, 61, 74-75, 93; D555-17 (Parulski) ¶ 21; D555-18 (Pedram) ¶ 25; D555-19 & D555-20 (Wigdor) ¶ 19. For example, Dr. Parulski introduced 19 NEPs related to digital cameras, but "digital camera" technology appears nowhere in Qualcomm's January disclosure.

Qualcomm withheld the specific technologies and patents on which its experts would opine even though it had already identified such information internally.  For example, Qualcomm was working with Dr. Andrews as early as the Spring of 2017 on the work described in his expert report:

> Q. Okay. When did you begin the work that is described in your expert report?
>
> A. I want to say probably the following spring. So it would have been spring of last year, spring of 2017. You know, I began reviewing -- I mean, I'm not sure how much I should say about this. * * * But yeah. I began working on, I think, what, you know, did grow into this report, which was, you know, *looking at some of the patents as well as others that are in this report*.

Ex. C (Andrews Dep.) 15:18-16:5 (emphasis added).

As a result of Qualcomm's failure to disclose specific technologies and patents in its expert disclosure, Apple and the CMs were not put on notice that they needed to retain experts in these kinds of technologies.[4]  Indeed, since the start of discovery, Apple and the CMs have asked Qualcomm to identify the specific patents it would address so that Apple and the CMs could adequately respond and assess those patents.  *See* D555-1 at 5; *see also* D397 (Joint Mtn.).  Qualcomm refused to identify the patents which its experts would later analyze in their expert reports. Qualcomm effectively hid the fact that its experts would address 243 new patents, from divergent technical fields.  *See* D555-1 at 5.

Qualcomm's deficient disclosure prevented Apple and the CMs from identifying technical experts with the appropriate technical background and availability to rebut issues related to the specific technologies and patents.  *See* D676 at 9.  Once Qualcomm revealed, on June 29, 2018, the precise subject matter

---

[4] Contrary to Qualcomm's assertion, D676 at 9-10, the Court did not explicitly adopt Qualcomm's assertions that its January 12, 2018 expert identification complied with the Scheduling Order and was adequate to put Apple and the CMs on notice of the complete subject matter of the eventual opinions of Drs. Andrews, Gitlin, Jayant, Madisetti, Michalson, Parulski, Pedram, and Wigdor.  *See generally* D603.

on which Drs. Andrews, Gitlin, Jayant, Madisetti, Michalson, Parulski, Pedram, and Wigdor would opine, Apple and the CMs promptly disclosed the identity of additional experts who would rebut these opinions.  Between July 10th and 19th, Apple and the CMs disclosed Drs. Stevenson, Choi, Sears, Zickler, and Akl as rebuttal experts.  Although Apple and the CMs did not formally revise their February 12, 2018 disclosure document, the identification was clear in the context of the communications.  *See* Section I.C, *supra*.

Contrary to Qualcomm's suggestion, Apple and the CMs did not disregard a ruling by this Court denying a request to supplement the identification of rebuttal experts or waive its right to serve rebuttal reports by not seeking reconsideration of the Court's order on their Motion to Strike.  *See* D676 at 2, 7-8.  Apple and the CMs' motion to strike sought alternative relief, including the "opportunity to retain additional experts to address the new technical subject matter Qualcomm . . . introduce[d] into the case" and a new deadline to identify additional rebuttal technical experts.  D555-1 at 25.  The Court's Order was silent on this request, addressing the "heart" of the dispute by striking opinions relating to infringement. D603 at 1, 4-5.

Given the unusual context of Qualcomm's injecting 243 previously-undisclosed patents into the case with its opening expert reports, and the diligence with which Apple and the CMs identified their additional rebuttal experts thereafter, Apple and the CMs were substantially justified in identifying these additional experts after the February 12, 2018 deadline and did not act in bad faith.  *See FastVDO LLC v. AT&T Mobility LLC*, No. 3:16-CV-00385-H-WVG, 2016 WL 9049523, at *2 (S.D. Cal. Dec. 28, 2016) (finding a supplemental opening expert report served 10 days after the deadline for opening reports was justified by the other party's late-served discovery); *Multimedia Patent Tr. v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 WL 12868263, at *3 (S.D. Cal. Nov. 7, 2012) (denying defendants' motion to strike, finding sufficient justification where plaintiff's expert

addressed arguments raised for the first time in rebuttal expert reports that defendants should have provided in their interrogatory answers).

