UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: QUALCOMM LITIGATION | Case No.: 3:17-cv-108-GPC-MDD<br><br>**ORDER GRANTING QUALCOMM'S MOTION FOR PARTIAL DISMISSAL OF APPLE'S FIRST AMENDED COMPLAINT AND THE CMS' COUNTERCLAIMS**<br><br>**[ECF No. 616]** |

Before the Court is Qualcomm's Motion for Partial Dismissal of Apple's First Amended Complaint and the CMs' Counterclaims.  ECF No. 616.  Apple and the CMs have brought 56 claims for declaratory relief relating to nine patents-in-suit.  According to Qualcomm, in order to streamline the issues in this ligation, Qualcomm has promised Apple and the CMs that it will not assert those nine patents-in-suit.  In light of that promise, Qualcomm moves to dismiss the declaratory judgment claims that depend on the nine patents-in-suit, asserting that the Court does not have subject matter jurisdiction over such claims given that Qualcomm will not enforce those patents against Apple.

Apple posits that Qualcomm is just trying to avoid having its patents put to the test. More relevant to this motion, Apple counters that Qualcomm's promise does not moot claims such as Qualcomm's contract and tort claims or Apple's own claims against

Qualcomm for its unlawful business practices of seeking and obtaining licensing fees for patents that are unenforceable due to exhaustion. The motion has been fully briefed and the Court heard oral argument on October 26, 2018. Having reviewed the parties' arguments and applicable law, the Court finds that given the language of the Covenant Not To Sue, Apple and the CMs have not met their burden of demonstrating that the Court continues to maintain subject matter jurisdiction over the declaratory judgment claims for noninfringement, invalidity, unenforceability due to exhaustion and the FRAND rates as set out in the 56 counts. Accordingly, the Court will grant Qualcomm's motion as to these 56 counts.

## I. BACKGROUND

A.   **Factual Background**

Qualcomm has entered into licensing agreements, called Subscriber Unit License Agreements or "SULAs," with each of the Contract Manufacturers ("CMs"). Qualcomm sells baseband chips to the CMs, who build the chips into the Apple products they make and sell to Apple. Pursuant to the SULAs, the CMs are required to pay upfront licensing fees and also royalties to Qualcomm. Apple previously had provided the CMs with the funds to pay for the entirety of the cost of the chipset and the royalties for Apple products. Qualcomm claims that in 2017, Apple told the CMs that it would not make any more royalty payments and that Apple instructed the CMs to withhold from Qualcomm the royalties. Qualcomm Second Amended Counterclaims ("SACC"), ECF No. 469.

B.   **Procedural History**

Qualcomm has brought breach of contract claims against the CMs, alleging that the CMs breached the licensing agreements by failing to pay royalties, failing to cooperate with Qualcomm's royalty audits, and manipulating the sales information for the products they sell. Qualcomm Compl., 3:17-cv-01010, ECF No. 1. Qualcomm also brought claims against Apple arising from the SULAs. In Count I of Qualcomm's SACC, Qualcomm brings a claim for tortious interference with Qualcomm's license agreements with the CMs. SACC, ECF No. 469 at 145. Qualcomm claims that Apple has interfered

with the SULAs by inducing the CMs not to pay the royalties due under the license agreements. *Id.* at 146. Qualcomm further alleges that Apple obstructed Qualcomm's right to audit the CMs and directed the CMs to misstate the sales information of the devices sold to Apple. *Id.* ¶¶ 291, 294.

