Juanita R. Brooks (SBN 75934) brooks@fr.com
Seth M. Sproul (SBN 217711) sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (619) 678-5070 / Facsimile: (619) 678-5099

Ruffin B. Cordell (D.C. Bar #445801; Admitted *Pro hac vice*) cordell@fr.com
Lauren A. Degnan (D.C. Bar #452421; Admitted *Pro hac vice*) degnan@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070 / Facsimile: (202) 783-2331

William A. Isaacson (D.C. Bar #414788; Admitted *Pro hac vice*) wisaacson@bsfllp.com
Karen L. Dunn (D.C. Bar #1002520; Admitted *Pro hac vice*) kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 237-2727 / Facsimile: (202) 237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

*(Counsel for the CMs and Additional Counsel listed below Signature Line)*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: <br><br> QUALCOMM LITIGATION, | Case No. 3:17-CV-00108-GPC-MDD <br> [Consolidated with Case No. 3:17-CV-01010-GPC-MDD] <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE INC.'S AND THE CMS' *DAUBERT* MOTION TO EXCLUDE QUALCOMM EXPERT TESTIMONY THAT FAILS TO APPORTION PATENT ROYALTIES OR THAT CONTRAVENES THE ENTIRE MARKET VALUE RULE** <br><br> **Judge:** Judge Gonzalo P. Curiel <br> **Date:** March 21, 2019 <br> **Time:** 1:30 p.m. <br> **Courtroom:** 2D |

CASE NO. 17-cv-00108-GPC-MDD

## **TABLE OF CONTENTS**

I.   Background ......................................................................................................... 2

II.  Legal Standard .................................................................................................... 3

III. Argument ............................................................................................................ 4

    A.  Opinions Purporting To Value Cellular Standards (Evans, Stasik, Nevo, Hart), Wireless Connectivity (Knittel), and Smartphone Features (Prince) Should Be Precluded for Failure To Apportion. ....................................... 4

    B.  Qualcomm Cannot Avoid Apportionment by Misapplying "Apple's FRAND Framework" (Evans/Stasik). ...................................................... 8

    C.  Opinions Justifying the Sales Price as a Royalty Base Should Be Precluded for Circumventing the EMVR (Evans, Nevo, Hart, Huber, Fauvarque–Cosson, Stasik, Knittel, Prince). ............................................. 9

IV. Conclusion ........................................................................................................ 10

A central issue in this case is whether Qualcomm's royalties and royalty demands for its standard-essential patents (SEPs) are fair and reasonable. To support Qualcomm's position that its royalties are fair and reasonable, multiple Qualcomm experts offer opinions relating to the value of 3G and 4G cellular standards, "wireless technology," or "enhanced" smartphone features.[1] These opinions contravene settled law, which, when determining a reasonable royalty, requires apportionment of patent royalties to identify the value of ***Qualcomm's specific contributions*** to these technologies rather than the technologies' overall value. The "essential requirement for reliability under *Daubert*" for expert opinions on reasonable royalties is that the royalty "must be based on the incremental value that the patented invention adds to the end product." *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) ("CSIRO") (citation and quotation marks omitted).

Qualcomm's experts made no attempt to quantify the incremental value to Apple or the CMs of ***any*** Qualcomm patent or portfolio, offering improper and irrelevant opinions on the overall value of wireless connectivity, cellular standards, and high-level iPhone and iPad "enhanced features," and improperly claiming full-credit for these technologies. Without proper apportionment, those unmoored numbers are unconnected to the value of the Qualcomm portfolio, irrelevant, and prejudicial.

Separately, a number of Qualcomm's experts opine that the proper royalty base for any license is the sales price of the cellular device, without analyzing whether Qualcomm's patents drive demand for the device's entire value. This violates those same principles of apportionment as well as the entire market value rule ("EMVR"), which precludes reliance on the entire market value of a product as a royalty base unless the patented features are ***solely*** responsible for driving demand for the product. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d, 1201, 1226–27 (Fed. Cir. 2014). Qualcomm seeks to circumvent settled law by characterizing the use of the sales price

---

[1] Specific example portions of Qualcomm's expert reports concerning the opinions sought to be excluded are set forth in Appendices A and B hereto.

1  of the cellular device as the royalty base as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮ These excuses cannot overrule apportionment requirements or
3  EMVR. Royalties must be based on the smallest saleable patent-practicing unit unless
4  the patented features drive demand.

