Juanita R. Brooks (SBN 75934) brooks@fr.com
Seth M. Sproul (SBN 217711) sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (619) 678-5070 / Facsimile: (619) 678-5099

Ruffin B. Cordell (D.C. Bar #445801; Admitted *Pro hac vice*) cordell@fr.com
Lauren A. Degnan (D.C. Bar #452421; Admitted *Pro hac vice*) degnan@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070 / Facsimile: (202) 783-2331

William A. Isaacson (D.C. Bar #414788; Admitted *Pro hac vice*) wisaacson@bsfllp.com
Karen L. Dunn (D.C. Bar #1002520; Admitted *Pro hac vice*) kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 237-2727 / Facsimile: (202) 237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

*(Counsel for the CMs and Additional Counsel listed below Signature Line)*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>QUALCOMM LITIGATION | Case No. 3:17-CV-00108-GPC-MDD<br>[Consolidated with Case No. 3:17-CV-01010-GPC-MDD]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE INC.'S AND THE CMS' *DAUBERT* MOTION TO STRIKE OPINIONS OF BERTRAM HUBER, JONATHAN PUTNAM, AND ERIC STASIK REGARDING APPLE AS AN "UNWILLING LICENSEE"**<br><br>**Date:** March 21, 2019<br>**Time:** 1:30 p.m.<br>**Courtroom:** 2D |

CASE NO. 17-CV-00108-GPC-MDD

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARD ...........................................................................................1

III.  BACKGROUND ...................................................................................................1

IV.  ARGUMENT .........................................................................................................4

    A.   "Unwilling Licensee" Opinions Are Not Relevant Here ........................4

    B.   The Experts' Opinions Are Unreliable: They Apply No Methodology To Opine that Apple Is an "Unwilling Licensee," and Otherwise Provide Only a One-Sided Recitation of Evidence ........6

    C.   The Experts' Opinion that Apple Is Not Entitled to the Benefit of the ETSI IPR Policy Improperly Offers a Legal Conclusion .................8

    D.   The Qualcomm Experts Applied an Incorrect Legal Standard to Determine that Apple Is an "Unwilling Licensee" ................................9

    E.   Stasik's Opinions Regarding Apple's Negotiations with ▮▮▮▮ ▮▮▮▮ Are Improper Propensity Evidence ......................................10

V.   CONCLUSION ...................................................................................................10

## I. INTRODUCTION

Apple Inc. ("Apple") and the CMs respectfully request that this Court strike the opinions of Bertram Huber, Jonathan Putnam, and Eric Stasik that Apple is not a willing licensee of Qualcomm Inc.'s cellular standard-essential patents ("SEPs"). Those opinions are not relevant to any claim or defense. Even if they were, they are not the product of applying any reliable methodology; the experts instead relied on their gut "feelings." Finally, the experts purport to offer legal conclusions, apply the wrong legal standard, and Stasik offers improper propensity evidence.

## II. LEGAL STANDARD

Opinions based on "scientific, technical, or other specialized knowledge" may be admissible where they "will help the trier of fact to understand the evidence or to determine a fact in issue," so long as the testimony has a proper basis and is "the product of reliable principles and methods" that are "reliably applied' to the facts of the case. Fed. R. Evid. 702. The trial court acts as a "gatekeeper" to exclude irrelevant and unreliable testimony. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc); *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). "Expert testimony, like any other testimony, must meet basic standards of relevance and pass muster under Rule 403." *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991). And an "expert cannot testify to a matter of law amounting to a legal conclusion," *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015), or opine based on an incorrect standard, *see Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 341 (5th Cir. 1999).

## III. BACKGROUND

Apple has repeatedly sought, but has never obtained, a direct FRAND license to Qualcomm's cellular SEPs. Apple has instead relied upon Qualcomm's licenses with Apple's contract manufacturers. *See* No. 17-cv-0108, Dkt. 79[1] (First Am. Compl. ("FAC")) ¶¶ 79–80, 94; Dkt. 465 (2d Am. Countercls.) ¶ 20; No. 17-cv-

---

[1] All docket numbers refer to No. 17-cv-00108 (S.D. Cal.) unless otherwise noted.

1010, Dkt. 1 (CM Compl.) ¶ 65.  Over the years, Apple has paid billions of dollars with respect to Qualcomm licensing, so that Apple "is also licensed" to Qualcomm's SEPs.  No. 17-cv-1010, Dkt. 127 (8/18/17 Hr'g Tr.) 8:21–22.

