Juanita R. Brooks (SBN 75934) brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (619) 678-5070 / Fax: (619) 678-5099

Ruffin B. Cordell (DC Bar # 445801; Admitted *Pro Hac Vice*) cordell@fr.com
Lauren A. Degnan (DC Bar # 452421; Admitted *Pro Hac Vice*) degnan@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070 / Facsimile: (202) 783-2331

William A. Isaacson (DC Bar # 414788; Admitted *Pro Hac Vice*) wisaacson@bsfllp.com
Karen L. Dunn (DC Bar No. 1002520; Admitted *Pro Hac Vice*) kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727 / Facsimile: (202) 237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

*(Counsel for CMs and Additional Counsel listed below Signature Line)*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>QUALCOMM LITIGATION. | Case No. 3:17-CV-00108-GPC-MDD<br><br>[Consolidated with 3:17-CV-01010-GPC-MDD]<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE INC. AND THE CONTRACT MANUFACTURERS' *DAUBERT* MOTION TO EXCLUDE CERTAIN IMPROPER TESTIMONY FROM MR. LORENZO CASACCIA<br><br>Judge:       Hon. Gonzalo P. Curiel<br>Date:        March 21, 2019<br>Time:        1:30 PM<br>Courtroom:   2D |

**TABLE OF CONTENTS**

I. Background ..................................................................................................1

II. Legal Standards .............................................................................................2

III. Argument.......................................................................................................2

    A. Casaccia Cannot Offer Opinions Beyond His Personal Knowledge ............................................................................................2

    B. Casaccia Cannot Offer Opinions from Unreliable Methodologies.........4

    C. Casaccia Cannot Offer Hearsay Testimony ............................................6

    D. Casaccia's Testimony Should Be Limited to His Work with 3GPP.......................................................................................................6

IV. Conclusion .....................................................................................................7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cummins v. Lyle Indus.*,
  93 F.3d 362 (7th Cir. 1996) ...................................................................................5

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)............................................................................................1, 2

*Feduniak v. Old Republic Nat'l Title Co.*,
  No. 13-CV-02060-BLF, 2015 WL 1969369 (N.D. Cal. May 1, 2015) ................................................................................................................5

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)................................................................................................5

*Henricksen v. Conoco-Phillips Co.*,
  605 F. Supp. 2d 1142 (E.D. Wash. 2009)..............................................................2

*Mullins v. Premier Nutrition Corp.*,
  178 F. Supp. 3d 867 (N.D. Cal. 2016)...................................................................3

*Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*,
  2015 WL 9266497 (N.D. Cal. Dec. 18, 2015) ......................................................2

*Pooshs v. Phillip Morris USA, Inc.*,
  287 F.R.D. 543 (N.D. Cal. 2012) ..........................................................................2

*Wadler v. Bio-rad Labs.*,
  2016 WL 6070530 (N.D. Cal. Oct. 17, 2016) ..............................................2, 4, 5

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ..............................................................................2

**Other Authorities**

Fed. R. Civ. Proc. 26................................................................................................1, 2, 4

Fed. R. Civ. Proc. 37........................................................................................................2

Fed. R. Evid. 702 .........................................................................................................1, 3

Federal Rule of Evidence 702 requires the Court to serve as a gatekeeper to ensure the jury hears only expert testimony with a reliable foundation that falls within the expert's qualifications. Several opinions offered by Lorenzo Casaccia fail these basic tests and will mislead and confuse the jury. Specifically, Qualcomm seeks to offer improper opinion testimony from Mr. Casaccia regarding (1) reasons why 3GPP contributions are not a proxy for the quantity or quality of a company's patent portfolio; (2) ranking leadership in 3GPP standards; and (3) the significance and technical merits of 3GPP contributions. Mr. Casaccia's testimony on these topics fails to meet the standards of relevance and reliability required by *Daubert v. Merrell Dow Pharmaceuticals*. First, Mr. Casaccia testified he does not actually know whether there is a relationship between 3GPP contributions and the number of SEPs owned by the companies named on the contributions. Second, he offers only conclusory and unhelpful testimony regarding ranking 3GPP leadership. Third, Mr. Casaccia's *ipse dixit* testimony regarding the significance and technical merits of contributions is an improper rebuttal opinion that is not based on actual data.

