1

2  Evan R. Chesler (N.Y. Bar No. 1475722) (*pro hac vice*)
   echesler@cravath.com
3  CRAVATH, SWAINE & MOORE LLP
   825 Eighth Avenue
4  New York, NY 10019
   Telephone:  (212) 474-1000
5  Facsimile:  (212) 474-3700

6  David A. Nelson (Ill. Bar No. 6209623) (*pro hac vice*)
   davenelson@quinnemanuel.com
7  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   500 West Madison St., Suite 2450
8  Chicago, Illinois 60661
   Telephone:  (312) 705-7400
9  Facsimile:  (312) 705-7401

10 Karen P. Hewitt (SBN 145309)
   kphewitt@jonesday.com
11 JONES DAY
   4655 Executive Drive, Suite 1500
12 San Diego, California 92121
   Telephone:  (858) 314-1200
13 Facsimile:  (858) 345-3178

14 [*Additional counsel identified on signature page*]

15 *Attorneys for Defendant and Counterclaim-Plaintiff*
   QUALCOMM INCORPORATED
16

17              **UNITED STATES DISTRICT COURT**

18            **SOUTHERN DISTRICT OF CALIFORNIA**

19

20 IN RE:                  No. 3:17-CV-0108-GPC-MDD

21 QUALCOMM                **QUALCOMM INCORPORATED'S *DAUBERT***
   LITIGATION              **MOTION NO. 2 TO EXCLUDE PORTIONS OF THE**
22                         **EXPERT REPORT OF PAUL K. MEYER AND TO**
                           **FORBID IMPROPER EXTRAPOLATION OF DR.**
23                         **VALENTI'S OPINIONS**

24                         Judge:      Hon. Gonzalo P. Curiel
                           Courtroom:  2D
25                         Date:       March 21, 2019
                           Time:       1:30 p.m.
26

27

28

---

**QC'S *DAUBERT* RE: MEYER**            **CASE NO. 3:17-CV-0108-GPC-MDD**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .............................................................................................. 1

LEGAL STANDARD ........................................................................................ 3

ARGUMENT ..................................................................................................... 4

I.   Mr. Meyer Impermissibly Extrapolates from U.S. Patents and Patent Law to Foreign Patents and Patent Laws. ..................... 4

II.  Mr. Meyer Impermissibly Extrapolates from Cellular SEPs to Other Categories of Intellectual Property Rights. ....................... 7

III. Mr. Meyer Makes Unsupported Assumptions About the Relative Values of Various Categories of Intellectual Property Rights. ................................................................................ 8

IV.  Apple and the CMs Cannot Invite the Jury To Use Mr. Meyer's Invalid Methodology. ......................................................... 9

CONCLUSION ................................................................................................. 10

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Boeing Co. v. United States*, 86 Fed. Cl. 303 (2009)...........................................7

5

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
6
    923 F. Supp. 2d 1245 (S.D. Cal. 2013) (Curiel, J.) ..................................3, 6, 7

7

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) ......................................3

8

*Fujitsu Ltd. v. Belkin International, Inc.*,
9
    No. 10-cv-03972, 2012 WL 5835741 (N.D. Cal. Nov. 16, 2012) .................6

10

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .................................................5, 7

11

*Gerawan Farming Inc., v. Rehrig Pac. Co.*,
12
    No. 1:11-cv-1273, 2013 WL 1982797 (E.D. Cal. May 13, 2013) .............6, 7

13

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
14
    831 F.3d 1369 (Fed. Cir. 2016) ..................................................................4, 5

15

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).........................................3

16

*Limelight Networks, Inc. v. XO Communications,*
17
*LLC*, No. 3:15-CV-720-JAG, 2018 WL 678245 (E.D. Va. Feb.
2, 2018) .................................................................................................6, 8, 9

18

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) .........................6, 7

19

**Statutes & Rules**

20

Fed. R. Evid. 103 ...............................................................................................10

