Evan R. Chesler (N.Y. Bar No. 1475722) (*pro hac vice*)
echesler@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

David A. Nelson (Ill. Bar No. 6209623) (*pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (858) 345-3178

[*Additional counsel identified on signature page*]

*Attorneys for Defendant and Counterclaim-Plaintiff*
QUALCOMM INCORPORATED

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: QUALCOMM LITIGATION | No. 3:17-CV-0108-GPC-MDD<br><br>**QUALCOMM INCORPORATED'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE TESTIMONY AND ARGUMENT CONCERNING ROYALTY STACKING**<br><br>Judge: Hon. Gonzalo P. Curiel<br>Courtroom: 2D<br>Date: March 14, 2019<br>Time: 1:30 p.m. |

**TABLE OF CONTENTS**

                                                                       **Page**

INTRODUCTION ............................................................................... 1

LEGAL STANDARD......................................................................... 1

BACKGROUND ................................................................................ 1

ARGUMENT ...................................................................................... 2

I.     The Cellular Industry Is Not Beset by Excessive Royalties. ...... 2

II.    Jurors Would Be Misled, and Unfair Prejudice Introduced, by Apple's and the CMs' Forecasts of Excessive "Royalty Stacking." ................................................................................... 4

CONCLUSION................................................................................... 6

## INTRODUCTION

Qualcomm seeks an order precluding any testimony or argument suggesting that "royalty stacking" is a problem in the cellular industry or will become a problem if Apple and the CMs continue to pay royalties ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The assertion was always purely speculative. Now that the record is closed, it remains entirely unsupported by evidence. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Presenting such misleading testimony or argument to the jury would be unfairly prejudicial while offering no probative value. It should therefore be precluded.

## LEGAL STANDARD

Evidence may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues [or] misleading the jury." Fed. R. Evid. 403; *United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998).

## BACKGROUND

Apple and the CMs have repeatedly asserted that implementers are threatened by a potentially crushing burden of cellular technology royalties owed to all SEP holders in the aggregate—a so-called "royalty stack." Apple claims that the viability of the industry and the availability of the technology is threatened "by royalty stacking, the payment of excessive royalties to many different holders of SEPs." (Apple First Am. Compl. ("FAC") ¶ 36.) The CMs allege that "[i]f companies are forced to pay royalties to every SEP holder, the royalties will 'stack' on top of each other and quickly become excessive." (CMs Answer ¶ 80.) Their experts make similar assertions. Dr. Simcoe claims that "[t]he large number of SEPs and their dispersed ownership can lead to royalty stacking." (Ex. 1 ¶ 54.) Mr. Meyer points to a risk of "[p]rohibitively

1  expensive royalty stacking," which he defines as royalties high enough to make
2  "a product or component . . . uneconomical to sell."  (Ex. 2 ¶ 88.)
3       Apple and the CMs advance these assertions as a justification for limiting
4  FRAND royalties.  (*See* Ex. 2 ¶ 77 (stating that a "top down method . . . can
5  help prevent . . . royalty stacking"); Ex. 1 ¶ 56 (FRAND model should account
6  for "the stack that would emerge if all licensors charged prices comparable to"
7  those at issue, even if evidence shows the total royalty burden is already
8  reasonable).)  They present the risk of an excessive "stack" in entirely
9  hypothetical terms, unconnected to any empirical claim or specific prediction.
10  They then use this hypothetical concern as a launching point for offering ▮▮▮
11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that they assert would result if all licensors
12  received the same proportional royalties that Qualcomm does.  (Apple FAC
13  ¶ 176 ▮▮▮▮▮▮▮▮▮▮▮; CMs' Answer ¶ 80 ("more than half of the total
14  purchase price"); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Those
15  hypothesized royalty stacks are scare tactics not based on any empirical
16  evidence of what SEP holders actually receive in the aggregate, or on any
17  credible economic analysis of what they would be expected to receive.

