Juanita R. Brooks (SBN 75934) brooks@fr.com
Seth M. Sproul (SBN 217711) sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (619) 678-5070 / Facsimile: (619) 678-5099

Ruffin B. Cordell (D.C. Bar #445801; Admitted *Pro hac vice*) cordell@fr.com
Lauren A. Degnan (D.C. Bar #452421; Admitted *Pro hac vice*) degnan@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070 / Facsimile: (202) 783-2331

William A. Isaacson (D.C. Bar #414788; Admitted *Pro hac vice*) wisaacson@bsfllp.com
Karen L. Dunn (D.C. Bar #1002520; Admitted *Pro hac vice*) kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 237-2727 / Facsimile: (202) 237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

(Counsel for the CMs and Additional Counsel listed below Signature Line)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>QUALCOMM LITIGATION, | Case No. 3:17-CV-00108-GPC-MDD<br>[Consolidated with Case No. 3:17-CV-01010-GPC-MDD]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLE INC. AND THE CONTRACT MANUFACTURERS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE EVIDENCE CONCERNING UNRELATED APPLE AGREEMENTS**<br><br>**[REDACTED VERSION]**<br><br>Judge: Judge Gonzalo P. Curiel<br>Date: March 14, 2019<br>Time: 1:30 p.m.<br>Courtroom: 2D |

Pursuant to Federal Rules of Evidence 401, 402, and 403, Apple Inc. ("Apple") and the Contract Manufacturers ("CMs") move *in limine* to exclude evidence and argument concerning Apple's contracts with ▓▓▓▓ or revenue-sharing provisions, and Apple's "Made-for-iPad/Made-for-iPhone" ("MFi") program. Such evidence is irrelevant, confusing, misleading, and unfairly prejudicial.

## I. INTRODUCTION

During deposition discovery, Qualcomm repeatedly asked Apple witnesses about Apple's agreements with other companies for products unrelated to baseband chips spanning more than the last decade. Specifically, Qualcomm asked about (i) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, (ii) Apple's sharing in the revenue of App Store purchases, and (iii) Apple's MFi program. It appears that Qualcomm intends to introduce evidence of such agreements to show that Apple has agreed to contract provisions that Qualcomm believes are similar to provisions Apple challenges in this litigation. However, such evidence is irrelevant, and its introduction would only distract and confuse the jury.

## II. ARGUMENT

### A. Apple's ▓▓▓▓▓▓▓ Agreements Should Be Excluded

Qualcomm may seek to introduce evidence that Apple entered into an ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Ex.[1] A at 5–6; Ex. B at 135; Ex. D (Cue 6/12/18 Dep.) at 55:5–16,[2] as well as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Ex. D (Cue 6/12/18 Dep.) at 60:10–22, 64:23–65:11, 133:23–134:12, 145:24–146:7, 151:11–152:1; Ex. E at 177; Ex. F at 186–87; Ex. G at 210–11. Qualcomm may also seek to have Dr. Tasneem Chipty opine that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] All subsequent "Ex." references refer to exhibits to the Appendix of Exhibits.
[2] Unless otherwise noted, cited deposition testimony by Apple witnesses has been designated by Qualcomm, showing its intent to rely on the evidence at trial. Ex. C (Qualcomm Inc.'s Dep. Designations (S.D. Cal. Nov. 2, 2018) (selected witnesses)).

1 ▨ Ex. H (T. Chipty
2 Op. Rpt.) ¶ 152 n.450.
3       Apple's ▨ is a heavily-
4 negotiated, multifaceted agreement. Ex. A at 1–129. It includes ▨
5 ▨
6 ▨
7 ▨ *Id.* The ▨ in this
8 agreement are irrelevant, prejudicial, and should be excluded. Fed. R. Evid. 401,
9 403. The ▨ in contexts unrelated to Qualcomm has
10 no bearing on the anticompetitive nature of Qualcomm's exclusive contracts.
11       While "exclusive contracts are commonplace," "a monopolist's use of
12 exclusive contracts, in certain circumstances, may give rise to a § 2 violation."
13 *United States v. Microsoft Corp.*, 253 F.3d 34, 70 (D.C. Cir. 2001); *see also Omega*
14 *Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162–63 (9th Cir. 1997). Apple does
15 not contend that exclusive contracts are *always* problematic. Apple and the CMs'
16 expert Professor Douglas Bernheim has opined that "exclusion is not necessarily
17 anticompetitive." Ex. I (D. Bernheim Op. Rpt.) ¶ 247. Rather, "[u]pon concluding
18 that a given practice is exclusionary . . . one moves to the second step: assess the
19 potential anticompetitive and procompetitive consequences of the conduct." *Id.*
20       That Apple entered into ▨ is not relevant to
21 whether **Qualcomm's exclusivity provisions with OEMs are anticompetitive**. Fed R.
22 Evid. 401; *Minn. Farm Bureau Mktg. Corp. v. N.D. Agr. Mktg. Ass'n, Inc.*, 563 F.2d
23 906, 911 (8th Cir. 1977) (excluding a party's contracts with third parties as
24 irrelevant). ▨
25 ▨. Any comparison between exclusivity
26 agreements by Qualcomm (with OEMs such as Apple) and Apple (▨
27 ▨) would be a misleading false equivalency: there is no admissible
28 evidence that Apple or ▨

