# EXHIBIT F

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>QUALCOMM LITIGATION | Case No. 3:17-CV-0108-GPC-MDD<br>[Consolidated with Case No. 3:17-CV-01010-GPC-MDD]<br><br>**EXHIBIT F:  APPLE INC. AND THE CMS' PROPOSED JURY INSTRUCTIONS WITH OBJECTIONS**<br><br>**Judge:**      Judge Gonzalo P. Curiel<br>**Date:**       March 28, 2019<br>**Time:**       1:30 p.m.<br>**Courtroom:**  2D |

# APPLE & CMS' PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's December 19, 2018 Order, Federal Rule of Civil Procedure 51, and Local Rule 51.1, Apple Inc. ("Apple"); FIH Mobile Ltd. and Hon Hai Precision Industry Co., Ltd., (together, "Foxconn"), Pegatron Corporation, Wistron Corporation, and Compal Electronics, Inc. (collectively, "the CMs") hereby submit their proposed jury instructions.

# TABLE OF CONTENTS

## PRELIMINARY INSTRUCTIONS

1. Claims and Defenses ...................................................................................2

2. Patents, Patent Exhaustion, And FRAND.....................................................7

3. Affirmative Defenses Are Not Evidence ....................................................10

## INSTRUCTIONS DURING TRIAL

4. Use Of Interpreters .....................................................................................12

## FINAL INSTRUCTIONS

5. Explanation Of Patent Terms .....................................................................14

6. Patents.........................................................................................................15

7. Patent Exhaustion .......................................................................................16

8. Standard-Setting Organization (SSO).........................................................21

9. Third Party Beneficiaries............................................................................23

10. Introduction To Claims And Affirmative Defenses.....................................24

## ANTITRUST CLAIMS

11. Apple's Count LXII; CMs' Counts I-III (Patents – Relation to Antitrust Laws)...............................................................................................26

12. Apple's Count LXII; CMs' Count I (Monopolization – Elements)........28

13. Apple's Count LXII; CMs' Count I (Monopolization – Existence Of Monopoly Power—Defined).....................................................................31

14. Apple's Count LXII; CMs' Count I (Monopolization – Relevant Market – General) .....................................................................................33

15. Apple's Count LXII; CMs' Count I (Monopolization – Relevant Product Market).........................................................................................35

16. Apple's Count LXII; CMs' Count I (Monopolization – Existence Of Monopoly Power—Types of Proof).........................................................38

17. Apple's Count LXII; CMs' Count I (Monopolization – Existence Of Monopoly Power—Direct Proof)............................................................39

18.   Apple's Count LXII; CMs' Count I (Monopolization – Existence Of Monopoly Power—Indirect Proof) ..........................................................42

19.   Apple's Count LXII; CMs' Count I (Monopolization – Willful Acquisition Or Maintenance Of Monopoly Power Through Anticompetitive Acts) ...................................................................................46

20.   CMs' Counts II-III (Section 1 And Cartwright Act – Restraint On Trade) .......................................................................................................49

21.   CMs' Counts II-II (Introduction To Tying) ...........................................50

22.   CMs' Counts II-III (Rationale For Prohibition Of Tying Arrangements) ...............................................................................................51

23.   CMs' Count II-III (Per Se Unlawful Tying – Elements) ......................52

24.   CMs' Count II-III (Tying – Presence Of Two Products).......................55

25.   CMs' Count II-III (Contract – Definition, Existence, And Evidence) ...56

26.   CMs' Count II-III (Tying – Proof Of Conditioning) .............................58

27.   CMs' Count II-III (Tying – Existence of Market Power With Respect To The Tying Product) ...............................................................60

28.   CMs' Count II-III (Tying – Existence Of Market Power With Respect To The Tying Product) ...............................................................62

29.   CMs' Count II-III (Section 1 And Cartwright Act – Restraint of Trade – Rule of Reason).............................................................................64

30.   CMs' Count II-III (Section 1 And Cartwright Act – Restraint of Trade – Rule of Reason: Proof Of Competitive Harm) ..........................66

31.   CMs' Count II-III (Section 1 And Cartwright Act – Restraint of Trade – Rule of Reason: Evidence of Competitive Benefits).................69

32.   CMs' Count II-III (Section 1 And Cartwright Act – Restraint of Trade – Rule of Reason: Balancing Competitive Effects)......................70

33.   CMs' Count II-III (Section 1 – Relation To Cartwright Act)................71

34. CMs' Count III (Cartwright Act Section 16727 – Per Se Tying – Elements) ...................................................................................72

35. CMs' Counts III – (Cartwright Act Section 16727 – Reference To Other Instructions For Elements ............................................................73

36. Apple's Count LXII; CMs' Counts I-III – Injury – Introduction) ..........74

37. CMs' Counts I-III – Injury And Causation – CMs ................................75

38. Apple's Count LXII – Injury And Causation – Apple ...........................79

39. Apple's Count LXII; CMs' Counts I-III (Business Or Property) ...........82

40. CMs' Counts I-III (Antitrust Damages – Introduction And Purpose) ....83

41. CMs' Counts I-III (Antitrust Damages – Basis For Calculating Damages) ........................................................................................84

42. CMs'Counts I-III (Antitrust Damages – Causation And Disaggregation) ................................................................................86

43. CMs' Count II-III (Antitrust Damages – Damages From Tying and Unreasonable Restraint Of Trade) ...................................................88

44. CMs' Count I (Antitrust Damages – Damages From Monopolization) ...............................................................................90

45. CMs' Counts I-III (Damages On Multiple Legal Theories) ...................91

46. CMs' Counts I-III (Antitrust Damages – Multiple Plaintiffs) ................92

47. CMs' Counts I-III (Affirmative Defense – Antitrust Mitigation) ...........93

**UNFAIR COMPETITION LAW**

48. Apple's Count LLXIII (Violations Of California Unfair Competition Law-Liability) ..................................................................96

49. CMs' Count IV (Violations Of California Unfair Competition Law – Liability) .......................................................................................98

50. Restitution To Apple .....................................................................100

51. Restitution To CMs .......................................................................101

# FRAND

52. The FRAND Commitment ................................................................ 103

53. Apportionment ............................................................................... 107

54. Smallest Salable Unit .................................................................... 109

55. The Aggregate Royalty Burden ..................................................... 111

56. Apportioned Royalty Of The Aggregate Royalty Burden ............ 113

57. Comparable Agreements ................................................................ 115

58. Infringement .................................................................................. 120

59. Invalidity ....................................................................................... 122

60. Unenforceability ........................................................................... 124

61. [Intentionally Omitted] ................................................................. 127

62. CMs' Count V (Breach of FRAND Commitments) ...................... 128

63. CMs' Count VIII (Declaratory Judgment That Qualcomm Did Not Comply With Its Obligations) .................................................. 130

64. CMs' Count VII (Promissory Estoppel) ....................................... 132

65. CMs' Counterclaim Against Qualcomm Count X (Negligent Misrepresentation To Standard Setting Organizations) ................. 134

66. CMs' Counterclaim Against Qualcomm Count IX (Waiver Of Rights To Obtain Compensation For Certain Patents) – Waiver .......... 137

67. Qualcomm's Count II (Declaration That CM SULAs Do Not Violate Qualcomm's Frand Commitments to ETSI) ..................... 139

68. Apple's Affirmative Defenses To Qualcomm's Count II (Declaration That SULAs Do Not Violate Frand) ........................ 141

69. Qualcomm's Count IV (Declaration That Qualcomm Has Satisfied And Discharge Frand Commitments To ETSI With Respect To Apple) ................................................................................ 142

70. Apple's Affirmative Defense To Qualcomm's Count IV (Declaration That Qualcomm Has Satisfied And Discharged Frand Commitments To ETSI With Respect To Apple)................................144

**CONTRACT CLAIMS**

71. Breach of Contract—The Parties' Contract Claims.............................146

72. Contract Interpretation .................................................................148

73. Contract Interpretation – Meaning Of Ordinary Words.......................149

74. Contract Interpretation – Construction of Contract As A Whole .........150

75. Contract Interpretation – Technical Words.......................................151

76. Contract Interpretation – Construction By Conduct ...........................152

77. No Subjective Interpretations.........................................................153

78. Breach Of Contract-Essential Factual Elements .................................154

79. Implied Covenant Of Good Faith – Essential Elements ......................155

80. No Contradicting Express Provision Of A Contract............................156

81. Causation ...................................................................................157

82. Occurrence Of Agreed Condition Subsequent (BCPA)........................158

83. Qulacomm's Counterclaim VI (Breach Of The BCPA) – Inducing Investigation ................................................................................160

84. Introduction To Contract Damages..................................................162

85. Breach Of Contract—Obligation To Pay Money Only ........................163

86. Jurors Not To Consider Attorney Fees And Court Costs.....................164

87. Summary Of Affirmative Defenses For Each Of The Breach Of Contract Claims..............................................................................165

88. Apple's Affirmative Defenses To Qualcomm's Counterclaims VI And VII (Breach Of The BCPA And The Implied Covenant Of Good Faith And Fair Dealing) .........................................................166

89. Qualcomm's Affirmative Defenses To Apple's Counts I-II (Alleged Breach Of The BCPA) ....................................................................168

90.   CMs'Affirmative Defenses To Qualcomm's Claim I (Alleged
      Breach Of The License Agreement)........................................................169

91.   CMs' Affirmative Defenses To Qualcomm's Claim II (Alleged
      Breach Of The Software Agreement).....................................................171

92.   Apple's Affirmative Defenses To Qualcomm's Claim V (Alleged
      Breach Of The Software Agreement).....................................................173

**UNENFORCEABLE AS AGAINST PUBLIC POLICY**

93.   Introduction To Uneforceability Against Public Policy .......................175

94.   Apple's Count LXI; CMS' Count XII (Declaration That SULAS
      Are Unenforceable As Against Public Policy)......................................177

95.   Apple's Count IV (Declaration Of Rights Under The BCPA –
      Section 7 Unenforceable As Against Public Policy) ............................182

96.   Apple's Count LX (Declaration Of Rights Under STA Assignment
      Agreement) ............................................................................................185

**ADDITIONAL BCPA CLAIMS**

97.   BCPA......................................................................................................189

98.   Apple's Count III (Violation Of Cal. Civ. Code § 1671) .....................190

99.   Apple's Count IV (Declaration Regarding Section 47(B) Privilege)...192

**UNJUST ENRICHMENT**

100.  Qualcomm's Count VIII (Unjust Enrichment) .....................................195

101.  Contract Formation—Essential Factual Elements ...............................197

102.  Apple's Affirmative Defenses To Qualcomm's Counterclaim VIII
      (Unjust Enrichment) .............................................................................199

**TORTIOUS INTERFERENCE WITH CONTRACT**

103.  Qualcomm's Count I (Tortious Interference With Contract)................202

104.  Apple's Affirmative Defenses To Count I (Tortious Interference
      With Contract) – Justification ..............................................................203

105. Apple's Affirmative Defenses To Count I (Tortious Interference With Contract) ...........................................................................204

106. Qualcomm's Count I (Tortious Interference With Contract) – Damages ...............................................................................206

107. Qualcomm's Count I (Tortious Interference With Contract) – Punitive Damages – Bifurcated Trial (First Phase) .............................207

108. Qualcomm's Count I (Tortious Interference With Contract) – Bifurcated Trial (Second Phase) .........................................................209

**RESTITUTION**

109. Restitution to Apple..................................................................212

**AFFIRMATIVE DEFENSES**

110. Negative Defenses/Affirmative Defenses ...............................215

111. Unenforceable As Against Public Policy ................................216

112. Unconscionability....................................................................218

113. Estoppel ...................................................................................220

114. Waiver .....................................................................................222

115. Unclean Hands ........................................................................223

116. Acquiescence...........................................................................224

117. Ratification ..............................................................................226

118. Consent....................................................................................227

119. Section 47(b) Privilege ...........................................................228

120. Liquidated Damages (Cal. Civ. Code § 1671) .......................230

121. Violation of SSO IPR Policy...................................................231

122. Excuse......................................................................................233

123. Laches......................................................................................234

124. Bilateral Mistake ....................................................................235

**LIMITATIONS ON DAMAGES**

125. No Double Recovery ...............................................................238

126.  Failure To Mitigate..................................................................................239

127.  Statute of Limitations ............................................................................240

# **<u>PRELIMINARY INSTRUCTIONS</u>**

## APPLE & CMS' PROPOSED INSTRUCTION NO. 1:  CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Apple asserts the following claims against Qualcomm. Apple has the burden of proving these claims.

- Apple contends that Qualcomm breached a contract known as the Business Cooperation and Patent Agreement ("BCPA").
- Apple contends that Qualcomm breached the implied covenant of good faith and fair dealing in the BCPA.
- Apple contends that a provision in the BCPA, as interpreted by Qualcomm, constitutes an impermissible liquidated damages provision.
- Apple contends that its statements to regulators are protected by Section 47(b) of the California Civil Code.
- Apple seeks a finding that Section 4.4 of the STA Assignment Agreement is unenforceable as against public policy because it requires Apple to pay royalties on exhausted patents.
- Apple seeks a finding that the CMs' license agreements are unenforceable as against public policy because they are unlawful restraints of trade and/or acts of monopolization, and because the CMs' license agreements seek royalties on exhausted patents and tie exhausted and non-exhausted patents together.
- Apple contends that Qualcomm has engaged in anticompetitive behavior prohibited by Section 2 of the Sherman Act.
- Apple contends that Qualcomm has engaged in unlawful conduct that violates California's Unfair Competition Law.

Qualcomm asserts the following claims against Apple. Qualcomm has the burden of proving these claims.

- Qualcomm contends that Apple interfered with Qualcomm's license agreements with the CMs.

- Qualcomm seeks a finding that Qualcomm's license agreements with the CMs do not violate Qualcomm's FRAND commitments to ETSI.

- Qualcomm seeks a finding that Qualcomm has satisfied and discharged its FRAND commitments to ETSI with respect to Apple.

- Qualcomm contends that Apple breached a contract known as the 2013 Statement of Work ("2013 SOW").

- Qualcomm contends that Apple breached the BCPA.

- Qualcomm contends that Apple breached the implied covenant of good faith and fair dealing in the BCPA.

- Qualcomm contends that Apple was unjustly enriched by payments Qualcomm made pursuant to the BCPA.

Qualcomm also seeks a finding that Qualcomm's license agreements with the CMs do not violate competition law. "Competition law" refers to federal and state laws prohibiting unfair competition and other unfair or monopolistic business practices.

The CMs assert the following claims against Qualcomm. The CMs have the burden of proving these claims.

- The CMs contend that Qualcomm has engaged in anticompetitive behavior prohibited by Section 2 of the Sherman Act.

- The CMs contend that Qualcomm has engaged in anticompetitive behavior prohibited by Section 1 of the Sherman Act.

- The CMs contend that Qualcomm violated California's Cartwright Act (Cal. Bus. & Prof. Code § 16700 et seq.).

- The CMs contend that Qualcomm has breached its FRAND commitments.

- The CMs contend that Qualcomm has breached the implied covenant of good faith and fair dealing based on Qualcomm's violation of its FRAND commitments to standard-setting organizations.

- The CMs assert promissory estoppel claims against Qualcomm.

- The CMs seek a declaratory judgment that Qualcomm violated its FRAND commitments.

- The CMs contend that Qualcomm waived the right to receive compensation for its standard essential patents other than under FRAND terms.

- The CMs contend that Qualcomm is liable for negligent misrepresentation, including to standard-setting organizations.

- The CMs contend that Qualcomm breached its license agreements with the CMs.

- The CMs seek a finding that each of their license agreements with Qualcomm are unenforceable as against public policy.

Qualcomm asserts the following claims against the CMs. Qualcomm has the burden of proving these claims.

- Qualcomm contends that Foxconn, Pegatron, Wistron, and Compal each breached its respective license agreement with Qualcomm ("Foxconn SULA", "Pegatron SULA", "Wistron SULA", "Compal SULA").

- Qualcomm contends that Foxconn, Pegatron, Wistron, and Compal each breached its Master Software Agreement with Qualcomm ("Foxconn MSA", "Pegatron MSA", "Wistron MSA", "Compal MSA").

The parties against which these claims are asserted deny these claims.

## AUTHORITY

Ninth Circuit Manual of Model Civil Jury Instructions § 1.5 (2017 ed., Updated Sept. 2018) (modified); Joint Proposed Pretrial Order.

## QUALCOMM OBJECTION[1]

Qualcomm objects to this instruction because it addresses numerous issues that are for the Court, not the jury. *See U.S. Sec. & Exch. Comm'n v. Jensen*, 835 F.3d 1100, 1111 (9th Cir. 2016) ("[T]he right to a jury trial exists only for legal and not equitable claims."). Specifically, the following issues are for the Court:

- Whether a provision of the BCPA constitutes an impermissible liquidated damages provision, *see Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1314 (Ct. App. 2005);
- Whether any of Apple's statements to regulators are protected by Section 47(b) of the California Civil Code, *see Falcon v. Long Beach Genetics, Inc.*, 224 Cal. App. 4th 1263, 1272-73 (Cal. Ct. App. 2014); *see also MAP Co. v. Lebanese Arak Corp.*, Case No. 2:16-cv-05039-AB-RAO, 2018 WL 3357474, at *2 (C.D. Cal. Feb. 5, 2018);
- Whether any contracts are unenforceable as against public policy, *see Erhart v. BofI Holding, Inc.*, No. 15-cv-02287-BAS-NLS, 2017 WL 588390, at *6 (S.D. Cal. Feb. 14, 2017);
- Whether Qualcomm has engaged in unlawful conduct that violates California's Unfair Competition Law, *see Steinberg Moorad & Dunn, Inc. v. Dunn*, 136 F. App'x 6, 9 (9th Cir. 2005); *Hodge v. Superior Court*, 145 Cal. App. 4th 278, 284 (Cal. Ct. App. 2006);
- Whether any contract is unenforceable because it seeks royalties for exhausted patents, which either implicates unenforceability as against public policy or California's Unfair Competition Law (*see* ECF No. 737 at 12), both of which are issues for the Court, not the jury, *see*

---

[1] Qualcomm has set forth herein its objections to Apple's and the CMs' proposed jury instructions and has separately set forth its objections to Apple's and the CMs' proposed verdict form. As a result of ongoing revisions being made by both sides shortly before filing and the parties' mutual commitment to continue to meet and confer in good faith (and, if appropriate, revise their respective proposals) in an effort to minimize the remaining disputes, Qualcomm respectfully reserves its rights to modify these objections, or to assert additional objections, as necessary. In addition, Apple's and the CMs' omit from their proposed jury instructions and verdict form a number of Qualcomm's claim and defenses. Qualcomm objects to these omissions and reserves its rights

*MAP Co.*, 2018 WL 3357474, at \*2; *Hodge v. Superior Court*, 145 Cal. App. 4th 278, 284 (Cal. Ct. App. 2006); and

- Whether the CMs are entitled to recover under a theory of promissory estoppel, *see C & K Eng'g Contractors v. Amber Steel Co.*, 587 P.2d 1136, 1139-41 (Cal. 1978); *Nationwide Biweekly Admin., Inc. v. Superior Court*, 24 Cal. App. 5th 438, 451 (Cal. Ct. App. 2018).

Qualcomm further objects to this instruction because it misstates the party who bears the burden of proof on the factual issues underlying Qualcomm's claims for declaratory relief in four instances. It is Apple, as the party asserting the underlying breach of contract and competition law violations, which bears the burden of proof on the underlying factual issues to be decided by the jury concerning the following claims for declaratory relief:

- Qualcomm's license agreements with the CMs do not violate Qualcomm's FRAND commitments to ETSI.
- Qualcomm has satisfied and discharged its FRAND commitments to ETSI with respect to Apple.
- Qualcomm is released from any obligation to make further payments under the BCPA.
- Qualcomm's license agreements with the CMs do not violate competition law.

*See Medtronic, Inc. v. Mirowski Family Ventures, LLC.*, 571 U.S. 191, 199 (2014).

# APPLE & CMS' PROPOSED INSTRUCTION NO. 2: PATENTS, PATENT EXHAUSTION, AND FRAND

You will hear about patents during this trial. A patent is an exclusive right granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent owner's permission.

The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented article, or an article that substantially embodies a patent claim, terminates—or "exhausts"—all patent rights to that article. In other words, under the patent laws, a patent owner has no right to receive royalties for a patent claim that is exhausted. When a patent is exhausted as to an article, the patent owner is prohibited from enforcing that patent against others for using, offering to sell, or selling the article or a product containing the article or making a product containing the article.

A patent may be subject to a "FRAND commitment." FRAND stands for Fair, Reasonable, and Non-Discriminatory. A patent owner can participate in a standard-setting organization ("SSO") and advocate for its patented technology to become part of a standard. In exchange for that technology being incorporated into a standard, the patent owner must promise to license its patent to all willing licensees, including competitors, on FRAND terms. Patent owners may declare that one or more of its patents are essential to a standard—that is, the patent is required to implement a particular standard. However, SSOs do not review whether a patent declared standard-essential by a member is actually essential to the standard. Patents that are declared standard-essential are sometimes referred to as "standard essential patents" or SEPs. Non-standard essential patents are called NEPs.

## AUTHORITY

N.D. Cal. Model Patent Jury Instructions (Rev. Aug. 2017, Updated Dec. 2018) at 1-2, 56 (Preliminary Instructions and Appendix definition of patent) (modified).

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523 (2017); *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008); *United States v. Univis Lens Co.*, 316 U.S. 241 (1942).

N.D. Cal. Model Patent Jury Instructions (Rev. Aug. 2017, Updated Dec. 2018) at 53 (modified); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1365–66 (Fed. Cir. 2018); *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 WL 5848999, at *10–*11, *15 (N.D. Cal. Nov. 6, 2018); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-CV-100-JRG, 2015 WL 4775973, at *2 (E.D. Tex. Aug. 11, 2015); *InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 1:13-CV-00009-RGA, 2014 WL 2206218, at *3 (D. Del. May 28, 2014).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it misstates the law. *See White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002) ("Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading."); *Bullock v. Philip Morris USA, Inc.*, 159 Cal. App. 4th 655, 684-85 (Ct. App. 2008) ("A court may refuse a proposed instruction that incorrectly states the law or is argumentative, misleading, or incomprehensible to the average juror, and ordinarily has no duty to modify a proposed instruction."). *First*, the statement that "a patent owner has no right to receive royalties for a patent claim that is exhausted" is incorrect. The Court has stated that "[u]nder *Lexmark*, Qualcomm's patent rights are not determinative of its contract rights". (ECF No. 737 at 11). *See also Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1531-33 (2017) (a patent holder is entitled to enforce a contract restriction as a matter of contract law, even if the right does not exist as a matter of patent law). In addition, a patent claim as a whole does not become exhausted; instead, a sale exhausts a claim as to only the specific article that was the subject of the specific authorized sale, not as to other unspecified articles (*e.g.*, articles that were not the

subject of authorized sales).  *See Lexmark*, 137 S. Ct. at 1535.  *Third*, the sentence stating, "A valid United States patent gives the patent owner the right to prevent . . ." should instead say "the right to exclude".  *See* 35 U.S.C. § 154.

Qualcomm objects to this instruction because it purports to put before the jury a claim which is not in this case.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  Patent exhaustion is "an affirmative defense to a claim of patent infringement", and there are no claims for patent infringement in this case.  *See* ECF No. 737 at 8 (quoting *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1373 (Fed. Cir. 2013)).  The jury is not being asked to render a verdict on the infringement or exhaustion of any patent.

Qualcomm further objects to this instruction as misleading.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  If the Court is inclined to give an instruction regarding patent exhaustion, then any such instruction should instruct the jury that "Qualcomm's patent rights are not determinative of its contract rights", and that the claims in this case are contract claims based on contract rights, not patent claims based on patent rights.  (ECF No. 737 at 11.)  In addition, the definition of patent rights in the instruction relates only to the United States.  However, the licenses at issue in this case cover foreign patents as well.  In addition, the phrase, "The longstanding doctrine of patent exhaustion" is unnecessary and prejudicial.  Whether a doctrine is "longstanding" is irrelevant to the application of the doctrine.

Qualcomm further objects to the sentence, "In exchange for that technology being incorporated into a standard, the patent owner must promise to license its patent to all willing licensees, including competitors, on FRAND terms", because it mischaracterizes the relevant FRAND commitment.  Qualcomm respectfully requests that the Court give instructions consistent with Qualcomm's positions in the Joint Pretrial Brief Identifying Disputed Contract Provisions, *see* ECF No. 881, and Qualcomm's Rule 44.1 motion, *see* ECF No. 876.

If the Court declines to interpret the contracts, then the jury must determine the meaning of Qualcomm's relevant FRAND commitment without the Court endorsing any particular meaning.  *See City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 395 (2008) (explaining when the jury must interpret contracts); *See Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 201-02 (8th Cir. 1981) ("An instruction is argumentative if it does not include all the elements of the doctrine, or singles out the testimony of one witness while disregarding other relevant evidence, or unduly highlights certain features of a case." (citations omitted)).

To the extent the Court believes an instruction regarding patents and patent exhaustion is necessary, Qualcomm respectfully asks the Court to give its Proposed Instruction Nos. 2-3.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 3: AFFIRMATIVE DEFENSES ARE NOT EVIDENCE

A party can defend against a particular claim by asserting that the party asserting the claim has not met its burden of proof. That is what is known as a negative defense.  Every party against which a claim is asserted contends that the party asserting the claim has failed to meet its burden of proof.  I therefore will not instruct you on which negative defenses apply to each claim.

A party can also defend against a claim by asserting an affirmative defense. An "affirmative defense" is a party's assertion of facts and arguments that, if true, would defeat another party's claim.  You must not interpret the fact that a party has asserted an affirmative defense as an admission of guilt or as evidence for any purpose.  You must consider affirmative defenses to claims that you find to have been proved.

For example, Alex claims Bob hit him.  Bob denies it and says that, even if Bob hit Alex, Alex consented.  A jury in that case must first determine whether Bob hit Alex.  If the jury finds that Bob did not hit Alex, then the jury would not consider the affirmative defense of consent.  If the jury finds that Bob hit Alex, then the jury would consider the affirmative defense of consent.

### AUTHORITY

Affirmative Defense, Black's Law Dictionary (10th ed. 2014); Final Jury Instructions, *Pinnacle Fitness & Recreation Mgmt. v. Moyes Family Trust*, No. 08-CV-1368-GPC (S.D. Cal. Jan. 30, 2013) (Curiel, J.), Closing Instr. No. 27 (Dkt. No. 282) (modified).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction to the extent it contains extraneous information about negative defenses.  For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 65 with respect to this issue.

# <u>INSTRUCTIONS DURING TRIAL</u>

## APPLE & CMS' PROPOSED INSTRUCTION NO. 4:  USE OF

## INTERPRETERS

You have heard testimony of witnesses who testified in the [*insert*] language. Witnesses who do not speak English or are more proficient in [*insert language*] testify through an official court interpreter.  Although some of you may know the [*insert language*], it is important that all jurors consider the same evidence. Therefore, you must accept the interpreter's translation of the witness's testimony. You must disregard any different meaning.

You must not make assumptions about a witness or party based solely on the use of an interpreter to assist that witness or party.

## AUTHORITY

Ninth Circuit Manual of Model Civil Jury Instructions § 2.8 (2017 ed., Updated Sept. 2018) (modified).

## QUALCOMM OBJECTION

Qualcomm understands that Apple intends to withdraw this instruction.

# **<u>FINAL INSTRUCTIONS</u>**

## APPLE & CMS' PROPOSED INSTRUCTION NO. 5:  EXPLANATION OF

## PATENT TERMS

This case involves a dispute relating to United States patents.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and some concepts related to patents that will be important for you to think about as you decide some of these claims.

### AUTHORITY

N.D. Cal. Model Patent Jury Instructions (Rev. Aug. 2017, Updated Dec. 2018) at 1 (modified).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is misleading.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  This case does not involve only United States patents.  The licenses at issue in this case cover foreign patents as well.  In addition, the instruction may mislead the jury to believe that it is being asked to decide issues regarding specific patents.

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 2 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 6: PATENTS

A patent is an exclusive right granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent owner's permission. When the patent expires, the right to make, use or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings, and claims. The patent is granted after examination by the PTO of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

### AUTHORITY

N.D. Cal. Model Patent Jury Instructions (Rev. Aug. 2017, Updated Dec. 2018) at 1-2, 56 (Preliminary Instructions and Appendix definition of patent) (modified).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is misleading. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. This case does not involve only United States patents. The licenses at issue in this case cover foreign patents as well.

In addition, the statement, "gives the patent owner the right to prevent others", should state, "gives the patent owner the right to exclude others". *See* 35 U.S.C. § 154.

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 2 with respect to this issue.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 7:  PATENT EXHAUSTION

You have heard the term patent exhaustion during this trial.  I am now going to instruct you as to what this term means.

Under the patent laws, a patent owner may demand only one reward for every item that passes outside the scope of its patent monopoly.  The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented article, or an article that substantially embodies a patent claim, terminates—or "exhausts"—all patent rights to that article.  In other words, under the patent laws, a patent owner has no right to receive royalties for a patent claim that is exhausted. Patent exhaustion occurs automatically even if the sale is made pursuant to an express restriction or is made outside of the United States.  The location of the sale is irrelevant.  When a patent is exhausted as to an article, the patent owner is prohibited from enforcing that patent against others for using, offering to sell, or selling the article or a product containing the article or making a product containing the article.

A patented article meets all the limitations of a patent claim.  An article "substantially embodies" a patent claim if:

(1)  the article embodies the essential or inventive features of the allegedly exhausted patent claim, and

(2)  the only reasonable and intended use of the article is to practice the patent claim.

What is essential or inventive about a patent claim in the patent exhaustion context is what distinguishes it from the prior art.  "Prior art" generally refers to information that is used to describe technical knowledge that existed before the invention claimed in a patent.  Multiple sets of claims in the same patent may contain essentially the same inventive feature or features.  An entire patent is

exhausted where the claims contain essentially the same inventive feature and one set of claims is embodied or substantially embodied in a sold item.

Where a sold item embodies only some of the elements or steps of a claim and the missing elements or steps are common and non-inventive, then the item will substantially embody the claim. In other words, a patent claim may be substantially embodied in an article even if the article must be combined with standard parts to practice the claimed invention.

Alternative uses are relevant to the exhaustion inquiry only if they are reasonable and intended by the patent owner or its authorized licensee. In addition, when assessing reasonable and intended use, the focus is on whether the features that partially practice a patent claim have an alternative use and not whether the entire article has an alternative reasonable and intended use.

Apple and the CMs contend that one or more of Qualcomm's patents are exhausted by the sale of Qualcomm's chipsets that the CMs incorporate into Apple products. To show patent exhaustion, Apple and the CMs must prove by a preponderance of the evidence:

**First**, that the sale of Qualcomm's chipsets to the CMs is authorized by Qualcomm; and

**Second**, that Qualcomm's chipsets embody or substantially embody one or more claims of each allegedly exhausted patent.

## AUTHORITY

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1538, 1535 (2017) ("Allowing patent rights to stick remora-like to that item as it flows through the market would violate the principle against restraints on alienation. Exhaustion does not depend on whether the patentee receives a premium for selling in the United States, or the type of rights that buyers expect to receive. As a result, restrictions and location are irrelevant; what matters is the patentee's decision to make a sale.";

"An authorized sale outside the United States, just as one within the United States, exhausts all rights under the Patent Act."); *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625, 628 (2008) ("The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item."; "[T]he traditional bar on patent restrictions following the sale of an item applies when the item sufficiently embodies the patents—even if it does not completely practice the patent—such that its only and intended use is to be finished under the term of the patent."); *United States v. Univis Lens Co.*, 316 U.S. 241 (1942); *Straus v. Victor Talking Mach. Co.*, 243 U.S. 490 (1917); *Bloomer v. McQuewan*, 55 U.S. 539, 549-50 (1853); *JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039, 1046-47 (Fed. Cir. 2015) (explaining the test for determining whether a product "substantially embodies" a patent); *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1373-75 (Fed. Cir. 2013); *Helferich Patent Licensing, LLC v. New York Times Co.*, 778 F.3d 1293, 1302-11 (Fed. Cir. 2015); *see also High Point S.A.R.L. v. T-Mobile USA, Inc.*, 640 F. App'x 917, 930 (Fed. Cir. 2016) (explaining that the "essential" features of a patent are those that contribute to the "inventive" part of the patent); *LifeScan Scot., Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1369 (Fed. Cir. 2013) ("What is 'inventive' about patent claims in the patent exhaustion context is what distinguishes them from the prior art."); N.D. Cal. Model Patent Jury Instructions (Rev. Aug. 2017, Updated Dec. 2018) at 1 (definition of prior art) ("[I]n general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country."); D. Del. Uniform Jury Instructions for Patent Cases (Mar. 1993) at Glossary of Patent Terms (definition of prior art) ("Any information which is used to describe public, technical knowledge prior to the invention by applicant or more than a year prior to his/her application."); 2018 AIPLA Model Patent Jury Instructions at 7 (definition of prior art)

("Knowledge that is available to the interested public either prior to the invention by the applicant or more than one year prior to the filing date of the application.").

**QUALCOMM OBJECTION**

Qualcomm objects to this instruction because it misstates the law. *See White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002) ("Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading."); *Bullock v. Philip Morris USA, Inc.*, 159 Cal. App. 4th 655, 684-85 (Ct. App. 2008) ("A court may refuse a proposed instruction that incorrectly states the law or is argumentative, misleading, or incomprehensible to the average juror, and ordinarily has no duty to modify a proposed instruction."). *First*, the statement that "a patent owner has no right to receive royalties for a patent claim that is exhausted" is incorrect. The Court has stated that "[u]nder *Lexmark*, Qualcomm's patent rights are not determinative of its contract rights". (ECF No. 737 at 11); *see also Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1531-33 (2017) (a patent holder is entitled to "enforce [a contract] restriction as a matter of contract law", even if the right does not exist as a matter of patent law). In addition, a patent claim as a whole does not become exhausted; instead, a sale exhausts a claim as to only the specific article that was the subject of the specific authorized sale, not as to other unspecified articles (*e.g.*, articles that were not the subject of authorized sales). *See Lexmark*, 137 S. Ct. at 1535. *Third*, the sentence stating, "A valid United States patent gives the patent owner the right to prevent . . ." should instead say "the right to exclude". *See* 35 U.S.C. § 154. *Fourth*, the instruction states the incorrect standard for exhaustion (including by use of the phrase "substantially embody one or more claims") and omits required elements for establishing the defense of patent exhaustion. *See Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 638 (2008). *Fifth*, the instruction refers to "Qualcomm chipsets" generally, but a determination of patent exhaustion would require an analysis of whether a specific Qualcomm chipset sold substantially embodies each allegedly exhausted patent.

Qualcomm objects to this instruction because it purports to put before the jury a claim which is not in this case. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. Patent exhaustion is "an affirmative defense to a claim of patent infringement", and there are no claims for patent infringement in this case. (*See* ECF No. 737 at 8-10 (quoting *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1373 (Fed. Cir. 2013))). The jury is not being asked to render a verdict on the infringement or exhaustion of any patent.

Qualcomm further objects to this instruction as misleading. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. If the Court is inclined to give an instruction regarding patent exhaustion, then any such instruction should instruct the jury that "Qualcomm's patent rights are not determinative of its contract rights",

and that the claims in this case are contract claims based on contract rights, not patent claims based on patent rights. (ECF No. 737 at 11.) In addition, the definition of patent rights in the instruction relates only to the United States. However, the licenses at issue in this case cover foreign patents as well. In addition, the phrase, "The longstanding doctrine of patent exhaustion" is unnecessary and prejudicial. Whether a doctrine is "longstanding" is irrelevant to the application of the doctrine.

Qualcomm further objects to this instruction because it is repetitive of another of Apple's proposed instructions, unduly emphasizes Apple's contentions and is argumentative. *See United States v. Sarno*, 73 F.3d 1470, 1485 (9th Cir. 1995); *White*, 312 F.3d at 1012; *Gill*, 488 F.2d at 802; *Alamo v. Practice Mgmt. Info. Corp.*, 219 Cal. App. 4th 466, 475 (Cal. Ct. App. 2013); *Bullock*, 159 Cal. App. 4th at 684-85.

*First,* the instruction states, "Under the patent laws, a patent owner may demand only one reward for every item that passes outside the scope of its patent monopoly." This sentence unduly emphasizes Apple's position and may discourage the jury from enforcing Qualcomm's contract rights. This instruction is also misleading, because a patent owner can collect "rewards" under contract law even if no right to such "rewards" is allowed under patent law. (*See* ECF No. 737 at 11). *See also Lexmark*, 137 S. Ct. at 1531-33; *ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*, 541 F.3d 1373, 1377 (Fed. Cir. 2008) ("Patent exhaustion prohibits patentees from enforcing patent rights in certain circumstances, but it does not forbid multiple licenses on a single product or even multiple royalties.").

*Second*, the instruction states, "Apple and the CMs contend that one or more of Qualcomm's patents are exhausted by the sale of Qualcomm's chipsets that the CMs incorporate into Apple products." This sentence unduly emphasizes a factual issue that Apple and the CMs believe is relevant to some of Apple's affirmative defenses and declaratory judgment claims. The jury, however, may be misled into considering patent exhaustion as Apple's claim, when in reality patent exhaustion is "not a cause of action", *ExcelStor*, 541 F.3d at 1376, and "[p]atent exhaustion is an affirmative defense to a claim of patent infringement". *Keurig*, 732 F.3d at 1373. A statement of Apple's and the CMs' contentions that does not properly explain the effect of those contentions would confuse and mislead the jury. *See United States v. Fernandez-Ruiz*, 251 F. App'x 478, 480 (9th Cir. 2007) (stating that a court correctly excluded an instruction it found to be confusing and ambiguous).

