Evan R. Chesler (N.Y. Bar No. 1475722) (*pro hac vice*)
echesler@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

David A. Nelson (Ill. Bar No. 6209623) (*pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (858) 345-3178

[*Additional counsel identified on signature page*]

*Attorneys for Defendant and Counterclaim-Plaintiff*
QUALCOMM INCORPORATED

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE:<br>QUALCOMM LITIGATION | No. 3:17-CV-0108-GPC-MDD<br><br>**QUALCOMM INCORPORATED'S OPPOSITION TO APPLE INC.'S MOTION *IN LIMINE* NO. 4**<br><br>Judge: Hon. Gonzalo P. Curiel<br>Courtroom: 2D<br>Date: March 14, 2019<br>Time: 1:30 p.m. |


# TABLE OF CONTENTS

INTRODUCTION .......... 1

LEGAL STANDARD .......... 1

ARGUMENT .......... 1

I. Apple's Arguments Open the Door to Evidence Regarding Apple's Misuse of Qualcomm's Trade Secrets .......... 2

II. Apple's Attempts to Hire Qualcomm Engineers is Directly Related to Claims at Issue in this Case and Not Unduly Prejudicial .......... 4

CONCLUSION .......... 6

## INTRODUCTION

Apple seeks an order excluding Qualcomm from referencing either (a) Apple's misuse of Qualcomm's trade secrets or (b) Apple's efforts to poach Qualcomm's modem chip engineers in San Diego. But in arguing that such evidence is irrelevant, Apple ignores its own allegations—that Apple excluded Qualcomm chips from its 2018 iPhones because Qualcomm purportedly refused to deal with it in retaliation for bringing this lawsuit; that Qualcomm has forced Apple to overpay for its technology for years; and that the modem chip market has insurmountable barriers to entry. Apple has opened the door for Qualcomm to present facts rebutting those claims, including the very facts it seeks to exclude here. Apple's motion should be denied.

## LEGAL STANDARD

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401. And while all relevant evidence is inherently prejudicial, only when the probative value of the relevant evidence is substantially outweighed by *unfair* prejudice is relevant evidence inadmissible pursuant to Federal Rule of Evidence 403. *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). Rule 403 is "an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995). "[T]he danger of prejudice must not merely outweigh the probative value of the evidence, but *substantially* outweigh it." *Id.*

## ARGUMENT

Apple's allegations put at issue Qualcomm's reasons for refusing to unconditionally provide restricted source code to Apple, Apple's view of the value of Qualcomm's technology, and the state of the modem chip market. Qualcomm should be permitted to present evidence on each of those points.

## I. Apple's Arguments Open the Door to Evidence Regarding Apple's Misuse of Qualcomm's Trade Secrets.

At trial, the jury will hear that Apple ceased using Qualcomm as its chip supplier for 2018 iPhones and instead made Intel its sole supplier. Apple has asserted that Qualcomm refused to supply it with chipsets in retaliation for Apple filing this lawsuit, when in fact Qualcomm merely refused to unconditionally share more of the source code for those chips with Apple than it shares with any other customer. Apple has made this misleading assertion on at least three separate occasions. First, in an interrogatory response: [redacted] (Ex. 1) And then through two of its witnesses at the FTC trial, both of whom are slated to testify here: Tony Blevins testified that due to litigation between the companies, Qualcomm was "no longer willing to sell [Apple] chips" (Ex. 2 (FTC Trial Tr.) at 712:4-20); and Jeff Williams testified that "we tried to get [Qualcomm] to sell us chips, and they would not." (Ex. 3 (FTC Trial Tr.) at 890:23-24.)

Here, in the likely event that Apple presents evidence or argument that Qualcomm's failure to provide unconditional access to its restricted source code[1] for the 2018 chipsets was a retaliatory gesture, Qualcomm is entitled to confront Apple's witnesses about it. Qualcomm is also entitled to have its own witnesses explain why Qualcomm was not comfortable providing restricted source code without specific conditions in order to prevent any further misappropriation of its intellectual property. Specifically, Qualcomm proposed strict limitations under which it would provide restricted source code to Apple for the 2018 iPhone models, because it became apparent that Apple had been misusing Qualcomm's trade secrets to improve software for chipsets purchased from Intel, Qualcomm's direct competitor. Steve Mollenkopf, Qualcomm's CEO, told Apple as much: [redacted]

---

[1] Qualcomm has, from time to time, provided Apple access to very valuable and highly confidential portions of its software that it does not typically provide to other device makers. That software is referred to as "restricted source code" herein. (*See* Ex. 4 (Weiser Tr.) at 183:13-16).

