Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070 / Facsimile: (858) 678-5099

Ruffin B. Cordell, DC Bar No. 445801, *pro hac vice*, cordell@fr.com
Lauren A. Degnan, DC Bar No. 452421, *pro hac vice*, degnan@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070 / Facsimile: (202) 783-2331

William A. Isaacson, DC Bar No. 414788, *pro hac vice*, wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520, *pro hac vice*, kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727 / Facsimile: (202) 237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

*(Counsel for CMs and additional counsel listed below signature line)*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>QUALCOMM LITIGATION, | Case No. 3:17-CV-00108-GPC-MDD<br>[Consolidated with 3:17-CV-01010-GPC-MDD]<br><br>APPLE INC. AND THE CONTRACT MANUFACTURERS' OPPOSITION TO QUALCOMM INC.'S *DAUBERT* MOTION NO. 2 TO EXCLUDE PORTIONS OF THE EXPERT REPORT OF PAUL K. MEYER AND TO FORBID IMPROPER EXTRAPOLATION OF DR. VALENTI'S OPINIONS<br><br>**REDACTED**<br><br>Judge:    Hon. Gonzalo P. Curiel<br>Date:     March 21, 2019<br>Time:     1:30 p.m.<br>Courtroom: 2D |

# **TABLE OF CONTENTS**

**Page**

I.  BACKGROUND ................................................................................................ 1

    A.  Qualcomm Withheld Discovery on the Identity of Patents in Its Portfolio and Their Relative Value ............................... 1

II. ARGUMENT .................................................................................................... 2

    A.  Mr. Meyer Is Qualified To Opine on Overpayment of Royalties ........................................................................................... 2

    B.  Mr. Meyer's Assumptions Are Reasonable Because They Are Tied to the Facts of the Case ................................................... 4

        1.  Qualcomm Values Only Its United States SEPs, Not Its Foreign Patents or Other Intellectual Property ............................................................................... 4

        2.  ███████████████ dence Shows ████████ ......................... ███████ ........................ 7

    C.  Qualcomm's Request To Exclude Dr. Valenti's Analysis Is Improper .......................................................................... 9

III. CONCLUSION ............................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Sanofi*,
    No. 14-1317-SLR, 2016 WL 675576 (D. Del. Feb. 18, 2016) .............................. 4

*Bergen v. F/V St. Patrick*,
    816 F.2d 1345 (9th Cir. 1987) ............................................................................ 9

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.*,
    No. 06-CV-01848-H (POR), 2009 WL 10671818 (S.D. Cal. Apr.
    22, 2009) ............................................................................................................ 9

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,
    No. 10-CV-03972-LHK, 2012 WL 5835741 (N.D. Cal. Nov. 16,
    2012) .................................................................................................................. 3

*GPNE Corp. v. Apple, Inc.*,
    No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16,
    2014) .................................................................................................................. 3

*Hilsley v. Ocean Spray Cranberries, Inc.*,
    No. 17CV2335-GPC (MDD), 2018 WL 5617701 (S.D. Cal. Oct. 30,
    2018) .................................................................................................................. 3

*Limelight Networks, Inc. v. XO Commc'ns, LLC*,
    No. 3:15-cv-720-JAG, 2018 WL 678245 (E.D. Va. Feb. 2, 2018) ..................... 3

*Marketquest Grp., Inc. v. BIC Corp.*,
    No. 11-CV-618-BAS (JLB), 2018 WL 1756117 (S.D. Cal. Apr. 12,
    2018) .................................................................................................................. 3

*Parthenon Unified Memory Architecture LLC v. Apple Inc.*,
    No. 2:15-CV-621-JRG-RSP, 2016 WL 7670833 (E.D. Tex. Sept.
    21, 2016) ............................................................................................................ 4

*Quanta Comput., Inc. v. LG Elecs., Inc.*,
    553 U.S. 617 (2008) ......................................................................................... 10

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283, 1296 (Fed. Cir. 2015) ................................................................ 4

# TABLE OF AUTHORITIES (continued)

**Page(s)**

*The Boeing Co. v. United States*,
  86 Fed. Cl. 303 (Fed. Cir. 2009) ................................................................................. 3

