# EXHIBIT 1

PAUL K. MEYER - 11/09/2018

```
 1              UNITED STATES DISTRICT COURT

 2             SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   _____

 5   IN RE: QUALCOMM LITIGATION   Case No. 3:17-cv-000108
                                            GPC-MDD
 6

 7   _____

 8

 9

10

11

12

13

14          VIDEO DEPOSITION OF PAUL K. MEYER

15              Redwood City, California

16              Friday, November 9, 2018

17                     Volume I

18

19

20

21

22   REPORTED BY:

23   REBECCA L. ROMANO, RPR, CSR No. 12546

24   JOB NO. NY-198376

25   PAGES 1 - 236
```

Epiq Court Reporting Solutions - New York

1-800-325-3376                                    www.deposition.com

EXHIBIT 1
Page 0001

PAUL K. MEYER - 11/09/2018                Pages 22..25

Page 22

1 saying the science.  And I'm not trying to limit to
2 the science.
3        So you have an understanding that there
4 are such things as standard development
5 organizations or standard setting organizations.
6 The acronyms for those are SDO and SSO.
7    A.   Yes, I have that understanding,
8 absolutely.
9    Q.   Have you ever participated in any SDO
10 process or SSO process of any kind not limited to
11 science?
12   A.   If I understand your question, I -- my
13 opinion would be no.
14   Q.   Have you ever attended a meeting of
15 members of any SDO or SSO ever?
16   A.   No, I have not.
17   Q.   Have you ever published any papers that
18 were peer-reviewed that relate to any SSO, SDO --
19 or SDO?  Excuse me.
20   A.   No.
21   Q.   Have you ever negotiated a license
22 agreement on behalf of a party where the license
23 covered standard-essential patents?
24   A.   I have been in that process.  I have
25 never been the one that absolutely has to sign off

Page 23

1 on the final agreement and approve the terms and
2 conditions and -- and consideration, but I've been
3 involved in that process.
4    Q.   When were you involved in that process?
5    A.   Over the last ten years.
6    Q.   For who?
7    A.   I can't mention the party, but it was a
8 client that was involved in coming to an agreement
9 on the -- what to pay for standard-essential
10 patents.
11   Q.   Why can't you mention?
12   A.   Because it's proprietary to my retention
13 and to my agreement with my client.
14   Q.   Did you interact with the other side in
15 any way in that involvement in your negotiation of
16 a standard-essential patent portfolio license?
17   A.   My role was to provide insight to the
18 client about the value of what it was licensing.
19 And so that would have taken me to working with the
20 client.  The client would have interacted with the
21 licensor.
22   Q.   So let me ask the question again then.
23        Have you ever negotiated a license
24 agreement on behalf of a party where the license
25 covered standard-essential patents?

Page 24

1    A.   Not as the decision-maker.  I've been
2 involved in the process.
3    Q.   Have you participated in any part of the
4 negotiation with the other party?
5    A.   Not directly.
6    Q.   And what I mean by that is, did you have
7 any communications with the other side of a license
8 negotiation process?
9    A.   I did not.  The -- the negotiators did
10 from the team that I was on.
11   Q.   And if I understand your testimony
12 correctly, you did some valuation associated with
13 that license negotiation; is that correct?
14   A.   I think if we -- if we boil it down, it
15 was valuation analysis to support the negotiation,
16 that's correct.
17   Q.   What does FRAND require a party to do
18 when negotiating a standard-essential portfolio
19 license?
20        MS. CHEN:  Objection.  Calls for a legal
21 conclusion.
22        MR. SWEDLOW:  I totally agree.
23        THE DEPONENT:  And by the party, can you
24 clarify that for me.
25   Q.   (By Mr. Swedlow)  The licensor.

Page 25

1    A.   I can't speak to the legal aspects of
2 that, and so I think that gets to lawyers and
3 others that will address that issue in the case.
4    Q.   Do you have any opinion as to what FRAND
5 imposes in terms of an obligation on the licensor
6 in the context of negotiating a FRAND portfolio
7 license?
8         MS. CHEN:  Objection.  Form.
9         THE DEPONENT:  Well, I have my
10 understanding.  But it's my -- it's also my
11 understanding in this case that will be a legal
12 issue for the court and the lawyers and the trier
13 of fact to decide.
14        My understanding is that in that
15 circumstance if a patent holder has declared its
16 patents to a standard, it's committed to making
17 those patents available to entities that need those
18 licenses to have access to those patents.  But
19 that's my understanding setting up my analysis on
20 valuation.  Others will address that legally.
21   Q.   (By Mr. Swedlow)  Do you have any opinion
22 as to what is required by the licensor in the
23 context of FRAND negotiations?
24        MS. CHEN:  Same objection.
25        THE DEPONENT:  If I understand the