Juanita R. Brooks, SBN 75934, brooks@fr.com
Seth M. Sproul, SBN 217711, sproul@fr.com
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Phone: 858-678-5070 / Fax: 858-678-5099

Ruffin B. Cordell, DC Bar No. 445801, *pro hac vice*, cordell@fr.com
Lauren A. Degnan, DC Bar No. 452421, *pro hac vice*, degnan@fr.com
Fish & Richardson P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
Phone: 202-783-5070 / Fax: 202-783-2331

William A. Isaacson, DC Bar No. 414788, *pro hac vice*, wisaacson@bsfllp.com
Karen L. Dunn, DC Bar No. 1002520, *pro hac vice*, kdunn@bsfllp.com
Boies, Schiller & Flexner LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Phone: 202-237-2727 / Fax: 202-237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*
*(Counsel for the CMs and Additional Counsel listed below Signature Line)*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: <br><br> QUALCOMM LITIGATION, | Case No. 3:17-CV-00108-GPC-MDD <br><br> [Consolidated with 3:17-CV-01010-GPC-MDD] <br><br> APPLE INC. AND THE CONTRACT MANUFACTURERS' OPPOSITION TO QUALCOMM INC.'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING ROYALTY STACKING <br><br> ██████████ REDACTED <br><br> Date:        March 14, 2019 <br> Time:       1:30 p.m. <br> Courtroom: 2D <br> Judge:      Hon. Gonzalo P. Curiel |

## I. INTRODUCTION

Apple and the CMs oppose Qualcomm's Motion *in Limine* No. 1 to exclude evidence or argument concerning royalty stacking because it seeks to preclude relevant evidence on a core issue in the case—whether Qualcomm's offers of its alleged standard essential patents ("SEP") are fair, reasonable, and nondiscriminatory ("FRAND"). Fed. R. Evid. 401, 402.[1] Dkt. 828 (hereinafter "Motion"). To assist the jury in evaluating whether Qualcomm's royalty demands comply with FRAND, Apple and the CMs will present evidence that considers whether Qualcomm's SEPs are overvalued compared to other major cellular licensors, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Royalty stacking is directly relevant to evaluating Qualcomm's demands in relation to other cellular licenses and determining whether the total cellular royalty burden would be reasonable compared to other known inputs, like the price of the baseband chip. Licensees consider this concept in real-world licensing negotiations, whether relating to SEPs or non-cellular patents, and the jury should be permitted to hear such probative evidence and testimony. There is no danger of unfair prejudice in allowing the jury to hear both sides' evidence evaluating whether Qualcomm's royalty demands are FRAND. Fed. R. Evid. 403.

## II. ARGUMENT

### A. Apple and the CMs' Analysis Is Relevant to Analyzing Qualcomm's FRAND Obligations

A central issue in this case is whether the royalties Qualcomm charges for its SEPs are fair and reasonable. To evaluate this dispute, a jury must consider the risk of royalty stacking, which occurs because Qualcomm is not the only SEP holder that demands a royalty. When each individual SEP holder demands a royalty, those royalties may "stack" on top of each other and exceed the total value of the standard. *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. CV

---

[1] *See* Dkt. 83–84 (Apple Claims LXI–LXIII; CMs' Countercl. I–III, V–IX); Dkt. 469 (Qualcomm Countercl. II, IV).

15-2370 JVS (DFMX), 2018 WL 4488286, at *8 (C.D. Cal. Sept. 14, 2018) (determining FRAND royalty for SEPs).  A jury must address the risk of royalty stacking by considering the aggregate royalties that would apply if other SEP holders made royalty demands of Apple or the CMs.  *In re Innovatio IP Ventures, LLC Patent Litig.*, No. 11 C 9308, 2013 WL 5593609, at *9 (N.D. Ill. Oct. 3, 2013) (citing *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 2111217, at *11–12 (W.D. Wash. Apr. 25, 2013))[2].

