Evan R. Chesler (N.Y. Bar No. 1475722) (*pro hac vice*)
echesler@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

David A. Nelson (Ill. Bar No. 6209623) (*pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Karen P. Hewitt (State Bar No. 145309)
kphewitt@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121
Telephone: (858) 314-1200
Facsimile: (844) 345-3178

[*Additional counsel identified on signature page*]

*Attorneys for Defendant and Counterclaim-Plaintiff*
QUALCOMM INCORPORATED

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>QUALCOMM LITIGATION | No. 3:17-CV-0108-GPC-MDD<br><br>**REPLY IN FURTHER SUPPORT OF QUALCOMM INCORPORATED'S *DAUBERT* MOTION NO. 4 TO EXCLUDE EXPERT TESTIMONY REGARDING EXHAUSTION AND "SUBSTANTIAL EMBODIMENT" (VALENTI, WICKER, AKL, BIMS, LANNING, STARK, STEVENSON, WELLS, LIBCHABER, MEYER AND SIMCOE)**<br><br>Judge:     Hon. Gonzalo P. Curiel<br>Courtroom: 2D<br>Date:       March 21, 2019<br>Time:       1:30 pm. |

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

I.    Judge Koh's Summary Judgment Decision Is Irrelevant to This Motion. ......1

II.   The Fact That Apple's Claims Raise the Issue of Exhaustion Does Not Mean
      That Apple's Expert Opinions Meet the Requirements of Admissibility. ......2

III.  The Apple Technical Experts Did Not Follow Judicial Precedent. ...............2

IV.   The Apple Technical Experts Improperly Ignored the Apple Software. ........4

CONCLUSION ......................................................................................................5

**INTRODUCTION**

Apple's opposition fails to engage with the substance of Qualcomm's motion.

*First*, Apple's expert opinions fail to address the operative question: whether any of the five chipset models actually sold by Qualcomm to the CMs substantially embodies any Qualcomm patents.  They admittedly do not discuss any real chipset, but rather a "███████████".  (ECF 815-01 ("Mot.") at 4-5, 7-8.)  Because the opinions do not examine the operative issue in this case, they are both unreliable and irrelevant.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993).  Apple has not shown either that its experts' opinions address ***any actual Qualcomm product*** or that hypothetical substantial embodiment opinions are relevant to any issue in the case.

*Second*, the opinions are methodologically flawed—and fatally so—because they do not address, for any product or patent, whether it is the chipset hardware, the ████ ██████████, or a combination of the two, that supposedly substantially embodies Qualcomm's patents.  (Mot. at 8-10.)  Apple does not dispute that its experts failed to consider the Apple Software and has not shown that its experts evaluated the ***actual hardware supplied by Qualcomm*** or the ***actual Apple Software***.

Rather than respond to the merits of Qualcomm's motion, Apple merely presents a series of distractions.  Qualcomm's motion should be granted.

**ARGUMENT**

**I.   Judge Koh's Summary Judgment Decision Is Irrelevant to This Motion.**

Apple first argues that "[t]here is no genuine dispute that Qualcomm's baseband chipsets substantially embody *certain* Qualcomm standard essential patents".  (ECF 939 ("Opp'n") at 1 (emphasis added).)  But whether some of Qualcomm's baseband chipsets substantially embody some of Qualcomm patents is not the issue here.  The question—unanswered by the Apple Technical Experts—is whether the particular chipsets sold by Qualcomm to the CMs substantially embody particular Qualcomm patents.

Apple attempts to distract from that fundamental failing by citing Judge Koh's summary judgment decision in *FTC v. Qualcomm Inc.*, Case No. 17-cv-00220-LHK

(N.D. Cal.).  But Judge Koh's decision did not address exhaustion or substantial embodiment.  The court considered only whether, under the TIA and ATIS IPR policies, Qualcomm had a contractual obligation "to license its essential patents to competing modem chipset suppliers".  (No. 17-cv-00220-LHK, ECF 931 at 1.)  That is, to the extent Qualcomm has SEPs that read on modem chips, is Qualcomm obliged to license such SEPs for the manufacture or sale of modem chips?  As Apple points out, Judge Koh noted that "Qualcomm concedes that Qualcomm owns SEPs that are infringed by typical modem chips" (Opp'n at 1), and found against Qualcomm.  (No. 17-cv-00220-LHK, ECF 931 at 25.)  But no product was found to substantially embody any patent.  No such question was even considered.

