1  Evan R. Chesler (N.Y. Bar No. 1475722) (*pro hac vice*)
   echesler@cravath.com
2  CRAVATH, SWAINE & MOORE LLP
   825 Eighth Avenue
3  New York, NY 10019
   Telephone: (212) 474-1000
4  Facsimile: (212) 474-3700

5  David A. Nelson (Ill. Bar No. 6209623) (*pro hac vice*)
   davenelson@quinnemanuel.com
6  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   500 West Madison St., Suite 2450
7  Chicago, Illinois 60661
   Telephone: (312) 705-7400
8  Facsimile: (312) 705-7401

9  Karen P. Hewitt (SBN 145309)
   kphewitt@jonesday.com
10 JONES DAY
   4655 Executive Drive, Suite 1500
11 San Diego, California 92121
   Telephone: (858) 314-1200
12 Facsimile: (858) 345-3178

13 [*Additional counsel identified on signature page*]

14 *Attorneys for Defendant and Counterclaim-Plaintiff*
   QUALCOMM INCORPORATED
15

16                    **UNITED STATES DISTRICT COURT**

17                    **SOUTHERN DISTRICT OF CALIFORNIA**

18

| | |
|---|---|
| IN RE: QUALCOMM LITIGATION | No. 3:17-CV-0108-GPC-MDD<br><br>**QUALCOMM INCORPORATED'S REPLY IN FURTHER SUPPORT OF ITS *DAUBERT* MOTION NO. 2 TO EXCLUDE PORTIONS OF THE EXPERT REPORT OF PAUL K. MEYER AND TO FORBID IMPROPER EXTRAPOLATION OF DR. VALENTI'S OPINIONS**<br><br>Judge:      Hon. Gonzalo P. Curiel<br>Courtroom: 2D<br>Date:        March 21, 2019<br>Time:        1:30 p.m. |

## TABLE OF CONTENTS

**Page**

ARGUMENT ...................................................................................................................1

I.  Apple's Complaints About the Discovery Process Are
    Irrelevant and Wrong. ......................................................................................1

II. Apple's Other Assertions in Defense of Mr. Meyer's Opinions
    Are Wrong.. .....................................................................................................2

CONCLUSION .............................................................................................................5

Apple and the CMs ("Apple") defend Mr. Meyer's two-sentence analysis by blaming the discovery process for his flawed methodology and by insisting that Qualcomm believes most of its portfolio is worthless. Neither argument has merit, and Mr. Meyer's proposed testimony should be excluded.

## ARGUMENT

**I.    Apple's Complaints About the Discovery Process Are Irrelevant and Wrong.**

Apple does not meaningfully dispute the key flaws in Mr. Meyer's methodology. Apple does not deny that he applies U.S. patent laws to foreign patents without offering any basis. Apple does not deny that he ignores the majority of the licensed IP rights and extrapolates from cellular SEPs to other categories of IP rights, without any basis for doing so. And Apple does not deny that he equates the value of purportedly exhausted U.S. cellular SEPs with the value of unexhausted IP rights elsewhere in the world, again without any basis.

Instead, Apple blames Qualcomm and the discovery process for the shortcomings of Mr. Meyer's analysis. But that is no answer. Rule 702 requires that expert testimony be "based on sufficient facts or data", be "the product of reliable principles and methods", and have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. That is true "no matter how burdensome or difficult collecting relevant data or devising methods to apply to that data may be". *Laumann v. Nat'l Hockey League*, 117 F. Supp. 3d 299, 315 (S.D.N.Y. 2015) (excluding expert testimony where a "dearth of data" led to "nonsensical results"). Apple would have the Court invent a new, more lenient Rule 702 for Mr. Meyer. The Court should decline.

The truth is that the parties conducted sweeping discovery of Qualcomm's portfolio. Qualcomm produced millions of documents, made over 70 of its current and former employees available for depositions, and provided over 1,000 pages of expert reports regarding Qualcomm's portfolio.[1] Qualcomm also identified tens of thousands of

---

[1] March 8, 2019 Declaration of Anders Linderot ("Linderot Decl.") ¶ 4.

specific U.S. and foreign patents expressly licensed to the CMs. (*See* Opp'n 1.) Mr. Meyer simply ignored the vast majority of them. Given all this discovery, Magistrate Judge Dembin rightly denied Apple's demands for even more discovery as overly burdensome and unnecessary. (*See* ECF 381; ECF 407; ECF 506; ECF 507.)

## II. Apple's Other Assertions in Defense of Mr. Meyer's Opinions Are Wrong.

Apple tries to rescue Mr. Meyer's methodology with a series of false assertions.

