Juanita R. Brooks (SBN 75934) brooks@fr.com
Seth M. Sproul (SBN 217711) sproul@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (619) 678-5070 / Facsimile: (619) 678-5099

Ruffin B. Cordell (D.C. Bar #445801; Admitted *Pro hac vice*) cordell@fr.com
Lauren A. Degnan (D.C. Bar #452421; Admitted *Pro hac vice*) degnan@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070 / Facsimile: (202) 783-2331

William A. Isaacson (D.C. Bar #414788; Admitted *Pro hac vice*) wisaacson@bsfllp.com
Karen L. Dunn (D.C. Bar #1002520; Admitted *Pro hac vice*) kdunn@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 237-2727 / Facsimile: (202) 237-6131

*Attorneys for Plaintiff and Counterclaim-Defendant Apple Inc.*

*(Counsel for the CMs and Additional Counsel listed below Signature Line)*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>QUALCOMM LITIGATION, | Case No. 3:17-CV-00108-GPC-MDD<br>[Consolidated with Case No. 3:17-CV-01010-GPC-MDD]<br><br>**JOINT PRETRIAL BRIEF REGARDING APPLE INC. AND THE CMS' RULE 39 MOTION TO EMPANEL AN ADVISORY JURY ON ALL CLAIMS AND DEFENSES NOT TRIABLE BY JURY AS OF RIGHT** |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

I.     Whether An Advisory Jury Should Be Empaneled...........................................1

     A.     Apple and the CMs' Position ...............................................1

     B.     Qualcomm's Position ...........................................................9

II.     Claims and Defenses Triable to Judge or Jury ...........................................17

     A.     Legal Standard...................................................................17

     B.     Disputed Claims and Defenses .........................................17

          1.     Claims and Defenses Involving Unjust Enrichment ....................17

          2.     Qualcomm's Defense of Mistake.....................................19

          3.     The Parties' Claims and Defenses of Waiver ..............................22

          4.     Qualcomm's Count IX against the CMs .....................24

          5.     Apple's Defense of Violation of SSO IPR Policy .......................26

APPENDIX A .....................................................................................................31

APPENDIX B .....................................................................................................35

**INTRODUCTION**

Apple Inc. ("Apple"); FIH Mobile Ltd. and Hon Hai Precision Industry Co., Ltd., (together, "Foxconn"), Pegatron Corporation, Wistron Corporation, and Compal Electronics, Inc. (collectively, "the CMs"); and Qualcomm Incorporated ("Qualcomm") submit this joint brief identifying their positions regarding Apple and the CMs' motion to empanel an advisory jury pursuant to Federal Rule of Civil Procedure 39(c)(1). The parties also submit this joint brief to seek resolution of whether certain claims and defenses are triable as of right to a jury.[1]

### I. Whether An Advisory Jury Should Be Empaneled

### A. Apple and the CMs' Position

Using an advisory jury in this case would promote efficiency, reduce juror confusion, and aid the Court in adjudicating numerous interrelated legal claims and defenses.[2] Federal Rule of Civil Procedure 39(c)(1) expressly permits a court to

---

[1] Appendices A and B provide an overview of the parties' positions as to which claims and affirmative defenses are appropriate for resolution by jury and which should be decided by the Court.

[2] Apple seeks an advisory jury on all claims and affirmative defenses listed in Appendices A and B except for *Illinois Brick*. Apple and the CMs understand *Illinois Brick* to be a legal doctrine for resolution by the Court, as opposed to an affirmative defense. To the extent the Court wishes to further limit the claims that the advisory jury should consider, Apple and the CMs respectfully submit that the Court should not submit Qualcomm's Count VIII for unjust enrichment, its ambiguous and ill-defined affirmative defense of "mistake" to the advisory jury, or offset. Qualcomm's Count VIII and its affirmative defense of "mistake"—which depend on a determination that the BCPA was never a valid contract—are inconsistent with Qualcomm's Count VI, which alleges that Apple breached the BCPA (and thus requires Qualcomm to prove that the BCPA is a valid contract). In light of these inconsistencies, an advisory jury is likely to be confused as to the appropriate analysis. To avoid confusing the advisory jury, it may be appropriate for the Court to not submit these issues to the advisory jury, as it may burden the jury to spend time on these issues that may not assist the Court. Likewise, Apple and the CMs understand the defense of offset as referring to netting recoveries awarded by the jury or Court. This is an exercise more appropriate for the Court to

empanel an advisory jury. Because the verdict rendered by an advisory jury is not binding, the Court will remain the ultimate factfinder on nonjury claims and defenses. Further, because this case indisputably involves at least *some* jury claims and defenses, the Court will necessarily empanel a jury. Instructing this jury to consider *nearly all* claims and defenses, rather than a small subset thereof, thus causes no inefficiencies. This approach is particularly sensible where, as here, there is substantial factual overlap between the jury and nonjury claims.[3]

### 1. Courts in the Ninth Circuit Regularly Use Advisory Juries Where, as Here, Jury and Non-Jury Issues Overlap

Courts in the Ninth Circuit regularly deploy advisory juries when jury and non-jury claims overlap and involve the same factual issues. *E.g.*, *Alibang v. Tesoro Hawaii Corp.*, 2009 WL 10677140, at *1 (D. Haw. Nov. 24, 2009) (advisory jury where the "efficient presentation of evidence and resolution of any intertwined factual issues counsel in favor of presenting the entire matter to the jury"); *Hynix Semiconductor Inc. v. Rambus, Inc.*, 2008 WL 350638, at *3 (N.D. Cal. Feb. 2, 2008) (advisory jury where many of the facts underlying one claim would be decided by the jury as to other claims); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l Inc.*, 2006 WL 1646108, at *2-3 (N.D. Cal. June 12, 2006) (advisory jury where party argued that jury and nonjury patent issues, and witnesses on issues, overlapped substantially).

Many of the jury and non-jury claims and defenses in this case overlap and arise from the same interrelated set of facts. For example, Apple and the CMs both

---

execute. That said, if an advisory jury on these issues would assist the Court, Apple and the CMs do not oppose an advisory jury on these points.

[3] Apple and the CMs initially requested an advisory jury in the Final Pretrial Conference Order. PTO at 1. Qualcomm has taken the position that Rule 39 requires that Apple and the CMs separately move for an advisory jury. The plain language of Rule 39 requires no such motion—Rule 39 provides that an advisory jury may be empaneled by the Court "by motion or on its own." Nonetheless, Apple and the CMs have agreed to submit this motion.

contend that Qualcomm engaged in monopolization in violation of Section 2 of the Sherman Act (Apple Count LXIII; CMs Count I).  Only the CMs' claim is triable to a jury as of right because the CMs—and not Apple—are seeking damages from Qualcomm.  Apple seeks only injunctive relief.  Yet the same facts underlie Apple and the CMs' claims that Qualcomm monopolized the CDMA and premium LTE chipset markets.  Because the jury will ***already*** be presented with the relevant evidence, instructing the jury also to consider Apple's monopolization claim affords the Court the utility of an advisory verdict, with no additional burden. Qualcomm concedes this overlap, stating that the jury findings against the CMs will "guide[]" the Court with respect to Apple's monopolization claims against Qualcomm.  *Infra* at 13.

Similarly, Apple and the CMs assert that the SULAs between Qualcomm and the CMs are unenforceable as against public policy (Apple Count LXI; CMs Count XII).  No jury right attaches to these claims, but a key reason that these SULAs are unenforceable—they facilitate Qualcomm's violation of the antitrust laws and are themselves a violation of these laws—is an issue that will be presented to the jury as part of the antitrust claims.

The same logic extends to the equitable affirmative defenses raised in response to claims that will be heard by the jury as of right.  For example, as part of the antitrust claims, the jury will hear evidence of Qualcomm's failure to comply with its FRAND obligations.  Apple and the CMs contend, *inter alia*, that Qualcomm's anticompetitive conduct includes its evasion of FRAND and its collection of above-FRAND royalties.  Moreover, the parties agree that Qualcomm's request for declarations that its SULAs comply with FRAND (Count II) and that it made a FRAND offer to Apple (Count IV) will be tried to a jury (Dkt. 884-6 at 150, 153), depending on the outcome of the pending motion for judgment on the pleadings on Count IV.  Because the jury will hear evidence regarding Qualcomm's failure to comply with its FRAND obligations, it is prudent to have the

1   jury issue advisory verdicts on equitable defenses that will rise or fall on this same

2   evidence.

3       Specifically, Apple and the CMs anticipate defending against Qualcomm's

4   claims that the CMs breached their SULAs, and that Apple tortiously interfered with

5   these SULAs, by asserting that Qualcomm has acquiesced to collecting only

6   FRAND royalties by virtue of its commitments to various SSOs, and that

7   Qualcomm has otherwise waived its right to collect above-FRAND royalties.  The

8   CMs also have a related affirmative claim that Qualcomm has waived its right to

9   collect royalties other than on FRAND terms (Count IX).  Waiver and acquiescence

10  are equitable issues, the merits of which will ultimately be decided by the Court.

11  *See infra* at 22, 35.  Qualcomm's breach of its FRAND commitments and

12  anticompetitive activities also are relevant to Apple's and the CMs' equitable

13  unclean hands defenses.

