UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| IN RE: QUALCOMM LITIGATION | Case No.: 3:17-cv-108-GPC-MDD **ORDER DENYING APPLE'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** [ECF No. 593] |
|---|---|

Before the Court is Apple's Motion for Partial Judgment on the Pleadings on Count IV of Qualcomm's Counter Complaint. Count IV seeks a declaration that Qualcomm has satisfied and discharged its FRAND commitment to ETSI with respect to patent portfolio offers made to Apple. Apple moves to dismiss this declaratory judgment claim contending that this Court does not have subject-matter jurisdiction over it because the facts do not present a definite and concrete controversy and the requested declaratory relief would not bind Apple. Qualcomm responds that a declaration that its portfolio licensing offers comply with FRAND would inoculate it from a future breach of FRAND action and would operate to forfeit Apple's rights under FRAND.

A hearing on the motion was held on January 25, 2019. The Court has reviewed Apple's motion, Qualcomm's response (Dkt. No. 625), Apple's reply (Dkt. No. 660), all other pertinent documents in the record, and the relevant law. For the reasons set forth below, the Court **DENIES** Apple's motion for partial judgment on the pleadings.

# I. BACKGROUND

A.   FRAND Framework

"For a cellular network to operate . . . carriers, base station manufacturers, mobile wireless device manufacturers, and baseband processor chipset manufacturers must agree to follow a common set of standard, which control how each party of a network communicates with the other parts." Apple FAC ¶ 30, Dkt. No. 137. Accordingly, cell service providers, baseband processor chipset manufacturers, and wireless device manufacturers have formed and joined standard setting organizations ("SSOs") which create and distribute common standards for all members to follow. *Id.* The European Telecommunications Standards Institute ("ETSI") is one of the most important and influential SSOs in the cellular communications industry.

Qualcomm and Apple are both members of ETSI, an SSO based in France. *Id.* ¶ 44. ETSI produces globally accepted standards for the telecommunications industry. *Id.* ¶ 44. ETSI requires participants to commit to abide by its Intellectual Property Rights ("IPR") Policy. *Id.* ¶ 45. The IPR Policy requires that SEP owners submit a written commitment that they are prepared to grant irrevocable licenses on FRAND terms. *Id.* ¶ 46. The "FRAND commitment" is a contractual obligation between the SEP holder and the SSO.

Qualcomm holds SEPs that are integral to practicing ETSI's 3G and 4G standards. According to Apple, Qualcomm is contractually obligated to grant licenses on FRAND terms to these patents to Apple and other manufacturers of products that, through the baseband processor chipsets they use, conform to ETSI standards, as well as to third-party suppliers of baseband processor chipsets. *Id.* ¶ 49. Apple asserts that it is a third-party beneficiary of the contracts between Qualcomm and ETSI. *Id.* ¶ 50.

B.   The Parties' Negotiations for a Direct License

Qualcomm and Apple engaged in negotiations regarding a direct license agreement from 2015 to 2017. Qualcomm SACC ¶ 20, Dkt No. 489. On June 15, 2016, Qualcomm offered Apple a license to Qualcomm's Chinese 3G and 4G cellular SEPs. *Id.* ¶ 180. On

July 15, 2016, Qualcomm provided Apple with an offer for a license covering Qualcomm's "rest of world" (other than China) 3G and 4G cellular SEPs. *Id.* Qualcomm claims that these offers complied with its FRAND commitment. *Id.* ¶ 181. Apple allegedly responded to Qualcomm's offer by accusing Qualcomm of breaching its FRAND commitment and making a purportedly unreasonable counteroffer that rejected Qualcomm's offer. *Id.* ¶ 189.

C.   <u>The Parties' Pleadings</u>

In its First Amended Complaint, Apple advanced numerous claims against Qualcomm, including claims for declaration of FRAND royalties for nine patents-in-suit. Qualcomm avoided any FRAND determination on individual patents when it extended a covenant not to sue Apple as to these nine patents. Thereafter, Qualcomm moved for and obtained an order dismissing the FRAND based claims for the nine patents-in-suit.

