```
 1                    UNITED STATES DISTRICT COURT

 2               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3                                     .
     IN RE:                            . Docket
 4   QUALCOMM LITIGATION               . No. 17cv0108-GPC-MDD
                                       .
 5                                     .
                                       . March 28, 2019
 6                                     . 1:35 P.M.
     . . . . . . . . . . . . . . . . . . San Diego, California
 7
                      TRANSCRIPT OF MOTIONS HEARING
 8              BEFORE THE HONORABLE GONZALO P. CURIEL
                      UNITED STATES DISTRICT JUDGE
 9
                           A-P-P-E-A-R-A-N-C-E-S
10   For Apple Inc.:       Fish & Richardson
                           12390 El Camino Real
11                         San Diego, California 92130
                           By:  JUANITA R. BROOKS, ESQ.
12                              LAUREN A. DEGNAN, ESQ.
                                BENJAMIN C. ELACQUA, ESQ.
13                              RUFFIN B. CORDELL, ESQ.
                           - and -
14                         Boies Schiller Flexner LLP
                           1401 New York Avenue NW
15                         Washington, DC 20005
                           By:  KAREN L. DUNN, ESQ.
16                              WILLIAM A. ISAACSON, ESQ.
                                EDWARD H. TAKASHIMA, ESQ.
17
     For Compal Electronics Inc., FIH Mobile Ltd., Hon Hai Precision
18   Industry Co., Ltd., Pegatron Corporation, and Wistron
     Corporation:          Gibson, Dunn & Crutcher, LLP
19                         333 South Grand Avenue
                           Los Angeles, California 90071
20                         By:  JASON C. LO, ESQ.
                                RICHARD J. DOREN, ESQ.
21

22   For Qualcomm Incorporated:
                           Jones Day
23                         4655 Executive Drive, Suite 1500
                           San Diego, California 92121
24                         By:  KAREN P. HEWITT, ESQ.
                                EDWARD PATRICK SWAN, JR., ESQ.
25                         - and -
```

```
                                Cravath, Swaine & Moore LLP
                                Worldwide Plaza, 825 Eighth Avenue
                                New York, New York 10019
                                By:  EVAN CHESLER, ESQ.
                                     VANESSA A. LAVELY, ESQ.
                                     NATHAN E. DENNING, ESQ.
                                     RICHARD J. STARK, ESQ.
                                     J. WESLEY EARNHARDT, ESQ.
                                - and -
                                Quinn Emanuel
                                865 South Figueroa Street, 10th Floor
                                Los Angeles, California 90071
                                By:  STEPHEN A. SWEDLOW, ESQ.


Court Reporter:                 Chari L. Bowery, RPR, CRR
                                USDC Clerk's Office
                                333 West Broadway, Suite 420
                                San Diego, California 92101
                                chari_bowery@casd.uscourts.gov

Reported by Stenotype, Transcribed by Computer
```

```
 1          SAN DIEGO, CALIFORNIA; MARCH 28, 2019; 1:35 P.M.
 2                              -o0o-
 3          THE CLERK:  Calling matter two on the calendar,
 4   17-cv-108, Apple Inc. v. Qualcomm Incorporated, for motion
 5   hearing and jury instruction.
 6          THE COURT:  Appearances, please.
 7          MS. DUNN:  Good afternoon, Your Honor.  I will just
 8   state the appearances of the folks who may be arguing today.
 9      Karen Dunn and Bill Isaacson from Boies Schiller; Ruffin
10   Cordell, Juanita Brooks, Lauren Degnan, and Ben Elacqua from
11   Fish & Richardson; and here from Apple are Noreen Krall and
12   Andrew Farthing.
13          THE COURT:  Good afternoon.
14          MR. DOREN:  Your Honor, on behalf of the CMs, Richard
15   Doren and Jason Lo.
16          THE COURT:  Good afternoon.
17          MS. HEWITT:  Good afternoon, Your Honor.
18      On behalf of Qualcomm, Karen Hewitt from Jones Day.  Today
19   we have Evan Chesler, Richard Stark, Wes Earnhardt, Vanessa
20   Lavely, and Nathan Denning, from Cravath Swain & Moore.  We
21   also have Stephen Swedlow, from Quinn Emanuel.  And John Scott
22   from Qualcomm.
