Evan R. Chesler (N.Y. Bar No. 1475722) (*pro hac vice*)
echesler@cravath.com
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

David A. Nelson (Ill. Bar No. 6209623) (*pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison St., Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1200
Facsimile: (858) 345-3178

*Attorneys for Defendant and Counterclaim-Plaintiff*
QUALCOMM INCORPORATED

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| IN RE: QUALCOMM LITIGATION | No. 3:17-cv-0108-GPC-MDD |
|---|---|
| | **DECLARATION OF ALBERT ST. GEORGE IN SUPPORT OF QUALCOMM INCORPORATED'S MOTION FOR ORDER TO SEAL TRIAL EXHIBITS** |
| | Judge: Hon. Gonzalo P. Curiel |

I, Albert St. George, declare as follows:

1. I am currently Vice President, IPR Enforcement, Qualcomm Technology Licensing ("QTL"), the division of Qualcomm responsible for Qualcomm's licensing program. I received my Bachelor of Science from St. Cloud State University in 1994 and my MBA from Northwestern University, Kellogg School of Management in 1998. I have been employed by Qualcomm since 2008, and I have worked in QTL since 2011. My current responsibilities include direct negotiations of patent license agreements, as well as licensing operations for the division. I have held my current position since August 2016. Prior to my current position, I was in QTL's business development group from October 2011 to August 2016. I was Vice President, Business Development in Qualcomm MEMs Technology from October 2009 to October 2011, and Vice President, Carrier Relations in Qualcomm Enterprise Services prior to August 2009. Over the course of my employment in QTL, I have acquired personal knowledge of QTL's practices and procedures concerning the maintenance of the confidentiality of its strategic, business, and licensing information.

2. I submit this declaration in support Qualcomm's Motion for Order to Seal Trial Exhibits.

3. The contents of this declaration are true and correct to the best of my knowledge, information and belief, and are based on my personal knowledge of QTL's policies and practices as they relate to the treatment of confidential information, the materials that were provided to me and reviewed by me, or conversations with other knowledgeable employees of Qualcomm Incorporated ("Qualcomm") and its affiliates. If called upon as a witness in this action, I could and would testify competently thereto.

4. QTL follows a strict practice that requires confidential treatment of all contract negotiations. All such negotiations are undertaken pursuant to non-

disclosure agreements, which provide that all information exchanged and terms discussed during negotiations are to be maintained in confidence by both parties to the negotiations.

5. It is likewise QTL's practice to include in its licensing and other patent agreements, confidentiality obligations that prohibit the disclosure of the agreements themselves or any of their terms, except in limited authorized circumstances. These confidentiality obligations survive termination of QTL's agreements.

6. It is likewise QTL's practice to require confidential treatment of QTL's internal business analyses, pricing and valuation analyses, strategy and decision-making. QTL's business analyses, pricing and valuation analyses, strategy and decision-making incorporate highly sensitive and proprietary information and processes that QTL relies upon to pursue its commercial interests.

7. These confidentiality practices are important to QTL and (with respect to agreements and communications with third parties) to counterparties with which QTL contracts for several reasons. Both QTL and prospective contractual counterparties seek to maintain their negotiations in confidence to afford each the ability to engage in arm's-length commercial bargaining, each bringing to bear their own unique circumstances and business goals without such circumstances and goals being disclosed to their competitors, customers and other actual and potential licensees.

8. The disclosure of QTL's confidential information, such as information contained in licensing negotiations, the terms of its licensing and strategic fund agreements, and QTL's internal business analyses, pricing and valuation analyses, strategies and decision-making could significantly harm QTL's relationships and ability to conduct business with counterparties and prospective counterparties.

9. QTL's confidentiality practices concerning the negotiations and terms of patent, licensing, and other agreements are also consistent with QTL's longstanding confidentiality policy concerning the treatment of information that third parties report to QTL under their patent agreements. This policy, among other things, obligates QTL employees to maintain in strict confidence all information received from counterparties with which we have contracted, and to refrain from any disclosure of such information, either internally at Qualcomm or externally, except as required to meet Qualcomm's legal reporting and similar obligations.

10. QTL also goes to great lengths to ensure that confidential information relating to its licensing negotiations, the terms of its licensing and other agreements, and QTL's internal business analyses, pricing and valuation analyses, strategies and decision-making is well protected. Personnel with access to data storage locations where confidential information is stored and maintained are advised of QTL's practices and policies and are required to acknowledge in writing their awareness of and compliance with QTL's confidentiality policy. The same is true for any QTL personnel who request access to such information and all new QTL employees.

11. In addition, every QTL database and system that contains confidential information is access-restricted and requires login by QTL employees.

12. In my experience and to the best of my knowledge, the confidentiality obligations specified above have always been strictly followed at QTL. I was informed of QTL's practices and policies described herein when I first joined QTL, and I have informed others at QTL of our confidentiality obligations and practices.

13. I have reviewed the information described herein to determine whether it includes information that QTL would consider confidential under the practices and policies described above. Based on this review, I have determined

that the information Qualcomm seeks to seal includes confidential QTL information.

14.  The information Qualcomm seeks to seal reflects the type of information that QTL maintains as confidential.  This information includes the terms of confidential licensing agreements, confidential details about QTL and its contractual and negotiating counterparties that include highly sensitive and proprietary information, and confidential details about QTL's internal business analyses, pricing and valuation analyses, strategy, and decision-making.

15.  I have reviewed the following documents and have identified information in red outlining as containing confidential Qualcomm licensing proposals that Qualcomm has compelling reasons to seal:

**PTX001269**
**PTX001546**

16.  Qualcomm requests to seal only the portions of these exhibits that reveal information about Qualcomm's confidential licensing negotiations with counterparties regarding royalty pricing. This information constitutes Qualcomm trade secrets.  Public disclosure of this information would harm Qualcomm and its affiliates by disclosing internal licensing considerations and may unfairly benefit actual and potential third parties with respect to contracting activities of Qualcomm and its affiliates.

\*   \*   \*

1   This confidential information is not publicly known, and QTL recognizes
2 and protects the enormous value of this information through its policies and
3 procedures designed to protect confidential information from disclosure.
4   I declare under penalty of perjury that the foregoing is true and correct and
5 that I executed this declaration on April 14, 2019, in San Diego, California.

        s/ *Albert St. George*
        Albert St. George