THEODORE J. BOUTROUS, JR. (SBN 132099)
tboutrous@gibsondunn.com
RICHARD J. DOREN (SBN 124666)
rdoren@gibsondunn.com
DANIEL G. SWANSON (SBN 116556)
dswanson@gibsondunn.com
JASON C. LO (SBN 219030)
jlo@gibsondunn.com
JENNIFER J. RHO (SBN 254312)
jrho@gibsondunn.com
MELISSA PHAN (SBN 266880)
mphan@gibsondunn.com
RYAN IWAHASHI (SBN 284766)
riwahashi@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel:  (213) 229-7000
Fax:  (213) 229-7520

CYNTHIA E. RICHMAN (DC Bar No. 492089; *Pro Hac Vice*)
crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Defendants, Counterclaimants, and Third-Party Plaintiffs Compal Electronics, Inc., FIH Mobile Ltd., Hon Hai Precision Industry Co., Ltd., Foxconn Corporation, and Wistron Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

IN RE:

QUALCOMM LITIGATION

Case No. 3:17-cv-00108-GPC-MDD

**DECLARATION RAYMOND LAMAGNA IN SUPPORT OF MOTION TO SEAL TRIAL EXHIBITS RELATED TO FOXCONN AND OTHER CMS**

I, Raymond LaMagna, hereby declare as follows:

1. I am an attorney for Hon Hai Precision Industry Co., Ltd. and FIH Mobile Ltd. (collectively, "Foxconn"), as well as Compal Electronics, Inc., Pegatron Corporation, and Wistron Corporation (collectively, the "Contract Manufacturers" or "CMs"). I make this declaration in support of the Apple and the Contract Manufacturer's Motion to Seal Certain "Will Call Exhibits and Deposition Designations. Unless otherwise indicated, I have personal knowledge of the matters set forth here, and, if called upon to do so, I would testify competently to them.

2. I have reviewed the exemplary trial exhibits referenced herein related to Foxconn, as well as the other trial exhibits that the CMs seek to seal, and all proposed redactions, along with any deposition designations that Foxconn or the other CMs seek to seal. Based upon my review, I believe that the portions sought to be redacted from the public record contain information that Foxconn or the CMs treat as and consider to be highly confidential business information. To my knowledge, such information has generally not been made public. For the reasons stated below, I believe the CMs' redaction requests are narrowly tailored, limited, and justified under Circuit precedent.

3. As part of my role of representing Foxconn and the other CMs, I have become familiar with their supply agreements with Apple, license agreements, and negotiations and audits related to such agreements that are at issue in this case. I am also informed of the efforts that Foxconn and the other CMs take to ensure that sensitive licensing and pricing and other customer and supplier-related information is kept confidential. With respect to Foxconn specifically, I respectfully direct the Court's attention to and rely in part here on the prior Declaration of Joe Lam, filed at Dkt. 73-2, wherein Mr. Lam attests to the confidentiality of the type of Foxconn records also subject to seal in this motion and to the harm that would befall Foxconn if those records and underlying facts were publicly revealed without redaction.

4. I believe there are compelling reasons to seal the specific financial terms and terms of scope for the CMs licenses and work agreements with other companies,

including Qualcomm and Apple. While the various general provisions of Foxconn's and the CMs license or work agreements may be disclosed publicly, the limited and narrowly tailored terms that Foxconn and the CMs seek to seal—the key financial and scope terms from confidential agreements—are governed by confidentiality provisions. To my knowledge, these terms have been considered as, and treated as, confidential by the CMs to ensure they are not prejudiced in negotiating future agreements with others.

5. For example, although it is generally known that Foxconn and the other CMs manufacture products for Apple and have entered into agreements with Qualcomm and other licensors, I believe that the specific financial terms (e.g., costs, unit price breaks, unit counts, up-front fees or charges, profit or value-added margins, labor rates, warranty and repair fees, etc.) are known only to the contracting parties. I understand from my representation of the company and from my review of the CMs negotiation documents that these terms are heavily negotiated and change from customer to customer and from license to license.

6. Similarly, I understand from my representation of the CMs and review of their negotiation documents that the scope of a particular license or agreement can be heavily negotiated and changes based on circumstance and entity. For example, whether Foxconn or another CM agrees to indemnify counterparties (and to what extent) can be a significant concession, as can be the scope of which particular patents or IP are addressed in the agreement. Again, in my personal experience reviewing Foxconn and CM contracts, the scope of these terms vary substantially.

7. Likewise, to the extent a contracting counterparty conducts an inspection of Foxconn's or the other CMs' records to assess contract compliance, based on my personal experience reviewing the results of such inspections, those results contain confidential information of the same nature as above. For example, based on my personal review of the royalty inspection findings at issue in this case, the findings of a royalty inspection of Foxconn or the other CMs by a licensor such as Qualcomm will typically reveal detailed data from which unit counts, pricing, and other core financial

terms of the license and of the implicated supply agreements can be extrapolated. The results of such inspections are also governed by confidentiality agreements and, to my knowledge, these results have been treated as confidential by the parties at all times.

8. With respect to Foxconn specifically, as Mr. Lam details in his prior declaration, Dkt. 73-2, ¶¶ 4–8, and as I understand as well, the public disclosure of these key terms (and negotiations of these specific terms) would harm Foxconn's business and competitive position by disclosing this confidential information to Foxconn's competitors and future contracting counterparties. Competitors and future contracting counterparties would gain asymmetric insight into the confidential contracting terms to which Foxconn has previously agreed. The public disclosure of these terms to Foxconn's customers and potential licensors would thus harm Foxconn's business and competitive position because it would give counterparties information about Foxconn's contracting and business strategy, which information they could use to their advantage during future business negotiations. Disclosure of these specific terms would thus allow competitors, business partners, and licensors to gain leverage against Foxconn in future negotiations, prejudicing Foxconn.

9. With respect to customer supply agreements, in particular with Apple (e.g., DTX02589), Foxconn seeks to seal the specific financial terms (e.g., costs, unit counts, up-front fees or charges, value-added margins, labor rates, warranty and repair fees, etc.).

10. Additionally, Foxconn is seeking to seal personal contact information. It is my understanding that this type of information is not relevant to the case and would harm the privacy interests of the individuals. (E.g. DTX02588.)

11. As shown in the proposed redactions, the scope of these requests is narrowly tailored, with the majority of the documents being made public. In redacting the material being submitted to the Court for seal, Foxconn and the CMs have minimized the scope of redactions so as to redact only the most sensitive confidential facts. I do not believe that maintaining the confidential nature of the particular above

1  limited and narrow redactions that Foxconn and the CMs seek will affect the public's
2  ability to understand the issues at trial. Thus, the protection to the CMs of the limited
3  redaction requests far outweighs any potential value of disclosing this information
4  publicly. In many instances, the information for which redactions are sought are not
5  even relevant to this case. I have reviewed the applicable legal standards for this Court
6  and the Ninth Circuit pertaining to requests to seal trial exhibits and believe that the
7  narrow redaction requests here meet those standards. Therefore, it is my opinion that
8  there is a compelling reason to seal these limited and narrow portions of documents to
9  avoid causing significant harm to Foxconn or the other CMs.

11  I declare under penalty of perjury that the foregoing is true and correct and that I
12  executed this declaration on April 15, 2019 in San Diego, California.

*[signature: Raymond A. LaMagna]*

Raymond LaMagna