### 2. Apple and the CMs' Technical Rebuttal Reports Caused No Prejudice or Surprise to Qualcomm

Apple and the CMs were diligent in timely informing Qualcomm and the Court that they would need additional experts to address the 243 new patents Qualcomm injected into this case with opening expert reports. On July 10, 2018, seven business days after receiving Qualcomm's opening expert reports, Apple and the CMs moved to strike these reports and sought, as alternative relief, a new deadline for Apple and the CMs to identify additional experts and serve rebuttal reports. D555 at 25.

Contemporaneously, between July 10th and 19th, Apple and the CMs sent a series of e-mails identifying these experts as individuals who would provide opinions to rebut the technical opinions of Qualcomm's experts. *See* Section I.C, *supra*; D676-6 (Ex. 5); D676-8 (Ex. 7). This disclosure mirrored that of Apple's February 2018 rebuttal disclosure: "The following experts may provide rebuttal testimony to Jeffrey Andrews regarding the subject matter disclosed in Qualcomm's January 12, 2018 Designation of Experts Expected to Provide Testimony at Trial." D676-5 (2/12/18 Apple Expert Designation). Therefore, by July 19th, Qualcomm was on notice that Drs. Stevenson, Choi, Sears, Zickler, and Akl would provide opinions to rebut the technical opinions of Qualcomm's experts, even referring to these individuals as "rebuttal experts." D676-6 at 2; D676-8 at 2. Apple and the CMs plainly did not wait until October 2, 2018 to disclose these experts. *See* D676 at 8. Furthermore, this disclosure was at most three weeks from service of opening reports and still two and a half months before rebuttal reports were served.

Qualcomm cannot legitimately claim it has suffered prejudice. Apple and the CMs served the expert reports Qualcomm seeks to strike with their other expert reports on the October 2nd deadline for rebuttal reports and has made these experts

available for deposition in the same timeframe as all the other experts in this case.[5]
Qualcomm did not object to allowing these experts access to confidential
information under the Protective Order.  The only prejudice Qualcomm has
identified is that Qualcomm selected its ***rebuttal*** experts based on Apple and the
CMs' ***initial*** expert identifications.  Qualcomm notably does not mention a single
expert it would have retained after receiving Apple and the CMs' opening expert
reports.  In reality, Qualcomm appears to be complaining that Apple and the CMs
were able to rebut the opinions regarding 243 previously undisclosed patents.  This
is not the sort of prejudice that warrants striking Apple and the CMs' rebuttal expert
reports.  Qualcomm should not benefit by making an incomplete disclosure of its
experts, hiding the specific patents and technologies they would address, and
refusing to respond to discovery asking for the specific patents on which it would
rely at trial.  *See* D555 at 6-10.

Indeed, striking these reports would deny the jury highly relevant information
and allow Qualcomm to present a misleading, one-sided story to the jury regarding
its patent portfolio.  Apple and the CMs obtained no unfair advantage here.
Qualcomm had at least six months to develop opinions for the 243 patents addressed
in its opening reports—and admittedly more, given Dr. Andrews' testimony that he
began his work in the Spring of 2017.  Ex. C (Andrews Dep.) 15:18-16:5.  In
contrast, Apple had a total of three months to retain experts knowledgeable in the
pertinent subject areas and task them with determining and developing rebuttal
arguments for 243 previously undisclosed patents.  Qualcomm suggests that this
truncated schedule somehow benefitted Apple and the CMs, when the exact
opposite is true.  If Qualcomm had reasonably summarized the testimony its experts
were expected to provide, including the patents on which they opined, in its expert

---

[5] Given that Qualcomm, Apple, and the CMs have taken or are scheduled to take
47 expert depositions, deposing the six additional experts can hardly be considered a
burden, especially when Qualcomm has eight more experts than Apple and the CMs
combined.

1   disclosure and disclosed these patents in response to Apple's discovery requests—as

2   it should have—then Apple and the CMs would not have had to proceed under the

3   tight deadlines Qualcomm forced upon them.