Apple has also brought a bevy of claims against Qualcomm based upon contract law, patent law, and the UCL. Count LIX of Apple's First Amended Complaint ("FAC") seeks a declaration of unenforceability of the patents-in-suit due to exhaustion. Apple FAC, ECF No. 83 at 134. Apple claims that Qualcomm's sale of chipsets to the CMs exhausts Qualcomm's "patent rights" with respect to all patents substantially embodied in Qualcomm chipsets. *Id.* Apple contends there exists a controversy

> regarding the exhaustion of Qualcomm's patent rights with respect to patents substantially embodied in baseband processor chipsets sold by Qualcomm to Apple's CMs.
>
> . . . .
>
> To the extent that any of the Patents-in-Suit are actually essential to any Apple-practiced 3G/UMTS and/or 4G/LTE standard and infringed by Apple, such patents are substantially embodied in the Qualcomm baseband processor chipsets used in Apple products and, therefore, exhausted by Qualcomm's authorized sales.
>
> . . . Apple requests a judicial declaration that the sale of Qualcomm's baseband processor chipsets to Apple's CMs exhausts Qualcomm's patent rights for patents substantially embodied in those chipsets, and that any of the Patents-in-Suit, which are actually essential to any Apple-practiced 3G/UMTS and/or 4G/LTE standard and infringed by Apple, are unenforceable as against Apple due to patent exhaustion.

*Id.* ¶¶ 590-92.

Apple requests a declaration that Apple does not infringe and has not infringed any claim of the nine patents-in-suit.[1] Apple also requests a declaration that the nine patents-

---

[1] Apple FAC Counts V, VIII, XI, XIV, XVII, XX, XXIII, XXVI, XXIX.

in-suit are invalid.[2][3][4]  Citing California Civil Code sections 1598-99, Count LXI of Apple's FAC seeks a declaration that the SULAs are unenforceable as against public policy to the extent the agreements seek license fees on exhausted patents.  Apple FAC at 141.  Count LXIII advances a claim for violation of California Unfair Competition Law ("UCL").  *Id.* at 153.  Apple alleges that Qualcomm violated the UCL and engaged in unlawful conduct by "seeking and obtaining license fees . . . for patents that are unenforceable due to exhaustion."  *Id.* at 154.

On September 14, 2018, Qualcomm executed a covenant-not-to-sue ("Covenant") with regard to the nine patents-in-suit.  ECF No. 616-3.  This Covenant states:

> Qualcomm, for and on behalf of itself, its subsidiaries, divisions, and affiliates, as well as any of their predecessors, successors, assigns, directors, officers, employees, agents, distributors, attorneys, and representatives, hereby unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s) against Apple or the CMs or any of their parents, subsidiaries, divisions, and affiliates, as well as any of their predecessors, successors, assigns, directors, officers, employees, agents, distributors, attorneys, and representatives (collectively, "the Plaintiffs"), and all customers of each of the foregoing (whether direct or indirect), based on any possible cause of action arising under the patent laws of the United States, relating to any claim of the Patents-in-Suit, with respect to any product made, used, sold, offered for sale, or imported by the Plaintiffs, regardless of whether the products are made, used, sold, offered for sale, or imported before, on, or after the Effective Date of this Covenant.

*Id.*

---

[2] Apple FAC Counts VI, IX, XII, XV, XVIII, XXI, XXIV, XXVII, XXX.
[3] The CMs also brought the same claims for declaratory relief for exhaustion, invalidity, and noninfringment.  3:17cv1010, ECF No. 88.  For conciseness purposes, the Court will only refer to Apple's claims, as Apple and the CMs claims are the same in substance.
[4] Apple and the CMs also requested a declaration of FRAND royalties for the nine patents-in-suit.  Qualcomm moved to dismiss these declaratory judgment claims, and Apple and the CMs do not oppose dismissal of such claims.  The Court will dismiss Counts VII, X, XIII, XVI, XIX, XXII, XXV, XXVIII, and XXXI of Apple's FAC, and Counts XV, XVIII, XXI, XXIV, XXVII, XXX, XXXIII, XXVI, XXXIX of the CMs counterclaims, 3:17cv1010, ECF No. 88.

Qualcomm now moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss all of Apple's declaratory judgment claims for non-infringement, invalidity, and exhaustion. Qualcomm asserts that the Covenant eliminates the possibility that Qualcomm will enforce the patents against Apple of the CMs, therefore divesting the Court of subject matter jurisdiction over these declaratory relief claims.