5        Both flaws are of particular concern in jury trials, where the jury may be unduly
6  influenced by the idea that the royalty the patent holder seeks is relatively small
7  compared to the large price, sales, or revenue figures associated with the entire
8  products. *E.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320–21 (Fed. Cir.
9  2011) (disclosure of the end product's $19 billion revenue "cannot help but skew the
10 damages horizon for the jury, regardless of the contribution of the patented component
11 to this revenue").

12       It would be improper enough if Qualcomm had one expert opine on the alleged
13 importance of cellular technology or the prices of Apple's full-featured devices. But
14 Qualcomm has eight different experts offering opinions that suffer from these flaws,
15 making it painfully evident that Qualcomm intends to defend its royalty demands on
16 grounds squarely inconsistent with the law.

17 **I.   Background**
18       Significant effort goes into the development of cellular standards, commonly
19 referred to by their respective generation (2G, 3G, 4G/LTE), with the standard setting
20 organizations ("SSOs") assisted by many industry players, including Ericsson, Huawei,
21 Qualcomm, Nokia, ZTE, Samsung, LG Electronics, Motorola, and Intel. To the extent
22 Qualcomm's patents are relevant to cellular standards, they concern only a portion of
23 that technology, ▮▮▮▮▮▮▮▮▮▮▮▮. Ex. I (Knittel Rpt.) ¶ 24 ▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮). Qualcomm has failed to value its SEPs or apportion its
27 patented contributions to any cellular standard.
28

1     Qualcomm also seeks to introduce expert testimony concerning the value of certain non-standardized, high-level "enhanced features," such as ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, to which Qualcomm claims to have contributed. Ex. K (Prince Rpt.) ¶ 5. As with its SEPs, Qualcomm's experts have not valued any of the patents that it claims "▬▬▬▬" these features or apportioned its share of the myriad of patented and non-patented contributions that may do so.

## II. Legal Standard

    A patentee cannot claim a royalty that overcompensates it for technology it did not invent. *Garretson v. Clark*, 111 U.S. 120, 121 (1884). The EMVR prohibits a patent holder from basing a royalty on an article's entire market value—here, the iPhone, cellular iPad or other device—without showing that the specific patents solely drive demand for the device. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 66–68 (Fed. Cir. 2012); *Uniloc*, 632 F.3d at 1318–21; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009). Absent this showing, the patent-holder must use the smallest saleable patent-practicing unit with a close relation to the claimed invention as a royalty base. *LaserDynamics*, 694 F.3d at 67 ("it is generally required that the royalties be based not on the entire product, but instead, on the 'smallest salable patent-practicing unit.'").

    Further, no matter what base is used, apportionment is required to ensure that the patentee is not taxing inventions it did not create. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311 (Fed. Cir. 2018) ("if the smallest salable unit—or smallest identifiable technical component—contains non-infringing features, additional apportionment is still required." (citing *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014))). For standards, this same principle prevents an SEP-holder from including "any value flowing to the patent from the standard's adoption." *CSIRO*, 809 F.3d at 1305. These twin rules—the EMVR and apportionment—ensure that the patentee does not recover more than it is due.

III. Argument

   A. **Opinions Purporting To Value Cellular Standards (Evans, Stasik, Nevo, Hart), Wireless Connectivity (Knittel), and Smartphone Features (Prince) Should Be Precluded for Failure To Apportion.**

Qualcomm's experts should be precluded from offering any opinions or evidence on the overall value to Apple of (1) cellular standards; (2) wireless connectivity; or (3) high-level "enhanced features" because the experts fail to "apportion[] the value of [Qualcomm's] patented invention[s]." *Ericsson*, 773 F.3d at 1232 (citations omitted). Without apportionment, opinions concerning the overall value of these technologies are irrelevant, unreliable, and prejudicial.[2]

Cellular Standards: Two of Qualcomm experts—David Evans and Eric Stasik—opine about the benefits of the 3G and 4G/LTE cellular standards, which they say ▇▇▇▇ Ex. A (Evans Rpt.) ¶ 32; *see id.* ¶¶ 30, 76, 247; Ex. D (Stasik Rpt.) ¶ 36, ▇▇▇ Ex. A ¶ 76, ▇▇▇, Ex. D ¶ 92, ▇▇▇ Ex. A ¶¶ 32, 76, 189–194. ▇▇▇ *Id.* ¶ 104; *see id.* ¶¶ 307, 311, 314.