As Apple's products are already licensed, whether Apple is also willing to be a *direct* licensee is not relevant.  Even if it were, Apple has repeatedly emphasized it is willing to take a direct FRAND license.  In 2016, for example, Apple told Qualcomm that ▬▬▬▬▬▬▬▬▬▬ Ex. A[2] (PTX3119) at 3. ▬▬▬▬ Ex. B (PTX3153) at 8; Ex. C (PTX3297) at 11.  Those affirmations have continued after Apple filed suit.  No. 17-cv-1010, Dkt. 80-3 (Watrous 7/18/17 Decl.) ¶ 31 ("Apple has consistently indicated its willingness to take a license on FRAND terms to at least Qualcomm's cellular SEPs."); Ex. D (Apple's First Suppl. Resps. To First Set of Rogs. (No. 15)) at 20 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬; Ex. E (Watrous 3/7/18 Dep.) 302:17–303:23.  Before filing this lawsuit, Apple posted a bank guarantee ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  Ex. F (Watrous 3/8/18 Dep.) 552:5–11; Ex. G (PTX3309).

Nonetheless, three Qualcomm experts offer cumulative opinions that Apple is an "unwilling licensee."  Ex. H (Huber Op. Rpt.) at 57–62; Ex. I (Stasik Op. Rpt.) ¶¶ 111–41; Ex. J (Putnam Reb. Rpt.) ¶¶ 534–43.  Huber, a German attorney, primarily opines on the meaning the ETSI IPR Policy which, ▬▬▬▬▬▬, does not expressly require any licensee to be a "willing licensee."  *See* Ex. K (Huber Dep.) 66:7–10, 70:18–71:10.[3]  When asked whether there were any discussions of "good-faith negotiations" during the ETSI meetings that Huber attended, ▬▬▬

---

[2] All "Ex." references refer to Exhibits to the Appendix in support of this motion. Page numbers refer to the consecutive pagination of those exhibits where applicable.
[3] The ETSI IPR Policy is a contract between the holder of a declared-essential patent and ETSI.  Apple is a third-party beneficiary of—not a party to—that contract. Nothing in it purports to bind the implementers.  Ex. L (PTX4662) § 6.1.

1  ▮
2  ▮ *Id.* 67:11–68:14.  When asked what it means for an IPR holder to
3  negotiate in good faith, Huber responded, ▮
4  ▮ *Id.* 87:16–19.
5       Huber nonetheless opines that Apple is an unwilling licensee and accordingly
6  lost the benefit of the ETSI IPR Policy, because Apple allegedly ▮
7  ▮
8  ▮ that he claims (based on his own say-so) are ▮
9  ▮ Ex. H at 57 (emphasis in original).  He cites ▮
10  ▮ *id.* at 57–58; ▮
11  ▮
12  ▮ *id.* at 58–59; ▮ *id.* at
13  59; ▮
14  ▮ *id.* at 59–60; ▮
15  ▮ *id.* at 60.  Huber does not consider whether ▮
16  ▮.  Ex. K 10:17–21; 45:19–46:7; 228:19–22.  He
17  applies no science to arrive at his conclusions, and does not define "unwillingness,"
18  instead stating that it ▮ *Id.* 95:13–104:23.
19       Stasik offers a similar opinion.  Ex. I ¶¶ 111–41.  Stasik bases his ▮
20  ▮
21  ▮
22  ▮
23  ▮ *Id.* ¶ 121.  Stasik also opines that ▮
24  ▮ *id.* ¶¶ 142–145, ▮
25  ▮.  Stasik could not identify specific behaviors
26  that demonstrate unwillingness or hold out, instead saying ▮
27  ▮ Ex. M (Stasik Dep.) 67:3–68:13.  He admitted that he does
28  ▮

1 ▮▮▮ *Id.* 96:2–97:20.  Stasik did not
2 ▮▮▮
3 ▮▮▮ *Id.* 39:16–18, 48:14–25, 89:20–90:2, 98:11–99:4 ▮▮▮
4 ▮▮▮ *id.* 100:2–5 ▮▮▮
5 ▮▮▮

    Finally, a Qualcomm economist, Jonathan Putnam, also opines that Apple is an "unwilling licensee" based on ▮▮▮ ▮▮▮ ▮▮▮ ▮▮▮. Ex. J ¶¶ 534–43.  Putnam is an economist; he has no licensing experience.  *Id.* at 107, Exhibit 1 (CV).