I.   **Background**

Mr. Casaccia is a Qualcomm employee whose testimony, according to Qualcomm, "may be considered subject to Federal Rule of Evidence 702, 703 or 705." Ex. 1 at 2 (p. 1). "Mr. Casaccia has not been retained or specially employed to provide expert testimony in this case, and his employment duties do not regularly involve giving expert testimony." *Id.*

Qualcomm provided a Casaccia Disclosure at the time of its rebuttal expert reports. Pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), the disclosure was required to state: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Opinions related to ranking leadership in 3GPP standards, and the significance and technical merits of contributions, are not addressed in the Casaccia Disclosure.

## II. Legal Standards

Courts applying Federal Rule of Evidence 702 must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (hereinafter "*Daubert*"). The Court must ensure there is not "too great an analytical gap" between the data and the opinion proffered by an expert. *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 547 (N.D. Cal. 2012). The opinion should not be based on the "*ipse dixit*" of the expert. *Id.* If "any step" of an expert's methodology is unreliable, that expert's testimony is not admissible. *Henricksen v. Conoco-Phillips Co.*, 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009).

The Federal Rules of Civil Procedure allow for rebuttal expert testimony only where the "evidence is intended ***solely to contradict or rebut*** evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added); *Wadler v. Bio-rad Labs.*, 2016 WL 6070530, at *3 (N.D. Cal. Oct. 17, 2016) (rebuttal testimony "cannot be used to advance new arguments or new evidence"). Consequently, such testimony is "proper as long as it addresses the same subject matter that the initial experts address." *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, 2015 WL 9266497, at *1 (N.D. Cal. Dec. 18, 2015). A witness may not testify to undisclosed opinions. *E.g.*, *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.").

## III. Argument

### A. Casaccia Cannot Offer Opinions Beyond His Personal Knowledge

Mr. Casaccia's FTC Trial testimony suggests how he will testify in this case. During the FTC Trial, Qualcomm asked whether "approved contribution counting [is] a reliable metric to ***measure a company's patent portfolio strength***?" Ex. 2 at 11 (1649:21-23) (emphasis added). The FTC did not object and Mr. Casaccia

1  responded.

2        Qualcomm should be precluded from asking the same question here.  Mr. Casaccia has neither facts nor data to support any opinion on quantity or quality of a firm's patent portfolio.  *See* Fed. R. Evid. 702; *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900–01 (N.D. Cal. 2016) (excluding expert's opinions regarding subjects that were not "grounded in his [] personal knowledge, skill, experience, training, or education" (quotations and citation omitted)).

      First, Mr. Casaccia testified that he is "not an expert in valuation of [patent] portfolios," Ex. 3 at 17 (173:15-19), he is not a patent "portfolio comparison expert," *id.* at 20 (176:8-14), and he does not actually know whether a relationship exists between contributions and patents:

> **Q.** Mr. Casaccia, would you agree there's no necessary relationship between approved contributions and the number of standard essential patents owned by the companies named on the contributions?
>
> **A.** *I don't know.*
>
> **Q.** Do you agree that there's no necessar[y] relationship between approved contributions and the quality of the standard essential patents owned by the companies named on the contributions?
>
> **A.** *I don't know.*

*Id.* at 25 (267:9-24) (emphasis added); *see also id.* at 28 (270:1-18).

      Second, as it relates to Qualcomm's patent portfolio, Mr. Casaccia admitted having no relevant personal knowledge.  He has no knowledge regarding quantity of Qualcomm's patents, *id.* at 18-19 (174:13-175:1), quality of Qualcomm's patents, *id.* at 19 (175:2-22), 24 (188:19-22), or whether any Qualcomm 3GPP contribution is even patented, *id.* at 22 (180:18-22).  He also did not review any Qualcomm patents to prepare his Disclosure.  *Id.* at 18 (174:9-12), 20-21 (176:19-177:7).  Consequently, Mr. Casaccia has no personal knowledge, experience, or education

1 that could help a jury understand Qualcomm's patent portfolio's strength.

2 The same is true as it relates to the strength of any other company's patent
3 portfolio. Specifically, Mr. Casaccia agreed to having no opinion regarding the
4 value or strength of any other company's patent portfolio, *id.* at 19-20 (175:23-
5 176:7), or the comparative strength of Qualcomm's patent portfolio as compared to
6 that of any other company, *id.* at 20 (176:8-14).

7 Therefore, the Court should exclude Mr. Casaccia's opinion testimony
8 concerning patents, including whether a company's patent portfolio strength may be
9 measured by that company's approved 3GPP contributions.