21

Fed. R. Evid. 103(d)...........................................................................................10

22

Fed. R. Evid. 105 ...............................................................................................10

23

Fed. R. Evid. 403 .............................................................................................3, 6

24

Fed. R. Evid. 702 .........................................................................................passim

25

26

27

28

## **INTRODUCTION**

Apple and its Contract Manufacturers ("CMs") seek to offer Mr. Paul K. Meyer's testimony on the amount of royalties Apple allegedly overpaid for patents allegedly exhausted by Qualcomm's chip sales.  Mr. Meyer is a CPA; he is neither an economist, a lawyer, nor a technical expert.[1]  According to Mr. Meyer, Apple overpaid ████████ in royalties for exhausted patents.[2]  This proposed testimony is based on no sound methodology and should be excluded.

Mr. Meyer's methodology appears simple enough.  He multiplies two variables.  The first variable is the percentage of Qualcomm's cellular SEP portfolio purportedly exhausted by its chip sales, which Mr. Meyer says is ███ (Ex. 1 ¶ 32.)  The second variable is the total amount of "net royalties"[3] Apple paid Qualcomm since 2011 for devices containing Qualcomm's chips ("Apple Devices"), which Mr. Meyer says is ████████ (*Id.* ¶ 420.)  Mr. Meyer multiplies ███ by ████████ and arrives at ████████ in overpaid royalties.  (*Id.* ¶ 420, Table 14.)  Mr. Meyer's entire analysis is located in two sentences and in this accompanying chart at the end of his report[4]:

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████

---

[1] Ex. 1 ¶ 2; Ex. 2 at 15:10-16:1 ████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

for the royalties they paid to Qualcomm.  (Ex. 1 ¶ 99.)

[3] Mr. Meyer defined "net royalties" as █████████████
████████████████████████████████████████)

*Id.* ¶¶ 419-420, Table 14.

But Mr. Meyer's methodology rests on three untenable assumptions.

**1. <u>Wrong Geographic Scope.</u>**  Mr. Meyer assumes that ████ of Qualcomm's *global* cellular SEP portfolio is exhausted by its chip sales.  For this, Mr. Meyer relies entirely on the proposed testimony of Dr. Matthew C. Valenti, another of Apple's and the CMs' experts, whose analysis is limited to Qualcomm's *U.S.* cellular SEPs.  Dr. Valenti offers no opinion concerning Qualcomm's *foreign* cellular SEPs.[5]  The CMs operate under worldwide licenses, and much of the ████████████ in royalties were paid for licenses to Qualcomm's foreign cellular SEPs.  Mr. Meyer extrapolates from Dr. Valenti's substantial-embodiment opinion about U.S. patents under U.S. patent law to offer a conclusion on exhaustion of foreign patents under foreign patent laws, all without providing any explanation or basis for doing so.  This error alone is fatal to Mr. Meyer's methodology.

**2. <u>Wrong Intellectual Property Scope.</u>**  Mr. Meyer assumes that the ████████████ in royalties were paid solely for licenses to Qualcomm's cellular SEPs.  But the CMs' license agreements encompass far more than just cellular SEPs.  It is undisputed that a material percentage of those royalties were paid for licenses to Qualcomm's vast portfolio of non-cellular SEPs, non-SEPs, copyrights, and other intellectual property rights.[6]  Mr. Meyer extrapolates from Dr. Valenti's substantial-embodiment opinion about U.S. cellular SEPs under U.S. patent law to reach a conclusion that sweeps in other types of intellectual property rights, many of which are subject to no claims of exhaustion, including rights under foreign intellectual property laws.  Again, Mr. Meyer provides no explanation or basis for this.  This error, too, is fatal to Mr. Meyer's methodology.

---

[5] *Id.* ¶ 270 n.539; Ex. 2 at 99:4-102:23; Ex. 3 ¶ 33; Ex. 4 at 12:14-22.
[6] *See, e.g.*, Ex. 5 ¶ 254 (assuming, without conducting any analysis, that patents other than cellular SEPs account for ████████████████ ████.