18  **ARGUMENT**
19  **I.    The Cellular Industry Is Not Beset by Excessive Royalties.**
20       As the wide range of figures thrown out suggests, these royalty stack
21  assertions have always been entirely speculative.  With discovery closed, Apple
22  and the CMs have not provided any evidence that implementers in the cellular
23  industry actually pay a prohibitively large "stack" of royalties.  In the context of
24  patent damages calculations, the Federal Circuit has rejected "abstract
25  recitations of royalty stacking theory" as "insufficiently reliable."
26  *Commonwealth Sci. and Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d
27  1295, 1302 (Fed. Cir. 2015); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201,
28  1235 (Fed. Cir. 2014) (to present royalty stacking theory to jury, party "must

1  provide evidence on the record of . . . royalty stacking in relation to both the
2  RAND commitment at issue and the specific technology referenced").
3       The unreliability of such testimony is even more acute here,



███████████████████████████████████████████████████████████
███████████████████████████████.

The Apple and CM experts cannot credibly contend that any excessive royalty stack exists or has ever existed. Such a claim lacks any evidentiary support ████████████████████████████████████████████████.

## II. Jurors Would Be Misled, and Unfair Prejudice Introduced, by Apple's and the CMs' Forecasts of Excessive "Royalty Stacking."

No doubt because the cellular industry by any objective measure is thriving, Apple and the CMs try to pivot away from what the aggregate royalties actually are to what they purportedly *would be* "if all licensors charged prices comparable to those of the licensor in question." (Ex. 1 ¶ 56.) Such wild and unsupported speculation would mislead the jury and would unfairly prejudice Qualcomm.

As discussed above, nothing like the implied royalty stacks hypothesized by Apple and the CMs has materialized in the real world ███████████ ████████████████████████████████████. Collection of royalties consistent with the terms of the CM licenses or the offers to Apple would simply be a continuation of the historical status quo—a history characterized by a thriving industry ████████████████████████. Apple and the CMs offer no evidentiary basis to believe that continuation of this status quo would suddenly lead to oppressive aggregate royalties.

Instead, the proffered "royalty stacks" are based solely on the contrived scenario that Apple and the CMs' payment of royalties to Qualcomm █████ ████████████████ would somehow cause every licensor of every SEP to suddenly start collecting the same royalties as Qualcomm. That is not a description of the real world as it has ever existed, and thus is precisely the sort

---

[5] Nick Bilton, *Apple Is the Most Valuable Company*, N.Y. Times (August 9, 2011), https://bits.blogs.nytimes.com/2011/08/09/apple-most-valuable-company/.

1  of baseless speculation regarding royalty stacking that the Federal Circuit
2  rejected in the cases cited above.  Patent portfolios command royalties that
3  reflect their value. ███████████████████████████████████
4  ████████████████████████████████████████████████
5  ████████████████████████████████████████████████
6  ████████████████████████████████████████████████
7  ████████████████████████████████████████████████
8  ████████████████████████████████████████████████
9  ████████████████████████████████████████████████
10 ████████████████████████████████████████████████
11 ████████████████████████████████████████████████
12 Indeed, many SEPs simply are not licensed at all and thus add nothing to the
13 royalty "stack." *Ericsson*, 773 F.3d at 1234 ("The mere fact that thousands of
14 patents are declared to be essential to a standard does not mean that a standard-
15 compliant company will necessarily have to pay a royalty to each SEP holder.").
16      Because there is no evidence that a burdensome "stack" will emerge if
17 Apple and the CMs' continue to pay royalties to Qualcomm ███████████
18 ███████████, allowing Apple or the CMs to inject that notion into the trial
19 could do nothing more than mislead and confuse.  *See, e.g.*, *Hunt v. CNH Am.*
20 *LLC*, 511 F. App'x 43, 47 (2d Cir. 2013) (expert's testimony properly excluded
21 under Rule 403 where his "theory relied on assumptions not based on evidence"
22 and therefore would confuse and mislead).
23      It would also severely prejudice Qualcomm.  The jury could easily be
24 misled into falsely believing that royalties on cell phones would increase to
25 burdensome levels ██████████████████████████████████████
26 ███████, when no evidence exists to support that assertion.  This prejudice is
27 ─────────────────
28 ███████████