1 ▓▓▓▓, that such agreements foreclosed competition, that the circumstances
2 surrounding them were analogous to those surrounding Qualcomm's use of
3 exclusivity conditions, or that ▓▓▓▓ was unjustified under the circumstances.
4 　　The danger of juror confusion resulting from the introduction ▓▓▓▓
5 ▓▓▓▓ substantially outweighs any marginal
6 relevance.  See Fed. R. Evid. 403; *United States v. Rewald*, 889 F.2d 836, 853
7 (9th Cir. 1989) ("Rule 403 recognizes that as the probative value of evidence
8 decreases, the potential increases for it to be substantially outweighed by the dangers
9 identified in the rule.").  Focusing the jury's attention on ▓▓▓▓
10 ▓▓▓▓ may cause the jury to believe mistakenly that the existence of ▓▓▓▓
11 ▓▓▓▓ is a factor to consider in assessing the potential
12 anticompetitive and procompetitive consequences of Qualcomm's exclusivity
13 provisions.  They are not.  See *Omega Envtl., Inc.*, 127 F.3d at 1162–63.
14 　　If this evidence is admitted, Apple will need to spend limited trial time
15 presenting evidence on the collateral issue of the negotiating context for its
16 ▓▓▓▓.  For example, Apple will need to explain the circumstances
17 surrounding each of the ▓▓▓▓ and how those circumstances differed
18 from the exclusivity conditions on which Qualcomm insisted as a *quid pro quo* for
19 royalty relief.  See Ex. D (Cue 6/12/18 Dep.) at 69:25–70:7;[3] *Alegrett v. City & Cty.*
20 *of S.F.*, 2014 WL 1881091, at *2 (N.D. Cal. May 9, 2014) (excluding "other acts"
21 evidence because proof of these other acts "would be time consuming and could lead
22 to confusion of the issues, or could mislead the jury"); *Gorman v. City of San Diego*,
23 2012 WL 1835689, at *8 (S.D. Cal. May 21, 2012) (reaffirming on denial of a new
24 trial motion exclusion of evidence under Rule 403 in part because testimony "would
25 cause jury confusion because admission of the testimony would lead to a trial within
26 a trial").  Put simply, without a wealth of extraneous evidence, ▓▓▓▓
27 ▓▓▓▓, provide no basis for inferring
28 ─────────
[3] This testimony was not designated by Qualcomm.

1 that exclusivity is commonplace generally, let alone that it is commonplace (or in fact
2 exists *at all*) in specific circumstances analogous to those posed by Qualcomm.
3       If these contracts are admitted, the court should instruct the jury that (1)
4 "exclusive contracts are commonplace" but "a monopolist's use of exclusive
5 contracts, in certain circumstances, may give rise to a § 2 violation," *Microsoft*, 253
6 F.3d at 70; and (2) there is no basis for contending that ▬▬▬▬▬▬▬▬▬▬
7 were those of a monopolist or unlawful.