Finally, the instruction is misleading to the extent it focuses on U.S. patent law and does not describe what principles of patent exhaustion may exist under foreign law.

To the extent the Court believes an instruction on this issue is necessary, Qualcomm respectfully asks the Court to give its Proposed Instruction No. 4.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 8: STANDARD-SETTING ORGANIZATION (SSO)

There are many standard-setting organizations (SSOs) relevant to cellular standards, including three that you have heard about in this case: the European Telecommunications Standards Institute (ETSI), the Telecommunications Industry Association (TIA), and the Alliance for Telecommunications Industry Solutions (ATIS). Each SSO has its own intellectual property rights (IPR) policy, which sets out the commitments SSO members make by participating in that SSO and by submitting written assurances to that effect.

As part of that written assurance, SSO members declare that one or more of its patents are essential to that standard—that is, the patent is required to implement a particular standard. Patent owners have a duty to disclose these patents in good faith and in a timely manner to the SSO and failure to do so is a violation of the SSO's IPR policy. SSOs do not review whether a patent declared standard-essential by a member is actually essential to the standard. Patents that are declared standard-essential are sometimes referred to as "standard essential patents" (SEPs).

### AUTHORITY

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1365–66 (Fed. Cir. 2018).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is argumentative and misleading. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475.

*First,* the purported duties the instruction describes under SDO policies are matters of contract, not law. *See Catzim v. Ollison*, No. CV 05-7169-AHM (OP), 2009 WL 2821424, at *14 (C.D. Cal. Aug. 27, 2009) ("[I]t is still the right of the court *to instruct the jury on the law*, and the duty of the jury to obey the instructions." (emphasis added) (quoting *Sparf v. U.S.*, 156 U.S. 51, 72 (1895))). Thus, this instruction only serves to reiterate the facts of the case to the jury, which is inappropriate. *Sarno*, 73 F.3d at 1485; *E.E.O.C. v. AutoZone, Inc.*, 809 F.3d 916, 923 (7th Cir. 2016) ("Rather than describing each possible inference of the

evidence, the judge may and usually should leave the subject of the interpretation of the evidence to the argument of counsel." (quoting *Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1051 (7th Cir. 2000))); *Noel v. Artson*, 641 F.3d 580, 587 (4th Cir. 2011) ("[G]ood jury instructions . . . let counsel argue factually in terms of a legal standard, rather than having the judge make counsel's particularized arguments for them. . . .  [R]efusal to single out any particular item of evidence is often a sensible approach to evenhandedness in the presentation of the law.").

*Second*, the instruction incorrectly states that "patent owners have a duty to disclose".  This is incorrect with regard to the relevant SDO IPR policies in this case.  For example, the ETSI IPR Policy states that members "shall use [their] reasonable endeavors . . . to inform ETSI of Essential IPRs in a timely fashion".  *See* ETSI Intellectual Property Rights Policy, at 34-35 (available at https://www.etsi.org/website/document/legal/etsi_ipr-policy.pdf).

*Third*, the instruction incorrectly states that companies declare patents as essential, rather than as potentially essential.

*Fourth*, the instruction incorrectly suggests that the IPR Policy is the only relevant contract, which ignores the IPR declarations made by members.

Qualcomm further objects to this instruction because the statement that "[p]atent owners have a duty to disclose these patents in good faith and in a timely manner to the SSO and failure to do so is a violation of the SSO's IPR policy" is not relevant to any claim or defense that the jury may have to decide.  *Nationwide Transport Fin. v. Cass Info. Sys. Inc.*, 523 F.3d 1051, 1063-64 (9th Cir. 2008) ("Nor did the district court err in refusing to give [a party's] proposed jury instructions" because although the "instructions . . . may have been correct statements of the law", the "legal theory was erroneous, [so] the proposed jury instructions were irrelevant."); *Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1234 (Fed. Cir. 2014)*; (*See also* ECF No. 838-1 (Motion in Limine No. 4 to Exclude Evidence of Certain SEP Disclosures).)

To the extent this instruction relates to Apple's defense of "Violation of SSO IPR Policy", Qualcomm objects because Apple did not plead this "defense" in its answer to Qualcomm's counterclaims.  *Quantification Settlement Cases*, 201 Cal. App. 4th 758, 813 (Cal. Ct. App. 2011); *Jorst v. D'Ambrosio Bros. Inv. Co.*, No. C 00-03646 CRB, 2001 WL 969039, at *9 (N.D. Cal. Aug. 13, 2001).  (*See* Countercl.-Def. Apple Inc.'s Answer and Affirmative Defenses, ECF No. 84.)

## APPLE & CMS' PROPOSED INSTRUCTION NO. 9: THIRD PARTY BENEFICIARIES

A third party that is not a party to a contract may be a third-party beneficiary that can obtain the benefit of that contract. To show that he or she is a third-party beneficiary, he or she must prove that the contracting parties intended for the third party to benefit from the contract. It is not necessary that the third party be named on the contract. Instead, you should consider the entire contract and the circumstances under which it was made.

### AUTHORITY

Judicial Council of California Civil Jury Instructions ("CACI") (2019 Edition) No. 301; CACI No. 303.

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is unnecessary. *See Nationwide Transport*, 523 F.3d at 1063-64; *Ericsson*, 773 F.3d at 1234. Qualcomm does not dispute that Apple and the CMs are third-party beneficiaries of Qualcomm's agreements with the Standards Development Organizations.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 10:  INTRODUCTION
## TO CLAIMS AND AFFIRMATIVE DEFENSES

I am now going to explain to you the various claims and affirmative defenses in this case.

### QUALCOMM OBJECTION

No objections.

# <u>ANTITRUST CLAIMS</u>

## APPLE & CMS' PROPOSED INSTRUCTION NO. 11: APPLE'S COUNT LXII; CMS' COUNT I (MONOPOLIZATION – ELEMENTS)

Apple and the CMs bring claims under Section 2 of the Sherman Act.  The CMs allege that they were injured by Qualcomm's unlawful monopolization. Apple contends that it suffers a significant threat of injury due to Qualcomm's unlawful monopolization.

To prevail on their claims under Section 2 of the Sherman Act, Apple and the CMs must prove each of the following elements by a preponderance of the evidence:

**First**, that any of the alleged markets are relevant antitrust markets;

**Second**, that Qualcomm possesses or at relevant times possessed monopoly power in any of these relevant antitrust markets;

**Third**, that Qualcomm "willfully" acquired or maintained its monopoly power in any of these relevant antitrust markets by engaging in anticompetitive conduct; and

**Fourth**, that the CMs were injured in their business or property because of Qualcomm's anticompetitive conduct, and for Apple, that Apple faces a significant threat of injury because of Qualcomm's anticompetitive conduct[2].

If you find that Apple and the CMs have failed to prove any of these elements, then you must find for Qualcomm and against Apple and the CMs on these claims. If you find that Apple and the CMs have proved each of these elements for any of the alleged relevant markets by a preponderance of the evidence, then you must find for Apple and the CMs and against Qualcomm on the Sherman Act Section 2 claims.

---

[2] Apple and the CMs understand Qualcomm is not contesting the element that the conduct affect interstate and foreign commerce, so Apple and the CMs have removed this element.

# AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 102 (2016 Edition); Final Jury Instructions, *Apple v. Samsung*, No. 11-cv-1846 (N.D. Cal. Aug. 21, 2012) (Dkt. No. 1901), Instr. No. 77; *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 130 (1969) (holding that injunctive relief is available where plaintiff demonstrates "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur"); *Killian Pest Control, Inc. v. HomeTeam Pest Def., Inc.*, 2015 WL 13385918, at *3 (N.D. Cal. Dec. 21, 2015) ("That is sufficient to allege HomeTeam possesses or possessed monopoly power in these two markets at the relevant time.").

# QUALCOMM OBJECTION

Qualcomm objects to this instruction Qualcomm objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *see also Stoner v. Count of Riverside*, No. 16-cv-01045 JAK (PLAx), 2018 WL 4354423, at *3 (C.D. Cal. Mar. 26, 2018); Ninth Circuit Manual of Model Jury Instructions (Civil) No. 14. The first element in this instruction should be that "the alleged market is a valid antitrust market".

Furthermore, Qualcomm objects to the references to "relevant times" in this and other instructions because it is never defined for the jury.

Qualcomm also objects to references to Apple's contentions that it faces a "significant threat of injury" because this requires the jury to consider the propriety of injunctive relief, which is for the Court.

Finally, Qualcomm objects to this instruction because it obfuscates that the jury should only consider the same alleged market for each element; in other words, to the extent that Apple and the CMs allege two valid antitrust markets, it should be clear to the jury it cannot find that a Sherman Act § 2 claim has been established as to a particular market unless every element has been established for that market.

**APPLE & CMS' PROPOSED INSTRUCTION NO. 12: APPLE'S COUNT LXII; CMS' COUNTS I-III (PATENTS—RELATION TO ANTITRUST LAWS)[3]**

The basic purpose of the patent and antitrust laws is to promote innovation and industry. In general, the antitrust laws seek to promote innovation and industry by maintaining competitive markets. The antitrust laws prohibit anticompetitive conduct to obtain or preserve monopoly power, restraints on trade that unduly interfere with the competitive process, and mergers and acquisitions that may substantially lessen competition. The patent laws seek to promote innovation and industry by providing an economic incentive for people and firms to invest in scientific research and product development. These investments can lead to new and better products and better ways of making things. In this way, a patent holder's exercise of its right to exclude others from using the patented invention for the duration of the patent can be reconciled with antitrust policy.

Thus, so long as the patent owner acts only to take advantage of the right to exclude created by his or her patent, he or she does not violate the antitrust laws. If, on the other hand, the patent owner seeks to restrain trade beyond the right to exclude conferred by the patent, his or her conduct may be an antitrust violation.

Because patents at issue in this case include patents that Qualcomm has declared as essential to certain standards, it is important to understand how the patent owner's rights are affected by the patent owner's commitments to relevant standard-setting organizations (SSOs). A patent owner's right to exclude others from using a patented invention differs between standard essential patents (or SEPs) and non-standard essential patents (or NEPs). A holder of SEPs is obligated to

---

[3] Apple and CMs do not believe that this instruction should be read to the jury; however, Apple and the CMs propose this instruction as an alternative to Qualcomm's similar proposed instruction, in the event that the Court decides that an instruction along these lines should be given.

license its patents to all willing licensees, including competitors, on fair, reasonable, and nondiscriminatory (FRAND) terms. In this case, Qualcomm has promised standard-setting organizations that it would make its patent licenses available under FRAND terms. Please see Instruction No. 52 (FRAND Commitment) for further information.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 179 (2016 Edition) (modified); Order Granting FTC's Motion for Partial Summary Judgment, *Federal Trade Comm'n v. Qualcomm*, No. 17-CV-00220-LHK (N.D. Cal. Nov. 6, 2018) (Dkt. No. 931); N.D. Cal. Model Patent Jury Instructions (Rev. Aug. 2017, Updated Dec. 2018) at 53 (modified).

*Ericsson, Inc. v. D-Link Sys.*, Inc., 773 F.3d 1201, 1230–32 (Fed. Cir. 2014); *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 WL 5848999, at *10–*11, *15 (N.D. Cal. Nov. 6, 2018) ("as a matter of law, the TIA and ATIS IPR policies both require Qualcomm to license its SEPs to modem chip suppliers"); *Zenith Electronics, LLC v. Sceptre, Inc.,* No. 14-cv-5150, ECF 89 at 3 (C.D. Cal. Feb. 5, 2015) (Minute Order) (Movant "has not admitted that it practices the patents-in-suit or that they are in fact essential to the [] Standard" so "any determination of a FRAND rate, even as to only the [] patents-in-suit, could be entirely academic."); *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, No. 6:12-CV-100-JRG, 2015 WL 4775973, at *2 (E.D. Tex. Aug. 11, 2015); *InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 1:13-CV-00009-RGA, 2014 WL 2206218, at *3 (D. Del. May 28, 2014); *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1007 (N.D. Cal. 2013) ("[A party] can simultaneously pursue a determination of the RAND royalty rate while denying infringement or asserting invalidity, even though those issues may ultimately obviate the need for a license."); *see also Huawei Techs v. Samsung Elecs.*, No. 16-cv-02787, ECF 85 (N.D. Cal.); *Fujitsu*

*Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) ("[C]laims should be compared to the accused product to determine infringement."); *id.* at 1328 ("Only in the situation where a patent covers every possible implementation of a standard will it be enough to prove infringement by showing standard compliance.").

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *see also Stoner*, 2018 WL 4354423, at *3; Ninth Circuit Manual of Model Jury Instructions (Civil) No. 14. The last paragraph, beginning with "Because patents at issue in this case include patents that Qualcomm has declared as essential to certain standards", does not appear in the model instruction, and misleadingly suggests that all of the patents that are subject to the licenses at issue in this case are SEPs, which is incorrect.

Qualcomm further objects to this instruction because it includes the following sentence that is the subject of Qualcomm's Rule 44.1 motion: "A holder of SEPs is obligated to license its patents to all willing licensees, including competitors, on fair, reasonable, and nondiscriminatory (FRAND) terms". (*See* ECF No. 876 at 10-11.) As explained in Qualcomm's Rule 44.1 brief, *see id.*, and the Joint Pretrial Brief Identifying Disputed Contract Provisions, *see* ECF No. 881, the instruction is incorrect.

Finally, Qualcomm objects to this instruction because it is misleading. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. The instruction states: "Qualcomm has promised standard setting organizations that it would make its patent licenses available under FRAND terms." This is incorrect. Qualcomm committed that it was prepared *to grant* irrevocable licenses on fair, reasonable and non-discriminatory terms". (*See* ETSI Intellectual Property Rights Policy, at 34-35 (available at https://www.etsi.org/website/document/legal/etsi_ipr-policy.pdf) (emphasis added).)

# APPLE & CMS' PROPOSED INSTRUCTION NO. 13: APPLE'S COUNT LXII; CMS' COUNT I (MONOPOLIZATION – EXISTENCE OF MONOPOLY POWER—DEFINED)

To prove their monopolization claim, Apple and the CMs must prove that Qualcomm has monopoly power in a relevant antitrust market. Monopoly power is the power to control prices or exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise or maintain prices substantially above the competitive level for a significant period of time.  However, possession of monopoly power, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether Apple and the CMs have met their burden of proving monopoly power in a relevant market.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 104 (2016 Edition) (modified); *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("Monopoly power is 'the power to control prices or exclude competition.'") (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966) (quoting *United States v. E.I. DuPont de Nemours & Co.*, 351 U.S. 377, 391 (1956))).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *see also Stoner*, 2018 WL 4354423, at *3; Ninth Circuit Manual of Model Jury Instructions (Civil) No. 14.  The model defines monopoly power as the power to "control prices and exclude competition" but Apple's instruction defines it as the power to "control prices *or* exclude competition".  Although some courts describe monopoly power in the disjunctive ("control prices *or* exclude competition"), the model instruction reflects the fact that the disjunctive is not correct.  *See* Areeda & Hovenkamp, Antitrust Law ¶ 501 (4th ed. 2018) ("For antitrust purposes, therefore, market power is the abilities (1) to price substantially above the competitive level *and* (2) to persist in doing so for a significant period without erosion by new entry or

expansion.  This is the meaning—though not the literal wording—of a standard legal formula.  Courts often define market power as the ability (1) to control prices *or* (2) to 'exclude competition.'") (emphasis in original).  Because higher prices typically encourage entry into the market, monopoly power requires the ability to raise prices to supracompetitive levels *and* to exclude entry into that market.  *See United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 392 (1956) ("Price and competition are so intimately entwined that any discussion of theory must treat them as one.  It is inconceivable that price could be controlled without power over competition or vice versa."); *MetroNet Servs. Corp. v. U.S. W. Commc'ns*, 329 F.3d 986, 1006 (9th Cir. 2003) ("key question" in whether defendant has monopoly power "is whether existing competitors and immediate potential entrants have sufficient capacity to take business away from the incumbent monopolist and thereby constrain the incumbent's ability to raise prices above competitive levels"); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1441 (9th Cir. 1995) ("The ability to control output and prices—the essence of market power—depends largely on the ability of existing firms to quickly increase their own output in response to a contraction by the defendant.").  Accordingly, the conjunctive language from the model instruction most accurately describes monopoly power.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 14: APPLE'S COUNT LXII; CMS' COUNT I (MONOPOLIZATION – RELEVANT MARKET– GENERAL)

Apple and the CMs must prove by a preponderance of the evidence that Qualcomm possesses or at relevant times possessed monopoly power in one or more relevant markets. Defining the relevant market is essential because you are required to make a judgment about whether Qualcomm has monopoly power in a properly defined economic market.  To make this judgment, you must be able to determine what, if any, economic forces restrain Qualcomm's freedom to set prices.

The most likely and most important restraining force will be actual and potential competition from other firms and their products. This includes all firms and products that act or likely could act as restraints on Qualcomm's power to set prices as it pleases because customers could switch to them if Qualcomm sets its own prices too high. All the firms and products that exert such restraining force are within what is called the relevant market.

Apple and the CMs assert that there are two different relevant markets- CDMA chipsets and premium LTE chipsets. You should make an independent determination as to whether each of these markets is a relevant antitrust market. You may find that Qualcomm has or at relevant times had monopoly power in both of these markets, one of these markets, or none of these markets.

In determining whether Apple and the CMs have met their burden of proving the relevant markets, you must consider whether they have proven a relevant product market.[4]

---

[4] Qualcomm is not contesting the element of geographic market, Accordingly, Apple and the CMs have removed references to geographic markets.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 106 (2016 Edition); Final Jury Instructions, *Apple v. Samsung*, No. 11-cv-1846 (N.D. Cal. Aug. 21, 2012) (Dkt. No. 1901), Instr. No. 78; *Killian Pest Control, Inc. v. HomeTeam Pest Def., Inc.*, 2015 WL 13385918, at *3 (N.D. Cal. Dec. 21, 2015) ("That is sufficient to allege HomeTeam possesses or possessed monopoly power in these two markets at the relevant time.").

## QUALCOMM OBJECTION

Qualcomm objects to the references to "relevant times" in this and other instructions because it is never defined for the jury.

Qualcomm further objects to Apple and the CMs' collective instructions regarding the relevant product market because they are incomplete. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. Apple and the CMs omit the "Relevant Product Market—Supply Substitutability" instruction that is contained in the ABA Model. *See* ABA Model at 112. The Supply Suitability instruction explains which products may be considered in a relevant market based on "the cross-elasticity of supply. *Id.* Qualcomm's Proposed Instruction No. 50 ("Relevant Product Market—Supply Substitutability") provides the required instruction.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 15: APPLE'S COUNT LXII; CMS' COUNT I (MONOPOLIZATION – RELEVANT PRODUCT MARKET)

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.

Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers—to be reasonable alternatives, then all those products may be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers switching from that product to another product such that the price increase would not be profitable.  In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn? Generally speaking, a small but significant and non-transitory increase in price is approximately a 5 percent increase in price not due to cost factors.  If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market. If, on the other hand, you find that customers would not switch, then you must conclude that the products are not in the product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:

- consumers' views on whether the products are interchangeable;
- the relationship between the price of one product and sales of another;
- the presence or absence of specialized vendors;
- the perceptions of either the industry or the public as to whether the products are in separate markets;
- the views of Apple, the CMs, and Qualcomm regarding who Qualcomm's competitors are; and
- the existence or absence of different customer groups or distribution channels.

If you find that Apple and the CMs have proven a relevant product market, then you should continue to evaluate the remainder of Apple and the CMs' claims. However, if you find that Apple and the CMs have failed to prove such a market, then you must find in Qualcomm's favor on Apple and the CMs' claims under Section 2 of the Sherman Act.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 108 (2016 Edition); Final Jury Instructions, *Apple v. Samsung*, No. 11-cv-1846 (N.D. Cal. Aug. 21, 2012) (Dkt. No. 1901), Instr. No. 78; *Killian Pest Control, Inc. v. HomeTeam Pest Def., Inc.*, 2015 WL 13385918, at \*3 (N.D. Cal. Dec. 21, 2015) ("That is sufficient to allege HomeTeam possesses or possessed monopoly power in these two markets at the relevant time.").

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *see also Stoner*, 2018 WL 4354423, at \*3; Ninth Circuit Manual of Model Jury Instructions (Civil) No. 14. The instruction improperly removes an entire paragraph

from the model language.  Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction 49 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 16: APPLE'S COUNT LXII; CMS' COUNT I (MONOPOLIZATION – EXISTENCE OF MONOPOLY POWER—TYPES OF PROOF

If you find that Apple and the CMs have proven a relevant market, then you should determine whether Qualcomm has monopoly power in that market. You must consider the monopolization claims separately with respect to the two relevant markets alleged here: (i) CDMA chipsets and (ii) premium LTE chipsets. You may find that Qualcomm has monopolized both markets, one of the markets, or neither of the markets.

As I instructed you earlier, monopoly power is the power to control prices or exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise or maintain prices substantially above the competitive level for a significant period of time.

You can consider two kinds of proof to determine whether Qualcomm has monopoly power: (1) direct proof and (2) indirect proof.  In the following instructions, I will explain to you these two kinds of proof that you can consider.

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *see also Stoner*, 2018 WL 4354423, at *3; Ninth Circuit Manual of Model Jury Instructions (Civil) No. 14.  While this instruction does not cite a model instruction as authority, the second paragraph refers back to and takes language from a previous instruction that deviated from the models.  *See* Apple's Proposed Instruction No. 13 ("Monopolization—Existence Of Monopoly Power—Defined").  For the reasons set forth in Qualcomm's objection to Apple's Proposed Instruction No. 13, the deviation from the model is unwarranted.

Qualcomm requests that the Court give Qualcomm's Proposed Closing Instructions Nos. 51-52 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 17: APPLE'S COUNT LXII; CMS' COUNT I (MONOPOLIZATION – EXISTENCE OF MONOPOLY POWER—DIRECT PROOF)

There are two ways to provide direct proof of monopoly power, which I explain below.

### Raising or Maintaining Prices Above Competitive Levels

In order to provide direct proof of monopoly power, Apple and the CMs have the burden of proving that Qualcomm has or had the ability to raise or maintain the prices that it charges for goods or services in the relevant market during the relevant period above competitive levels.  Apple and the CMs must prove that Qualcomm has or had the power to do so by itself—that is, without the assistance of, and despite competition from, any existing or potential competitors.

Apple and the CMs have the burden of proving that Qualcomm has, or had, the power to maintain prices above a competitive level for a significant period of time. If Qualcomm attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then Qualcomm does not have monopoly power.

### Power to Exclude Competition

In the alternative, Apple and the CMs must prove that Qualcomm has or had the ability to exclude competition.  For example, if Qualcomm attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then Qualcomm does not have monopoly power. The ability to earn high profit margins or a high rate of return does not necessarily mean that Qualcomm has monopoly power.  Other factors may enable a company without monopoly power to

sell at higher prices or earn higher profit margins than its competitors, such as superior products or services, low costs, or superior advertising or marketing. However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that Qualcomm would lose a substantial amount of sales if it raised prices substantially above the competitive level, or that Qualcomm's profit margins were low compared to its competitors, or that Qualcomm's margins go up and down or are steadily decreasing, might be evidence that Qualcomm does not have, or did not have, monopoly power.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 121-22 (2016 Edition) (modified); Final Jury Instructions, *Apple v. Samsung*, No. 11-cv-1846 (N.D. Cal. Aug. 21, 2012) (Dkt. No. 1901), Instr. No. 79; *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("Monopoly power is 'the power to control prices or exclude competition.'") (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 571, (1966) (quoting *United States v. E.I. DuPont de Nemours & Co.*, 351 U.S. 377, 391 (1956))).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *see also Stoner*, 2018 WL 4354423, at *3; Ninth Circuit Manual of Model Jury Instructions (Civil) No. 14. *First*, the instruction omits prefatory language from the ABA model that would help avoid juror confusion about how the instructions relate to each other. *See Fernandez-Ruiz*, 251 F. App'x at 480. *Second*, the instruction omits language from the model that tells the jury not to consider the other elements if it finds that Qualcomm did not have market power in any relevant market. This language from the model instructions would help the jury understand how to proceed depending on its determination with respect to monopoly power. *See Fernandez-Ruiz*, 251 F. App'x at 480. *Third*, by including "In the alternative" before the burden to prove exclusion of competition, the instruction improperly alters the definition of monopoly from the power to "control prices and exclude

competition" to the power to "control prices *or* exclude competition".  For the reasons set forth.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 18: APPLE'S COUNT LXII; CMS' COUNT I (MONOPOLIZATION – EXISTENCE OF MONOPOLY POWER—INDIRECT PROOF)

Below I explain the types of indirect proof you may consider to determine whether Qualcomm has monopoly power.

Apple and the CMs have introduced evidence of the structure of the market to show that Qualcomm possesses or at relevant times possessed monopoly power. The evidence presented by the parties includes evidence of Qualcomm's market share, barriers to entry, entry and exit by other companies, and the number and size of competitors. These factors should inform you as to whether Qualcomm has or had monopoly power. If this evidence establishes that Qualcomm has or had the power to control prices or exclude competition in the relevant antitrust market, then you may conclude that Qualcomm has or had monopoly power in the market.

**Market Share**

The first factor that you should consider is Qualcomm's share of the relevant markets. The defendant must have a significant share of the market in order to possess monopoly power.

A market share above 65 percent may be sufficient to support an inference that a defendant has monopoly power, but in considering whether a party has or had monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with a party's market share, these factors should inform you as to whether the party has monopoly power. The higher the company's share, the higher the likelihood that a company has or had monopoly power.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has or had monopoly power. However, if you find that

the other evidence demonstrates that party does or did, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that Qualcomm has or had monopoly power.

**Barriers to Entry**

You may also consider whether there are or were barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include, among other things, intellectual property rights (such as patents or trade secrets), specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products). Evidence of low or no entry barriers may be evidence that defendant does not have monopoly power, regardless of the party's market share, because new competitors could enter easily if the defendant attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that party has monopoly power.

**Entry and Exit By Other Companies**

The history of entry and exit in the relevant market may be helpful to consider.  Entry of new competitors or expansion of existing competitors may be evidence that a firm lacks or lacked monopoly power.  On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit margins are relatively high, may support an inference that a firm has or had monopoly power.

**Number and Size of Competitors**

You may consider whether Qualcomm's competitors are or were capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors act or acted as a check on the defendant's ability to price its products. If Qualcomm's competitors are (or were)

vigorous or have (or had) large or increasing market shares, this may be evidence that Qualcomm lacks or lacked monopoly power. On the other hand, if you determine that Qualcomm's competitors are (or were) weak or have (or had) small or declining market shares, this may support an inference that Qualcomm has or had monopoly power.

## Conclusion

If you find that Qualcomm has or at relevant times had monopoly power in the relevant market, then you must consider the remaining elements of Apple and the CMs' monopolization claim. If you find that Qualcomm does not and did not have monopoly power, then you must find for Qualcomm and against Apple and the CMs on this claim.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 115-16 (2016) (modified); Final Jury Instructions, *Apple v. Samsung*, No. 11-cv-1846 (N.D. Cal. Aug. 21, 2012) (Dkt. No. 1901), Instr. No. 79; *Image Tech. Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("Monopoly power is 'the power to control prices or exclude competition'" )(quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 571, (1966) (quoting *United States v. E.I. DuPont de Nemours & Co.*, 351 U.S. 377, 391 (1956))).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *see also Stoner*, 2018 WL 4354423, at *3; Ninth Circuit Manual of Model Jury Instructions (Civil) No. 14.

*First*, the instruction omits the following language from the model: "If you find that plaintiff has proven a relevant market, then you should determine whether defendant has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market." These two sentences assist the jury in understanding how this instruction relates to others they have heard. There is no reason to make this deviation from the model and, given the complexity of the issues, these introductory

sentences would reduce the risk of confusion. *See Fernandez-Ruiz*, 251 F. App'x at 480.

*Second*, in the first paragraph, the instruction eliminates "market share trends" as a factor to be considered in determining whether Qualcomm has monopoly power. Similarly, the instruction omits the paragraph under the "Market Share Trends" heading in the model. Qualcomm objects to these omissions, because the resulting instruction is incomplete and misleading. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. Declining market shares are a relevant factor in determining whether a party has monopoly power, *Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360, 366 (9th Cir. 1988), and there is no reason why the jury should not be so instructed.

*Third*, under the "Market Share" heading, the instruction omits the following language: "Based on the evidence that you have heard about defendant's market share, you should determine defendant's market share as a percentage of total sales in the relevant market [or shipments, production, capacity, reserves, or other relevant measures of market share]. The defendant must have a significant share of the market in order to possess monopoly power." In its place, the instruction states: "A market share above 65 percent may be sufficient to support an inference that a defendant has monopoly power". Apple and the CMs also stated that the likelihood of monopoly power "is stronger the higher that company's share is above 65 percent". Qualcomm objects to these deviations from the model because they are misleading statements of the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. The instruction may lead the jury to presume that a market share at or above 65% mandates a finding of monopoly power even though establishing monopoly power requires more than a showing of market share. *See Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1208 (9th Cir. 1997) ("A § 2 plaintiff, establishing monopoly power by circumstantial evidence, must establish more than just market share."); *see also Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 n.10 (9th Cir. 1995) ("We are reluctant to apply such bright-line rules regarding market share in deciding whether a defendant has market power to restrict output or raise prices"). Apple's proposed modification thus unfairly (and inaccurately) emphasizes the importance of market share. *See Vanskike*, 665 F.2d at 201-02.

*Fourth*, the model defines monopoly power as the power to "control prices and exclude competition" but this instruction defines it as the power to "control prices *or* exclude competition". For the reasons set forth in Qualcomm's objection to Apple's Proposed Instruction No. 13, this is incorrect.

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 51 with respect to this issue.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 19: APPLE'S COUNT LXII; CMS' COUNT I (MONOPOLIZATION – WILLFUL ACQUISITION OR MAINTENANCE OF MONOPOLY POWER THROUGH ANTICOMPETITIVE ACTS)

The next element Apple and the CMs must prove is that Qualcomm willfully acquired or maintained monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, which have the effect of preventing or excluding competition or frustrating the efforts of other companies for customers within the relevant market.

Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. Some examples of harm to competition include increased prices, decreased production levels, and reduced quality.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. The acquisition or maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, is not unlawful.

A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Qualcomm's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

The acts or practices that result in the acquisition or maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason. You may not find that a company willfully acquired or maintained monopoly power through anticompetitive means if it has acquired or maintained that power solely through the exercise of superior foresight and skill; or because of natural advantages such as unique geographic access to raw materials or markets; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent or patents; or because changes in cost or consumer preference have driven out all but one supplier; or because the market is so limited that it is impossible to efficiently produce the product except by a plant large enough to supply the whole demand.

If you find that Apple and the CMs have proven by a preponderance of the evidence that Qualcomm willfully acquired or maintained monopoly power through anticompetitive acts, then you must consider whether Apple and the CMs have proved the remaining elements of these claims. If, however, you find that Apple and the CMs did not prove this element by a preponderance of the evidence, then you must find for Qualcomm against Apple and the CMs on these claims.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 123-24 (2016); Final Jury Instructions, *Apple v. Samsung*, No. 11-cv-1846 (N.D. Cal. Aug. 21, 2012) (Dkt. No. 1901), Instr. No. 80.

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions and misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *see also Stoner*, 2018 WL 4354423, at *3; Ninth Circuit Manual of Model Jury Instructions (Civil) No. 14. The instruction omits the final five paragraphs of the ABA Model, which illustrate with practical examples what conduct is and is not anticompetitive. For example, the omitted language addresses lawful reasons why a company may obtain monopoly power—such as "technological efficiency, including efficiency resulting from scientific research" or "obtaining a lawful patent". These examples would assist the jury by putting complex and abstract concepts in practical and easier to understand terms and should be provided to the jury.

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 53 with respect to this issue

**APPLE & CMS' PROPOSED INSTRUCTION NO. 20: CMS' COUNTS II-III (SECTION 1 AND CARTWRIGHT ACT – RESTRAINT OF TRADE)**

In addition to the antitrust violations alleged by Apple and the CMs under Section 2 of the Sherman Act, the CMs also separately challenge Qualcomm's conduct under Section 1 of the Sherman Act and a California state statute called the Cartwright Act. Section 1 of the Sherman Act and the Cartwright Act prohibit contracts that unreasonably restrain trade. To establish a violation of Section 1 of the Sherman Act and the Cartwright Act, the CMs must prove the following by a preponderance of the evidence:

**First**, the existence of a contract between or among at least two separate entities;

**Second**, that the contract unreasonably restrains trade; and

**Third**, that the restraint caused the CMs to suffer an injury to their business or property.

### AUTHORITY

ABA Antitrust Model Jury Instructions in Civil Antitrust Cases, Instr. B-2 (2016 Edition); 15 U.S.C. §§ 1, 15 (modified); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 369 (2001); *Roth v. Rhodes*, 25 Cal. App. 4th 530, 543 (1994).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction as argumentative because it states that the CMs "separately challenge Qualcomm's conduct". *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475. The instruction should neutrally state that the CMs allege claims under Section 1 of the Sherman Act.

Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 37 with respect to this issue

## APPLE & CMS' PROPOSED INSTRUCTION NO. 21: CMS' COUNTS II-III

## (INTRODUCTION TO TYING)

A tying arrangement is one in which the seller will sell one product (referred to as the tying product) only on the condition that buyers also purchase a different product (referred to as the tied product).

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 84 (2016 Edition).

### QUALCOMM OBJECTION

Qualcomm objects to the first sentence of this instruction because it improperly emphasizes the CMs' allegations.  *See Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802.  The sentence should reflect that the tying arrangement is allegedly unlawful.

Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 37 with respect to this issue.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 22: CMS' COUNTS II-III

## (RATIONALE FOR PROHIBITION OF TYING ARRANGEMENTS)

Not all tying arrangements are unlawful.  The essential characteristic of an invalid tying arrangement is a seller's exploitation of its market power over the tying product to force buyers to purchase the tied product that buyers did not want at all or might have preferred to purchase elsewhere.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 85 (2016 Edition).

### QUALCOMM OBJECTION

Qualcomm objects to the first sentence of this instruction because it improperly emphasizes the CMs' allegations.  *See Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802.  The sentence should reflect that the CMs allege an unlawful tying arrangement.

Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 38 with respect to this issue.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 23: CMS' COUNTS II-III
## (PER SE UNLAWFUL TYING – ELEMENTS)

To establish a per se tying violation, the CMs must prove each of the following five elements by a preponderance of the evidence:

First, the alleged tying products and the alleged tied products are separate and distinct products;

Second, there was a contract or agreement in which Qualcomm agreed to sell the tying product only on the condition that the buyer also purchase the tied product.

Third, Qualcomm had sufficient economic power or significant market leverage with respect to the tying product to restrain free competition for the tied product.

Fourth, the alleged tying arrangement foreclosed a "substantial volume of commerce." In deciding this question, you must look to the total dollar volume of sales by Qualcomm to the CMs of the products, if any, that you find to have been tied to the tying products.

Fifth, the CMs were injured in their business or property as a proximate result of Qualcomm's making an illegal "tying" agreement. The injuries must have been a direct and natural consequence of the illegal "tying" arrangement.

If you find the CMs have established each of these five elements of their antitrust claim, your verdict must be for the CMs. If you find that the evidence is insufficient to prove any one of these elements, then you must find for Qualcomm and against the CMs on the CMs' tying claim under Section 1 of the Sherman Act, and Section 16720 of the Cartwright Act. However, you may still find in favor of the CMs on their tying claims under Section 16727 of the Cartwright Act if you find that the CMs have met the requirements of Section 16727 of the Cartwright Act.

## AUTHORITY

Kevin F. O'Malley et al., 3A Federal Jury Practice and Instructions Civil § 150:23 (6th ed. 2012) (modified); *Chavez v. Whirlpool Corp*. 93 Cal.App.4th 363, 369 (2001); *Roth v. Rhodes,* 25 Cal.App.4th 530, 543 (1994); *Suburban Mobile Homes v. AMFAC Communities*, 101 Cal. App. 3d 532, 549 (1980); *Morrison v. Viacom, Inc*., 52 Cal. App. 4th 1514, 1524 (1997).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because the *per se* mode of analysis is inapplicable to the CMs' Section 1 tying claim. "The selection of the proper mode of antitrust analysis is a question of law . . . .". *Harris v. Safeway, Inc.*, 651 F.3d 1118, 1124 (9th Cir. 2011); *see also In re ATM Fee Antitrust Litig.*, 554 F. Supp. 2d 1003, 1010 (N.D. Cal. 2008) ("[T]he decision of what mode of analysis to apply— per se, rule of reason, or otherwise—is entirely a question of law for the Court, even though the question might include factual disputes."). The rule of reason is the default mode of analysis under Section 1. *See, e.g.*, *Leegin*, 551 U.S. at 888 ("[A] departure from the rule-of-reason standards must be based on demonstrable economic effect rather than upon formalistic line drawing."); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012) ("We generally evaluate whether a practice unreasonably restrains trade in violation of Section 1 under the 'rule of reason'.").