[REDACTED] (Ex. 5.) Qualcomm is pursuing its rights regarding Apple's misuse of trade secrets in a separate forum, but here it provides important context to the parties' relationship in 2018, which Apple has put at issue. (*See Qualcomm v. Apple*, Case No. 37-2017-00041389 (Sup. Ct. California).)

None of Apple's citations support exclusion of these facts. Apple cites Judge Dembin's May 7, 2018 order in this case on Qualcomm's discovery requests related to Apple's handling of Qualcomm's source code. But Judge Dembin was not presented with Apple's argument that Qualcomm had improperly withheld restricted source code, so Judge Dembin never had the chance to address the issue before the Court now. And even then, Judge Dembin acknowledged "the argument of relevance is there." (ECF 839-9, Apple Ex. 7 (Discovery Hr'g Tr.) at 82:2-3.)

Apple also misleadingly states that other courts have found testimony regarding Qualcomm's misappropriation claims irrelevant. Not so. For example, Judge Sabraw excluded expert testimony related to Apple's handling of Qualcomm's confidential information because he considered the antitrust issues in the report irrelevant to the patent infringement at issue in that case. (*See* Ex. 6 at 2–3.) Indeed, as part of Judge Sabraw's basis for excluding the report, he indicated that the antitrust issues were being litigated *in this very case*. (*Id.*) Apple cites to another discovery ruling from Judge Dembin in that same case where he declined to enforce discovery related to Qualcomm's misappropriation theories on the basis of relevance. (*See* Ex. 7 at 5.) But again, relevance there was viewed in relation to the subject of the litigation—patent infringement. (*See* Ex. 8 at 10.)

Finally, Apple cites to Judge Pender's exclusion of expert testimony in a related ITC proceeding in the Northern District of California. But Judge Pender excluded this testimony for procedural deficiencies, not because it was irrelevant. (ECF 839-5, Apple Ex. 3 (ALJ Pender's Order) at 4-5.)

The probative value of these facts in response to Apple's allegations outweighs any minor prejudicial impact (if any) that they may have.  Indeed, it is Qualcomm that would be unfairly prejudiced if Apple is allowed to present a one-sided narrative of the parties' negotiations in 2018, divorced from Qualcomm's concerns about Apple's misuse of its confidential information.  *See* Fed. R. Evid. 403; *Mende*, 43 F.3d at 1302.

## II. Apple's Attempts to Hire Qualcomm Engineers is Directly Related to Claims at Issue in this Case and Not Unduly Prejudicial.

Since bringing this suit, Apple has announced plans to open a campus in San Diego and made numerous efforts to recruit modem chip engineers from Qualcomm.  (*See* Exs. 9, 10.)  Apple does not dispute those efforts.  Instead, Apple argues that Qualcomm should not be allowed to present any evidence of them, suggesting that such evidence should be excluded, apparently on some basis related to its argument that trade secret evidence should be excluded.  But, puzzlingly, Apple never explains why.  Evidence of Apple's efforts to hire away Qualcomm's engineers is independently relevant because it is one piece of a substantial amount of evidence demonstrating Apple's plans to harm Qualcomm financially, and rebutting Apple's allegations regarding the value of Qualcomm's technology and the state of the modem chip market.

*First*, the jury will hear from Apple at trial that Qualcomm's technology is not purportedly worth what Qualcomm charges for it—that Qualcomm charges "exorbitant" royalty rates that "have no apparent tie to the merits of Qualcomm's cellular SEP portfolio".  (ECF 83, ¶¶ 165-67.)  Apple will argue further that Qualcomm has "force[d]" Apple to enter into a number of contracts it contends are anticompetitive, "one-sided, non-standard, and unreasonable".  (*Id.* ¶ 622; *see also* Ex. 11 at 3-4.)  But discovery has shown that Apple has engaged in a systematic and calculated campaign to damage or destroy Qualcomm with one goal:  to force Qualcomm to accept less for Apple's use of its technology. (*See, e.g.*, Exs. 12, 13.)  Qualcomm will demonstrate at trial that Apple's campaign is not based on any view regarding what Qualcomm's technology is actually worth and that Apple's views about its own intellectual property are inconsistent with

those it espouses here.