**Other Authorities**

Federal Rule of Evidence
  Rule 403 ..................................................................................................................... 9

Mr. Meyer's analysis of overpayment of royalties for Apple products should be admitted because it is relevant and reliable. Given Qualcomm's refusal to provide discovery into the identity of patents in its portfolio and the value of these patents, Mr. Meyer was justified in relying on the facts available to underpin his analysis. These facts show that Qualcomm and the market do not attribute specific value to Qualcomm's NEPs, other intellectual property, or its foreign patents. As such, Qualcomm's challenge to Mr. Meyer's reliance on a percentage of U.S. SEPs as it relates to overpayment for exhausted patents does not go to the admissibility of his analysis, and is appropriate for cross-examination, not *Daubert*.

## I.  BACKGROUND

### A.  Qualcomm Withheld Discovery on the Identity of Patents in Its Portfolio and Their Relative Value

Throughout discovery, Qualcomm refused to provide any exhaustive list of the patents in its portfolio or the patents licensed to the CMs. For example, Apple and the CMs served Interrogatories requesting that Qualcomm identify patents that were and were not licensed to the CMs as part of the Subscriber User License Agreements ("SULAs"), and standard essential patents ("SEPs") in Qualcomm's portfolio that were practiced by Apple. Dkt. 470 (Dispute re Rogs 35, 52–53) at 1 (Rog 35), 12 (Rog 53); Dkt. 397 (Dispute re Rogs 43–44) at 2 (Rogs 43–44). In response, Qualcomm refused to identify any patents practiced by Apple, and for the SULAs, provided lists of thousands of patents, each of which Qualcomm stated "may" or "may not" be covered by the SULAs. Dkt. 397 at 2–3; Dkt. 470 at 16–19. When Apple and the CMs moved to compel a more complete response, Qualcomm argued that its non-exhaustive lists were sufficient to address the disputed issues in the case. Dkt. 470 at 21; Dkt. 397 at 7. The Court agreed that Qualcomm's non-exhaustive lists were sufficient and denied the motions. Dkt. 506 (Order on Dkt. 470) at 2–3 ("The Court finds Qualcomm's response adequate."); Dkt. 407 (Order on Dkt. 397) at 3.

In response to Apple and CM Interrogatories and RFPs on the relative value of

Qualcomm's patents, Qualcomm also withheld discovery. For example, Qualcomm refused to provide substantive responses to Interrogatories and RFPs seeking information and documents on the value Qualcomm attributed to various patents in its portfolio. *See* Dkt. 369 (Dispute re Rogs 23–24) at 2–3 (Rogs 23–24); Dkt. 493 (Dispute re RFPs 424–27) at 2–5 (RFPs 425, 427); Dkt. 404-1 (Ex. A to Dispute re Apple 2nd Set of RFPs) at 7–9 (RFPs 230–31). The Court denied Apple and the CMs' motions to compel responses based on Qualcomm's assertions that the requests prematurely called for expert discovery or privileged information. Dkt. 381 (Order on Dkt. 369) at 3 ("Qualcomm may wait until its expert opines regarding these values and supplement their responses at that time, absent other agreement by the parties."); Dkt. 507 (Order on Dkt. 493); Dkt. 411 (Order on Dkt. 404).

## II.   ARGUMENT

### A.   Mr. Meyer Is Qualified To Opine on Overpayment of Royalties

Mr. Meyer is more than sufficiently qualified to analyze overpayment of royalties on Apple products. He is a Certified Public Account and Certified Licensing Professional and Accredited in Business Valuation (CPA-ABV). Dkt. 799-1 (Meyer Rpt.) at 5 (¶ 2). He has also been an Adjunct Professor at Stanford University in the Graduate School of Engineering for almost twenty-five years, where he teaches accounting, quantitative methods, valuation, and finance. *Id.* In addition to these positions, Mr. Meyer has worked in financial, accounting, damages, and licensing consulting for over 30 years. *Id.* at 5–6 (¶¶ 3–5). Mr. Meyer has consulted for companies in their negotiations for licensing patent rights, including standard-essential patent rights. Ex. 1 (Meyer Dep.) at 2 (22:21–24:2). He also has experience in valuation analytics for intellectual property and SEPs for standards including 802.11, 2G, 3G, 4G, and H.264, as well as determinations of reasonable royalty rates in FRAND and non-FRAND disputes. Dkt. 799-1 (Meyer Rpt.) at 5–6 (¶¶ 4–5), 155, 162. Since 1990, Mr. Meyer has been accepted by over 50 state and federal courts and major arbitration panels to testify as an expert on reasonable royalties,