Qualcomm's claim that royalty stacking is irrelevant to FRAND as a matter of contract law is misplaced.  *See* Mot. at 6.  Courts have assessed royalty stacking and applied traditional patent-damages principles in evaluating the FRAND commitment because a FRAND license or FRAND offer involves patents.  *See, e.g.*, N.D. Cal. Model Patent Jury Instructions (2018) at 53 ("5.10 Reasonable Royalty—Commitment to License on Reasonable and Nondiscriminatory Terms"); *TCL*, 2018 WL 4488286 at *8 (acknowledging that the top-down approach was a valuable way to prevent royalty stacking).[3]  A patent owner's remedy, if no license terms can be reached, is to sue for patent infringement and recover a reasonable royalty for use of its patent.

**B.   Apple and the CMs' Evidence on Royalty-Stacking Will Assist the Jury in Evaluating FRAND Related Issues**

Apple and the CMs' experts present evidence that includes using a "top down" approach to evaluate whether Qualcomm's demands are FRAND.  This method determines a portion of the aggregate royalty stack attributable to

---

[2] As discussed in *Motorola,* this same logic applies to portfolios including non-SEPs. *Motorola*, 2013 WL 2111217, at *69.  *See* also *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) (discussing approaches to determining FRAND royalty for non-SEPs).

[3] *Innovatio*, 2013 WL 5593609 at *10 (determining FRAND royalty); *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 WL 1494247, at *12–21 (N.D. Cal. Apr. 16, 2014) (discussing approaches to determine FRAND royalties).

1  Qualcomm's SEPs as compared to all cellular SEPs.  D799-1 (Meyer Op. Rpt.) at
2  151 (¶ 410).  ████████████████████████████████████████████████
3  ████████████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████
6  This evidence will assist the jury in evaluating whether Qualcomm's royalty
7  overvalues Qualcomm's SEPs in view of its actual patent commitments to the
8  standard as compared to others.  *Innovatio*, 2013 WL 5593609 at *10 ("[T]he court
9  should consider royalty stacking as a way of checking the accuracy of a proposed
10 RAND royalty's correspondence to the technical value of the patented invention.").
11        Mr. Meyer and Dr. Simcoe evaluate whether Qualcomm's current and
12 historical offers to Apple are above FRAND.  The reports identify evidence
13 concerning royalty stacking including, *inter alia*, ████████████████████████
14 ████████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████████████
22 ████████████████████████████████████████████████████████████
23 ████████████████████████████████████████████████████████████
24 ████████████████████████████████████████████████████████████

---

[4] Qualcomm's experts state that FRAND requires a calculation of royalties using the net selling price ("NSP") of the end-user device, a formula which masks the wide differences in economic consideration that Qualcomm charges licensees for use of the same SEPs.  Apple disagrees—using the NSP is wrong as Qualcomm has failed to follow basic apportionment law or meet the narrow exception to it.  *See* Dkt. 789.

Apple and the CMs' evidence provides perspective between Qualcomm's proportionate share of the 4G Stack, and what Apple has historically paid Qualcomm— ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Mr. Meyer compared this amount to the per-unit royalties that Apple has paid other large cell-SEP licensors, such as ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Also, Mr. Meyer provided evidence that Apple continues to face royalty-stacking concerns because the aggregated licensing demands (including Qualcomm's current demand for a $13/unit royalty for SEPs only, or 3.25% of the average selling price, capped at $400) would amount to vastly more than the average profit margin of the 4G baseband chipset, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ This evidence will allow the jury to determine whether Qualcomm's offer is consistent with or grossly inflated compared to other cellular SEP holders.

Moreover, Apple and the CMs have produced evidence of the royalty demands Apple faces from other non-cellular SEP licensors.  For example, the jury may consider evidence of many other standards that the iPhone supports and Apple pays royalties for, including "GPS, USB, Bluetooth, AAC-LC, HE-AAC, MP3, Audible, Enhanced Audio, HEVC, H.264, MPEG-4 Part 2, and WiFi," as further evidence of the real-world concern of royalty stacking.  *Id.* at 38 (¶ 87).  This evidence is particularly relevant if, as Qualcomm insists, the entire device is an appropriate royalty base.