**II.    The Fact That Apple's Claims Raise the Issue of Exhaustion Does Not Mean That Apple's Expert Opinions Meet the Requirements of Admissibility.**

Apple argues that its experts' opinions are relevant because "patent exhaustion remains relevant in this case".  (Opp'n at 3.)  This argument fails to grapple with the requirements for admissibility.  Unquestionably, patent exhaustion, as an issue, is part of Apple's pleadings and, to that extent, is "relevant in this case".  Qualcomm is not taking a contrary position.  But the mere fact that the *issue* of exhaustion has been raised does not begin to satisfy the requirements of Rule 702, nor does it excuse the experts' complete failure to analyze any actual Qualcomm chipsets or Apple Software.

**III.    The Apple Technical Experts Do Not Follow Judicial Precedent.**

In arguing that its experts "faithfully follow" precedent (Opp'n at 4), Apple is just wrong.  Precedent requires the proponent of patent exhaustion to demonstrate an "authorized sale of an article", where "the article" sold "substantially embodies a patent".  *Quanta*, 533 U.S. at 638; *JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039, 1046 (Fed. Cir. 2015); *Minebea Co. v. Papst*, 444 F. Supp. 2d. 68, 161 n.69 (D.D.C. 2006) ("The unit of analysis for patent exhaustion is, after all, the article sold, and the authorized first sale of an article under a patent may exhaust the patent holder's rights only with respect to that article.").  Apple's experts make no attempt to do this.  Their lead expert, Valenti,

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████ (Ex. 29

3 (Valenti Opening Rpt.) ¶¶ 3, 26.)  The other Apple Technical Experts similarly ████

4 ████████████████████████████████████████████████████████

5 ████████████████.[2]  (*E.g.*, Ex. 30 (Stevenson Rebuttal Rpt.) ¶¶ 27, 30.)  In its

6 opposition, Apple settles for arguing that each expert gives opinions that "the baseband

7 chipset" (not an actual chipset) "would" (not "does") substantially embody certain

8 patents.  (Opp'n at 4.)  This is no exhaustion analysis.

9        Apple's assertion that "Qualcomm declared the patents essential" and that "the

10 baseband chipset" therefore "would necessarily practice" the patents (*id.* at 6, 10) does

11 not hold water.  First, patents are not "declared essential".  Rather, the patent holder

12 declares that a patent "might be essential".  (Ex. 31 (ETSI IPR Policy) § 4.1.)  Second,

13 cellular standards are expressly drawn to "user equipment" (*e.g.*, smartphones), not to

14 baseband chipsets.  (Ex. 32 (Williams Rebuttal Rpt.) ¶ 3a, 42-46.)  Logically, one cannot

15 start from the premise of a declaration that a patent "might be essential" to "user

16 equipment" and from that infer that a specific baseband chipset necessarily "practices"

17 (*i.e.*, infringes), or substantially embodies, the patent.  The specific chipset must be

18 compared to the specific patent to make either determination.

19        The Apple Technical Experts needed to assess whether the *actual* Qualcomm

20 chipsets sold to the CMs *in fact* substantially embody specific Qualcomm patents, not

21 whether a postulated, generic chipset "would", hypothetically speaking.  To be relevant

---

[1] Additionally, Valenti ████████████████████████████████████████ (Ex. 33 (Valenti Dep.) at 85:22-87:6.)

[2] Apple's argument that the "the benchmark chipset" its experts discuss is "representative" of actual Qualcomm chipsets (Opp'n at 2, 5) thus lacks any basis in fact. Indeed, in sworn testimony, its experts admitted (or at least did not deny) that their opinions were based on ████████████████████████████.  (*E.g.*, Ex. 34 (Wicker Dep.) at 222:12-24; Ex. 35 (Akl Dep.) at 64:16-20; 147:7-11; Ex. 36 (Bims Dep.) at 92:19-23.)

and reliable—to be admissible—the experts' opinions must address the legally operative question.  Beyond dispute, they do not.

## IV.    The Apple Technical Experts Improperly Ignore the Apple Software.

Finally, the experts make no effort to establish whether the functionality they argue substantially embodies a particular Qualcomm patent claim is, in fact, implemented by chipset hardware supplied by Qualcomm, by the Apple Software, or by some combination of the two.  (*See* Mot. at 8-10.)  Put another way, it is impossible to tell from the experts' opinions whether any patent was substantially embodied by a chipset when that chipset left Qualcomm's loading dock, or, instead, is substantially embodied only when the chipset executes the Apple Software.  This is truly remarkable, particularly as to Valenti, who ███████████████████████████████████████████.  (*Id.* at 8.)  The failure of the experts to tackle whether Qualcomm or Apple provides the inventive functionality renders any conclusion that an article provided by Qualcomm substantially embodies these claims entirely unreliable.