***First***, Apple claims that Qualcomm does not believe *any* of its foreign patents have *any* value. (Opp'n 4-7.) That is false. Qualcomm acquired tens of thousands of foreign patents because they have value; patents are territorial, and foreign patents grant Qualcomm valuable rights to control the use of those inventions in foreign jurisdictions. Numerous Qualcomm licensees operate entirely outside the U.S. and pay royalties solely for the use of Qualcomm's foreign patents. In fact, Qualcomm has an entire licensing program devoted to licensing only Chinese cellular SEPs, and about 200 companies have signed up so far. (Linderot Decl. ¶ 5.) Qualcomm has also successfully asserted a number of foreign non-SEPs against Apple, with courts in Germany and China recently issuing injunctions against Apple as a result.[2]

***Second***, "[e]ven if Qualcomm did value its foreign patents", Apple says, a U.S. exhaustion opinion is a "reasonable proxy" for a foreign one. (Opp'n 7.) But Apple offers the same factual and legal basis for this statement that Mr. Meyer did—none. And it is Apple's burden to establish a reliable basis for Mr. Meyer's testimony, not Qualcomm's. *Compare Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 923 F. Supp. 2d 1245, 1256 (S.D. Cal. 2013) (Curiel, J.), *with* Opp'n 7 ("Qualcomm has not shown it is objectively unreasonable to extrapolate the ratio of exhausted U.S. patents to foreign patents.").

Apple cannot articulate why it is permissible for Mr. Meyer to stretch Dr. Valenti's

---

[2] *See, e.g.*, *Qualcomm Inc. v. Apple Comput. Trading (Shanghai) Co.*, (2018) Min 01 Min Chu No. 1208 Zhi Yi (FIPC Nov. 20, 2018) (China); Landgericht [LG] München I [Munich I Regional Court], Dec. 20, 2018, Case No. 7 O 10496/17 (Ger.).

U.S. substantial-embodiment opinion to cover foreign patents without so much as glancing at a single foreign patent or considering whether exhaustion even exists as a defense in foreign jurisdictions. The world's patent laws are not interchangeable. Different patent laws "may embody different policy judgments about the relative rights of inventors, competitors, and the public in patented inventions." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1379 (Fed. Cir. 2016). Patent laws change over time, as new legislative and judicial decisions are made. Apple knows all of that; that is why Apple successfully opposed Qualcomm's Motion for Anti-Suit Injunction, in part, on the ground that U.S. exhaustion claims would not resolve foreign exhaustion claims. (ECF 108 at 1.) And the Court agreed. (ECF 141 at 22, 26.)

*Third*, Apple claims that Qualcomm does not believe *any* of its IP other than cellular SEPs has *any* value. (Opp'n 4-7.) That is untenable. For years, the CMs paid royalties to Qualcomm not only for its cellular SEPs, but also for its non-cellular SEPs, non-SEPs, and other intellectual property rights (collectively, "Other IP"). (Mot. 7.) Five Qualcomm expert witnesses submitted reports regarding 150 valuable non-SEPs. (*See* Ex. 18 ¶ 167; Ex. 19 ¶ 187; Ex. 20 ¶¶ 386, 390; Ex. 21 ¶ 895; Ex. 22 ¶ 413.) Qualcomm's fact and expert witnesses consistently testified that its Other IP is valuable. (*See, e.g.*, Ex. 23 at 1537-39 (Qualcomm's Liren Chen testifying that Qualcomm discusses non-cellular SEPs and non-SEPs in licensing negotiations because they are valuable); Ex. 24 at 213:4-214:17; Ex. 25 at 257:11-258:8.) That some fact witnesses testified they did not know exactly *how* valuable is beside the point. (*See* Opp'n 5-6 (quoting ▮▮▮▮▮▮ depositions).)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1
2
3
4

5 And after a Chinese court issued an injunction against Apple for infringing Qualcomm's
6 non-SEPs, Apple admitted that "[n]umerous smartphones on the market" use
7 Qualcomm's non-SEPs, and that consumers have "already come to rely on [Qualcomm's]
8 technical solutions." (Ex. 27 at 7.)

9     *Fourth*, Apple claims that Mr. Meyer reasonably assumes that "the value of
10 Qualcomm's exhausted SEPs is equivalent to the value of its non-exhausted SEPs."
11 (Opp'n 7.) Even if those were the limits of his assumption, he offers no basis for it, and
12 there is none.