14      The parties' BCPA claims also overlap.  Apple and Qualcomm have cross-

15  claimed against each other for breach of the BCPA (Apple Count I; Qualcomm

16  Count VI).  These claims are jury-triable.  Apple also contends that its statements to

17  regulators are privileged under Section 47(b) of the California Civil Code, and asks

18  for a declaration to that effect (Apple Count IV).  Whether these statements are

19  privileged is an issue for the Court to decide.  These very same statements are the

20  basis for Qualcomm's breach of contract claim—Qualcomm claims that these

21  statements violated Section 7 of the BCPA.  Moreover, Apple claims that Sections 4

22  and 7 of the BCPA are unreasonable liquidated damages provisions, an issue to

23  which no jury right attaches.  Resolution of this issue will involve many of the same

24  facts as the related breach of contract claims.  Under similar circumstances, the

25  Ninth Circuit recently affirmed a district court's decision to consult an advisory jury

26  on liquidated damages issues.  *Acosta v. Zhao Zeng Hong*, 704 F. App'x 661, 665

27  (9th Cir. 2017).  These are only some examples of the overlap between the jury and

28  non-jury triable claims.

1    Although Qualcomm rejects Apple's request for an advisory jury, Qualcomm

2  argues that the jury findings will impact the Court's findings on non-jury claims.[4]

3  For example, Qualcomm argues that—in deciding Apple's monopolization claim—

4  the Court would, under *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016)—

5  "follow the jury's implicit or explicit factual determinations" regarding the CMs'

6  claims.  This is wrong—*Teutscher* involved legal and equitable claims brought by

7  the ***same party***.  Qualcomm cites no case that stands for the proposition that a party,

8  which is not permitted to present its claims to a jury, is then bound by a jury verdict

9  regarding another party's claims—for good reason given the inherent prejudice

10  involved in such an approach.   Nonetheless, considering that both parties are in

11  agreement that Apple's and the CMs' monopolization claims overlap substantially,

12  Apple is willing to agree to present its monopolization claim to the jury and be

13  bound by the jury's findings with respect to the elements of its monopolization

14  claims that entirely overlap with the CMs' monopolization claims.[5]

---

[4]  Therefore, Qualcomm's argument that "Apple overstates the supposed overlap between the jury and non-jury claims" is nonsensical. *Infra* at 15.

[5]  Specifically, as set forth in Apple and the CMs' draft jury instructions, the jury needs to consider four elements regarding Apple's monopolization claim.  Dkt. 884-6 at 37.  First, that any of the alleged markets are relevant antitrust markets; second, that Qualcomm possesses or at relevant times possessed monopoly power in any of these relevant antitrust markets; third, that Qualcomm willfully acquired or maintained its monopoly power in any of these relevant antitrust markets by engaging in anticompetitive conduct; and fourth, that Apple faces a significant threat of injury because of Qualcomm's anticompetitive conduct.  Apple is willing to present its monopolization claims to the jury and be bound by the jury's findings with respect to the first three elements.  Qualcomm complains that an advisory jury would be confused by the fourth element because an advisory jury might conflate the injury inquiries for Apple and the CMs. But the jury instructions that Apple and the CMs have proposed make clear that the inquiry is different for both.  *Id.*  And regardless of these arguments, the first three elements are proper for an advisory jury.

### 2.  An Advisory Jury Would Promote Judicial Economy, Reduce Juror Confusion, and Aid the Court

An advisory jury promotes judicial economy where, as here, a jury will necessarily be empaneled before trial and will hear evidence that is equally relevant to and dispositive of non-jury issues.  *Hamm v. Nasatka Barriers Inc.*, 166 F.R.D. 1, 3 (D.D.C. 1996) (referring to prior empanelment as the "central consideration" for seeking an advisory verdict); *see also Momenta Pharms., Inc. v. Amphastar Pharms., Inc.*, 255 F. Supp. 3d 279, 290 (D. Mass. 2017) ("Courts have availed themselves of advisory jury verdicts on equitable defenses when such evidence overlaps with jury questions." (citing *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004 (Fed. Cir. 2008))); *Miller v. Ill. Dep't of Transp.*, 2012 WL 2922690, at *2 (S.D. Ill. July 17, 2012) (using advisory jury where jury was already empaneled would "promote efficiency and convenience").

An advisory jury reduces the risk of juror confusion.  Under the current trial plan, the jury will be presented with *all* the evidence in this case.  Qualcomm violates the antitrust laws through a complex, interrelated web of anticompetitive behavior that not only forms the basis of the Sherman Act counts, but also impacts numerous other claims and defenses, legal and equitable.  By also empowering the jury to render an advisory verdict on *all* the claims and defenses, the Court avoids the risk of jurors wondering why they had been asked to decide *some* potentially dispositive issues, but not others.  For example, Apple and the CMs anticipate presenting evidence on their equitable restitution claims against Qualcomm.  Not submitting these restitution questions to the jury risks confusing jurors as to what relevance, if any, these claims have to the issues they are considering.  *See* Dkt. 884-6 at 111-12 (proposed instructions on restitution under the UCL).

Moreover, contrary to what Qualcomm argues, the jury is more than qualified to render an advisory verdict on the unenforceability of the SULAs and provisions of the BCPA.  Apple and the CMs' jury instructions provide the required

explanation as to the legal principles that the jury should apply in rendering such a verdict, including describing the laws the contracts violate.  *See* Dkt. 884-6 at 186-95.  Because these issues are an integral part of Qualcomm's anticompetitive scheme, the jury will be presented with evidence on them and an advisory verdict would be a valuable tool for the Court.

This is a familiar ground for utilizing an advisory jury.  As the district court explained in *Hamm*, "The factual underpinnings of the claims against [the parties] are sufficiently intertwined that it would be more confusing to instruct the jury to ignore some pieces of evidence while deciding the import of other related pieces of evidence." 166 F.R.D. at 3.  Likewise, here, having the full picture will enable the jury to better understand those issues for which their verdict will be binding.  *See Starr Int'l Co., v. Am. Int'l Grp., Inc.*, 623 F. Supp. 2d 497, 502 (S.D.N.Y. 2009) (noting "it would be hopelessly complicated" for the jury to render a binding verdict "if it did not first confront, even if only in an advisory capacity," the equitable issues).

An advisory jury would also aid the Court in fact finding and making "credibility determinations about hotly contested issues." *Theranos, Inc. v. Fuisz Pharma LLC*, 2013 WL 5304134, at *5 (N.D. Cal. Sept. 20, 2013); *Miller*, 2012 WL 2922690, at *2 ("The [advisory] jury may be of some assistance to the Court with fact-finding.").  Here, an advisory jury rendering a non-binding verdict would provide the Court a useful tool for resolving these potentially dispositive factual issues and credibility determinations via trial testimony.  By way of example, one aspect of this case where credibility determinations will be important is the (often conflicting) testimony offered by the experts for Apple, the CMs, and Qualcomm.  These expert opinions—on matters of the industry, economics, and competition—are critical to resolution of the claims in this case.  The Court would likely benefit from the jury's expertise in making these kinds of credibility determinations. *Target Tech. Co., LLC v. Williams Advanced Materials, Inc.*, 2007 WL 6201689, at *28

(C.D. Cal. Feb. 6, 2007) ("[B]ecause the determinations of expert credibility are typically issues for the jury to decide, the advice of the jury on this issue will assist the Court."); *Hynix Semiconductor*, 2008 WL 350638, at *3 (using advisory jury where the "evaluation of a fraud claim involves judgments of credibility for which a jury is particularly suited").

Lastly, an advisory jury minimizes the risk of creating appellate issues. As discussed *infra*, this case involves disputes as to which claims and defenses create a jury right. The Court will have to resolve those disputes. If the Court's resolution is incorrect, that may constitute legal error and creates a ground for appeal. By empaneling an advisory jury, a court minimizes the resulting prejudice. *See Theranos*, 2013 WL 5304134, at *5.

Qualcomm opposes the instant Motion for an advisory jury by citing a series of cases wherein courts refused to empanel advisory juries. *Infra* at 10, 11, 14, 16. But these cases are unpersuasive because those courts refused these requests for reasons that have no applicability to the instant case.

<u>First</u>, in this case—unlike in ***the vast majority*** of those cited by Qualcomm— a jury already is being empaneled. *Home Owners Ins. Co. v. Moffit*, 2013 WL 504653 (W.D. Mich. Feb. 8, 2013) (belated jury demand denied); *Hendrickson v. Riedell Shoes, Inc.*, 2013 WL 12145955 (W.D. Wash. Apr. 8, 2013) (same); *Coalition for ICANN Transparency Inc. v. Verisign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) (same); *Ollier v. Sweetwater Union High Sch. Dist.*, 267 F.R.D. 338 (S.D. Cal. 2010) (bench trial); *Koninklijke Philips N.V. v. Hunt Control Sys., Inc.*, 2016 WL 6892079, at *4 (D. N.J. Nov. 11, 2016) (same); *Ashmore v. Bay*, 2015 WL 4937363 (D.S.C. Aug. 8, 2015) (same); *Smith v. Reinke*, 2014 WL 2203896 (D. Idaho May 27, 2014) (same).