Currently, FRAND royalty based claims make up a part of Apple's monopolization claim. Apple FAC at 142. In Count LXII of Apple's FAC, Apple claims that Qualcomm's conduct "constitutes unlawful monopolization of the market for CDMA and premium LTE chipsets in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2." *Id.* Apple alleges that "[s]ince at least 2007, Qualcomm has engaged in systematic, continuous conduct to exclude competition in the relevant chipset markets." *Id.* ¶ 623. Apple's theory is that "Qualcomm's anticompetitive and exclusionary conduct is a multi-faceted but synergistic whole, with each of the parts making possible and reinforcing the effects of the others." *Id.*

Apple rests its antitrust claims on the following pillars of Qualcomm's exclusionary conduct: (i) refusing to deal with competitors, in contravention of its FRAND commitments, (ii) gagging Apple's ability to challenge Qualcomm's non-FRAND licensing scheme, through paragraph 2 of Section 7 of the Business Cooperation and Patent Agreement ("BCPA"), (iii) tying the purchase of its chipsets to the licensing of its SEPs; and (iv) requiring exclusivity from Apple as a condition of partial relief from Qualcomm's exorbitant and non-FRAND royalties." *Id.* ¶ 624.

First, Apple contends that Qualcomm's refusal to offer SEP licenses on FRAND terms to its competitors is an unlawful refusal to deal with competitors and an act of monopolization under the Sherman Act. *Id.* ¶ 625.  Apple alleges that Qualcomm has been unwilling since 2008 to license its SEPs to competing chipset manufacturers, and that according to the KFTC, Qualcomm has refused to license its SEPs to Samsung, Intel, and VIA Telecom. *Id.* ¶¶ 179, 182.  Apple claims that the effect of this conduct is that it "eliminates the ability of Apple and other mobile device suppliers to purchase chipsets from Qualcomm's competitors without also paying royalties to Qualcomm, and thus exposes Apple and other mobile device suppliers to the threat of exorbitant non-FRAND royalties." *Id.* ¶ 183.

Second, Apple alleges that the BCPA's "gag clause" violates the Sherman Act by preventing Qualcomm's illegal scheme from coming to light and shielding Qualcomm's non-FRAND licensing scheme from scrutiny by the judiciary and by government enforcement agencies. *Id.* ¶ 627.

Third, Apple alleges that Qualcomm will sell baseband chipsets only to "Authorized Purchasers" who must license a broad portfolio of patent rights, including Qualcomm's SEPs. *Id.* ¶ 638.  Apple alleges that this arrangement forced the CMs to agree to condition sales of baseband processor chipsets on the license of Qualcomm's patent portfolio. *Id.*  Apple alleges that the Authorized Purchaser requirement gives Qualcomm the power to exclude competition and harm device manufacturers, including Apple. *Id.* ¶ 639.

Fourth, Apple alleges that since 2011, Qualcomm has conditioned billions of dollars in payments on the express agreement by Apple to purchase chipsets exclusively from Qualcomm. *Id.* ¶ 645.  Apple alleges that until recently, these payments precluded Apple from shifting a portion of its chipset purchases from Qualcomm to Qualcomm's competitors. *Id.* ¶ 646.  Apple claims that it was forced to agree to the exclusivity conditions in order to avoid paying above FRAND royalty rates. *Id.* ¶ 647.

Meanwhile, Qualcomm, in their Second Amended Counterclaims, alleges that Apple has acted in bad faith and is an unwilling licensee who was never interested in signing a FRAND license agreement. Qualcomm SACC ¶¶ 170-71. Qualcomm posits that to the extent that Apple as an implementer seeks to enforce an innovator's FRAND commitment, it must negotiate fairly and reasonably. *Id.* ¶ 103. Qualcomm alleges that Apple is an unwilling licensee who has failed to negotiate fairly and is no longer entitled to the benefits of Qualcomm's FRAND commitments. *Id.* ¶ 31 (citing *Unwired Planet Int'l v. Huawei Techs.*, [2017] EWHC (Pat) 711, [160] (UK)).