23          THE COURT:  Good afternoon.
24      We are two and a half weeks from trial.  The Court has,
25   with a few exceptions, ruled on a great number of motions in
```

```
 1   limine, Daubert motions, and it's obvious from my review of
 2   those, as well as the Rule 44.1 motions and all the additional
 3   daily gifts that I receive, that there's a lot of jockeying
 4   going around, happening, for position, for advantages, with
 5   respect to rulings on evidence, the order of presentation of
 6   causes of action in the instructions, and now presentation of
 7   evidence at trial.
 8         So, all of that now has brought us here, today, for a
 9   hearing where we were scheduled to address and hopefully rule
10   on a large number of Rule 44.1 requests for determination of
11   foreign law.
12         Now, I will confess to you, a couple of months ago, when
13   you all mentioned that there was this thing called Rule 44.1
14   and that you had a notion, an idea, to file some Rule 44.1
15   requests, I said, "Sure.  Go ahead."  About a month or so ago,
16   there was a request for leave to file briefs in excess of
17   normal briefing practices.  I didn't say, "Yeah.  Sure.  Go
18   ahead," all the way, but I did provide some measure of relief
19   requested.
20         So we received the papers.  We have been working
21   diligently to seek to address all of these issues.  Keeping in
22   mind that there is not a plethora of law with respect to
23   Rule 44.1 practice, but the cases that have raised Rule 44.1
24   issues are unlike ours.
25         We had Judge Serna, up the road, in Los Angeles, saw one
```

1  of these requests, and said, "No, that is a motion for summary
2  judgment in Rule 44.1 clothing."
3      We had recently, in Texas, Judge Gilstrap, said, "No, it's
4  fine, on this one question."
5      We have about 20.  Because it seems like, with every
6  request for a determination of foreign law, there was either
7  one or two counter-requests.  So we don't have a situation that
8  was in front of Judge Gilstrap.  We don't have a situation that
9  was in front of the Seventh Circuit, when they took, on appeal,
10 an order granting motion for summary judgment; and there, in
11 the course of deciding the motion for summary judgment, Judge
12 Kennelly ruled that French law required a certain form of
13 construing the contract.  It was basically one issue, and it
14 was raised in the context of a motion for summary judgment.
15     And when you look at the questions that are being
16 presented under Rule 44.1, you see that they really are very
17 much like Judge Serna observed, motion-for-summary-
18 judgment-like, if not just straight-out motions for summary
19 adjudication of issues.
20     And to further hit home on the notion that these are
21 issues that are akin, look exactly like motion for summary
22 judgment issues, one only has to look at Judge Koh's decision
23 in the FTC v. Qualcomm case, where she was asked by the FTC to
24 determine that RAND obligations extended to competitors of
25 Qualcomm as far as chipset developers, manufacturers.  And that

1  was one issue that she took up, and I don't have to tell you,
2  in a very well-written decision, she thoroughly addressed all
3  of the facts and questions that were raised there.  Again, one
4  issue.
5      Here, we are being asked to take up this same type of
6  analysis with respect to -- I think we counted 19 or 20
7  different questions.
8      So, ultimately, that's a long story to say we are not
9  going to be tackling the Rule 44.1 issues today.
10     What I intend to do is to look closer at each of these
11 motions and give them the attention they deserve, that they
12 require.  Keeping in mind that this is such a case -- this is a
13 case of such consequence that armies of lawyers will be poring
14 over every one of my words to determine whether or not I got it
15 right or not.  So I am not going to just willy-nilly stumble
16 into some decision because I feel like I have to today.
17     What I am prepared to do, though, is to address two
18 motions, and one of them is the motion in limine regarding BCPA
19 evidence, and then a related motion to set order of
20 presentation.
21     So at this point, as I understand it, Qualcomm submits
22 that, in granting summary judgment on Qualcomm's BCPA Section 7
23 counterclaims, the Court decided Apple's BCPA claims as well.
24 Nothing remains to be tried on Apple's claims, and they should
25 not be submitted to the jury.