4   　　　Despite the truncated schedule, the experts provided rebuttal opinions, as the

5   Scheduling Order, and the adversary process, contemplates.  Striking these reports

6   would improperly reward Qualcomm for failing to disclose these 243 patents during

7   the fact discovery period.

8   　　　　　　**3.　　Any Prejudice Has Been Cured**

9   　　　Qualcomm has had the opportunity to depose all six experts in accordance

10  with the Scheduling Order and the parties' agreement regarding the few depositions

11  that could not be scheduled by October 30th.  Qualcomm has already deposed four of

12  the five technical experts (Dr. Stevenson on October 19th, Dr. Choi on October 26th,

13  Dr. Akl on October 30th, Dr. Zickler on November 6th) and will depose the other by

14  the end of this week (Dr. Sears on November 16th).  The parties will complete all

15  expert depositions before the pre-trial conference on November 30th.

16  　　　Qualcomm's ability to depose these experts weighs against striking the

17  reports.  *See FastVDO LLC v. AT&T Mobility LLC*, No. 3:16-CV-00385-H-WVG,

18  2016 WL 9049523, at *2 (S.D. Cal. Dec. 28, 2016); *Montgomery v. Wal-Mart*

19  *Stores, Inc.*, No. 12CV3057-AJB (DHB), 2015 WL 11233382, at *2 (S.D. Cal. Sept.

20  24, 2015); *Multimedia Patent Tr. v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012

21  WL 12868263, at *3 (S.D. Cal. Nov. 7, 2012) (denying defendants' motion to strike,

22  finding no prejudice to defendants because the reports were served before deposition

23  and prior to the close of discovery); *Frontline Med. Assocs., Inc. v. Coventry Health*

24  *Care*, 263 F.R.D. 567, 570 (C.D. Cal. 2009) ("Harmlessness may be established if a

25  disclosure is made sufficiently in advance of the discovery cut-off date to permit the

26  opposing party to conduct discovery and defend against the damages claims."); *cf.*

27  *Witman v. Knight Trans., Inc.*, No. 3:15-CV-01102-H-NLS, 2016 WL 8715668, at

28  *2 (S.D. Cal. Nov. 21, 2016) (denying motion to exclude expert testimony because

the initial omissions were cured well before trial and were therefore harmless).  In *FastVDO*, for example, the court refused to strike a supplemental expert report, finding the delay harmless because it did not affect the other party's rebuttal report deadline or expert deposition scheduling.  2016 WL 9049523, at *2.

Here, Apple and the CMs' disclosure is harmless because Qualcomm has taken (or will shortly take) the experts' depositions.

### 4. Apple's Rebuttal Reports Have No Impact on the Parties' Readiness for Trial

Regardless of the timing of Apple and the CMs' disclosure to Qualcomm of the rebuttal experts, the rebuttal expert reports themselves have caused no disruption to the pretrial schedule.  As discussed above, Apple and the CMs served these expert reports with the other rebuttal reports on October 2nd.  Expert discovery issues have not interfered with the upcoming pretrial disclosures.  For example, the parties exchanged proposed exhibit lists and deposition designations on November 2nd and Qualcomm has made no objection to any pretrial deadlines on the basis of these rebuttal expert reports.

Therefore, the timing of when Apple and the CMs identified the rebuttal experts will not disrupt the trial and the failure to disclose them in February is harmless.

### B. The Court Should Not Strike Mr. Rodermund's Rebuttal Report

#### 1. Mr. Rodermund's Rebuttal Report Was Served in Good Faith and Caused Qualcomm No Prejudice or Surprise

Mr. Rodermund's expert report rebuts Dr. Huber's opening report. Qualcomm disclosed Dr. Huber as an alleged expert,[6] expected to provide testimony on issues related to "Standard-Development Organizations, ETSI, 3GPP and ETSI's IPR Policy, as well as licensing practices and Licenses in the wireless telecommunications industry."  D555-4 (1/12/18 Qualcomm Expert Designation).

---

[6] Apple and the CMs do not concede that Dr. Huber's expected testimony will be admissible at trial.