## II. DISCUSSION

### A. Legal Standard

#### 1. Motions to Dismiss for Lack of Subject Matter Jurisdiction

"It is a fundamental principle that federal courts are courts of limited jurisdiction." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)). Under Federal Rule of Civil Procedure 12(b)(1), a party can move a court to dismiss an action for lack of subject matter jurisdiction. In such a motion, the party asserting jurisdiction bears the burden to establish jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) ("It is to be presumed that a cause lies outside [federal court] jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal citations omitted). On a motion to dismiss for lack of subject matter jurisdiction pursuant to 12(b)(1), "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction" without converting the motion into one for summary judgment. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

#### 2. Declaratory Judgment Jurisdiction

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The plaintiff seeking the declaratory judgment bears the burden of showing the

existence of an "actual controversy" sufficient to confer Article III jurisdiction. *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1354 (Fed. Cir. 2013). An actual controversy must be present at all times in the litigation. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).

To determine whether there is declaratory judgment jurisdiction, the Court assesses whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). A litigant may not use a declaratory judgment action to "obtain piecemeal adjudication of defenses that would not finally and conclusively resolve the underlying controversy." *Id.* at 128 n.7 (citing *Calderon v. Ashmus*, 523 U.S. 740, 749 (1998)). Further, for a declaratory judgment action to satisfy the case or controversy requirement, the dispute must "admi[t] of specific relief through a degree of a conclusive character." *Id.* at 127 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)).

**B.    Analysis**

Qualcomm contends that its Covenant moots: 1) Apple's claim for declaratory relief regarding exhaustion; 2) Apple's claim for a declaratory judgment that the nine patents-in-suit are invalid; and 3) Apple's claim for a declaratory judgment that it does not infringe on the nine patents-in-suit. "A patentee defending against an action for a declaratory judgment of invalidity and unenforceability can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present or future acts." *Spicy Beer Mix, Inc. v. New Castle Beverage*, No. CV 14-00720 SJO JEMX, 2014 WL 7672167, at *5 (C.D. Cal. Aug. 1, 2014) (citing *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995), *overruled on other grounds*, *MedImmune*, 549 U.S. 118. "However, a covenant not to sue does not always divest the trial court of jurisdiction over the case." *Enplas Display Device Corp. v. Seoul Semiconductor Co.*,

*Ltd.*, No. 13-CV-05038 NC, 2015 WL 7874323, at *3 (N.D. Cal. Dec. 3, 2015). "Whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009).

Apple responds that the Covenant is "narrow" and "carefully worded." Apple correctly notes that the Covenant prevents Qualcomm from suing for relief "under the patent laws." The Covenant therefore does not necessarily moot claims brought under other areas of law. According to Apple, the Covenant does not prevent Qualcomm from making claims about these patents to support Qualcomm's demand for royalties under the license agreements and from using the patents to demonstrate the value of Qualcomm's patent portfolio. Apple thus maintains that the issues of exhaustion, invalidity, and noninfringement are still live controversies in this case.

### 1.     Apple's Declaratory Judgment Claim for Exhaustion

As a threshold issue to Apple's exhaustion claim, there seems to be a dispute amongst the parties as to what patents are encompassed by this claim. Apple's position is that its exhaustion claim seeks a declaration regarding the nine patents-in-suit *and* 93 standard essential patents ("SEPs") that Qualcomm has disclosed in this litigation. Qualcomm served opening technical expert reports opining that 93 specifically identified patents are essential to 3G, 4G, and 5G standards. Apple's Chart of Qualcomm's Opening Expert Reports, ECF No. 553-10.

On the other hand, Qualcomm contends that the exhaustion claim is limited to the nine patents-in-suit. Qualcomm further alleges that to the extent the declaratory relief claim "addressed that broad, unspecified set of patents, the claims would plainly be nonjusticiable." Reply, ECF No. 673 at 9. The Court does not find Qualcomm's argument persuasive. Apple's position is that it seeks declaratory relief for a specific set of patents: the nine patent-in-suit and the 93 SEPs that Qualcomm has specifically identified.