Qualcomm experts Aviv Nevo and Oliver Hart make assumptions about ▇▇▇ without quantifying the value of the smartphone features or Qualcomm's cellular SEPs. Ex. G (Nevo Rpt.) ¶¶ 277–78 & n.480; Ex. H (Hart Rpt.) ¶¶ 17, 129.

Wireless Connectivity: Qualcomm's expert Christopher Knittel opines on the ▇▇▇

---

[2] Example opinions are set forth in Appendix A.

1  ▇▇▇ Ex. I ¶¶ 3, 174, 254, 271–72. ▇▇▇
2  ▇▇▇
3  ▇▇▇
4  ▇▇▇
5  ▇▇▇
6  ▇▇▇ Ex. J (Knittel Dep.) at 45:4–46:13; Ex. I ¶
7  24. ▇▇▇
8  ▇▇▇, Ex. I ¶ 174, ▇▇▇
9  ▇▇▇

"Enhanced Features": Qualcomm's expert Jeffrey Prince opines on the value of high-level smartphone "enhanced" features, such as ▇▇▇ ▇▇▇. Ex. K ¶ 5. Without determining Qualcomm's contribution to these "enhanced features," Prince ▇▇▇ ▇▇▇.[3] Id. ¶ 250 & Table 2.

No Qualcomm expert attempts to apportion the value of **Qualcomm's** patented contributions to these broad technologies. For example:

Evans: ▇▇▇
▇▇▇
▇▇▇
▇▇▇ Ex. C (Evans Dep.) at 93:23–94:11 (emphasis added).

Stasik: ▇▇▇
▇▇▇ Ex. F (Stasik Dep.) at 309:20–310:2.
▇▇▇ Id. at 320:11–14.
▇▇▇ Id. at 335:12–15.

Knittel: ▇▇▇
▇▇▇

---

[3] Prince contends that ▇▇▇ ▇▇▇. Ex. K ¶ 235 n.492. It is therefore unclear how the factfinder should interpret the results.

-5-   CASE NO. 17-cv-00108-GPC-MDD

1
2 ███████████████████████████████████ Ex. J at 57:21–58:3
3 (emphasis added); *see also id.* at 47:6–15, 48:7–49:5, 50:23–51:5, 51:18–24, 60:17–61:2.
4 Prince: ███████████████████████████████
5 ███████████████████████████████████
6 ██████████████ Ex. L (Prince Dep.) at 65:16–22 (emphasis added); *see also id.* at 58:18–59:3, 64:5–13.

By offering opinions about the total value of cellular standards, wireless connectivity, and "enhanced features" without apportionment, Qualcomm and its experts improperly assign to Qualcomm the value of technologies that Qualcomm did not invent. *Ericsson*, 773 F.3d at 1232 (noting that the "patented feature must be apportioned from all of the unpatented features reflected in the standard" and "patentee's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology"). Courts have refused similar attempts to claim credit for technologies as a whole, without a nexus to the relevant patent. *See, e.g.*, *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-00341-JVS-DFM, Dkt. No. 1460 at 10–11 (C.D. Cal. Jan. 2, 2017) (excluding testimony because it "does not answer the question of the incremental value of Ericsson's patent portfolio to the 4G standard").

Any relevance these opinions might have is outweighed by their danger of confusing and misleading the factfinder and unfairly prejudicing Apple and the CMs by introducing grand propositions about the value of cellular technology and huge revenue numbers from cellular products, seeking to suggest to the jury that the royalties Qualcomm seeks are reasonable in comparison. *Uniloc*, 632 F.3d at 1318–21. Evans, for example, conceded that he intends to introduce numbers representing the "████████████" of the standards—including the value of non-patented and/or non-Qualcomm technology and interoperability, with no context in terms of Qualcomm's contribution—for the improper purpose of ███████████