    All experts ignore the fact that Apple has been an *indirect* licensee of Qualcomm.  Even with respect to direct license negotiations, none of the experts examines Apple's statements that it is willing to take a FRAND license, its substantial royalty offers, its willingness to arbitrate (or litigate) in a way that would permit a fact-finder to evaluate the merits of Qualcomm patents, its bank guarantee, or its "prolific track record as a willing licensee of cellular SEPs from other patentees," FAC ¶ 632.

## IV.    ARGUMENT

### A.    "Unwilling Licensee" Opinions Are Not Relevant Here

    Opinions that Apple is an unwilling licensee are not relevant to any remaining claim or defense.  Fed R. Evid. 401, 702.  **First**, Apple has been an indirect licensee of Qualcomm rather than a direct licensee, and therefore cannot be an unwilling licensee.  Apple has *indirectly* paid funds in connection with royalties on its products, and relies on its contract manufacturers' licenses with Qualcomm to avoid claims that Apple's cellular-enabled devices infringe Qualcomm's SEPs.  As Qualcomm counsel told the Court, Apple "is also licensed, because the people who make their phones are licensed."  No. 17-cv-1010, Dkt. 127 (8/18/17 Hr'g Tr.) 8:21–

22. Apple is not aware of any applicable doctrine that depends on Apple being an unwilling direct licensee rather than an indirect one.

Qualcomm claims that Apple's unwillingness to license is relevant to Qualcomm's requested declaration that it has "satisfied and discharged its FRAND commitments to ETSI." Dkt. 465 (Qualcomm's 2d Am. Countercls.) ¶ 345 (alleging Apple is an unwilling licensee in connection with request for declaratory judgment that Qualcomm complied with its FRAND commitments), Prayer (i), ¶¶ 329–45. But there is no ETSI rule or obligation (and no rule cited by Qualcomm's experts) that a party must be a willing direct licensee as opposed to indirect licensee. In addition, Apple has moved for judgment on the pleadings on Counterclaim IV. Dkt. 593-1 at 1–4. Even if the Court accepts that "unwillingness" is relevant to Counterclaim IV, if the Court grants Apple's motion, this theory will not be relevant to any remaining count on the face of the operative pleadings.

*Second*, even for unlicensed parties, courts ordinarily consider willingness to license in the context of determining whether a SEP holder is entitled to seek an injunction. *E.g.*, *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1187 n.6 (W.D. Wash. 2013) ("much of the commentary discussing whether injunctive relief is proper vis-à-vis a RAND-committed patent has focused the analysis on whether the implementer is a willing or unwilling licensee"). That doctrine is irrelevant here because Qualcomm has not sought an injunction in this case against Apple's use of its cellular SEPs. Dkt. 465 at 168–70. Qualcomm similarly has not brought any claims in this matter against Apple for infringement—and has convinced this Court to dismiss all of Apple's noninfringement counts. Dkt. 167 at 23–47; Dkt. 737. There are no longer claims or defenses left in this case in which the Court will set a royalty, as Qualcomm moved to dismiss claims relating to specific patents, Dkt. 167, 737, and voluntarily dismissed its request that the Court set a portfolio rate.

*Finally*, Apple's entitlement to the benefit of Qualcomm's FRAND promise or to relief under the antitrust laws does not depend on Apple's status as a willing

licensee under United States law.  The only authority that Qualcomm cites in its Counterclaims comes from the United Kingdom.  In the United States, however, a SEP-holder cannot charge exorbitant license fees or refuse to offer a license on non-discriminatory terms ***even if*** the licensee is deemed "unwilling."  *Microsoft Corp.*, 963 F. Supp. 2d at 1188 ("neither good-faith negotiations nor applying for a license" is "a condition precedent to" the "obligation to grant a RAND license").[4]

The experts' irrelevant opinions about whether Apple was "willing" to take a direct license to Qualcomm's cellular SEPs are also highly prejudicial.  Their only purpose would be to paint Apple and its witnesses who negotiated with Qualcomm in an unfavorable light.  "Jurors may well assume that an expert, unlike an ordinary mortal, will offer an authoritative view on the issues addressed; if what an expert has to say is instead tangential to the real issues, the jury may follow the 'expert' down the garden path and thus focus unduly on the expert's issues to the detriment of issues that are in fact controlling."  *Rogers*, 922 F.2d at 1431.  This prejudicial testimony should be excluded under Rules 403 and 702.  *Daubert*, 509 U.S. at 595; *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008).