10       **B.**      **Casaccia Cannot Offer Opinions from Unreliable Methodologies**

11 In his deposition, Mr. Casaccia invented a ***qualitative*** ranking of leadership in
12 3GPP standards, and he testified for the first time about qualitative significance and
13 technical merits of 3GPP contributions. Apple and the CMs did not address these
14 topics in opening expert reports. Rather, their experts provided only a ***quantitative***
15 analysis of 3GPP contributions. Mr. Casaccia's new opinions should therefore be
16 precluded because they do not "contradict or rebut evidence on the same subject
17 matter." *See* Fed. R. Civ. P. 26(a)(2)(D)(ii); *Wadler*, 2016 WL 6070530, at *3.
18 Additionally, Mr. Casaccia's unsubstantiated rebuttal opinion is immaterial and
19 unilluminating, and thus should be excluded.

20 First, his decision that "Qualcomm has been the leader" for all areas of 3GPP,
21 Ex. 3 at 16 (120:4-21), and "more than 50% of foundational aspects of LTE" came
22 from Qualcomm, *id.* at 15 (76:2-5), is *ipse dixit* testimony lacking of any rigorous
23 methodology. *Id.* at 33-34 (285:18-286:6) (explaining the opinion is based on only
24 Mr. Casaccia's "own experience and knowledge"). Mr. Casaccia appears to have
25 created a "historical reconstruction" metric for purposes of this litigation with the
26 goal of inflating the value of Qualcomm's contributions. *See* Ex. 3 at 30-32
27 (274:21-276:17). Experts creating litigation-motivated methodologies are held to a
28 higher standard and must establish an especially rigorous basis for their

methodology.  *Feduniak v. Old Republic Nat'l Title Co.*, No. 13-CV-02060-BLF, 2015 WL 1969369, at *1 (N.D. Cal. May 1, 2015) ("While opinions developed expressly for litigation are not necessarily unreliable, the district court may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office.").  Mr. Casaccia has failed that test here.

In determining whether an expert's testimony is reliable, the *Daubert* factors are applicable in cases where an expert eschews reliance on any rigorous methodology and instead purports to base his opinion merely on "experience" and "training." *E.g.*, *Cummins v. Lyle Indus.*, 93 F.3d 362, 367 n.2 (7th Cir. 1996).  This is the case here.  Mr. Casaccia cannot identify any general method used in arriving at his opinion because it is based entirely on his own belief and assumption.  Ex. 3 at 35-36 (287:18-288:22).  Further, he is unable to convey what he knows, thus precluding any test of its reliability.  *Id.* at 36-37 (288:23-289:10).  "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Here, there is too great an analytical gap between the existing quantitative data from an independent research consultancy—showing Qualcomm's relative position is ***fourth*** as a 3GPP contributor generally and ***third*** as a contributor to the LTE standards specifically—and the opinion offered by Mr. Casaccia purporting to rank leadership in 3GPP qualitatively.

Second, any testimony from Mr. Casaccia on the qualitative significance and technical merits of specific 3GPP contributions is irrelevant to a jury's understanding of the issues because it concerns only a small fraction of hand-picked contributions.  Moreover, it would be an "attempt[] to put forward new theories outside the scope of the report it claims to rebut," thereby causing unjustified prejudice to Apple and the CMs.  *Wadler*, 2016 WL 6070530, at *3.  These opinions therefore should be excluded.

### C. Casaccia Cannot Offer Hearsay Testimony

In the FTC Trial, Qualcomm elicited hearsay testimony about "directives" or "incentives" allegedly given by other companies to their engineers to "artificially try[] to inflate their numbers of . . . contributions." Ex. 2 at 5-6 (1643:21-1644:16). Mr. Casaccia testified he knows this "from direct experience," *id.* at 7 (1645:7-16), and offered anecdotal support. *See id.* at 9 (1647: 12-22), 10 (1648:20-24) (stating delegates "would, for example, ask us, can you please let me . . . add my name to this document because I need to reach a certain quota"). No exception to hearsay exists for allowing statements alleged to be made by delegates in 3GPP meetings to be offered as evidence for proving the corporate policies of another company.