**3. Baseless Value Equivalence.** In addition to the above two issues, Mr. Meyer assumes that if ▓ of Qualcomm's cellular SEPs are exhausted by its chip sales, then ▓ of the value of Qualcomm's licenses would be eliminated. Put differently, Mr. Meyer assumes that the average exhausted cellular SEP is equal in value to the average unexhausted intellectual property right. But Mr. Meyer does not offer any basis for this assumption. As such, Mr. Meyer lacks any basis to claim that multiplying a worldwide royalty figure by Dr. Valenti's substantial-embodiment figure is a valid methodology.

*     *     *

In short, Mr. Meyer multiplies incompatible variables and makes implausible extrapolations, all without providing any basis for doing so. His methodology is broken, certain to mislead the jury, and should be excluded.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue", be "based on sufficient facts or data", and be "the product of reliable principles and methods". In addition, the expert must have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The trial judge acts as the gatekeeper for all expert testimony, admitting only the testimony that satisfies Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 588-95 (1993). The burden to establish the admissibility of expert testimony rests with its proponent. *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 923 F. Supp. 2d 1245, 1253 (S.D. Cal. 2013) (Curiel, J.). In addition, under Federal Rule of Evidence 403, the trial judge may exclude evidence if its probative value is substantially outweighed by the risk of, *inter alia*, unfair prejudice, confusion of issues, or misleading the jury. Fed. R. Evid. 403.

# ARGUMENT

## I.   Mr. Meyer Impermissibly Extrapolates from U.S. Patents and Patent Law to Foreign Patents and Patent Laws.

Patent rights are territorial.  A patent is a legal right granted by one nation, having legal force only within the physical borders of the granting nation, and enforceable only in the courts of the granting nation.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1378-79 (Fed. Cir. 2016).  Therefore, to use a patented invention on foreign soil without fear of an infringement suit, a company needs a license to any relevant foreign patents.

Qualcomm has thousands of foreign patents; in fact, the majority of its cellular SEPs are foreign.[7]  Meanwhile, most of Apple's and the CMs' business is conducted abroad. ███████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████[10]  The CMs operate under worldwide license agreements with Qualcomm, and a material percentage of the royalties they paid were for licenses that cover (i) Qualcomm's foreign patents, and (ii) products that never touched U.S. soil.[11]  Qualcomm's direct licensing offer to Apple, too, is for a worldwide license that would include thousands of Qualcomm's foreign cellular SEPs.[12]

Although Mr. Meyer's ██████████ royalty figure is global, he apportions it using Dr. Valenti's U.S.-only substantial-embodiment figure.  Mr. Meyer relies entirely on Dr. Valenti for the assumption that ██ of

---

[7] *See* Ex. 1 ¶ 58.

[8] ████████████████████████████████████████████

[10] Ex. 1 ¶ 319 █████████████████████████████████████ █████████████████████████████████████████████████

*See, e.g.*, Ex. 14 at '5638; Ex. 1 ¶¶ 106, 113, 119, 125.

[12] Exs. 15-17.

1  Qualcomm's global cellular SEP portfolio is exhausted by its chip sales.  (Ex. 2

2  at 101:3-9.)  But Dr. Valenti's analysis is limited to Qualcomm's U.S. cellular

3  SEPs; he offers no opinion concerning Qualcomm's foreign cellular SEPs,

4  ████████████████████████████████████████████  (Ex. 4 at

5  12:14-22, 13:15-19, 140:14-141:4.)  Mr. Meyer provides no factual basis for

6  extrapolating from Dr. Valenti's substantial-embodiment opinion about U.S.

7  patents under U.S. patent law to an exhaustion opinion about foreign patents

8  under foreign patent laws.