1  compounded by the significant risk that jurors would speculate that the
2  hypothesized dramatic spike in aggregate royalties would cause large increases
3  in prices to consumers—that is, to themselves.  The FRAND question should
4  not be decided based on jurors' baseless fears that Qualcomm's royalties would
5  doom the industry or lead to massive increases in phone prices.  *See United*
6  *States v. Weatherspoon*, 410 F.3d 1142, 1149-50 (9th Cir. 2005) (verdict should
7  be based on the relevant facts, not jurors' fears about "the potential social
8  ramifications" of the verdict).
9        References to forecasted large implied royalty rates also lack probative
10  value.  The question for the jury will be whether Qualcomm's licenses with the
11  CMs and its offers to Apple comply with FRAND as a matter of contract law.
12  *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG,
13  2019 WL 126980, at *3 (E.D. Tex. Jan. 7, 2019).  The hypothesized royalty
14  stacks cannot help the jury with that question.  The stack calculations do not
15  account for whether Qualcomm's royalties comply with its contractual
16  obligations.  They are simple ends-driven calculations designed to lead to
17  shock-value hypothetical "royalty stacks" *regardless* of Qualcomm's FRAND
18  compliance because the calculations simply assume, without any basis, that all
19  other licensors would receive the same royalties as Qualcomm.
20        Due to the misleading and unduly prejudicial nature of the anticipated
21  argument and evidence concerning royalty stacking, and its lack of probative
22  value, that argument and testimony should be excluded.

### CONCLUSION

24        For the foregoing reasons, Qualcomm respectfully requests that the Court
25  grant this motion in limine.

| | | |
|---|---|---|
| 1 | Dated:  February 15, 2019 | Respectfully submitted, |
| 2 | | |
| 3 | | By   */s/ Evan R. Chesler* |
| 4 | | Evan R. Chesler |

**CRAVATH, SWAINE & MOORE LLP**
Evan R. Chesler (*pro hac vice*)
(N.Y. Bar No. 1475722)
echesler@cravath.com
Keith R. Hummel (*pro hac vice*)
(N.Y. Bar No. 2430668)
khummel@cravath.com
Richard J. Stark (*pro hac vice*)
(N.Y. Bar No. 2472603)
rstark@cravath.com
Antony L. Ryan (*pro hac vice*)
(N.Y. Bar No. 2784817)
aryan@cravath.com
Gary A. Bornstein (*pro hac vice*)
(N.Y. Bar No. 2916815)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
(N.Y. Bar No. 4331609)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
(N.Y. Bar No. 4339651)
yeven@cravath.com
Vanessa A. Lavely (*pro hac vice*)
(N.Y. Bar No. 4867412)
vlavely@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
David A. Nelson (*pro hac vice*)
(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
Stephen Swedlow (*pro hac vice*)
(Ill. Bar No. 6234550)
stephenswedlow@quinnemanuel.com
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Alexander Rudis (*pro hac vice*)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

**JONES DAY**
Karen P. Hewitt (SBN 145309)
Randall E. Kay (SBN 149369)
rekay@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (858) 345-3178

*Attorneys for Defendant and Counterclaim-Plaintiff*
**QUALCOMM INCORPORATED**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 15, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4(d).  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

I certify under penalty of perjury that the foregoing is true and correct. Executed on February 15, 2019, at New York, New York.


By: */s/ Evan R. Chesler*
Evan R. Chesler
echesler@cravath.com
*Attorneys for Defendant and Counterclaim-Plaintiff*
QUALCOMM INCORPORATED