      **B.**    **Apple's Revenue Sharing Contracts Should Be Excluded**

9       Qualcomm may also seek to introduce evidence that Apple shares in revenue
10 from App Store purchases, Ex. D (Cue 6/12/18 Dep.) at 90:14–20, 94:20–95:3, and
11 had a ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, *id.* at 57:2–7, 75:19–76:2, 80:19–24,
12 119:17–120:6, 120:12–16, 147:7–12, 147:18–23, 157:16–158:14; Ex. A at 6–7.
13 Apple anticipates that Qualcomm will use this evidence to argue that it is reasonable
14 for Qualcomm's royalty rates to apply to entire devices. As described above,
15 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
16 ▬▬▬ Apple's App Store provides revenue to app developers while technically
17 certifying apps and marketing them in a central location. Apple's revenue-sharing
18 provisions are irrelevant, prejudicial, and should be excluded.
19       Apple and the CMs claim that Qualcomm's practice of charging an "exorbitant
20 high royalty that is expressed as a percentage of the entire market value of the
21 finished device" is a practice that "does not comply with patent law or Qualcomm's
22 FRAND obligations." Dkt. 79 (Apple's 1st Am. Compl.) ¶ 167; *see also id.* ¶¶ 168–
23 77 (describing infirmities of using device as the royalty base); *id.* ¶ 625 (Count LXII
24 alleging that "Qualcomm's failure to license on FRAND terms . . . exposes Apple
25 and other mobile device suppliers to the threat of exorbitant non-FRAND royalties
26 based on the price of their mobile devices).
27       Apple's contracts with ▬▬▬▬ and App Store developers are fundamentally
28 different than the Qualcomm license agreements at issue because they do not involve

standard essential patents, patent royalties, exhaustion, or any of the other myriad issues relevant to determining whether Qualcomm's licenses are FRAND.

In the Apple agreements at issue, revenue sharing is not based on the value of patents, but instead on circumstances related to the specific revenue sharing agreement. There is no argument that these revenue sharing agreements are appropriate value comparisons or otherwise yardsticks to measure relative value of Qualcomm's patents. And no Qualcomm expert suggests that they are.

Any probative value is substantially outweighed by confusion and undue delay. Focusing the jury's attention on Apple's revenue-sharing agreements is another attempt at a false equivalence and may cause the jury to believe that these terms are relevant to whether Qualcomm's device-level licensing for its cellular SEPs complies with FRAND. *See Old Chief v. United States*, 519 U.S. 172, 193 (1997) (courts may exclude under Rule 403 evidence that has "an undue tendency to suggest decision on an improper basis"); *United States v. Espinoza-Baza*, 647 F.3d 1182, 1189–90 (9th Cir. 2011). If this evidence is presented, Apple will need to explain the myriad reasons why its contracts involve different issues.

### C.    Evidence on Apple's MFi Licensing Program Should Be Excluded

Qualcomm may also seek to present evidence and argument concerning Apple's MFi program, which it may characterize as comparable to Qualcomm's "no license, no chips" policy. Apple's MFi program facilitates third-party accessories that are compatible with the iPhone and iPad. Ex. J (Whitt 5/3/2018 Dep.) at 29:4–8. As part of the MFi program, Apple gives developers rights to trademarks, trade secrets, technical specifications, licenses to NEPs, and access to design components from vendors. Ex. K (Lutton 5/11/18 Dep.) at 35:24–37:6; Ex. J (Whitt 5/3/2018 Dep.) 32:2–14. Apple tests to confirm that the proposed accessory works with Apple's products and ███████████████████ ███████████████████ Ex. L (Cook Dep. 6/27/2018) at 213:23–214:13.[4]

---

[4] This deposition excerpt was not designated as trial testimony by Qualcomm.

1  Manufacturers that are licensed under the MFi program are free to make non-MFi
2  products without reporting those sales or paying license fees to Apple.  Qualcomm's
3  former CEO ███████████████████████████████████████████████████████
4  ███████████████████████████████████████████ Ex. M (Jacobs Dep.) 320:2–
5  15, a theme that Qualcomm may try to present at trial.  Apple's MFi program is
6  irrelevant to whether Qualcomm's no license, no chips policy is anticompetitive.
7  That other companies *include IPR licenses as part of certifying compatible*
8  *ancillary licensee products* is not relevant to whether Qualcomm's no license, no
9  chips policy, which *conditions sale of Qualcomm chipsets on taking licenses to*
10 *Qualcomm patents*, injures competition.
11         Focusing the jury's attention on Apple's MFi program is yet another attempt at
12 a false equivalence, one likely to confuse the jury into believing that it should
13 consider the *existence* of Apple's certification program in assessing the *consequences*
14 to competition of Qualcomm's no license, no chips policy.  *See Old Chief*, 519 U.S.
15 at 193; *Espinoza-Baza*, 647 F.3d at 1189–90.  If this evidence is presented, Apple
16 will need to explain the context for its MFi program, which will waste trial time on
17 collateral issues.