Qualcomm further objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *Stoner*, 2018 WL 4354423, at *3; Ninth Circuit Manual Model Civil Jury Instructions No. 14. The instruction omits the phrase "in the market for" between "free competition" and "for licenses to Qualcomm's 3G and 4G cellular SEPs", obscuring the CMs' burden of proving the existence of an actual market for the alleged tied product. Absent a market—other sellers of the alleged tied product—Qualcomm could not have restrained free competition with respect to the alleged tied product. *See Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1090 (9th Cir. 2009).

Qualcomm further objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. *First*, the description of the fourth element is incomplete because it omits the requirement that the CMs show that the alleged tying arrangement had a substantial adverse effect on *competition* in the market for the alleged tied product. The Ninth Circuit explained: "Thus, the inquiry is 'whether a total amount of business, substantial enough in terms of dollar-volume so as not to be merely *de minimis*, is foreclosed to *competitors* by the tie'". *Blough*, 574 F.3d at 1089 (quoting *Fortner Enters., Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 501 (1969) (emphasis added)); *see also, e.g.*, *Spindler v. Johnson & Johnson Corp.*, No. C 10-01414 JSW, 2011 WL 13278876, at *4 (N.D. Cal. Jan. 21, 2011) (citations omitted) (internal quotation marks omitted) ("substantial volume of commerce" element requires showing of "pernicious effect on competition"). Accordingly, the ABA Model states in pertinent part: "If the dollar amount of defendant's sales of [the tied product] was substantial, you should next consider whether there has been a substantial adverse effect on competition with respect to [the tied product] due to the tying arrangement. If there was not a substantial adverse effect on competition due to [the tied product] due to the tying arrangement, then you must find in favor of defendant on the tying claim. There is

no substantial foreclosure if only a small percentage of sales in the market for [the tied product] were affected due to the tying arrangement." ABA Model Jury Instructions in Civil Antitrust Cases at 97 (2016 Edition). Qualcomm's Proposed Instruction No. 43 reflects this requirement.

*Second*, the instruction misstates the law by failing to instruct the jury that a patent on the tying product does not support a presumption that Qualcomm has market power in the tying product. *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 31 (2006) ("Congress, the antitrust enforcement agencies, and most economists have all reached the conclusion that a patent does not necessarily confer market power upon the patentee. Today, we reach the same conclusion, and therefore hold that, in all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product.").. Without this instruction, the jury might improperly infer that Qualcomm's patents, and therefore its ability to exclude sale of products that use its patented technologies, supports a finding that Qualcomm has market power in the chipset markets alleged by the CMs.

Qualcomm further objects to the instruction because it states that the jury may find for the CMs on their tying claim under the Cartwright Act even if it finds for Qualcomm under Section 1. The Court should not apply the *per se* mode of analysis to the tying claim under the Cartwright Act for the same reasons the *per se* mode is inappropriate under Section 1. *See Cty. of Tuolumne*, 236 F.3d at 1160. Moreover, the CMs recognize that the elements of a non-*per se* claim under Sherman Act Section 1 and the Cartwright Act are the same. (*See* Apple's Proposed Instruction 33.).

# APPLE & CMS' PROPOSED INSTRUCTION NO. 24:  CMS' COUNTS II-III (TYING – PRESENCE OF TWO PRODUCTS)

To determine whether the alleged tying products and the alleged tied products are separate and distinct products, you should consider whether there would be demand for each of them if they were offered separately.  If enough customers would want to purchase the tying products alone and the tied products alone, then the tying products and the tied product are separate products.  On the other hand, if there is very little demand for one of the products by itself, that is, without the other product, then the tying products and the tied products are not two separate products for the purposes of the tying claim, even if they are sometimes sold separately.

Products may be separate products even if one of them is useless without the other.  The relevant issue is whether there is sufficient demand from customers to induce sellers to provide them separately, even if the customer needs to obtain both products from one or more suppliers.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 90 (2016 Edition) (modified).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction, which should consistently include the word "alleged" before referencing the tied and tying products, as in the first sentence.

Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 40 with respect to this issue.

**EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS
WITH OBJECTIONS**                    -55-                    **CASE NO. 3:17-CV-0108-GPC-MDD**

# APPLE & CMS' PROPOSED INSTRUCTION NO. 25: CMS' COUNTS II-III (CONTRACT – DEFINITION, EXISTENCE, AND EVIDENCE)

To show a contract, the CMs must prove both of the following elements by a preponderance of the evidence:

1.      that an alleged contract existed; and

2.      that Qualcomm knowingly became a party to that contract.  To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

The basis of a contract is an agreement or understanding between two or more persons.  Direct evidence of an agreement may not be available, and therefore an agreement also may be shown through circumstantial evidence. You may infer the existence of an agreement from the circumstances, including what you find the persons actually did and the words they used.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

You may find that a contract between a buyer and seller satisfies the "contract, combination, or conspiracy" requirement of Section 1 where the seller coerces a buyer's acquiescence in a tying arrangement imposed by the seller.

You do not need to find that the contract(s) intended to control prices or destroy competition.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 13 (2016 Edition) (modified); *Datagate, Inc. v. Hewlett-Packard Co*., 60 F.3d 1421, 1426-27 (9th Cir. 1995); *Toscano v. PGA Tour, Inc*., 70 F. Supp. 2d 1109, 1115 n.6 (E.D. Cal. 1999); *Systemcare, Inc. v. Wang Laboratories Corp*., 117 F.3d 1137, 1145 (10th Cir., 1997) (citing *Datagate, Inc. v. Hewlett-Packard Co*., 60 F.3d 1421, 1426-27 (9th Cir.

1995); *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1153-54 (9th Cir. 2003).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *Stoner*, 2018 WL 4354423, at *3; Ninth Circuit Manual Model Civil Jury Instructions No. 14. This instruction should explain an essential element of Sherman Act Section 1 claims—the existence of a contract, combination, or conspiracy between or among at least two separate entities. However, this instruction does not adequately instruct the jury how to determine whether or not this element is satisfied, and instead instructs the jury that it *may* find one specific type of contract—a tying arrangement imposed by the seller—satisfies the element. Not all contracts satisfy the first element of a Sherman Act Section 1 claim. *Toscano v. Prof'l Golfers Ass'n*, 258 F.3d 978, 984 (9th Cir. 2001). Therefore, Qualcomm requests that its instruction on the existence of contracts under Sherman Act Section 1, based on the model instruction, be used. Qualcomm's Proposed Instruction No. 36 ("Contract—Definition, Existence, and Evidence").

## APPLE & CMS' PROPOSED INSTRUCTION NO. 26:  CMS' COUNTS II-III
## (TYING – PROOF OF CONDITIONING)

You may find that a tie exists between the alleged tying products and the alleged tied product if Qualcomm either refused to sell the alleged tying products unless purchasers also agreed to buy the alleged tied product or effectively coerced purchasers into buying the alleged tied product in addition to the alleged tying products.  To prove coercion, the CMs must prove by a preponderance of the evidence that Qualcomm exploited its control over the alleged tying products to force the buyer into the purchase of the alleged tied product, which the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms, and that any appearance of choice was illusory.

An express refusal to sell the tying product without the tied product constitutes coercion.  On the other hand, mere sales pressure or persuasion is not coercion, and mere ownership of patents is not coercion.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 93 (2016 Edition); *Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc*., 268 F. Supp. 3d 1071, 1085 (C.D. Cal. 2017) (citing *Datagate, Inc. v. Hewlett-Packard Co*., 60 F.3d 1421, 1426 (9th Cir. 1995).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *Stoner*, 2018 WL 4354423, at *3; Ninth Circuit Manual Model Civil Jury Instructions No. 14.  This instruction includes an additional sentence: "An express refusal to sell the tying product without the tied product constitutes coercion".  This deviation from the model instruction is an inaccurate statement of the law.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  "Not all tying arrangements are illegal.  Rather, ties are prohibited where a seller 'exploits,' 'controls,' 'forces,' or 'coerces' a buyer of a tying product into purchasing a tied product." *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 971 (9th Cir. 2008).  In addition, a plaintiff must show foreclosure of a substantial volume of

commerce in the tied product. *Blough*, 574 F.3d at 1089. Therefore, this instruction incorrectly implies that any express refusal to sell a tying product without the tied product is illegal. This is incorrect. *Rick-Mik Enters, Inc.*, 532 F.3d at 971. An express refusal to sell the tying product without the tied product, in the absence of market power in the tying product or substantial foreclosure of commerce in the tied product, would not constitute an unlawful tying arrangement. *See Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006) (holding that "the plaintiff must prove that the defendant has market power in the tying product"); *Blough*, 574 F.3d at 1089. Qualcomm requests that this sentence be stricken from the instruction.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 27: CMS' COUNTS II-III (TYING – EXISTENCE OF MARKET POWER WITH RESPECT TO THE TYING PRODUCT)

You may find that Qualcomm has (or had) market power with respect to the tying products if, by reason of some advantage, Qualcomm has (or had) the power to raise its prices for the tying products without losing an appreciable amount of its business or otherwise to force a purchaser of the tying products to do something that the purchaser would not do in a more competitive market.

Allegations of unlawful tying that assert a patent or patented product is the tying product are evaluated in the same way as other alleged tying arrangements. With respect to the third element of a tying claim, market power with respect to the alleged tying products, the mere fact that the tying products are patented does not support a presumption that Qualcomm has market power with respect to the alleged tying products. The potential for market power in the tying product markets is to be assessed in the same manner as in other tying claims.

The CMs may prove power over price with respect to the tying products by establishing that the price of the tied package is higher than the price of components sold in competitive markets.

In the alternative, you may determine whether Qualcomm has (or had) market power with respect to the tying products by considering whether Qualcomm has (or had) a high share of that market for the tying products such that purchasers do not have alternative sources of the tying products or a reasonably interchangeable substitute readily available. If Qualcomm's market share of the market for the tying products is below 30 percent, Qualcomm does not have market power. But if Qualcomm's market share of the market for the tying products is above 30 percent, you may consider that in determining whether Qualcomm has market power. Whether a high market share is an indicator of Qualcomm's power to raise prices

without loss of appreciable business is a function of numerous market conditions, including the uniqueness of the product, the ability of existing competitors to expand production, and the ease (or difficulty) with which new competitors can enter the market and make a price increase unprofitable. If you find that purchasers of the tying products do not have readily available alternative sources of supply and are forced as a practical matter to buy the tying products, you may find that Qualcomm has (or had) market power. You may also consider in your market power determination the presence of any unique features or costs associated with the tying products that effectively prevent others from offering a comparable product.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases, Instr. E-94 (2016 Edition).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction, which should include the word "alleged" before referencing the tied and tying products.

Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 42 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 28: CMS' COUNTS II-III
## (TYING – BUSINESS JUSTIFICATION DEFENSE)

If you find that the CMs have proven all of the elements of a tying claim, then you should consider whether Qualcomm has proven, by a preponderance of the evidence, a business justification for the tying arrangement. Qualcomm has the burden of proof on this issue.

In determining whether the tying arrangement is justified, you must decide whether it serves a legitimate business purpose of Qualcomm. In making this determination, you should consider whether the justification Qualcomm offers is the real reason that it imposed the tying arrangement.

You must also consider whether Qualcomm's claimed objective could reasonably have been realized through less restrictive means. Even if some type of constraint is necessary to promote a legitimate business interest, Qualcomm must not adopt a constraint that is more restrictive than reasonably necessary to achieve that interest.

In determining whether Qualcomm's objective could reasonably have been achieved through other means, you may assess such factors as whether other means to achieve Qualcomm's objective were more or less expensive and more or less effective than the means chosen by Qualcomm.

If you find that Qualcomm could reasonably have achieved its legitimate business purpose by less restrictive means, then you may find that there was no business justification and find for the CMs on the tying claim. If you find that the tying arrangement serves a legitimate business purpose of Qualcomm, and that there are not less restrictive means reasonably available to achieve that purpose, then you must find for Qualcomm and against the CMs on the tying claim.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 99 (2016 Edition).

**QUALCOMM OBJECTION**

Qualcomm objects to the first sentence of this instruction, which could lead the jury to believe that Qualcomm concedes that there is a tying arrangement.

Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 42 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 29: CMS' COUNTS II-III (SECTION 1 AND CARTWRIGHT ACT – RESTRAINT OF TRADE – RULE OF REASON)

The CMs also allege an unreasonable restraint of trade under the rule of reason.  Under Section 1 of the Sherman Act and the Cartwright Act, a restraint of trade is illegal only if it is found to be unreasonable. You must determine, therefore, whether the restraints challenged here are unreasonable. In making this determination, you must first determine whether the CMs have proven that the challenged restraint has resulted in a substantial harm to competition in a relevant product market. If you find that the CMs have proven that the challenged restraints result in a substantial harm to competition in a relevant product market, then you must consider whether the restraints produce countervailing competitive benefits. If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act and the Cartwright Act only if you find that the competitive harm substantially outweighs the competitive benefit.

I will now review each step of the analysis in more detail.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases, Instr. C-8 (2016 Edition) (modified); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 369 (2001); *Roth v. Rhodes*, 25 Cal.App.4th 530, 543 (1994).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because the CMs cannot recover damages solely based on potential future harm.  *See, e.g.*, *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) (plaintiff must prove actual harm and jury may not speculate or guess what the harm is); *Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 214 (2d Cir. 2015) (must show antitrust injury to be entitled to damages, which requires a showing of "competitive injury to the plaintiff that resulted in specific losses").  To avoid confusion, the Court should add the following sentence after "restraint is likely to result in such harm":  "If you find that the alleged restraint did not result in substantial harm but is likely to result in future harm, you may not award the CMs any monetary compensation for this claim."

In addition, Qualcomm objects to this instruction because it should refer to the restraints discussed in this instruction as an alleged restraint.

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 32 with respect to this issue.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 30: CMS' COUNTS II-III (SECTION 1 AND CARTWRIGHT ACT – RESTRAINT OF TRADE – RULE OF REASON: PROOF OF COMPETITIVE HARM)

As I mentioned, to prove that the challenged restraint is unreasonable, CMs first must demonstrate that the restraint has resulted in a substantial harm to competition.  Although it may be relevant to the inquiry, harm that occurs merely to the individual business of the CMs is not sufficient, by itself, to demonstrate harm to competition generally.  That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, the CMs must show that the harm to competition occurred in an identified market, known as a relevant product market.  It is the CMs' burden to prove the existence of a relevant product market.

If you find that the CMs have proven the existence of a relevant market, then you must determine whether the CMs also have proven that the challenged restraint has a substantial harmful effect on competition in that market. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality. If the challenged conduct has not resulted in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraint has produced competitive harm, you may look at the following factors:

- the effect of the challenged restraint on prices, output, product quality, and service;
- the purpose and nature of the challenged restraint;
- the nature and structure of the relevant market;

- the number of competitors in the relevant market and the level of competition among them, both before and after the challenged restraint was imposed; and
- whether Qualcomm possesses market power.

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market.   A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether Qualcomm possesses market power is Qualcomm's market share, that is, its percentage of the products or services sold in the relevant market by all competitors. Other factors that you may consider in determining whether Qualcomm has or at relevant times had market power include:

- whether Qualcomm is capable of raising prices above competitive levels;
- whether Qualcomm can force customers to accept undesirable contract terms; and
- whether Qualcomm can exclude competition.

If Qualcomm does not (or did not) possess a substantial market share, it is less likely that Qualcomm possesses, or at relevant times possessed market power. If Qualcomm does not possess market power, it is less likely that the challenged restraint has resulted, or will result, in a substantial harmful effect on competition in the market.

**AUTHORITY**

ABA Model Jury Instructions in Civil Antitrust Cases, Instr. C-5 (2016 Edition) (modified).

**QUALCOMM OBJECTION**

Qualcomm objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *see also Stoner*, 2018 WL 4354423, at *3. The instruction's factors for determining whether Qualcomm has market power are incomplete because they do not include Qualcomm's market share trends, entry and exit by competitors and the number and size of competitors. Apple cannot dispute that these are relevant to a finding of market power, as it includes some of these in other instructions. (*See* Apple's Proposed Instruction No. 18 ("MONOPOLIZATION – EXISTENCE OF MONOPOLY POWER—INDIRECT PROOF")); *see also Rebel Oil*, 51 F.3d at 1438 n.10 (the "telltale factors" of market power include "market share, entry barriers and the capacity of existing competitors to expand output"); *Oahu Gas*, 838 F.2d at 366 (analyzing market share trends to determine market power); *O.S.C. Corp. v. Apple Computer, Inc.*, 601 F. Supp. 1274, 1291 n.8 (C.D. Cal. 1985) (noting that "[m]arket power may be measured by . . . other indicia of interbrand competition such as the number of competitors in the market[,] the number of new entrants in the industry[,] and whether the [defendant's] market share has declined").

Qualcomm further objects to this instruction because the CMs cannot recover damages solely based on potential future harm. *See, e.g., Bigelow*, 327 U.S. at 264; *Cash & Henderson*, 799 F.3d at 214. To avoid confusion, the Court should add the following sentence after "restraint is likely to result in such harm": "If you find that the alleged restraint did not result in substantial harm but is likely to result in future harm, you may not award the CMs any monetary compensation for this claim."

Qualcomm further objects to this instruction because it is argumentative. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475. The phrase "whether Qualcomm can force customers to accept undesirable contract terms" suggests support for Apple's position on disputed facts by characterizing Qualcomm's conduct as "forc[ing]" and the terms of its agreements as "undesirable".

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 33 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 31: CMS' COUNTS II-III (SECTION 1 AND CARTWRIGHT ACT – RESTRAINT OF TRADE – RULE OF REASON: EVIDENCE OF COMPETITIVE BENEFITS)

If you find that the CMs have proven that an alleged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the alleged restraint also benefits competition in other ways. If you find that the alleged restraint does result in competitive benefits, then you also must consider whether the alleged restraint was reasonably necessary to achieve the benefits. If the CMs prove that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the alleged restraint.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 8 (2016 Edition).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because the CMs cannot recover damages solely based on potential future harm. *See, e.g.*, *Bigelow*, 327 U.S. at 264; *Cash & Henderson*, 799 F.3d at 214.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 32: CMS' COUNTS II-III (SECTION 1 AND CARTWRIGHT ACT – RESTRAINT OF TRADE – RULE OF REASON: BALANCING THE COMPETITIVE EFFECTS)

If you find that an alleged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same alleged restraint.

If the competitive harm substantially outweighs the competitive benefits, then the alleged restraint is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the alleged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. The CMs bear the burden of proving by a preponderance of the evidence that the anticompetitive effect of the conduct substantially outweighs its benefits.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 9 (2016 Edition).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because the CMs cannot recover damages solely based on potential future harm. *See, e.g.*, *Bigelow*, 327 U.S. at 264; *Cash & Henderson*, 799 F.3d at 214.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 33: CMS' COUNT II-III (SECTION 1 – RELATION TO CARTWRIGHT ACT)

The CMs allege that the same conduct that violated Section 1 of the Sherman Act, which I have just discussed, also violate the Cartwright Act. With one exception that I will explain next, the elements the CMs must prove to prevail on their claims under the Cartwright Act are the same as those I just explained for Section 1 of the Sherman Act. Therefore, if you find in favor of the CMs on their claims under Section 1 of the Sherman Act, you must also find in favor of the CMs on their claims under the Cartwright Act. With one exception as to the CMs' claim under Cartwright Act Section 16727, which I will explain next, the reverse is also true—meaning that if you find in favor of the CMs on their claim under the Cartwright Act, you must also find in favor of the CMs on their claims under Section 1 of the Sherman Act.

### AUTHORITY

*Chavez v. Whirlpool Corp.*, 93 Cal.App.4th 363, 369 (2001); *Roth v. Rhodes*, 25 Cal. App. 4th 530, 543 (1994); *Suburban Mobile Homes v. AMFAC Communities*, 101 Cal. App. 3d 532, 549 (1980); *Morrison v. Viacom, Inc.*, 52 Cal. App. 4th 1514, 1524 (1997).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because the "exception" referenced therein incorrectly assumes that the CMs' tying claim under Section 16727 of the Cartwright Act should be submitted to the jury under a per se mode of analysis.

**APPLE & CMS' PROPOSED INSTRUCTION NO. 34: CMS' COUNT III (CARTWRIGHT ACT SECTION 16727 – PER SE TYING – ELEMENTS)**

As I just instructed you, the elements that the CMs must prove to prevail on their claims under the Cartwright Act are the same as those I explained for Sherman Act Section 1, except that the CMs may separately prove a per se tying violation of Section 16727 of the Cartwright Act by establishing all of the following elements:

First, that the tying and the tied products are separate and distinct;

Second, that Qualcomm will sell the tying products only if the buyer also purchases the tied product;

Third, Qualcomm has sufficient economic power in the market for the tying product to coerce at least some buyers into purchasing the tied product;

Fourth, that the CMs were harmed; and

Fifth, that Qualcomm's conduct was a substantial factor in causing the CMs' harm.

**AUTHORITY**

CACI No. 3421 (2019 Edition) (modified); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 369 (2001); *Roth v. Rhodes*, 25 Cal. App. 4th 530, 543 (1994); *Suburban Mobile Homes v. AMFAC Communities*, 101 Cal. App. 3d 532, 549 (1980); *Morrison v. Viacom, Inc.*, 52 Cal. App. 4th 1514, 1524 (1997); *Sun Microsystems v. Hynix Semiconductor*, No. 3:06-cv-01665-PJH (proposed jury instructions).

**QUALCOMM OBJECTION**

Qualcomm objects to this instruction because the per se mode of analysis is inapplicable to the CMs' Cartwright Act Section 16727 claim.

Qualcomm further objects to this instruction because the statement that "If you find that Qualcomm's conduct did not amount to per se tying under the Cartwright Act Section 16727, the CMs may still prove that Qualcomm's conduct restrained competition in violation of other provisions of the Cartwright Act" is confusing. *See Fernandez-Ruiz*, 251 F. App'x at 480. The CMs have disclaimed any attempt to establish an unlawful tying arrangement under the rule of reason but the jury reasonably could interpret this statement as requiring it to consider the Cartwright Act tying claim under the rule of reason.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 35: CMS' COUNT III (CARTWRIGHT ACT SECTION 16727 ‑ REFERENCE TO OTHER INSTRUCTIONS FOR ELEMENTS)

Earlier, when discussing the CMs' claim that alleges tying, I instructed you on the applicable law regarding "Presence of Two Products," "Contract – Definition, Existence, and Evidence," "Proof of Conditioning," "Existence of Market Power with Respect to the Tying Product," and "Business Justification Defense."  See Instruction Nos. 24, 25, 26, 27, 28.  Those instructions, as well as my next instructions on antitrust injury, causation, and damages, apply to the CMs' tying claim under Section 16727 of the Cartwright Act in the same manner in which they apply to the CMs' tying claim under Section 1 of the Sherman Act and Sections 16720 and 16726 of the Cartwright Act.

## AUTHORITY

*Brooks Automation Inc. v. PTB Sales, Inc.*, 2018 WL2276780 (C.D. Cal. Feb. 12, 2018) (proposed jury instruction); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 369 (2001); *Roth v. Rhodes*, 25 Cal. App. 4th 530, 543 (1994); *Suburban Mobile Homes v. AMFAC Cmtys.*, 101 Cal. App. 3d 532, 549 (1980); *Morrison v. Viacom, Inc.*, 52 Cal. App. 4th 1514, 1524 (1997).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction as unnecessary.  *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802.  As the instruction acknowledges, the analysis of unlawful tying claims under Section 1 of the Sherman Act mirrors the analysis of unlawful tying claims under the Cartwright Act.  *County of Tuolumne*, 236 F.3d at 1160.  Therefore, this instruction is superfluous of the previous instructions regarding unlawful tying claims under Section 1 of the Sherman Act.  (*See* Apple's Proposed Instructions Nos. 24-28.)

Qualcomm further objects to this instruction because it is incomplete and misleading.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  This instruction references several previous instructions, but fails to reference other relevant instructions that Qualcomm has proposed.  Qualcomm's Requested Closing Instruction Nos. 31-39, 41, 43-45.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 36: APPLE'S COUNT LXII; CMS' COUNTS I-III – INJURY – INTRODUCTION

If you find that Qualcomm has violated the antitrust laws as alleged by Apple and the CMs, you must then decide if the CMs are entitled to recover damages from Qualcomm. Apple does not seek to recover monetary damages. Apple seeks only injunctive relief, which is not for the jury to decide. Moreover, Apple has brought a claim only for a violation of Section 2 due to monopolization. Therefore, you need to consider Apple's allegations of threatened injury only with respect to Apple's Section 2 claim for a violation of Section 2 due to monopolization.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 302 (2016 Edition).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because the jury should not evaluate Apple's allegations of threatened injury, which is for the Court to decide. Significant threat of injury is a required showing for injunctive relief, which are issues for the Court, not the jury. *See Jensen*, 835 F.3d at 1111. *See Zenith Radio*, 395 U.S. at 130; *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) ("Injunctive relief constitutes a traditional equitable remedy.").

**APPLE & CMS' PROPOSED INSTRUCTION NO. 37: CMS' COUNTS I-III – INJURY AND CAUSATION – CMS)**

The CMs are entitled to recover damages for injuries to their business or property if they can establish three elements of injury and causation:

**First**, the CMs were in fact injured as a result of Qualcomm's alleged violation of the antitrust laws;

**Second**, Qualcomm's alleged illegal conduct was a material cause of the CMs' injuries; and

**Third**, the CMs' injuries are of the type of injury that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For the CMs to establish that they are entitled to recover damages, they must prove that they were injured as a result of Qualcomm's alleged violation of the antitrust laws. Proving the fact of damage does not require the CMs to prove the dollar value of their injuries. It requires only that the CMs prove that they were in fact injured by Qualcomm's alleged antitrust violations. If you find that the CMs have established that they were in fact injured, you may then consider the amount of the CMs' damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that the CMs have established that they were in fact injured.

The CMs must also offer evidence that establishes by a preponderance of the evidence that Qualcomm's alleged illegal conduct was a material cause of the CMs' injuries. This means that the CMs must have proved that some damage occurred to them as a result of Qualcomm's alleged antitrust violations, and not some other cause. The CMs are not required to prove that Qualcomm's alleged antitrust violations were the sole cause of their injuries; not do the CMs need to eliminate all

other possible causes of injury. It is enough if the CMs have proved that the alleged antitrust violations were a material cause of their injuries.

Finally, the CMs must establish that their injuries are the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If the CMs injuries were caused by a reduction of competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then the CMs' injuries are antitrust injuries. One form of antitrust injury that you should consider is denial of choice. This means that Qualcomm has limited choice by impeding the ordinary give and take of the market place. On the other hand, if the CMs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then the CMs' injuries are not antitrust injuries and the CMs may not recover damages for those injuries under the antitrust laws.

Further, the CMs are injured even if they passed on or otherwise recouped all or some of Qualcomm's alleged overcharges by passing on those overcharges to the CMs' customers. The antitrust laws prohibit antitrust defendants from raising as a defense that direct purchaser plaintiffs—such as the CMs—passed on or otherwise recouped all or some of the defendants' overcharges by passing on those overcharges to their customers.

In summary, if the CMs can establish that they were in fact injured by Qualcomm's conduct, that Qualcomm was a material cause of the CMs' injuries, and that the CMs' injuries are of the type that the antitrust laws were intended, then the CMs are entitled to recover damages for the injuries to their business or property.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases, Instr. A-300 (2016 Edition) (modified); Final Jury Instructions, *Apple v. Samsung*, No. 11-cv-1846 (N.D. Cal.

Aug. 21, 2012), Instr. 84; *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 n.14 (1972); *Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 433 (N.D. Cal. 2008); *Braintree Labs, Inc. v. McKesson Corp.*, No. 11-80233, 2011 WL 5025096, at *3 (N.D. Cal. Oct. 20, 2011); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1011 (9th Cir. 2003); *F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 459 (1986) (quoting *National Society of Professional Engineers v. United States*, 435 U.S. 679, 692 (1978)); *Paper Systems v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 494 (1968); *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions.  See *White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *see also Stoner*, 2018 WL 4354423, at *3; Ninth Circuit Manual of Model Jury Instructions (Civil) No. 14.

*First*, the instruction omits the first sentence of the model instruction, which states:  "If you find that [Qualcomm] has violated Sections 1 or 2 of the Sherman Act, then you must decide if the CMs are entitled to recover damages from Qualcomm."  This sentence would explain to the jury that damages should be considered only if Qualcomm violated the Sherman Act.  For similar reasons, the first sentence of the instruction should refer to the Cartwright Act, because the jury should be instructed about the Cartwright Act claim at the same time it is instructed about Section 1 of the Sherman Act.  *See Cty. of Tuolumne*, 236 F.3d at 1160 ("California's antitrust law mirrors the analysis under federal law because the Cartwright Act was modeled after the Sherman Act" (citation omitted)); *Dang v. San Francisco Forty Niners*, 964 F. Supp. 2d 1097, 1103 (N.D. Cal. 2013) ("[A]nalysis under the Cartwright Act mirrors the analysis under federal law" (internal quotation marks omitted)).

*Second*, the following language was added to the model instruction:  "One form of antitrust injury that you should consider is denial of choice.  This means that Qualcomm has limited choice by impeding the ordinary give and take of the market place."  The authority cited for this proposition recognizes that denial of choice, in and of itself, is not a form of antitrust injury.  Rather, "[c]oercive activity that prevents its victims from making free choices between market alternatives" is a form of antitrust injury.  *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1011 (9th Cir. 2003) (alteration in original) (internal quotation marks omitted).

Further, the "limited choice by impeding the ordinary give and take of the market place" language is not a description of antitrust injury, but rather, a characterization of an effect of refusals to compete. *See F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 459 (1986) ("A refusal to compete with respect to the package of services offered to customers, no less than a refusal to compete with respect to the price term of an agreement, impairs the ability of the market to advance social welfare by ensuring the provision of desired goods and services to consumers at a price approximating the marginal cost of providing them.  Absent some countervailing procompetitive virtue—such as, for example, the creation of efficiencies in the operation of a market or the provision of goods and services—such an agreement limiting consumer choice by impeding the ordinary give and take of the market place cannot be sustained under the Rule of Reason.") (internal quotation marks omitted); *see also Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 815 F.2d 270, 275 (3d Cir. 1987) (applying the same language to refusals to compete).  Refusals to compete are not at issue in this case and, therefore, this language should be stricken from this instruction.

**APPLE & CMS' PROPOSED INSTRUCTION NO. 38: APPLE'S COUNT**

**LXII – INJURY AND CAUSATION – APPLE**

If you find that Qualcomm has violated Section 2 of the Sherman Act, then you must decide if Apple has established a significant threat of injury and causation by showing all three of the following elements by a preponderance of the evidence:

**First**, Apple must prove that it in fact faces a significant threat of injury or loss as a result of Qualcomm's alleged violation of the antitrust laws.

**Second**, Apple must prove that Qualcomm's alleged illegal conduct was a material cause of Apple's threatened injury or loss.

**Third**, Apple must prove that its threatened injury or loss is the type of injury that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "threatened injury in fact." It requires that Apple prove that it in fact faces a significant threat of injury or loss as a result of Qualcomm's alleged antitrust violations.

Apple must also offer evidence that establishes by a preponderance of the evidence that Qualcomm's alleged illegal conduct was a material cause of Apple's threatened injury or loss. This means that Apple must have proved that some threatened injury or loss occurred to it as a result of Qualcomm's alleged antitrust violations, and not some other cause. Apple is not required to prove that Qualcomm's alleged antitrust violations were the sole cause of its threatened injury or loss; not does Apple need to eliminate all other possible causes of threatened injury or loss. It is enough if Apple has proved that the alleged antitrust violations were a material cause of its threatened injuries or losses.

Finally, Apple must establish that its threatened injuries or losses are the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If Apple's threatened injuries or losses were caused by a reduction of competition, acts that would lead to a reduction in competition, or acts

that would otherwise harm consumers, then Apple's threatened injuries or losses are antitrust injuries.  One form of antitrust injury that you should consider is denial of choice.  This means that Qualcomm has limited choice by impeding the ordinary give and take of the market place.  On the other hand, if Apple's threatened injuries or losses were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Apple's threatened injuries or losses are not antitrust injuries.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases, Instr. A-300 (2016 Edition) (modified); Final Jury Instructions, *Apple v. Samsung*, No. 11-cv-1846 (N.D. Cal. Aug. 21, 2012), Instr. 84; Clayton Act Section 16, 15 U.S.C. § 26; *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1011 (9th Cir. 2003); *F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 459 (1986) (quoting *National Society of Professional Engineers v. United States*, 435 U.S. 679, 692 (1978)); *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 130 (1969) (holding that injunctive relief is available where plaintiff demonstrates "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur").

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions.  See *White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *see also Stoner*, 2018 WL 4354423, at *3; Ninth Circuit Manual of Model Jury Instructions (Civil) No. 14.

*First*, the instruction omits the first sentence of the model instruction, which states:  "If you find that [Qualcomm] has violated Sections 1 or 2 of the Sherman Act, then you must decide if the CMs are entitled to recover damages from Qualcomm."  This sentence would explain to the jury that damages should be considered only if Qualcomm violated the Sherman Act.  For similar reasons, the first sentence of the instruction should refer to the Cartwright Act, because the jury should be instructed about the Cartwright Act claim at the same time it is instructed about Section 1 of the Sherman Act.  *See Cty. of Tuolumne*, 236 F.3d at 1160 ("California's antitrust law mirrors the analysis under federal law

because the Cartwright Act was modeled after the Sherman Act" (citation omitted)); *Dang v. San Francisco Forty Niners*, 964 F. Supp. 2d 1097, 1103 (N.D. Cal. 2013) ("[A]nalysis under the Cartwright Act mirrors the analysis under federal law" (internal quotation marks omitted)).

*Second*, the following language was added to the model instruction: "One form of antitrust injury that you should consider is denial of choice. This means that Qualcomm has limited choice by impeding the ordinary give and take of the market place." The authority cited for this proposition recognizes that denial of choice, in and of itself, is not a form of antitrust injury. Rather, "[c]oercive activity that prevents its victims from making free choices between market alternatives" is a form of antitrust injury. *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1011 (9th Cir. 2003) (alteration in original) (internal quotation marks omitted). Further, the "limited choice by impeding the ordinary give and take of the market place" language is not a description of antitrust injury, but rather, a characterization of an effect of refusals to compete. *See F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 459 (1986) ("A refusal to compete with respect to the package of services offered to customers, no less than a refusal to compete with respect to the price term of an agreement, impairs the ability of the market to advance social welfare by ensuring the provision of desired goods and services to consumers at a price approximating the marginal cost of providing them. Absent some countervailing procompetitive virtue—such as, for example, the creation of efficiencies in the operation of a market or the provision of goods and services—such an agreement limiting consumer choice by impeding the ordinary give and take of the market place cannot be sustained under the Rule of Reason.") (internal quotation marks omitted); *see also Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 815 F.2d 270, 275 (3d Cir. 1987) (applying the same language to refusals to compete). Refusals to compete are not at issue in this case and, therefore, this language should be stricken from this instruction.

## APPLE & CMS PROPOSED INSTRUCTION NO. 39: APPLE'S COUNT LXII; CMS' COUNTS I-III (BUSINESS OR PROPERTY)

Apple and the CMs each must establish that the threatened or actual injury they claim to have suffered concerns an injury to their business or property. The term "business" includes any commercial interest or venture. Apple and the CMs experienced a threatened or actual injury to their business if you find that their threatened or actual injury involved injury to any of their commercial interests or enterprises as a result of the alleged antitrust violation. The term property includes anything of value Apple and the CMs own, possess, or in which Apple and the CMs have a protectible legal interest. Apple and the CMs have experienced a threatened or actual injury if you find that anything of value that they own, possess, or have a legal interest in has been threatened or damaged as a result of the alleged antitrust violation. Apple and the CMs have experienced a threatened or actual injury if you find that they experienced the threat of, or actually have, have paid an inflated price for goods, services, any legal interest of value, or experienced the threat of, or actually lost, money as a result of the alleged antitrust violation.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases, Instr. A-305 (2016 Edition).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is confusing. *See Fernandez-Ruiz*, 251 F. App'x at 480. The reference to "threatened . . . injury" may confuse the jury because the CMs cannot recover damages solely based on potential future harm. *See, e.g.*, *Bigelow*, 327 U.S. at 264; *Cash & Henderson*, 799 F.3d at 214.

Qualcomm further objects to this instruction because the jury should not evaluate Apple's allegations of threatened injury, which is for the Court to decide.

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 57 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 40: CMS' COUNTS I-III

## (ANTITRUST DAMAGES – INTRODUCTION AND PURPOSE)

If you find that Qualcomm violated the antitrust laws and that this violation caused injury to the CMs, then you must determine the amount of damages, if any, the CMs are entitled to recover.  The fact that I am giving you instructions concerning the issue of the CMs' damages does not mean that I believe the CMs should, or should not, prevail in this case.  If you reach a verdict for Qualcomm on the issue of liability on the CMs' antitrust claims, you should not consider the issue of antitrust damages, and you may disregard the antitrust damages instruction that I am about to give.

The law provides that the CMs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful under the antitrust laws.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred.  The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter particular conduct in the future.  Furthermore, you are not permitted to award to the CMs an amount for attorneys' fees or the costs of maintaining this lawsuit.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 304 (2016 Edition).