Apple's efforts to hire away engineers, including senior engineers with significant experience, is one piece of that evidence and highly relevant to rebutting Apple's allegations. This is not only another example of Apple's efforts to undermine Qualcomm, but also an implicit acknowledgment by Apple that the products those engineers have helped develop and support are extremely valuable.

*Second*, Apple seeks an antitrust injunction premised, in part, on there being significant barriers to entry in the modem chip market. For instance, two of Apple's experts, B. Douglas Bernheim and Fiona Scott-Morton, contend that barriers to entry "have protected Qualcomm's market power and made it possible for Qualcomm to forestall competitors through exclusionary conduct." (Ex. 11 at 85; *see also* Ex. 14 at 113-115.) According to Scott-Morton, the industry [REDACTED] (Ex. 11 at 91.) And Apple argues that "Qualcomm's abusive practices have particularly harmed Apple, the prime innovator in the mobile device industry". (ECF 83, at ¶ 9.) Even assuming there were barriers to entry in the modem chip market (which Qualcomm will rebut), Qualcomm is entitled to show (and will show) that those alleged barriers have not prevented healthy competition in any event. (*See, e.g.*, Ex. 15 ¶¶ 208-32.)

One category of such evidence is Apple's own efforts to develop its own modem chipsets, which is clearly relevant to Apple's allegations. For example, that Apple finds it commercially advantageous to hire its own modem chip workforce and that it can, in fact, do so, is strong evidence that there are not insurmountable barriers to entering the modem chip market. That Apple has the ability to follow in the footsteps of companies like Samsung that have vertically integrated and created their own modem chips, also goes directly to whether Apple has in fact been harmed by any of the conduct it alleges.

The probative value of this evidence in response to Apple's allegations outweighs any minor prejudicial impact (if any) that it may have. *See* Fed. R. Evid. 403; *Mende*, 43

F.3d at 1302. Qualcomm should be permitted to introduce this evidence at trial. The jury is entitled to hear how Apple actually acts, not just what it says.

**CONCLUSION**

Therefore, Qualcomm respectfully requests that Apple's Motion *in Limine* No. 4 be denied.

Dated: March 1, 2019

Respectfully submitted,

By /s/ Evan R. Chesler
Evan R. Chesler

**CRAVATH, SWAINE & MOORE LLP**
Evan R. Chesler (*pro hac vice*)
(N.Y. Bar No. 1475722)
echesler@cravath.com
Keith R. Hummel (*pro hac vice*)
(N.Y. Bar No. 2430668)
khummel@cravath.com
Richard J. Stark (*pro hac vice*)
(N.Y. Bar No. 2472603)
rstark@cravath.com
Antony L. Ryan (*pro hac vice*)
(N.Y. Bar No. 2784817)
aryan@cravath.com
Gary A. Bornstein (*pro hac vice*)
(N.Y. Bar No. 2916815)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
(N.Y. Bar No. 4331609)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
(N.Y. Bar No. 4339651)
yeven@cravath.com
Vanessa A. Lavely (*pro hac vice*)
(N.Y. Bar No. 4867412)
vlavely@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
David A. Nelson (*pro hac vice*)
(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
Stephen Swedlow (*pro hac vice*)
(Ill. Bar No. 6234550)
stephenswedlow@quinnemanuel.com
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Alexander Rudis (*pro hac vice*)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

**JONES DAY**
Karen P. Hewitt (SBN 145309)
Randall E. Kay (SBN 149369)
rekay@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (858) 345-3178

***Attorneys for Defendant and Counterclaim-Plaintiff***
**QUALCOMM INCORPORATED**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 1, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4(d). Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

I certify under penalty of perjury that the foregoing is true and correct. Executed on March 1, 2019, at New York, New York.

By: */s/ Evan R. Chesler*
Evan R. Chesler
*Attorneys for Defendant and Counterclaim-Plaintiff*
QUALCOMM INCORPORATED