intellectual property damages, economic damages, and contract and asset valuation. He has testified on FRAND issues in federal court, such as in *Core Wireless Licensing S.a.r.l. v. Apple, Inc.*, Case No.: 5:15-CV-05008-PSG (N.D. Cal.). *Id.* at 164 (Attachment 2).

Qualcomm takes issue with Mr. Meyer's experience because "he is neither an economist, a lawyer, nor a technical expert." Dkt. 803-1 (Qualcomm *Daubert* No. 2) at 1. Yet Qualcomm never explains why Mr. Meyer is objectively unqualified to opine on overpayment of royalties for Apple products. Nor could Qualcomm because Mr. Meyer's qualifications in accounting, valuation, finance, licensing, and damages are sufficient. *See GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *10 (N.D. Cal. Apr. 16, 2014) (admitting Mr. Meyer's testimony on reasonable royalty calculations involving standard essential patents); *Marketquest Grp., Inc. v. BIC Corp.*, No. 11-CV-618-BAS (JLB), 2018 WL 1756117, at *3 (S.D. Cal. Apr. 12, 2018) (finding "intellectual property consultant with over twenty-five years of experience in valuing intellectual property" properly qualified under *Daubert* to testify on intellectual property damages); *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC (MDD), 2018 WL 5617701, at *8 (S.D. Cal. Oct. 30, 2018) ("The Ninth Circuit 'contemplates a broad conception of expert qualifications.' . . . The threshold for qualification is low; a minimal foundation of knowledge, skill, and experience suffices." (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004))).[1]

---

[1] Additionally, Qualcomm's citations to cases in which Mr. Meyer's testimony was limited are irrelevant and misleading. First, Qualcomm misrepresents the Court's holding in *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-CV-03972-LHK, 2012 WL 5835741 (N.D. Cal. Nov. 16, 2012), by alleging that Mr. Meyer's testimony was excluded. Dkt. 803-1 (Qualcomm *Daubert* No. 2) at 6. Instead, the court ordered Mr. Meyer to supplement a portion of his report to explain a royalty rate calculation. *Fujitsu*, 2012 WL 5835741 at *9. Only if he failed to provide the supplementation on that particular issue by a certain deadline would his testimony be excluded. *Id.* Further, the court denied two other *Daubert* motions against Mr. Meyer. *Id.* at *8. *The Boeing Co. v. United States*, 86 Fed. Cl. 303 (Fed. Cir. 2009) and *Limelight Networks, Inc. v. XO Commc'ns, LLC*, No. 3:15-cv-720-JAG, 2018 WL 678245 (E.D. Va. Feb. 2, 2018) dealt with entirely different facts and issues that are not relevant to Qualcomm's *Daubert* motion. Moreover, the exclusion of Mr. Meyer's

### B. Mr. Meyer's Assumptions Are Reasonable Because They Are Tied to the Facts of the Case

#### 1. Qualcomm Values Only Its United States SEPs, Not Its Foreign Patents or Other Intellectual Property

Mr. Meyer's analysis on overpayment of royalties for Apple products is relevant and reliable because it is tied to the facts of the case. All of the evidence shows that Qualcomm and the industry do not value Qualcomm's portfolio based on its foreign patents or its NEPs. *See, e.g.*, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Although Qualcomm has presented no contrary evidence, it argues the factual underpinnings of Mr. Meyer's calculation are incorrect. Dkt. 803-1 (Qualcomm *Daubert* No. 2). This is a point for cross-examination, not *Daubert*. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.").