Qualcomm relies on *Commonwealth Scientific and Industrial Research Organization v. Cisco Systems, Inc.* ("*CSIRO*"), 809 F.3d 1295, 1295 (Fed. Cir. 2015), to assert that the Court should not instruct the jury on royalty stacking absent actual evidence of stacking.  However, unlike in *CSIRO*, Mr. Meyer's and Dr.

Simcoe's analyses regarding royalty stacking are "anchored to a quantitative market valuation." *Id.* at 1302. Indeed, in *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, the court denied a *Daubert* motion to exclude Mr. Meyer's opinions regarding royalty stacking, holding that "[a]lthough Apple does not appear to present evidence that it currently has a royalty stacking problem, Apple does present evidence that (1) numerous specific royalty demands have been made that, if paid, would exceed the profit margin of the baseband chip; and (2) Apple considers royalty stacking in real-world licensing negotiations." No. 15-CV-05008 NC, 2016 WL 8231157, at *2–3 (N.D. Cal. Nov. 18, 2016). Here, as in *Core Wireless*, the evidence demonstrates that royalty stacking is an ***actual, real-world problem*** that a company like Apple considers in its ***actual, real-world licensing negotiations***, particularly when there is evidence of excessive royalty demands that would exceed the profit margins of the baseband chipset. Dkt. 799-1 at 40–42 (¶¶ 92–98), 64–65 (¶¶ 159, 159 n.351), 98–134 (¶¶ 261–356), 139–49 (¶¶ 372–99); Dkt. 802-3 at 185 (¶ 261), 217 (Ex. A.8).[5]

Qualcomm's contributions to cellular standards show the real risk of royalty stacking. Qualcomm has declared tens of thousands of patents to the 2G, 3G, 4G, and 5G standards, where the same patents may be declared to multiple standards, or over declared, such that they are not actually essential. *See* Ex. 3 (Andrews Op. Rpt.) at 19–39 (¶¶ 41–88). This increases Qualcomm's share of the aggregate stack of cellular standards and the risk that hundreds or thousands of patents can read on a single unit—the baseband chip. When Qualcomm's royalty demand is combined with royalty demands of other cellular-SEP holders, the total royalty burden becomes excessive and would permit Qualcomm to monopolize more than its share of the royalty stack.

Finally, Qualcomm improperly attempts to exclude an entire FRAND

---

[5] *See Microsoft*, 2013 WL 2111217 at *94 (holding that royalty stacking was a concern in the chip market because "you can't pay too many royalties before you just run out of profit.").

5   Case No. 3:17-cv-00108-GPC-MDD

valuation method by focusing on Apple's revenues and profits. *See* Mot. at 3. Focusing on Apple's position in the market and its entire product's profit margins, rather than the value of the asserted SEPs and their patented features, plainly violates the "non-discriminatory" part of FRAND. Apple's profit margins have no bearing on whether evidence of royalty stacking is appropriate for the jury. *See, e.g., Innovatio*, 2013 WL 5593609 at *74 ("Considering the profit of the chip manufacturer on the chip, rather than the profit margins of the Manufacturers on the accused products, is appropriate because a RAND licensor such as Innovatio cannot discriminate between licensees on the basis of their position in the market.").

### C. Qualcomm's Complaints Go to the Weight of Apple and the CMs' Evidence, Rather than Admissibility

Qualcomm's objections to Apple and the CMs' evidence of royalty stacking go to the weight of the evidence, not its admissibility. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-CV-2061-H (BGS), 2016 WL 10933024, at *5 (S.D. Cal. Mar. 25, 2016) (denying a motion to exclude expert testimony because the opinions go to the weight of the testimony, not its admissibility). Qualcomm may contest royalty stacking through cross examination and rebuttal testimony.

### D. The Probative Value of Apple and the CMs' Evidence of Royalty Stacking Outweighs Any Unfair Prejudice to Qualcomm

Qualcomm seeks to exclude evidence of royalty stacking because "jurors would speculate that the hypothesized dramatic spike in aggregate royalties would cause large increases in prices to consumers." Mot. at 6. But Qualcomm does not cite any opinion or evidence put forward by Apple that royalty stacking will cause a "dramatic spike" in royalties. Any potential prejudice here is greatly outweighed by the probative value that the royalty stacking evidence will bring to the jury on the issue of Qualcomm's FRAND compliance. Fed. R. Evid. 403.