Apple argues that its experts did not need to address the role of the software supplied by Apple because "the exhaustion jurisprudence does not require that the article, *on its own*, substantially embody a patent".  (Opp'n at 7 (emphasis in original).)  But that is *exactly* what the cases require.  The rule is that the article—not the article "plus any other stuff you like"—must substantially embody the patent.  *Quanta Comput., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008).  To be sure, the article need not *infringe* the patent to substantially embody it.  For example, in *Quanta*, the Court explained that "the incomplete article substantially embodies the patent because the only step necessary to practice [*i.e.*, infringe] the patent is the application of common processes or the addition of standard parts".  *Id.* at 633.  The article itself must substantially embody the patent; if other non-inventive elements are needed for infringement, substantial embodiment is not negated.

The question here is whether the Apple Software, which controls the Qualcomm chipsets, is merely a non-inventive "standard part".  In *Quanta* and *United States v.*

*Univis Lens Co.*, 316 U.S. 241 (1942), it was *undisputed* that the "inventive aspects" or "essential features" of the relevant patents were embodied in the articles at issue.[3]  Here, substantial embodiment is very much disputed.  For the opinions of Apple's experts to be admissible, they would need to determine whether the actual articles sold by Qualcomm, not the ███████████████████, embodied the "essential features" of the selected patents.  Apple neither disputes that ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████.  The Apple Technical Experts cannot have performed a relevant and reliable analysis of substantial embodiment if they did not consider this issue.  None of them did.[4]

Apple further argues that Qualcomm's chipsets have no reasonable non-infringing uses (as to unspecified Qualcomm SEPs), and therefore Qualcomm's sales of chipsets were exhaustive.  (Opp'n at 7-9.)  But even if that were true, that is only part of the test for substantial embodiment.  Apple must still show that "the article" sold "included all the inventive aspects" of the patent.  *Quanta*, 553 U.S. at 638.

Because the Apple Technical Experts only considered functionality performed by the hardware and the software together, they cannot say whether the hardware that Qualcomm supplies, by itself, substantially embodies any patent.

## CONCLUSION

For the foregoing reasons, and those set forth in Qualcomm's opening brief, Qualcomm's motion should be granted in its entirety.

---

[3] *Quanta*, 553 U.S. at 624 ("LGE filed a complaint against Quanta asserting that the combination of the Intel Products with non-Intel memory and buses infringed the LGE Patents."); *Univis*, 316 U.S. at 249 ("[E]ach blank, as appellees [Univis] insist, embodies essential features of the patented device . . . .").

[4] *E.g.*, Ex. 34 (Wicker Dep.) at 234:16-237:14; Ex. 35 (Akl Dep.) at 51:12-14; Ex. 36 (Bims Dep.) at 105:18-21.

1    Dated: March 8, 2019                    Respectfully submitted,

2                                            By: */s/ Evan R. Chesler*

3

4                                            **CRAVATH, SWAINE & MOORE LLP**
                                             Evan R. Chesler (*pro hac vice*)
5                                            (N.Y. Bar No. 1475722)
                                             echesler@cravath.com
6                                            Keith R. Hummel (*pro hac vice*)
7                                            (N.Y. Bar No. 2430668)
                                             khummel@cravath.com
8                                            Richard J. Stark (*pro hac vice*)
9                                            (N.Y. Bar No. 2472603)
                                             Antony L. Ryan (*pro hac vice*)
10                                           (N.Y. Bar No. 2784817)
11                                           aryan@cravath.com
                                             Gary A. Bornstein (*pro hac vice*)
12                                           (N.Y. Bar No. 2916815)
13                                           gbornstein@cravath.com
                                             J. Wesley Earnhardt (*pro hac vice*)
14                                           (N.Y. Bar No. 4331609)
15                                           wearnhardt@cravath.com
                                             Yonatan Even (*pro hac vice*)
16                                           (N.Y. Bar No. 4339651 )
17                                           yeven@cravath.com
                                             Vanessa A. Lavely (*pro hac vice*)
18                                           (N.Y. Bar No. 4867412)
19                                           vlavely@cravath.com
                                             Worldwide Plaza, 825 Eighth Avenue
20                                           New York, NY 10019
21                                           Telephone: (212) 474-1000
                                             Facsimile: (212) 474-3700
22

23

24

25

26

27

28

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

David A. Nelson (pro hac vice)
(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
Stephen Swedlow (pro hac vice)
(Ill. Bar No. 6234550)
stephenswedlow@quinnemanuel.com
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Alexander Rudis (pro hac vice)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

**JONES DAY**
Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Randall E. Kay (SBN 149369)
rekay@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (858) 345-3178

***Attorneys for Plaintiff***
**QUALCOMM INCORPORATED**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 8, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4(d).  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

I certify under penalty of perjury that the foregoing is true and correct. Executed on March 8, 2019, at New York, New York.


By: */s/ Evan R. Chesler*

Evan R. Chesler
echesler@cravath.com
*Attorneys for Defendant and Counterclaim-Plaintiff*
QUALCOMM INCORPORATED