13     It is undisputed that different patents can have different values. Mr. Meyer has
14 repeatedly testified as much, even regarding cellular SEPs. (*See, e.g.*, Ex. 28 at 1484
15 (Mr. Meyer, regarding two patents potentially essential to 3G: "I wouldn't want you to
16 think that every patent has the same value. They don't. They can have different values
17 and that's an expertise I don't have . . . .").) Apple cannot escape that conclusion by
18 pointing at an old
19
20     In fact, in its Motion *in Limine* No. 1, Apple quoted *Limelight Networks,*
21 *Inc. v. XO Communications, LLC* for the proposition that "different patents have different
22 values". No. 3:15-CV-720-JAG, 2018 WL 678245, at *7 (E.D. Va. Feb. 2, 2018); ECF
23 845 at 2. What Apple omitted is what came next in that sentence—that Mr. Meyer's
24 testimony was excluded under *Daubert* for that very reason: "Meyer recognized at the
25 evidentiary hearing that different patents may have highly varying values. Meyer's even-
26 division method fails because it simply ignores facts in this case that Meyer himself
27 recognizes—that different patents have different values." 2018 WL 678245, at *7. As
28 the *Limelight* court explained:

> "At the hearing, Meyer made an analogy to a carton of eggs, finding it reasonable to assume that each egg within the carton had equal value in the absence of other information. Meyer, however, acknowledges that different patents can have vastly different values. Because he did not perform any analysis of the other patented technology involved in the prior transaction, Meyer values the closed carton without opening it to see if any eggs are broken, spoiled, or made of gold. This methodological flaw lacks reliability and Meyer cannot present it to a jury." *Id.* at *7 n.13.

So too here. Mr. Meyer did not perform any analysis of whether exhausted SEPs are, on average, equal in value to unexhausted SEPs. He never opened the carton.

But Mr. Meyer's assumption is not limited to U.S. cellular SEPs. Mr. Meyer's actual—and even less plausible—assumption is that the average exhausted U.S. cellular SEP is equal in value to the average unexhausted IP right anywhere in the world. He, of course, provides no basis for this assumption, and neither does Apple.

*Finally*, Apple attacks a strawman, insisting that Qualcomm moves here "to preclude the jury from considering Dr. Valenti's opinion". (Opp'n 9.) It does not. As Qualcomm's Motion makes clear: "Apple and the CMs should be precluded from inviting the jury to employ Mr. Meyer's invalid methodology on their own. The extrapolation is contrary to fact and law whether performed by Mr. Meyer, by another expert, or by the jury at counsel's request." (Mot. 9.) Only in a footnote on the final page does Apple acknowledge Qualcomm's actual request.[3] (Opp'n 10 n.5.) But the best Apple can muster is *ipse dixit*, claiming that Mr. Meyer's extrapolations are "reasonable". (*Id.*) His extrapolations are demonstrably unreasonable, and Apple should be precluded from inviting the jury to recreate them.

## CONCLUSION

Qualcomm's Motion should be granted.

---

[3] Apple also cites *Quanta Computer, Inc. v. LG Electronics Inc.*, 553 U.S. 617 (2008), because it supposedly supports Apple's assertion that "FRAND royalties must be based on, among other things, patents that are not exhausted." (Opp'n at 10.) But *Quanta* does no such thing. It was not about SEPs, and it was not about FRAND. And as for contract rights to royalties, *Quanta* observed that an exhaustive sale "does not necessarily limit [the licensor's] other contract rights". *Id.* at 637 n.7.

Dated:  March 8, 2019

Respectfully submitted,

By   /s/ *Evan R. Chesler*
Evan R. Chesler

**CRAVATH, SWAINE & MOORE LLP**
Evan R. Chesler (*pro hac vice*)
(N.Y. Bar No. 1475722)
echesler@cravath.com
Keith R. Hummel (*pro hac vice*)
(N.Y. Bar No. 2430668)
khummel@cravath.com
Richard J. Stark (*pro hac vice*)
(N.Y. Bar No. 2472603)
rstark@cravath.com
Antony L. Ryan (*pro hac vice*)
(N.Y. Bar No. 2784817)
aryan@cravath.com
Gary A. Bornstein (*pro hac vice*)
(N.Y. Bar No. 2916815)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
(N.Y. Bar No. 4331609)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
(N.Y. Bar No. 4339651)
yeven@cravath.com
Vanessa A. Lavely (*pro hac vice*)
(N.Y. Bar No. 4867412)
vlavely@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
David A. Nelson (*pro hac vice*)
(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
Stephen Swedlow (*pro hac vice*)
(Ill. Bar No. 6234550)
stephenswedlow@quinnemanuel.com
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Alexander Rudis (*pro hac vice*)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

**JONES DAY**
Karen P. Hewitt (SBN 145309)
Randall E. Kay (SBN 149369)
rekay@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (858) 345-3178

*Attorneys for Defendant and Counterclaim-Plaintiff*
**QUALCOMM INCORPORATED**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 8, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4(d).  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on March 8, 2019, at New York, New York.

By: */s/ Evan R. Chesler*
Evan R. Chesler
echesler@cravath.com
*Attorneys for Defendant and Counterclaim-Plaintiff*
QUALCOMM INCORPORATED

**QC'S REPLY RE: MEYER *DAUBERT***     **CASE NO. 3:17-CV-0108-GPC-MDD**