<u>Second</u>, unlike in the cases Qualcomm cites, Apple has provided specific reasons and support for why an advisory jury is appropriate. *Contra Home Owners Ins. Co.*, 2013 WL 504653, at *8 ("[D]efendants' half-hearted and perfunctory

request for an advisory jury merits little discussion."); *Hendrickson*, 2013 WL 12145955, at *2 ("no authority nor any particular reason" was provided for empanelment).  Qualcomm's apparent concerns about judicial resources and expense rest on thin air, not authority.[6]

### 3.  There Are No Downsides to an Advisory Jury

Because an advisory jury's verdict is nonbinding, the Court can obtain the full benefits of a jury's expertise while preserving for itself the role of ultimate decisionmaker.  Fed. R. Civ. P. 52(a)(1); *Traxler v. Multnomah Cty.*, 596 F.3d 1007, 1013 (9th Cir. 2010) ("The ultimate decision, however, rests with the court."); *see also Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1357 (Fed. Cir. 2012) (advisory jury findings are not binding); *United States v. Parker*, 2015 WL 1745879, at *4 (S.D. Cal. Feb. 17, 2015) (same).

### B. Qualcomm's Position

The Court should deny Apple and the CMs' (collectively, "Apple") request for an advisory jury.  It will be taxing enough for the jury to decide the dozens of claims and defenses that undisputedly require jury resolution.[7]  Asking the jury to render advisory verdicts on numerous additional issues—many of which are ill-suited for consideration by jurors—would needlessly burden the jury and would not aid the Court.[8]

---

[6] Qualcomm also conveniently omits that it has already drafted jury instructions on advisory jury issues, but declined to file them—likely in the hopes that its non-submission would weigh against empaneling an advisory jury.

[7] Apple points to its statement in the Final Pretrial Conference Order ("PTO") that it desired an advisory jury, but fails to mention that Qualcomm registered its opposition to an advisory jury in the PTO.  (*See* PTO at 3 (requesting "that all causes of action that are triable as of right to a jury be tried to a jury, while all other issues be decided by the Court").)  That the Court theoretically could have *sua sponte* decided to empanel an advisory jury does not explain why Apple waited more than three months to make this motion.

[8] In a prior version of this motion, Apple argued that the Court should submit "*all* claims and defenses" to an advisory jury, but excepted from its proposal certain

Apple bears the burden of "articulat[ing] reasons why an advisory jury would add to the fairness or efficiency of [the] case". *Home Owners Ins. Co. v. Moffit*, No. 1:11-cv-517, 2013 WL 504653, at *8 (W.D. Mich. Feb. 8, 2013); *see also, e.g.*, *Hendrickson v. Riedell Shoes, Inc.*, No. C13-5006 RJB, 2013 WL 12145955, at *2 (W.D. Wash. Apr. 8, 2013) ("Defendant has cited no authority nor explained any particular reason why an advisory jury would be an appropriate use of judicial resources in this case."). The Court should not empanel an advisory jury if doing so would add unnecessary complication or expense. *See, e.g.*, *Coalition for ICANN Transparency Inc. v. Verisign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) (rejecting advisory jury where case "inherently complex and would present particular challenges to determination by a jury"); *Ollier v. Sweetwater Union High Sch. Dist.*, 267 F.R.D. 338, 339 (S.D. Cal. 2010) (refusing to empanel advisory jury where it "would add unnecessary expense, time and complexity to [the] case"). That is so even if a jury will be deciding other claims. *See Schuster v. Shepard Chevrolet, Inc.*, No. 99 C 8326, 2002 WL 507130, at *11 (N.D. Ill. Apr. 3, 2002) (rejecting advisory jury where "the benefit to be derived from an advisory verdict would not outweigh the[] additional burdens that would be imposed on the jury", even where jury would consider other claims); *see also Chesapeake Louisiana, LP*

---

claims and defenses that are important to Qualcomm, including unjust enrichment and mistake. When Qualcomm pointed out that Apple had no provided no principled justification for this inconsistency, Apple revised its position to state that "***nearly all*** claims and defenses" should be submitted to an advisory jury. (*See supra* at 2.) Apple then added an argument in a footnote that "an advisory jury is likely to be confused" by the concepts of unjust enrichment and mistake because they are "inconsistent" with Qualcomm's claims for breach of the BCPA. (*See id.* at 1 n.2.) This argument is baseless. A jury may, of course, properly consider claims brought in the alternative. *See Lopez v. Musinorte Ent. Corp.*, 434 Fed. App'x 696, 699 (9th Cir. 2011) ("Because the jury rejected [plaintiff's] partnership and contract claims, and was instructed to address only the unjust enrichment claim if it rejected the first claims . . . ."). There thus appears to be no consistent principle behind Apple's request to empanel an advisory jury.

*v. Innovative Wellsite Sys., Inc.*, No. 12-2963, 2014 WL 5809889, at *1 (W.D. La. Nov. 6, 2014) (rejecting advisory jury where it "would [not] promote judicial efficiency and eliminate confusion at the trial", even where jury would consider other claims); *Davis v. Lakeside Motor Co.*, No. 3:10-CV-405 JD, 2014 WL 1316945, at *8 (N.D. Ind. Mar. 31, 2014 ("[T]he Court believes that much more efficiency and convenience would be lost than gained by submitting" issues to an advisory jury, even where jury would consider other claims).[9]

That is the case here.  Apple wants the jury to render advisory verdicts on at least 10 claims and 8 defenses—with many of the defenses asserted by multiple parties against multiple claims and thus requiring consideration multiple times. (*See* App'x A and B.)  Apple proposes 20 jury instructions that would be needed only if the Court appoints an advisory jury.  Almost one-third of Apple's proposed verdict form questions relate to non-jury claims or defenses.

Many of the claims and defenses for which Apple seeks an advisory jury involve complex legal judgments of the kind that jurors could not reasonably be expected to make.  For example, Apple seeks advisory verdicts that the BCPA and other contracts are unenforceable because they violate various purported public policies.  To evaluate those public policy allegations, Apple proposes instructing the jury to consider the "Law", which it defines to include "statutes, constitutions, local ordinances, and administrative regulations issued pursuant to them, as well as common law rules or decisions by courts".  (ECF 884-6 at 175 (Apple Proposed Instruction 93); *see also id.* at 216 (Apple Proposed Instruction 111).)  But Apple

---

[9] Apple refers to the fact that Qualcomm drafted proposed instructions for the non-jury claims and defenses. (*Supra* at 10 n.6.)  Apple misses the point.  That Apple imposed needless burden and expense on Qualcomm is no justification for needlessly burdening the jury and the Court as well.  Qualcomm ultimately decided not to file proposed instructions for non-jury issues in an effort to limit the material for the Court to review (which also limited the instructions to which Apple had to consider objections).  Qualcomm reserved all rights in the event the Court decides to empanel an advisory jury.  (*See* ECF 884-6 at 5 n.1.)

does not suggest providing this body of "Law" to the jury (which would be improper in any event). And even if the jury somehow gained access to the "Law", Apple does not explain how the jury could interpret materials like "statutes, constitutions, local ordinances" or "common law rules or decisions by courts" in an efficient or useful manner. It is improper to ask the jury to discern the law and its policy—such interpretation is for the Court.[10] Apple's only response is the conclusory—and incorrect—claim that its proposed instructions somehow "provide the required explanation as to the legal principles that the jury should apply". (*Supra* at 7.)

Rather than ask the jury to advise on legal issues that properly can be decided only by the Court, the Ninth Circuit has explained how to address overlapping claims and defenses where only some are jury-triable by right: "[I]n cases in which legal and equitable claims turn on common issues of fact, 'any legal issues for which a trial by jury is timely and properly demanded [must] be submitted to a jury', and the jury's determination of the legal claims must occur 'prior to any final court determination of [the] equitable claims'". *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016) (quoting *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473, 479 (1962) (citations omitted)). Then, in deciding the non-jury claims and defenses, the Court "must follow the jury's implicit or explicit factual determinations". *Id.* (quotations omitted). That is the procedure the Court should follow here: the jury should decide the jury-triable claims and defenses, after which, as necessary, the Court should decide the non-jury claims and defenses.

Apple contends that *Teutscher* does not apply because it would prejudice

---

[10] By contrast, many of the cases Apple cites involve the kind of fact finding that juries traditionally undertake. *See Miller v. Ill. Dep't of Transp.*, No. 07-CV-677-WDS, 2012 WL 2922690, at *2 (S.D. Ill. July 17, 2012) (defendant's motivation for firing plaintiff); *Alibang v. Tesoro Hawaii Corp.*, No. 08-00130 PMP, 2009 WL 10677140, at *1 (D. Haw. Nov. 24, 2009) (damages); *Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905 RMW, 2008 WL 350638, at *3 (N.D. Cal. Feb. 2, 2008) (fraud).

Apple for the Court to decide Apple's claim if Apple is "not . . . permitted to present its claim[] to a jury". (*Supra* at 5-6.)  But Apple admits that it is not entitled to a jury on its claim.  (*Id.* at 2.)  And Apple's evidence will be presented to the jury. Apple concedes that "[u]nder the current trial plan, the jury will be presented with *all* the evidence in this case".  (*Id.* at 7.)  Accordingly, the jury's verdict with respect to the CMs' § 2 claim will reflect the jury's assessment of the full record, including all evidence that Apple submits.  Under these circumstances, the Seventh Amendment requires that the Court not contradict the jury's determinations in deciding Apple's § 2 claim.