D. <u>Apple's Motion for Partial Judgment on the Pleadings</u>

Apple moves for judgment on the pleadings on Count IV of Qualcomm's Counterclaims, the claim for a declaratory judgment that Qualcomm satisfied its FRAND commitments in its offer to Apple. Apple contends that the unsuccessful licensing negotiations between the parties do not establish a definite and concrete controversy touching the legal relations of the parties. Apple Mem. at 3, Dkt No. 593. Apple also argues that any declaratory ruling by the Court would not resolve a legal controversy, as it would not directly lead to a patent license between the parties. *Id.* In the alternative, Apple asserts that the Court should decline to exercise jurisdiction over the claim in its discretion because a ruling would constitute a nonbinding, advisory opinion. *Id.* at 4-5.

Qualcomm responds that it does not seek the Court's views on the parties negotiating positions. Qualcomm Opp., Dkt No. 625 at 5. Instead, it seeks a binding determination that it has not breached its FRAND contracts and that Apple is an unwilling licensee. *Id.* It observes that Apple has repeatedly and consistently accused Qualcomm of breaching its FRAND commitments to Apple, a third-party beneficiary of Qualcomm's contracts with ETSI. *Id.* at 1. Furthermore, Qualcomm contends that its FRAND declaratory judgment claim counters Apple's antitrust and disgorgement claims that are based on Qualcomm's alleged FRAND violations.

The Court concludes that the requested FRAND declaration will not resolve Apple's antitrust cause of action or disgorgement claims and therefore involves

5

piecemeal litigation of this claim.  That is because FRAND negotiations from 2015 through 2016 play but a small part in the FRAND issues relating to the antitrust claim.  Also, given that some of the FRAND questions are woven into legal claims, jury fact finding as to FRAND issues will be required and any declaration by the Court will require applying jury determinations to any court declaration.  As to these theories of recovery, the requested declaration does not admit of specific relief through a degree of conclusive character.

However, Qualcomm also requests a declaration that Apple is an unwilling licensee who is no longer entitled to receive the benefits of Qualcomm's FRAND commitment.  This theory has been recognized as a legitimate basis for declaratory relief and is legally sufficient to survive Apple's motion.[1]  In addition, there is no likelihood of prejudice by allowing this claim to go forward given that the parties do not dispute that evidence regarding Qualcomm's FRAND declaratory relief claim will be admitted at the jury trial of the antitrust claims and will not confuse the issues.[2]

## II. DISCUSSION

A.   Legal Standard

   1.   Rule 12(c)

Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings."  *Morgan v. County of Yolo*, 436 F.Supp.2d 1152, 1154–55 (E.D. Cal. 2006), *aff'd*, 277 Fed. Appx. 734 (9th Cir. 2008).  Under Rule 12(c),

---

[1] *See HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2018 WL 6617795, at *7 (E.D. Tex. Dec. 17, 2018)
[2] *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2012 WL 395734, at *4 (W.D. Wash. Feb. 6, 2012); *VW Credit, Inc. v. Friedman and Wexler, LLC*, No. 09 C 2832, 2010 WL 2330364, at *2 (N.D. Ill. June 7, 2010) ("In any event, even if the counterclaim turns out to be an exact mirror image of VW Credit's claim, which seems doubtful, the fact that the counterclaim remained pending ... would not prejudice VW Credit in the slightest.").

a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

"A district court will render a 'judgment on the pleadings when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.'" *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996)). "All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party." *Gen. Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

### 2. Subject-Matter Jurisdiction

"It is a fundamental principle that federal courts are courts of limited jurisdiction." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)). The party asserting jurisdiction bears the burden to establish jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [federal court] jurisdiction ... and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal citations omitted).

### 3. Declaratory Judgment Jurisdiction

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The plaintiff seeking the declaratory judgment bears the burden of showing the existence of an "actual controversy" sufficient to confer Article III jurisdiction. *Organic*

1 *Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1354 (Fed. Cir. 2013). An actual controversy must be present at all times in the litigation. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).