```
 1        As a matter of law, the Court finds that's wrong.  Neither
 2   side moved for summary judgment on Apple's claims and the Court
 3   did not give notice to both sides of its intent to convert
 4   Apple's motion for summary judgment on Qualcomm's counterclaims
 5   into one affording Apple summary judgment on its BCPA claims.
 6        In addition, Qualcomm has raised any number of affirmative
 7   defenses regarding Apple's claims that, from what I can tell,
 8   have not been abandoned, are still alive; the Court has not
 9   ruled on them.  And at this point, given the procedural status
10   of this case, the BCPA claims from Apple are alive, and they
11   will go forward.
12        So that doesn't provide the basis to exclude the BCPA
13   evidence.  But even if Qualcomm were to submit that it is no
14   longer offering any affirmative defense and at this stage move
15   for summary judgment, there is an additional reason why the
16   Court would not be prepared to exclude BCPA evidence across the
17   board -- because I am prepared to exclude some of it.
18        Qualcomm submits that the Court's decision to grant
19   summary judgment against Qualcomm on the BCPA claims is
20   irrelevant to the remaining claims.  In addition, evidence of a
21   trial court's interlocutory ruling may be highly prejudicial
22   because the influence of the trial judge on the jury is
23   significant.
24        I agree with that.
25        And I agree that the order of this Court is not admissible
```

1  at trial under Rule 403.
2      Third, Qualcomm submits that the role of evidence
3  regarding the BCPA has fundamentally changed as a result of the
4  order.  According to Qualcomm, evidence regarding the BCPA
5  remains relevant for a very limited purpose of addressing the
6  parties' economic arrangements, evidence of the BCPA's
7  Section 7 dispute, including evidence regarding regulatory
8  investigations, Qualcomm's withholding of the BCPA payments;
9  and Apple's antitrust theories of gagging and retaliation
10 should not be heard by the jury because Apple's antitrust
11 claim, on which Apple hangs the relevance of the BCPA, will be
12 decided by the Court.
13     And Qualcomm further argues that the CMs cannot avail
14 themselves of Apple's BCPA-based antitrust theories because the
15 CMs are not parties to the BCPA; therefore, could not have been
16 gagged by any provision of the BCPA.  As such, the BCPA
17 evidence would be distracting, unnecessary, and unfairly
18 prejudicial to Qualcomm, to present the evidence to the jury.
19     The Court disagrees.
20     It's relevant on legal issues, most notably, the CM
21 Sherman Act claims.  It does not matter that the CMs are not
22 parties to the BCPA, just as it didn't matter that the FTC was
23 not a party to the BCPA when it relied upon it as part of its
24 theory that Qualcomm had devised a business model that was
25 anticompetitive and relied upon a number of components,

1  including the BCPA.
2      In addition, it appears that this evidence would be
3  relevant to Apple's affirmative defenses relating to Qualcomm's
4  SULA claims and tortious interference claims.
5      There's an argument that the Court will be creating mini
6  trials and extending the length of the trial if it does not
7  grant the motion to exclude this evidence, but we have already
8  factored this evidence into our estimate.  It was already taken
9  into account in determining the length of the trial.  It adds
10 nothing new.
11     In fact, it should streamline evidence at trial.  For
12 example, for the contract-based claim, Apple will point to the
13 existence of this BCPA and assert that it complied with its
14 terms and point out that it has not received agreed-to
15 payments.  On the Sherman Act claims, the CMs will be allowed
16 to introduce the BCPA and have witnesses describe its effect on
17 their conduct and the fact that the BCPA was employed to
18 terminate payments after the initiation of the FTC inquiry.
19     The CMs, nor Apple, will be permitted to reveal the fact
20 that the FTC ultimately opened a formal investigation or filed
21 a lawsuit against Qualcomm.  At this time, without more, the
22 Court is not prepared to permit the CMs to introduce evidence
23 regarding the specific foreign investigations.  If Qualcomm
24 believes that the evidence is admissible on some theory, they
25 can let the Court know.