1   Dr. Huber was personally involved in ETSI or the ETSI committee responsible for

2   the IPR Policy in the mid-1990s and rejoined ETSI this year.  Ex. D (Huber Dep.) at

3   20:14-20.  Dr. Huber's June 29, 2018 report summarizes the development of ETSI

4   and 3GPP, including the development in the early 1990s of ETSI's IPR Policy.  Dr.

5   Huber thus appears to relay his personal knowledge and impressions of events at

6   ETSI during the development of the ETSI IPR Policy.  Ex. E (Excerpt of Huber

7   Opening Report).

8           Mr. Rodermund's rebuttal report also addresses the ETSI IPR Policy.  Apple

9   initially identified Mr. Rodermund as a witness in its supplemental initial

10  disclosures, describing his expected testimony as relating to "3GPP's practices on

11  document management and dissemination," "[p]ublic availability and authenticity of

12  3GPP documents," and "[d]ocumentation and procedures of 3GPP and its SDO

13  partner ETSI."  Ex. A (4/20/18 Apple Supplemental Initial Disclosures) at 29; Ex. B

14  (6/11/18 Apple Am. 2d Supplemental Initial Disclosures) at 27.  Mr. Rodermund's

15  rebuttal opinions fall squarely within this description.  Apple and the CMs served

16  Mr. Rodermund's report to avoid any later allegations by Qualcomm of prejudice or

17  surprise at trial.  Therefore, contrary to Qualcomm's assertions, *see* D676 at 8,

18  Qualcomm was not wholly ignorant, before October 2nd, of Mr. Rodermund and the

19  subjects upon which he would offer testimony.

20          Qualcomm also could not have been surprised that Apple and the CMs

21  provided a rebuttal expert report directed to Dr. Huber's opinions because Apple

22  had informed Qualcomm of this intent on July 13, 2018.  Although Mr. Rodermund,

23  rather than the now-deceased Mr. Walker, provided this opinion, Qualcomm had

24  been informed that Mr. Rodermund would testify in the areas covered by his rebuttal

25  report.  Qualcomm is now set to depose Mr. Rodermund on November 14th.

26  Therefore, Qualcomm suffered no prejudice by learning that Mr. Rodermund would

27  serve as a rebuttal expert when it received his rebuttal report.

28

Apple and the CMs acted in good faith and were substantially justified in identifying Mr. Rodermund as a rebuttal expert after the February 12, 2018 deadline.

### 2. The Delay in Identifying Mr. Rodermund as an Expert Is Harmless

Qualcomm's own actions demonstrates that the delay in identifying Mr. Rodermund as an expert is harmless. Mr. Rodermund's situation is similar to that of Qualcomm's rebuttal expert Lorenzo Casaccia—which Qualcomm notably does not mention. Qualcomm identified Mr. Casaccia in its August 11, 2017 initial disclosures. Ex. F (8/11/17 Qualcomm Initial Disclosures) at 2 (identifying Mr. Casaccia as likely to have discoverable information on the subjects of "cellular standard-setting organizations ('SSOs') and cellular standards"). Qualcomm did not identify Mr. Casaccia in either its January 12, 2018 or February 12, 2018 expert disclosures. *See* D555-4 (1/12/18 Qualcomm Expert Designation); D555-5 (2/12/18 Qualcomm Expert Designation). Apple and the CMs deposed Lorenzo Casaccia during fact discovery. However, Qualcomm subsequently served a rebuttal Rule 26(a)(2)(C) disclosure for Mr. Casaccia (because he is a Qualcomm employee and not a retained expert), on October 2, 2018, providing a summary of the facts and opinions to which he is expected to testify, including 3GPP's technical specification development processes, 3GPP standard contribution counting, and a rebuttal to Dr. Wells's opinions and Professor Simcoe's opinions regarding technical contribution counting. Ex. G (Casaccia Disclosure). Apple and the CMs deposed Mr. Casaccia regarding the subject matter of his rebuttal disclosure on October 30, 2018.