For that reason, *Broadcom Corp. v. Qualcomm, Inc.*, No. 08cv1829 WQH(LSP) 2009 WL 684835 (S.D. Cal. Mar. 12, 2009), is distinguishable. In that case, Broadcom's complaint sought a judicial declaration that "the patents that are or have been substantially embodied by Qualcomm chipsets and/or substantially embodied by SULA-licensed handsets" are unenforceable. *Id.* at *2. The Court noted that the grounds for declaratory relief was premised on the court finding that Qualcomm patents "have been substantially embodied by the chipsets that Qualcomm sells," however, Broadcom did not "identify with any specificity the patents which it requests that the Court declare exhausted." *Id.* at *6. Here, however, Apple has identified 93 specific patents, and seeks a declaration that Qualcomm's sale exhausts "Qualcomm's patents rights for" those 93 patents. The Court will therefore consider Apple's claim for declaratory relief of exhaustion as to seeking a declaration for the nine patents-in-suit and the 93 SEPs.

### a.    Patent Exhaustion

"The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008). "Patent exhaustion is an affirmative defense to a claim of patent infringement." *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1373 (Fed. Cir. 2013). But it is "not a cause of action." *ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*, 541 F.3d 1373, 1376 (Fed. Cir. 2008). Qualcomm therefore contends that because it has covenanted not to sue Apple for patent infringement of the nine patents-in-suit, Apple's exhaustion declaratory judgment claim is moot. Apple disagrees. Apple responds that the Covenant does not change the fact that numerous disputes – the value of Qualcomm's portfolio, whether the SULAs are enforceable, and whether Qualcomm violates UCL – still depend on a finding of exhaustion.[5]

---

[5] Qualcomm's counsel stated at the hearing on the motion that "[e]xhaustion will absolutely, undoubtedly, be part of this trial." Hr'g Tr., ECF No. 718 at 33.

### b. Enforceability of the SULAs

Apple posits that Qualcomm has brought claims against Apple and the CMs that depend on the threshold issue of whether the SULAs, which include the patents-in-suit, are enforceable. And Apple further contends that the SULAs are unenforceable because the patents are exhausted; therefore, a controversy remains as to whether these patents are exhausted.

The claims Apple refers to are Qualcomm's breach of contract claims against the CMs for failing to pay royalties and the tortious interference claim against Apple for inducing the CMs to stop paying royalties. As a defense to these claims, Apple counters that the SULAs are unenforceable because the patents are exhausted. Apple Answer, ECF No. 84 at 17th defense. Apple contends that Qualcomm's sales of chipsets to the CMs exhausts Qualcomm's patent rights with respect to all patents that are substantially embodied in Qualcomm's chipsets. Apple Opp., ECF No 644 at 13. Apple takes the position that it and the CMs should not owe any license fee on exhausted patents because, under the doctrine of exhaustion, Qualcomm is entitled to receive only one reward for the patents – either the sale of chipsets or the licensing royalty. *Id.* at 14.

Because Qualcomm's SULAs demand both, so the argument goes, the SULAs are unenforceable against the CMs, and Qualcomm's breach of contract claims against the CMs fail. Furthermore, Apple contends that it cannot be liable to tortious interference of contract because the contract is unenforceable. Apple has taken this argument even one step further and seeks restitution for the money it paid pursuant to the CMs' license agreements for patents that were purportedly exhausted. Apple FAC, ECF No. 83 at 141-42.

In support of its position, Apple points to *Impression Products, Inc. v. Lexmark International, Inc.*, 137 S. Ct. 1523 (2017). But a careful examination of what *Lexmark* held (and did not hold) reveals that *Lexmark* is of no help to Apple here. In that case, Lexmark designed, manufactured, and sold ink toner cartridges, and owned patents that covered these cartridges. *Id.* at 1529. Lexmark created a "Return Program" through

which customers could purchase a cartridge at a lower price. *Id.* at 1530. In exchange for the discount, the customer was required to sign a contract, or "single-use/no-resale restriction," agreeing to use the cartridge only once and to refrain from transferring the empty cartridge to anyone but Lexmark. *Id.* Lexmark installed a microchip on each Return Program cartridge that prevented reuse once the toner ran out. *Id.* However, remanufacturers acquired Return Program cartridges and developed ways to get around the planted microchips. *Id.*