1  ▮
2  ▮
3  ▮ Ex. C at 95:17–96:20, 99:10–
4  100:6.
5      Although Knittel opined that ▮
6  ▮ Ex. J
7  at 58:23–59:8; *see also id.* at 48:11–18, ▮
8  ▮
9  ▮
10  ▮ *Id.* at 63:14–20; *see id.* at 60:11–16. Prince plans to testify
11  that his valuation of "enhanced features" is relevant even though ▮
12  ▮
13  ▮
14  ▮ Ex. L at 66:4–16.
15      If Qualcomm's experts are unable to use their data to determine the value of any
16  Qualcomm patent or portfolio to Apple, the CMs or a relevant OEM, their opinions are
17  no help to the jury. The failure to apportion requires exclusion of these opinions in
18  their entirety. *See Prism Techs. LLC v. AT&T Mobility, LLC*, 2014 WL 4705403, at
19  *6–7 (D. Neb. Sept. 22, 2014), *order clarified*, 2014 WL 4983800 (D. Neb. Oct. 6,
20  2014) ("Because damages must be apportioned to the alleged infringing invention, the
21  sweeping and categorical use of 'network improvements' to prove a correlation
22  between revenues and the cost-savings of the invention is prohibited."); *Sprint*
23  *Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*, 2015 WL 410342, at *2–3 (D. Del.
24  Jan. 29, 2015) (applying similar reasoning). Any other result would create the
25  misimpression that Qualcomm singlehandedly invented the 3G/4G wireless standards,
26  all of wireless connectivity, or the "enhanced features," confusing the jury and
27  prejudicing Apple and the CMs.
28

### B. Qualcomm Cannot Avoid Apportionment by Misapplying "Apple's FRAND Framework" (Evans/Stasik).

Two of Qualcomm's experts—Stasik and Evans—attempt to circumvent the apportionment requirement by misapplying what they refer to as "Apple's FRAND framework" to show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. D ¶¶ 134–140; Ex. B (Evans Reb. Rpt.) ¶¶ 53–59. Apple's framework multiplies a pro rata share of the licensor's SEPs relative to all SEPs for that standard (the royalty rate) to a properly apportioned royalty base: the operating profit on the SSPPU (the baseband chipset). *LaserDynamics*, 694 F.3d at 67; *Golden Bridge Tech. v. Apple Inc.*, 2014 WL 2194501, at *5–6 (N.D. Cal. May 18, 2014) (baseband chipset); *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *13 (N.D. Cal. Apr. 16, 2014) (baseband chipset); *In re Innovatio IP Ventures*, 2013 WL 5593609, at *13–14 (N.D. Ill. Oct. 3, 2013) (Wi-Fi chipset).

Stasik and Evans misapply this framework by multiplying Qualcomm's pro rata ownership share of **cellular SEPs** to **non-apportioned** royalty bases: ▮▮▮▮▮▮▮▮▮▮▮▮, Ex. D ¶¶ 136, 138–139; Ex. B ¶¶ 57–58, ▮▮▮▮▮▮▮▮▮▮▮▮, Ex. D ¶¶ 137–139; Ex. B ¶ 55, and ▮▮▮▮▮▮▮▮▮▮, Ex. D ¶¶ 136, 138–139; Ex. B ¶ 56. Putting aside the violation of legal rules for determining reasonable royalties, their analyses are flawed as a matter of law and logic.

One cannot divorce the royalty rate from the royalty base. In any given methodology, a change to the base (which Qualcomm's experts make) requires reexamination of the rate (which Qualcomm's experts accept unchanged). *D-Link*, 773 F.3d at 1226 (apportionment can be addressed "in various ways— by careful selection of the royalty base to reflect the value added by the patented feature . . . ; by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof."). The idea that Qualcomm should be entitled to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is contrary to law and unsupported by scientific

analysis.

These analyses are also flawed because they rest on values (█████████ █████████████████████████████) that include value associated with cellular (and non-cellular) non-standard essential patents, non-patented technology, equipment and costs, and the value of interoperability associated with cellular standards. It makes no sense to multiply these values by Qualcomm's pro rata share of *only cellular SEPs*. This is not apportionment, which would require Qualcomm to isolate the value attributed to all cellular SEPs (or an appropriate approximation), and then multiply that number by Qualcomm's pro rata share of cellular SEPs. *CSIRO*, 809 F.3d at 1305 ("reasonable royalties for SEPs generally . . . must not include any value flowing to the patent from the standard's adoption").

    **C.    Opinions Justifying the Sales Price as a Royalty Base Should Be Precluded for Circumventing the EMVR (Evans, Nevo, Hart, Huber, Fauvarque–Cosson, Stasik, Knittel, Prince).**

Qualcomm's experts' opinions using the sales price of Apple products as the royalty base should be excluded for contravening the EMVR, which precludes reliance on the entire market value of a product as a royalty base unless the patented feature is "the *sole driver* of customer demand or substantially creates the value of the component parts," *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018) (emphasis added), or "the basis for customer demand," *Lucent Techs.*, 580 F.3d at 1336.