### B. The Experts' Opinions Are Unreliable: They Apply No Methodology To Opine that Apple Is an "Unwilling Licensee," and Otherwise Provide Only a One-Sided Recitation of Evidence

Qualcomm's experts applied no methodology to arrive at their conclusions that Apple is an unwilling licensee.  Stasik testified that he gets ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████"  Ex. M 96:2–97:20.  Huber, too, could not identify any objective facts that determine good faith.  Ex. K

---

[4] Huber cites a footnote in the Court's order denying Qualcomm's motion for an anti-suit injunction, in which the Court stated that Apple must "demonstrate that it was a willing licensee, and, therefore, a proper third-party beneficiary" of Qualcomm's promises to ETSI.  Huber's reliance on this dicta from a preliminary decision is misplaced.  The question of the relevance of this fact, and the burden of proof, was not before the Court on Qualcomm's motion.  Dkt. 142 at 19 n.7.

95:8–104:23. This "haphazard, intuitive inquiry" must be excluded. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d Cir. 2000). In *GPNE Corp. v. Apple, Inc.*, the court excluded expert opinion on a per-unit royalty that the expert based on "all the evidence in the record" and "years of licensing and doing this," when there was "no specific math" or other methodology to the expert's calculations. 2014 WL 1494247, at *4, 16–19 (N.D. Cal. Apr. 16, 2014). Experience alone "does not constitute a sufficiently reliable and testable methodology to prevent exclusion under *Daubert*." *Id.* at *4; *see also Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005) (affirming district court's exclusion of expert who relied only on "expertise" because the expert "either had no method or could not describe one. He was relying on intuition, which won't do.").

Moreover, the experts have not evaluated whether Qualcomm upheld its end of the FRAND bargain or negotiated in good faith: They did not evaluate Qualcomm's licensing behavior at all. Ex. K 10:17–21; 45:19–46:7, 228:19–22; Ex. M 98:11–99:4, 100:2–5. The experts thus fail ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Ex. K 95:8–104:23; Ex. M 109:20–111:20. The reasonableness of a party's response to an offer necessarily depends on the reasonableness of the offer, but Qualcomm's experts did not consider Qualcomm's offers, FRAND, compliance, or negotiating behavior. And none of the experts considered Apple's professed willingness to license or bank guarantee. Testimony should be excluded if there is "too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (excluding *ipse dixit*).[5]

Beyond their gut-feeling conclusions, Qualcomm's paid experts function as

---

[5] This case is thus different from *Huawei Technolgies, Co v. Samsung Electronics Co.*, 340 F. Supp. 3d 934, 992–93 (N.D. Cal. 2018), which held expert testimony on "good faith" was permissible where it evaluated the negotiating behavior of **both** parties and the expert's factual recitation of the negotiation history was uncontested. It is also different from *Microsoft Corp. v. Motorola, Inc.*, 2013 WL 4008822, at *20 (W.D. Wash. Aug. 5, 2013), where Judge Robart permitted Motorola's expert to testify about **Motorola's own** good faith, as well as a limited set of uncontested facts regarding Microsoft's behavior as background (such as that Microsoft filed suit).

little more than narrators, reciting their one-sided review of correspondence. The jury is capable of reviewing evidence without an expert's spin. *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (an expert cannot "merely read, selectively quote from, or 'regurgitate' the evidence"); *In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871, 886 (E.D. Ark. 2008) ("If an expert does nothing more than read exhibits, is there really any point in her testifying as an expert?"), *affirmed in relevant part, overruled on other grounds*, 586 F.3d 547, 571 (8th Cir. 2009). And the jury can draw its own conclusions as to Apple's state of mind. *Godinez v. Huerta*, 2018 WL 2018048, at *7 (S.D. Cal. May 1, 2018) ("It is inappropriate for an expert to attempt to intuit a party's subjective knowledge."); *Hill v. Novartis Pharm. Corp.*, 2012 WL 5451816, at *2 (E.D. Cal. Nov. 7, 2012) (excluding expert testimony on bad faith).

### C. The Experts' Opinion that Apple Is Not Entitled to the Benefit of the ETSI IPR Policy Improperly Offers a Legal Conclusion

The Qualcomm experts' opinions that, as a result of its "unwilling licensee" status, Apple is not entitled to the benefit of the FRAND bargain, *e.g.* Ex. H at 57, are also improper legal conclusions of which the Court is the exclusive arbiter. An "expert cannot testify to a matter of law amounting to a legal conclusion." *Tamman*, 782 F.3d at 552. "Courts bar experts from using judicially defined or legally specialized terms." *Godinez*, 2018 WL 2018048, at *5; *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 558 (C.D. Cal. 2014) (noting experts should not "usurp" the role of the court by utilizing "judicially defined terms" that offer "improper legal opinion").