Moreover, there are additional concerns with this brand of testimony in a jury trial. Specifically, 3GPP has 16 working groups and received more than 130,000 total submissions related to LTE technology alone. Setting aside its veracity and limited probative value, this would-be smear testimony as to other companies' alleged policies is substantially outweighed by dangers of unfair prejudice, confusing the issues between contributions and patents, and misleading the jury. By way of example, Mr. Casaccia's hearsay testimony that Ericsson and Huawei allegedly inflate their 3GPP contribution numbers, *id.* at 7 (1645:7-16), unjustifiably contaminates each of Ericsson's more than 17,000, and each of Huawei's nearly 17,000, submitted contributions to LTE. By comparison, Qualcomm submitted roughly 8,200 contributions to LTE.

### D. Casaccia's Testimony Should Be Limited to His Work with 3GPP

Mr. Casaccia's testimony should be circumscribed to fact opinions derived from his work with 3GPP. For example, Mr. Casaccia may testify about 3GPP's technical specification development processes, as set forth in his Declaration, and like he did in the FTC Trial. Likewise, he may testify based on his personal knowledge about the handling of contribution documents in 3GPP, like he did in his direct testimony in the FTC Trial.

## IV. Conclusion

Apple and the CMs respectfully request that the Court grants the motion, and exclude the certain improper opinion and hearsay testimony of Qualcomm's employee, Lorenzo Casaccia.

Dated: February 14, 2019    Respectfully submitted,

By: */s/ Benjamin C. Elacqua*
Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Phone: 619-678-5070 / Fax: 619-678-5099

Ruffin B. Cordell, DC Bar No. 445801
*pro hac vice*, cordell@fr.com
Lauren A. Degnan, DC Bar No. 452421
*pro hac vice*, degnan@fr.com
Fish & Richardson P.C.
The McPherson Building
1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
Phone: 202-783-5070 / Fax: 202-783-2331

Benjamin C. Elacqua, TX SBN 24055443
*pro hac vice,* elacqua@fr.com
Fish & Richardson P.C.
1221 McKinney Street, Suite 2800
Houston, TX 77010
Phone: 713-654-5300 / Fax: 713-652-0109

William A. Isaacson, DC Bar No. 414788
*pro hac vice*, wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520
*pro hac vice*, kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: 202-237-2727
Facsimile: 202-237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

By:  */s/ Jennifer J. Rho*
Theodore J. Boutrous, Jr. (SBN 132099)
tboutrous@gibsondunn.com
Richard J. Doren, SBN 124666

|   |   |
|---|---|
| 1 | rdoren@gibsondunn.com |
|   | Daniel G. Swanson (SBN 116556) |
| 2 | dswanson@gibsondunn.com |
|   | Michele L. Maryott, SBN 191993 |
| 3 | mmaryott@gibsondunn.com |
|   | Jason C. Lo (SBN 219030) |
| 4 | jlo@gibsondunn.com |

rdoren@gibsondunn.com
Daniel G. Swanson (SBN 116556)
dswanson@gibsondunn.com
Michele L. Maryott, SBN 191993
mmaryott@gibsondunn.com
Jason C. Lo (SBN 219030)
jlo@gibsondunn.com
Jennifer J. Rho (SBN 254312)
jrho@gibsondunn.com
Melissa Phan (SBN 266880)
mphan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Cynthia E. Richman (Pro Hac Vice)
(DC Bar No. 492089)
crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1010 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: (202) 955-8500
Facsimile:  (202) 467-0539

*Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs, COMPAL ELECTRONICS, INC., FIH MOBILE LTD., HON HAI PRECISION INDUSTRY CO., LTD., PEGATRON CORPORATION, WISTRON CORPORATION*

Hugh F. Bangasser (Pro Hac Vice)
hugh.bangasser@klgates.com
Christopher M. Wyant (Pro Hac Vice)
chris.wyant@klgates.com
J. Timothy Hobbs (Pro Hac Vice)
tim.hobbs@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Telephone: +1 206 623 7580
Facsimile: +1 206 370 6371

Caitlin C. Blanche, SBN 254109,
caitlin.blanche@klgates.com
K&L GATES LLP
1 Park Plaza Twelfth Floor
Irvine, CA  92614
Tel: (949) 253-0900; Fax: (949) 253-0902

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Wistron Corporation*

## **FILER'S ATTESTATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court of the Southern District of California, I certify that authorization for the filing of this document has been obtained from each of the other signatories shown above and that all signatories have authorized placement of their electronic signature on this document.

Dated:  February 14, 2019          */s/ Benjamin C. Elacqua*

                                                              Benjamin C. Elacqua

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 14, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5.4(d).  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Executed on February 14, 2019, at Houston, Texas.

*/s/ Benjamin C. Elacqua*
Benjamin C. Elacqua