9        Nor does Mr. Meyer provide a legal basis for his extrapolation.  Foreign

10  patent law, of course, "may embody different policy judgments about the

11  relative rights of inventors, competitors, and the public in patented inventions"

12  than U.S. patent law.  *Halo Elecs.*, 831 F.3d at 1379.  Mr. Meyer is not a lawyer

13  or admitted to practice in any of the relevant jurisdictions.  (Ex. 2 at 32:6-34:6.)

14  Nor does he even attempt to explain which foreign jurisdictions his opinion

15  covers, why he believes that each foreign jurisdiction's exhaustion law is

16  similar to U.S. exhaustion law, or whether patent exhaustion even exists as a

17  defense in each foreign jurisdiction.

18        Simply applying U.S. exhaustion law to a U.S. patent, without more,

19  cannot be a reliable methodology for determining whether or how unspecified

20  foreign exhaustion laws apply to foreign patents.  It is as if Mr. Meyer had said,

21  "90% of New Yorkers live in apartments, therefore 90% of all Americans live

22  in apartments."  Absent *any* explanation or support, that is pure *ipse dixit* and

23  exactly the type of testimony courts consistently exclude under Rule 702.  *See,*

24  *e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Trained experts

25  commonly extrapolate from existing data.  But nothing in either *Daubert* or the

26  Federal Rules of Evidence requires a district court to admit opinion evidence

27  that is connected to existing data only by the *ipse dixit* of the expert.  A court

28

may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Gerawan Farming Inc., v. Rehrig Pac. Co.*, No. 1:11-cv-1273, 2013 WL 1982797, at *4 (E.D. Cal. May 13, 2013) (excluding an extrapolation where the expert offered no basis for concluding that the profits of one product during one time period are a reliable basis for measuring the profits of a different product during a different time period, and deeming this "a critical flaw"); *Brighton Collectibles*, 923 F. Supp. 2d at 1254-55 (excluding an extrapolation where the expert offered no basis for concluding that the number of defendants' sales is a reliable basis for measuring the plaintiff's lost profits, and noting that such "speculation would not help the jury but could mislead them"); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment (stating that "[c]ourts both before and after *Daubert*" consider "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"). Courts also exclude such "unsupported assumptions and unsound extrapolation" under Rule 403. *See, e.g.*, *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 806-07 (9th Cir. 1988) (excluding a lost profits forecast as mere "speculation" that "pose[d] a great danger of misleading a jury" where the expert offered no basis for using a decline in gross sales to measure losses in particular products and geographic areas).

This is not the first time Mr. Meyer has offered speculation in the guise of expert testimony. In *Fujitsu Ltd. v. Belkin International, Inc.*, Mr. Meyer's testimony was excluded for making assumptions without "provid[ing] any factual justification" for them. No. 10-cv-03972, 2012 WL 5835741, at *9 (N.D. Cal. Nov. 16, 2012). In *Limelight Networks, Inc. v. XO Communications, LLC*, Mr. Meyer's testimony was excluded for offering an "arbitrary" and "internally inconsistent methodology that act[ed] counter to the facts at Meyer's disposal." No. 3:15-CV-720-JAG, 2018 WL 678245, at *7-8 (E.D. Va. Feb. 2,

2018); *see id.* at *9 ("[T]he Court cannot allow Meyer to provide the jury with unsupported technological testimony about which Meyer lacks any knowledge and provides no detail.").  And in *Boeing Co. v. United States*, Mr. Meyer's testimony was rejected for beginning from a "baseline [that] was little more than conjecture", "engag[ing] in an extraordinary degree of speculation", and making assumptions that "lacked any reliable basis" and were supported by "utterly no evidence—none."  86 Fed. Cl. 303, 313-14 (2009).

This defect alone is enough to exclude Mr. Meyer's testimony.