18 **III.   CONCLUSION**
19         For the foregoing reasons, the Court should exclude evidence and argument
20 concerning Apple's contracts with exclusivity or revenue-sharing provisions and its
21 MFi program.
22
23 Dated: February 15, 2019         Respectfully submitted,
24
25                                  By:  /s/ William A. Isaacson
                                        Juanita R. Brooks, SBN 75934, brooks@fr.com
26                                      Seth M. Sproul, SBN 217711, sproul@fr.com
                                        FISH & RICHARDSON P.C.
27                                      12390 El Camino Real
                                        San Diego, CA 92130
28

|   |   |
|---|---|
| 1 | Phone: (619) 678-5070; Fax: (619) 678-5099 |
| 2 | Ruffin B. Cordell (D.C. Bar No. 445801; |
| 3 | *pro hac vice*) cordell@fr.com |
|   | Lauren A. Degnan (D.C. Bar No. 452421; |
| 4 | *pro hac vice*) degnan@fr.com |
| 5 | FISH & RICHARDSON P.C. |
|   | 1000 Maine Avenue, S.W., Suite 1000 |
| 6 | Washington, D.C. 20024 |
| 7 | Phone: (202) 783-5070; Fax: (202)783-2331 |
| 8 | William A. Isaacson (D.C. Bar No. 414788; |
| 9 | *pro hac vice*) wisaacson@bsfllp.com |
|   | Karen L. Dunn (D.C. Bar No. 1002520; |
| 10 | *pro hac vice*) kdunn@bsfllp.com |
| 11 | BOIES SCHILLER FLEXNER LLP |
|   | 1401 New York Avenue, N.W. |
| 12 | Washington, D.C. 20005 |
| 13 | Phone: (202) 237-2727; Fax: (202) 237-6131 |
| 14 | *Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.* |
| 15 |   |
| 16 |   |
| 17 | By:   /s/ Jason C. Lo |
|   |        Theodore R. Boutrous, Jr., SBN 132099, |
| 18 |        tboutrous@gibsondunn.com |
| 19 |        Richard J. Doren, SBN 124666 |
|   |        rdoren@gibsondunn.com |
| 20 |        Daniel G. Swanson, SBN 116556, |
|   |        dswanson@gibsondunn.com |
| 21 |        Michele L. Maryott, SBN 191993 |
| 22 |        mmaryott@gibsondunn.com |
|   |        Jason C. Lo, SBN 219030, |
| 23 |        jlo@gibsondunn.com |
| 24 |        Jennifer J. Rho, SBN 254312, |
|   |        jrho@gibsondunn.com |
| 25 |        Melissa Phan, SBN 266880, |
| 26 |        mphan@gibsondunn.com |
|   |        GIBSON, DUNN & CRUTCHER LLP |
| 27 |        333 South Grand Avenue |
| 28 |        Los Angeles, CA 90071 |

| | |
|---|---|
| 1 | Tel: (213) 229-7000; Fax: (213) 229-7520 |
| 2 | Cynthia E. Richman, DC Bar No. 492089, |
| 3 | *pro hac vice* |
|   | crichman@gibsondunn.com |
| 4 | GIBSON, DUNN & CRUTCHER LLP |
|   | 1050 Connecticut Avenue, N.W. |
| 5 | Washington, DC 20036 |
| 6 | Tel: (202) 955-8500; Fax: (202) 467-0539 |
| 7 | |
| 8 | *Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs Compal Electronics, Inc., FIH Mobile Ltd., Hon Hai Precision Industry Co., Ltd., Pegatron Corporation, and Wistron Corporation* |
| 9 | |
| 10 | |
| 11 | |
| 12 | Hugh F. Bangasser, *pro hac vice* |
|    | hugh.bangasser@klgates.com |
| 13 | Christopher M. Wyant, *pro hac vice* |
|    | chris.wyant@klgates.com |
| 14 | J. Timothy Hobbs, *pro hac vice* |
|    | tim.hobbs@klgates.com |
| 15 | K&L GATES LLP |
| 16 | 925 Fourth Avenue, Suite 2900 |
|    | Seattle, Washington 98104 |
| 17 | Tel: (206) 623-7580; Fax: (206) 370-6371 |
| 18 | |
| 19 | Caitlin C. Blanche, SBN 254109, |
|    | caitlin.blanche@klgates.com |
| 20 | K&L GATES LLP |
| 21 | 1 Park Plaza Twelfth Floor |
|    | Irvine, CA 92614 |
| 22 | Tel: (949) 253-0900; Fax: (949) 253-0902 |
| 23 | |
| 24 | *Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Wistron Corporation* |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 15, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5.4(d). Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Executed on February 15, 2019.

*/s/ William A. Isaacson*
William A. Isaacson