### QUALCOMM OBJECTION

Qualcomm does not object to this instruction, except that Qualcomm submits that the instruction should specify that "CMs' antitrust claims" means the CMs' claims under Sections 1 and 2 of the Sherman Act and Sections 16720 and 16727 of the Cartwright Act.  Qualcomm therefore requests that the Court give Qualcomm's Proposed Closing Instruction No. 58 with respect to this issue.

**APPLE & CMS' PROPOSED INSTRUCTION NO. 41: CMS' COUNTS I-III (ANTITRUST DAMAGES – BASIS FOR CALCULATING DAMAGES)**

You are permitted to make just and reasonable estimates in calculating the CMs' damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation. The CMs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that the CMs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

Whether or not the CMs passed on any overcharges to their customers is irrelevant to your calculation of damages. The law does not permit you to reduce your calculation of the CMs' damages by any amounts the CMs may have recouped from their customers. As I previously instructed you, the antitrust laws prohibit antitrust defendants from raising as a defense that direct purchaser plaintiffs—such as the CMs—passed on or otherwise recouped all or some of the defendants' overcharges by passing on those overcharges to their customers.

If you find that the CMs have failed to carry their burden of providing a reasonable basis for determining damages, then you may not award damages.

**AUTHORITY**

ABA Model Jury Instructions in Civil Antitrust Cases at 307, 310-311 (2016 Edition); *In re Korean Ramen Antitrust Litig.*, Case No. 3:13-cv-04115-WHO (N.D. Cal. Dec. 14, 2018); *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:12-cv-04114-SI (proposed jury instructions); *Paper Systems v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing *Illinois Brick Co. v. Illinois*, 431 U.S.

720 (1977); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 494 (1968); *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980); *Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 433 (N.D. Cal. 2008); *Braintree Labs, Inc. v. McKesson Corp.*, No. 11-80233, 2011 WL 5025096, at *3 (N.D. Cal. Oct. 20, 2011).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it deviates from the model. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. The third paragraph, which describes alleged "overcharges" the CMs "may have recouped from their customers" inappropriately endorses the CMs' theory of liability. At a minimum, this paragraph should make clear that any "overcharges" or "recoup[ment]" of "overcharges" are disputed allegations. Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 59 with respect to this issue.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 42:  CMS' COUNTS I-III (ANTITRUST DAMAGES – CAUSATION AND DISAGGREGATION)

If you find that Qualcomm violated the antitrust laws and that the CMs were injured by that violation, the CMs are entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts you find.  The CMs bear the burden of showing that their injuries were caused by the alleged antitrust violation, as opposed to any other factors.  If you find that the CMs' alleged injuries were caused in part by the alleged antitrust violation and in part by other factors, then you may award antitrust damages only for that portion of the CMs' alleged injuries that was caused by the alleged antitrust violation.

The CMs bear the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes.  If you find that the CMs were injured by the alleged antitrust violation, and there is a reasonable basis to apportion the CMs' alleged injury between lawful and unlawful causes, then you may award damages.  However, the CMs do not need to allocate damages among those acts found to be unlawful.

If you find that the CMs' alleged injuries were caused by factors other than the alleged antitrust violation, then you must return a verdict for Qualcomm.  If you find that there is no reasonable basis to apportion the CMs' alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 311 (2016 Edition); *LePage's Inc. v. 3M*, 324 F.3d 141, 166 (3d Cir. 2003); *City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992); *MCI Communications Corp. v. AT&T*, 708 F.2d 1081, 1163 (7th Cir. 1983); *Cont'l Ore Co. v. Union Carbide &*

*Carbon Corp.*, 370 U.S. 690, 699 (1962); *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264-65 (1946).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instruction on which it is based. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *Stoner*, 2018 WL 4354423, at *3. The model instruction adequately describes the apportionment the jury must perform, and the proposed deviation from the model instruction improperly suggests that the jury will find multiple unlawful act.

## **APPLE & CMS' PROPOSED INSTRUCTION NO. 43: CMS' COUNTS II-III (ANTITRUST DAMAGES – DAMAGES FROM TYING AND UNREASONABLE RESTRAINT OF TRADE)**

If you have determined that there was an unlawful tying arrangement in violation of Section 1 that caused some injury to the CMs, you must now consider the extent of the CMs' damages. The CMs' damages from the per se tying arrangement are measured by the difference between the price the CMs' actually paid for the tied product and the price at which the tied product could have been obtained in the absence of the tie. The CMs' damages from the unreasonable restraint of trade under the rule of reason are the difference between the all-in prices the CMs actually paid for CDMA and/or premium LTE chipsets (i.e. the prices paid for the chipsets and the royalties for 3G and 4G patents) and the all-in prices the CMs would have paid in the absence of Qualcomm's alleged unreasonable restraint. These are referred to as overcharges.

### **AUTHORITY**

ABA Model Jury Instructions in Civil Antitrust Cases at 313 (2016 Edition); *Gray v. Shell Oil Co.*, 469 F.2d 742, 751 (9th Cir. 1972); *Pogue v. Int'l Indus., Inc.*, 524 F.2d 342, 344-45 (6th Cir. 1975) *Bell v. Cherokee Aviation Corp.*, 660 F.2d 1123, 1133 (6th Cir. 1981); *Northern v. McGraw-Edison Co.*, 542 F.2d 1336, 1347 (8th Cir. 1976); *Carpa, Inc. v. Ward Foods, Inc.*, 536 F.2d 39 (5th Cir. 1976).

### **QUALCOMM OBJECTION**

Qualcomm objects to this instruction because it deviates from the model instruction and misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. *First*, the instruction states that "the CMs' damages from the per se tying arrangement are measured by the difference between the price the CMs' actually paid for the tied product and the price at which the tied product could have been obtained in the absence of the tie". As reflected in the model instruction, damages for tying actually are the amount "[the CMs] actually paid for both products", tying and the tied, in excess of "the combined fair market value of both the tying and tied products." ABA Antitrust Model Instructions at 313 (2016); *see also Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 52 (9th Cir. 1971) (looking to "the

cost or value of the *products* involved" (emphasis added)); *Metromedia Broad. Corp. v. MGM/UA Entm't Co.*, 611 F. Supp. 415, 426 (C.D. Cal. 1985) ("[P]laintiff must prove that the payment for both the tied and tying product exceeded their combined fair market value."); Areeda & Hovenkamp, Antitrust Law ¶ 1769c (4th ed. 2018) ("Most plaintiff buyers base their damage claims on proof that a tie forced them to buy the tied product from the defendant at higher prices than prevail in the tied market generally.  Some courts have awarded damages on this basis. This is quite wrong, for in most cases a premium price on the tied product must be accompanied by a reduction in the price of the tying product.").

*Second*, the instruction omits model language stating that the jury must consider what price "could have been obtained *on the open market* in the absence of the tie".  *Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1426 (9th Cir. 1995) (considering whether the alleged tie forced the consumer into making a purchase it would not have on the open market); *see also County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1157-58 (9th Cir. 2001) (noting that "effect on . . . commerce in the tied product market" is an element of tying claim).

Qualcomm further objects to the reference to *per se* tying for the reasons stated in its objections to Apple's Proposed Instruction No. 23 ("Per Se—Unlawful Tying—Elements").

## APPLE & CMS' PROPOSED INSTRUCTION NO. 44: CMS' COUNT I (ANTITRUST DAMAGES – DAMAGES FROM MONOPOLIZATION)

If you have determined that Qualcomm monopolized the alleged relevant markets in violation of Section 2, causing injury to the CMs, you must now determine the amount of damages to award to the CMs.  The proper way to calculate those damages is to determine the difference between the all-in prices the CMs actually paid for CDMA and/or premium LTE chipsets (i.e. the prices paid for the chipsets and the royalties for 3G and 4G patents) and the all-in prices the CMs would have paid in the absence of Qualcomm's alleged unlawful monopolization of the markets for CDMA and premium LTE chipsets.  This is referred to as the overcharge.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 312 (2016 Edition); *Howard Hess Dental Laboratories v. Dentsply Int'l*, 424 F.3d 363, 374 (3d Cir. 2005) ("The typical measure of damages is the difference between the actual price and the presumed competitive price multiplied by the quantity purchased.").

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it deviates from the model instruction. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *see also Stoner*, 2018 WL 4354423, at *3; Ninth Circuit Manual of Model Jury Instructions (Civil) No. 14.  The instruction uses the word "monopolized" in the first sentence, which does not appear in the model and is argumentative. *See Sarno*, 73 F.3d at 1485; *Alamo*, 219 Cal. App. 4th at 475.  Qualcomm proposes that the first sentence of this instruction read:   "If you have determined that Qualcomm has violated Section 2 of the Sherman Act, causing injury to the CMs, you must now determine the amount of damages to award to the CMs."

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 58 with respect to this issue.

EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS                    -90-                    CASE NO. 3:17-CV-0108-GPC-MDD
WITH OBJECTIONS

# APPLE & CMS' PROPOSED INSTRUCTION NO. 45: CMS' COUNTS I-III

# (DAMAGES ON MULTIPLE LEGAL THEORIES)

The CMs seek damages from Qualcomm under more than one legal theory. However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

## AUTHORITY

CACI No. 3934 (2019 Edition).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it fails to instruct that the CMs may recover damages for allegedly excessive royalties only once under any of their legal theories. Qualcomm therefore requests that the Court give Qualcomm's Proposed Closing Instruction No. 64 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 46: CMS' COUNTS I-III

## (ANTITRUST DAMAGES – MULTIPLE PLAINTIFFS)

If you award damages, you will be asked what sum of money would fairly and reasonably compensate each CM.  If you find that more than one CM is entitled to recover damages, exercise caution to be sure that each CM is awarded damages for only its own injuries.

### AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 326 (2016 Edition); *In re Korean Ramen Antitrust Litig*., Case No. 3:13-cv-04115-WHO (N.D. Cal.  Dec. 14, 2018).

### QUALCOMM OBJECTION

No objection.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 47: CMS' COUNTS I-III

## (AFFIRMATIVE DEFENSE – ANTITRUST MITIGATION)

The CMs may not recover damages for any portion of their injuries with respect to the Sherman Act or the Cartwright Act that they could have avoided through the exercise of reasonable care and prudence.  The CMs are not entitled to increase any damages through inaction.  The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss.  If the CMs failed to take reasonable steps available to them, and the failure to take those steps resulted in greater harm to the CMs than they would have suffered had they taken those steps, then the CMs may not recover any damages for that part of the injury they could have avoided.

Qualcomm has the burden of proof on this issue.  Qualcomm must prove by a preponderance of the evidence that the CMs:

1. acted unreasonably in failing to take specific steps to minimize or limit their losses;
2. that the  failure to take those specific steps resulted in their losses being greater than they would have been had they taken such steps; and
3. the amount by which the CMs' loss would have been reduced had the CMs taken those steps.

In determining whether the CMs failed to take reasonable measures to limit their damages, you must remember that the law does not require the CMs to take every conceivable step that might reduce their damages.  The evidence must show that the CMs failed to take commercially reasonable measures that were open to them.  Commercially reasonable measures mean those measures that a prudent businessperson in the CMs' position would likely have adopted, given the circumstances as they appeared at that time.  The CMs should be given wide latitude

Case 3:17-cv-00108-GPC-MDD    Document 884-6    Filed 02/23/19    PageID.100205
Page 105 of 252

in deciding how to handle the situation, so long as what the CMs did was not unreasonable in light of the existing circumstances.

You should not consider this defense with respect to any claim by any party unless it is identified in this instruction.

## AUTHORITY

ABA Model Jury Instructions in Civil Antitrust Cases at 324 (2016 Edition).

## QUALCOMM OBJECTION

No objection.

EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS                    -94-                    CASE NO. 3:17-CV-0108-GPC-MDD
WITH OBJECTIONS

# UNFAIR COMPETITION LAW

## APPLE & CMS' PROPOSED INSTRUCTION NO. 48: APPLE'S COUNT LLXIII (VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW-LIABILITY)

Apple claims that Qualcomm has engaged in unfair competition within the meaning of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200), which prohibits unlawful business acts and practices. An unlawful business practice is one that violates any other law.

To determine whether Apple may prevail on its claim that Qualcomm violated California's Unfair Competition Law, you must determine whether Apple has proved, by a preponderance of the evidence, that:

1. Qualcomm engaged in unlawful business practices and

2. Apple suffered injury in fact and lost money or property as a result of Qualcomm's unlawful conduct.

Apple has suffered injury in fact under the UCL if it has: expended money due to Qualcomm's unlawful acts, lost money or property, or been denied money to which it has a cognizable claim.

### AUTHORITY

Cal. Bus. & Prof. Code §§ 17200, 17204; *Lopez v. Stages of Beauty, LLC*, 307 F. Supp.3d 1058, 1070 (S.D. Cal. 2018); *In re Yahoo! Inc. Customer Data Security Breach Lit.*, 313 F. Supp. 3d 1113, 1129 (N.D. Cal. 2018) (quoting *Kwikset Corp. v. Sup. Ct.*, 246 P.3d 877, 887 (Cal. 2011)); *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1012 (S.D. Cal. 2009) (quoting *Hall v. Time Inc.*, 70 Cal. Rptr. 3d 466 (2008)); *Zhang v. Sup. Ct.*, 304 P.3d 163, 167-68 (Cal. 2013) (discussing § 17200 and relief available); *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-42 (Cal. 1999).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because Apple's claim under the UCL is an equitable claim for the Court, not the jury. *See Jensen*, 835 F.3d at 1111; *Hodge*

EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS                    -96-                    CASE NO. 3:17-CV-0108-GPC-MDD
WITH OBJECTIONS

*v. Superior Court*, 145 Cal. App. 4th 278, 284 (Cal. Ct. App. 2006) (no jury right for UCL equitable claim); *MAP Co. v. Lebanese Arak Corp.*, Case No. 2:16-cv-05039-AB-RAO, 2018 WL 3357474, at *2 (C.D. Cal. Feb. 5, 2018) (same).

Qualcomm further objects to this instruction because it is argumentative. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475. The phrases "Qualcomm's unlawful acts" and "Qualcomm's unlawful conduct" adopt Apple's contention that Qualcomm has engaged in acts of unfair competition by failing to specify that these are disputed allegations.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 49: CMS' COUNT IV (VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW – LIABILITY)

The CMs also claim that Qualcomm has engaged in unfair competition within the meaning of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200). However, the CMs claim that Qualcomm engaged in both unfair and unlawful business practices.

To determine whether the CMs may prevail on its claim that Qualcomm violated California's Unfair Competition Law, you must determine whether the CMs have proved, by a preponderance of the evidence, that:

    1. Qualcomm engaged in unfair or unlawful business practices and

    2. The CMs suffered injury in fact and lost money or property as a result of Qualcomm's unfair or unlawful conduct.

The CMs have suffered injury in fact under the UCL if they have: expended money due to Qualcomm's acts of unfair competition, lost money or property, or been denied money to which they have a cognizable claim.

### AUTHORITY

Cal. Bus. & Prof. Code §§ 17200, 17204; *Lopez v. Stages of Beauty, LLC*, 307 F. Supp.3d 1058, 1070 (S.D. Cal. 2018); *In re Yahoo! Inc. Customer Data Security Breach Lit.*, 313 F. Supp. 3d 1113, 1129 (N.D. Cal. 2018) (quoting *Kwikset Corp. v. Sup. Ct.*, 246 P.3d 877, 887 (Cal. 2011)); *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1012 (S.D. Cal. 2009) (quoting *Hall v. Time Inc.*, 70 Cal. Rptr. 3d 466 (2008)); *Zhang v. Sup. Ct.*, 304 P.3d 163, 167-68 (Cal. 2013) (discussing § 17200 and relief available); *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-42 (Cal. 1999).

### QUALCOMM OBJECTION

Qualcomm objects to this proposed instruction because UCL is an equitable claim for the Court, not the jury. *See Jensen*, 835 F.3d at 1111; *see also MAP*, 2018

WL 3357474, at *2 (no jury right for UCL equitable claim); *Hodge*, 145 Cal. App. 4th at 284 (same). In addition, the parties agree that restitution is an issue for the Court, not the jury.

Qualcomm further objects to this proposed instruction because it permits the jury to find in favor of the CMs based solely on conduct that the jury believes to be "unfair". That is insufficient to establish a claim under the UCL. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999) (conduct is unfair under the UCL when it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition").

Qualcomm further objects to this instruction because it is argumentative. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475. The phrases "Qualcomm's unlawful acts" and "Qualcomm's unlawful conduct" adopt the CMs' contention that Qualcomm has engaged in acts of unfair competition by failing to specify that these are disputed allegations.

**APPLE & CMS' PROPOSED INSTRUCTION NO. 50:  RESTITUTION TO APPLE)**

"Restitution" is a legal remedy under which a court may order that a party who engaged in an unlawful business practice to repay money to another party that was injured by the unlawful practice.

Apple seeks restitution pursuant to its UCL claims.  Apple seeks restitution of monies paid pursuant to the CMs' license agreements for exhausted patents.  Please refer to Instruction No. 7 for an explanation of "patent exhaustion."

You must find that Apple is entitled to restitution if you find that Apple paid monies pursuant to the CMs' license agreements for exhausted patents.

**AUTHORITY**

*State of Cal. v. Altus Fin.*, 116 P.3d 1175, 1187 (Cal. 2005) (describing restitution remedy).

**QUALCOMM OBJECTION**

Qualcomm objects to this proposed instruction because Apple's claim for restitution under the UCL is an equitable claim for the Court, not the jury.  *See Jensen*, 835 F.3d at 1111; *see also MAP*, 2018 WL 3357474, at *2; *Hodge*, 145 Cal. App. 4th at 284.  Similarly, Apple's claim for restitution is based on a finding of contract invalidity due to patent exhaustion, which must be decided by the Court, not the jury.  (*See* ECF No. 737 at 12 ("It is an open question whether California courts would consider a contract unenforceable as against public policy or against UCL because the contract calls for payment of royalties for exhausted patents."); *Erhart*, 2017 WL 588390, at *6 (courts determine whether contracts violate laws).

Qualcomm further objects to this instruction because it misstates the law.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  Remedies under the UCL are within the Court's discretion; therefore, under no circumstances *must* a plaintiff receive restitution through the UCL.  *See State of California v. Altus Fin.*, 36 Cal. 4th 1284, 1303 (Cal. 2005) ("Through the UCL a plaintiff *may* obtain restitution . . . . (emphasis added)); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013) ("A court awarding restitution under the California consumer protection laws has very broad discretion to determine an appropriate remedy award as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired.").

## APPLE & CMS' PROPOSED INSTRUCTION NO. 51: RESTITUTION TO CMS

CMs seek restitution pursuant to their UCL claims. You must find that the CMs are entitled to restitution if you find that the CMs paid monies pursuant to the CMs' license agreements as a result of Qualcomm's unfair or unlawful conduct.

The CMs seek restitution of all excessive license fees paid by the CMs pursuant to the CMs' license agreements as a result of Qualcomm's unfair or unlawful conduct.

### AUTHORITY

*State of Cal. v. Altus Fin.*, 116 P.3d 1175, 1187 (Cal. 2005) (describing restitution remedy).

### QUALCOMM OBJECTION

Qualcomm objects to this proposed instruction because the CMs' claim for restitution under the UCL is an equitable claim for the Court, not the jury. *See Jensen*, 835 F.3d at 1111; *see also MAP*, 2018 WL 3357474, at *2; *Hodge*, 145 Cal. App. 4th at 284. Similarly, the CMs' claim for restitution is based on a finding of contract invalidity due to patent exhaustion, which must be decided by the Court, not the jury. (*See* ECF No. 737 at 12); *Erhart*, 2017 WL 588390, at *6.

Qualcomm further objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. Remedies under the UCL are within the Court's discretion; therefore, under no circumstances *must* a plaintiff receive restitution through the UCL. *See Altus Financial*, 36 Cal. 4th at 1303; *Astiana*, 291 F.R.D. at 506.

Qualcomm further objects to this proposed instruction because it permits the jury to award restitution to the CMs based solely on conduct that the jury believes to be "unfair". That is insufficient to establish a claim under the UCL. *See Cel-Tech*, 973 P.2d at 544.

Qualcomm further objects to this instruction because it is argumentative. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475. The phrase "as a result of Qualcomm's unfair or unlawful conduct" adopts the CMs' contention that Qualcomm has engaged in acts of unfair competition by failing to specify that these are disputed allegations.

# **FRAND**

## APPLE & CMS' PROPOSED INSTRUCTION NO. 52: THE FRAND COMMITMENT

You have heard the phrase "the FRAND commitment" used many times during this trial. I am now going to instruct you as to what that means. In this case, you will determine whether Qualcomm's business practices, specifically its licensing offers and historical net royalties are fair, reasonable, and non-discriminatory (FRAND). By participating in a standard-setting organization (SSO), Qualcomm has promised to license its patents to all willing licensees, including competitors, on FRAND terms. You must take that promise into account in determining whether Qualcomm's business practices, specifically its licensing offers and historical net royalties, are FRAND.

Under the patent laws, patent owners are not entitled to royalties for patents that are not infringed or that are invalid, exhausted, unenforceable, or expired. Thus, any FRAND royalty or offer must be based on patents that are actually infringed, valid, not exhausted, enforceable, and unexpired.[5] Just because a patent owner declares a patent to be standard-essential does not mean that the patent is actually essential or that someone who implements the standard infringes that patent. Patent claims should be compared to the accused product to determine infringement. Only in the situation where a patent claim covers every possible implementation of a standard will it be enough to prove infringement by showing standard compliance.

When a technology is incorporated into an industry standard, it is typically chosen from among different options. Once a standard is adopted, the technology is not necessarily used by other companies because it is the best option; the technology is used because its use is necessary to comply with the standard. A FRAND royalty

---

[5] *See* Apple & CMs' Proposed Instruction Nos. 2, 6, 7, 58, 59, 60 (Patents, Patent Exhaustion, Infringement, Invalidity, Unenforceability).

should reflect the value of Qualcomm's patented technological contribution, not the value of its widespread adoption due to standardization. In other words, you may not consider the success of the standard itself in determining whether Qualcomm's business practices, specifically its licensing offers and historical net royalties are FRAND.

Qualcomm's FRAND commitments apply to only patents that are actually essential to the standard to which Qualcomm declared them. Thus, Qualcomm's non-essential patents are not relevant to the FRAND determination.

In addition, the value of the patented feature must be apportioned from the value of any unpatented features included in the standard. I will explain what apportionment means at Instruction No. 53.

**AUTHORITY**

N.D. Cal. Model Patent Jury Instructions (Rev. Aug. 2017, Updated Dec. 2018) at 53 (modified).

*Ericsson, Inc. v. D-Link Sys.*, Inc., 773 F.3d 1201, 1230–32 (Fed. Cir. 2014); *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 WL 5848999, at *10–*11, *15 (N.D. Cal. Nov. 6, 2018) ("as a matter of law, the TIA and ATIS IPR policies both require Qualcomm to license its SEPs to modem chip suppliers"); *Zenith Electronics, LLC v. Sceptre, Inc.,* No. 14-cv-5150, ECF 89 at 3 (C.D. Cal. Feb. 5, 2015) (Minute Order) (Movant "has not admitted that it practices the patents-in-suit or that they are in fact essential to the [] Standard" so "any determination of a FRAND rate, even as to only the [] patents-in-suit, could be entirely academic."); *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, No. 6:12-CV-100-JRG, 2015 WL 4775973, at *2 (E.D. Tex. Aug. 11, 2015); *InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 1:13-CV-00009-RGA, 2014 WL 2206218, at *3 (D. Del. May 28, 2014); *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d

998, 1007 (N.D. Cal. 2013) ("[A party] can simultaneously pursue a determination of the RAND royalty rate while denying infringement or asserting invalidity, even though those issues may ultimately obviate the need for a license."); *see also Huawei Techs v. Samsung Elecs.*, No. 16-cv-02787, ECF 85 (N.D. Cal.); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) ("[C]laims should be compared to the accused product to determine infringement."); *id.* at 1328 ("Only in the situation where a patent covers every possible implementation of a standard will it be enough to prove infringement by showing standard compliance.").

# QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is argumentative and misleading. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475.

*First*, the first paragraph purports to describe Qualcomm's FRAND commitment and what the jury "will determine", without reference to the relevant FRAND commitments or contract claims in this case. *See Ericsson*, 773 F.3d at 1235 ("The court should instruct the jury on the actual RAND commitment at issue.").

*Second*, the instruction is misleading because the use of the term "the FRAND commitment" generically is improper. As the Federal Circuit has stated, the Court should instruct the jury about the specific FRAND commitment at issue. *See Ericsson*, 773 F.3d at 1235 ("The court should instruct the jury on the actual RAND commitment at issue."). When addressing SDOs generally, the instruction should not say any more than that FRAND means fair, reasonable and non-discriminatory.

*Third*, the instruction includes the following sentence that is the addressed to ETSI specifically and the subject of Qualcomm's Rule 44.1 motion, "Qualcomm has promised to license its patents to all willing licensees, including competitors, on FRAND terms". (*See* ECF No. 876 at 10-11.) To the extent the Court interprets Qualcomm's relevant FRAND commitments as part of the Rule 44.1 motion, the Court's interpretation controls and the instruction should be rejected to the extent it is inconsistent with the Court's holding. Moreover, as also explained in Qualcomm's Rule 44.1 brief, (*see* ECF No. 876 at 10-11) the instruction is incorrect when it says that "A holder of SEPs is obligated to license". The ETSI Intellectual Property Rights Policy states that the patent owner shall be requested to give "an irrevocable undertaking in writing that it is *prepared to grant* irrevocable licenses on fair, reasonable and non-discriminatory terms". *See* ETSI Intellectual Property Rights Policy, at 34-35 (available at https://www.etsi.org/website/document/legal/etsi_ipr-policy.pdf) (emphasis added).

**EXHIBIT F: APPLE & CMS'**
**PROPOSED JURY INSTRUCTIONS**                     -105-                     **CASE NO. 3:17-CV-0108-GPC-MDD**
**WITH OBJECTIONS**

Moreover, the FRAND commitment relevant to this case only requires licensing at the device level. *See HTC Corp.*, 2019 WL 126980, at *5. Thus, this instruction requires the Court to adopt Apple's position on contentious facts. *See Vanskike*, 665 F.2d at 201-02.

*Fourth*, the instruction is also argumentative because it instructs the jury to "determin[e] whether Qualcomm's business practices, specifically its licensing offers and historical net royalties, are FRAND". The jury should be limited to considering the parties' claims and the relevant instructions for those claims. The relevant FRAND commitment under the ETSI IPR does not address "business practices", but rather provides that the patent owner shall be requested to give "an irrevocable undertaking in writing that it is *prepared to grant* irrevocable licenses on fair, reasonable and non-discriminatory terms". (*See* ETSI Intellectual Property Rights Policy, at 34-35 (available at https://www.etsi.org/website/document/legal/etsi_ipr-policy.pdf) (emphasis added).) Moreover, by referring to "net royalties", the instruction adopts Apple's position on disputed facts.

*Fifth*, the instruction is misleading because it states "Qualcomm's non-essential patents are not relevant to the FRAND determination". An accurate statement of the law is that non-essential patents are not subject to any FRAND commitment. Non-essential patents are relevant when evaluating the SULAs.

Qualcomm further objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. The instruction states that "[p]atent owners are not entitled to royalties for patents that are not infringed or that are invalid, exhausted, unenforceable, or expired. Thus, any FRAND royalty or offer must be based on patents that are actually infringed, valid, not exhausted, enforceable, and unexpired." This is inaccurate. This statement is not found in the cited model rule nor the cases Apple and the CMs cite as authority. Licensing agreements, such as those negotiated in light of FRAND commitments, can cover a portfolio of patents and are enforceable—even if covering expired or otherwise unenforceable patents—until the last patent covered has expired. *See Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1026 (9th Cir. 2007) (citing *Brulotte v. Thys Co.*, 379 U.S. 29 (1964)).

Qualcomm also objects to references to the apportionment of patent features, as described by Qualcomm's objections to Apple's Proposed Instruction No. 53.

Finally, Qualcomm objects to this instruction because the jury is not being asked to render a verdict on patent infringement, or defenses to patent infringement of patent exhaustion, invalidity, unenforceability or expiration of any patent. *See* ECF No. 167; ECF No. 737.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 53: APPORTIONMENT

In evaluating apportionment in this case the royalty base must be based on the value attributable to the patented technology, as distinct from other, unpatented features of Apple's product, or other factors such as marketing or advertising, or Apple's size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology.  In other words, the royalty base must be closely tied to the invention.  It is not sufficient to use a royalty base that is too high and then adjust the total amount downward by applying a lower royalty rate.  Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate.  Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

### AUTHORITY

2018 AIPLA Model Patent Jury Instruction 10.2.5.4 (modified).

*Exmark Mfg. Co., v. Briggs & Stratton Power Grp.*, ___ F.3d ___, ___ (Fed. Cir. 2018); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1319 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255 (Fed. Cir. 2013); *LaserDynamics, Inc. v. Quanta Computer, Inc. et al*, 694 F.3d 51, 60 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009); *Imonex Svcs. Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374 (Fed. Cir. 2005).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it inappropriately deviates from the model on which it is based. *See Hynix Semiconductor Inc. v. Rambus Inc.*, No. C-00-20905 RMW, 2009 WL 230039, at *3 (N.D. Cal. Jan. 27, 2009) (noting that "the court's instruction accords with various model instructions, including the AIPLA's Model Patent Jury Instructions"). The actual instruction, which begins "The amount you find as damages . . . ," is written for the apportionment of patent *damages* in a patent infringement action. *Compare* 2018 AIPLA Model Patent Jury Instruction 10.2.5.4. This demonstrates that this instruction is irrelevant and inappropriate because the jury is not being asked to render a verdict on patent infringement, or patent damages stemming from a finding of patent infringement for any patent. *See* ECF No. 167; ECF No. 737.

Qualcomm further objects to this instruction because it misstates the law to the extent it indicates the jury *must* use apportionment to determine a reasonable royalty. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. Determining a "reasonable royalty" *may* involve determining the value of the patented features of an infringing product, as distinguished from the non-patented features, using reliable and tangible methods. However, in the context of patent license negotiations (including negotiations for licenses to SEPs subject to FRAND obligations) SEP holders and prospective licensees are free to agree to contractual terms of their choosing and are not under any obligation to use apportionment or to determine royalties in the same way that a "reasonable royalty" would be determined in a patent infringement lawsuit. *See Ericsson*, 773 F.3d at 1226; *see also HTC Corp.*, 2019 WL 126980, at *5-6 (finding ETSI's IPR policy does not require the use of a particular royalty base). In addition, this instruction misstates the law by suggesting that U.S. patent law rules on damages apply to an ETSI contract.

Finally, Qualcomm objects to the phrase "the invention" as vague and confusing, as there is not a single invention in this case, but many inventions.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 54: SMALLEST

## SALABLE UNIT

A multi-component product may have both patented and unpatented components.  In such products, royalties should be based not on the entire product, but instead on the "smallest salable unit" that practices the patent and has a close relation to the claimed invention.  Where the smallest salable unit is, in fact, a multi-component product containing several unpatented features with no relation to the patented feature, damages must be based on only the portion of the value of that product attributable to the patented technology.  This may involve estimating the value of a feature that may not have ever been sold individually.

### AUTHORITY

2018 AIPLA Model Patent Jury Instruction 10.2.5.5 (modified); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-29 (Fed. Cir. 2014); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255 (Fed. Cir. 2013); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336-37 (Fed. Cir. 2009); *Imonex Svcs. Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374 (Fed. Cir. 2005); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1549-51 (Fed. Cir. 1995) (en banc).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it misstates the law and is misleading.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. Among other reasons discussed further in Qualcomm's *Daubert* Motion and Motion *In Limine* to Exclude Testimony Concerning the Smallest Salable Patent-Practicing Unit, evidence concerning SSPPU is irrelevant and legally wrong.  (*See* ECF No. 816-1 (*Daubert* Motion No. 5 and Mot. in Limine to Exclude Testimony Suggesting a Required Component-Level Royalty Base).)  *First*, SSPPU is a methodology related to U.S. patent infringement law that was articulated 15 years after the SDO contracts at issue, so the instruction could not state the only applicable law.  *See id.* at 3.  *Second*, this instruction is related to a claim for patent

EXHIBIT F:  APPLE & CMS'
PROSPOSED JURY INSTRUCTIONS                    -109-                    CASE NO. 3:17-CV-0108-GPC-MDD
WITH OBJECTIONS

infringement, and there is no patent infringement claims in this case. *See id.* at 9; ECF No. 167 (Order on Motion to Dismiss); ECF No. 737 (Order Granting Qualcomm's Motion for Partial Dismissal). *Third*, even if concepts related to damages for patent infringement were relevant to the jury's breach of FRAND determinations, Apple's and the CMs' instructions do not include other available methodologies, such as using the net selling price of the end-user device. (*See* ECF No. 816-1 at 7). *See also Exmark Mgf. Co. v. Briggs & Stratton Power Prods. Grp.*, 879 F.3d 1332, 1349 (Fed. Cir. 2018) (affirming plaintiff's use of NSP as the royalty base in its calculation for patent damages). *Fourth*, relevant legal precedent has held that FRAND does not require SSPPU. *See id.*; *HTC Corp.*, 2019 WL 126980, at *5-6 (holding that the ETSI IPR Policy "did not intend to impose a requirement that every FRAND license must be based on the SSPPU" and that, as a matter of French law, the policy "does not require a FRAND license to be based on the SSPPU").

Qualcomm further objects to this instruction because it inappropriately deviates from the model on which it is based. *See Hynix Semiconductor*, 2009 WL 230039, at *3 (noting that "the court's instruction accords with various model instructions, including the AIPLA's Model Patent Jury Instructions). *First*, the instruction unjustifiably omits any reference to the entire market value rule. *Second*, Apple and the CMs modify the text—for example substituting "patented" for "infringing" and "unpatented" for "noninfringing"—to obscure the fact that the instruction as written relates to patent damages. The jury is not being asked to render a verdict on patent infringement, or patent damages stemming from a finding of patent infringement for any patent. *See* ECF No. 167; ECF No. 737.

## **APPLE & CMS' PROPOSED INSTRUCTION NO. 55:**

## **THE AGGREGATE ROYALTY BURDEN**

Royalty stacking can arise when a standard implicates numerous patents, perhaps thousands or tens of thousands held by multiple patent owners. If implementers are forced to pay royalties to all owners of standard essential patents, the royalties will "stack" on top of each other and may become excessive in the aggregate. To prevent this problem, a FRAND license should compensate a patent owner for its technical contribution to the technology embodied in a standard, but should not compensate it for mere inclusion in the standard. A proper methodology for determining whether a royalty is FRAND should address the risk of royalty stacking by considering the aggregate royalties that would apply if other standard essential patent owners made royalty demands of the implementer.

## **AUTHORITY**

*Ericsson, Inc. v. D-Link Sys.*, Inc., 773 F.3d 1201, 1209 (Fed. Cir. 2014); *Golden Bridge Tech. v. Apple, Inc.*, 2014 WL 2194501, at *4 (N.D. Cal. May 18, 2014); *In re Innovatio IP Ventures, LLC Patent Litig.*, 2013 WL 5593609, at **9, *10 (N.D. Ill. Oct. 3, 2013); *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2013 WL 2111217, at *12 (W.D. Wash. April 25, 2013).

## **QUALCOMM OBJECTION**

Qualcomm objects to this instruction because "aggregate royalty burden" is not the law; rather, this instruction is opinion testimony from Apple's and the CMs' expert witnesses inappropriately disguised as a jury instruction. *See Catzim*, 2009 WL 2821425, at *14 ("[I]t is still the right of the court *to instruct the jury on the law*, and the duty of the jury to obey the instructions." (emphasis added) (quoting *Sparf*, 156 U.S. at 72)).

Qualcomm further objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. A jury instruction on royalty stacking is inappropriate "unless the accused infringer presents actual evidence of . . . stacking". *Ericsson*, 773 F.3d at 1234. This instruction, by its very nature, is hypothetical: "*If* implementers are forced to pay royalties to all owners of standard essential patents" there could be a "risk of royalty stacking". *Id.* (emphasis added). "The mere fact that thousands of patents are declared to be essential to a

standard does not mean that a standard-compliant company will necessarily have to pay a royalty to each SEP holder." *Id.*

Qualcomm further objects to this instruction because it is argumentative and misleading. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. The statement that "A proper methodology for determining whether a royalty is FRAND should address the risk of royalty stacking by considering the aggregate royalties that would apply if other standards essential patent owners made royalty demands of the implementer" is misleading because it suggests that the jury should consider all possible demands that could be made by SEP holders, rather than actual royalty demands made on the implementer. *See Ericsson*, 773 F.3d at 1209. The fact that a product practices many SEPs does not necessarily mean that manufacturers will face large aggregate royalties. It depends on what royalties, if any, each of the SEP holders actually seeks. Mere assertions that royalty stacking is a possibility are not evidence and are not proper jury instructions.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 56: APPORTIONED ROYALTY OF THE AGGREGATE ROYALTY BURDEN

The "top-down" approach is one way to determine whether a royalty is FRAND.  This approach first determines the maximum aggregate royalty burden and then works down to an apportioned royalty based on the relative value of the standard essential patent owners' portfolio against the value of all patents that are essential to the relevant standards.