Preliminarily, Mr. Meyer's reliance on Dr. Valenti's sampling of U.S. SEPs from Qualcomm's list of SEPs is reasonable because Qualcomm never fully identified the patents in its portfolio or its licenses. *See* Section I. Qualcomm argued and the Court agreed that non-exhaustive lists of Qualcomm's patents were sufficient

---

testimony in just two cases out of the more than 250 cases he has either testified or provided opinions in is not probative or relevant to his opinion here, and Qualcomm ignores all of the cases in which Mr. Meyer's testimony was held admissible under *Daubert*. *See, e.g.*, *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *10 (N.D. Cal. Apr. 16, 2014) (rejecting *Daubert* motion to exclude Mr. Meyer's testimony where "Apple has proven that Mr. Meyer's methodology is sufficiently reliable to meet the *Daubert* standard. Mr. Meyer's approach is reproducible, based on reasonable inputs, and entirely quantitative . . ."); *Parthenon Unified Memory Architecture LLC v. Apple Inc.*, No. 2:15-CV-621-JRG-RSP, 2016 WL 7670833, at *2 (E.D. Tex. Sept. 21, 2016) (denying *Daubert* motion against Mr. Meyer because "PUMA has not shown that Mr. Meyer's methodology is unreliable"); *Amgen Inc. v. Sanofi*, No. 14-1317-SLR, 2016 WL 675576, at *2 (D. Del. Feb. 18, 2016) (rejecting *Daubert* motion against Mr. Meyer's royalty opinion because he "adequately explained in [his] report[] the relevance of [his] respective data").

to address the issues in this case. *See id.* Dr. Valenti performed his exhaustion analysis using a sampling of one of these non-exhaustive patent lists— ▇

▇

▇. Ex. 4 (Excerpt of Mar. 18, 2016 Ltr. to Watrous). As such, Mr. Meyer's analysis is tied to the facts of the case because it is based on information Qualcomm provided about its portfolio.[2] Qualcomm cannot now allege that Mr. Meyer's analysis is improper for not reflecting the full extent of Qualcomm's portfolio when Qualcomm chose not to disclose that information to Apple and the CMs.

It was thus not only reasonable, but the best approach, for Mr. Meyer to leave Qualcomm's other IP out of his calculation of the value of Qualcomm's portfolio. As explained in Meyer's Opening Report, ▇

▇

Fabian Gonell, Qualcomm's Senior Vice President of Licensing Strategy, testified in his capacity as Qualcomm's corporate representative that ▇

---

[2] Mr. Meyer's approach is further reasonable because he used a conservative approximation of exhausted patents from Dr. Valenti's analysis. As explained in Mr. Meyer's opening report, Mr. Meyer could have used an estimate that 92.5% of the patents are exhausted for having inventive features inside the baseband chipset based on Dr. Valenti's analysis. *See* Dkt. No. 799-1 (Meyer Op. Rpt.) at 102 (¶ 270 n.539). Instead of adopting this figure for exhaustion, Mr. Meyer only considered the 44% of patents in which Dr. Valenti determined that *all* claims would be fully or substantially embodied in the baseband chipset.

[redacted lines 1–12]

Likewise, Qualcomm's licensing practices demonstrate that Qualcomm does not attribute any value to its foreign patents. First, Qualcomm offers only one royalty worldwide. Ex. 7 (Jan. 18, 2019 FTC Trial Tr.) at 20 (1399:16–1401:14 (describing Qualcomm's global royalty rates)). Thus licensees in countries where Qualcomm has three patents versus licensees in countries with tens of thousands of Qualcomm patents are required to pay the same royalty, regardless of the fact that far fewer patents apply to that first licensee's device. Qualcomm has deviated from this royalty in only rare and extreme circumstances, and not based on the locations of its licensees. *See id.* at 21–22 (1404:6–1406:17, 1407:8–1408:11 (explaining that the limited circumstances in which Qualcomm has agreed to different royalties were "very unusual," took years of negotiations, and involved extensive cross-licenses)).