## III. CONCLUSION

This Court should deny Qualcomm's Motion *in Limine* No. 1.

| | | |
|---|---|---|
| 1 | Dated: March 1, 2019 | Respectfully submitted, |
| 2 | | |
| 3 | | By: */s/ Aleksandr Gelberg* |
| | | Juanita R. Brooks, SBN 75934, brooks@fr.com |
| 4 | | Seth M. Sproul, SBN 217711, sproul@fr.com |
| | | Aleksandr Gelberg, SBN 279989, gelberg@fr.com |
| 5 | | Fish & Richardson P.C. |
| | | 12390 El Camino Real |
| 6 | | San Diego, CA 92130 |
| 7 | | Phone:  858-678-5070 / Fax: 858-678-5099 |
| 8 | | Ruffin B. Cordell, DC Bar No. 445801, |
| | | *pro hac vice*, cordell@fr.com |
| 9 | | Lauren A. Degnan, DC Bar No. 452421, |
| | | *pro hac vice*, degnan@fr.com |
| 10 | | Fish & Richardson P.C. |
| | | 1000 Maine Avenue, S.W., Suite 1000 |
| 11 | | Washington, D.C.  20024 |
| 12 | | Phone:  202-783-5070 / Fax:  202-783-2331 |
| 13 | | William A. Isaacson, DC Bar No. 414788, |
| | | *pro hac vice*, wisaacson@bsfllp.com |
| 14 | | Karen L. Dunn, DC Bar No. 1002520, |
| | | *pro hac vice*, kdunn@bsfllp.com |
| 15 | | Boies, Schiller & Flexner LLP |
| | | 1401 New York Avenue, N.W. |
| 16 | | Washington, DC 20005 |
| 17 | | Phone: 202-237-2727 / Fax: 202-237-6131 |
| 18 | | Attorneys for *Plaintiff and Counterclaim-Defendant Apple Inc.* |
| 19 | | |
| 20 | | By:  */s/ Jason Lo* |
| 21 | | GIBSON DUNN & CRUTCHER, LLP |
| | | Theodore J. Boutrous, Jr. (SBN 132099) |
| 22 | | tboutrous@gibsondunn.com |
| | | Daniel G. Swanson (SBN 116556) |
| 23 | | dswanson@gibsondunn.com |
| 24 | | Jason C. Lo (SBN 219030) |
| | | jlo@gibsondunn.com |
| 25 | | Jennifer J. Rho (SBN 254312) |
| | | jrho@gibsondunn.com |
| 26 | | Melissa Phan (SBN 266880) |
| 27 | | mphan@gibsondunn.com |
| | | 333 South Grand Avenue |
| 28 | | Los Angeles, CA 90071 |

Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Cynthia E. Richman (Pro Hac Vice)
(DC Bar No. 492089)
crichman@gibsondunn.com
1010 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: (202) 955-8500
Facsimile:  (202) 467-0539

*Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs, COMPAL ELECTRONICS, INC., FIH MOBILE LTD., HON HAI PRECISION INDUSTRY CO., LTD., PEGATRON CORPORATION, WISTRON CORPORATION*

HUGH F. BANGASSER (Pro Hac Vice)
hugh.bangasser@klgates.com
CHRISTOPHER M. WYANT (Pro Hac Vice)
chris.wyant@klgates.com
J. TIMOTHY HOBBS (Pro Hac Vice)
tim.hobbs@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Telephone: +1 206 623 7580
Facsimile: +1 206 370 6371

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Wistron Corporation*

**FILER'S ATTESTATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court of the Southern District of California, I certify that authorization for the filing of this document has been obtained from each of the other signatories shown above and that all signatories have authorized placement of their electronic signature on this document.

Dated: March 1, 2019        */s/ Aleksandr Gelberg*
                            Aleksandr Gelberg

## CERTIFICATE OF SERVICE

 The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 1, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

 Executed on March 1, 2019, at San Diego, California.

          */s/ Aleksandr Gelberg*
          Aleksandr Gelberg