If the jury were to find against the CMs, it would be a straightforward matter for the Court, guided by the jury's verdict, to render consistent findings and conclusions against Apple.  If the jury, however, were to find for the CMs, the Court again would need to refer to the jury's verdict, but also consider the additional issue of whether Apple has shown threatened loss or damage and whether an injunction would be appropriate.  By contrast, if the Court accepts Apple's proposal and the jury is asked to determine, on the one hand, whether the CMs in fact suffered a past injury, and on the other hand, whether Apple is suffering threatened loss or damage, there will be a significant risk of confusion in that the jury may well conflate those issues into a question of whether the CMs and Apple are likely to suffer damages. This type of confusion can easily be avoided simply by not presenting Apple's equitable claim to the jury.  That would make eminent sense, as Apple has no jury right.

Apple's arguments in favor of an advisory jury are unavailing for several additional reasons:

*First*, Apple expresses a concern that the jury may be "wondering why they had been asked to decide *some* potentially dispositive issues, but not others". (*Supra* at 7.)  This is a completely unrealistic concern given the expected length and complexity of the trial, and the numerous issues with which the jury will be

confronted.  The jury will be guided by the closing arguments and the Court's instructions.  Thus, for example, if the closing arguments and jury instructions do not mention restitution, the jury will not worry or think about restitution.  But in any event, the Court can alleviate any potential problem by instructing the jury that certain issues will be decided by the Court.  Apple proposes exactly such an instruction with respect to its Sherman Act § 2 claim.  (*See* ECF 884-6 at 74 (Apple Proposed Instruction 36 ("Apple seeks only injunctive relief, which is not for the jury to decide.")).) [11]

*Second*, Apple is wrong that "there are no downsides to an advisory jury". (*Supra* at 10.)  Asking the jury to decide numerous additional claims and defenses would substantially increase its workload (including the time needed for deliberations and the jurors' time away from their jobs and other responsibilities), and would risk substantial jury confusion, particularly because many of the extra claims and defenses are complicated and ill-suited for decision by lay jurors.  (*See id.* at 12-13.)  In truth, there are no real downsides to ***rejecting*** an advisory jury— because the Court ultimately needs to decide these issues anyway (*see id.* at 1 (acknowledging that "the Court will remain the ultimate factfinder on nonjury claims and defenses")).  Numerous courts have reached the same conclusion.  "[A]n advisory jury imposes a burden on jurors whose ultimate decision may not matter." *Van Asdale v. Int'l Game Tech.*, No. 3:04-CV-703-RAM, 2010 WL 1490349, at *7 (D. Nev. Apr. 13, 2010) (rejecting advisory jury); *Schuster*, 2002 WL 507130, at *11 (rejecting advisory jury where "the benefit to be derived from an advisory verdict would not outweigh the[] additional burdens that would be imposed on the jury"); (Transcript of Final Pretrial Hearing at 7:2-4 ("jurors sacrifice their time and

---

[11] Notwithstanding its stated concern regarding juror confusion, Apple does not address any confusion that would result from a decision not to submit unjust enrichment or mistake to an advisory jury, should the Court decide to empanel one (which it should not).  (*See supra* at 1 n.2.)

their effort" and parties should avoid "wasting their time")).

*Third*, Apple contends that an advisory jury is warranted because "[m]any of the jury and non-jury claims and defenses in this case overlap and arise from the same interrelated set of facts". (*Supra* at 2-3.) Apple overstates the supposed overlap between the jury and non-jury claims. It asserts (without elaboration) that deciding whether the BCPA contains an unreasonable liquidated damages provision "will involve many of the same facts as" Qualcomm and Apple's claims that the other party breached the BCPA. (*Id.* at 4-5.) Not so. Whether Apple breached the BCPA depends on whether (1) it refrained from the activity described in BCPA § 7 and/or (2) otherwise performed its obligations under the contract. Whether Qualcomm breached the BCPA depends, in part, on how the jury decides these questions. But those determinations have no bearing on whether any purported liquidated damages provision bears a reasonable relationship to the range of actual damages the parties anticipated, which is what Apple must show to prevail on its liquidated damages arguments. *See* Cal. Civ. Code. § 1671(b). Apple's reliance on *Acosta v. Zhao Zeng Hong* (*supra* at 5) is misplaced because *Acosta* did not involve liquidated damages under California law. Rather, the advisory jury in *Acosta* considered whether defendants willfully violated the Fair Labor Standards Act—a factual predicate for statutory liquidated damages. *See* 704 F. App'x 661, 665 (9th Cir. 2017). *Acosta* is simply irrelevant here.[12]

*Fourth*, Apple argues that an advisory jury would help the Court "in fact finding and making credibility determinations about hotly contested issues". (*Supra*

---

[12] Similarly, it is irrelevant whether, as Apple contends, its litigation privilege claim involves the same statements at issue in the parties' breach of BCPA claims. (*Supra* at 5.) Apple does not—because it cannot—explain how the factual question whether it breached the BCPA has anything to do with the legal question whether the litigation privilege applies. *See, e.g.*, *Dawe v. Corrections USA*, 506 F. App'x 657, 658 (9th Cir. 2013) ("The applicability of California's litigation privilege is a question of law.").

at 8 (quotations omitted).)  In particular, Apple asserts that the Court "would likely benefit from the jury's expertise in making . . . credibility determinations" with respect to the parties' experts "on matters of the industry, economics, and competition".  (*Id.*)  Apple does not explain the basis for its belief that the jury has any special expertise regarding "credibility" as to "the industry, economics, and competition" or that the Court would be aided by the jury's supposed expertise.  *See Koninklijke Philips N.V. v. Hunt Control Sys., Inc.*, No. 11-3684 (SRC) (CLW), 2016 WL 6892079, at *4 (D.N.J. Nov. 21, 2016 (rejecting claim that advisory jury would help court resolve "credibility and weight determinations" because "the Court . . . has extensive experience with these types of cases"); *Ashmore v. Bay*, No. 8:14-cv-04180, 2015 WL 4937363, at *2 (D.S.C. Aug. 18, 2015) (rejecting advisory jury where jury not "uniquely competent"); *Smith v. Reinke*, No. 1-12-cv-00030-BLW, 2014 WL 2203896, at *2 (D. Idaho May 27, 2014) (rejecting advisory jury where jury had no "unique competence").  Nor does Apple explain how such jury determinations would assist the Court with respect to any of the specific claims or defenses for which Apple seeks an advisory jury.  Even if the Court empanels an advisory jury, the Court will still need to make its own findings on such issues, as Apple acknowledges (*supra* at 2), and the jury's advisory verdicts would not help the Court issue the required findings of fact and conclusions of law.  *See* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately.").[13]

---

[13] Apple also argues that using an advisory jury "minimizes the risk of creating appellate issues" if the Court errs as to which disputed claims and defenses are triable to the jury by right. (*Supra* at 9.)  Under Apple's logic, claims and defenses in all cases should be submitted to an advisory jury whenever there is a dispute about the proper finder of fact, just in case.  That is not the law.  The Court can protect against potential appellate issues by submitting to the jury any issues as to which the jury right is uncertain. *See Granite Rock Co. v. Int'l Bhd. of Teamsters,*

## II.     Claims and Defenses Triable to Judge or Jury

The parties largely agree as to which claims and affirmative defenses presented in the parties' proposed jury instructions are triable as of right by a jury. Any disagreements are listed below, along with the parties' positions.

### A. Legal Standard

"[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions." *Simler v. Conner*, 372 U.S. 221, 222 (1963). This is true even where the claim or defense at issue is a product of state law and where "the substantive dimension of the claim asserted finds its source in state law." *Id.*

Whether there is a Seventh Amendment right to a jury "depends upon whether [the] claim [or defense] is properly characterized as legal or equitable". *See Granite Rock Co. v. Int'l Bhd. of Teamsters,* 649 F.3d 1067, 1069 (9th Cir. 2011). A two-part test guides this determination. First, is the claim or defense one that was historically tried to juries in the court of law before the courts of law and equity merged? Second, is the remedy sought legal or equitable? *Id.* The second inquiry is more important. *Teutscher*, 835 F.3d at 943. When in doubt, courts should err on the side of preserving the right to a jury trial. *Granite Rock Co.*, 649 F.3d at 1069.

### B. Disputed Claims and Defenses

#### 1. Claims and Defenses Involving Unjust Enrichment[14]

Apple and the CMs contend the parties' unjust enrichment claims and defenses are for the Court, whereas Qualcomm contends they are for the jury.

##### i.    Apple and the CMs' Position

The Ninth Circuit has held that the "cause of action for 'unjust enrichment'"

---

649 F.3d 1067, 1069 (9th Cir. 2011) ("In close cases, a court should err on the side of preserving the right to a jury trial.").

[14] Qualcomm's Count VIII (Unjust Enrichment), Qualcomm's thirty-first defense against Apple (unjust enrichment), Qualcomm's twenty-seventh defense against the CMs (unjust enrichment).

is "synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1078 (N.D. Cal. 2009) ("There is little doubt that unjust enrichment is an equitable claim."); *accord Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1999) (damages are equitable when restitutionary). Restitution is an equitable issue for the Court to decide. *Grayson v. 7-Eleven, Inc.*, No. 9-cv-1353-GPC(WMC), 2013 WL 1187010, at *6 (S.D. Cal. 2013) (describing the "equitable remedy of restitution when an unjust enrichment has occurred").