To determine if there is declaratory judgment jurisdiction, the Court assesses whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). A litigant may not use a declaratory judgment action to "obtain piecemeal adjudication of defenses that would not finally and conclusively resolve the underlying controversy." *Id.* at 128 n.7 (citing *Calderon v. Ashmus*, 523 U.S. 740, 749 (1998)). Further, for a declaratory judgment action to satisfy the case or controversy requirement, the dispute must "admi[t] of specific relief through a degree of a conclusive character." *Id.* at 127 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)).

B.   Analysis

Count IV of Qualcomm's Second Amended Counterclaim seeks a declaration that it has satisfied and discharged its FRAND commitments to ETSI with respect to Apple because, among other reasons, (i) Qualcomm's licensing offers to Apple, including its June 2016 and July 2016 cellular SEP licensing offers to Apple satisfied Qualcomm's FRAND commitments to ETSI, and (ii) Apple's unreasonable and bad-faith negotiation tactics make it an unwilling licensee. Qualcomm SACC ¶¶ 154, 345.

1.   Whether a FRAND Declaration Resolves Apple's Monopolization Claim

Qualcomm argues that a determination that its 2016 offers comply with FRAND admits of specific relief because Apple's antitrust claims are premised on, among other things, Qualcomm's alleged breach of FRAND terms. Qualcomm Opp. at 4. This argument fails to account for the fact that Qualcomm's 2016 negotiations relate to a small part of the FRAND issues before the Court and jury and will not provide relief of a conclusive nature as to the antitrust claims.

First, Qualcomm's counterclaim does not overlap temporally with the FRAND claims that relate to Apple's monopolization count. Apple's antitrust claims allege conduct that began in 2008 and proceeded until at least 2016 while Qualcomm's SEP offers were made in 2016. Also, a declaration that Qualcomm made FRAND offers to Apple in 2016 does not decide Apple's related claims that Qualcomm has been unwilling to license its SEPs to competing chipset manufacturers; has employed an unlawful no license-no chip practice; and has used exclusivity and tying arrangements to build and maintain a monopoly in the chipsets market. As such, Qualcomm has failed to meet its burden that the requested relief is of a conclusive character as it relates to the antitrust cause of action.

Moreover, in the context of the antitrust claims, Qualcomm is asking the Court to make determinations that likely involve factual findings that the jury may be tasked to decide. Qualcomm asserts that courts routinely adjudicate declaratory judgment actions concerning existing contractual obligations such as FRAND. Qualcomm Opp. at 8. While this may be so, Qualcomm has not cited a case where courts have done so where the FRAND question was part of an antitrust case and a jury was being tasked with considering compliance of FRAND in the context of an alleged uncompetitive business model. Qualcomm's request for the Court to decide factual issues that are intertwined with legal claims that will be decided by the jury raises Seventh Amendment issues which will require further attention. "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).

In sum, Qualcomm has failed to meet its burden that declaratory relief claim would finally and conclusively resolve Apple's antitrust claim against Qualcomm. The Court finds that, at most, the requested FRAND determination offers a piecemeal decision as to the antitrust claims which will require further decision making. Therefore, subject-matter jurisdiction is absent on this basis.

2. <u>Whether Qualcomm's Offers to Apple Confer Subject-Matter Jurisdiction</u>

a. <u>Whether a Declaratory Judgment Would Bind Apple</u>

Apple moves for judgment on the pleadings asserting that unsuccessful licensing negotiations between Apple and Qualcomm do not present a definite and concrete controversy, as it is not the courts' function to determine the proper outcome of a contract negotiation. Apple Mem. at 3. Apple maintains that a determination as to whether Qualcomm complied with its obligations to ETSI would necessarily require the Court to determine a FRAND rate which would not bind Apple. Apple Reply, Dkt No. 660 at 2.

Apple relies on *InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 1:13-CV-00009-RGA, 2014 WL 2206218 (D. Del. May 28, 2014), for this argument. In that case, InterDigital engaged in separate licensing negotiations for its patent portfolio with ZTE and Nokia. Because ZTE and Nokia had not committed to signing a FRAND offer, the court found that determining a FRAND rate would only give a data point from which the parties could continue negotiations and would not lead directly to a license agreement. *Id.* at *3. The court observed that the declaration whether InterDigital offered a FRAND rate would serve little or no useful purpose. *Id.*

Here, Apple has not agreed to be bound by any FRAND determination by the Court and posits that similar to *InterDigital*, the Court's resolution of whether Qualcomm's offers were FRAND and whether Apple was an unwilling licensee would not directly lead to a patent license between the parties. Apple Mem. at 3.