```
 1          So that addresses the motion to exclude BCPA evidence.
 2   It's granted in part and denied in part.
 3          As to the motion to set order of presentation, Qualcomm
 4   cites Plumtree Software v. Datamize as providing guidance on
 5   how to address these types of issues.  Although, I think, as a
 6   starting point, Plumtree involved a question of diversity
 7   jurisdiction.  But I think that the "primary purpose" test used
 8   in Plumtree does have application in this case.
 9          And with respect to the "primary purpose" test, the Court
10   first should look to the pleadings submitted by the parties,
11   but it also has a duty to look beyond the pleadings to
12   determine the actual interests of the parties.  The Court
13   should align the parties in accordance with the primary dispute
14   in the controversy.
15          Here, there is not one scintilla of a doubt that the
16   primary dispute relates to the claim that Qualcomm has designed
17   a business model for chipsets that has allowed it to create and
18   maintain a monopoly.  This is an anticompetitive conduct case,
19   first and foremost.  Apple and the CMs are aligned on that
20   claim due to their relationship in the production, manufacture
21   of Apple iPhones and iPads.  This alignment is seen in many
22   ways, including the Apple and Qualcomm contracts that follow up
23   on the CM agreements.
24          Proceeding with the individual contracts, as proposed by
25   Qualcomm, would place the cart ahead of the horse.  It would
```

1  present the case to the jury in an illogical, disjointed, and
2  disorganized manner and would likely lead to confusion.  As
3  such, the order of presentation will remain as it was
4  originally designed or stated.  The BCPA ruling will not affect
5  or impact the order of presentation.
6      With respect to jury instructions, the parties disagree on
7  a large number of jury instructions.  The gulf that exists
8  between their respective positions is wide.  Ultimately, the
9  Court plans to independently, itself, design and draft
10 instructions on all of the areas where the parties have not
11 furnished joint instructions.  I have problems with almost all
12 of the instructions that are provided by the parties.
13     There is a lot of cherry-picking.  There is a lot of
14 jockeying.  It kind of goes back to what I said before about
15 the motions in limine, the *Daubert*, 44.1.  It shows that a lot
16 of lawyers, a lot of smart lawyers, are trying to come up with
17 ways to best position their client.  And I don't begrudge you
18 for that; it is your job.  It's just that there's so many of
19 you doing it, it makes it hard for me to keep up with all of
20 it.
21     So, that's it.  That's it.  I have a lot of work to do,
22 and I would rather do it in chambers.  Those are my rulings.
23 And with that, to the extent that we need to reconvene, we will
24 set that for a hearing.
25     And let me inquire, other than what I have already

1  addressed, are there any other matters that we need to have
2  raised before we conclude?
3         MR. CHESLER:  Your Honor, good afternoon.  There is
4  one other issue which Your Honor did not address which we would
5  like to get some guidance on, and that is the issue of whether
6  witnesses need to be called to lay the foundation for documents
7  produced from the files of the parties to the case.
8         THE COURT:  Does this go back to the issue that we
9  left last week?
10        MR. CHESLER:  Yes.
11        MS. BROOKS:  I would assume so.  I am prepared to
12 address that if Your Honor would like to see where we are.
13        THE COURT:  I don't.  I will look to see what else
14 was filed.  It is hard to keep up with you all, given the
15 various filings.
16        MR. CHESLER:  Thank you, Your Honor.
17        THE COURT:  At this point, I don't have anything
18 else.
19     With that, that will conclude these proceedings.
20        MS. BROOKS:  Thank you, Your Honor.
21        MS. DUNN:  Thank you, Your Honor.
22     (End of proceedings at 1:55 p.m.)
23                         -oOo-
24
25

```
 1                    C-E-R-T-I-F-I-C-A-T-I-O-N

 2

 3           I hereby certify that I am a duly appointed,

 4  qualified and acting official Court Reporter for the United

 5  States District Court; that the foregoing is a true and correct

 6  transcript of the proceedings had in the aforementioned cause;

 7  that said transcript is a true and correct transcription of my

 8  stenographic notes; and that the format used herein complies

 9  with rules and requirements of the United States Judicial

10  Conference.

11            DATED:  March 28, 2019, at San Diego, California.

12

13                          /s/  Chari L. Bowery
                            _____
14                          Chari L. Bowery
                            CSR No. 9944, RPR, CRR
15
```