Just as Qualcomm disclosed Mr. Casaccia in its initial disclosures but not its rebuttal expert disclosures, Mr. Rodermund appears in Apple's initial disclosures. Apple's disclosures describe Mr. Rodermund as knowledgeable about the subject matter of his rebuttal report, thus precluding any claim of prejudice by Qualcomm. And just like Apple and the CMs deposed Mr. Casaccia, Qualcomm will depose Mr. Rodermund this week. The timing of when Mr. Casaccia and Mr. Rodermund were

1  disclosed as serving rebuttal experts will not disrupt the trial—and Qualcomm does

2  not even make such an assertion.

3       Therefore, the failure to identify Mr. Rodermund as an rebuttal expert on

4  February 12, 2018 was harmless.

5  **III.   CONCLUSION**

6       Accordingly, the Court should deny Qualcomm's motion to strike the rebuttal

7  reports of Drs. Akl, Choi, Sears, Stevenson, and Zickler and Mr. Rodermund.

8  Dated:  November 12, 2018        Respectfully submitted,

9                           By:   */s/ Seth M. Sproul*

10                            Juanita R. Brooks, SBN 75934, brooks@fr.com
   Seth M. Sproul, SBN 217711, sproul@fr.com

11                            Fish & Richardson P.C.
   12390 El Camino Real

12                            San Diego, CA 92130

13                            Phone:  858-678-5070 / Fax: 858-678-5099

14                            Ruffin B. Cordell, DC Bar No. 445801,

15                            *pro hac vice*, cordell@fr.com
   Lauren A. Degnan, DC Bar No. 452421,

16                            *pro hac vice*, degnan@fr.com
   Fish & Richardson P.C.

17                            The McPherson Building

18                            901 15th Street, N.W., 7th Floor
   Washington, D.C.  20005

19                            Phone:  202-783-5070 / Fax:  202-783-2331

20                            William A. Isaacson, DC Bar No. 414788,

21                            *pro hac vice*, wisaacson@bsfllp.com
   Karen L. Dunn, DC Bar No. 1002520,

22                            *pro hac vice*, kdunn@bsfllp.com
   Boies, Schiller & Flexner LLP

23                            1401 New York Avenue, N.W.
   Washington, DC 20005

24                            Phone: 202-237-2727 / Fax: 202-237-6131

25                            Attorneys for *Plaintiff and Counterclaim-Defendant*

26                          *Apple Inc.*

27

28                         By:   */s/ Jennifer J. Rho*
   THEODORE J. BOUTROUS, JR. (SBN 132099)

tboutrous@gibsondunn.com
DANIEL G. SWANSON (SBN 116556)
dswanson@gibsondunn.com
JASON C. LO (SBN 219030)
jlo@gibsondunn.com
JENNIFER J. RHO (SBN 254312)
jrho@gibsondunn.com
MELISSA PHAN (SBN 266880)
mphan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel:  (213) 229-7000; Fax:  (213) 229-7520

CYNTHIA RICHMAN (DC Bar No. 492089,
*Pro Hac Vice*)
crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 955-8500; Fax: (202) 467-0539

*Attorneys for Defendants, Counterclaimants, and
Third-Party Plaintiffs Compal Electronics, Inc., FIH
Mobile Ltd., Hon Hai Precision Industry Co., Ltd.,
Pegatron Corporation, and Wistron Corporation*

HUGH F. BANGASSER (Pro Hac Vice)
hugh.bangasser@klgates.com
CHRISTOPHER M. WYANT (Pro Hac Vice)
chris.wyant@klgates.com
J. TIMOTHY HOBBS (Pro Hac Vice)
tim.hobbs@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Telephone: +1 206 623 7580
Facsimile: +1 206 370 6371

CAITLIN C. BLANCHE (SBN 254109)
caitlin.blanche@klgates.com
K&L GATES LLP
1 Park Plaza Twelfth Floor
Irvine, CA 92614
Telephone: +1 949 253 0900
Facsimile: +1 949 253 0902

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Wistron Corporation*

# FILER'S ATTESTATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court of the Southern District of California, I certify that authorization for the filing of this document has been obtained from each of the other signatories shown above and that all signatories have authorized placement of their electronic signature on this document.

Dated:  November 12, 2018

By:   */s/ Seth M. Sproul*

Seth M. Sproul

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 12, 2018 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Executed on November 12, 2018, at San Diego, California.

*/s/ Seth M. Sproul*
Seth M. Sproul