Lexmark then sued one such remanufacturer, Impression Products, "for patent infringement." *Id.* Lexmark claimed that Impression Products "infringed the Lexmark patents when they refurbished and resold them." *Id.* Impression Products countered that Lexmark's sales exhausted its patent rights in the cartridges. *Id.* The Supreme Court agreed, concluding that "Lexmark exhausted its patent rights in theses cartridges the moment it sold them." *Id.* at 1531. The Court made sure to clarify, on the other hand, that "[t]he single-use/no-resale restrictions in Lexmark's contracts with customers may have been clear and *enforceable under contract law*." *Id.* (emphasis added). Lexmark could not bring its "patent infringement suit against Impression Products to enforce the single-use/no-resale provision accompanying its Return Program cartridges," but rather, "whatever rights Lexmark retained" in the sold Return Program "are a matter of the contracts with its purchasers, not the patent law." *Id.* at 1533.

*Lexmark* thus makes clear that sales exhausts *patent rights*, which is distinct and not dispositive of *contract rights*. Lexmark brought a patent infringement claim against Impression Products, with whom Lexmark had not contracted. This case is much different. As Apple's pleadings make abundantly clear, Qualcomm's SULAs with the CMs "require [the CMs] to pay upfront licensing fees and quarterly royalty payments." Apple Opp., ECF No. 644 at 3. These are contract terms. Qualcomm's breach of contract claim against the CMs, which Qualcomm contracted with, for nonpayment of the royalties is just that: a claim based on contract terms and contract law and not based on patent infringement. *See Kenall Mfg. Co. v. Cooper Lighting, LLC*, No. 17 C 4575, 2018

WL 3046935, at *5 (N.D. Ill. June 20, 2018) ("Kenall alleges that Cooper has failed to make . . . royalty payments required by the License Agreement. . . . Cooper's obligation to pay certain sums as royalties at particular times is a creature of contract. . . so Kenall's remedy for nonpayment is in a breach of contract action, not a patent infringement suit."). Those contract terms also provide the foundation for Qualcomm's tortious interference claim against Apple. Under *Lexmark*, Qualcomm's patent rights are not determinative of Qualcomm's contract rights. Apple has not demonstrated that a declaration that Qualcomm's "patent rights" were exhausted would finally and conclusively resolve Qualcomm's contract claims.

     Notwithstanding the clarification in *Lexmark*, Apple invokes exhaustion to advance other legal theories. In Count LXI of its FAC, Apple contends that under California Civil Code sections 1598-99, the licensing agreements are unenforceable as against public policy to the extent they seek license fees on exhausted patents. FAC at 141. Count LXIII of the FAC claims Qualcomm violates California UCL. FAC at 153. Apple claims that Qualcomm engaged in unlawful conduct by seeking license fees for patents that are unenforceable due to exhaustion. *Id.* at 154.

     The Court is mindful that Apple, as "the party seeking to invoke the jurisdiction of the federal court" for its declaratory relief claim, "has the burden of establishing that jurisdiction exists." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Apple has not shown that declaratory relief as to exhaustion would finally and conclusively resolve the underlying controversy as to whether Qualcomm can enforce its licensing agreements.

     In *AbbVie Inc. v. MedImmune Ltd.*, the parties were engaged in a licensing agreement governed by British law. 881 F.3d 1334, 1335 (Fed. Cir. 2018). This agreement was entered into in 1995, and licensed AbbVie to practice patents, including a '516 patent. *Id.* The agreement required AbbVie to pay royalties until the last patent expired, or until fifteen years after the first commercial sale, whichever is later. *Id.* AbbVie wanted to end its royalty obligations, so it sought a declaratory judgment that the

'516 patent was invalid.  AbbVie argued that a declaration of the patent's invalidity would constitute its expiration for the purposes of the agreement, thus making the royalty obligations expire sooner.  *Id.*  MedImmune argued that the district court lacked jurisdiction, and the trial court agreed.  *Id.*  The Federal Circuit affirmed:

> The 1995 agreement, which is governed by British law, pegs the end of AbbVie's payments to the expiration of the '516 patent. It is an open question whether British courts would consider the invalidation of a patent to be tantamount to its expiration for purposes of this agreement. Without a resolution to this question, the parties' contractual dispute would persist.