Qualcomm's experts have not opined that Qualcomm's patents are solely responsible for driving demand for the iPhone, iPad, or Apple Watch, nor have they opined that other features do not influence purchasing decisions. *Power Integrations*, 904 F.3d at 979; *Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 516 (D. Del. 2017) ("that the patented features are desirable and important or even essential, are not sufficient to prove that those features <u>alone</u> drive the market for the HEOS products"). Qualcomm's experts instead offer various excuses to justify the use of the end device price as a royalty base, such as ███████████████████████, Ex. G ¶¶ 274–287,

1 ███████████████, Ex. H ¶¶ 15, 17, 115, 129; Ex. M (Huber Rpt.) at 848, Ex. D ¶¶
2 28, 41, and ████████████, Ex. M at 848–49, Ex. D ¶¶ 47–49.[4] These excuses
3 disregard the legal requirements for a reasonable royalty and fail to alleviate the
4 concern that using the wrong royalty base will mislead the jury into
5 "overcompensating" for non-infringing features.[5] *LaserDynamics*, 694 F.3d at 67–68.
6 ␣␣␣␣␣Qualcomm's experts also opine █████████████████████████████
7 █████████████████. Ex. N (Fauvarque–Cossen Rpt.) at 856–60; Ex. M at 844;
8 Ex. D ¶ 41. Even if ETSI were the only relevant SSO (which it is not),[6] ETSI policy
9 recognizes that an SSO cannot establish legal rules for a reasonable royalty, and "has
10 left the resolution of FRAND-related disputes to the national courts." *TCL Commc'n*
11 *Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, 2018 WL 4488286, at *7
12 (C.D. Cal. Sep. 14, 2018); *see* Ex. P (PTX004625, ETSI Directives) at 874 (IPR Guide
13 § 4.3 on "Dispute Resolution" provides that "the national courts of law have the sole
14 authority to resolve IPR disputes"). Under U.S. patent law, courts require the EMVR
15 analysis in determining whether royalties are fair and reasonable.[7]

16 **IV.   Conclusion**

17 ␣␣␣␣␣Apple and the CMs respectfully request that the Court excludes Qualcomm's
18 experts' opinions and evidence that purport to calculate the value of cellular standards,
19 wireless connectivity, high-level ("enhanced") features, or that violate the EMVR.

---

[4] Opinions Apple and the CMs seek to preclude are set forth in App'x B, Parts I–III.
[5] Similarly, several experts discuss Apple's revenues and profitability, *e.g.*, Ex. A ¶ 104, Ex. G ¶ 86, Ex. K ¶ 26, to improperly justify higher royalties. *See Uniloc*, 632 F.3d at 1318–21. These opinions, which Apple and the CMs also seek to preclude, are set forth in App'x B, Part IV.
[6] *See, e.g.*, *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 5848999 (N.D. Cal. Nov. 6, 2018) (granting partial summary judgment to FTC on whether the IPR policies of two SSOs, TIA and ATIS, obligate Qualcomm to license its SEPs to chipset manufacturers).
[7] Apple is aware that one district court has applied royalties on cellular SEPs by reference to the price of certain cell phones. *TCL Commc'n*, 2018 WL 4488286. That decision does not address whether doing so is consistent with the EMVR because the parties did not raise it. As discussed, each court that considered the issue in the context of SEPs has concluded that the royalty base should be a component of the end-user device, rather than the device itself.