Huber opines not only that Apple is an "unwilling licensee," but also that, as a result, ███████████████████████████████████████ ███████. Ex. H at 57. But "the legal conclusion as to the parties' RAND obligations and duties is solely within the province of the court." *Microsoft Corp. v. Motorola, Inc.*, 2013 WL 4008822, at *20 (W.D. Wash. Aug. 5, 2013). In addition, this conclusion is wrong, as described above: good faith is not a condition for

1  Qualcomm's obligation to offer a FRAND license.  *Microsoft*, 963 F. Supp. 2d at
2  1188.  An expert may not opine as to an incorrect statement of law or based on
3  incorrect legal standards.  *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir.
4  1996); *Leverette*, 183 F.3d at 341; *compare Microsoft*, 2013 WL 4008822, at *19
5  (barring experts from opining on parties' compliance with RAND commitments).

### D. The Qualcomm Experts Applied an Incorrect Legal Standard to Determine that Apple Is an "Unwilling Licensee"

8  Qualcomm's experts also apply the law in determining an "unwilling
9  licensee" incorrectly.  Sophisticated negotiation tactics and refusal to take a non-
10 FRAND license do not render one an unwilling licensee.  *Apple Inc. v. Motorola,
11 Inc.*, 757 F.3d 1286, 1332 (Fed. Cir. 2014) (refusal to accept a license does not
12 justify an injunction where "negotiations have been ongoing" and licensee had not
13 been "unilaterally refusing to agree to a deal"), *overruled on other grounds by
14 Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015); *Core
15 Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2015 WL 5786501, at *6 (E.D. Tex.
16 Sept. 30, 2015) ("It is not facially plausible that refusing to negotiate a license gives
17 rise to an 'unwilling license,' and Core has not cited any legal basis for this claim.").
18 Instead, courts look to a party's stated willingness to accept a FRAND license.  In
19 *Microsoft Corp. v. Motorola, Inc.*, for example, the court held that the licensee was
20 not unwilling where it had stated in litigation that it was "ready and willing to accept
21 a license on RAND terms." 864 F. Supp. 2d 1023, 1035 & n.7 (W.D. Wash. 2012);
22 *see also Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1007
23 (N.D. Cal. 2013) (injunction may be warranted where alleged infringer "outright
24 ***refuses*** to accept a RAND license," but alleged infringer was not unwilling where
25 "there is no indication that" it "is ***not*** willing to accept a RAND license" and
26 "admits that it would accept a RAND license" (emphasis in original)).
27 Qualcomm's experts conclude that Apple is unwilling to license Qualcomm's
28 SEPs based on its negotiation positions.  Ex. H at 57–62; Ex. I ¶¶ 111–41; Ex. J

9                          CASE NO. 17-CV-00108-GPC-MDD

¶¶ 534–43.  But they ignore the dispositive fact: Apple has affirmed that it is "ready and willing to accept a license on RAND terms."  *See supra*.  Because the experts fail to apply the proper legal standard, their testimony should be excluded.  *KB Home v. Antares Homes, Ltd.*, 2007 WL 1893370, at *9 (N.D. Tex. June 28, 2007) (expert "testimony that relies on an incorrect legal standard" will "confuse and mislead the jury").

### E. Stasik's Opinions Regarding Apple's Negotiations with ▮▮▮ Are Improper Propensity Evidence

Stasik also describes ▮▮▮.  Ex. I ¶¶ 142–45.  The hearsay history of these negotiations appears offered to bolster Stasik's opinion that Apple engaged in hold-out during negotiations with Qualcomm.  *Id.* ¶¶ 142 (▮▮▮"), 144 (opining after reviewing ▮▮▮).  Federal Rule of Evidence 404 bars character evidence to prove that an individual acted in conformity with that character.  *Kramas v. Sec. Gas & Oil Inc.*, 672 F.2d 766, 772 (9th Cir. 1982).  Stasik's purpose in this discussion appears to be to suggest that Apple is an inveterate unwilling licensee.  This is just the kind of propensity evidence that Rule 404(b) prohibits.  *See Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1334–35 (9th Cir. 1985) (evidence of prior misconduct "may not be admitted to show a propensity or proclivity to commit bad acts.").

### V. CONCLUSION

Apple and the CMs respectfully asks the Court to strike the portions of Huber's, Stasik's, and Putnam's expert reports that purport to deem Apple an "unwilling licensee."  Ex. H at 55–63; Ex. I ¶¶ 12, 16, 111–46; Ex. J ¶¶ 534–43.

//

//

| | | |
|---|---|---|
| 1 | Dated: February 14, 2019 | Respectfully submitted, |
| 2 | | |
| 3 | | By:  */s/ William A. Isaacson* |
| | | Juanita R. Brooks, SBN 75934, brooks@fr.com |
| 4 | | Seth M. Sproul, SBN 217711, sproul@fr.com |
| 5 | | FISH & RICHARDSON P.C. |
| | | 12390 El Camino Real |
| 6 | | San Diego, CA 92130 |
| 7 | | Phone: (619) 678-5070; Fax: (619) 678-5099 |
| 8 | | Ruffin B. Cordell (D.C. Bar No. 445801; |
| | | *pro hac vice*) cordell@fr.com |
| 9 | | Lauren A. Degnan (D.C. Bar No. 452421; |
| 10 | | *pro hac vice*) degnan@fr.com |
| | | FISH & RICHARDSON P.C. |
| 11 | | 1000 Maine Avenue, S.W., Suite 1000 |
| 12 | | Washington, D.C. 20024 |
| | | Phone: (202) 783-5070; Fax: (202)783-2331 |
| 13 | | |
| 14 | | William A. Isaacson (D.C. Bar No. 414788; |
| | | *pro hac vice*) wisaacson@bsfllp.com |
| 15 | | Karen L. Dunn (D.C. Bar No. 1002520; |
| 16 | | *pro hac vice*) kdunn@bsfllp.com |
| | | BOIES SCHILLER FLEXNER LLP |
| 17 | | 1401 New York Avenue, N.W. |
| 18 | | Washington, D.C. 20005 |
| | | Phone: (202) 237-2727; Fax: (202) 237-6131 |
| 19 | | |
| 20 | | *Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.* |
| 21 | | |
| 22 | | |
| 23 | | By:  */s/ Jason C. Lo* |
| | | Theodore R. Boutrous, Jr., SBN 132099, |
| 24 | | tboutrous@gibsondunn.com |
| | | Richard J. Doren, SBN 124666 |
| 25 | | rdoren@gibsondunn.com |
| 26 | | Daniel G. Swanson, SBN 116556, |
| | | dswanson@gibsondunn.com |
| 27 | | Michele L. Maryott, SBN 191993 |
| | | mmaryott@gibsondunn.com |
| 28 | | Jason C. Lo, SBN 219030, |
| | | jlo@gibsondunn.com |

11   CASE NO. 17-CV-00108-GPC-MDD

|   |   |
|---|---|
| 1 | Jennifer J. Rho, SBN 254312, |
| 2 | jrho@gibsondunn.com <br> Melissa Phan, SBN 266880, |
| 3 | mphan@gibsondunn.com <br> GIBSON, DUNN & CRUTCHER LLP |
| 4 | 333 South Grand Avenue <br> Los Angeles, CA 90071 |
| 5 | Tel: (213) 229-7000; Fax: (213) 229-7520 |
| 6 | Cynthia Richman, DC Bar No. 492089, |
| 7 | *pro hac vice* <br> crichman@gibsondunn.com |
| 8 | GIBSON, DUNN & CRUTCHER LLP <br> 1050 Connecticut Avenue, N.W. |
| 9 | Washington, DC 20036 <br> Tel: (202) 955-8500; Fax: (202) 467-0539 |

*Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs Compal Electronics, Inc., FIH Mobile Ltd., Hon Hai Precision Industry Co., Ltd., Pegatron Corporation, and Wistron Corporation*

Hugh F. Bangasser, *pro hac vice*
hugh.bangasser@klgates.com
Christopher M. Wyant, *pro hac vice*
chris.wyant@klgates.com
J. Timothy Hobbs, *pro hac vice*
tim.hobbs@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Tel: (206) 623-7580; Fax: (206) 370-6371

Caitlin C. Blanche, SBN 254109,
caitlin.blanche@klgates.com
K&L GATES LLP
1 Park Plaza Twelfth Floor
Irvine, CA 92614
Tel: (949) 253-0900; Fax: (949) 253-0902

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Wistron Corporation*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 14, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5.4(d). Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

    Executed on February 14, 2019.

                                       */s/ William A. Isaacson*
                                       William A. Isaacson