## II.    Mr. Meyer Impermissibly Extrapolates from Cellular SEPs to Other Categories of Intellectual Property Rights.

Mr. Meyer's methodology is doubly flawed because it assumes that all ███████████ in royalties were paid for licenses to Qualcomm's *cellular SEPs*, as opposed to other types of intellectual property rights.  The CMs have portfolio licenses to thousands of Qualcomm's cellular SEPs, *plus* non-cellular SEPs, non-SEPs, copyrights, and other intellectual property rights.[13]  As a result, it is indisputable that a material percentage of the ████████ in royalties were paid for licenses to categories of intellectual property rights other than cellular SEPs.[14]  There is *no* analysis as to whether *any* of these intellectual property rights are exhausted in any country.  Yet Mr. Meyer broadly applies Dr. Valenti's substantial-embodiment opinion—which pertains only to U.S. cellular SEPs—to all payments under the licenses, without providing any explanation or basis for doing so.  This is just more *ipse dixit* and should be excluded.  *See, e.g.*, *Gen. Elec. Co.*, 522 U.S. at 146; *Gerawan Farming*, 2013 WL 1982797, at *4; *Brighton Collectibles*, 923 F. Supp. 2d at 1254-55; *see also McGlinchy*, 845 F.2d at 806-7; Fed. R. Evid. 702 advisory committee's note to

---

[13] *See, e.g.*, Ex. 14 at '5627-5638.
[14] *See, e.g.*, Ex. 5 ¶ 254 (assuming, without conducting any analysis, that patents other than cellular SEPs account for ██████████████████ ██████ .

1    2000 amendment.  Nor would this be the first time that Mr. Meyer's testimony

2    is excluded for "arbitrar[ily]" equating patents of different types.  *Limelight*

3    *Network, Inc.*, 2018 WL 678245, at *7-8.

4              Taking his first two unfounded assumptions together, Mr. Meyer

5    extrapolates from Dr. Valenti's substantial-embodiment opinion limited to U.S.

6    cellular SEPs under U.S. patent law to produce an exhaustion opinion that

7    sweeps in multiple types of foreign intellectual property rights under the laws of

8    multiple foreign jurisdictions.  Dr. Valenti's opinion on the application of U.S.

9    patent law to a U.S. cellular SEP is altogether uninformative as to the

10   application of German patent law to a German non-SEP, or Chinese copyright

11   law to a Chinese copyright.  By sweeping in not only all relevant jurisdictions,

12   but also all relevant types of intellectual property rights, Mr. Meyer's opinion

13   becomes equivalent to saying that because 90% of people in New York City

14   live in apartments, 90% of all creatures on Earth must live in apartments.  This

15   obviously unsound methodology cannot be admitted.

16   **III.    Mr. Meyer Makes Unsupported Assumptions About the Relative**
17   **         Values of Various Categories of Intellectual Property Rights.**

18            Mr. Meyer's methodology is further flawed because it assumes that

19   dissimilar intellectual property rights have equal value.  At its most basic, Mr.

20   Meyer's methodology is "exhaustion percentage times royalty total."  If ███ of

21   Qualcomm's cellular SEPs are exhausted by its chip sales, Mr. Meyer says, then

22   ███ of the value of Qualcomm's licenses is eliminated.  But for that

23   methodology to even begin to make any sense, Mr. Meyer must have some

24   basis for assuming that the average cellular SEP substantially embodied in a

25   chip is equal in value to the average intellectual property right substantially

26   embodied elsewhere.

27

28

By way of analogy, suppose an art gallery housed various types of art, ranging from posters to Picassos, and it lost 10% of its artwork in a flood that affected only certain floors of the gallery.  One could not conclude from that fact alone that the total value of the gallery's art decreased by 10%.  To reach that conclusion, one would have to assume that the average damaged artwork was equal in value to that of the averaged undamaged artwork, and that the flood reached all types of art equally.  But different floors of the gallery might have housed different types of art, and the particular works destroyed might have been more or less valuable than others.  Thus, a 10% estimate of the loss in value would be pure speculation.

Mr. Meyer provides no basis for an assumption of equal value, and his opinion therefore fails to satisfy Rule 702.  *See Limelight Network, Inc.*, 2018 WL 678245, at *7-8 (excluding Mr. Meyer's testimony for "arbitrar[ily]" equating patents of different types).

## IV. Apple and the CMs Cannot Invite the Jury To Use Mr. Meyer's Invalid Methodology.

Mr. Meyer's extrapolation of Dr. Valenti's substantial-embodiment opinion to other jurisdictions and other types of intellectual property rights lacks any factual or legal basis and, therefore, should be excluded under Rules 702 and 403.  For the same reason, Apple and the CMs should be precluded from inviting the jury to employ Mr. Meyer's invalid methodology on their own.  The extrapolation is contrary to fact and law whether performed by Mr. Meyer, by another expert, or by the jury at counsel's request.

Therefore, Qualcomm requests an order that Apple and the CMs be precluded from inviting the jury to extrapolate from Dr. Valenti's substantial-embodiment opinion about U.S. cellular SEPs under U.S. patent law to exhaustion conclusions that include (i) foreign cellular SEPs, or (ii) any other

type of intellectual property right in the U.S. or abroad.  *See* Fed. R. Evid. 105; Fed. R. Evid. 103(d); Fed R. Evid. 103 advisory committee's note to proposed rules (explaining that "a ruling which excludes evidence in a jury case is likely to be a pointless procedure if the excluded evidence nevertheless comes to the attention of the jury.").  In particular, Dr. Valenti's opinions cannot be extrapolated to call into question the royalties paid under the CMs' license agreements because, as explained above, their licenses cover thousands of foreign intellectual property rights and intellectual property rights other than cellular SEPs.

## CONCLUSION

For the foregoing reasons, Qualcomm respectfully requests that the Court exclude Mr. Meyer's proposed testimony regarding Apple's alleged overpayment for exhausted patents.  Qualcomm also respectfully requests that the Court preclude Apple and the CMs from inviting the jury to use Dr. Valenti's substantial-embodiment opinion to recreate Mr. Meyer's methodology.


Dated:  February 14, 2019                    Respectfully submitted,


By    /s/ *J. Wesley Earnhardt*
      J. Wesley Earnhardt

**CRAVATH, SWAINE & MOORE LLP**
Evan R. Chesler (*pro hac vice*)
(N.Y. Bar No. 1475722)
echesler@cravath.com
Keith R. Hummel (*pro hac vice*)
(N.Y. Bar No. 2430668)
khummel@cravath.com
Richard J. Stark (*pro hac vice*)
(N.Y. Bar No. 2472603)
rstark@cravath.com
Antony L. Ryan (*pro hac vice*)
(N.Y. Bar No. 2784817)
aryan@cravath.com
Gary A. Bornstein (*pro hac vice*)
(N.Y. Bar No. 2916815)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
(N.Y. Bar No. 4331609)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
(N.Y. Bar No. 4339651)
yeven@cravath.com
Vanessa A. Lavely (*pro hac vice*)
(N.Y. Bar No. 4867412)
vlavely@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
David A. Nelson (*pro hac vice*)
(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
Stephen Swedlow (*pro hac vice*)
(Ill. Bar No. 6234550)
stephenswedlow@quinnemanuel.com
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401


Alexander Rudis (*pro hac vice*)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100


Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700


**JONES DAY**
Karen P. Hewitt (SBN 145309)
Randall E. Kay (SBN 149369)
rekay@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone:  (858) 314-1200
Facsimile:  (858) 345-3178

***Attorneys for Defendant and
Counterclaim-Plaintiff***
**QUALCOMM INCORPORATED**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 14, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4(d).  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

I certify under penalty of perjury that the foregoing is true and correct. Executed on February 14, 2019, at New York, New York.

By: *<u>/s/ J. Wesley Earnhardt</u>*

J. Wesley Earnhardt
wearnhardt@cravath.com
*Attorneys for Defendant and Counterclaim-Plaintiff*
QUALCOMM INCORPORATED