## AUTHORITY

*TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. CV 15-2370 JVS(DFMX), 2018 WL 4488286, at *8 (C.D. Cal. Sept. 14, 2018) ("A top down model aims to value a portfolio of SEPs by determining a fair and reasonable total aggregate royalty for all patents that are essential to a standard. It then apportions that royalty to the SEP owners based on the relative value of their portfolio against the value of all patents essential to the standard. . . . The appeal of a top down approach is that it prevents royalty stacking. Stacking occurs when each individual SEP holder demands a royalty which when totaled exceeds the value of all the SEPs in a standard. Because the top down methods starts with the maximum aggregate royalty burden and works down to a fair and reasonable rate, it avoided the possibility that licensees will be forced to pay an unreasonable amount in total. If the total aggregate royalty is properly based upon the total value of the patents in the standard, it can also prevent hold-up because it prevents SEP owners from charging a premium for the value added by standardization.").

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because the "top-down" methodology is not the law; rather, this instruction is opinion testimony from Apple's and the CMs' expert witnesses inappropriately disguised as jury instructions.  *See Catzim*, 2009 WL 2821425, at *14 )("[I]t is still the right of the court *to instruct the jury on the law*, and the duty of the jury to obey the instructions." (emphasis added) (quoting *Sparf*, 156 U.S. at 72).  To the extent that experts discuss this methodology, they are merely proposing to the jury ways in which it might approach the question whether

EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS                 -113-
WITH OBJECTIONS

CASE NO. 3:17-CV-0108-GPC-MDD

Qualcomm's royalties are FRAND.  Thus, this instruction only serves to reiterate the evidence and theories of the case to the jury, which is inappropriate.  *Sarno*, 73 F.3d at 1485; *AutoZone*, 809 F.3d at 923 ("Rather than describing each possible inference of the evidence, the judge may and usually should leave the subject of the interpretation of the evidence to the argument of counsel." (quoting *Hasham*, 200 F.3d 1035 at 1051)); *Noel*, 641 F.3d at 587 ("[G]ood jury instructions . . . let counsel argue factually in terms of a legal standard, rather than having the judge make counsel's particularized arguments for them. . . .  [R]efusal to single out any particular item of evidence is often a sensible approach to evenhandedness in the presentation of the law.")..

## APPLE & CMS' PROPOSED INSTRUCTION NO. 57: COMPARABLE
## AGREEMENTS

Another approach to determine whether a royalty is FRAND is by looking at comparable agreements.  For this approach you may look to prior patent license agreements involving sufficiently comparable technology and economic circumstances.  Comparable technology must relate to the actual patents included in the proposed FRAND royalty or be drawn to related patents in the same technological field.

You should consider the date of an agreement and the threat of injunctive relief at that time as a factor in determining whether the agreements are comparable.

If you find the agreements, specifically the SULA agreements, between Qualcomm and other parties were the result of the monopolistic behavior alleged by Apple and the CMs then those agreements are not comparable agreements.

### AUTHORITY

*VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014); *Limelight Networks, Inc. v. XO Commc'ns, LLC*, No. 3:15–cv–720–JAG, 2018 WL 678245 (E.D. Va. Feb. 2, 2018).

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 396–97 (2006) (Kennedy, J., concurring) ("In cases now arising trial courts should bear in mind that in many instances the nature of the patent being enforced and the economic function of the patent holder present considerations quite unlike earlier cases. An industry has developed in which firms use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees. For these firms, an injunction, and the potentially serious sanctions arising from its violation, can be employed as a bargaining tool to charge exorbitant fees to companies that seek to buy licenses to practice the patent"); *Realtek Semiconductor Corp. v. LSI Corp.*, No. C-12-03451-

RMW, 2014 WL 46997, at *6 (N.D. Cal. Jan. 6, 2014) ("[T]he threat of an injunction is always present in license negotiations. The patent holder's best alternative to a negotiated agreement in patent license negotiations is typically to file suit, which necessarily involves the threat of an injunction. However, as others have discussed, negotiated patent royalties may often be higher than the true value of the technology because an injunction would impose serious hold-up and switching costs on the accused infringer."); *Microsoft Corp. v. Motorola, Inc.*, C–1 0–1 823–JLR, 2013 WL 2111217, at *67 (W.D. Wash. Apr. 25, 2013) ("[A] RAND royalty rate would be the result of a reasonable SEP patent holder and a reasonable implementer negotiating towards a reasonable royalty rate. The threat of a lawsuit, following a history of litigation between the parties, cannot form the basis for such a reasonable negotiation.").

*Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1046 (9th Cir. 2015) ("[H]ad Motorola accepted the RAND rates, it would then be fully compensated for Microsoft's infringing use. The jury could have inferred, from that circumstance, that the injunctive actions were not motivated by a fear of irreparable harm, as payment of the RAND rate would eliminate any such harm. In the absence of a fear of irreparable harm as a motive for seeking an injunction, the jury could have inferred that the real motivation was to induce Microsoft to agree to a license at a higher-than-RAND rate.").

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1332 (Fed. Cir. 2014), overruled on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("A patentee subject to FRAND commitments may have difficulty establishing irreparable harm."); *Apple Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 915 (N.D. Ill. 2012), aff'd in part, rev'd in part and remanded, 757 F.3d 1286 (Fed. Cir. 2014)

(citations omitted) ("The grant of an injunction is not an automatic or even a presumptive consequence of a finding of liability, either generally or in a patent case—in fact the Supreme Court has held that the standard for deciding whether to grant such relief in patent cases is the normal equity standard. . . . A FRAND royalty would provide all the relief to which Motorola would be entitled if it proved infringement of the ′898 patent, and thus it is not entitled to an injunction.").

*Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 877 (9th Cir. 2012) ("Justice Kennedy has suggested that injunctions against patent infringement 'may not serve the public interest' in cases where 'the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations.'" (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 396–97 (2006) (Kennedy, J., concurring)).

Aug. 3, 2013 Letter from the Executive Office of the President (disapproving of the ITC's determination on public policy grounds in Investigation No. 337-TA-794 involving SEPs).

*Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1046 (9th Cir. 2015).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because the "comparables" methodology is not the law; rather, this instruction is opinion testimony from Apple and the CMs' expert witnesses inappropriately disguised as a jury instruction. *See Catzim v. Ollison*, No. CV 05-7169-AHM (OP), 2009 WL 2821424, at *14 (C.D. Cal. Aug. 27, 2009) (quoting *Sparf v. United States*, 156 U.S. 51, 72 (1895) ("[I]t is still the right of the court *to instruct the jury on the law*, and the duty of the jury to obey the instructions." (emphasis added)).  To the extent that experts discuss this methodology, they are merely proposing to the jury ways in which it might approach the question whether Qualcomm's royalties are FRAND.  Thus, this instruction only serves to reiterate the evidence and theories of the case to the jury, which is inappropriate.  *Sarno*, 73 F.3d at 1485; *E.E.O.C. v. AutoZone, Inc.*, 809 F.3d 916,

923 (7th Cir. 2016) ("Rather than describing each possible inference of the evidence, the judge may and usually should leave the subject of the interpretation of the evidence to the argument of counsel."); *Noel v. Artson*, 641 F.3d 580, 587 (4th Cir. 2011) ("[G]ood jury instructions . . . let counsel argue factually in terms of a legal standard, rather than having the judge make counsel's particularized arguments for them. . . . [R]efusal to single out any particular item of evidence is often a sensible approach to evenhandedness in the presentation of the law.").

Furthermore, Qualcomm objects to this instruction because it is misleading. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. *First*, the instruction inappropriately suggests that the SULAs are entirely FRAND encumbered. *Second,* the instructions suggests that comparables are useful only in evaluating FRAND compliance (*i.e.*, in evaluating SEPs), which is untrue. *Third*, the instruction erroneously implies that past licenses for the same patents and licenses for "related" patents are essentially interchangeable. Licenses to "related" patents are less probative than, and likely unnecessary in the presence of, licenses to the same patents. As a result, the Federal Circuit "has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies other than the patent in suit." (*See* ECF No. 805-1 (*Daubert* Motion No. 1 to Exclude Inadmissible Comparable License Analysis) at 5.) *See also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *LaserDynamics*, 694 F.3d at 79 ("[A]lleging a loose or vague comparability between different technologies or licenses . . . does not suffice.").

Qualcomm objects to this instruction because the phrases "threat of injunctive relief" and "monopolistic behavior" are inappropriately vague. *Bryant v. Mattel, Inc.* 2010 WL 11463864, at *13 n. 15 (C.D. Cal. Oct. 29, 2010). *First*, "the threat of an injunction is always present in license negotiations. *Realtek Semiconductor Corp. v. LSI Corp.*, No. C-12-03451-RMW, 2014 WL 46997, at *6 (N.D. Cal. Jan. 6, 2014). It is not and cannot be the law that all prior negotiated licenses are necessarily tainted, and the royalties inflated, by the mere possibility that the patentee could file an infringement suit. *Second*, the phrase "monopolistic behavior" is vague and imprecise, because it is not clear whether this refers to antitrust violations or something more or less. *Third*, "economic circumstances" is vague and overbroad because it is "the agreements *themselves*" that must "compare economically". *Limelight Networks, Inc. v. XO Commc'ns, LLC*, No. 3:15-CV-720-JAG, 2018 WL 678245, at *6 (E.D. Va. Feb. 2, 2018)

Finally, Qualcomm objects to this instruction because it is argumentative and places inappropriate emphasis on matters favorable to Apple and the CMs. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475. The instructions do not include all possible economic comparisons that affect the relevant agreements, and instead feature two factors that are favorable to Apple's

and the CMs' theories in this case – "monopolistic behavior" and the "threat of injunctive relief"..

# APPLE & CMS'PROPOSED INSTRUCTION NO. 58: INFRINGEMENT

Under the patent laws, a patent owner has no right to receive royalties for a patent unless it can show that at least one claim of that patent is infringed.  Someone is said to be infringing a claim of a patent when he, without permission from the patent owner, imports, makes, uses, offers to sell, or sells the invention, as defined by the patent claims, within the United States before the term of the patent expires. Infringement results if the accused product is covered by at least one claim of the patent—that is, if the accused product includes each and every element recited in that patent claim, either literally or through an equivalent.

The patent owner must prove infringement by a preponderance of the evidence.

## AUTHORITY

Adapted from:  2018 AIPLA Model Patent Preliminary Jury Instruction at 3 ("Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell [[the claimed invention] [a product made by a claimed process]], as defined by the claims, within the United States before the term of the patent expires."); 2018 AIPLA Model Patent Preliminary Jury Instruction at 4 ("[The Plaintiff] must prove that [the Defendant] infringes one or more claims of the [abbreviated patent number] patent by a preponderance of the evidence."); 2018 AIPLA Model Patent Jury Instruction 3.0 ("A claim of a patent may be infringed directly or indirectly. As explained further in the following Instructions, direct infringement results if the accused [[product] [method]] is covered by at least one claim of the patent."); 2018 AIPLA Model Patent Jury Instruction 3.2 ("A patent claim is literally infringed only if [the Defendant]'s [[product] [method]] includes each and every [[element] [method step]] recited in that patent claim. If [the Defendant]'s [[product] [method]] does not contain one or more [[elements] [method steps]] recited in a claim, [the

Defendant] does not literally infringe that claim."); 2018 AIPLA Model Patent Jury Instruction 3.7 ("Under the doctrine of equivalents, the [[product] [method]] can infringe an asserted patent claim if it includes [[components] [method steps]] that are equivalent to those elements of the claim that are not literally present in the [[product] [method]]."); 2018 AIPLA Model Patent Jury Instruction 10.0. ("On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed, then you should not consider damages in your deliberations.").

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because the jury is not being asked to render a verdict on any claim of patent infringement. *See* ECF No. 167; ECF No. 737. The existence of a contractual obligation is the basis of the right to receive royalties, not any showing of patent infringement.

Qualcomm further objects to this instruction because it misleading. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. The instruction asserts that "A patent owner cannot receive royalties for a patent unless it can show that at least one claim of that patent is infringed." This is inaccurate. This statement is not found in the cited model rule nor the cases Apple and the CMs cite as authority. Furthermore, the existence of a contractual obligation is the basis of the right to receive royalties, not any showing of patent infringement. The instruction also asserts, "The patent owner must prove infringement by a preponderance of the evidence." The "proof" referenced in this instruction refers to the burden of proof in a patent infringement trial and "royalties" refers to patent damages obtained when proving patent infringement. Neither is applicable in this case where there are no claims of patent infringement. In addition, parties may license patents, particularly a portfolio of patents, without ultimately practicing every licensed patent. *See Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1023 (9th Cir. 2007); *see also Bristol Locknut Co. v. SPS Techs., Inc.*, 677 F.2d 1277, 1283 (9th Cir. 1982). Furthermore, a patented product that a party "imports, makes, uses, offers to sell or sells" pursuant to a license agreement by definition does not infringe the patent because the licensee has carried out these actions with authorization from the patent owner. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 n.2 (2011).

# APPLE & CMS' PROPOSED INSTRUCTION NO. 59: INVALIDITY

Under the patent laws, a patent owner has no right to receive royalties for a patent claim if that claim is invalid. A claimed invention is not valid if, for example, it was anticipated or obvious at the time of invention. If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior art. A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention as of the cutoff date. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more than one item of prior art.

To invalidate a patent, the party challenging the patent must prove invalidity of each challenged claim by clear and convincing evidence.

## AUTHORITY

Adapted from: 2018 AIPLA Model Patent Preliminary Jury Instruction at 5 ("Invalidity of the asserted patent claim(s) is a defense to infringement. . . . [The Defendant] must prove invalidity of each challenged claim by clear and convincing evidence in order to overcome the presumption of validity."); 2018 AIPLA Model Patent Jury Instruction 6 ("An invention must be new to be entitled to patent protection under the U.S. patent laws. If a device or process has been previously invented and disclosed to the public, then it is not new, and therefore the claimed invention is "anticipated" by the prior invention."); 2018 AIPLA Model Patent Jury Instruction 7.0 ("A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention as of the cutoff date. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more than one item of prior art."); 2018 AIPLA Model Patent Jury Instruction 10.0. ("On the other hand, if you find that each of the asserted patent claims is either invalid or is not infringed,

then you should not consider damages in your deliberations."); 2018 AIPLA Model Patent Jury Instructions at 7 (definition of prior art); N.D. Cal. Model Patent Jury Instructions (Rev. Aug. 2017, Updated Dec. 2018) at 1-2, 56 (Preliminary Instructions and Appendix definition of prior art); D. Del. Uniform Jury Instructions for Patent Cases (Mar. 1993) at Glossary of Patent Terms (definition of prior art).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because the jury is not being asked to render a verdict on any claim of patent infringement, nor patent validity, which is a defense to patent infringement.  *See* ECF No. 167; ECF No. 737.

Qualcomm further objects to this instruction because it misstates the law.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  The instruction states:  "A patent owner cannot receive royalties for a patent claim if that claim is invalid."  This is incorrect.  The existence of a contractual obligation is the basis of the right to receive royalties, not any showing of patent validity.  A license agreement that requires the payment of royalties, such as the license agreements in this case covering a portfolio of patents, is not unenforceable merely because it includes one invalid patent.  *See Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1023 (9th Cir. 2007); *see also Bristol Locknut Co. v. SPS Techs., Inc.*, 677 F.2d 1277, 1283 (9th Cir. 1982) ("A licensee remains obligated to pay all royalties under a licensing agreement which accrue until it takes an affirmative step that would prompt the early adjudication of the validity of the patent, such as filing an action contesting the patent's validity or notifying the licensor that the payments were being stopped because the patent was believed to be invalid.")..

## APPLE & CMS' PROPOSED INSTRUCTION NO. 60:

## UNENFORCEABILITY

Under the patent laws, a patent owner has no right to receive royalties for a patent if that patent is unenforceable.  A patent is not enforceable, for example, when the patent owner's course of conduct indicates to others in the industry that it does not intend to enforce its patents.

A patent owner and participant in a SSO may render its patent(s) unenforceable by implied waiver if the misconduct resulted in an unfair benefit. Implied waiver can be shown where (1) the patent owner had a duty of disclosure to the SSO, and (2) the patent owner breached that duty.

## AUTHORITY

Adapted from: 2016 Federal Circuit Bar Association Model Patent Jury Instruction 5.1.  ("When a person involved in the prosecution of an application fails to supply material information or supplies false information or statements and does so with an intent to deceive the PTO, he or she may commit what is called "inequitable conduct." When inequitable conduct occurs during the examination of an application, any patent that issues from that application is unenforceable as a matter of fairness. This means that despite the existence and validity of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.").

Adapted from instructions in *Qualcomm Inc. v. Broadcom Corp.*, No. 05-cv-01958 (S.D. Cal.), as quoted in *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008).

*Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008); *Wang Labs, Inc. v. Mitsubishi Elec. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997) (citing *Spindelfabrik SuessenSchurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987) ("In patent law, an implied license merely signifies a patentee's waiver of the statutory right to exclude others from making, using, or selling the patented invention."); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1365 (Fed. Cir. 2018) ("A participant in a standards-setting organization may waive its right to assert infringement claims against products that practice the standard."); *id.* at 1368 ("Because implied waiver . . . may render an entire patent unenforceable, the doctrine "should only be applied in instances where the patentee's misconduct resulted in [an] unfair benefit."); *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1347–48 (Fed. Cir. 2011); *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1022 (Fed. Cir. 2008) ("[a] duty to speak can arise from a group relationship in which the working policy of disclosure of related intellectual property rights ('IPR') is treated by the group as a whole as imposing an obligation to disclose information in order to support and advance the purposes of the group.").

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because "implied waiver" is indistinguishable from the purported affirmative defense of "Violation of SSO IPR Policy", which was not pleaded and so has been waived. *Quantification Settlement*, 201 Cal. App. 4th at 813; *Jorst*, 2001 WL 969039, at *9 (citing Fed. R. Civ. P. 8(c)); (Countercl.-Def. Apple Inc.'s Answer and Affirmative Defenses ECF No. 84; Defs.' Answer and Countercls., Case No. 3:17-CV-01010-GPC-MDD, ECF No. 84.).

Qualcomm further objects to this instruction because the jury is not being asked to render a verdict on any claim of patent infringement, nor patent unenforceability, which is a defense to patent infringement. *See* ECF No. 167; ECF No. 737. The existence of a contractual obligation is the basis of the right to receive royalties, not any showing of patent enforceability. Moreover, even if there were claims of patent infringement, a defense of patent unenforceability is an equitable issue for the Court, not the jury. *See Jensen*, 835 F.3d at 1111; *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1103 (N.D. Cal. 2007)

(holding that claims of unenforceability would be tried as equitable defense in a standard lawsuit, and therefore the party seeking a declaratory judgment on enforceability was not entitled to a jury).

Qualcomm further objects to this instruction because it omits the relevant burden of proof. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. The authorities cited by Apple and the CMs support that implied waiver must be proved by "clear and convincing evidence", but Apple and the CMs have omitted this burden of proof from the instruction. *See, e.g., Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011).

Finally, Qualcomm objects to this instruction because it is argumentative and misleading. Whether Qualcomm's patents are "unenforceable by implied waiver" by a showing that "(1) the patent owner had a duty of disclosure to the SSO, and (2) the patent owner breached that duty" is irrelevant. (*See* ECF No. 838-1 (Motion in Limine No. 4 to Exclude Evidence of Certain SEP Disclosures.).

**EXHIBIT F:  APPLE & CMS'**
**PROPOSED JURY INSTRUCTIONS**                                            -126-
**WITH OBJECTIONS**

**CASE NO. 3:17-CV-0108-GPC-MDD**

# APPLE & CMS' PROPOSED INSTRUCTION NO. 61:

## INTENTIONALLY OMITTED

## APPLE & CMS' PROPOSED INSTRUCTION NO. 62: CMS' COUNT V
## (BREACH OF FRAND COMMITMENTS)

As I explained earlier, Qualcomm has submitted declarations to ETSI and other standard-setting organizations ("SSOs") in which Qualcomm agreed to license all of its patents essential to the CDMA and LTE standards on FRAND terms. The CMs contend that Qualcomm has breached these FRAND terms. Please refer to Instruction Nos. 52-60 (FRAND Commitment et seq.) for further explanation. To show that Qualcomm has breached its FRAND commitment, the CMs must show:

1.      that Qualcomm has a binding commitment to license its standard essential patents on FRAND terms;

2.      that the CMs are intended third party beneficiaries of Qualcomm's FRAND commitment;

3.      that Qualcomm breached their FRAND commitment by refusing to negotiate material terms of the SULAs with the CMs; and

4.      that the CMs suffered harm as a result of that breach.

The CMs are not a party to Qualcomm's FRAND commitment, but the CMs may be entitled to damages for breach of contract if they prove that Qualcomm and ETSI or other SSOs intended for the CMs to benefit from Qualcomm's FRAND commitment.

It is not necessary for the CMs to have been named in the contract. In deciding what Qualcomm and the SSOs intended, you should consider the entire contract and the circumstances under which it was made.

### AUTHORITY

CACI No. 301 (2019 Edition); CACI No. 303 (2019 Edition).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85; *Stoner*, 2018 WL 4354423, at *3. The instruction eliminates the following element from the model: "that Qualcomm's breach of contract was a substantial

factor in causing the CMs' harm". *See* CACI No. 303. This element is essential to show causation damages.

Qualcomm further objects to this instruction because it is argumentative. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475. *First*, the instruction states that "Qualcomm agreed to license all of its patents essential to the CDMA and LTE standards on FRAND terms". This statement is incorrect for the reasons explained in Qualcomm's Rule 44.1 brief. (*See* ECF No. 876.) The Court should not adopt Apple's position on contentious facts. *Second*, the statement that "Qualcomm breached their FRAND commitment by refusing to negotiate material terms of the SULAs with the CMs" improperly adopts Apple's and the CMs' interpretation of the parties' relationship.

**FOR THE FOREGOING REASONS, QUALCOMM REQUESTS THAT THE COURT GIVE QUALCOMM'S PROPOSED CLOSING INSTRUCTION NO. 7 WITH RESPECT TO THIS ISSUE.**

# APPLE & CMS' PROPOSED INSTRUCTION NO. 63: CMS' COUNT VIII (DECLARATORY JUDGMENT THAT QUALCOMM DID NOT COMPLY WITH ITS OBLIGATIONS) –

**Requested Finding by the CMs:** The CMs seek a finding that Qualcomm has not offered the CMs licenses to Qualcomm's SEPs under FRAND terms.

The CMs contend that a patent owner's FRAND commitments to SSOs, such as ETSI, TIA, and ATIS, are binding contracts and may be breached or otherwise violated. Please see Instruction Nos. 52-60 (FRAND Commitment et seq.) and 6 (Patents) for further information. You must make the requested finding if you determine that that Qualcomm has breached its FRAND commitments to an SSO by finding that:

1. That Qualcomm entered into a binding contract with one or more SSOs; and

2. That Qualcomm failed to comply with its FRAND obligation in offering and/or negotiating a license with the CMs.

## AUTHORITY

CACI No. 303 (2019 Edition); Final Jury Instructions, *Pinnacle Fitness & Recreation Mgmt. v. Moyes Family Trust*, No. 08-CV-1368-GPC (S.D. Cal. Jan. 30, 2013) (Curiel, J.), Closing Instr. No. 14 (Dkt. No. 282) (modified); Cal. Code Civ. Proc. § 1060 (creating right to seek declaratory relief); Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.; *State Pipe & Supply, Inc. v. Coutinho & Ferrostall Inc.*, No. 09-cv-5776, 2010 WL 3700127 (C.D. Cal. July 6, 2010) (proposed jury instruction #7 re: declaratory relief).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85; *Stoner*, 2018 WL 4354423, at *3. The instruction eliminates the following element from the model: "that Qualcomm's breach of contract was a substantial

factor in causing the CMs' harm". *See* CACI No. 303. This element is essential to show causation damages.

Qualcomm further objects to this instruction because it is argumentative. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475. *First*, the instruction states that "Qualcomm agreed to license all of its patents essential to the CDMA and LTE standards on FRAND terms". This statement is incorrect for the reasons explained in Qualcomm's Rule 44.1 brief. (*See* ECF No. 876.) The Court should not adopt Apple's position on contentious facts. *Second*, the statement that "Qualcomm breached their FRAND commitment by refusing to negotiate material terms of the SULAs with the CMs" improperly adopts Apple's and the CMs' interpretation of the parties' relationship.

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 7 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 64: CMS' COUNT VII (PROMISSORY ESTOPPEL)

A promise may be enforceable if it was reasonable and foreseeable that the recipient of the promise would act on the promise to the recipient's detriment. The CMs claim that they were harmed as a result of their reasonably foreseeable reliance on Qualcomm's promise to license all of its patents essential to the CDMA and LTE standards on FRAND terms.

To show that Qualcomm's promise is enforceable, the CMs must show:

1. That Qualcomm made a clear and unambiguous promise;

2. That the CMs relied on Qualcomm's promise;

3. That the CMs' reliance was reasonable and foreseeable; and

4. That the CMs were harmed by their reliance.

## AUTHORITY

*Laks v. Coast Federal Savings & Loan Association*, 60 Cal. App. 3d 885, 890 (1976).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because promissory estoppel is an issue for the Court, not the jury. *See Jensen*, 835 F.3d at 1111; *C & K Eng'g Contractors v. Amber Steel Co.*, 587 P.2d 1136, 1139-41 (Cal. 1978) ("We conclude, accordingly, that the doctrine of promissory estoppel is essentially equitable in nature . . . ."); *Nationwide Biweekly Admin., Inc. v. Superior Court*, 24 Cal. App. 5th 438, 451 (Cal. Ct. App. 2018) ("[T]here is no historical English common law analog to an action based solely on the equitable doctrine of promissory estoppel and, accordingly, there is no state constitutional jury trial right in such a case.").

Qualcomm further objects to this instruction because promissory estoppel is not a valid cause of action under California law when the promise at issue is governed by a valid contract. *See Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984) ("[T]he promissory estoppel doctrine is limited to cases where no benefit flows to the promisor." (quotation marks omitted)); *Realtek Semiconductor Corp. v. LSI Corp.*, No. C-12-03451-RMW, 2013 WL 4778140, at *1 (N.D. Cal. Sept. 6, 2013) ("Because there is a valid, enforceable contract supported by consideration here, [plaintiff] fails to state a claim for promissory estoppel."); *Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1163 (C.D. Cal. 2009) ("Plaintiffs cannot

state a cause of action for promissory estoppel because a valid contract, supported by consideration, governs the same subject matter as the alleged promise."). Therefore, the jury should be instructed that the CMs cannot recover for promissory estoppel if it finds that Qualcomm entered into a valid contract with ETSI, TIA and/or ATIS.  In addition, the CMs' counterclaim for promissory estoppel based on the ETSI FRAND commitment is governed by French law, which does not recognize this claim.  *Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, 2012 WL 1672493, at *15 (N.D. Cal. May 14, 2012) ("French law does not recognize a substantive claim for promissory estoppel.").

# APPLE & CMS' PROPOSED INSTRUCTION NO. 65: CMS' COUNTERCLAIM AGAINST QUALCOMM COUNT X (NEGLIGENT MISREPRESENTATION TO STANDARD-SETTING ORGANIZATIONS)

The CMs claim that they were harmed because Qualcomm negligently misrepresented a fact when it made promises to standard-setting organizations ("SSOs") that it would license its SEPs on FRAND terms.  To establish this claim, the CMs must prove the following:

1.  That Qualcomm represented to an SSO that a fact was true;

2.  That Qualcomm's representation was not true;

3.  That even if Qualcomm may have honestly believed that the representation was true, Qualcomm had no reasonable grounds for believing the representation was true when they made it;

4.  That Qualcomm intended that the CMs and the SSO rely on this representation;

5.  That the CMs and the SSO reasonably relied on Qualcomm's representation;

6.  That the CMs were harmed; and

7.  That the CMs and the SSO's reliance on Qualcomm's representation was a substantial factor in causing the CMs' harm.

## AUTHORITY

CACI No. 1903 (2019 Edition); Negligent Misrepresentation. Civil Code § 1710; *Ragland v. U.S. Bank National Assn.*, 209 Cal. App. 4th 182, 196  (2012) ("The elements of negligent misrepresentation are (1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."); *Public Employees' Retirement System v. Moody's Investors Service, Inc.*,  226 Cal. App.

4th 643, 667−68 (2014) ("Where, as here, a negligent misrepresentation claim is brought against the provider of a professional opinion based on special knowledge, information or expertise regarding a company's value, the California Supreme Court requires the following: 'The representation must have been made with the intent to induce plaintiff, or a particular class of persons to which plaintiff belongs, to actin reliance upon the representation in a specific transaction, or a specific type of transaction, that defendant intended to influence. Defendant is deemed to have intended to influence [its client's] transaction with plaintiff whenever defendant knows with substantial certainty that plaintiff, or the particular class of persons to which plaintiff belongs, will rely on the representation in the course of the transaction.'").

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *Stoner*, 2018 WL 4354423, at *3. The instruction omits the words "all of", which should appear before "the following" in the second sentence of the first paragraph. *See* Judicial Council of California Civil Jury Instructions (2019 Edition) No. 1903.

Qualcomm further objects to this instruction because it misstates the law by including reliance by and harm to the SSOs in the elements of the claim. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. No SSO is a party to this case, thus any reliance by or harm to an SSO is irrelevant to this claim. The jury only should consider negligent misrepresentation if it finds that the CMs have proved harm other than damages for the alleged breach of the relevant FRAND commitments. Under California's economic loss doctrine, the CMs cannot bring a tort claim in a case arising out of a breach of contract for pure economic loss "unless [they] can demonstrate harm above and beyond a broken contractual promise". *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *see also Westport Ins. Corp. v. Vasquez, Estrada and Conway LLP*, No. 15-cv-05789, 2016 WL 1394360, at *5-7 (N.D. Cal. Apr. 8, 2016).

Qualcomm further objects to this instruction because it is misleading and argumentative. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475. The instruction includes the following sentence that is the subject of Qualcomm's Rule 44.1 motion, Qualcomm "made promises to standard-setting organizations ("SSOs") that it would license its SEPs on FRAND terms". (*See* ECF

No. 876 at 10-11.)  To the extent the Court interprets Qualcomm's relevant FRAND commitments as part of the Rule 44.1 motion, the Court's interpretation controls and the instruction should be rejected to the extent it is inconsistent with the Court's holding.  Moreover, as also explained in Qualcomm's Rule 44.1 brief, (*see* ECF No. 876 at 10-11) the instruction is incorrect when it says that Qualcomm "made promises . . . *that it would license*".  The ETSI Intellectual Property Rights Policy states that the patent owner shall be requested to give "an irrevocable undertaking in writing that it is *prepared to grant* irrevocable licenses on fair, reasonable and non-discriminatory terms".  *See* ETSI Intellectual Property Rights Policy, at 34-35 (emphasis added) (available at https://www.etsi.org/website/document/legal/etsi_ipr-policy.pdf).

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 27 with respect to this issue.

**APPLE & CMS' PROPOSED INSTRUCTION NO. 66: CMS' COUNTERCLAIM AGAINST QUALCOMM COUNT IX (WAIVER OF RIGHTS TO OBTAIN COMPENSATION FOR CERTAIN PATENTS) – WAIVER**

The CMs claim that Qualcomm voluntary and intentionally gave up its rights to obtain compensation for its identified patents for the 2G-CDMA, 3G, and 4G/LTE standards other than on FRAND terms by expressly stating in its declarations to at least ETSI, TIA, and ATIS that Qualcomm would license its identified patents under fair, reasonable, and nondiscriminatory terms.  This is called a "waiver."  A waiver may be oral or written or may arise from conduct that shows that Qualcomm gave up that right.  For further information, see Instruction [X] (Waiver)

To establish that Qualcomm has waived its right to obtain compensation other than on FRAND terms, the CMs must prove:

1.    That Qualcomm knew of its rights to compensation for its identified patents for the 2G-CDMA, 3G, and 4G/LTE standards on terms other than fair, reasonable, and non-discriminatory terms; and

2.    That Qualcomm freely and knowingly gave up its right to this compensation by expressly stating in its declarations to at least ETSI, TIA, and ATIS that Qualcomm would license its identified patents under fair, reasonable, and nondiscriminatory terms.

If the CMs prove that Qualcomm gave up its right to CMs' performance related to compensation for its identified patents for the 2G-CDMA, 3G, and 4G/LTE standards on terms other than fair, reasonable, and non-discriminatory terms, then the CMs were not required to perform these obligations.

**AUTHORITY**

CACI No. 336 (2019 Edition); *Roesch v. De Mota*, 24 Cal. 2d 563, 57 (1944) ("Waiver is the intentional relinquishment of a known right after knowledge of the facts."); *Gould v. Corinthian Colleges, Inc.*, 192 Cal. App. 4th 1176, 1179 (2011) ("[Waiver] may be implied through conduct manifesting an intention to waive. Acceptance of benefits under a lease is conduct that supports a finding of waiver."); *Viacao Aerea Sao Paulo v. Int'l Lease Fin. Corp.*, 1988 U.S. App. Lexis 21489, at *19 (9th Cir. Sept. 26, 1988); *Agricola Baja Best v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 994 (S.D. Cal. 2014).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. Waiver may be an affirmative defense, *see* Judicial Council of California Civil Jury Instructions (2019 Edition) No. 306, but waiver is not a cause of action under California law. *See Fidelity & Guaranty Life Ins. Co. v. Albertson*, No. 07cv00045 BTM (LSP), 2007 WL 4224628, at *1 (S.D. Cal. Nov. 26, 2007). To the extent the CMs purport to bring a claim for waiver under French law, they have no such claim, (*see* ECF No. 876 (Qualcomm Incorporated's Motion for Determination of French Law Pursuant to Fed. R. Civ. P. Rule 44.1 at 29)), and cite no relevant authority supporting their instruction.

The instruction also misstates the law and deviates from the model because it fails to state that waiver must be proved by clear and convincing evidence. *See Cruz v. Nat'l Steel and Shipbuilding Co.*, 910 F.3d 1263, 1270 (9th Cir. 2018); CACI 336.

Qualcomm further objects to this instruction because it is argumentative. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Soule*, 8 Cal. 4th at 572. For example, the instruction states "The CMs claim that Qualcomm voluntary and intentionally gave up its rights to obtain compensation for its identified patents for the 2G-CDMA, 3G, and 4G/LTE standards other than on FRAND terms by expressly stating in its declarations to at least ETSI, TIA, and ATIS that Qualcomm would license its identified patents under fair, reasonable, and nondiscriminatory terms", followed by, "This is called a 'waiver'". The CMs also ask the Court to recite its position as to how Qualcomm waived its rights in the second paragraph. This is argumentative because it requires the Court to adopt the CMs' position on disputed issues. *See Vanskike*, 665 F.2d at 201-02.

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 26 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 67: QUALCOMM'S COUNT II (DECLARATION THAT CM SULAS DO NOT VIOLATE QUALCOMM'S FRAND COMMITMENTS TO ETSI)

**Requested Finding by Qualcomm:** Qualcomm seeks a finding that each of its license agreements with the CMs, listed below, does not violate Qualcomm's FRAND commitments to ETSI:

- Compal Subscriber Unit Licensing Agreement, dated February 10, 2000, as amended;

- Foxconn Subscriber Unit License Agreement, dated October 18, 2005, as amended;

- Wistron Subscriber Unit License Agreement, dated May 23, 2007; and

- Pegatron Subscriber Unit License Agreement, dated April 29, 2010, as amended.

Qualcomm seeks a finding that the SULAs do not violate Qualcomm's FRAND commitments to ETSI.

Before you consider any issues related to FRAND, you must consider what patents are part of the FRAND obligation and what patents are included in the SULAs. It is Qualcomm's burden to show which patents included the SULAs are covered by Qualcomm's FRAND obligation.

In deciding whether the SULAs do not violate Qualcomm's FRAND commitments to ETSI, you will consider my previous instructions 52-60 (FRAND Commitment et seq.).

You must make the requested finding if you find: the terms of the SULAs, including the royalties included therein and the method for calculating the same, do not violate Qualcomm's FRAND commitments to ETSI.

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. It is not correct that before

the jury can "consider any issues related to FRAND, [it] must consider what patents are part of the FRAND obligation and what patents are included in the SULAs" and that "[i]t is Qualcomm's burden to show which patents included the SULAs are covered by Qualcomm's FRAND obligation". Rather, the jury must consider Qualcomm's contractual rights. As this Court recognized, "[u]nder *Lexmark*, Qualcomm's patent rights are not determinative of its contract rights", (ECF No. 737 at 11); *see also Lexmark*, 137 S. Ct. at 1526, 1531-33 (a patent holder is entitled to "enforce [a contract] restriction as a matter of contract law", even if the right does not exist as a matter of patent law). In addition, there is no requirement that the jury consider each patent in the portfolio—if that were the case, Apple's and the CMs' instructions on their own FRAND-related claims would have to explain that Apple and the CMs bear the burden of proving which patents are covered by the FRAND obligation. The jury must also be instructed whether FRAND applies to the SULAs because the SULAs, in addition to SEPs, license non-essential patents.

Qualcomm further objects to this instruction because a party's ETSI FRAND obligation to a prospective licensee for its SEPs is discharged by executing a license to those SEPs, as explained in Qualcomm's Rule 44.1 brief. (*See* ECF No. 876 at 6-8.)

# APPLE & CMS' PROPOSED INSTRUCTION NO. 68: APPLE'S AFFIRMATIVE DEFENSES TO QUALCOMM'S COUNT II (DECLARATION THAT SULAS DO NOT VIOLATE FRAND)

Apple asserts the following affirmative defenses to Qualcomm's request for a finding that the SULAs do not violate FRAND. Please refer to Instruction Nos. 52-60 (FRAND Commitment et seq.) for further explanation. I will provide further explanation of these affirmative defenses later on in these instructions.

- The SULAs are unlawful and/or unenforceable as against public policy. Please refer to Instruction No. 111 for an explanation of this affirmative defense, and to Instruction No. 94 for an identification of the laws and public policy at issue.

- Violation of SSO IPR Policy. Please refer to Instruction Nos. 8, 52, and 121 for an explanation of this affirmative defense.

- The SULAs are unconscionable. Please refer to Instruction No. 112 for an explanation of this affirmative defense.

- Unclean hands. Please refer to Instruction No. 115 for an explanation of this affirmative defense.

## QUALCOMM OBJECTION

Qualcomm incorporates by reference its objections to Apple's Proposed Instructions Nos. 8, 52, 94, 111-112, 115, 121.

Qualcomm further objects to this instruction and similar instructions listing affirmative defenses because they are repetitive and unduly emphasize the number of each party's affirmative defenses. *See Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802.  Qualcomm proposes that the Court instruct the jury about which defense applies to which claim when the Court instructs the jury about the relevant defense.  (*See* Qualcomm's Proposed Instruction Nos. 65-71.)

Qualcomm further objects to this instruction to the extent it addresses purported affirmative defenses that Apple did not plead in its Answer.  *See Quantification Settlement*, 201 Cal. App. 4th at 813; *Jorst*, 2001 WL 969039, at *9. Such purported defenses are:

- Violation of SSO IPR Policy; and
- Unconscionability.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 69: QUALCOMM'S COUNT IV (DECLARATION THAT QUALCOMM HAS SATISFIED AND DISCHARGED FRAND COMMITMENTS TO ETSI WITH RESPECT TO APPLE)

**Requested Finding by Qualcomm:**  Qualcomm seeks a finding that its FRAND commitments with respect to Apple have been satisfied and discharged.

Please refer to Instruction No. 52 for further explanation of the FRAND commitment.

Between 2015 and 2017, Qualcomm declined Apple's request to license Qualcomm's SEPs.  Qualcomm seeks a finding that (1) its conduct during these negotiations satisfied Qualcomm's FRAND commitment to ETSI, and (2) Apple's conduct during these negotiations renders it an unwilling licensee.

An unwilling licensee is a putative licensee who unilaterally refuses a FRAND royalty and/or unreasonably delays negotiations to the same effect.

You must make the requested finding if you find: (1) Qualcomm's conduct during these negotiations, including the royalty demanded by Qualcomm, is consistent with its FRAND commitment to ETSI; and (2) Apple's conduct rendered Apple an unwilling licensee.

## AUTHORITY

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1332 (Fed. Cir. 2014), overruled on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("On the other hand, an injunction may be justified where an infringer unilaterally refuses a FRAND royalty or unreasonably delays negotiations to the same effect. *See, e.g.,* U.S. Dep't of Justice and U.S. Patent and Trademark Office, Policy Statement on Remedies for Standard–Essential Patents Subject to Voluntary F/RAND Commitments, at 7–8 (Jan. 8, 2013).  To be clear, this does not mean that an alleged infringer's refusal to accept any license offer necessarily justifies issuing

an injunction.  For example, the license offered may not be on FRAND terms."); *id.* at 1333.

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is argumentative and misleading.  *See White*, 312 F.3d at 1012; *Sarno*, 73 F.3d at 1485; *Bullock*, 159 Cal. App. 4th at 684-85; *Alamo*, 219 Cal. App. 4th at 475.

*First,* the instruction defines an unwilling licensee as "a putative licensee who unilaterally refuses a FRAND royalty and/or unreasonably delays negotiations to the same effect".  The definition of an "unwilling licensee" may be subject to the Court's ruling on the Rule 44.1 motion.  (*See* ECF No. 876 at 12.)  To the extent the Court interprets the definition of "unwilling licensee" as part of the Rule 44.1 motion, the Court's interpretation controls and the instruction should be rejected to the extent it is inconsistent with the Court's holding.  If the Court does not interpret "unwilling licensee", then the jury must determine the meaning of the term without the Court endorsing any particular methodology.  *See Genentech, Inc.*, 43 Cal. 4th at 395.

*Second*, the instruction adopts Apple's position on disputed facts.  *See Vanskike*, 665 F.2d at 201-02.  The instruction states that "Qualcomm declined Apple's request to license Qualcomm's SEPs", which Qualcomm disputes.  In fact, Apple lacked genuine interest in obtaining a license and engaged in negotiation tactics that were inconsistent with good-faith industry practice.  The instruction also inaccurately represents that the time period of "these negotiations" was 2015 to 2017.

Qualcomm's most recent offer to Apple for a license was in 2018. *Finally,* the instruction mischaracterizes that Qualcomm "demanded" a royalty from Apple when in fact Qualcomm made Apple an offer only because Apple requested one.  It is also argumentative to the extent that it implies Qualcomm insisted Apple pay money.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 70: APPLE'S AFFIRMATIVE DEFENSES TO QUALCOMM'S COUNT IV (DECLARATION THAT QUALCOMM HAS SATISFIED AND DISCHARGED FRAND COMMITMENTS TO ETSI WITH RESPECT TO APPLE)

Apple asserts the following affirmative defenses to Qualcomm's request for a finding that Qualcomm has satisfied and discharged FRAND commitments to ETSI with respect to Apple. I previously identified for you the elements relevant to these defenses. Please refer to Instruction Nos. 8, 52 (Standard-Setting Organization (SSO), FRAND Commitment) for further explanation.

- Violation of SSO IPR Policy. Please refer to Instruction Nos. 8, 52, and 121 for further explanation of this affirmative defense.
- Unclean hands. Please refer to Instruction No. 115 for an explanation of this affirmative defense.

### QUALCOMM OBJECTION

Qualcomm incorporates by reference its objections to Instructions Nos. 8, 52, 115, 121.

Qualcomm further objects to this instruction and similar instructions listing affirmative defenses because they are repetitive and unduly emphasize the number of each party's affirmative defenses. *See Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802. Qualcomm proposes that the Court instruct the jury about which defense applies to which claim when the Court instructs the jury about the relevant defense. (*See* Qualcomm's Proposed Instruction Nos. 65-71.)

Qualcomm further objects to this instruction to the extent it refers to the purported defense of "Violation of SSO IPR Policy", which Apple did not plead in its Answer. *See Quantification Settlement*, 201 Cal. App. 4th at 813; *Jorst*, 2001 WL 969039, at *9.

# **CONTRACT CLAIMS**

# APPLE & CMS' PROPOSED INSTRUCTION NO. 71: BREACH OF CONTRACT—THE PARTIES' CONTRACT CLAIMS

Qualcomm, Apple and the CMs bring various contract claims, which I will now describe for you.

### CM SULAs

Qualcomm claims that each of the CMs breached their Subscriber Unit License Agreements ("SULAs"). The CMs, in turn, claim that Qualcomm breached the SULAs, as well as the implied covenant of good faith and fair dealing in these SULAs.

### CM MSAs

Qualcomm claims that the CMs breached their Master Software Agreements ("CM MSAs").

### BCPA

Apple and Qualcomm each claim that the other breached the Business Cooperation and Patent Agreement ("BCPA"). Apple also contends that Qualcomm breached the implied covenant of good faith and fair dealing in the BCPA. Qualcomm in turn contends Apple breached the BCPA. Qualcomm also contends that Apple breached the implied covenant of good faith and fair dealing in Section 7 of the BCPA. Qualcomm does not contend that Apple breached the implied covenant of good faith and fair dealing in any other Section of the BCPA, and you should not consider any such claim.

### Apple SOW

Qualcomm claims that Apple breached Section 4.2 of the February 28, 2013 Statement of Work Agreement ("SOW").

Qualcomm, Apple and the CMs each deny the allegations against them.

Below I instruct you as to the meaning of various terms in the contracts. You must accept these interpretations. You may not render a verdict based on any other interpretation or meaning of the terms.

[PLACEHOLDER FOR INTERPRETATIONS TO BE INCLUDED AFTER COURT RESOLVES CONTRACT INTERPRETATION DISPUTE]

**AUTHORITY**

CACI No. 2200 (2019 Edition) (modified).

**QUALCOMM OBJECTION**

Qualcomm objects to this instruction because it mischaracterizes Qualcomm's claim. *See White*, 312 F.3d at 1012 ("[J]ury instructions must fairly and adequately cover the issues presented . . . ."); *Bains v. W. Pac. R.R. Co.*, 56 Cal. App. 3d 902, 905 (Ct. App. 1976) ("It is, of course, axiomatic that a party is entitled to have the jury instructed as to his theory of the case provided (1) that he requests and submits legally correct instructions, and (2) that there is sufficient evidence to support the theory."). Specifically, Qualcomm objects to the statement that Qualcomm's good faith and fair dealing is limited to Section 7 of the BCPA, which is incorrect. (*See* Joint Pretrial Order at 55; ECF No. 469 ¶ 366 ("By contrast, Apple unfairly has taken advantage of Qualcomm's cooperation efforts and actively sought to harm Qualcomm's business.").)

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 5 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 72: CONTRACT INTERPRETATION

The parties dispute the terms in various contracts.  I will instruct you as to when there is a need to interpret the contracts.  The following instructions provide guidance as to how you should interpret the words in those contracts.

You must decide what the parties intended at the time the contract was formed. You may consider the usual and ordinary meaning of the language used in the contract, as well as the circumstances surrounding the making of the contract.[6]

### AUTHORITY

CACI No. 314 (2019 Edition).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instruction on which it is based.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *Stoner*, 2018 WL 4354423, at \*3.  For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 8 with respect to this issue.

---

[6] This preliminary instruction will apply only to the extent the Court determines it is necessary to instruct the jury on interpreting contract terms.

**EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS
WITH OBJECTIONS**                    -148-                    **CASE NO. 3:17-CV-0108-GPC-MDD**

# APPLE & CMS' PROPOSED INSTRUCTION NO. 73: CONTRACT INTERPRETATION – MEANING OF ORDINARY WORDS

You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.[7]

## AUTHORITY

CACI No. 315 (2019 Edition).

## QUALCOMM OBJECTION

No objection.

---

[7] This preliminary instruction will apply only to the extent the Court determines it is necessary to instruct the jury on interpreting contract terms.

EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS                    -149-                    CASE NO. 3:17-CV-0108-GPC-MDD
WITH OBJECTIONS

**APPLE & CMS' PROPOSED INSTRUCTION NO. 74: CONTRACT**

**INTERPRETATION – CONSTRUCTION OF CONTRACT AS A WHOLE**

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts.  You should use each part to help you interpret the others, so that all the parts make sense when taken together.[8]

**AUTHORITY**

CACI No. 317 (2019 Edition).

**QUALCOMM OBJECTION**

No objection.

---

[8] This preliminary instruction will apply only to the extent the Court determines it is necessary to instruct the jury on interpreting contract terms.

EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS                    -150-                    CASE NO. 3:17-CV-0108-GPC-MDD
WITH OBJECTIONS

## APPLE & CMS' PROPOSED INSTRUCTION NO. 75: CONTRACT INTERPRETATION – TECHNICAL WORDS

You should assume that the parties intended technical words used in the contract to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.[9]

### AUTHORITY

CACI No. 316 (2019 Edition).

### QUALCOMM OBJECTION

No objection.

---

[9] This preliminary instruction will apply only to the extent the Court determines it is necessary to instruct the jury on interpreting contract terms.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 76: CONTRACT INTERPRETATION – CONSTRUCTION BY CONDUCT

In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose. [10]

### AUTHORITY

CACI No. 318 (2019 Edition).

### QUALCOMM OBJECTION

No objection.

---

[10] This preliminary instruction will apply only to the extent the Court determines it is necessary to instruct the jury on interpreting contract terms.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 77: NO SUBJECTIVE INTERPRETATIONS

Parties are bound by the terms of a contract even if they claim that they misunderstood its terms and actually had a different intention or understanding of the meaning of a contract's terms.

## AUTHORITY

*Blumenfeld v. R.H. Macy & Co.*, 92 Cal. App. 3d 38, 46 (1979) ("Blumenfeld was simply mistaken in its belief that it had retained the Macy claim. … Under the objective test of contract formation, a 'meeting of the minds' is unnecessary. A party is bound, even if he misunderstood the terms of a contract and actually had a different, undisclosed intention.").

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is not relevant to any claim or defense that the jury may have to decide. *See Nationwide Transport*, 523 F.3d at 1063-64; *Ericsson*, 773 F.3d at 1234-35. The case on which Apple and the CMs rely relates to the defense of unilateral mistake, *Blumenfeld v. R.H. Macy & Co., Inc.*, 92 Cal. App. 3d 38, 46 (1979) ("Unilateral mistake will not prevent formation of a contract."), but Qualcomm alleges *mutual* mistake. *See* Qualcomm's Proposed Jury Instruction Nos. 24-25; *see also Local Motion, Inc. v. Niescher*, 105 F.3d 1278, 1280 (9th Cir. 1997) ("Mutual mistake is a defense to formation.").

Qualcomm further objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. The instruction states that the jury should not consider the parties' subjective intention or understanding, but the jury will have to do exactly that if the Court decides that the jury must interpret a contract, in which case it should consider "what the parties intended at the time the contract was created". CACI No. 314.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 78: BREACH OF CONTRACT-ESSENTIAL FACTUAL ELEMENTS

To recover damages for breach of contract, the party asserting the breach of contract claim (which I will refer to as the "Claimant") must prove all of the following by a preponderance of the evidence:

1. That the Claimant and the other party to the contract (which I will refer to as the "Counterparty") entered into a contract;

2. That the Claimant did all, or substantially all, of the significant things that the contract required it to do; or that the Claimant was excused from having to do those things;

3. That the Counterparty failed to do something that the contract required it to do;

4. That the Claimant was harmed; and

5. That the Counterparty's breach of contract was a substantial factor in causing the Claimant's harm.

### AUTHORITY

CACI No. 303 (2019 Edition); Final Jury Instructions, *Pinnacle Fitness & Recreation Mgmt. v. Moyes Family Trust*, No. 08-CV-1368-GPC (S.D. Cal. Jan. 30, 2013) (Curiel, J.), Closing Instr. No. 14 (Dkt. No. 282) (modified).

### QUALCOMM OBJECTION

No. objection.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 79: IMPLIED COVENANT OF GOOD FAITH – ESSENTIAL ELEMENTS

In every contract or agreement there is an implied promise of good faith and fair dealing.  This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.  To establish a breach of the implied covenant of good faith and fair dealing, the Claimant must prove all of the following by a preponderance of the evidence:

1. That the Claimant and the Counterparty entered into a contract;

2. That the Claimant did all, or substantially all, of the significant things that the contract required it to do, or that it was excused from having to do those things;

3. That the Counterparty unfairly interfered with the Claimant's right to receive the benefits of the contract; and

4. That the Claimant was substantially harmed[11] by the Counterparty's conduct.

### AUTHORITY

CACI No. 303 (2019 Edition); CACI No. 325 (2019 Edition).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instruction on which it is based, including to delete an essential element of the claim (That all conditions required for the Counterparty's performance had occurred or were excused).  *See* CACI No. 325.

---

[11] We have modified CACI No. 325's causation instruction.  As it appears in CACI No. 325, the instruction states that "Claimant was harmed by the Counterparty's conduct."  It does not explain what type of causation is required. In contrast, CACI No. 303—which concerns breach of contract—includes the "substantial factor" test in the instruction.  We have modified the instruction to treat the causation element consistently across these claims.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 80: NO CONTRADICTING EXPRESS PROVISION OF A CONTRACT

The implied covenant of good faith and fair dealing cannot create an obligation where no express terms exist on which to hinge an implied duty.

Similarly, the implied covenant of good faith and fair dealing cannot prohibit a party to a contract from doing something that is expressly permitted by the agreement.

### AUTHORITY

*Abbit v. ING Annuity & Life Ins. Co.*, 999 F. Supp. 2d 1189, 1198 (S.D. Cal. 2014) (the implied covenant of good faith and fair dealing does "not apply where no express terms exist on which to hinge an implied duty, and where there has been compliance with the contract's express terms"); *Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc.*, 826 P.2d 710 (Cal. 1992) (the implied covenant of good faith and fair dealing may not be "read to prohibit a party from doing that which is expressly permitted by an agreement").

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is unnecessary. *See Sarno*, 73 F.3d at 1485 (A court should deny instructions that are "unnecessary because they were adequately subsumed by the instructions given to the jury."); *Gill*, 488 F.2d at 802 ("Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error."). This proposed instruction is subsumed by Apple's Proposed Instruction No. 79 ["IMPLIED COVENANT OF GOOD FAITH – Essential Elements"], which explains the scope of the implied covenant of good faith and that the covenant "cannot create obligations that are inconsistent with the terms of the contract"..

## APPLE & CMS' PROPOSED INSTRUCTION NO. 81: CAUSATION

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

### AUTHORITY

CACI No. 430 (2019 Edition); Cal. Civ. Code § 3300; *Rich v. Shrader*, 2010 WL 3717373, at *5 (S.D. Cal. Sept. 17, 2010) ("A proximate cause of loss or damage is something that is a substantial factor in bringing about that loss or damage.").

### QUALCOMM OBJECTION

No objection.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 82: OCCURRENCE OF AGREED CONDITION SUBSEQUENT (BCPA)

Apple and Qualcomm agreed in the BCPA that Qualcomm would not have to continue making BCP Payments to Apple if Apple actively induced an agency to initiate an investigation of Qualcomm's licensing practices. Apple contends that this condition did not occur and that Qualcomm had to make all BCP Payments to Apple. To overcome this contention, Qualcomm must prove that Apple actively induced an agency to initiate an investigation of Qualcomm's licensing practices, and that the investigation included a claim that Qualcomm failed to offer a license on FRAND terms or that the sale of Qualcomm components exhausted Qualcomm's patents.

If Qualcomm does not prove that Apple actively induced an agency to initiate an investigation of Qualcomm's licensing practices, then Qualcomm was required to make all BCP Payments to Apple.

### AUTHORITY

Cal. Civ. Code § 1438; *Searle v. Allstate Life Ins. Co.*, 38 Cal. 3d 425, 437–38 (1985) ("It is well established that the burden of proving an excepted risk or condition subsequent which negates full liability is on the insurer and not the beneficiary . . . 'Although the insured has the burden of proving the contract of insurance and its terms, as well as the loss, the burden of bringing itself within any exculpatory clause contained in the policy is on the insurer.'" (quoting *Executive Aviation, Inc. v. Nat'l Ins. Underwriters*, 16 Cal. App. 3d 799, 806 (1971))); *United States v. Eagle Star Ins. Co.*, 196 F.2d 317, 322 (1952) ("Conditions such as those we are here considering are in the nature of conditions subsequent, and the burden is upon the insurer to prove that they have been breached."); *Title Guar. & Sur. Co. v. Nichols*, 224 U.S. 346, 351 (1912) ("The coming into effect of a contract may be made to depend upon the happening or performance of a condition. But a condition

subsequent presupposes a contract in effect which may be defeated by the happening or performance of a condition. Where, therefore, an action is upon a contract subject to a condition precedent, the performance of that condition must be averred and proved; but if the contract sued upon is subject to a condition subsequent, there is no occasion for any averment in respect to the condition. It is a matter of defense, which must come from the other side."); *Javierre v. Central Altagracia*, 217 U.S. 502, 507 (1910) ("The appellants were seeking to escape from the contract made by them on the ground of a condition subsequent, embodied in a proviso. It was for them to show that the facts of the condition had come to pass.").

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is argumentative. *See Sarno*, 73 F.3d at 1485; *Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475. *First*, the instruction adopts Apple's interpretation of Section 7 of the BCPA as containing a condition subsequent whereas Qualcomm contends that Section 7 of the BCPA contains a condition precedent. (*See* ECF No. 881 at 43.) *Second*, the instruction mischaracterizes the BCPA, which conditions Qualcomm's obligation to make BCP Payments on more than just Apple refraining from "inducing" agency investigation. The BCPA also prohibits Apple from "assert[ing]" certain claims, "initiat[ing]" certain litigation and or "suggesting (or inducing a third party to suggest) to a governmental authority that it instigate an investigation regarding a Qualcomm Party's licensing practices". (*See* ECF No. 469 ¶¶ 157, 359.) These and other disputed issues bearing on Apple's proposed instruction have been briefed in connection with Apple's Motion for Summary Judgment on Qualcomm's BCPA Counterclaims (Counterclaims VI, VII, VIII, IX) and in the parties' Joint Pretrial Brief Identifying Disputed Contract Provisions and the Parties' Position on Each Disputed Provision. (*See* ECF No. 602; ECF No. 881.) For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 14.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 83: QUALCOMM'S COUNTERCLAIM VI (BREACH OF THE BCPA) – INDUCING INVESTIGATION

Qualcomm claims that Apple actively induced government agencies to initiate investigations of Qualcomm's licensing practices.  To establish this, Qualcomm must prove that Apple, between January 1, 2013 and December 31, 2016, intended to cause a government agency to initiate an investigation of Qualcomm, that Apple's conduct caused a government agency to initiate an investigation of Qualcomm, and that the investigation included a claim that Qualcomm failed to offer a license on FRAND terms or that the sale of Qualcomm components exhausted Qualcomm's patents.

## AUTHORITY

CACI 2200 (2019 Edition) (modified).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is argumentative. *See Sarno*, 73 F.3d at 1485; *Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475.  *First,* the instruction adopts Apple's interpretation of "active inducement" as used in the BCPA, which is a disputed term in the BCPA that may be interpreted by the Court.  (*See* ECF No. 881 at 40.)  *Second*, the instruction mischaracterizes the BCPA, which conditions Qualcomm's obligation to make BCP Payments on more than just Apple refraining from "inducing" agency investigation.  The BCPA also prohibits Apple from "assert[ing]" certain claims, "initiat[ing]" certain litigation and or "suggesting (or inducing a third party to suggest) to a governmental authority that it instigate an investigation regarding a Qualcomm Party's licensing practices".  (*See* ECF No. 469 ¶¶ 157, 359.)  These and other disputed issues bearing on Apple's proposed instruction have been briefed in connection with Apple's Motion for Summary Judgment on Qualcomm's BCPA Counterclaims (Counterclaims VI, VII, VIII, IX) and in the parties' Joint Pretrial Brief Identifying Disputed Contract Provisions and the Parties' Position on Each Disputed Provision.  (*See* ECF No. 602; ECF No. 881.)  *Third*, this instruction inappropriately singles out one contract claim by Apple and emphasizes Apple's position on the facts of the case.

Qualcomm further objects to this instruction because the Court only should instruct the jury about the meaning of the BCPA if the Court determines that the

contract is unambiguous.  *See F.B.T. Prods.*, 621 F.3d at 963-64; *Leadership Studies*, 2017 WL 6025285, at \*4-5.  To the extent the jury will have to interpret the BCPA, it should be instructed in accordance with CACI Nos. 314-318, which both Qualcomm and Apple include in their proposed instructions.  (*See* Qualcomm Proposed Instructions Nos. 8-13; Apple's Proposed Instructions Nos. 72-77.)

# APPLE & CMS' PROPOSED INSTRUCTION NO. 84: INTRODUCTION TO CONTRACT DAMAGES

If you decide that Qualcomm, Apple or the CMs have proved any claims for breach of contract or breach of the implied covenant of good faith and fair dealing, you also must decide how much money will reasonably compensate that Claimant for the harm caused by the breach.  This compensation is called "damages."  The purpose of such damages is to put the Claimant in as good a position as it would have been if the Counterparty had performed as promised.

To recover damages for any harm, a Claimant must prove by a preponderance of the evidence that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

The Claimant also must prove the amount of its damages according to the following instructions.  It does not have to prove the exact amount of damages.  You must not speculate or guess in awarding damages.

## AUTHORITY

CACI No. 350 (2019 Edition) (modified).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it does not reflect the amount that Apple admits it owes under the 2013 SOW.  *See* Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 17 with respect to this issue..

EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS          -162-          CASE NO. 3:17-CV-0108-GPC-MDD
WITH OBJECTIONS

## APPLE & CMS' PROPOSED INSTRUCTION NO. 85: BREACH OF

## CONTRACT—OBLIGATION TO PAY MONEY ONLY

To recover damages for the breach of a contract to pay money, the Claimant must prove the amount due under the contract.

### AUTHORITY

CACI No. 355 (2019 Edition).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it fails to state the Claimant must prove the amount due "by a preponderance of the evidence". *See Sarno*, 73 F.3d at 1485. Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 18 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 86: JURORS NOT TO CONSIDER ATTORNEY FEES AND COURT COSTS

You must not consider, or include as part of any award, attorney fees or expenses that the parties incurred in bringing or defending this lawsuit.

### AUTHORITY

CACI No. 3964 (2019 Edition).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because the attorney fees incurred by certain parties in bringing or defending this lawsuit are relevant to at least Qualcomm's claim for tortious interference against Apple.  Qualcomm agrees that the jury should not decide whether any award of attorney fees is appropriate, on the understanding that such issues shall be determined by the Court, if necessary, following trial..

## APPLE & CMS' PROPOSED INSTRUCTION NO. 87: SUMMARY OF AFFIRMATIVE DEFENSES FOR EACH OF THE BREACH OF CONTRACT CLAIMS

Each defendant to a breach of contract claim has asserted different affirmative defenses, depending on the particular contract claim. I will explain them to you now.

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because the attorney fees incurred by certain parties in bringing or defending this lawsuit are relevant to at least Qualcomm's claim for tortious interference against Apple. Qualcomm agrees that the jury should not decide whether any award of attorney fees is appropriate, on the understanding that such issues shall be determined by the Court, if necessary, following trial.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 88: APPLE'S AFFIRMATIVE DEFENSES TO QUALCOMM'S COUNTERCLAIMS VI AND VII (BREACH OF THE BCPA AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

Apple asserts the following affirmative defenses to Qualcomm's claim that Apple breached the BCPA and the implied covenant of good faith and fair dealing in connection with Section 7 of the BCPA.[12]  At the end of these instructions, I will explain the elements relevant to these affirmative defenses.

- Section 7 of the BCPA, as interpreted by Qualcomm, is unlawful and/or unenforceable as against public policy.  Please refer to Instruction No. 111 for an explanation of this affirmative defense, and to Instruction No. 95 for an identification of the laws and public policy at issue.

- Unclean hands. Please refer to Instruction No. 115 for an explanation of this affirmative defense.

- Cal. Civ. Code § 47(b) Privilege: Please refer to Instruction No. 119 for an explanation of this affirmative defense.

- Sections 4 and 7 of the BCPA, as interpreted by Qualcomm, constitute unreasonable liquidated damages provisions.  Please refer to Instruction No. 120 for an explanation of this affirmative defense.

- Estoppel: Please refer to Instruction No. 113 for an explanation of this affirmative defense.

- Waiver: Please refer to Instruction No. 114 for an explanation of this affirmative defense.

- Ratification: Please refer to Instruction No. 117 for an explanation of this affirmative defense.

---

[12] Apple understands that Qualcomm's claim for breach of the implied covenant of good faith and fair dealing is limited to claims related to Section 7 of the BCPA.

- Acquiescence: Please refer to Instruction No. 116 for an explanation of this affirmative defense.

- Consent. Please refer to Instruction No. 118 for an explanation of this affirmative defense.

- Laches. Please refer to Instruction No. 123 for an explanation of this affirmative defense.

## QUALCOMM OBJECTION

Qualcomm incorporates by reference its objections to Apple's Proposed Instructions Nos. 95, 111, 113-120, 123.

Qualcomm further objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. Section 47(b) privilege is a defense only to a tort claim, not to a breach of contract claim. *Crossroads Investors, L.P. v. Fed. Nat'l Mortgage Ass'n*, 13 Cal. App. 5th 757, 787 (Ct. App. 2017) ("Generally, the litigation privilege precludes liability in tort, not liability for breach of contract. If one expressly contracts not to engage in certain speech or petition activity and then does so, applying the privilege would frustrate the very purpose of the contract if there was a privilege to breach it.").

Qualcomm further objects to this instruction and similar instructions listing affirmative defenses because they are repetitive and unduly emphasize the number of each party's affirmative defenses. *See Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802. Qualcomm proposes that the Court instruct the jury about which defense applies to which claim when the Court instructs the jury about the relevant defense. (*See* Qualcomm's Proposed Instruction Nos. 65-71.)

Qualcomm further objects to this instruction because it mischaracterizes Qualcomm's claim. *See White*, 312 F.3d at 1012; *Bains*, 56 Cal. App. 3d at 905. Specifically, Qualcomm objects to the statement that Qualcomm's good faith and fair dealing is limited to Section 7 of the BCPA, which is incorrect. (*See* Joint Pretrial Order at 55; ECF No. 469 ¶ 366 ("By contrast, Apple unfairly has taken advantage of Qualcomm's cooperation efforts and actively sought to harm Qualcomm's business.").)

## APPLE & CMS' PROPOSED INSTRUCTION NO. 89: QUALCOMM'S AFFIRMATIVE DEFENSES TO APPLE'S COUNTS I-II (ALLEGED BREACH OF THE BCPA)[13]

Qualcomm asserts the following affirmative defenses to Apple's claim that Qualcomm breached the BCPA and the implied covenant of good faith and fair dealing in the BCPA.  At the end of these instructions, I will explain the elements relevant to these affirmative defenses.

- Waiver: Please refer to Instruction No. 114 for an explanation of this affirmative defense.

- Ratification: Please refer to Instruction No. 117 for an explanation of this affirmative defense.

- Mistake: Please refer to Instruction No. 124 for an explanation of this affirmative defense.

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it omits the following Qualcomm affirmative defenses to Counts I and II that should be decided by the jury:  excuse, acquiescence, consent, failure to mitigate and unjust enrichment.  In addition, the instruction omits the following Qualcomm affirmative defenses to Counts I and II that should be decided by the advisory jury if the Court decides to empanel an advisory jury:  estoppel and unclean hands.

Qualcomm further objects to this instruction and similar instructions listing affirmative defenses because they are repetitive and unduly emphasize the number of each party's affirmative defenses.  *See Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802.  Qualcomm proposes that the Court instruct the jury about which defense applies to which claim when the Court instructs the jury about the relevant defense.  (*See* Qualcomm's Proposed Instruction Nos. 65-71.)

---

[13] This reflects Apple's understanding of the affirmative defenses asserted by Qualcomm.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 90: CMS'AFFIRMATIVE DEFENSES TO QUALCOMM'S CLAIM I (ALLEGED BREACH OF THE LICENSE AGREEMENT)

The CMs assert the following affirmative defenses to Qualcomm's claim that the CMs breached their SULAs. At the end of these instructions, I will explain the elements relevant to these affirmative defenses.

- The SULAs are unlawful and/or unenforceable as against public policy. Please refer to Instruction No. 111 for an explanation of this affirmative defense, and to Instruction No. 94 for an identification of the laws and public policy that the CMs contend are at issue.

- The SULAs are unconscionable. Please refer to Instruction No. 112 for an explanation of this affirmative defense.

- Unclean hands. Please refer to Instruction No. 115 for an explanation of this affirmative defense.

- Estoppel: Please refer to Instruction No. 113 for an explanation of this affirmative defense.

- Waiver: Please refer to Instruction No. 114 for an explanation of this affirmative defense.

- Excuse: Please refer to Instruction No. 122 for an explanation of this affirmative defense.

- Ratification: Please refer to Instruction No. 117 for an explanation of this affirmative defense.

- Acquiescence: Please refer to Instruction No. 116 for an explanation of this affirmative defense.

- Consent. Please refer to Instruction No. 118 for an explanation of this affirmative defense.

**EXHIBIT F: APPLE & CMS' PROPOSED JURY INSTRUCTIONS WITH OBJECTIONS** -169- **CASE NO. 3:17-CV-0108-GPC-MDD**

- Certain of the damages and/or Late Charges Qualcomm seeks constitute unenforceable liquidated damages. Please refer to Instruction No. 120 for an explanation of this affirmative defense.
- Laches. Please refer to Instruction No. 123 for an explanation of this affirmative defense.
- Violation of SSO IPR Policy. Please refer to Instruction Nos. 8, 52, and 121 for further explanation of this affirmative defense.

**QUALCOMM OBJECTION**

Qualcomm incorporates by reference its objections to Instructions Nos. 8, 52, 94, 111-118, 120, 121-123.

Qualcomm further objects to this instruction and similar instructions listing affirmative defenses because they are repetitive and unduly emphasize the number of each party's affirmative defenses.  *See Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802.  Qualcomm proposes that the Court instruct the jury about which defense applies to which claim when the Court instructs the jury about the relevant defense.  (*See* Qualcomm's Proposed Instruction Nos. 65-71.)

**APPLE & CMS' PROPOSED INSTRUCTION NO. 91: CMS'**

**AFFIRMATIVE DEFENSES TO QUALCOMM'S CLAIM II (ALLEGED**

**BREACH OF THE SOFTWARE AGREEMENT)**

The CMs assert the following affirmative defenses to Qualcomm's claim that the CMs breached the MSAs.  At the end of these instructions, I will explain the elements relevant to these affirmative defenses.

- The MSAs are unlawful and/or unenforceable as against public policy.  Please refer to Instruction No. 111 for an explanation of this affirmative defense, and to Instruction No. 94 for an identification of the laws and public policy that the CMs contend are at issue

- The MSAs are unconscionable. Please refer to Instruction No. 112 for an explanation of this affirmative defense.

- Unclean Hands. Please refer to Instruction No. 115 for an explanation of this affirmative defense.

- Estoppel. Please refer to Instruction No. 113 for an explanation of this affirmative defense.

- Waiver. Please refer to Instruction No. 114 for an explanation of this affirmative defense.

- Excuse. Please refer to Instruction No. 122 for an explanation of this affirmative defense.

- Ratification. Please refer to Instruction No. 117 for an explanation of this affirmative defense.

- Acquiescence. Please refer to Instruction No. 116 for an explanation of this affirmative defense.

- Consent. Please refer to Instruction No. 118 for an explanation of this affirmative defense.

- Laches. Please refer to Instruction No. 123 for an explanation of this affirmative defense.

- Violation of SSO IPR Policy. Please refer to Instruction Nos. 8, 52, and 121 for further explanation of this affirmative defense.

### QUALCOMM OBJECTION

Qualcomm incorporates by reference its objections to Instructions Nos. 8, 52, 94, 111-118, 121-123.

Qualcomm further objects to this instruction and similar instructions listing affirmative defenses because they are repetitive and unduly emphasize the number of each party's affirmative defenses. *See Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802. Qualcomm proposes that the Court instruct the jury about which defense applies to which claim when the Court instructs the jury about the relevant defense. (*See* Qualcomm's Proposed Instruction Nos. 65-71.)

## APPLE & CMS' PROPOSED INSTRUCTION NO. 92: APPLE'S AFFIRMATIVE DEFENSES TO QUALCOMM'S CLAIM V (ALLEGED BREACH OF THE SOW)

Apple asserts the following affirmative defenses to Qualcomm's claim that Apple breached the SOW.  At the end of these instructions, I will explain the elements relevant to these affirmative defenses.

- Estoppel. Please refer to Instruction No. 113 for an explanation of this affirmative defense.
- Acquiescence. Please refer to Instruction No. 116 for an explanation of this affirmative defense.
- Consent. Please refer to Instruction No. 118 for an explanation of this affirmative defense.

### QUALCOMM OBJECTION

Qualcomm incorporates by reference its objections to Instructions Nos. 113, 116 and 118.

Qualcomm further objects to this instruction and similar instructions listing affirmative defenses because they are repetitive and unduly emphasize the number of each party's affirmative defenses.  *See Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802.  Qualcomm proposes that the Court instruct the jury about which defense applies to which claim when the Court instructs the jury about the relevant defense.  (*See* Qualcomm's Proposed Instruction Nos. 65-71.)

# UNENFORCEABLE AS AGAINST PUBLIC POLICY

## <u>APPLE & CMS' PROPOSED INSTRUCTION NO. 93: INTRODUCTION TO UNENFORCEABILITY AGAINST PUBLIC POLICY</u>

Under general principles of California contract law, a contract, or contractual provision, is unlawful, and therefore unenforceable, if it is contrary to an express provision of law or contrary to the policy of express law, though not expressly prohibited.  Accordingly, a contract is unenforceable if it is:

      1.  Contrary to an express provision of law or

      2.  Contrary to the public policies implicit in such laws.

Such contracts are against public policy.

"Law" as used in this instruction is to be understood broadly and includes statutes, constitutions, local ordinances, and administrative regulations issued pursuant to them, as well as common law rules or decisions by courts.

### AUTHORITY

Cal. Civil Code §§ 1598-99; 1667 (defining unlawful contracts); *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 425 P.3d 1, 8 (Cal. 2018); *Morey v. Paladini*, 203 P. 760, 762 (Cal. 1922) ("a void contract, a contract against public policy or against the mandate of the statute, may not be made the foundation of any action, either in law or in equity"); *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 540-41 (Ct. App. 2004) ("explaining that "illegal contracts" can be "functionally described as contracts unenforceable on grounds of public policy"); *D'Arrigo Bros. of California v. United Farmworkers of Am.*, 169 Cal. Rptr. 3d 171 (2014); *Cariveau v. Halferty*, 99 Cal. Rptr. 2d 417 (2000).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because whether a contract is unlawful is an issue for the Court, not the jury.  *See Jensen*, 835 F.3d at 1111; *Erhart*, 2017 WL 588390, at *6 (courts determine whether contracts violate laws).

Qualcomm further objects to this instruction because it misstates the law.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  Under California law, a contract will be invalidated only if its enforcement is "*clearly* outweighed" in the circumstances by public policy.  *See Erhart*, 2017 WL 588390, at *6 (citing

Restatement (Second) of Contracts § 178) (emphasis added)); *Boston LLC v. Juarez*, 245 Cal. App. 4th 75, 86 (Ct. App. 2016); *Halferty*, 99 Cal. Rptr. 2d at 420.  The instruction also fails to state that the jury must balance the relevant interest in enforcing the contract against the interests advanced by the identified policies in deciding whether to enforce the contract.  *See Erhart*, 2017 WL 588390, at *6.

The instruction also misstates the law because it fails to instruct the jury on when an otherwise unlawful agreement would nonetheless be enforced under California law.  *See Asdourian v. Ajar*, 38 Cal. 3d 276, 292-293 (1985) (holding that unlawful agreements should nonetheless be enforced where (1) the defendant is not a member of a group primarily in need of the statute's protection, (2) the contracted object is immoral in character or (3) failure to enforce the agreement will result in unjust enrichment).

Qualcomm further objects to this instruction because it is confusing.  *See Fernandez-Ruiz*, 251 F. App'x at 480.  The reference to "statutes, constitutions, local ordinances, and administrative regulations issued pursuant to them, as well as common law rules or decisions by courts" is vague and ambiguous.  *See Bryant*, 2010 WL 11463864, at *13 n.15.  Moreover, the jury would not have access, nor should it, to the purported laws and case law to which the instruction refers.

**APPLE & CMS' PROPOSED INSTRUCTION NO. 94: APPLE'S COUNT LXI; CMS' COUNT XII (DECLARATION THAT SULAS ARE UNENFORCEABLE AS AGAINST PUBLIC POLICY)**

**Requested Finding by Apple and the CMs**:  The SULAs between Qualcomm and the CMs are unenforceable as against public policy.

The laws and public policies that you should consider are:

a. Section 2 of the Sherman Act (15 U.S.C. § 1 et seq.), which prohibits monopolization.  I describe Section 2 of the Sherman Act to you in Instruction No. 12.

b. Section 1 of the Sherman Act, 15 U.S.C. § 1, which prohibits agreements that unreasonably restrain trade.  I describe Section 1 of the Sherman Act to you in Instruction No. 20.  Violations of Section 1 of the Sherman are also violations of Section 2 of the Sherman Act, provided the other elements of a Section 2 claim are met.

c. The Cartwright Act, (Cal. Bus. & Prof. Code § 16700 et seq.), which prohibits combinations to restrict trade or commerce.  I describe the Cartwright Act to you in Instruction No. 20. Section 16722 of the Cartwright Act states that any contract in violation of the Cartwright Act is unenforceable.

d. California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200). I describe the Unfair Competition Law to you in Instruction No. 48.

e. The doctrine of patent exhaustion, as reflected in case law, which provides that the initial authorized sale of a patented article, or an article that substantially embodies a patent claim, terminates—or "exhausts"—all patent rights to that article.  In other words, under the patent laws, a patent owner has no right to receive royalties for a patent

claim that is exhausted.  The SULAs seek to collect licensing fees on exhausted patents.  Please refer to Instruction No. 7 for an explanation of "patent exhaustion."

f.  Law that bars the bundling of exhausted and non-exhausted patents. The SULAs collect licensing fees or royalties on bundles of exhausted and non-exhausted patents.

g.  Laws that make it unlawful to violate FRAND commitments to SSOs. The SULAs violate Qualcomm's FRAND commitments to SSOs.

h.  Law that states that a patent owner may not use its patent to leverage power over or impose terms that improperly extend its patent rights.

i.  The SULAs violate Qualcomm's contractual commitment to license its SEPS on FRAND terms, pursuant to its contracts with SSOs including at least ETSI, TIA, and ATIS (Proposed Instruction Nos. 8 and 52-60 (SSO, FRAND Commitment et seq.)).

**AUTHORITY**

For Declaratory Relief:

Cal. Code Civ. Proc. § 1060 (creating right to seek declaratory relief); Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; *State Pipe & Supply, Inc. v. Coutinho & Ferrostall Inc.*, No. 09-cv-5776, 2010 WL 3700127 (C.D. Cal. July 6, 2010) (proposed jury instruction #7 re: declaratory relief).

On Contracts That Are Unlawful, Void, and Against Public Policy:

Cal. Civil Code §§ 1598-99, 1667 (defining unlawful contracts); *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 425 P.3d 1, 8 (Cal. 2018); *Morey v. Paladini*, 203 P. 760, 762 (Cal. 1922) ("a void contract, a contract against public

policy or against the mandate of the statute, may not be made the foundation of any action, either in law or in equity"); *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 540-41 (Ct. App. 2004) ("explaining that "illegal contracts" can be "functionally described as contracts unenforceable on grounds of public policy"); *D'Arrigo Bros. of California v. United Farmworkers of Am.*, 169 Cal. Rptr. 3d 171 (2014); *Cariveau v. Halferty*, 99 Cal. Rptr. 2d 417 (2000).

On Laws and Public Policies Implicated By This Count:

*Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008) (the longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item); *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1532–33 (2017) ("This Court accordingly has long held that, even when a patentee sells an item under an express restriction, the patentee does not retain patent rights in that product."); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 136 (1969) ("A patentee must respect "established limits . . . in employing the leverage of his patent to control or limit the operations of the licensee."); *Gen. Talking Pictures Corp. v. W. Elec. Co.*, 305 U.S. 124, 127 (1938) ("A patentee must ensure any license restrictions and conditions it imposes are "reasonably within the reward which the patentee by the grant of the patent is entitled to secure.") (quotation omitted); *Brulotte v. Thys Co.*, 379 U.S. 29, 32-33 (1964) ("we conclude that a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se."); *Kimble v. Marvel Entm't*, LLC, 135 S. Ct. 2401, 2413 (2015) ("That patent (not antitrust) policy gave rise to the Court's conclusion that post-patent royalty contracts are unenforceable – utterly 'regardless of a demonstrable effect on competition.'") (citation omitted); *Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1023 (9th Cir. 2007)

(offending contract terms are unenforceable); *United States v. Grinnell Corp.*, 384 U.S. 563, 576 (1963) ("restrictive agreements" were an "unlawful and exclusionary practice" under Section 2); *United States v. Reading Co.*, 226 U.S. 324 (1912) (cancellation of contracts and enjoining future executions of contracts); *Continental Wall Paper Co. v. Louis Voight & Sons Co.*, 212 U.S. 227, 261 (1909) (refusal to enforce contracts that were unlawful restraints of trade); *Shawnee Compress Co. v. Anderson*, 209 U.S. 423, 435 (1908) (lease in furtherance of a monopoly void); Sherman Act §§ 1-2, 15 U.S.C. § 1 *et seq.*; Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.*; California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because whether a contract is unlawful is an issue for the Court, not the jury. *See Jensen*, 835 F.3d at 1111; *Erhart*, 2017 WL 588390, at *6 (courts determine whether contracts violate laws).

Qualcomm further objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. Under California law, a contract will be invalidated only if its enforcement is "*clearly* outweighed" by public policy. *See Erhart*, 2017 WL 588390, at *6 (citing Restatement (Second) of Contracts § 178) (emphasis added)); *Juarez*, 245 Cal. App. 4th at 86; *Halferty*, 99 Cal. Rptr. 2d at 420. The instruction also fails to state that the jury must balance the relevant interest in enforcing the contract against the interests advanced by the identified policies in deciding whether to enforce the contract. *See Erhart*, 2017 WL 588390, at *6.

The instruction also misstates the law because it fails to instruct the jury on when an otherwise unlawful agreement would nonetheless be enforced under California law. *See Asdourian*, 38 Cal. 3d at 292-293.

The instruction also improperly includes by reference other misstatements of "law" (*e.g.*, "Law that bars the bundling of exhausted and non-exhausted patents") and improperly states as fact Apple's disputed contentions on core issues in the case (*e.g.*, "The SULAs violate Qualcomm's FRAND commitments to SSOs").

In addition, the statement that "under the patent laws, a patent owner has no right to receive royalties for a patent claim that is exhausted" misstates the law. A patent holder may enforce a contract restriction as a matter of contract law even if the right is unavailable as a matter of patent law. *See Lexmark*, 137 S. Ct. at, 1531-33; *see also* ECF No. 737 at 10 ("*Lexmark* thus makes clear that sales exhausts *patent rights*, which is distinct and not dispositive of *contract rights*.").

Qualcomm further objects to this instruction because it is confusing. *See Fernandez-Ruiz*, 251 F. App'x at 480.  The references to "[l]aws" and "case law" are vague and ambiguous.  *See Bryant*, 2010 WL 11463864, at *13 n.15.  Moreover, the jury does not have access, nor should it, to the purported laws and case law to which Apple refers.

**APPLE & CMS' PROPOSED INSTRUCTION NO. 95: APPLE'S COUNT IV**

**(DECLARATION OF RIGHTS UNDER THE BCPA ‑ SECTION 7**

**UNENFORCEABLE AGAINST PUBLIC POLICY)**

**Requested Finding by Apple**:  If Qualcomm's interpretation of Section 7 of the BCPA is given effect, the interpretation would render Section 7 unenforceable as against public policy.

The laws and public policies that you should consider are:

1.  Administrative regulations and laws in the United States, Korea, Europe, and Taiwan, that state that companies must comply with subpoenas and civil investigative demands from government agencies.

2.  Public policy in the United States, Korea, and Europe that favors full and truthful cooperation with government investigations and discourages retaliation in response to such cooperation.

**AUTHORITY**

On Declaratory Relief:

Cal. Code Civ. Proc. § 1060 (creating right to seek declaratory relief); Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; *State Pipe & Supply, Inc. v. Coutinho & Ferrostall Inc.*, No. 09-cv-5776, 2010 WL 3700127 (C.D. Cal. July 6, 2010) (proposed jury instruction #7 re: declaratory relief). \

On Contracts That Are Unlawful, Void, and Against Public Policy:

Cal. Civil Code §§ 1598-99, 1667 (defining unlawful contracts); *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 425 P.3d 1, 8 (Cal. 2018); *Morey v. Paladini*, 203 P. 760, 762 (Cal. 1922) ("a void contract, a contract against public

policy or against the mandate of the statute, may not be made the foundation of any action, either in law or in equity"); *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 540-41 (Ct. App. 2004) ("explaining that "illegal contracts" can be "functionally described as contracts unenforceable on grounds of public policy"); *D'Arrigo Bros. of California v. United Farmworkers of Am.*, 169 Cal. Rptr. 3d 171 (2014); *Cariveau v. Halferty*, 99 Cal. Rptr. 2d 417 (2000).

On Applicable Law and Public Policy:

15 U.S.C. §§ 49, 57b-1 (requiring Apple to comply with all subpoenas and CIDs from the FTC); 16 C.F.R. §§ 2.7, 2.10, 2.11, 2.12 (requiring Apple to comply with all subpoenas and CIDs from the FTC); 16 C.F.R. §§ 2.4 (FTC rules of practice that state that the FTC "expects all parties to engage in meaningful discussions with staff."); *In re Air Passenger Computer Reservation Sys. Antitrust Litig.*, 116 F.R.D. 390, 392 (C.D. Cal. 1986) (Case law that forbids retaliation against witnesses in FTC investigations); International Competition Network, Guidance on Investigative Process at p. 1, 5;  The Korean Monopoly Regulation and Fair Trade Act, Art. 23-2, 23-3 (forbids an investigative target of a KFTC investigation, like Qualcomm, from retaliating against or giving any "disadvantage" to another company for "cooperating with investigations of unfair trade practices)); Korean Monopoly Regulation and Fair Trade Act art. 23-2; 23-3; European Council Regulation 1/2003, art. 18 ¶ 1, 2002 O.J. ("In order to carry out the duties assigned to it by this Regulation, the Commission may, by simple request or by decision, require undertakings and associations of undertakings to provide all necessary information."); European Council Guideline, 2006 O.J. (C 210/2) ("the Commission will also pay particular attention to any steps taken to coerce other undertakings to participate in the infringement and/or any retaliatory measures taken against other

undertakings with a view to enforcing the practices constituting the infringement."); Taiwan Fair Trade Act, Art. 27 ("Any person, subject to an investigation conducted by the competent authority pursuant to the provisions of Paragraph 1, shall not evade, obstruct, or refuse to cooperate without justification.").

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because whether a contract is unlawful is an issue for the Court, not the jury. *See Jensen*, 835 F.3d at 1111; *Erhart*, 2017 WL 588390, at *6 (courts determine whether contracts violate laws).

Qualcomm further objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. Under California law, a contract will only be invalidated if its enforcement is "*clearly* outweighed" in the circumstances by public policy. *See Erhart*, 2017 WL 588390, at *6 (citing Restatement (Second) of Contracts § 178) (emphasis added)); *Juarez*, 245 Cal. App. 4th at 86; *Halferty*, 99 Cal. Rptr. 2d at 420. The instruction also fails to state that the jury must balance the relevant interest in enforcing the contract against the interests advanced by the identified policies in deciding whether to enforce the contract. *See Erhart*, 2017 WL 588390, at *6.

The instruction also misstates the law because it fails to instruct the jury on when an otherwise unlawful agreement would nonetheless be enforced under California law. *See Asdourian*, 38 Cal. 3d at 292-293.

The instruction also misstates the law to the extent it instructs that a contract is unenforceable in California based on the laws and public policies of foreign countries. *See Northrop Corp. v. Triad Int'l Mktg. S.A.*, 811 F.2d 1265, 1270 (9th Cir. 1987) (rejecting the argument "that California law, as a matter of public policy, prohibits enforcement of a contract where performance of the contact would be illegal under the law of a foreign state"); *see also Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 543 (2004) (analyzing "whether or not a contract is unenforceable as contrary to the public policy *of California*") (emphasis added).

In addition, the instruction omits relevant, countervailing public policy, including "the strong public policy" of "the encouragement of settlements". *Fisher v. Superior Court*, 103 Cal. App. 3d 434, 440 (1980); *see also In re Exxon Valdez*, 239 F.3d 985, 988 (9th Cir. 2001) (finding that the public policy supporting settlement of disputes militated in favor of enforcing agreement).

**APPLE & CMS' PROPOSED INSTRUCTION NO. 96: APPLE'S COUNT LX (DECLARATION OF RIGHTS UNDER STA ASSIGNMENT AGREEMENT)**

**Requested Finding by Apple:** Section 4.4 of the STA Assignment Agreement is unenforceable as against public policy.

The laws and public policies that you should consider are:

1. The doctrine of patent exhaustion, as reflected in case law, which provides that the initial authorized sale of a patented article, or an article that substantially embodies a patent claim, terminates—or "exhausts"—all patent rights to that article. In other words, under the patent laws, a patent owner has no right to receive royalties for a patent claim that is exhausted.

2. Law which states that a patent owner may not use its patent to leverage power or impose terms that improperly extend its patent rights.

**AUTHORITY**

On Declaratory Relief:

Cal. Code Civ. Proc. § 1060 (creating right to seek declaratory relief); Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; *State Pipe & Supply, Inc. v. Coutinho & Ferrostall Inc.*, No. 09-cv-5776, 2010 WL 3700127 (C.D. Cal. July 6, 2010) (proposed jury instruction #7 re: declaratory relief).

On Contracts That Are Unlawful, Void, and Against Public Policy:

Cal. Civ. Code §§ 1598-99, 1667 (defining unlawful contracts); *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 425 P.3d 1, 8 (Cal. 2018); *Morey v. Paladini*, 203 P. 760, 762 (Cal. 1922) ("a void contract, a contract against public policy or against the mandate of the statute, may not be made the foundation of any action, either in law or in equity"); *Kashani v. Tsann Kuen China Enter. Co.*, 118

Cal. App. 4th 531, 540-41 (Ct. App. 2004) ("explaining that "illegal contracts" can be "functionally described as contracts unenforceable on grounds of public policy"); *D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*, 169 Cal. Rptr. 3d 171 (2014); *Cariveau v. Halferty*, 99 Cal. Rptr. 2d 417 (2000).

On The Law Of Patent Extension & Exhaustion:

*Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008) ("The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item."); *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1532-33 (2017) ("This Court accordingly has long held that, even when a patentee sells an item under an express restriction, the patentee does not retain patent rights in that product."); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 136 (1969) ("A patentee must respect "established limits . . . in employing the leverage of his patent to control or limit the operations of the licensee."); *Gen. Talking Pictures Corp. v. W. Elec. Co.*, 305 U.S. 124, 127 (1938) ("A patentee must ensure any license restrictions and conditions it imposes are "reasonably within the reward which the patentee by the grant of the patent is entitled to secure.") (quotation omitted); *Brulotte v. Thys Co.*, 379 U.S. 29, 32-33 (1964) ("[W]e conclude that a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se."); *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2413 (2015) ("That patent (not antitrust) policy gave rise to the Court's conclusion that post-patent royalty contracts are unenforceable – utterly 'regardless of a demonstrable effect on competition.'") (citation omitted); *Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1023 (9th Cir. 2007) (offending contract terms are unenforceable).

**QUALCOMM OBJECTION**

Qualcomm objects to this instruction because whether a contract is unlawful is an issue for the Court, not the jury.  *See Jensen*, 835 F.3d at 1111; *Erhart*, 2017 WL 588390, at *6.

Qualcomm further objects to this instruction because it misstates the law.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  Under California law, a contract will only be invalidated if its enforcement is "clearly outweighed" in the circumstances by public policy.  *See Erhart*, 2017 WL 588390, at *6 (citing Restatement (Second) of Contracts § 178) (emphasis added)); *Juarez*, 245 Cal. App. 4th at 86; *Halferty*, 99 Cal. Rptr. 2d at 420.  The instruction also fails to state that the jury must balance the relevant interest in enforcing the contract against the interests advanced by the identified policies in deciding whether to enforce the contract.  *See Erhart*, 2017 WL 588390, at *6.

The instruction also misstates the law because it fails to instruct the jury on when an otherwise unlawful agreement would nonetheless be enforced under California law. *See Asdourian*, 38 Cal. 3d at 292-293.

The instruction also misstates the law because it omits relevant, countervailing public policy allowing a patent holder to enforce a contract restriction as a matter of contract law if the patent holder negotiates a contract creating such a restriction.  *See Lexmark*, 137 S. Ct. at 1531-33; *see also* ECF No. 737 at 10 ("*Lexmark* thus makes clear that sales exhausts *patent rights*, which is distinct and not dispositive of *contract rights*.").

Qualcomm further objects to this instruction because it is confusing.  *See Fernandez-Ruiz,* 251 F. App'x at 480.  The references to "laws" and "case law" are vague and ambiguous.  *See Bryant*, 2010 WL 11463864, at *13 n.15.  Moreover, the jury does not have access, nor should it, to the purported laws and case law to which Apple refers.

Finally, the statement that "In other words, under the patent laws, a patent owner has no right to receive royalties for a patent claim that is exhausted" is incorrect for the reasons stated, among other places herein, in Qualcomm's objections to Apple's Proposed Instruction No. 2.

# **ADDITIONAL BCPA CLAIMS**

## APPLE & CMS' PROPOSED INSTRUCTION NO. 97: BCPA

In addition to the breach of contract claims I explained to you above, Apple has brought additional claims related to the BCPA against Qualcomm.

I will explain them to you in the following instructions.

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is argumentative. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475. Apple did not propose similar instructions for any other claim, so this instruction places an undue emphasis on Apple's "additional claims related to the BCPA". *See Vanskike*, 665 F.2d at 201-02.

**APPLE & CMS' PROPOSED INSTRUCTION No. 98: APPLE's COUNT III**

**(VIOLATION OF CAL. CIV. CODE § 1671)**

This Court has determined that Section 7 of the BCPA, as interpreted by Qualcomm, contains a liquidated damages provision.[14]

A liquidated damages provision is a contractual provision that provides for a fixed and certain sum to be paid in the event of a breach of contract. This Court has determined that Section 7, as interpreted by Qualcomm, is a liquidated damages provision because it contemplates a single, definite performance—Apple's forbearance from making negative statements to agencies about Qualcomm—and imposes a penalty contingent on breach of that obligation.

California Civil Code § 1671 prohibits unreasonable liquidated damages provisions. Apple claims that Section 7 of the BCPA is an unreasonable liquidated damages provision and therefore not enforceable.

To find for Apple, you must find that Section 7 of the BCPA was unreasonable under the circumstances existing at the time the contract was made. This means that Section 7 of the BCPA, as interpreted by Qualcomm, bears no reasonable relationship to the range of actual damages that Qualcomm or Apple could have anticipated would flow from a breach of performance at the time the BCPA was entered into.

**AUTHORITY**

Cal. Civil Code § 1671; *Ridgley v. Topa Thrift & Loan Ass'n*, 953 P.2d 484, 488 (Cal. 1998); *Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*, 2011 WL 5075970, at *7 (S.D. Cal. Oct. 25, 2011); *McGuire v. More-Gas Invests., LLC*, 163 Cal. Rptr. 3d 225, 234 (Cal. Ct. App. 2013).

---

[14] This instruction is to be given if the Court finds that Section 7 is a liquidated damages provision.

EXHIBIT F: APPLE & CMS'
PROPOSED JURY INSTRUCTIONS          -190-                    CASE NO. 3:17-CV-0108-GPC-MDD
WITH OBJECTIONS

**QUALCOMM OBJECTION**

Qualcomm objects to this instruction because whether a contract provision constitutes an unlawful liquidated damages provision is an issue for the Court, not the jury. *See Jensen*, 835 F.3d at 1111; *Morris*, 128 Cal. App. 4th at 1314.

Qualcomm further objects to this instruction because it is argumentative. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802; *Alamo*, 219 Cal. App. 4th at 475. The instruction twice adopts Apple's position that the BCPA contains a liquidated damages provision, which Qualcomm disputes. (*See* ECF No. 881 at 43.) The instruction also incorrectly states that the Court has determined that Section 7 of the BCPA contains a liquidated damages provision. In addition, the instruction's reference to "Apple's forbearance from making negative statements to agencies about Qualcomm" is an incorrect interpretation of the BCPA for the reasons set forth in the parties' briefing regarding the meaning of the BCPA. The statement that "Apple claims that Section 7 of the BCPA is an unreasonable liquidated damages provision and therefore not enforceable" also is argumentative.

Qualcomm further objects to this instruction because it fails to state that liquidated damages provisions are presumed to be legal. *See Radisson Hotels Int'l, Inc. v. Majestic Towers, Inc.*, 488 F. Supp. 2d 953, 958-59 (C.D. Cal. 2007) ("The modern form of California's liquidated damages statute has switched the presumption from invalidity to validity. . . . This standard permits a considerable degree of latitude in fixing the sum of liquidated damages . . . ."); *Weber, Lipshie & Co. v. Christian*, 60 Cal. Rptr. 2d 677, 681 (Ct. App. 1997) (noting Section 1671 reflects a "policy of presumptive *validity*")..

**APPLE & CMS' Proposed Instruction No. 99: APPLE'S COUNT IV
(DECLARATION regarding Section 47(b) PRIVILEGE)**

**Requested Finding by Apple**: Apple's statements to regulators are protected by Section 47(b) of the California Civil Code.

Section 47(b) of the California Civil Code provides that statements made in a judicial or quasi-judicial proceeding, including a governmental agency investigation, are privileged, and someone cannot be held liable for these statements. It is intended to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing.

You must make the requested finding if you find that Apple's statements to regulators are protected by Section 47(b) of the California Civil Code. Apple's statements to regulators are protected by Section 47(b) of the California Civil Code if you find that there was:

1. A communication made;
2. In the context of a judicial or quasi-judicial proceedings, including a government agency investigation;
3. By a litigant or participant authorized by law to make such statements;
4. For the purpose of achieving the objects of the proceeding(s);
5. And with some connection or logical relation to the action.

**AUTHORITY**

On Declaratory Relief:

Cal. Code Civ. Proc. § 1060 (creating right to seek declaratory relief); Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; *State Pipe & Supply, Inc. v. Coutinho & Ferrostall Inc.*, No. 09-cv-5776, 2010 WL 3700127 (C.D. Cal. July 6, 2010) (proposed jury instruction #7 re: declaratory relief).

On Section 47(b) Privilege:

Cal. Civ. Code § 47; *Hagberg v. Cal. Fed. Bank.*, 81 P.3d 244, 249-50 (Cal. 2004) (holding that Section 47 litigation privilege extends to communications to or from government agencies charged with investigating potential wrongdoing)

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because whether § 47(b) privilege applies is an issue for the Court, not the jury.  *see Falcon v. Long Beach Genetics, Inc.*, 224 Cal. App. 4th 1263, 1272-73 (Cal. Ct. App. 2014); *see also MAP Co. v. Lebanese Arak Corp.*, Case No. 2:16-cv-05039-AB-RAO, 2018 WL 3357474, at *2 (C.D. Cal. Feb. 5, 2018).

Qualcomm further objects to this instruction because it misstates the law.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  Section 47(b) privilege is a defense only to a tort claim, not to a breach of contract claim. *Crossroads Investors*, 13 Cal. App. 5th at 787.  ("Generally, the litigation privilege precludes liability in tort, not liability for breach of contract.  If one expressly contracts not to engage in certain speech or petition activity and then does so, applying the privilege would frustrate the very purpose of the contract if there was a privilege to breach it.").

**EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS
WITH OBJECTIONS**                              -193-                **CASE NO. 3:17-CV-0108-GPC-MDD**

# **UNJUST ENRICHMENT**

## APPLE & CMS' PROPOSED INSTRUCTION NO. 100: QUALCOMM'S COUNT VIII (UNJUST ENRICHMENT)[15]

Qualcomm claims that Apple was unjustly enriched by payments under the BCPA.

You can find for Qualcomm only if you decide, that Qualcomm has shown, by a preponderance of the evidence, that there was no contract formed (that is, you must decide that the BCPA was not a contract). See Instruction No. 101 for factors to consider in determining whether the BCPA is considered to be a contract.

To prove unjust enrichment, Qualcomm must show, by a preponderance of the evidence, that the BCPA was not a contract and:

1. Apple received a benefit from Qualcomm; and
2. Apple's retention of the benefit at the expense of Qualcomm would be unjust.

The fact that Apple received a benefit from Qualcomm is not enough. Rather, where a company has received a benefit from another, it is liable to pay only if the circumstances of its receipt or retention are such that, as between the two companies, it is unjust for it to retain that benefit.

### AUTHORITY

CACI No. 4410 (2019 Edition); *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009) (citing Rest. of Restitution § 1); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 668 (S.D. Cal. 2010).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is argumentative and repetitious. *See Sarno*, 73 F.3d at 1485; *Alamo*, 219 Cal. App. 4th at 475. "Repetitious instructions which place undue emphasis on matters favorable to either side constitute reversible error." *Gill*, 488 F.2d at 802. *First*, the instruction twice states that the jury should consider unjust enrichment only if "the BCPA was not a

---

[15] For the reasons in Apple's summary judgment motion (ECF No. 602), Apple maintains that the jury should not be instructed on this claim.

contract". *Second*, the last paragraph states that the "fact that Apple received a benefit is not enough" and then merely repeats that the elements of unjust enrichment—*i.e.*, that Qualcomm must prove (1) that Apple received a benefit and (2) that retention of the benefit is unjust—must be satisfied.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 101: CONTRACT FORMATION —ESSENTIAL FACTUAL ELEMENTS

To prove that parties did not enter into a contract, all of the following must be proven:

1.    That the contract terms were not clear enough that the parties could understand what each was required to do;

2.    That the parties did not agree to give each other something of value [a promise to do something or not to do something may have value]; and

3.    That the parties did not agree to the terms of the contract.

When you examine whether the parties did not agree to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was no agreement. You may not consider the parties' hidden intentions.

### AUTHORITY

Cal. Civ. Code § 1550 (essential elements of contract) (modified); Cal. Civ. Code § 1580 ("Consent is not mutual, unless the parties all agree upon the same thing in the same sense. But in certain cases defined by the Chapter on Interpretation, they are to be deemed so to agree without regard to the fact."); CACI No. 302 (2019 Edition) (modified); *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006) ("Mutual consent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." (citation omitted)); *Roth v. Malson*, 67 Cal. App. 4th 552, 557 (1998) ("Contract formation is governed by objective manifestations, not subjective intent of any individual involved. The test is 'what the outward manifestations of consent would lead a reasonable person to believe.") (internal citations omitted)).

EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS                    -197-                    CASE NO. 3:17-CV-0108-GPC-MDD
WITH OBJECTIONS

**QUALCOMM'S OBJECTIONS**

Qualcomm objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85; *Stoner*, 2018 WL 4354423, at *3. *First*, the instruction changes the model's affirmative orientation by adding "not" or "did not" in multiple places. *Second*, the instruction omits the final sentence of CACI No. 302 ("If [name of plaintiff] did not prove all of the above, then a contract was not created."). This deviation obscures Apple's burden to "prove" these elements (as properly articulated by the model).

## APPLE & CMS' PROPOSED INSTRUCTION NO. 102: APPLE'S AFFIRMATIVE DEFENSES TO QUALCOMM'S COUNTERCLAIM VIII (UNJUST ENRICHMENT)

Apple asserts the following affirmative defenses to Qualcomm's unjust enrichment claim. At the end of these instructions, I will explain the elements relevant to these affirmative defenses.

These affirmative defenses apply only if you find that the BCPA is not a contract.  If you find that the BCPA was a contract, then Qualcomm cannot recover for unjust enrichment.[16]

- Qualcomm's actions were unlawful.  Please refer to Instruction No. 95 for an explanation of the laws and policies at issue.
- Unclean Hands. Please refer to Instruction No. 115 for an explanation of this affirmative defense.
- Cal. Civ. Code § 47(b) Privilege. Please refer to Instruction No. 119 for an explanation of this affirmative defense.
- Waiver. Please refer to Instruction No. 114 for an explanation of this affirmative defense.
- Acquiescence. Please refer to Instruction No. 116 for an explanation of this affirmative defense.
- Consent. Please refer to Instruction No. 118 for an explanation of this affirmative defense.
- Estoppel. Please refer to Instruction No. 113 for an explanation of this affirmative defense.

---

[16] Apple understands that this claim is limited to the allegations associated with the alleged breach of Section 7 of the BCPA, and has identified its defenses accordingly. Apple reserves the right to amend these defenses should the Court find the implied covenant claim is broader.

- Laches. Please refer to Instruction No. 123 for an explanation of this affirmative defense.

### QUALCOMM OBJECTION

Qualcomm incorporates by reference its objections to Instructions Nos. 95, 114-119, 123.

Qualcomm further objects to this instruction and similar instructions listing affirmative defenses because they are repetitive and unduly emphasize the number of each party's affirmative defenses. *See Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802. Qualcomm proposes that the Court instruct the jury about which defense applies to which claim when the Court instructs the jury about the relevant defense. (*See* Qualcomm's Proposed Instruction Nos. 65-71.)

# TORTIOUS INTERFERENCE WITH CONTRACT

## APPLE & CMS' PROPOSED INSTRUCTION NO. 103: QUALCOMM'S COUNT I (TORTIOUS INTERFERENCE WITH CONTRACT)

Qualcomm claims that Apple intentionally interfered with each SULA between Qualcomm and the CMs. To establish this claim, Qualcomm must prove all of the following, by a preponderance of the evidence, with respect to each SULA:

1. That there was a SULA between Qualcomm and each of the CMs;

2. That Apple knew of each SULA;

3. That Apple's conduct prevented the CMs' performance of each SULA, or made the CMs' performance of each SULA more expensive or difficult;

4. That Apple intended to disrupt the performance of each SULA or knew that disruption of performance was certain or substantially certain to occur;

5. That Qualcomm was harmed; and

6. That Apple's conduct was a substantial factor in causing Qualcomm's harm.

### AUTHORITY

CACI 2201 (2018) (tortious interference with contract instruction) (modified); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589–90 (Cal. 1990).

### QUALCOMM OBJECTION

Qualcomm objects to the repetitious use of the word "each" and requests that the Court give Qualcomm's Proposed Closing Instruction No. 21 with respect to this issue.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 104: APPLE'S AFFIRMATIVE DEFENSES TO COUNT I (TORTIOUS INTERFERENCE WITH CONTRACT) – JUSTIFICATION

Apple claims that there was no intentional interference with contractual relations because it acted to protect its legitimate financial interests.  To succeed, Apple must prove all of the following:

1. That Apple had a financial interest in the contractual relations between Qualcomm and the CMs;

2. That Apple acted to protect its own financial interest;

3. That Apple acted reasonably and in good faith to protect its financial interest; and

4. That Apple used appropriate means to protect it.

## AUTHORITY

CACI 2210 (2019 Edition) (modified); Restatement (Second) of Torts § 773; *Richardson v. La Rancherita*, 98 Cal. App. 3d 73, 80 (Ct. App. 1979); *Reyes v. Atl. Richfield Co.*, 12 F.3d 1464, 1473 (9th Cir. 1993) (quoting § 773 as authority for justification defense); *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1205 (N.D. Cal. 2004) (same); *Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 531 (Cal. 1998).

## QUALCOMM OBJECTION

Qualcomm objects to instructing the jury about this affirmative defense separately from Apple's other affirmative defenses to tortious interference.  Doing so unduly highlights this aspect of Apple's defense.  *See Vanskike*, 665 F.2d at 201-02.

Qualcomm further objects to this instruction because it improperly deviates from the model instruction on which it is based.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *Stoner*, 2018 WL 4354423, at *3.  This instruction omitted the word "only" from the second element, such that the second element should read: "That Apple acted *only* to protect its own financial interest".  *See* CACI No. 2210 (emphasis added).

# APPLE & CMS' PROPOSED INSTRUCTION NO. 105: APPLE'S AFFIRMATIVE DEFENSES TO COUNT I (TORTIOUS INTERFERENCE WITH CONTRACT)

In addition to the affirmative defense of justification that I just described to you, Apple asserts the following affirmative defenses to Qualcomm's tortious interference claim.  At the end of these instructions, I will explain the elements relevant to these affirmative defenses.

- The SULAs are unlawful and/or unenforceable as against public policy. Please refer to Instruction No. 111 for an explanation of this affirmative defense, and to Instruction No. 94 for an identification of the laws and public policy at issue.

- The SULAs are unconscionable. Please refer to Instruction No. 112 for an explanation of this affirmative defense.

- Unclean Hands. Please refer to Instruction No. 115 for an explanation of this affirmative defense.

- Estoppel. Please refer to Instruction No. 113 for an explanation of this affirmative defense.

- Waiver. Please refer to Instruction No. 114 for an explanation of this affirmative defense.

- Consent. Please refer to Instruction No. 118 for an explanation of this affirmative defense.

- Ratification. Please refer to Instruction No. 117 for an explanation of this affirmative defense.

- Acquiescence: Please refer to Instruction No. 116 for an explanation of this affirmative defense.

- Excuse. Please refer to Instruction No. 122 for an explanation of this affirmative defense.

- Laches. Please refer to Instruction No. 123 for an explanation of this affirmative defense.

### QUALCOMM OBJECTION

Qualcomm incorporates by reference its objections to Instructions Nos. 94, 111-118, 122-123.

Qualcomm further objects to this instruction and similar instructions listing affirmative defenses because they are repetitive and unduly emphasize the number of each party's affirmative defenses. *See Vanskike*, 665 F.2d at 201-02; *Gill*, 488 F.2d at 802. Qualcomm proposes that the Court instruct the jury about which defense applies to which claim when the Court instructs the jury about the relevant defense. (*See* Qualcomm's Proposed Instruction Nos. 65-71.)

## APPLE & CMS' PROPOSED INSTRUCTION NO. 106: QUALCOMM'S COUNT I (TORTIOUS INTERFERENCE WITH CONTRACT) – DAMAGES

If you decide that Qualcomm has proved its tortious interference claim against Apple, and Apple has not proved any of its affirmative defenses, you also must decide how much money will reasonably compensate Qualcomm for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Apple's conduct, even if the particular harm could not have been anticipated.

Qualcomm does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

### AUTHORITY

CACI No. 3900 (2019 Edition); Cal. Civ. Code § 3333.

### QUALCOMM OBJECTION

Qualcomm objects to the inclusion of an additional reference to Apple's defenses, which is a format that appears to be unique to this claim. Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 28 with respect to this issue.

**EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS          -206-                     CASE NO. 3:17-CV-0108-GPC-MDD
WITH OBJECTIONS**

**APPLE & CMS' PROPOSED INSTRUCTION NO. 107: QUALCOMM'S COUNT I (TORTIOUS INTERFERENCE WITH CONTRACT) – PUNITIVE DAMAGES – BIFURCATED TRIAL (FIRST PHASE)**

If you decide that Apple's conduct caused Qualcomm harm, you must decide whether that conduct justifies an award of punitive damages. The amount, if any, of punitive damages will be an issue decided later.

At this time, you must decide whether Qualcomm has proved that Apple engaged in that conduct with malice, oppression, or fraud. To do this, Qualcomm must prove one of the following by clear and convincing evidence:

1. That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Apple, who acted on behalf of Apple; or

2. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Apple; or

3. That one or more officers, directors, or managing agents of Apple knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Apple acted with the intent to cause injury or that Apple's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another.  A person acts with knowing disregard when he or she is aware of the probably dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that Apple's conduct was despicable and subjected Qualcomm to cruel and unjust hardship in knowing disregard of Qualcomm's rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Apple intentionally misrepresented or concealed a material fact and did so intending to harm Qualcomm.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy.

## AUTHORITY

Cal. Civil Code § 3294 (punitive damages); CACI No. 3946 (2019 Edition); *Gordon v. Safeco Ins. Co. of Am.*, 2012 WL 13013044, at *2 (C.D. Cal. Aug. 29, 2012) (citing *Henderson v. Sec. Nat. Bank*, 72 Cal. App. 3d 764, 771 (Cal. Ct. App. 1977)).

## QUALCOMM OBJECTION

Qualcomm objects to Apple's request for bifurcation for the reasons stated in its forthcoming opposition to Apple's Motion *in Limine* No. 5.

Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 23 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 108: QUALCOMM'S COUNT I (TORTIOUS INTERFERENCE WITH CONTRACT) – BIFURCATED TRIAL (SECOND PHASE)[17]

You must now decide the amount, if any, that you should award Qualcomm in punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the party seeking punitive damages and to discourage similar conduct in the future.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages.

If you decide to award punitive damages to Qualcomm, you should consider the following factors in determining the amount:

1. How reprehensible was Apple's conduct? The following factors may guide this inquiry: (a) whether the conduct caused physical harm; (b) whether Apple disregarded the health or safety of others; (c) whether Qualcomm was financially weak or vulnerable and Apple knew Qualcomm was financially weak or vulnerable and took advantage of it; (d) whether Apple's conduct involved a pattern or practice; and (e) whether Apple acted with trickery or deceit.

2. Is there a reasonable relationship between the amount of punitive damages and Qualcomm's harm that Apple knew was likely to occur because of its conduct?

3. In view of Apple's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive

---

[17] Apple requests that this instruction be read, and evidence of Apple's profits or financial condition be admitted, only if the jury returns a verdict for Qualcomm awarding actual damages and finding that Apple is guilty of malice, oppression, or fraud in accordance with Cal. Civ. Code § 3294. Fed. R. Civ. P. 42(b); Cal. Civ. Code § 3295(d).

EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS          -209-          CASE NO. 3:17-CV-0108-GPC-MDD
WITH OBJECTIONS

award above an amount that is otherwise appropriate merely because Apple has substantial financial resources.

Punitive damages may not be used to punish Apple for the impact of its alleged misconduct on persons other than Qualcomm.

## AUTHORITY

Cal. Civil Code § 3294 (punitive damages); CACI No. 3942 (2019 Edition) (punitive damages for individual defendant in bifurcated trial, second phase); *Gordon v. Safeco Ins. Co. of Am.*, 2012 WL 13013044, at *2 (C.D. Cal. Aug. 29, 2012) (citing Henderson v. *Sec. Nat. Bank*, 72 Cal. App. 3d 764, 771 (Cal. Ct. App. 1977)).

## QUALCOMM OBJECTION

Qualcomm objects to Apple's request for bifurcation for the reasons stated in its forthcoming opposition to Apple's Motion *in Limine* No. 5.

Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 23 with respect to this issue.

# **RESTITUTION**

## APPLE & CMS' PROPOSED INSTRUCTION NO. 109:

## RESTITUTION TO APPLE

Apple contends that the SULAs are unenforceable as against public policy and seeks a finding of unenforceability. *See* Instruction No. 94. In connection with this claim, Apple asserts it is entitled to restitution for monies spent on exhausted patents pursuant to the CMs' SULAs.

Apple is entitled to restitution if:

1.     Qualcomm received a benefit from Apple and

2.     Qualcomm's retention of the benefit at the expense of Apple would be
unjust.

The fact that Qualcomm received a benefit from Apple is not enough. Rather, where a company has received a benefit from another, it is liable to pay only if the circumstances of its receipt or retention are such that, as between the two companies, it is unjust for it to retain that benefit.

This instruction does not govern Apple's request for restitution in connection with its claim under the Unfair Competition Law (Instruction No. 48), and you should not consider this instruction in connection with that claim.

### AUTHORITY

28 U.S.C. §§ 2201-02; *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory judgment can . . . be used as a predicate to further relief . . ."); *Price v. Synapse Grp, Inc.*, 2017 WL 3131700, *10-11 (S.D. Cal. July 24, 2017) ("[U]njust enrichment is synonymous with restitution." (internal quotation marks omitted)); *Welborne v. Ryman-Carroll Found.*, 231 Cal. Rptr.3d 806, 811 (Cal. Ct. App. 2018); *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 867-68 (Cal. Ct. App. 2014).

**QUALCOMM OBJECTION**

Qualcomm objects to this instruction because restitution is an issue for the Court, not the jury. *See Jensen*, 835 F.3d at 1111. The parties agree that restitution is an equitable remedy.

Qualcomm further objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. *See, e.g., Geffner v. Linear Rotary Bearings, Inc.*, No. 97-1041, 1997 WL 577506, at *6 (Fed. Cir. Sept. 17, 1997); *Bristol Locknut Co. v. SPS Techs.*, Inc., 677 F.2d 1277, 1282-83 (9th Cir. 1982) (denying the refund of royalties after the licensee alleged both non-infringement and invalidity to avoid an "injustice" when the plaintiff "fully 'enjoyed the fruits of the license agreement'"); *Zenith Labs., Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 514 (3d Cir. 1976) (finding that Defendant cannot recover royalties actually paid before an adjudication of invalidity was made); *Applied Elastomerics, Inc. v. Z-Man Fishing Prod., Inc.*, 521 F. Supp. 2d 1031, 1040 (N.D. Cal. 2007) (finding "that Defendant would not be entitled to offset its royalty payments if Plaintiff's patents were found to be invalid or if Defendant's products were found not to be covered by the patents"); *Wang Labs., Inc. v. Ma Labs., Inc.*, No. C 95-2274 SC, 1995 WL 729298, at *11 (N.D. Cal. Dec. 1, 1995) (concluding that "[i]t is well settled law that a determination that a patent which is the subject matter of a License Agreement is invalid does not entitle the licensee to recoup royalties already paid").

"[I]t would be [undesirable] if a patentee took all royalty payments subject to the danger of having to disgorge them at an uncertain future date to a licensee who, during the period in which the royalties were paid, had himself enjoyed the protection of the patent and immunity from suit under it. Were the law thus, the value of patents might be so diminished as to discourage inventors from procuring them, with the result that inventions would be kept secret rather than publicly disclosed as the patent system requires." *Transitron Elec. Corp. v. Hughes Aircraft Co.*, 649 F.2d 871, 874 (1st Cir. 1981).

# **AFFIRMATIVE DEFENSES**

## APPLE & CMS' PROPOSED INSTRUCTION NO. 110: NEGATIVE DEFENSES/AFFIRMATIVE DEFENSES

As I explained to you earlier, a party can defend against a particular claim by asserting affirmative defenses.  I am now going to instruct you on the elements of some of these affirmative defenses.

### AUTHORITY

Final Jury Instructions, *Pinnacle Fitness & Recreation Mgmt. v. Moyes Family Trust*, No. 08-CV-1368-GPC (S.D. Cal. Jan. 30, 2013) (Curiel, J.), Closing Instr. No. 27 (Dkt. No. 282) (modified).

### QUALCOMM OBJECTION

No objection.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 111: UNENFORCEABLE AS AGAINST PUBLIC POLICY

As I previously instructed you, under general principles of California contract law, a contract, or contractual provision, is unlawful, and therefore unenforceable, if it is contrary to an express provision of law or contrary to the policy of express law, though not expressly prohibited.

The party asserting this affirmative defense must show that the contract, or contractual provision, at issue is unenforceable.  Unenforceable contracts, or contractual provisions, are those that are:

1. Contrary to an express provision of law or

2. Contrary to the public policies implicit in such laws.

Such contracts are contrary to public policy.

"Law" as used in this instruction is to be understood broadly and includes statutes, constitutions, local ordinances, and administrative regulations issued pursuant to them, as well as common law rules or decisions by courts.

## AUTHORITY

Cal. Civil Code §§ 1598-99, 1667 (defining unlawful contracts); *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 425 P.3d 1, 8 (Cal. 2018); *Morey v. Paladini*, 203 P. 760, 762 (Cal. 1922) ("a void contract, a contract against public policy or against the mandate of the statute, may not be made the foundation of any action, either in law or in equity"); *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 540-41 (Ct. App. 2004) ("explaining that "illegal contracts" can be "functionally described as contracts unenforceable on grounds of public policy"); *D'Arrigo Bros. of California v. United Farmworkers of Am.*, 169 Cal. Rptr. 3d 171 (2014); *Cariveau v. Halferty*, 99 Cal. Rptr. 2d 417 (2000).

**QUALCOMM OBJECTION**

Qualcomm objects to this instruction because whether a contract is unlawful is an issue for the Court, not the jury. *See Jensen*, 835 F.3d at 1111; *Erhart*, 2017 WL 588390, at *6 (courts determine whether contracts violate laws).

Qualcomm further objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. Under California law, a contract will only be invalidated if its enforcement is "*clearly* outweighed" in the circumstances by public policy. *See Erhart*, 2017 WL 588390, at *6 (citing Restatement (Second) of Contracts § 178) (emphasis added)); *Boston LLC*, 245 Cal. App. 4th at 86; *Halferty*, 99 Cal. Rptr. 2d at 420. The instruction also fails to state that the jury must balance the relevant interest in enforcing the contract against the interests advanced by the identified policies in deciding whether to enforce the contract. *See Erhart*, 2017 WL 588390, at *6.

The instruction also misstates the law because it fails to instruct the jury on when an otherwise unlawful agreement would nonetheless be enforced under California law. *See Asdourian v. Ajar*, 38 Cal. 3d 276, 292-293 (1985) (holding that unlawful agreements should nonetheless be enforced where (1) the defendant is not a member of a group primarily in need of the statute's protection, (2) the contracted object is immoral in character or (3) failure to enforce the agreement will result in unjust enrichment).

Qualcomm further objects to this instruction because it is confusing. *See Fernandez-Ruiz,* 251 F. App'x at 480. The reference to "statutes, constitutions, local ordinances, and administrative regulations issued pursuant to them, as well as common law rules or decisions by courts" is vague and ambiguous. *See Bryant*, 2010 WL 11463864, at *13 n.15. Moreover, the jury would not have access, nor should it, to the purported laws and case law to which the instruction refers.

## **APPLE & CMS' PROPOSED INSTRUCTION NO. 112:**

## **UNCONSCIONABILITY**

If a contract was unconscionable at the time it was made, the contract is unenforceable. The party asserting that a contract is unconscionable must prove that the contract is both substantively and procedurally unconscionable.

Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power. Oppression exists where there is no real negotiation and an absence of a meaningful choice.

Substantive unconscionability focuses on overly harsh or one-sided results. A contractual term is substantively suspect if, when the contract was formed, it allocates the risks in an unreasonable or unexpected manner.

Procedural and substantive unconscionability are on a sliding scale. The more you find that the contract or contract term is procedurally or substantively unconscionable, the less you need to find the other type of unconscionability before you find that the contract is unconscionable.

## **AUTHORITY**

Cal. Civ. Code § 1670.5(a); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260-61 (9th Cir. 2017); *O'Brien v. Am. Express Co.*, 2012 WL 1609957, at *3 (S.D. Cal. May 8, 2012); *Armendariz v. Foundation Health Psychare Svs., Inc.*, 99 Cal. Rptr. 2d 745, 767-68 (Cal. 2000).

## **QUALCOMM OBJECTION**

Qualcomm objects to this instruction because unconscionability is an issue for the Court, not the jury. *See Jensen*, 835 F.3d at 1111; *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 240 (2015) (unconscionability is issue "of law").

Qualcomm further objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. *First*, it is not enough for a contract to "allocate[] the risks in an unreasonable or unexpected manner". *Navellier v. Sletten*, 262 F.3d 923, 940 (9th Cir. 2001) ("Substantive unconscionability . . . refers to an *overly harsh* allocation of risks or costs which is not justified by the circumstances under which the contract was made.") (emphasis added); *see also id.* ("Substantive unconscionability is indicated by requires contract

terms so one-sided as to shock the conscience" (quotation omitted)).  In addition, to be substantively unconscionable, "a contractual provision [must] reallocate[] risks in *an objectively* unreasonable or unexpected manner".  *Park v. Wachovia Mortg., FSB*, No. 10-cv-1547-WQH-RBB, 2011 WL 98408, at \*11 (S.D. Cal. Jan. 12, 2011).  The instruction does not reflect these principles.

     *Second*, the instruction does not define what constitutes "surprise". "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden".  *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (Ct. App. 1982).

     *Third*, the instruction does not reflect that California law allows the court the option to "limit the application of any unconscionable clause", "enforce the remainder of the contract without the unconscionable clause" or "refuse to enforce the contract".  Cal. Civ. Code § 1670.5

**APPLE & CMS' PROPOSED INSTRUCTION NO. 113: ESTOPPEL**

The rule of equitable estoppel provides that one who, by words or conduct, willfully causes another to believe the state of certain things to be one way cannot later claim that things are actually another way.  To prove equitable estoppel, a party must prove all of the following:

1.    That the party asserting the claim made a representation of fact by words or conduct, intending that its conduct be relied on, or acted so that the party defending the claim had a right to believe that the party asserting the claim intended its conduct to be relied on;

2.    That the party asserting the claim knew the facts;

3.    That the party defending the claim was ignorant of the true state of facts; and

4.    That the party defending the claim reasonably relied on the representation of the party asserting the claim to its injury. The reliance must be reasonable in the sense that under the circumstances a reasonable person would have acted as the party defending against the claim did.

## AUTHORITY

1 California Forms of Jury Instruction MB300F.27 – Contract Defenses Instructions – Waiver, Estoppel, and Unclean Hands (modified); *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc); *Skulnick v. Roberts Express, Inc.*, 2 Cal. App. 4th 884, 890-91 (1992); *Agricola Baja Best v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 994 (S.D. Cal. 2014); *Robinson v. Fair Employment & Housing Com.*, 825 P.2d 767, 777-78 (Cal. 1992).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because estoppel is an issue for the Court, not the jury. *See Jensen*, 835 F.3d at 1111; *Ill. Tool Works, Inc. v. MOC Prods. Co., Inc.*, 946 F. Supp. 2d 1042, 1044 (S.D. Cal. 2012) ("Equitable defenses,

such as laches and equitable estoppel, are ultimately to be decided by the Court, not the jury".).

### APPLE & CMS' PROPOSED INSTRUCTION NO. 114: WAIVER

The party asserting this defense contends the other party gave up its right(s). This is called a waiver.  To succeed, the party defending a claim must prove both of the following by clear and convincing evidence:

1.  That the other party knew of its right(s),  and

2.  That the other party freely and knowingly gave up its right(s).

A waiver may be oral or written or may arise from conduct that shows that the claimant gave up those right(s).

### AUTHORITY

CACI No. 336 (2019 Edition) (Modified); *Viacao Aerea Sao Paulo v. Int'l Lease Fin. Corp.*, 1988 U.S. App. Lexis 21489, at *18 (9th Cir. Sept. 26, 1988) ("[D]etrimental reliance is <u>not</u> a necessary element of waiver." (citing *Rubin v. Los Angeles Fed. Sav. & Loan Ass'n*, 159 Cal. App. 3d 292, 298 (1984)); *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 636 (Cal. 1995) (standard is clear and convincing evidence); *Outboard Marine Corp. v. Sup. Ct.*, 124 Cal. Rptr. 852, 859 (Cal Ct. App. 1975) ("The doctrine of waiver is generally applicable to all the rights and privileges to which a person is legally entitled, including those conferred by statute . . . ."); *Agricola Baja Best v. Harris Moran Seed Co.*, 44 F. Supp. 3d 974, 994 (S.D. Cal. 2014); *In re GVF Cannery, Inc.*, 202 B.R. 140, 144 (N.D. Cal. 1996) (applying California waiver doctrine to statutory rights); ; 1 California Forms of Jury Instruction MB300F.20 – Contract Defense Instructions – Waiver Defined; 1 California Forms of Jury Instruction MB300F.21 – Waiver by Conduct (excerpt).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it improperly deviates from the model instructions.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *Stoner*, 2018 WL 4354423, at *3; CACI No. 336.  Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 66 with respect to this issue.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 115: UNCLEAN HANDS

Unclean hands ensures that no one can take advantage of their own wrong. To prove unclean hands, the party asserting unclean hands must prove that the other party violated conscience, good faith, or other equitable standards of conduct. The misconduct need not be a crime or an actionable tort, but it must relate directly to the cause at issue. The misconduct must have prejudicially affected the rights of the person asserting unclean hands, so that it would unfair to grant relief.

If that is established by a party asserting unclean hands, then the other party is barred from asserting its claim.

### AUTHORITY

Cal. Civ. Code § 3517; *Aguayo v. Amaro*, 153 Cal. Rptr. 3d 52, 58 (Cal. Ct. App. 2013); *Kendall-Jackson Winery, Ltd. v. Superior Court*, 90 Cal. Rptr.2d 743, 748-49 (Cal. Ct. App. 1999); *Unilogic, Inc. v. Burroughs Corp.*, 12 Cal. Rptr. 2d 741, 747 (Cal. Ct. App. 1992) ("[T]he trial court did not err in submitting the equitable defense to the jury."); *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists, Local 1304, United Steelworkers of Am., AFL-CIO, et al.*, 227 Cal. App. 2d 675, 727 (Cal. Ct. App. 1964).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because unclean hands is an issue for the Court, not the jury. *See Jensen*, 835 F.3d at 1111; *Cal-Agrex, Inc. v. Tassell*, 258 F.R.D. 340, 348 (N.D. Cal. 2009) (unclean hands is equitable defense that "the Court [is] entitled to rule on . . . without submitting it to the jury").

## APPLE & CMS' PROPOSED INSTRUCTION NO. 116: ACQUIESCENCE

To prove acquiescence, the party defending a claim must show that the party asserting the claim engaged in conduct, expressed or implied, that amounted to an assurance to the party defending the claim that the claimant would not assert his or her claim against the party defending the claim.

### AUTHORITY

27A Am. Jur. 2d Equity § 113; *Oppenheimer v. Clunie*, 75 P. 899 (Cal. 1904) ("The learned author last cited says: 'The person who has been misled is required, as soon as he learns the truth, with all reasonable diligence to disaffirm the contract, or abandon the transaction, and give the other party an opportunity of rescinding it, and of restoring both of them to their original position. He is not allowed to go on and derive all possible benefits from the transaction, and then claim to be relieved from his own obligation by a rescission or a refusal to perform on his own part. If, after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of and relief from the misrepresentation."); *In re Warner's Estate*, 145 P. 504 (Cal. 1914) ("Where one had a right to rescind a contract because of a breach by the other party, and, with knowledge of such right, continues thereafter to accept from the other party payments due thereunder, the right of such person to rescind the contract for that breach is thereby barred."); *Marsh v. Lott*, 105 P. 968 (Cal. 1909) ("The rule is . . . that where, after defendant's violation or express repudiation of his contract, the plaintiff delays to proceed for such a length of time as to constitute acquiescence in defendant's breach . . . relief in equity will be denied.").

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is unnecessary and repetitious. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802. Qualcomm proposed one instruction for the defenses of ratification, agreement, acquiescence and consent, because these defenses are related. *See* Qualcomm's Proposed Instruction No. 69.

To the extent the Court gives separate instructions on these defenses. Qualcomm objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85. The Ninth Circuit has adopted a three-element test for the acquiescence defense, which requires the party asserting acquiescence to prove an unduly prejudicial delay between the representation that the claim would not be asserted and the assertion of the claim. *See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 989 (9th Cir. 2010). The proposed instruction does not address these elements of an acquiescence defense.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 117: RATIFICATION

Ratification of a contract occurs when a non-breaching party, aware that a contract has been breached, nevertheless affirms the continued validity of the contract. To prove ratification, the party asserting ratification must show that:

(1) the other party had full knowledge of material facts concerning an alleged breach; and

(2) the other party declared, acted, or engaged in other conduct giving rise to an inference that it intended for the contract to stay valid.

### AUTHORITY

*Aikins v. Tosco Refining Co.*, 1999 WL 179686, at *4 (N.D. Cal. Mar. 26, 1999) (citing California law).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is unnecessary and repetitious. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802. Qualcomm proposed one instruction for the defenses of ratification, agreement, acquiescence and consent, because these defenses are related. *See* Qualcomm's Proposed Instruction No. 69.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 118: CONSENT

A party who consents to an act cannot be wronged by the act. The party asserting this defense must show that the other party consented to the act at issue.

### AUTHORITY

Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it."); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ("Plaintiffs' consent also bars their common-law tort claims and their claim for invasion of privacy under the California Constitution."); *Sanchez v. Sanchez*, No. 10-cv-1628-GPC, 2012 WL 6678223, at *5 n.3 (S.D. Cal. 2012) (Curiel, J.) ("[C]onsent is a defense to intentional torts.").

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it is unnecessary and repetitious. *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802. Qualcomm proposed one instruction for the defenses of ratification, agreement, acquiescence and consent, because these defenses are related. *See* Qualcomm's Proposed Instruction No. 69.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 119: SECTION 47(B) PRIVILEGE

See Instruction No. 99 for a summary of Section 47(b) of the California Civil Code.  You should find that Section 47(b) prevents a party defending against a claim from being held liable for statements made if you find that there was:

1. A communication made;

2. In the context of a judicial or quasi-judicial proceedings, including a government agency investigation;

3. By a litigant or participant authorized by law to make such statements;

4. For the purpose of achieving the objects of the proceeding(s);

**5.** And with some connection or logical relation to the action.

## AUTHORITY

Cal. Civ. Code § 47(b); *GA Telesis, LLC v. GKN Aerospace, Chem-Tronics, Inc.*, 2013 U.S. Dist. Lexis 38358, at *26-*28 (Mar. 19, 2013); *Hagberg v. Cal. Fed. Bank*, 81 P.3d 244, 250 (Cal. 2004).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because § 47(b) privilege is an issue for the Court, not the jury.  *See Jensen*, 835 F.3d at 1111; *Falcon*, 224 Cal. App. 4th at 1272-73; *MAP Co.*, 2018 WL 3357474, at *2.

Qualcomm further objects to this instruction because it misstates the law.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  The instruction fails to note that Section 47(b) privilege is a defense only to a tort claim, not to a breach of contract claim.  *Crossroads Investors*, 13 Cal. App. 5th at 787.  In addition, the instruction states that the jury that it "should find" that the privilege prevents liability if "you find that" the elements were satisfied.  This statement fails to place the burden of proving this defense on Apple, and rather, places the burden on the jury to "find" the elements.  *Do v. Hollins Law, P.C.*, No. 3:13-CV-01322-JSW, 2013 WL 4013659, at *3 (N.D. Cal. Aug. 5, 2013) (analyzing whether party asserting litigation privilege "met its burden").

Qualcomm further objects to this instruction because it is unnecessary and repetitious.  *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802.  Apple has proposed a separate instruction that explains the elements of Section 47(b) privilege to the

jury. *See* Apple's Proposed Instruction No. 99 ("Declaration Regarding Section 47(b) Privilege").

## APPLE & CMS' PROPOSED INSTRUCTION NO. 120: LIQUIDATED DAMAGES (CAL. CIV. CODE § 1671)

I will instruct you as to when a contract, or contractual provision, constitutes a liquidated damages provision. A liquidated damages provision is a contractual provision that provides for a fixed and certain sum to be paid in the event of a breach of contract.   To find for the party asserting the affirmative defense that a contractual provision constitutes an unreasonable liquidated damages provision that is unenforceable, you must find that the provision was unreasonable under the circumstances existing at the time the contract was made.  This means that the liquidated damages provision bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach of performance at the time the contract was entered into.

### AUTHORITY

Cal. Civil Code § 1671; *Ridgley v. Topa Thrift & Loan Ass'n*, 953 P.2d 484, 488 (Cal. 1998); *Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*, 2011 WL 5075970, at *7 (S.D. Cal. Oct. 25, 2011); *McGuire v. More-Gas Invests., LLC*, 163 Cal. Rptr. 3d 225, 234 (Cal. Ct. App. 2013).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because whether a contract provision constitutes an unlawful liquidated damages provision is an issue for the Court, not the jury.  *See Jensen*, 835 F.3d at 1111; *Morris,* 128 Cal. App. 4th at 1314.

Qualcomm further objects to this instruction because it fails to state Apple has the burden of proving that the provision is unreasonable.  *See* California Civil Code § 1671(b).

Qualcomm objects to this instruction because it is unnecessary and repetitious.  *See Sarno*, 73 F.3d at 1485; *Gill*, 488 F.2d at 802.  Apple has separately proposed an instruction that explains liquidated damages provisions to the jury.  *See* Apple's Proposed Instruction No. 98 ("Violation of Cal. Civ. Code § 1671").

## **APPLE & CMS' PROPOSED INSTRUCTION NO. 121:**

## **VIOLATION OF SSO IPR POLICY**

I have previously instructed you on SSOs and the FRAND commitment. Apple and the CMs assert that a SSOs IPR policy is a binding contract on its members that may be breached or otherwise violated.  Apple and the CMS further assert that Qualcomm submitted written assurances to cellular SSOs in violation of its FRAND commitments and therefore violated the SSO IPR policies of relevant cellular SSOs.  Please see Instruction Nos. 8, 52 (SSO, FRAND Commitment) for further information. To find for the party asserting that Qualcomm has breached its obligations under an SSO's IPR policy, that party must prove all of the following:

    1.  That Qualcomm entered into a contract with an SSO; and

    2.  That Qualcomm failed to do something that the SSO's IPR policy required it to do.

## **AUTHORITY**

CACI No. 303; *Pinnacle Fitness & Recreation Mgmt. v. Moyes Family Trust*, No. 08-cv-1368-GPC, ECF 282 at 16 (S.D. Cal. Jan. 30, 2013) (final jury instruction for breach of contract claim approved by Judge Curiel).

## **QUALCOMM OBJECTION**

Qualcomm objects to this instruction because this purported affirmative defense was not pleaded and so has been waived. *Quantification Settlement*, 201 Cal. App. 4th at 813; *Jorst*, 2001 WL 969039, at *9; (Countercl.-Def. Apple Inc.'s Answer and Affirmative Defenses ECF No. 84; Defs.' Answer and Countercls., Case No. 3:17-CV-01010-GPC-MDD, ECF No. 84.).

Qualcomm further objects to this instruction because it misstates the law. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  Qualcomm objects to the description of the relevant FRAND commitment for the reasons explained in Qualcomm's Rule 44.1 brief.  (*See* ECF No. 876.)

In addition, the instruction makes no sense.  The instruction alleges: "Qualcomm submitted written assurances to cellular SSOs in violation of its FRAND commitments and therefore violated the SSO IPR policies of relevant cellular SSOs."  Nothing in Apple's or the CMs' pleadings explains how

Qualcomm's submission of written assurances to the SSOs can be a violation of its relevant FRAND commitments.

Finally, Qualcomm objects to this instruction because it improperly deviates from the model instructions. *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th 684-85; *Stoner*, 2018 WL 4354423, at *3. Apple omits the second, third, fifth and sixth element of the cited model instruction. *See* CACI No. 303.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 122 — EXCUSE

A party may be excused from having to perform under a contract if a prerequisite event never occurred or if the other party failed to perform its obligations.

### AUTHORITY

CACI No. 303 (2019 Edition).

### QUALCOMM OBJECTION

Qualcomm objects to this instruction because it fails to state that the other party's breach must be "material" in order to excuse performance. *See Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1602 (Cal. Ct. App. 2012). In addition, excuse is already addressed in the instruction regarding the elements of a claim for breach of contract.

Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 7 with respect to this issue.

## **APPLE & CMS' PROPOSED INSTRUCTION NO. 123: LACHES**

Laches applies when the party defending the claim contends that the party filing a claim did not file the claim within a reasonable time.  To prevail on the affirmative defense of laches, the party defending against a claim must prove both of the following by a preponderance of the evidence:

1. That the party bringing the claim unreasonably delayed in bringing the claim; and

2. The party bringing the claim acquiesced to the act at issue or the party defending against the claim was prejudiced by the delay on the part of the party asserting the claim in bringing the action.

### **AUTHORITY**

5 California Forms of Jury Instruction MB4200A.76 – Voidable Transactions Act Instructions – Laches (modified); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952-64 (9th Cir. 2001); *Moyle v. Liberty Mut. Ret. Benefit Plan*, 985 F. Supp. 2d 1247, 1262 (S.D. Cal. 2013) (Curiel, J.), reversed in part on other grounds in *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948 (9th Cir. 2016); *Miller v. Eisenhower Medical Ctr.*  27 Cal.3d 614, 624 (1980); *Am. Express Travel Related Servs. Co. v. D&A Corp.*, 2007 U.S. Dist. LEXIS 83095, at *104 (E.D. Cal. Oct. 29, 2007) (quoting *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994)).

### **QUALCOMM OBJECTION**

Qualcomm objects to this instruction because laches is an issue for the Court, not the jury.  *See Jensen*, 835 F.3d at 1111; *Ill. Tool Works,* 946 F. Supp. 2d at 1044 ("Equitable defenses, such as laches and equitable estoppel, are ultimately to be decided by the Court, not the jury.").

Qualcomm further objects to this instruction because it fails to state that the claimant must have "full knowledge of the facts".  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001) (internal quotation marks omitted).

**EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS                    -234-
WITH OBJECTIONS**                                                      **CASE NO. 3:17-CV-0108-GPC-MDD**

## APPLE & CMS' PROPOSED INSTRUCTION NO. 124:

## BILATERAL MISTAKE

The party defending the claim contends that there was no contract because both parties were mistaken about [*insert*].  To succeed, the party defending the claim must prove the following:

1.    That both parties were mistaken about [*insert*]

2.    This was a material aspect of the contract; and

3.    That the party defending the claim would not have agreed to enter into this contract if it had known about the mistake.

If you decide that the party defending the claim proved all of the above, then no contract was created.[18]

## AUTHORITY

CACI No. 331 (2019 Edition) (modified); *Reliance Fin. Corp. v. Miller*, 557 F.2d 674, 680 (9th Cir. 1977); *YTY Indus. SDN. BHD. V. Dow Chem. Co.*, No. 05-8881 SGL, 2009 WL 3633871, at *21 (C.D. Cal. Oct. 28, 2009) ("To establish a claim for rescission based on mutual mistake, [the party alleging mistake] must prove all of the following:  (1) at the time the contracts were executed, both parties were operating under a mistake of fact; (2) the mistake was material to the transaction; (3) the mistake did not result from YTY's neglect of its legal duty; (4) YTY does not bear the risk of the mistake; and (5) YTY would not have entered into the contracts if it had known about the mistake").

---

[18] For the reasons in Apple's summary judgment motion (ECF No. 602), Apple maintains that the jury should not be instructed on this claim. Apple has included this defense as Apple understands Qualcomm asserts it.  It is unclear exactly what mistake Qualcomm intends to reference because the proposed instruction merely states that there was a mistake "about [the parties'] obligations under Section 7 of the BCPA."  As Apple notes in its objections to Qualcomm's instructions, this defense is factually inapposite because the "mistake" defense does not apply to parties' competing interpretations of a negotiated contract provision, and Qualcomm's alleged mistake of fact lacks specificity. The fact that Apple has included this affirmative defense should not be taken as an admission that this is a valid defense that can be asserted—it is not.

**QUALCOMM OBJECTION**

Qualcomm objects to Apple's deviations from the model instruction. Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 24 with respect to this issue.

# <u>LIMITATIONS ON DAMAGES</u>

## APPLE & CMS' PROPOSED INSTRUCTION NO. 125:

## NO DOUBLE RECOVERY

No party may recover double damages for the same alleged misconduct.  For example, if you find that any of the CMs is liable for breach of the license agreement and the software agreement, Qualcomm is only entitled to recover the damages proved for one claim.  In other words, Qualcomm cannot collect damages for both the license agreement and the software agreement.  Likewise, Qualcomm seeks the same type of damages from the CMs and Apple in connection with Qualcomm's breach of contract claims against the CMs and tortious interference claims against Apple.  You may not award Qualcomm these same damages twice—Qualcomm is entitled to only one recovery of these claimed damages.

## AUTHORITY

*Renda v. Nevarez*, 223 Cal. App 4th 1231, 1238 n.4 (2014).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction because it misstates the law.  *See White*, 312 F.3d at 1012; *Bullock*, 159 Cal. App. 4th at 684-85.  The instruction that "Qualcomm seeks the same type of damages from the CMs and Apple in connection with Qualcomm's breach of contract claims against the CMs and tortious interference claims against Apple" and, therefore, Qualcomm cannot be awarded damages for each claim is incorrect.  "The [tortious interference] defendant and the contract breaker are both wrongdoers . . . and each is liable for the entire loss that he has caused. Even a judgment obtained for breach of the contract if it is not satisfied does not bar or reduce recovery from the one who has caused the breach." *Dawe v. Corr. USA*, 506 F. App'x 657, 659 (9th Cir. 2013) (quoting Restatement (Second) of Torts § 744A cmt. e (1979)).

Qualcomm further objects to this instruction because it is improperly one-sided because it uses Qualcomm's claims as its only examples and makes no mention of potential double recovery by Apple and the CMs.

## APPLE & CMS' PROPOSED INSTRUCTION NO. 126:

## FAILURE TO MITIGATE

A party is not entitled to recover damages for harm that it could have avoided with reasonable efforts or expenditures. You should consider the reasonableness of the party's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

If the party made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

The CMs assert failure to mitigate as a defense against Qualcomm's claims that the CMs breached their SULAs and MSAs.

Qualcomm asserts failure to mitigate as a defense against Apple's claim that Qualcomm breached the BCPA.

## AUTHORITY

CACI No. 358 (modified).

## QUALCOMM OBJECTION

Qualcomm objects that the instruction fails to specify the burden of proof and requests that the Court give Qualcomm's Proposed Closing Instruction No. 70 with respect to this issue.

# APPLE & CMS' PROPOSED INSTRUCTION NO. 127:

## STATUTE OF LIMITATIONS

Apple, Qualcomm and the CMs contend that certain claims against them were not filed within the time set by law.  To succeed on this defense, the Counterparty must prove that the Claimant's claimed harm occurred before the below referenced dates.  The statute of limitations may be a partial defense, allowing recovery for damages that took place after the date set by law but preventing recovery for damages that took place before the date set by law.

**Breach of contract**:

A party must bring a claim for breach of contract within 4 years of the alleged breach.  Qualcomm's claim against the CMs was filed on May 17, 2017, which means that Qualcomm cannot recover for any harm, including any damages for such harm, that the CMs prove occurred prior to May 17, 2013, because it is barred by the statute of limitations.   Likewise, Qualcomm cannot recover for any harm, including any damages for such harm, that Qualcomm proves occurred prior to May 17, 2013, because it is barred by the statute of limitations.  Apple's claim against Qualcomm was filed on January 20, 2017, which means that Apple cannot recover for any harm, including any damages for such harm, that Qualcomm proves occurred prior to January 20, 2013, because it is barred by the statute of limitations.  Likewise, Qualcomm cannot recover for any harm, including any damages for such harm, that Apple proves occurred prior to January 20, 2013, because it is barred by the statute of limitations.

By contrast, a party must bring a claim for breach of FRAND commitment within 5 years, not 4 years, of the alleged breach.  For the CMs' claim that Qualcomm breached its FRAND commitments (CMs' Count V), the CMs cannot recover for any harm, including any damages for such harm, that Qualcomm proved occurred prior to May 17, 2012, because it is barred by the statute of limitations.

**Unjust enrichment:** A party must bring a claim for unjust enrichment within 3 years of the alleged unjust enrichment. Any unjust enrichment that Apple proves occurred prior to January 20, 2014 is barred by the statute of limitations.

**Tortious interference:** A party must bring a claim for tortious interference with contract within 2 years of the alleged tortious interference. I have already found that any tortious interference, or resulting harm to Qualcomm, that occurred prior to January 20, 2015 is barred by the statute of limitations.

## AUTHORITY

CACI No. 338 (2019 Edition); Cal. Code of Civ. Proc. §§ 337, 338; *Fed. Deposit Ins. Corp. v. Dintino,* 167 Cal. App. 4th 333, 346 (2008); Order Granting In Part And Denying In Part Apple's Motion For Partial Summary Judgment On Second Amended Counterclaim For Tortious Interference With Contract As Time-Barred (Dkt. No. 729); Code Civil [C. Civ.] art. 2224 (Fr.).

## QUALCOMM OBJECTION

Qualcomm objects to this instruction to the extent it refers to statute of limitations as a defense to unjust enrichment, because Apple did not assert it in the Joint Pretrial Order. (*See* JPTO at 60-64); *Nw. Acceptance Corp.*, 841 F.2d at 924; *In re Transact*, 2014 WL 3888230, at *13.

Qualcomm further objects to this instruction on the grounds that it improperly suggests to the jury that the Court has already ruled against Qualcomm on the issue of statute of limitations, which is prejudicial and incorrect.

Finally, the instruction appears to include typographical errors: "Likewise, Qualcomm cannot recover for any harm, including any damages for such harm, that Qualcomm proves occurred prior to May 17, 2013, because it is barred by the statute of limitations."

For the foregoing reasons, Qualcomm requests that the Court give Qualcomm's Proposed Closing Instruction No. 68 with respect to this issue.

**EXHIBIT F:  APPLE & CMS'
PROPOSED JURY INSTRUCTIONS
WITH OBJECTIONS**                                    -241-                            **CASE NO. 3:17-CV-0108-GPC-MDD**