The terms of Qualcomm's offers to Apple also show that Qualcomm believes its U.S. patents are the proper benchmark for determining value. [redacted]

[redacted lines 26–28]

1 ████████████████████████████████████████
2 ████████████████████████████████████████
3 ████████████████████████████████████████
4 ██████████████████████
5       Even if Qualcomm did value its foreign patents, Qualcomm has not shown it is
6 objectively unreasonable to extrapolate the ratio of exhausted U.S. patents to foreign
7 patents. ██████████████████████████████████
8 ████████████████████████████████████████
9 ████████████████████████████████████████
10 ████████████████████████████████████████
11 ███████████████████████████████ Ex. 4
12 (Excerpt of Mar. 18, 2016 Ltr. to Watrous).[3]  This supports Mr. Meyer's approach of
13 using the exhaustion of U.S. patents as a reasonable proxy for the entire portfolio.
14       Given Qualcomm's failure to fully identify the patents in its portfolio or in the
15 SULAs and the evidence showing Qualcomm's U.S. cellular SEP patents are proper
16 for use in Mr. Meyer's opinions on calculating refunds for exhausted patents, Mr.
17 Meyer should be allowed to present this analysis to the jury.
18       **2.  The Only Available Evidence Shows** ████████████
19 ████████████
20       Mr. Meyer's analysis of overpayment for exhausted patents rests on the
21 premise that the value of Qualcomm's exhausted SEPs is equivalent to the value of
22 its non-exhausted SEPs.[4]  This is a reasonable inference based on the facts of the case
23 for two reasons.  First, there is a dearth of evidence on the relative value of
24 Qualcomm's patents because, as discussed in Section I, Qualcomm withheld all
25 discovery that Apple and the CMs sought on this topic. ████████████████

---

[3] Instead of providing the entire 1,976 page letter, Apple has attached a five page excerpt. Apple can provide the full letter or bring a copy of the letter to the March 21, 2019 hearing, should the Court wish to review the letter it in its entirety.

[4] Qualcomm's NEPs are not at issue as they do not provide value to Qualcomm's portfolio, see Section II.B.1, and Mr. Meyer's analysis appropriately relies on SEPs only.

1 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

2  As discussed above, Qualcomm refused to provide any discovery into
3 valuations of its patents, claiming that this information was privileged or the subject
4 of expert discovery.  *See* Section I. ▬▬▬▬▬▬▬▬▬▬▬▬
5 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
6 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  It was not until Qualcomm's
7 opening expert reports that Qualcomm disclosed any information on its patents.
8 However, Qualcomm's technical experts opined that all of the SEPs they analyzed
9 were "fundamental," "important," or "valuable."  *See*, *e.g.*, Ex. 10 (Jayant Rpt.) at
10 32–35 (¶¶ 7–8 ("These patents address fundamental concepts without which 3G, 4G,
11 and 5G cellular would not be possible."), 113, 167–68); Ex. 11 (Gitlin Rpt.) at 37–39
12 (¶¶ 7–8, 37–38); Ex. 12 (Andrews Rpt.) at 41–45 (¶¶ 7, 9, 82, 123, 297–98).  None of
13 the experts provided any criteria for determining when a patent was "fundamental,"
14 "important," or "valuable," or provided the relative value of any Qualcomm patent in
15 comparison to any other Qualcomm patent.  *See*, *e.g.*, Ex. 13 (Andrews Dep.) at 47–
16 49 (65:16–24 ("Your report does not set forth any objective criteria for measuring the
17 value of a patent.  Is that fair? . . . A.  Does it set forth, like, criteria that I
18 use? . . . No.  Not really."), 68:2–7, 70:4–73:6 ("Q. . . . Well, do you have any
19 methodology for evaluating which patents in Qualcomm's portfolio are more
20 valuable than others?  A.  Not really.")); Dkt. 801-5 (Jayant Dep.) at 1299–1301
21 (190:9–24, 214:20–216:13 ("My assignment was to speak to the importance of these
22 patents, not to rank them."), 237:5–24); Dkt. 801-4 (Gitlin Dep.) at 1295 (106:4–8 ("I
23 didn't compare these patents with other patents.")).
24 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
25 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
26 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
27 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
28 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



1
2
3
4
5
6
7
8
9  As
10  such, the premise that Qualcomm's SEPs should be valued equally for Mr. Meyer's
11  analysis is reasonably tied to the only available evidence, and Qualcomm's challenge
12  to its accuracy goes to the weight of Mr. Meyer's testimony, not its admissibility.
13  *See Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987) ("The relative
14  weakness or strength of the factual underpinnings of the expert's opinion goes to
15  weight and credibility, rather than admissibility.").

### C. Qualcomm's Request To Exclude Dr. Valenti's Analysis Is Improper

Qualcomm's back-door request to preclude the jury from considering Dr. Valenti's opinion "to call into question the royalties paid under the CMs' license agreements" should also be denied. First, Qualcomm's request is an improper attempt to exclude Dr. Valenti's exhaustion opinion by relying on Federal Rule of Evidence 403 without making any showing that Dr. Valenti's analysis is not relevant or that its relevance would be outweighed by danger of unfair prejudice. Dr. Valenti's opinion should not be excluded because it is highly relevant to disputed issues and is not remotely prejudicial. *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, No. 06-CV-01848-H (POR), 2009 WL 10671818, at *9–10 (S.D. Cal. Apr. 22, 2009) (testimony and evidence properly admitted under Rule 403 where "relevant to prove a material issue in the case" and "[t]he evidence was also not unduly

prejudicial, as [defendant] had the opportunity to cross examine [the witness] concerning this testimony"). Specifically, Dr. Valenti's analysis shows that a large portion of Qualcomm's U.S. SEPs are substantially embodied in Qualcomm baseband chipsets, which is relevant to the issue of exhaustion that arises in many claims and defenses. Dkt. 939 (Opp. to Qualcomm *Daubert* No. 4) at 3-4. As Qualcomm itself has told the Court, "***[e]xhaustion will absolutely, undoubtedly, be part of this trial***." *See* Ex. 14 (Oct. 26, 2018 Hr'g Tr.) at 51 (33:16–19 (Mr. Chesler on behalf of Qualcomm)).

For example, Qualcomm alleges that its royalties are FRAND based on its worldwide portfolio. However, FRAND royalties must be based on, among other things, patents that are not exhausted. *See Quanta Comput., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008) ("The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item."). Dr. Valenti's analysis showing that Qualcomm's U.S. SEPs are substantially embodied in Qualcomm baseband chipsets is relevant because U.S. SEPs are part of Qualcomm's worldwide portfolio. If they are exhausted, the value of Qualcomm's portfolio is lower, which supports finding that Qualcomm's royalties are not FRAND. Therefore, Qualcomm's claim that a FRAND determination cannot be tied to analysis of its exhausted U.S. SEPs is wrong, and Qualcomm's request should be denied.[5]

## III. CONCLUSION

For the foregoing reasons, Apple and the CMs respectfully ask the Court to deny Qualcomm's *Daubert* Motion No. 2.

Dated: March 1, 2019          Respectfully submitted,

By: *s/ Benjamin C. Elacqua*
Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com

---

[5] In addition, for all the reasons stated in Section II.B.1 above, it is also reasonable to extrapolate Dr. Valenti's analysis of the U.S. SEPs to Qualcomm's entire portfolio in light of the limited facts available showing that Qualcomm does not look to its foreign patents or NEPs in determining royalties.

|   |   |
|---|---|
| 1 | Fish & Richardson P.C. |
| 2 | 12390 El Camino Real<br>San Diego, CA 92130<br>Phone:  619-678-5070 / Fax: 619-678-5099 |
| 3 | Ruffin B. Cordell, DC Bar No. 445801 |
| 4 | *pro hac vice*, cordell@fr.com<br>Lauren A. Degnan, DC Bar No. 452421 |
| 5 | *pro hac vice*, degnan@fr.com<br>Fish & Richardson P.C. |
| 6 | 1000 Maine Avenue, S.W., Suite 1000<br>Washington, D.C. 20024 |
| 7 | Phone:  202-783-5070 / Fax:  202-783-2331 |
| 8 | Benjamin C. Elacqua, TX Bar No. 24055443<br>*pro hac vice*, elacqua@fr.com |
| 9 | Fish & Richardson P.C.<br>One Houston Center, 28th floor |
| 10 | 1221 McKinney<br>Houston, TX 77010 |
| 11 | Phone: 713-654-5300 / Fax: 713-652-0109 |
| 12 | William A. Isaacson, DC Bar No. 414788<br>*pro hac vice*, wisaacson@bsfllp.com |
| 13 | Karen L. Dunn, DC Bar No. 1002520<br>*pro hac vice*, kdunn@bsfllp.com |
| 14 | BOIES SCHILLER FLEXNER LLP<br>1401 New York Avenue, N.W. |
| 15 | Washington, DC 20005<br>Telephone: 202-237-2727 |
| 16 | Facsimile:  202-237-6131 |
| 17 | *Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.* |
| 18 |  |
| 19 |  |
| 20 |  |
| 21 |  |
| 22 |  |
| 23 |  |
| 24 |  |
| 25 |  |
| 26 |  |
| 27 |  |
| 28 |  |

| | |
|---|---|
| 1 | By: /s/ Jason C. Lo |
| | Theodore R. Boutrous, Jr., SBN 132099, |
| 2 | tboutrous@gibsondunn.com |
| | Richard J. Doren, SBN 124666 |
| 3 | rdoren@gibsondunn.com |
| | Daniel G. Swanson, SBN 116556, |
| 4 | dswanson@gibsondunn.com |
| | Michele L. Maryott, SBN 191993 |
| 5 | mmaryott@gibsondunn.com |
| 6 | Jason C. Lo, SBN 219030, |
| | jlo@gibsondunn.com |
| 7 | Jennifer J. Rho, SBN 254312, |
| | jrho@gibsondunn.com |
| 8 | Melissa Phan, SBN 266880, |
| 9 | mphan@gibsondunn.com |
| | GIBSON, DUNN & CRUTCHER LLP |
| 10 | 333 South Grand Avenue |
| | Los Angeles, CA 90071 |
| 11 | Tel: (213) 229-7000; Fax: (213) 229-7520 |
| 12 | |
| | Cynthia Richman, DC Bar No. 492089, |
| 13 | *pro hac vice* |
| | crichman@gibsondunn.com |
| 14 | GIBSON, DUNN & CRUTCHER LLP |
| | 1050 Connecticut Avenue, N.W. |
| 15 | Washington, DC 20036 |
| 16 | Tel: (202) 955-8500; Fax: (202) 467-0539 |
| 17 | *Attorneys for Defendants, Counterclaimants, and* |
| 18 | *Third-Party Plaintiffs Compal Electronics, Inc., FIH* |
| | *Mobile Ltd., Hon Hai Precision Industry Co., Ltd.,* |
| 19 | *Pegatron Corporation, and Wistron Corporation* |
| 20 | |
| | Hugh F. Bangasser, *pro hac vice* |
| 21 | hugh.bangasser@klgates.com |
| | Christopher M. Wyant, *pro hac vice* |
| 22 | chris.wyant@klgates.com |
| 23 | J. Timothy Hobbs, *pro hac vice* |
| | tim.hobbs@klgates.com |
| 24 | K&L GATES LLP |
| | 925 Fourth Avenue, Suite 2900 |
| 25 | Seattle, Washington 98104 |
| | Tel: (206) 623-7580; Fax: (206) 370-6371 |
| 26 | |
| 27 | Caitlin C. Blanche, SBN 254109, |
| | caitlin.blanche@klgates.com |
| 28 | K&L GATES LLP |
| | 1 Park Plaza Twelfth Floor |

Irvine, CA  92614
Tel: (949) 253-0900; Fax: (949) 253-0902

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Wistron Corporation*

**FILER'S ATTESTATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court of the Southern District of California, I certify that authorization for the filing of this document has been obtained from each of the other signatories shown above and that all signatories have authorized placement of their electronic signature on this document.

Dated: March 1, 2019           *s/ Benjamin C. Elacqua*
                               Benjamin C. Elacqua

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 1, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Executed on March 1, 2019, at Houston, Texas.

*s/ Benjamin C. Elacqua*
Benjamin C. Elacqua