Qualcomm contends that the unjust enrichment claim is triable as of right to a jury due to its factual overlap with breach-of-contract issues, relying for support on *Shum v. Intel Corp.* and its progeny.[15]  630 F. Supp. 2d 1063.  In *Shum*, the district court conceded that the unjust enrichment claim is an equitable one. *Id.* at 1078. Nevertheless, the court reasoned that because the claim "share[d] at least one common issue of fact with his breach of contract claim," it was properly tried to the jury. *Id.*  But by this logic ***any*** equitable claim or defense that shares similar facts with a legal claim would be transformed into a claim triable as of right.

### ii. Qualcomm's Position

Unjust enrichment is triable as of right by jury where the claim or defense shares at least one factual question with a jury-triable contract claim. *See Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1078 (N.D. Cal. 2009) ("unjust enrichment claim was properly tried to the jury" where it shared "a factual question" with breach of contract claim); *Burdette v. Emerald Partners LLC*, No. C15-0816-JCC, 2015 WL 4394859, at *3 (W.D. Wash. July 16, 2015) ("Defendants are entitled to a jury trial

---

[15] Qualcomm also cites *Lectodryer v. Seoulbank*, 77 Cal. App. 4th 723, 728 (Cal. Ct. App. 2000).  But California state court decisions do not control whether a jury right attaches to an unjust enrichment claim presented to a federal court sitting in diversity.  Moreover *Lectodryer* is distinguishable because, unlike the instant case, the parties agreed that the unjust enrichment claim at issue was "legal in nature" so that a jury right attached.  No such agreement here exists.

on Plaintiff's unjust enrichment claim because the claim shares a common issue of fact with the breach of contract claims . . . ." (citing *Shum*, 630 F. Supp. 2d at 1077-78)); *see also Lectodryer v. SeoulBank*, 77 Cal. App. 4th 723, 728 (Cal. Ct. App. 2000) (unjust enrichment claim properly tried to jury and "jury's unanimous verdict was not merely advisory").[16]  Apple does not dispute that Qualcomm's unjust enrichment claim overlaps with its jury-triable BCPA claims.  That settles the issue.[17]

### 2.  Qualcomm's Defense of Mistake[18]

Apple and the CMs contend that Qualcomm's defense of mistake is for the Court, whereas Qualcomm contends it is for the jury.

### i.  Apple and the CMs' Position

Qualcomm has raised mistake as an affirmative defense to Apple's Count I, which alleges breach of the BCPA.  Dkt. 79 at 672 (FAC); PTO at 7.  "Mutual mistake constitutes a defense to contract formation and, if material, the mistake may render a contract voidable or subject to reformation."  Restatement (Second) of Contracts § 152.  In this context, mistake is an equitable defense for the Court.

---

[16] Apple argues that the Court is not bound by California cases, but it does not explain why the Court should ignore state law as to state causes of action, which other courts have considered.  *See Elia v. Roberts*, No. 1:16-cv-0557 AWI EPG, 2018 WL 4849653, at *5 (E.D. Cal. Oct. 4, 2018) (assessing California law in deciding whether treble damages were legal or equitable); *Steadman v. Bassett Furniture Indus.*, No. 12cv308 JAH (RBB), 2014 WL 12577587, at *8 (S.D. Cal. Mar. 27, 2014) (assessing California law in deciding whether statutory civil penalties were legal or equitable).  Indeed, in one of Apple's cases the court looked to state law in determining if certain relief was legal or equitable.  *See Alibang*, 2009 WL 10677140, at *1.

[17] Notably, Apple asserts that unjust enrichment should not be submitted to an advisory jury because the claim is "inconsistent" with Qualcomm's claims for breach of the BCPA.  (*See supra* at 1 n.2.)  For the reasons set forth above (*see id.* at 11 n.8), Apple's argument is baseless, and there appears to be no consistent principle behind Apple's request to empanel an advisory jury.

[18] Qualcomm's twelfth defense.

*Grymes v. Sanders*, 93 U.S. 55, 62 (1876) ("A court of equity is always reluctant to rescind . . . ."); *Hill v. N. Pac. Ry. Co.*, 113 F. 914 (9th Cir. 1902) (effort to rescind contract on ground of mistake was "seeking equity"); *see also LMNO Cable Grp., Inc. v. Disc. Commc'ns, LLC*, 2018 WL 1426979, at *5 (C.D. Cal. Jan. 11, 2018) (discussing rescission as equitable remedy under California law).

Qualcomm now claims that Apple misunderstands its defense. Qualcomm cites *Onions Etc., Inc. v. Z&S Fresh, Inc.*, 2016 WL 304287 (E.D. Cal. Jan. 25, 2016), where the court explained that a defense asserting that a "[plaintiff] cannot prove all of the elements necessary to succeed on their cause of action" is a "legal defense." *Id.* at *4. But there, the Court was addressing a negative defense. That is, the Court was addressing Defendant's arguments against Plaintiff's ability to prove the first element of a breach of contract claim—the existence of a contract. *See Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."). In *Onions*, the negative defense at issue went to the jury because it was attached to a legal claim (breach of contract) going to the jury. Consequently, *Onions* does not support Qualcomm's position that the ***affirmative*** defense of mistake creates a jury right.

The affirmative defense of mistake, which Qualcomm has asserted, is an equitable defense that goes to the Court. *Kansas v. Nebraska*, 135 S. Ct. 1042, 1072 (2015) (discussing rescission as "the appropriate equitable remedy" if there is mutual mistake); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir.1989) ("Rescission is an equitable remedy, however, for which no right to a jury exists."). Qualcomm relies on the existence of California Civil Jury Instruction ("CACI") No. 331, but the authorities cited in CACI 331 relate to whether a contract can be rescinded. *Id.* (citing, e.g., Cal. Civ. Code § 1689 (Rescission of Contract); *Crocker-AngloNat'l Bank v. Kuchman*, 224 Cal. App. 2d 490, 496 (Cal. Ct. App. 1964) (stating "the mistake necessarily is mutual and thus becomes a basis for

rescission")).  Moreover, contrary to what Qualcomm contends, it *is* seeking an equitable remedy in connection with its mistake defense—Qualcomm seeks to recover for unjust enrichment, which is (contrary to what Qualcomm asserts), an equitable remedy.  *See supra*.  This Court's decision in *Brown* provides Qualcomm no support.  *Brown v. San Diego State Univ. Found.*, 2015 WL 4545857, at *3-4 (S.D. Cal. July 28, 2015).  Apple agrees with this Court's holding that there is a right to a jury trial where a defendant seeks a legal remedy, not an equitable one.  *Id.* at *4.  However, Qualcomm seeks an equitable remedy.

Lastly, Qualcomm cites the existence of a model instruction as indicative of the fact that this jury triable.  However, the mere existence of a model jury instruction is not dispositive as to whether a jury right exists because model instructions on equitable issues are often provided to guide advisory juries.  *Hopkins v. Kedzierski*, 170 Cal. Rptr. 3d 551, 558-59 (Cal. Ct. App. 2014) ("However, the existence of such instructions does not demonstrate that a party has a right to a jury trial on these equitable issues.  Rather, the instructions are appropriate for use when a trial court empanel[s] an advisory jury to make preliminary factual findings." (internal quotation marks omitted) (brackets in original)).

### ii.   Qualcomm's Position

 Apple is wrong that Qualcomm seeks to rescind the BCPA.  Rather, Qualcomm asserts the defense that the BCPA was not a legally formed contract if the parties were mutually mistaken about the meaning of BCPA § 7.  (*See* ECF 466 at 69 (Twelfth Affirmative Defense ("Apple's claim for breach of contract is barred by the doctrines of misunderstanding, mistake, or fraud")).)  Accordingly, the cases Apple cites regarding rescission are irrelevant.  Qualcomm is entitled to a jury on its legal defense.

In *Onions Etc., Inc. v. Z&S Fresh, Inc.*, the court held that the defense that "[b]ecause there is no valid contract, there can be no breach" was for the jury and was not comparable to a claim for rescission or the equitable defenses of laches or

estoppel.  No. 1:09-cv-00906-AWI-MJS, 2016 WL 304287, at *4 (E.D. Cal. Jan. 25, 2016).  The court explained that defendants "are defending on the ground that [plaintiff] cannot prove all of the elements necessary to succeed on their cause of action.  Thus, they are raising a legal defense." *Id.*  Similarly, this Court held that a "defense of release and settlement" was "a legal defense" because it was asserted only as "a bar to a certain number of Plaintiff's causes of actions" and not as a counterclaim.  *Brown v. San Diego State Univ. Found.*, No. 3:13-CV-2294-GPC-NLS, 2015 WL 4545857, at *4 (S.D. Cal. July 28, 2015).  As the Court explained: "Accordingly, the Court finds that there is a right to a jury trial because Defendants are seeking a legal remedy, not an equitable one." *Id.* at *4.  So too, here.

In addition, California's model jury instructions include an instruction for the affirmative defense of bilateral mistake.  *See* CACI 331.  Apple suggests that the CACI instruction is for use with an advisory jury but cites no basis for this supposition.  The case Apple cites relates to equitable estoppel, not bilateral mistake.  *See Hopkins v. Kedzierski*, 225 Cal. App. 4th 736, 745 (Cal. Ct. App. 2014).[19]

### 3.  The Parties' Claims and Defenses of Waiver

Apple and the CMs contend the issue of waiver is for the Court, whereas Qualcomm contends it is for the jury.

### i.  Apple and the CMs' Position

The affirmative defense of waiver is an equitable defense.  *Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 672 (9th Cir. 2004) (describing waiver as a "traditional **equitable** defense" that is unavailable in claim brought under federal statute).  Equitable defenses are decided by the

---

[19] Notably, Apple asserts that mistake should not be submitted to an advisory jury because the claim is "inconsistent" with Qualcomm's claims for breach of the BCPA.  (*See supra* at 1 n.2.)  For the reasons set forth above (*see id.* at 11 n.8), Apple's argument is baseless, and there appears to be no consistent principle behind Apple's request to empanel an advisory jury.

Court, not a jury.  In part, Qualcomm attempts to rebut this well-established principle by relying on two California Court of Appeals decisions.  But these cases focused on differentiating the defense of waiver from that of estoppel and did not turn on whether waiver is an equitable or legal defense—which is here the dispositive question.  Even if they had, it would not bind this Court.  *See Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F. 3d 1023, 2027 (9th Cir. 1996) ("The characterization of the issues 'as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law.'").  The remaining authority relied upon by Qualcomm likewise does not undermine the force of Apple's position: the Ninth Circuit has held waiver to be an equitable defense and there is no dispute that equitable defenses are to be decided by the Court.

As a last resort Qualcomm relies on the fact that CACI No. 336 contains an instruction for the affirmative defense of waiver.  But again, the mere existence of a model jury instruction is not dispositive as to whether a jury right exists because model instructions on equitable issues are often provided to guide advisory juries.  *Hopkins*, 170 Cal. Rptr. 3d at 558-59 (existence of model instructions not indicative of jury right).

In light of Qualcomm's position, an advisory jury is proper on these claims and defenses.

### ii.    Qualcomm's Position

Waiver is a legal issue to be decided by the jury.  *See Okada v. Whitehead*, No. 8:15-cv-01449-JLS-KES, 2017 WL 127969, at *5 (C.D. Cal. Apr. 4, 2017) (noting that jury "conclusively resolved . . . affirmative defense of waiver"), *aff'd*, __Fed. App'x __, 2019 WL 92486 (9th Cir. Jan. 3, 2019); *Hoopes v. Dolan*, 168 Cal. App. 4th 146, 162-63 (Cal. Ct. App. 2008) (waiver submitted to jury); *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 61 (Cal. Ct. App. 1994) (same); *see also Murphy Oil USA, Inc. v. Wood*, 438

F.3d 1008, 1013 (10th Cir. 2006) ("When the evidence concerning waiver is conflicting, or when more than one reasonable inference may be drawn from the evidence, the existence or non-existence of waiver is a question of fact for the jury."). Indeed, California's model jury instructions include an instruction for waiver. *See* CACI 336.

Apple's reliance on *California Department of Toxic Substances Control v. Neville Chemical Co.* is misplaced. That case did not address whether waiver is triable to a jury as of right; indeed, the word "jury" does not appear in the opinion and waiver is mentioned just a single time. *See* 358 F.3d 661, 672 (9th Cir. 2004). Moreover, the court treated waiver and estoppel as a single defense, *see id.* ("[Defendant] raised an affirmative defense—waiver and estoppel—in the district court."), but waiver and estoppel are "distinct doctrines" under California law, *Hoopes*, 168 Cal. App. 4th at 163; *see also DRG*, 30 Cal. App. 4th at 61; (*supra* at 26 (*Hoopes* and *DRG* "focus on differentiating the defense of waiver from that of estoppel").

The case Apple cites regarding the CACI instruction relates to equitable estoppel, not waiver. *See Hopkins*, 225 Cal. App. 4th at 745.

### 4. Qualcomm's Count IX against the CMs[20]

The CMs contend that Qualcomm's requested declaration that it did not breach the SULAs or MSAs, unless limited to whether Qualcomm did not breach by failing to offer FRAND terms, is for the Court, whereas Qualcomm contends this declaration is for the jury.

### i. CMs' Position

Although there can be efficiencies to trying equitable issues to a jury, including on an advisory basis, that is not the case here because the scope of

---

[20] Under Count IX, Qualcomm seeks declarations that the CMs breached, and Qualcomm did not breach, the SULAs and the MSAs. The CMs and Qualcomm agree that whether the CMs breached the SULAs or MSAs is for the jury.

1    Qualcomm's Count IX far exceeds the issues set for trial.

2          The jury will determine if Qualcomm materially breached its contract

3    obligations, including specifically by violating FRAND obligations.  However,

4    Qualcomm's request for a declaration with respect to the SULAs and MSAs is, on

5    its face, much broader than what the jury will consider.  If Qualcomm sought only a

6    declaration that it had not breached its contracts by failing to license on FRAND

7    terms, the CMs would not object to that issue being submitted to the jury.  But

8    Qualcomm appears to seek a declaration that it has not breached its contracts *in any*

9    *way*, materially or otherwise, with respect to any conceivable issue or provision in

10   the contracts.  This inquiry would cause the jury to need to evaluate additional

11   contract provisions that they are not otherwise considering in connection with

12   Qualcomm's request for a declaration.

13                    **ii.    Qualcomm's Position**

14         The CMs' position on this claim is logically incoherent and inconsistent with

15   Apple and the CMs' position in the overall motion.

16         *First*, while Apple and the CMs argue in this motion that the jury should

17   "consider **nearly all** claims and defenses" (*supra* at 2) and generally agree that

18   contractual issues should go to the jury as of right, the CMs appear to argue that

19   some aspects of Qualcomm's Count IX should *not* be submitted to the jury, not even

20   for an advisory verdict.  This is inconsistent with the rest of their motion and makes

21   no sense.  Further, the CMs cite no authority—and Qualcomm is aware of none—

22   for the view that a party's Seventh Amendment rights depend on *which terms* of a

23   contract are at issue.

24         *Second*, Qualcomm does not actually seek a declaration that it did not breach

25   the SULAs or MSAs by allegedly failing to offer FRAND terms.  Such a claim

26   would be nonsensical on its face, as the SULAs and MSAs, on the one hand, and

27   FRAND commitments, on the other hand, are *different contracts*.  Thus, when the

28   CMs suggest that they would agree to submit Qualcomm's requested declaration to

1  the jury if it were "limited to whether Qualcomm did not breach by failing to offer
2  FRAND terms", they are offering an empty set.

3      Qualcomm's Count IX seeks a declaration that the CMs breached the relevant
4  contracts and Qualcomm did not.  The "Qualcomm did not breach" part was
5  intended as the negative of whatever breaches of the SULAs and MSAs the CMs
6  might allege.  The CMs do in fact allege breaches of the SULAs in Count XI of their
7  Counterclaims, and they agree that that count is for the jury.  If the CMs' claims of
8  breach are for the jury, so are Qualcomm's claims of non-breach.

### 5.  Apple's Defense of Violation of SSO IPR Policy

10     Apple contends that the defense of violation of SSO IPR Policy is essentially
11 a breach of contract claim and thus for the jury, whereas Qualcomm contends that
12 Apple has waived this defense.  If the Court concludes that Apple did not waive this
13 defense, and to the extent that the defense sounds in breach of contract as Apple
14 suggests, Qualcomm agrees that the defense would be for the jury.

### i.   Apple's Position

16     "Violation of the FRAND bargain can take several forms," such as the
17 allegations Apple has made since outset of this litigation that Qualcomm has
18 breached its FRAND commitment and otherwise violated the IPR Policy of various
19 SSOs, including the European Telecommunication Standard Institute (ETSI).  *See,*
20 *e.g.*, Dkt. 79 ¶¶ 30-35, 37-52, 74-77, 79, 114-123, 158-82, 615-18; Dkt. 82 ¶¶ 14-15,
21 18, 20, 82-83, 86, 106, 113, 117, 131, 170, 183, 222, 275, 307, 323, 331, 333,
22 Twenty-Third Defense (Unenforceability), Twenty-Sixth Defense (Breach of
23 Contract), Twenty-Seventh Defense (Breach of Implied Covenant of Good Faith);
24 Dkt. 834 (Ex. 3) at 66-68.  As discussed in Apple's Opposition to Qualcomm's
25 Motion *in Limine* No. 4, Qualcomm never complained that Apple's allegations on
26 these issues were unclear or insufficient and never served discovery requesting
27 further information on these issues.  Dkt. 943 at 2, 3-4.  Qualcomm's failure to seek
28 discovery of the factual basis underlying Apple and the CMs' properly pled

1    allegations is Qualcomm's mistake; a mistake exacerbated by Qualcomm's decision

2    not to identify the specific patents on which it would rely (as is necessary for a

3    disclosure obligation analysis) until its opening expert reports were served after the

4    close of fact discovery. *Id.* at 4-5. The Final Pretrial Conference Order identified

5    several defenses relevant to Qualcomm's alleged violation of the FRAND

6    commitment and disclosure obligation. *See, e.g.*, PTO at 39-41 (Defense Nos. 1-3,

7    8-10, 14, 19-20), 46-47 (Defense Nos. 1-4, 9, 14, 16-17). The defense of violation

8    of the SSO IPR Policy therefore was not waived.    The Ninth Circuit has made clear

9    that defenses raised in the pretrial order, or prior to trial, are not waived. *Nw.*

10   *Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 924 (9th Cir. 1988).

11        Qualcomm's actions since the Pretrial Order confirm that this defense is

12   properly included in Apple and the CMs' proposed jury instructions. Qualcomm

13   briefed the contracts and contract provisions relevant to Apple and the CMs' defense

14   in the Joint Pretrial Brief Identifying Contract Provisions and Rule 44.1 motions.

15   Dkt. 882 at 53-69, 876, 1023. Qualcomm's motions *in limine* and *Daubert* motions

16   before the Court show that Qualcomm is well aware of the testimony, evidence, and

17   argument relevant to Qualcomm's breach of these contracts. *E.g.*, Dkt. 803 (seeking

18   to exclude testimony related to exhausted patents in a FRAND analysis), 805

19   (seeking to exclude testimony related to comparable licenses for FRAND analysis),

20   816 (seeking to exclude testimony related to apportionment for FRAND analysis),

21   821 (seeking to exclude testimony related to Qualcomm's untimely disclosure of

22   patents), 825 (seeking to exclude testimony related to ETSI IPR Policy), 829

23   (seeking to exclude testimony related to royalty stacking in a FRAND analysis), 838

24   (seeking to exclude evidence of Qualcomm's disclosures of cellular SEPs to U.S.

25   SSOs), 860 (seeking to exclude evidence related to ETSI IPR Policy). Apple's

26   Violation of SSO IPR Policy defense, as reframed in Apple's proposed jury

27   instructions, underscores the allegation Apple made in its complaint that "Violation

28   of the FRAND bargain can take several forms . . . ." Dkt. 79 ¶ 43.

### ii.   Qualcomm's Position

Apple describes this purported defense in its proposed jury instructions as: "Qualcomm submitted written assurances to cellular SSOs in violation of is FRAND commitments and therefore violated the SSO IPR Policies of relevant cellular SSOs." (ECF 884-6 at 231.) Apple did not plead any such defense and thus waived it. *See Jorst v. D'Ambrosio Bros. Inv. Co.*, No. C 00-0346 CRB, 2001 WL 969039, at *9 (N.D. Cal. Aug. 13, 2001) (unpled defense waived); *Quantification Settlement Agreement Cases*, 201 Cal. App. 4th 758, 813 (Cal. Ct. App. 2011) (same).

Apple now tries to cover for its pleading failure by arguing that it alleged that FRAND breaches "can take several forms" and has now merely "reframed" that allegation. Further, Apple asserts that its "defense of violation of SSO IPR Policy is essentially a breach of contract claim". This argument is sheer nonsense.

Apple alleged 39 affirmative defenses in its Answer. Not one of them purports to be for "violation of SSO IPR Policy". (*See* ECF 84 at 81-85.) A vague averment in ***Apple's First Amended Complaint***, to the effect that "[v]iolation of the FRAND bargain can take many forms" is obviously insufficient to put Qualcomm on notice that Apple intended to pursue a supposed "defense of SSO IPR Policy" as to any of Qualcomm's claims.[21] If it were sufficient, Apple would not need to "reframe" it now. Citing various paragraphs in its Answer with an averment that Qualcomm's royalties are not FRAND—which is not the purported defense at issue—does not improve Apple's argument.

Moreover, for a "defense" that supposedly "is essentially a breach of contract claim", it is remarkable that Apple cannot identify where it pled the elements of such a claim of breach of contract. Apple failed to plead, among other things: (i)

---

[21] Apple's First Amended Complaint identifies three forms that a FRAND violation could take: (i) demanding unreasonable royalties; (ii) applying royalties in a discriminatory way; and (iii) asserting that patents are essential when they are not. (ECF 83 ¶ 43.) None of these examples relate to this purported defense.

1   the relevant contract provision(s) Qualcomm supposedly breached; (ii) what

2   action(s) Qualcomm supposedly took or failed to take in breach of the relevant

3   contracts; and/or (iii) any damages Apple supposedly suffered thereby.  Indeed,

4   Apple's attempt to articulate this purported defense in its proposed jury instructions

5   ("Qualcomm submitted written assurances to cellular SSOs in violation of its

6   FRAND commitments and therefore violated the SSO IPR Policies of relevant

7   cellular SSOs") makes no sense at all.  (*See* ECF 884-6 at 231.)     Apple has not

8   identified any provision of any IPR policy that would be *breached by submitting*

9   written assurances.  And in fact, the relevant IPR policies are to the opposite effect;

10  they ask SDO members *to submit* FRAND commitments.

11        Apple's argument that it did not waive the purported defense because Apple

12  raised it in the parties' proposed PTO is without merit.  Apple cannot unilaterally

13  cure its failure to plead an affirmative defense by inserting it into the parties'

14  proposed PTO.  The parties' proposed PTO states that "[n]o party is conceding that

15  any defenses on any causes of action included in the Pretrial Order . . . were

16  adequately pled".  (PTO at 6 n.7.)  And the Court has never entered the parties'

17  proposed PTO as an order.  Thus, unlike in a case in which a Court enters a PTO

18  setting forth the claims and defenses to be tried and, thereby, authorizes an

19  amendment to a party's pleading, here the Court has not authorized an amendment

20  of Apple's pleading to include this new defense. *See United States v. Turner-Penick*

21  *Joint Venture*, No. 3:11-cv-2834-GPC-MDD, 2014 WL 11997807, at *4 (S.D. Cal.

22  June 30, 2014) ("The fact that a mutual-mistake defense was included in the parties'

23  proposed pretrial order has no effect, as the proposed order was never entered."); *see*

24  *also, e.g., 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 664-65 (9th Cir.

25  1999) ("Raising the claims as affirmative defenses in the joint pretrial order was

26  inadequate [where, among other things,] [t]he court did not sign the joint pretrial

27  order.").  Nor would a motion to amend Apple's pleadings to include such a defense

28

be appropriate at this stage, when Qualcomm has no opportunity to adduce evidence regarding it.

Similarly meritless is Apple's claim that Qualcomm "confirm[ed]" that the purported defense is "properly included" in Apple's proposed jury instructions because Qualcomm "briefed the contracts and contract provisions relevant" to the defense. Merely citing motions that address FRAND issues does not assist Apple. There is no question that FRAND is an issue in the case. That has nothing to do with whether Apple pled "violation of SSO IPR Policy" as a defense. Moreover, nothing in the briefing Apple cites acknowledges the legitimacy of a supposed defense that "Qualcomm submitted written assurances to cellular SSOs in violation of its FRAND commitments and therefore violated the SSO IPR Policies of relevant cellular SSOs". (*See* ECF 884-6 at 231.)[22]

The Court should conclude that Apple waived this purported defense. If the Court concludes that Apple did not waive this purported defense, and to the extent that the defense sounds in breach of contract as Apple suggests, Qualcomm agrees that the defense would be for the jury.

---

[22] To the extent Apple's defense relates to the timeliness of Qualcomm's "disclosure obligation", Qualcomm's Motion *in Limine* No. 4 pointed out that "[n]owhere in its pleadings does Apple take issue with the timeliness of Qualcomm's disclosures to *any* SDO". (ECF 838-1 at 4.)

# APPENDIX A

## Undisputed – Claims for Jury

Apple's Claims against Qualcomm
- Count I (Breach of BCPA)
- Count II (Breach of BCPA Implied Covenant)
- Count IV (Declaratory Judgment re BCPA)
  - Whether Qualcomm breached the BCPA
  - Whether Apple's actions triggered the second paragraph of BCPA § 7
  - Whether Apple breached its express or implied obligations under the BCPA

Qualcomm's Claims against Apple
- Count I (Tortious Interference)
- Count II (Declaratory Judgment that SULAs are FRAND-compliant)
- Count IV (Declaratory Judgment that Qualcomm satisfied FRAND commitments to ETSI with respect to Apple)
- Count V (Breach of 2013 SOW)
- Count VI (Breach of BCPA)
- Count VII (Breach of BCPA Implied Covenant)
- Count IX (Declaratory Judgment that Qualcomm is not obligated to make further BCPA payments)
- Count XI (Breach of MSA)

Qualcomm's Claims against CMs
- Count I (Foxconn Breach of SULA)
- Count II (Foxconn Breach of MSA)
- Count III (Pegatron Breach of SULA)
- Count IV (Pegatron Breach of MSA)
- Count V (Wistron Breach of SULA)
- Count VI (Wistron Breach of MSA)
- Count VII (Compal Breach of SULA)
- Count VIII (Compal Breach of MSA)
- Count IX (Declaration that CMs breached SULAs and MSAs and Qualcomm did not)
  - Whether the CMs breached the SULAs or MSAs

1

<u>CMs' Claims against Qualcomm</u>

- Count I (Sherman Act § 2)
- Count II (Sherman Act § 1)
- Count III (Cartwright Act)
- Count V (Breach of Contract – FRAND Commitments)
- Count VI (Breach of FRAND Commitments – Implied Covenant)
- Count VIII (Declaration that Qualcomm did not comply with FRAND commitments)
- Count X (Negligent Misrepresentation)
- Count XI (Breach of SULAs)

## Undisputed – Claims for Court[23]

Apple's Claims against Qualcomm
- Count III (Violation of Cal. Civ. Code § 1671)
- Count IV (Declaratory Judgment re BCPA)
  - Whether Qualcomm's interpretations of the BCPA are unenforceable as against public policy
  - Whether the second paragraph of BCPA § 7 survives termination or expiration of the BCPA
  - Whether Apple's statements to regulators and others are protected by litigation privilege under Cal. Civ. Code § 47(b)
- Count LX (Declaratory Judgment re STA Assignment Agreement)
  - Whether Section 4.4 of the STA Assignment Agreement is unenforceable as against public policy.
- Count LXI (Declaratory Judgment re SULAs)
  - Whether the SULAs are unenforceable as against public policy.
- Count LXII (Sherman Act § 2)
- Count LXIII (California Unfair Competition Law)

Qualcomm's Claims against Apple
- Count III (Declaration that SULAs do not violate competition law)

Qualcomm's Claims against CMs
- None

CMs' Claims against Qualcomm
- Count IV (California Unfair Competition Law)
- Count VII (Promissory Estoppel)
- Count XII (Declaration that SULAs are unenforceable as against public policy)

---

[23] The fact that the parties do not dispute whether a claim or defense is triable to a judge or jury does not mean that the parties agree that the claim or defense is proper. The parties reserve all rights to assert that the various claims and defenses are improper. This submission and brief is limited to whether the judge or jury is the appropriate factfinder for the asserted claims and defenses.

## <u>**Disputed – Claims**</u>

<u>Apple's Claims against Qualcomm</u>
- None

<u>Qualcomm's Claims against Apple</u>
- Count VIII (Unjust Enrichment)
  - **Apple—Court**
  - **Qualcomm—Jury**

<u>Qualcomm's Claims against CMs</u>
- Count IX (Declaration that CMs breached SULAs and MSAs and Qualcomm did not)
  - Whether Qualcomm did not breach the SULAs or MSAs
    - **CMs—Court**
    - **Qualcomm—Jury**

<u>CMs' Claims against Qualcomm</u>
- Count IX (Waiver)
  - **CMs—Court**
  - **Qualcomm—Jury**

# APPENDIX B

## **Undisputed – Affirmative Defenses for Jury**

- Statute of Limitations
- Excuse
- Failure to Mitigate
- Justification
- Unwilling Licensee
- Violation of SSO IPR Policy[24]

## **Undisputed – Affirmative Defenses for Court**

- Laches
- Estoppel
- Unclean Hands
- Liquidated Damages
- Unenforceable as against Public Policy
- Unconscionability
- Ratification, Acquiescence, Consent
- Offset
- *Illinois Brick*[25]
- Litigation Privilege Section 47(b)

---

[24] Qualcomm contends that Apple waived this purported defense.  Qualcomm agrees that this defense would be for the jury if not waived only to the extent it sounds in breach of contract as Apple suggests.  (*See supra* at 31-34.)

[25] Apple and the CMs do not agree that it is undisputed that *Illinois Brick* and offset are "Affirmative Defenses for Court."  But Apple and the CMs agree that these are issues for resolution by the Court.

## <u>Disputed – Affirmative Defenses</u>

- Waiver
    - ○ **Apple and CMs—Court**
    - ○ **Qualcomm—Jury**
- Mistake
    - ○ **Apple and CMs—Court**
    - ○ **Qualcomm—Jury**
- Unjust Enrichment
    - ○ **Apple and CMs—Court**
    - ○ **Qualcomm—Jury**

1

Dated: March 11, 2019          Respectfully submitted,

2

3                                              By:    */s/ William A. Isaacson*

Juanita R. Brooks, SBN 75934, brooks@fr.com
4          Seth M. Sproul, SBN 217711, sproul@fr.com
FISH & RICHARDSON P.C.
5          12390 El Camino Real
San Diego, CA 92130
6          Phone: (619) 678-5070; Fax: (619) 678-5099

7

Ruffin B. Cordell (D.C. Bar No. 445801;
8          *pro hac vice*) cordell@fr.com
Lauren A. Degnan (D.C. Bar No. 452421;
9          *pro hac vice*) degnan@fr.com
FISH & RICHARDSON P.C.
10         1000 Maine Avenue, S.W., Suite 1000
Washington, D.C. 20024
11         Phone: (202) 783-5070; Fax: (202)783-2331

12

William A. Isaacson (D.C. Bar No. 414788;
13         *pro hac vice*) wisaacson@bsfllp.com
Karen L. Dunn (D.C. Bar No. 1002520;
14         *pro hac vice*) kdunn@bsfllp.com
Amy J. Mauser (D.C. Bar No. 424065;
15         pro hac vice) amauser@bsfllp.com
Christopher G. Renner (D.C. Bar No. 1025699;
16         pro hac vice) crenner@bsfllp.com
BOIES SCHILLER FLEXNER LLP
17         1401 New York Avenue, N.W.
Washington, D.C. 20005
18         Phone: (202) 237-2727; Fax: (202) 237-6131

19

20         *Attorneys for Plaintiff and Counterclaim-Defendant*
*Apple Inc.*
21

22

23         By:    */s/ Jason C. Lo*

24

Theodore R. Boutrous, Jr., SBN 132099,
25         tboutrous@gibsondunn.com
Richard J. Doren, SBN 124666
26         rdoren@gibsondunn.com
Daniel G. Swanson, SBN 116556,
27         dswanson@gibsondunn.com
Michele L. Maryott, SBN 191993
28

1  mmaryott@gibsondunn.com
   Jason C. Lo, SBN 219030,
2  jlo@gibsondunn.com
   Jennifer J. Rho, SBN 254312,
3  jrho@gibsondunn.com
   Melissa Phan, SBN 266880,
4  mphan@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
5  333 South Grand Avenue
   Los Angeles, CA 90071
6  Tel:  (213) 229-7000; Fax:  (213) 229-7520
7

8  Cynthia E. Richman, DC Bar No. 492089,
   *pro hac vice*
9  crichman@gibsondunn.com
   GIBSON, DUNN & CRUTCHER LLP
10 1050 Connecticut Avenue, N.W.
   Washington, DC 20036
11 Tel: (202) 955-8500; Fax: (202) 467-0539
12

13 *Attorneys for Defendants, Counterclaimants, and
   Third-Party Plaintiffs Compal Electronics, Inc., FIH
14 Mobile Ltd., Hon Hai Precision Industry Co., Ltd.,
   Pegatron Corporation, and Wistron Corporation*
15

16 Hugh F. Bangasser, *pro hac vice*
   hugh.bangasser@klgates.com
17 Christopher M. Wyant, *pro hac vice*
   chris.wyant@klgates.com
18 J. Timothy Hobbs, *pro hac vice*
   tim.hobbs@klgates.com
19 K&L GATES LLP
   925 Fourth Avenue, Suite 2900
20 Seattle, Washington 98104
   Tel: (206) 623-7580; Fax: (206) 370-6371
21

22 Caitlin C. Blanche, SBN 254109,
   caitlin.blanche@klgates.com
23 K&L GATES LLP
   1 Park Plaza Twelfth Floor
24 Irvine, CA  92614
   Tel: (949) 253-0900; Fax: (949) 253-0902
25

26 *Attorneys for Defendant, Counterclaimant, and
   Third-Party Plaintiff Wistron Corporation*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:     */s/ Evan R. Chesler*

Evan R. Chesler

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler (*pro hac vice*)
(N.Y. Bar No. 1475722)
echesler@cravath.com
Keith R. Hummel (*pro hac vice*)
(N.Y. Bar No. 2430668)
khummel@cravath.com
Richard J. Stark (*pro hac vice*)
(N.Y. Bar No. 2472603)
rstark@cravath.com
Antony L. Ryan (*pro hac vice*)
(N.Y. Bar No. 2784817)
aryan@cravath.com
Gary A. Bornstein (*pro hac vice*)
(N.Y. Bar No. 2916815)
gbornstein@cravath.com
J. Wesley Earnhardt (*pro hac vice*)
(N.Y. Bar No. 4331609)
wearnhardt@cravath.com
Yonatan Even (*pro hac vice*)
(N.Y. Bar No. 4339651)
yeven@cravath.com
Vanessa A. Lavely (*pro hac vice*)
(N.Y. Bar No. 4867412)
vlavely@cravath.com
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
David A. Nelson (*pro hac vice*)
(Ill. Bar No. 6209623)
davenelson@quinnemanuel.com
Stephen Swedlow (*pro hac vice*)
(Ill. Bar No. 6234550)
stephenswedlow@quinnemanuel.com
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401

Alexander Rudis (*pro hac vice*)
(N.Y. Bar No. 4232591)
alexanderrudis@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Sean S. Pak (SBN 219032)
seanpak@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

JONES DAY
Karen P. Hewitt (SBN 145309)
Randall E. Kay (SBN 149369)
rekay@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone:  (858) 314-1200
Facsimile:  (858) 345-3178

*Attorneys for Defendant and Counterclaim-Plaintiff Qualcomm Incorporated*

**ATTESTATION OF SIGNATURES**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court of the Southern District of California, I certify that authorization for the lodging of this document has been obtained from each of the other signatories shown above and that all signatories have authorized placement of their electronic signature on this document.

Executed on March 12, 2019.

*/s/ William A. Isaacson*
William A. Isaacson

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 12, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5.4(d).  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Executed on March 12, 2019.

*/s/ William A. Isaacson*

William A. Isaacson