In response, Qualcomm asserts that Apple's argument is off the mark in that Qualcomm is not seeking a FRAND rate and, instead, is requesting a declaration that it has complied with its FRAND obligations and that Apple has engaged in conduct that demonstrates that it is an unwilling licensee. The Court agrees and addresses the underpinnings of these requests in turn.

b. <u>Whether Qualcomm Has Complied with FRAND Obligations and Apple is an Unwilling Licensee</u>

Qualcomm contends that there is a definite and concrete dispute regarding whether it has complied with its contractual obligations. Qualcomm Opp. at 4. Qualcomm acknowledges it has affirmative contractual obligations with ETSI regarding FRAND commitments and that Apple can enforce that contract as a third-party beneficiary. *Id.* at 5. Qualcomm points out that Apple has repeatedly alleged that Qualcomm's offers to Apple constituted a breach of its FRAND commitments. *See* Apple FAC ¶ 94 ("Qualcomm has never made a worldwide offer on FRAND terms for a direct license to Apple."); *id.* ¶ 120 ("Apple immediately rejected [Qualcomm's Chinese 3G/4G license offer] because it was not FRAND."); *id.* ¶ 158 ("For nearly ten years, Qualcomm has failed to offer Apple a license for its cellular SEPs on FRAND terms.").[3] Qualcomm asserts that Apple's actions evidence an adversarial relationship involving an issue that is as amenable to declaratory judgments as other contracts. *Id.* at 5.

Qualcomm argues that under similar circumstances, courts have found subject-matter jurisdiction when a patent holder seeks a declaration that it has complied with its FRAND obligations in the face of allegations to the contrary. Qualcomm Opp. at 6. For example, in *Huawei Techs. Co. v. T-Mobile US, Inc.*, the court did exactly that. No. 2:16-CV-00715-JRG-RSP, 2017 WL 957720, at *1 (E.D. Tex. Feb. 22, 2017), report and recommendation adopted, No. 2:16-CV-00715-JRG-RSP, 2017 WL 951800 (E.D. Tex. Mar. 10, 2017). Huawei's complaint against T-Mobile sought a declaration that Huawei had complied with its FRAND obligations during attempts to license SEPs to T-Mobile. Huawei's complaint alleged that T-Mobile asserted that Huawei's past offers were inconsistent with Huawei's FRAND obligations and that Huawei violated its commitment

---

[3] Qualcomm contends that many of Apple's and the CMs' claims are premised on Qualcomm's alleged breach of its FRAND contracts. Qualcomm Opp. at 2-3. In this regard, it is important to note that Apple is seeking dismissal of Qualcomm's Count IV, which seeks a declaration that Qualcomm satisfied its FRAND commitments *only* with respect to its offers to Apple. That count does not seek a declaration about Qualcomm's licensing agreement or offers to the CMs or other parties.

to license its patents on FRAND terms.  T-Mobile moved to dismiss on ground that the court lacked jurisdiction.

The court found that T-Mobile's statements about Huawei's offers were "consistent with the position that Huawei has breached its FRAND obligations, and Huawei's declaratory judgment action was prompted by T-Mobile's position." *Id.* at *1. The court noted that T-Mobile could file a breach of contract action against Huawei as a third-party beneficiary of Huawei's promise to offer licenses on FRAND terms.  At a hearing on the motion, T-Mobile did not clearly state that it would not file a breach of contract action if the court were to dismiss Huawei's declaratory judgment complaint. *Id.*

The court stated that T-Mobile's statements about Huawei's FRAND obligations were analogous to the conduct required for jurisdiction over a declaratory judgment for noninfringment. *Id.* (citing *Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1253 (Fed. Cir. 2016) (requiring "conduct that can be reasonably inferred as demonstrating intent to enforce a patent.")).  The court found that T-Mobile's conduct reasonably demonstrated its intent to pursue a breach of contract action.  Accordingly, the court concluded that it had subject-matter jurisdiction over the declaratory judgment action.

Here, Apple rejected Qualcomm's offer as non-FRAND and then brought this lawsuit alleging, among other things, that Qualcomm's offer was non-FRAND.  Apple has not unequivocally stated it will not pursue a stand-alone breach of contract action. The Court finds that the facts of this case evince a substantial controversy between the parties relating to FRAND commitments which are of sufficient immediacy and reality to justify declaratory relief. *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382 (Fed. Cir. 2007) (issuance of declaratory relief requires a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality).

Qualcomm also seeks a declaration that Apple has engaged in conduct that constitutes unreasonable holdout behavior and demonstrate that it is an unwilling licensee.  This determination will relieve Qualcomm of any further FRAND obligations

towards Apple. If Apple is found to have forfeited its rights to a FRAND license, then Qualcomm is not obligated to offer Apple a FRAND license to its SEPs. *See Microsoft Corp. v. Motorola, Inc.*, No. 10-1823, 2012 WL 395734, at *4 (W.D. Wash. Feb. 6, 2012) (denying motion to dismiss a request for declaration that Motorola repudiated its right to a RAND license because relief sought by Motorola's declaratory judgment action differs from any relief it may obtain by merely defending against Microsoft's affirmative RAND claims). Ultimately, a favorable outcome on Qualcomm's counterclaim will afford it additional relief that is not available should its defenses defeat Apple's affirmative claims.

The Court concludes that it has subject-matter jurisdiction over Qualcomm's declaratory judgment claim.

### 4. Whether the Court Should Decline Jurisdiction in Its Discretion

"In a case of actual controversy within its jurisdiction ... any court ... *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The word "may" within the language of the Declaratory Judgment Act means that a court has discretion to accept a declaratory judgment action in the first place. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 903 (Fed. Cir. 2008).

The discretion afforded to district courts to administer the declaratory judgment practice is broad. *Id.* at 287; *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1288 (Fed. Cir. 2007). However, there must be a well-founded reason for declining to entertain a declaratory judgment action. *Capo, Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed. Cir. 2007). "When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal." *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005).

"Situations justifying exercise of the court's discretion to issue a declaratory judgment include '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* at 672-73 (citing Borchard, Declaratory Judgments, 2d ed. 1941, 299). The Court will "decline to invest judicial time and resources in a declaratory action" that requests only piecemeal relief that does not resolve the disputes between the party in a worthwhile way. *Takeda Pharm. Co. v. Mylan Inc.*, 62 F. Supp. 3d 1115, 1126 (N.D. Cal. 2014).

Apple argues that even if the Court finds subject-matter jurisdiction, a declaratory judgment would be inappropriate because it would constitute a nonbinding, advisory opinion. Apple Mem. at 4. Qualcomm responds that the Court should resolve the parties' uncertainty regarding their respective rights and obligations under the parties' contracts. Again, the Court agrees.

This case is similar to *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2018 WL 6617795, at *7 (E.D. Tex. Dec. 17, 2018). There, HTC's case centered on Ericsson's conduct in refusing to offer a FRAND/RAND royalty and acting in bad faith, whereas Ericsson's counterclaim focuses on HTC's conduct, i.e. HTC has forfeited its rights to a FRAND license "by refusing to undertake good-faith negotiations," among other things. *Id.* The court found resolving HTC's claims would not necessarily moot Ericsson's counterclaim. Moreover, while there was overlap between Ericsson's defenses and its counterclaim, a favorable outcome on Ericsson's counterclaim would afford it additional relief that was unavailable should its defenses defeat HTC's affirmative case.

//
//
//
//
//

Likewise, while Qualcomm's defenses overlap with its counterclaim, the counterclaim seeks additional relief, a declaration that Apple is an unwilling licensee, that will be unavailable in the event that Qualcomm defeats Apple's affirmative case. Consequently, the Court **DENIES** Apple's motion to decline to exercise jurisdiction over Count IV of Qualcomm's countercomplaint.

**It is so ORDERED.**

Dated:  March 20, 2019

Hon. Gonzalo P. Curiel
United States District Judge