*Id.* at 1338.

The same logic applies here.  It is an open question whether California courts would consider a contract unenforceable as against public policy or against UCL because the contract calls for payment of royalties for exhausted patents.  Without a resolution to that issue, Qualcomm's breach of contract claims (and Apple's enforceability defenses to such claims) would persist, even if it was declared that the patents were exhausted.  Assume for illustrative purposes that the Court were to enter a declaratory judgment that the patents have been exhausted.  That would only be one step in the process of getting to the final conclusion that the SULAs are unenforceable under California law.  Apple would still have to show more under the facts and law to resolve the underlying controversy whether the CMs are obligated to pay royalties to Qualcomm.  That, by definition, is piecemeal adjudication of defenses.

Apple has provided nothing to the Court in its opposition to demonstrate otherwise.  Apple repeatedly maintains in its opposition that the exhaustion issue is "relevant" to other claims.  But the test for declaratory judgment jurisdiction is not whether the requested declaratory relief is relevant to another legal issue, but whether the declaration would be of "conclusive character."  In fact, Apple seems to concede that the declaratory relief for exhaustion would only result in piecemeal adjudication of its public policy and

UCL claims.[6] Apple asserts that if the Court "holds that Qualcomm's patent rights are exhausted, then an important predicate will be established for" Counts LXI and LXIII of Apple's FAC. Apple Reply to MSJ, ECF No. 670 at 9. In other words, only part of these claims will be established, but there will not be a final and conclusive resolution. Apple has not shown that a declaratory relief on the exhaustion of the patents would finally and conclusive resolve whether Qualcomm can enforce the SULAs.

### c.    FRAND

Apple asserts that Qualcomm's requests for declarations that Qualcomm complied with its FRAND obligations implicate exhaustion. Count II of Qualcomm's SACC seeks a declaration that the SULAs do not violate FRAND, and Count IV seeks a declaration that Qualcomm's offer to Apple was FRAND. Apple contends that Qualcomm relies on the value of its portfolio to support Qualcomm's argument that the SULAs and offers to Apple were FRAND. According to Apple, declaratory relief as to exhaustion is still relevant to the dispute over whether Qualcomm has satisfied its FRAND commitments because if these patents are exhausted, then Qualcomm cannot use them to show the purported value of its patent portfolio.[7]

As Apple makes clear in its opposition, both the SULAs and Qualcomm's offer to Apple are "portfolio-driven." Apple Opp., ECF No. 644 at 5; *see also id.* at 4 ("SULAs require payment for entire portfolios"); *id.* at 5 ("Qualcomm insisted on negotiating a license for all of its cellular SEPs together."). And this portfolio consists of tens of thousands of patents. Apple has not alleged, let alone shown, that declaring the nine

---

[6] With respect to Apple's UCL claim, Apple's counsel stated at the hearing on the motion: "If we were able to prove [exhaustion], I think the rest of the proof under the UCL claim is pretty straightforward, *but we would still have to go through whatever elements exist*." Hr'g, Tr., ECF No. 718 at 21 (emphasis added).

[7] To the extent Apple attempts to bootstrap subject matter jurisdiction for its declaratory judgment claims to Qualcomm's FRAND declaratory judgment claims, the Court will note that Apple has taken the position that the Court lacks subject matter jurisdiction over Qualcomm's FRAND claim with respect to the offer to Apple. Apple Mot. For Partial Judgment on the Pleadings, ECF No. 593-1 at 2.

patents-in-suit and 93 SEPs as exhausted would have any material effect on the value of that large portfolio.  In other words, Apple has not shown that a declaration that a miniscule fraction of Qualcomm's portfolio is exhausted would finally and conclusively resolve the underlying controversy "given the limited number of patents at issue in comparison with the larger portfolio of thousands of patents that are licensed under the agreement."  Order, ECF No. 167 at 44.  Apple has not demonstrated the Court has subject matter jurisdiction over its claim for a declaratory judgment of exhaustion.  This claim will be dismissed.

> **2.   Apple's Declaratory Judgment Claim for Invalidity of the Nine Patents in Suit**

Apple argues that the claims for a declaratory judgment that the nine patents-in-suit are invalid still remain a live controversy.  Apple alleges that Qualcomm's SULAs with the CMs seek royalties for invalid patents, and that no such royalty is owed for these invalid patents.  Looking to the language of the SULAs, this Court has already found that "the amount of royalties that the CMs owe to Qualcomm are not dependent on whether the Additional Patents-in-Suit are valid or infringed."  Order, ECF No. 167 at 41.  The Court thus concluded that "[b]ecause the royalty rates in the SULA are not contingent on patent invalidity or noninfringment, there is no case or controversy because any declaration of the Nine Additional Patents-in-Suit would not conclusively resolve the dispute regarding royalties owed to Qualcomm." *Id.* at 44.

The Court sees no reason to depart from its previous ruling.  The royalties the CMs owe to Qualcomm based on the SULAs are not dependent on whether the patents-in-suit are valid or not.  For that reason, Apple's reliance on *Esoterix* is misplaced, because the obligation to pay royalties under the license agreement in that case "depend[ed] on whether the underlying patents are valid or invalid."  *Esoterix Genetic Labs. LLC v. Qiagen Inc.*, No. 14-cv-13228-ADB, 2016 WL 4555613, at *5 (D. Mass. Aug. 31, 2016).  Such is not the situation here.  Apple's argument that the CMs would not owe a royalty for invalid patents is unpersuasive.

Apple also argues that the validity of the patents-in-suit remains a live controversy because it is relevant to Qualcomm's intention to rely of the alleged value of its portfolio to support Qualcomm's position that the SULAs and its offers to Apple were FRAND. But similar to as discussed above, a finding of invalidity of the nine patents-in-suit would not affect the legal relationship between the parties, "given the limited number of patents at issue in comparison with the larger portfolio of thousands of patents that are licensed under the agreement." Order, ECF No. 167 at 44. Apple does not allege, nor has shown, that a finding of invalidity of the nine patents-in-suit would have any material bearing on whether Qualcomm satisfied its FRAND commitments with respect to its licensing agreements and offer to Apple. Apple has not met its burden of demonstrating subject matter jurisdiction for the claims for a declaratory judgment that the nine patents-in-suit are invalid. These claims will be dismissed without prejudice for lack of subject matter jurisdiction.

### 3. Apple's Declaratory Judgment Claim for Noninfringement

Finally, Apple contends that Qualcomm's Covenant does not moot Apple's claim for a declaratory judgment that it does not infringe the nine patents-in-suit. Apple argues that infringement is relevant to whether Qualcomm's SULAs and offer to Apple was FRAND. Apple explains that Qualcomm alleges that Apple and the CMs require a license to the patents, and Qualcomm uses that allegation to support its position on the value of its portfolio, which then supports its argument that the SULAs and offer to Apple was FRAND. As discussed above, similar to how Apple has failed to meet its burden regarding exhaustion and invalidity, Apple has not demonstrated that a declaration that Apple does not infringe on the nine patent-in-suit would conclusively resolve whether Qualcomm's offer of its entire portfolio is FRAND. Apple therefore has not demonstrated that the Court has subject matter jurisdiction of these claims, and these claims will be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court orders that:

1. Qualcomm's Motion for Partial Dismissal of Apple's First Amended Complaint and the CMs' Counterclaims is **GRANTED**;
2. Counts V-XXXI and LIX of Apple's First Amended Complaint are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction; and
3. Counts XIII-XXXIX and LXVII of the Contract Manufacturers' Counterclaims, ECF No. 3:17-cv-01010, are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated: November 20, 2018

Hon. Gonzalo P. Curiel
United States District Judge