| | | |
|---|---|---|
| 1 | Dated: February 14, 2019 | Respectfully submitted, |
| 2 | | |
| 3 | | By: */s/ William A. Isaacson* |
| | | Juanita R. Brooks, SBN 75934, brooks@fr.com |
| 4 | | Seth M. Sproul, SBN 217711, sproul@fr.com |
| 5 | | FISH & RICHARDSON P.C. |
| | | 12390 El Camino Real |
| 6 | | San Diego, CA 92130 |
| 7 | | Phone: (619) 678-5070; Fax: (619) 678-5099 |
| 8 | | Ruffin B. Cordell (D.C. Bar No. 445801; |
| | | *pro hac vice*) cordell@fr.com |
| 9 | | Lauren A. Degnan (D.C. Bar No. 452421; |
| 10 | | *pro hac vice*) degnan@fr.com |
| | | FISH & RICHARDSON P.C. |
| 11 | | 1000 Maine Avenue, S.W., Suite 1000 |
| 12 | | Washington, D.C. 20024 |
| | | Phone: (202) 783-5070; Fax: (202)783-2331 |
| 13 | | |
| 14 | | William A. Isaacson (D.C. Bar No. 414788; |
| 15 | | *pro hac vice*) wisaacson@bsfllp.com |
| | | Karen L. Dunn (D.C. Bar No. 1002520; |
| 16 | | *pro hac vice*) kdunn@bsfllp.com |
| 17 | | BOIES SCHILLER FLEXNER LLP |
| | | 1401 New York Avenue, N.W. |
| 18 | | Washington, D.C. 20005 |
| 19 | | Phone: (202) 237-2727; Fax: (202) 237-6131 |
| 20 | | *Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.* |
| 21 | | |
| 22 | | |
| 23 | | By: */s/ Jason C. Lo* |
| | | Theodore R. Boutrous, Jr., SBN 132099, |
| 24 | | tboutrous@gibsondunn.com |
| 25 | | Richard J. Doren, SBN 124666 |
| | | rdoren@gibsondunn.com |
| 26 | | Daniel G. Swanson, SBN 116556, |
| 27 | | dswanson@gibsondunn.com |
| | | Michele L. Maryott, SBN 191993 |
| 28 | | mmaryott@gibsondunn.com |

| | |
|---|---|
| 1 | Jason C. Lo, SBN 219030, |
| 2 | jlo@gibsondunn.com |
|   | Jennifer J. Rho, SBN 254312, |
| 3 | jrho@gibsondunn.com |
| 4 | Melissa Phan, SBN 266880, |
|   | mphan@gibsondunn.com |
| 5 | GIBSON, DUNN & CRUTCHER LLP |
| 6 | 333 South Grand Avenue |
|   | Los Angeles, CA 90071 |
| 7 | Tel:  (213) 229-7000; Fax:  (213) 229-7520 |
| 8 | Cynthia E. Richman, DC Bar No. 492089, |
| 9 | *pro hac vice* |
|   | crichman@gibsondunn.com |
| 10 | GIBSON, DUNN & CRUTCHER LLP |
| 11 | 1050 Connecticut Avenue, N.W. |
|    | Washington, DC 20036 |
| 12 | Tel: (202) 955-8500; Fax: (202) 467-0539 |
| 13 | |
| 14 | *Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs Compal Electronics, Inc., FIH Mobile Ltd., Hon Hai Precision Industry Co., Ltd., Pegatron Corporation, and Wistron Corporation* |
| 15 | |
| 16 | |
| 17 | Hugh F. Bangasser, pro hac vice |
| 18 | hugh.bangasser@klgates.com |
|    | Christopher M. Wyant, pro hac vice |
| 19 | chris.wyant@klgates.com |
| 20 | J. Timothy Hobbs, pro hac vice |
|    | tim.hobbs@klgates.com |
| 21 | K&L GATES LLP |
| 22 | 925 Fourth Avenue, Suite 2900 |
|    | Seattle, Washington 98104 |
| 23 | Tel: (206) 623-7580; Fax: (206) 370-6371 |
| 24 | |
| 25 | Caitlin C. Blanche, SBN 254109, |
|    | caitlin.blanche@klgates.com |
| 26 | K&L GATES LLP |
| 27 | 1 Park Plaza Twelfth Floor |
|    | Irvine, CA  92614 |
| 28 | Tel: (949) 253-0900; Fax: (949) 253-0902 |

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Wistron Corporation*

|    |    |
|----|----|
| 1  | **CERTIFICATE OF SERVICE** |
| 2  | The undersigned hereby certifies that a true and correct copy of the above and |
| 3  | foregoing document has been served on February 14, 2019, to all counsel of record |
| 4  | who are deemed to have consented to electronic service via the Court's CM/ECF |
| 5  | system per Civ. L.R. 5.4(d). Any other counsel of record will be served by electronic |
| 6  | mail, facsimile and/or overnight delivery. |
| 7  | Executed on February 14, 2019. |
| 8  | |
| 9  | /s/ William A. Isaacson<br>William A. Isaacson |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |